UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------:
IN RE NAMENDA DIRECT PURCHASER    :   15 Civ. 7488 (CM) (JCF)
ANTITRUST LITIGATION              :
                                  :   MEMORANDUM
                                  :   AND ORDER
                                  :
------------------------------:

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/19/17

In this putative class action asserting violations of antitrust law by defendants Actavis plc (now known as Allergan plc) and Forest Laboratories, LLC (together, "Forest") in connection with its patented Alzheimer's drugs Namenda IR and Namenda XR (brand names for memantine hydrochloride), the Direct Purchaser Class Plaintiffs (the "plaintiffs") argue that Forest has put privileged communications at issue by advancing certain affirmative defenses and substantive arguments.[1] They therefore seek production of otherwise-privileged documents over which Forest has allegedly waived protection. The motion is denied.

Background

The operative complaint in this action, brought on behalf of

---

[1] The plaintiffs' opening brief raises a number of other disputes, but those have now been "eliminated" or are "not ripe for review" because the parties are conferring in an attempt to resolve them. (Direct Purchaser Class Plaintiffs' Reply Memorandum in Support of Their Motion to Compel Production of Documents ("Reply") at 1 n.1).

1

a class of persons and entities who purchased the relevant Namenda products directly from Forest, alleges that the plaintiffs "have been forced to pay supracompetitive prices for . . . Alzheimer's disease treatments due to Forest's anticompetitive conduct." Sergeants Benevolent Association Health & Welfare Fund v. Actavis, PLC, Nos. 15 Civ. 6549, 15 Civ. 7488, 2016 WL 4992690, at *1 (S.D.N.Y. Sept. 13, 2016).[2] As relevant here, the plaintiffs contend "that various generic companies [] colluded with Forest to delay entry of generic versions of Namenda IR by entering into

---

[2] This litigation, now-captioned In re Namenda Direct Purchaser Antitrust Litigation, is a consolidation of two putative class actions with "materially identical" complaints, JM Smith Corp. v. Actavis, PLC, No. 15 Civ. 7488 (S.D.N.Y. Sept. 22, 2015) (the "JM Smith Action") and Rochester Drug Cooperative, Inc. v. Actavis, PLC, No. 15 Civ. 10083 (S.D.N.Y. Dec. 28, 2015) (the "RDC Action"). (Order dated Dec. 16, 2016, at 2; Order dated Jan. 10, 2017). Briefing on motions to dismiss were coordinated among the JM Smith Action, the RDC Action, and an earlier-filed action on behalf of indirect purchasers of Namenda captioned Sergeants Benevolent Association Health & Welfare Fund v. Actavis, PLC, No. 15 Civ. 6549 (S.D.N.Y. Aug. 19, 2015). (Order dated Jan. 26, 2016 ("1/26/16 Order"); Order, Sergeants Benevolent Association Health & Welfare Fund v. Actavis, PLC, No. 15 Civ. 6549 (S.D.N.Y. Dec. 9, 2015)). A fuller explication of the facts can be found in the decision of the Honorable Colleen McMahon, U.S.D.J., on the motions to dismiss, Sergeants Benevolent Association, 2016 WL 4992690, as well decisions in a 2014 case brought by the state of New York against Actavis and Forest, New York v. Actavis, PLC, No. 14 Civ. 7473, 2014 WL 7015198 (S.D.N.Y. Dec. 11, 2014), and New York ex rel. Schneiderman v. Actavis PLC, 787 F.3d 638 (2d Cir. 2015).

The operative complaint here is the First Amended Complaint filed on October 13, 2015, in the JM Smith Action ("Am. Compl."). (1/26/16 Order at 2).

settlements in which they agreed not to begin marketing generic Namenda until July 2015." Id.

