**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE NAMENDA ANTITRUST LITIGATION** | **No. 1:15-CV-07488-CM-JCF** |

## DIRECT PURCHASER CLASS PLAINTIFFS' EMERGENCY MOTION FOR A SCHEDULE EXTENSION

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................... 1

II.     BACKGROUND ..................................................................................................... 1

III.    ARGUMENT ........................................................................................................... 6

        A.      Plaintiffs Have Been Diligent and Have Thus Satisfied the "Good Cause"
                Requirement of Rule 16(b)(4). ................................................................... 6

        B.      The Secondary Rule 16(b)(4) Factors Are All Satisfied as Well ............................. 9

        C.      Plaintiffs Would Be Severely Prejudiced Without an Extension ............................. 9

        D.      Relief. ........................................................................................................... 10

IV.     CONCLUSION ........................................................................................................ 10

## I.     INTRODUCTION

Pursuant to this Court's Amended Case Management Order (ECF. No. 248), discovery is set to close in fourteen days, on July 21, 2017. Because of Defendants' delay in complying with its discovery obligations, as described more fully below, and despite Direct Purchaser Class Plaintiffs' ("Plaintiffs") diligence, there is no scenario in which Plaintiffs can be afforded a reasonable opportunity to take the discovery in this case to which they are entitled within the remaining time frame. Plaintiffs respectfully request a reasonable extension of the schedule of three months (as explained below) and an expedited briefing schedule and hearing to address the issues herein.

## II.    BACKGROUND

Most of the factual background necessitating this request is set forth in Plaintiffs' letters to the Court dated June 20, 2017 and June 27, 2017. Plaintiffs incorporate those letters by reference and set forth some additional circumstances further prejudicing Plaintiffs that arose since Plaintiffs submitted their letters.

Defendants Forest Laboratories, Inc., Forest Laboratories, LLC, Forest Laboratories Holdings Ltd., and Actavis plc (collectively "Forest" or "Defendants") have employed a strategy of extreme delay in document production, identification of persons with knowledge of the facts relating to Plaintiffs' claims, and in making knowledgeable witnesses available for depositions. They have also obscured significant document collection and production issues relating to a server containing discoverable information that may no longer be accessible. The result is that Plaintiffs' have been frustrated in their pursuit of materials needed to prove their case before the clock runs out on discovery. In summary fashion, the timeline of events as further described in Plaintiffs' letters to the Court follows:

- **December 16, 2016:**   Judge McMahon directs the Parties to negotiate and submit a schedule that would make this case trial ready by January, 2018. In addition, Judge McMahon orders the parties to "follow the Courts Individual Rules of Practice and Rules Governing Electronic Discovery." *See* Plaintiffs' June 20 Letter at 4.

- **December 23, 2016:**   The Parties negotiate and submit a proposed case schedule pursuant to Judge McMahon's instructions that this case be trial-ready by January, 2018. *Id.*

- **December 29, 2016:**   Plaintiffs serve their Consolidated Amended First Requests for Production of Documents to Defendants ("RFPs"). *Id.* The RFPs request production of material relevant to Plaintiffs' reverse-payment claims and material from the underlying patent litigations between Defendants and their generic competitors.

- **January 20, 2017:**      Defendants stated that they would agree to select search terms in consultation with Plaintiffs as required by the Court's ESI rules, but Defendants renege on that commitment –not seeking input from Plaintiffs on search terms until Plaintiffs moved to compel production of materials referenced below.

- **January 30, 2017:**      Defendants serve their responses and objections to Plaintiffs' RFPs, objecting and refusing to produce on relevance grounds, documents responsive to RFPs 58, 59 and 63 regarding (1) the legal, financial, regulatory and commercial impact of the patent settlements ███████ ██████       (2) the negotiation of the patent settlements ████████ and (3) litigation expenses, ████████ *Id.*

- **February 1, 2017:**      Defendants serve their Responses to Rules 1 and 2 of the Court's Rules Governing Electronic Discovery, failing to disclose a problem "reasonably anticipated to arise in connection with e-discovery." *Id.* The "reasonably anticipated" problem is discussed more fully below.