More specifically, the plaintiffs allege that in late 2007, a number of generic manufacturers filed Abbreviated New Drug Applications ("ANDAs") with the FDA for generic versions of Namenda IR in which they contended that the Namenda patent (known in the papers as the "'703 patent") "was invalid, not infringed by their proposed products, or both." (First Amended Class Action Complaint ("Am. Compl."), ¶ 103); see Sergeants Benevolent Association, 2016 WL 4992690, at *5. In early 2008, Forest filed patent infringement suits against these generic manufacturers (the "Generic Defendants"),[3] which had the effect of staying FDA action on the ANDAs. (Am. Compl., ¶¶ 104-105); Sergeants Benevolent Association, 2016 WL 4992690, at *5. The generic manufacturers again argued, among other things, that the patents were invalid. (Am. Compl., ¶ 109). "Forest chose to settle the patent lawsuits against each of the Generic Defendants instead of litigating the cases." Sergeants Benevolent Association, 2016 WL 4992690, at *5. These settlements included cash payments from Forest to the alleged infringers (Am. Compl., ¶ 114), as well as "licensing agreements

---

[3] The statute known as the Hatch-Waxman Act treats a certification of invalidity in an ANDA as an act of infringement. Sergeants Benevolent Association, 2016 WL 4992690, at *4.

allowing the Generic Defendants to launch generic versions of Namenda IR, but not until July 11, 2015," which was "months before Namenda IR's patent expired, but well after the Generic Defendants could have begun selling generic Namenda IR if Forest's patent was found to be invalid," Sergeants Benevolent Association, 2016 WL 4992690, at *5.

The standard for evaluating whether patent litigation settlements are anticompetitive was set out in FTC v. Actavis, Inc., __ U.S. __, 133 S. Ct. 2223 (2013). In that case, the FTC alleged that settlement agreements between a patent holder and generic competitors that included "reverse payments" -- that is, payments from the patentee to the alleged infringers -- in tandem with an agreement to delay entry of the generic into the marketplace were anticompetitive "because they resulted in the generic manufacturers abandoning their patent challenges and delayed generic competition in exchange for a share of the brand name drug's monopoly profits." Sergeants Benevolent Association, 2016 WL 4992690, at *12 (discussing Actavis). The Supreme Court held that "a reverse payment, where large and unjustified, can bring with it the risk of significant anticompetitive effects" depending on "its size, its scale in relation to the payor's anticipated future litigation costs, its independence from other services for which it might represent payment, and the lack of any

other convincing justification." Actavis, __ U.S. at __, 133 S. Ct. at 2237.

The plaintiffs' motion to compel centers on Forest's allegedly anti-competitive settlements, or, more precisely, on Forest's assertions that the delayed launch date provisions included in those settlements were lawful. Forest has argued that the settlements were lawful compromises between parties who had assessed the likely outcomes of the actions: "Forest and the generics considered the merits of their respective litigation positions . . . and reached a settlement." (Forest's Combined Memorandum of Law Supporting Forest's Motion for Partial Summary Judgment (Count 3) and Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment (Count 3) ("Def. PSJ Memo.") at 9-10). The plaintiffs contend that this argument -- "[o]ne of Forest's central defenses" in this litigation -- "clearly make relevant [] the patent merits and Forest's evaluation of the patent merits." (Memorandum in Support of Direct Purchaser Plaintiffs' Motion to Compel Production of Documents ("Pl. Memo.") at 2). They similarly argue that the legal merits of the patent litigation are put at issue by Forest's affirmative defenses that the '703 Patent was valid and infringed by the Generic Defendants, that the settlement was procompetitive in light of the merits of the infringement litigations, that Forest acted in good faith to

further its legitimate business interests, and that the settlement agreements were bona fide and for fair value. (Pl. Memo. at 6-7; Forest Defendants' Answer to Direct Purchasers Plaintiffs' First Amended Class Action Complaint ("Answer") at 57, 60, 62). They therefore seek production of "purportedly privileged information regarding Forest's legal analysis of the patent merits, and Forest's mental processes during the settlement negotiations." (Pl. Memo. at 22).

Discussion

Both attorney-client privilege and work-product immunity "may implicitly be waived when [the] defendant asserts a claim that in fairness requires examination of protected communications."[4] United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991); see also John Doe Co. v. United States, 350 F.3d 299, 302 (2d Cir. 2003) (noting that party waives both attorney-client and work product protection by placing substance of protected documents at issue); DeAngelis v. Corzine, No. 11 Civ. 7866, 2015 WL 585628, at *6 (S.D.N.Y. Feb. 9, 2015) ("The 'fairness doctrine' analysis applies to waiver of work-product protection just as it does to waiver of attorney-client privilege."). The mere fact that a

---

[4] The plaintiffs refer exclusively to "privileged" documents. I shall similarly use the term, but it should be read to cover communications protected by work product immunity as well as by attorney-client privilege.