- **January 30, 2017:**      April 12, 2017:        The parties meet and confer regarding Plaintiffs' RFPs. *See, generally*, Exhibit D to Defendants' June 27 Letter to the Court (referencing additional, earlier correspondence between the parties); Exhibits A and B to Plaintiffs' June 27 Letter to the Court.

- **April 3, 2017:**        The date for substantial completion of document production pursuant to the original scheduling order. *See* ECF No. 128. By April 3, 2017, Defendants have produced approximately ████████████ but no documents responsive to RFPs 58, 59 and 63. ████████████████ ████████████

2

- April 12, 2017:        Plaintiffs file a motion to compel production of documents responsive to RFPs 58, 59, and 63. *See* Plaintiffs June 20 Letter at 2, 4.

- April 17, 2017:        Defendants agree to search for and produce documents responsive to RFPs 58, 59, and 63. *Id*. at 1 n.5, 5.

- May 4, 2017:        Forest informs Plaintiffs that no documents matching the previously agreed upon search terms exist responsive to RFP requests 58, 59 and 63 that were not already produced pursuant to a prior production of material from the NYAG injunction action against Defendants. Defendants claimed to have run the agreed-upon searches and discovered *no* additional documents even though the NYAG documents pertained ████████████████████████████████, █████████████████, and forecasting documents would have been generated between 2008-2010. *See* Plaintiffs' June 20 Letter at 5; *Id*. at Exhibit 5 at 3.

- May 9, 2017:        Plaintiffs serve document subpoenas on Forest's outside counsel that represented it during the patent litigation and settlement negotiations for copies of documents responsive to the categories of documents sought by RFPs 58, 59 and 63. *See* Plaintiffs' June 20 Letter at 5-6. These law firms, and other third party generic subpoena recipients begin producing a limited number (e.g., ████████████████████████████████ of documents which reflect ████████████████████████████████████████████ that Forest represented did not exist or could not be found in their files. *Id*. at 6-7.

- May 9, 2017 and May 31, 2017:        Plaintiffs inquire from Defendants why material produced from third parties that was responsive to Plaintiffs' searches was not produced by Defendants, who had earlier represented that they had no such documents. *Id*. at 6.

- May, 2017:        Defendants sent notice letters to the parties to the Namenda patent dispute, seeking permission to disclose material to Plaintiffs pursuant to Plaintiffs' December 2016 RFPs. *See* Plaintiffs' June 27 Letter at 6; Defendants' June 27 Letter at 5. This occurred weeks after the April 3 substantial completion deadline. Defendants' obligation under the protective order governing the patent litigation to seek such permission arose in December, when Plaintiffs served their RFPs. *Id*.

- June 6, 2017:        Defendants disclose for the first time that they were experiencing issues accessing documents from custodians who would have information concerning Plaintiffs' RPFs 58, 59 and 63. *Id*. at 7. Defendants were required to disclose these issues no later than February 1, 2017, but should have disclosed them earlier – when the parties were negotiating a discovery schedule in December, 2016 and a revised discovery schedule in May, 2017, which is now operative. *See* ECF No. 248.  Defendants later acknowledge they were aware of the "technical issues" as early as March 2015. Plaintiffs' June 20 Letter at 7.

- June 12, 2017:        Defendants respond to Plaintiffs interrogatories informing Plaintiffs for the first time that certain of its former employees, including ███████, would be "knowledgeable" of ███████████████████████████, which Plaintiffs allege constitutes part of the reverse-payment intended to induce Mylan to forego its patent challenge and delay coming to market with a generic version of Namenda IR. *See, infra*. Mylan was the last of the first-filing generics to settle the patent litigation with Forest.

- June 16, 2017:        In response to an inquiry from Plaintiffs, ████████████████████████████████████████████████████████████. Plaintiffs' June 20 Letter at 7.