6

privileged communication may be relevant to a claim or defense is insufficient to forfeit protection. In re County of Erie, 546 F.3d 222, 229 (2d Cir. 2008); Aiossa v. Bank of America, N.A., No. 10 CV 1275, 2011 WL 4026902, at *5 (E.D.N.Y. Sept. 12, 2011). Rather, a person may waive protection where he "asserts a factual claim the truth of which can only be assessed by examination of a privileged communication," even if he does not explicitly rely on that communication. Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 488 (S.D.N.Y. 1993). Thus, privileged information may be placed at issue where a party's "good faith belief in the lawfulness of his conduct[] is relied upon in support of a claim or defense." Scott v. Chipotle Mexican Grill, Inc., 67 F. Supp. 3d 607, 611 (S.D.N.Y. 2014) (quoting Leviton Manufacturing Co. v. Greenberg Traurig LLP, No. 09 Civ. 8083, 2010 WL 4983183, at *3 (S.D.N.Y. Dec. 6, 2010)); see also 2002 Lawrence R. Buchalter Alaska Trust v. Philadelphia Financial Life Assurance Co., No. 12 Civ. 6808, 2016 WL 1060336 (E.D.N.Y. March 11, 2016) ("[I]mplied reliance [on advice of counsel sufficient to waive privilege] is confined to situations involving a party's state of mind concerning a question of law, such as the party's belief as to the lawfulness of its conduct."); Arista Records LLC v. Lime Group LLC, No. 06 Civ. 5936, 2011 WL 1642434, at *2 (S.D.N.Y. Apr. 20, 2011) ("[A] party may not assert that it believed its conduct was lawful, and

simultaneously claim privilege to block inquiry into the basis for the party's state of mind or belief." (citing Bilzerian, 926 F.2d at 1292)).[5] As noted, the paramount consideration is "[w]hether fairness requires disclosure," which must be determined "on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted." In re Grand Jury Proceedings, 219 F.3d 175, 183 (2d Cir. 2000).

The question here, then, is whether Forest's factual assertions in this litigation regarding the infringement settlements -- that its settlement positions were based on its assessment of the likely outcomes of the actions, that the '703 patent was valid, that the settlements were made in good faith in

---

[5] Forest argues that County of Erie requires the party seeking waiver of privilege to "show that the privilege holder actually relied on the advice of counsel in forming [its] defense." (Defendants' Opposition to Direct Purchaser Plaintiffs' Motion to Compel Production of Documents ("Def. Memo.") at 17-18). However, as the court in MBIA Insurance Corp. v. Patriarch Partners VIII, LLC, recognized, County of Erie "reaffirmed" Bilzerian, a case in which "the privilege was waived even though the defendant did not rely on any privileged communications," and cited with approval the formulation that attorney-client privilege is waived "when a party uses an assertion of fact to influence the decisionmaker while denying his adversary access to privileged material potentially capable of rebutting the assertion." MBIA Insurance, No. 09 Civ. 3255, 2012 WL 2568972, at *6 (S.D.N.Y. July 3, 2012) (quoting County of Erie, 546 F.3d at 229). Moreover, "After [County of Erie], the Southern District has continued to recognize the broader principles endorsed by the Second Circuit." MBIA Insurance, 2012 WL 2568972, at *7 (collecting cases); see also Scott, 67 F. Supp. 3d at 610-11.

8

light of these and other business concerns, and the like -- can only be tested by recourse to attorney-client communications or attorney work product as to the strength of the patent and the legality of the settlement.

Forest first argues that the plaintiffs' motion, which comes at the outset of discovery and therefore before it is clear "what, if any, specific subjective beliefs regarding the strength of the patent or likelihood of success in the patent litigations may become relevant," is a stratagem "to leverage Forest into abandoning legitimate defenses." (Def. Memo. at 8). This argument is, it appears, closely tied to Forest's contention that its "routine assertion of affirmative defenses, and general references to settlements of the underlying patent case, does not amount to affirmatively putting at issue privileged information, such as Forest's communications with counsel regarding the strength of its patent[] [or] its likelihood of success in the patent litigation." (Def. Memo. at 11).