- June 20 – 27, 2017:   The parties exchange letters to the Court regarding some of the events referenced above.

Subsequent to the filing of the Parties' letters to the Court, and notwithstanding the scheduling order that required Defendants to substantially complete document production by April 3, 2017, the following has occurred, which has further frustrated and prevented Plaintiffs from obtaining reasonable and adequate discovery in this case. Specifically:

- June 23, 2017 and June 30, 2017:    Defendants produce approximately ████████████████████████████ Previously their production consisted of the ███████████ referenced *supra* pertaining to the product hop and filings, pleadings and discovery from the patent litigations. The prior productions did not contain documents responsive to Plaintiffs' RFPs 58, 59 and 63. Defendants provide no explanation as to why these documents could not have been produced earlier had Defendants not asserted specious relevancy objections well into mid-April.

- June 30, 2017:        Plaintiffs send Defendants an email noting that Defendants have replaced with slip sheets certain documents Defendants deemed as "non-responsive" that, to the contrary appear to be responsive based on the metadata associated with the documents. Specifically, Plaintiffs wrote "I'd like to point you to document FRX-AT-03521494 and its attachments, including one entitled ████████████████████████ (FRX-AT-03521527). These attachments have not been produced and have instead been replaced with a slip-sheet that states "non-responsive." Due to the time-crunch, we need to know as soon as possible, preferably by Wednesday but sooner if possible, whether it is Defendants' position that documents relating to the ███████████████████████████ are non-responsive and therefore not subject to production." *See* Exhibit A hereto. Plaintiffs have alleged that ██████████████████████████████ may constitute

reverse-payments. *See, e.g.,* Mem. in Supp. of Defs.' Forest and Merz's Mot. to Dismiss Indirect Purchaser Pls.' Class Action Compl. and Direct Purchaser Plaintiffs' First Am. Class Action Compl., December 22, 2015 at 10-11, ECF No. 57.

- June 30, 2017: ███████████████████████████████████████████ ███████████████████████ *See* Plaintiffs' June 27 Letter at 5; Plaintiffs' June 20 Letter at 8, n.48. Instead, counsel for Defendants state that the privilege log will arrive by July 7, 2017, with an additional roughly ████████████ that Forest initially determined to be privileged in their entirety. Defendants further inform counsel for Plaintiffs that the purportedly non-responsive material was indeed responsive and will be produced. Counsel for Defendants also state that they will go through the remainder of the material it designated as non-responsive to determine whether additional ██████ documents have been withheld as non-responsive. Plaintiffs have not, to date, received production of documents mistakenly identified as non-responsive, and have not had an opportunity to review these potentially highly relevant materials.

- July 5, 2017:        Counsel for Plaintiffs send counsel for Defendants an email explaining that based on Plaintiffs' initial review of the ████████████ just produced, it appears that █████████████████████████████████ Plaintiffs noted that "Defendants first disclosed ███████ 'knowledge' of these deals in their June interrogatory responses (along with ████████████████████) but it was not until Defendants' recent productions that it became evident that there may be a gap pertaining to the ████████████ potentially comprised of ████████ documents and communications. It does not appear from the metadata that ██████ was a custodian for production." Plaintiffs request that "Defendants review ████████ files and prioritize them for production." *See* Exhibit B, hereto.

In sum, from the outset of this litigation Plaintiffs have proceeded with unabiding diligence to obtain reasonable discovery, yet will be forced to process ████████ of just-produced documents, prepare their deposition strategies, and take depositions in the two week period that remains before the close of fact discovery. Plaintiffs have done all they could to obtain the discovery they need within a reasonable time. Defendants, however, have frustrated Plaintiffs' attempts and failed to comply with their discovery obligations and the scheduling orders of the Court, most notably producing nearly ██████████████████ almost three months after document production should have been substantially completed and two

5

weeks before the close of fact discovery. Without an extension, Plaintiffs will be denied an adequate opportunity to conduct meaningful discovery contrary to what the discovery rules permit. *See Tse v. UBS Fin. Servs.*, 568 F. Supp. 2d 274, 306 (S.D.N.Y. 2008) ("Ordinarily, our system of justice relies on the adversarial process of cross-examination and the submission of contrasting evidence by the opposing party to ferret out false or misleading testimony. But that process only works effectively if the rules of discovery that permit an adversary an adequate opportunity to prepare are scrupulously followed.").