There is merit to Forest's position. To be sure, Forest has done more here than merely deny the plaintiffs' allegations or assert affirmative defenses, see County of Erie, 546 F.3d at 229 ("A mere indication of a claim or defense [] is insufficient to place legal advice at issue."); In re Veeco Instruments, Inc. Securities Litigation, No. 05 MD 1695. 2007 WL 7630569, at *8

(S.D.N.Y. June 28, 2007) ("[N]owhere in Bilzerian or its progeny does the Second Circuit suggest that a plaintiff has any right to preclude a defendant from simply denying the allegations set forth in the plaintiffs complaint, or explaining why it believed its factual certifications were made in good faith."), abrogated on other grounds by Acticon AG v. China North East Petroleum Holdings Ltd., 692 F.3d 34 (2d Cir. 2012); it has argued in its papers on cross-motions for summary judgment that it settled the patent litigations after assessing its likelihood of success in those actions and the strength of its patent. However, Forest also argues that it can support "all of [its] defenses and assertions to date" with what it calls "objective evidence," including the presumption of validity inhering in the issuance of the patent, the history of the patent's issuance, and "the factual evidence at issue in the patent case (e.g., expert reports, deposition testimony, briefing, rulings on claim construction, and the like)." (Def. Memo. at 14 (emphasis omitted)). That is, Forest argues that it has not yet necessarily injected its subjective views of the strength of the '703 patent or of its litigation positions in the infringement action into this action.

The plaintiffs counter that "[w]hat triggers the waiver is not the type of evidence that a party selectively offers to prove an issue, but the issue that the party is seeking to prove (i.e.,

10

its subjective intent and state of mind)." (Reply at 8). This is correct, as far as it goes. But the cases recognize that a litigant may sometimes use certain kinds of evidence[6] and argument to show good faith, for example, without waiving privilege. In County of Erie, the Second Circuit noted that the trial court in Bilzerian "correctly held that if [the defendant] asserted his good faith, the jury would be entitled to know the basis of his understanding that his actions were legal." County of Erie, 546 F.3d at 228 (quoting Bilzerian, 926 F.2d at 1294). However, "the defendant's privileged communications [would be left] intact if he merely denied criminal intent but did not assert good faith or if he argued good faith only through defense counsel and the examination of witnesses." Id.; see also Holman v. Experian Information Solutions, Inc., No. C 11-180, 2012 WL 2501085, at *5 (N.D. Cal. June 27, 2012) ("During oral argument, Experian unequivocally stated to the court that it will not rely on an advice of counsel defense for any purpose in this case. Experian

---

[6] I am not certain that describing this evidence as "objective" is particularly useful, see, e.g., McLaughlin v. Lunde Truck Sales, Inc., 714 F. Supp. 916, 919 (N.D. Ill. 1989) ("The supposed 'objective'–'subjective' dichotomy is in a way illusory." (quoting Southwire Co. v. Essex Group, Inc., 570 F. Supp. 643, 649 (N.D. Ill. 1983)), and I do not here determine whether the types of evidence Forest has listed would preserve privilege. The parameters of the types of information that Forest may use without waiving privilege are explained more fully below.

further represented that expert witness testimony would be confined to industry practices in the context of the ongoing [related] litigation, and would not be offered on the question of what Experian's lawyers did or what a reasonable lawyer would have done. Based on those representations, the court finds that Experian has not placed attorney advice at issue and that there is no implied waiver of the attorney-client privilege."); Order on Motion for Production or Preclusion at 3, United Food & Commercial Workers Local 1776 & Participating Employers Health and Welfare Fund v. Teikoku Pharma USA, Inc., No. 14-md-2521 (N.D. Cal. Dec. 3, 2015), attached as Exh. D to Declaration of Kevin C. Adam dated May 3, 2017 ("[D]efendants will generally be entitled to assert the attorney-client privilege and work product protection for documents and communications regarding the [underlying patent infringement] litigation and settlement only if they continue to avoid reliance on their subjective beliefs, including expert testimony about their subjective beliefs, in proving their affirmative defenses. Also, . . . defense experts will not be able to opine about [the defendant's] litigation uncertainty [or] . . . what they would have advised . . . regarding the status of the [ANDA] litigation. Defense experts will otherwise be able to opine about the procompetitive merits of the settlement.").