## III.   ARGUMENT

Under Federal Rule of Civil Procedure 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." In this Circuit, "the [] 'good cause' inquiry is primarily focused upon the diligence of the movant in attempting to comply with the existing scheduling order and the reasons advanced as justifying that order's amendment." *Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*, 2012 U.S. Dist. LEXIS 178205, at *5 (S.D.N.Y. Dec. 13, 2012) (Francis, J.), quoting *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 79-80 (S.D.N.Y. 2012). Secondary factors "include[] whether the request is opposed, whether the non-moving party would be prejudiced, and whether further discovery is likely to lead to relevant evidence." *Soroof Trading Dev. Co.*, 2012 U.S. Dist. LEXIS 178205, at *6, citing *Callaway Golf Co. v. Corporate Trade, Inc.*, No. 10 Civ. 1676, 2011 U.S. Dist. LEXIS 44756, 2011 WL 1642377, at *4 (S.D.N.Y. April 25, 2011).

### A.   Plaintiffs Have Been Diligent and Have Thus Satisfied the "Good Cause" Requirement of Rule 16(b)(4).

As clearly demonstrated above and in Plaintiffs' June 20 and June 27 Letters to the Court, Plaintiffs have pursued the required discovery relentlessly. On December 29, 2016, Plaintiffs served Defendants with Plaintiffs' RFPs. Defendants responded to Plaintiffs' RFPs on January

31, 2017, objecting on relevance grounds to RFP Nos. 58, 59 and 63, the key reverse-payment related RFPs. As set forth in Plaintiffs' Memorandum in Support of their Motion to Compel, ECF No. 202, Plaintiffs engaged in meet and confers with Defendants while simultaneously seeking relevant documents, including with respect to some of the same issues as Plaintiffs' RFPs, from third parties. *See, e.g.*, Exhibit 6 to Plaintiffs' June 20, 2017 Letter. When those meet and confers stalled, Plaintiffs filed a motion to compel production of documents responsive to RFP Nos. 58, 59 and 63. *See* ECF No. 202 at 12-19.

Defendants almost instantly agreed to "suspend Forest's opposition" to DPPs Motion to Compel (ECF No. 201) and to search for and produce documents responsive to the aforementioned RFPs. *See¸ supra* at 3. Then, on May 4, Forest stated that no additional documents were found. *Id*. Sensing that something was amiss based on their ample experience in reverse-payment antitrust cases, Plaintiffs immediately pursued these materials from other sources, *e.g.*, Forest's outside counsel and the generic competitors Forest had sued for patent infringement. *Id*. When these third parties began to produce limited settlement negotiation documents (among other information), Plaintiffs immediately sought an explanation from Defendants. *Id*. It was only then that Defendants disclosed technical issues in its document collection process, that had they been disclosed earlier (and Forest knew about them as early as March, 2015 – *id.*), could have been weighed by Plaintiffs and the Court in setting a schedule. Moreover, pursuant to the Court's standing ESI Order, Forest was required to disclose the problem, or "anticipated problem" as soon it became aware of it.[1] And then, notwithstanding these technical issues, almost three months after document production should have been substantially complete and just two-three weeks before the close of fact discovery Defendants

---

[1] Judge McMahon's Rules Governing Electronic Discovery at 1.g., available at http://www.nysd.uscourts.gov/cases/show.php?db=judge_info&id=262, last accessed July 7, 2017.

produced approximately ███████ documents. They have further advised Plaintiffs to expect an additional ██████ documents and a privilege log within the next few days. *Id*. Given these circumstances, Plaintiffs cannot not be expected to conduct adequate discovery without an extension.