In In re Lidoderm Antitrust Litigation, which, like this

action, alleged an anticompetitive patent infringement settlement, the court found that a

> party cannot testify to its subjective beliefs about the reasons for entering into the settlement and preclude its adversaries from discovering the content of the lawyers' advice by simply asserting that the attorney-client advice was irrelevant to those subjective beliefs. Instead, when the record shows that attorney-client advice played a significant role in formulating a party's subjective beliefs on central issues in the case, the adversaries are entitled to disclosure of the otherwise privileged material to test the credibility of those subjective beliefs. But if a party relies solely on objective evidence, or subjective beliefs derived exclusively from business judgment and experience, the attorney-client privilege should be protected.

No. 14-md-2521, 2016 WL 4191612, at *1 (N.D. Cal. August 9, 2016). So, for example, although there was "no doubt . . . that business advice and non-legal facts were considered by settlement decision-makers," the court held that

> if defendants inject their subjective beliefs on specific topics as part of their defense of the [patent infringement] settlement -- like a subjective belief that patent litigation is inherently uncertain -- where evidence establishes that the subjective belief was also informed by attorney advice, it would be unfair to not allow plaintiffs access to defendants' contemporaneous attorney-client information to test the veracity of the defendants' justifications in this litigation even though that belief is based in part on business judgment and executive experience.

Id. at *5. In order to determine whether attorney-client communications were put at issue, the court required the defendants to provide a list of "subjective beliefs" that they planned to

13

rely on in their defense. See id. The court then evaluated, in light of the discovery already completed, whether those subjective beliefs could be based exclusively on business judgment or necessarily implicated attorney-client communications. See id. at *5-21.

Given the current stage of discovery and Forest's representations, I cannot determine that Forest has broadly waived attorney-client privilege and work product protection at this time. However, the schedule in this action is constricted, with fact discovery closing on July 21, 2017, expert discovery closing on October 17, 2017, and the case trial-ready in January 2018. (Amended Case Management Order dated May 18, 2017; Minute Entry dated Dec. 16, 2016; Memorandum Endorsement dated Dec. 13, 2016). Therefore, I concur with the plaintiffs' suggestion that Forest disclose any subjective beliefs it will rely on in its defense of this action within two weeks of the date of this order.[7] (Reply at 10).

Let me be clear: it is Forest's burden to establish that it has not waived privilege. See, e.g., Norton v. Town of Islip, No. 04 CV 3079, 2015 WL 5542543, at *3 (E.D.N.Y. Sept. 18, 2015) ("Just

---

[7] I expect that Forest will list the defense, noted above, that it has already raised in its papers on the pending summary judgment motions.

as the party asserting privilege has the burden of establishing it, that party 'also bears the burden of demonstrating that it has not been waived.'" (quoting HSH Nordbank AG New York Branch v. Swerdlow, 259 F.R.D. 64, 70 (S.D.N.Y. 2009))). It is not acceptable for Forest to take the position "'Trust us. The justifications we are putting forward here *are* why we settled." Lidoderm, 2016 WL 4191612, at *6. Thus, Forest will have to back up with argument and evidence any contention as to why the "subjective beliefs" on which it plans to rely do not, in fact, implicate privileged communications based on the guidelines applied in Lidoderm and similar cases. If there are disputes as to this issue, I will resolve them after receiving submissions on a truncated briefing schedule.

Conclusion

The plaintiffs' motion to compel (Docket No. 197) is denied, and the parties shall comply with the procedures set forth above to achieve final resolution of the privilege waiver issue.

SO ORDERED.

*James C. Francis IV*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          May 19, 2017

Copies transmitted this date:

Bruce E. Gerstein, Esq.
Dan Litvin, Esq.
Joseph Opper, Esq.
Noah H. Silverman, Esq.
Kimberly M. Hennings, Esq.
Garwin Gerstein & Fisher, L.L.P.
1501 Broadway Suite 1416
New York, NY 10036

Heather McDevitt, Esq.
Jack Pace, Esq.
Peter J. Carney, Esq.
Martin M. Toto, Esq.
Kristen O'Shaughnessy, Esq.
Ryan P. Johnson, Esq.
Michael E. Hamburger, Esq.
Charles C. Moore, Esq.
White & Case LLP
1221 Ave of the Americas
New York, NY 10020

John M. Gidley, Esq.
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Kevin C. Adam, Esq.
White & Case LLP
75 State Street
Boston, MA 02109