There is nothing more Plaintiffs could have done to obtain the needed discovery with any more reasonable dispatch. The circumstances are akin to *Khan v. McElroy*, 2014 U.S. Dist. LEXIS 112304, at *7-9 (S.D.N.Y. Aug. 6, 2014) (Francis, J.) in which this Court found the good cause requirement satisfied when the plaintiff, despite efforts to ascertain pertinent facts regarding a non-party's connection to the litigation "reasonably promptly," could only confirm that information until "just a month" before the discovery cut-off. Because the plaintiff was diligent in seeking information regarding the propriety of adding an additional party, the Court permitted an extension of the discovery deadline. *See also Genova v. City of Glen Cove*, No. 13-cv-4088 (JMA)(SIL), 2015 U.S. Dist. LEXIS 141830, at *9 (E.D.N.Y. Oct. 19, 2015) (discovery extended where documents subject to a motion to a compel were produced without sufficient time in advance of the close of discovery); *Aloi v. Moroso Inv. Partners, LLC*, Civil Action No. DKC 11-2591, 2013 U.S. Dist. LEXIS 182055, at *21-22 (D. Md. Dec. 31, 2013) (good cause shown where extension is a result of "Defendants' delay in responding to discovery requests."); *Nat'l Prods., Inc. v. Aqua Box Prods.*, LLC, No. C12-605 RSM, 2013 U.S. Dist. LEXIS 4822, at *8 (W.D. Wash. Jan. 11, 2013) (mediation deadline extended where defendant delayed production of documents sufficiently in advance thereof.); *Adams v. Sharfstein*, No. CCB-11-3755, 2012 U.S. Dist. LEXIS 100366, at *23-24 (D. Md. July 19, 2012) (failure to produce documents sufficient basis for an extension.).

### B.     The Secondary Rule 16(b)(4) Factors Are All Satisfied as Well.

The secondary factors in determining whether an extension is appropriate are all met. While Defendants may take issue with Plaintiffs' characterization of events (and they have done so – *see* Defendants' June 27, 2017 Letter to the Court), it is Plaintiffs' understanding that Defendants would be amenable to an overall extension of the schedule (albeit for a shorter period than requested herein). *See* ECF No. 299.[2]

Nor would Defendants be prejudiced by an extension. An extension would merely serve to alleviate the substantial likelihood of prejudice Plaintiffs face and would have no effect on the Defendants' ability to pursue their defenses.

Finally, the voluminous discovery Plaintiffs just received and will receive, appear on initial review to contain documents responsive to RFPs 58, 59 and 63 relating to Plaintiffs' reverse-payment claims. The relevance element is therefore satisfied. *See* Plaintiffs' April 12, 2017 Memorandum in Support of their Motion to Compel (ECF No. 202) and Plaintiffs June 20 and June 27 Letters (explaining the relevance of these RFPs). Plaintiffs should be entitled to more than just three weeks (one to two weeks in the case of material yet to be produced) to review and analyze the ██████████████████████, that Defendants were apparently unable or unwilling to find and produce until now.

### C.     Plaintiffs Would Be Severely Prejudiced Without an Extension.

In addition to the obvious prejudice to Plaintiffs' inherent in Defendants' last minute "document dump", Plaintiffs will be prejudiced because they are left without recourse, if necessary, to challenge Defendants' yet to be produced privilege log, and any documents Defendants have improperly designated as "non-responsive."

---

[2] On July 6, 2017, Plaintiffs asked Defendants whether they would consent specifically to the three month extension requested herein. On July 7, 2017, Defendants indicated that they would not oppose an extension of 4-6 weeks but would oppose an extension of three months.

**D.   Relief.**

Plaintiffs believe that the appropriate relief, for now – e.g., reserving all rights to seek appropriate remedies or sanctions under Rule 37 where warranted, – would be to extend all scheduled deadlines by three months. The three months represent roughly the difference between the date substantial document production should have been completed (April 3, 2017) and the date when Defendants appear to have substantially completed document production (at some point in the coming days).   A copy of the proposed amended Scheduling Order is submitted herewith as Exhibit C.[3]

**IV.   CONCLUSION**

For the reasons stated herein, Plaintiffs respectfully request an extension of all dates and/or deadlines in the Scheduling Order by three months, or for whatever relief the Court otherwise deems appropriate.[4] Plaintiffs further request an expedited briefing and hearing schedule.

Dated:      July 7, 2017

Respectfully Submitted:

Dan Litvin

---

[3] If the Court is unwilling to extend the discovery cut-off, then it may consider other sanctions. For example, in *Techsavies, LLC v. WDFA Mktg.*, No. C10-1213 BZ, 2011 U.S. Dist. LEXIS 152833, at *3 (N.D. Cal. Feb. 23, 2011), the defendant produced substantial material shortly before the close of discovery. The court "barred [defendant] from introducing, either in defense of plaintiff's claims or in support of its counterclaims, any document which it should have produced" earlier. The Court has the power to fashion similar sanctions under its inherent authority to manage its affairs. *See Cat3, Ltd. Liab. Co. v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 501-02 (S.D.N.Y. 2016) (Francis, J.). *See also Eli Lilly & Co. v. Reddy's Labs., Ltd.*, No. 1:16-cv-0308-TWP-DKL, 2017 U.S. Dist. LEXIS 64726, at *28-29 (S.D. Ind. Apr. 28, 2017) (where court was unwilling to push back trial date, it barred patent-plaintiff from asserting certain theories at trial that were not disclosed sufficiently in advance of the end of discovery.).

[4] Pursuant to SDNY Local Civil Rule 16.2, in "any case referred to a Magistrate Judge, the Magistrate Judge may issue or modify scheduling orders pursuant to Fed. R. Civ. P. 16(b)." *See also* ECF No. 191, referring this case to Magistrate Judge James C. Francis IV for general pretrial matters "including scheduling, discovery, non-dispositive pretrial motions, and settlement").

**Rochester Drug Co-Operative, Inc. and the Proposed Class**

David F. Sorensen
Daniel C. Simons
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
(215) 875-4604 (fax)
dsorensen@bm.net
dsimons@bm.net


Peter Kohn
Joseph T. Lukens
Faruqi & Faruqi, LLP
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046
(215) 277-5770
(215) 277-5771 (fax)
pkohn@faruqilaw.com
jlukens@faruqilaw.com

**JM Smith Corporation d/b/a Smith Drug Company and the Proposed Class**

Bruce E. Gerstein
Joseph Opper
Kimberly M. Hennings
Dan Litvin
Garwin Gerstein & Fisher LLP
88 Pine Street, 10th Floor
New York, NY 10005
Tel: (212) 398-0055
Fax: (212) 764-6620
bgerstein@garwingerstein.com
jopper@garwingerstein.com
khennings@garwingerstein.com
dlitvin@garwingerstein.com

David C. Raphael, Jr.
Erin R. Leger
Smith Segura & Raphael, LLP
3600 Jackson Street, Suite 111
Alexandria, LA 71303
Tel: (318) 445-4480
Fax: (318) 487-1741
draphael@ssrllp.com


Stuart E. Des Roches
Andrew W. Kelly
Odom & Des Roches, LLC
650 Poydras Street, Suite 2020
New Orleans, LA 70130
Tel: (504) 522-0077
Fax: (504) 522-0078
stuart@odrlaw.com

Russ Chorush
Miranda Jones
Heim Payne & Chorush, LLP
600 Travis, Suite 6710
Houston, TX 77002
Tel: (713) 221-2000
Fax: (713) 221-2021
rchorush@hpcllp.com

## CERTIFICATE OF SERVICE

    I, Dan Litvin, hereby certify that I served a copy of this Memorandum on all counsel via electronic mail.

Dated:      July 7, 2017

 

_____
Dan Litvin