USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/2/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - :

IN RE NAMENDA DIRECT PURCHASER    :    15 Civ. 7488 (CM) (JCF)
ANTITRUST LITIGATION              :
                                  :          MEMORANDUM
                                  :          AND  ORDER
                                  :
                                  :
- - - - - - - - - - - - - - - - - - :

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

The plaintiffs in this putative class action allege, in relevant part, that the defendants -- Actavis plc (now known as Allergan plc), Forest Laboratories, LLC, Forest Laboratories, Inc., and Forest Laboratories Holdings Ltd. (together, "Forest") -- schemed to delay entry of generic versions of the brand-name Alzheimer's disease treatment Namenda IR by entering into collusive settlements with various generic drug companies. Before me now is a motion to compel concerning a residual dispute following my decision of May 19, 2017, which found that Forest had not (yet) waived protection of attorney work product or attorney-client communications by putting them at issue. In re Namenda Direct Purchaser Antitrust Litigation, No. 15 Civ. 7488, 2017 WL 2226591 (S.D.N.Y. May 19, 2017). At this time, the plaintiffs' motion to compel is denied.

Background

As noted in my earlier opinion, the plaintiffs contended that

1

a number of Forest's central defenses in this action relied on Forest's assessment of the legal merits of the underlying patent litigation between Forest and the generic drug companies, which would implicate counsel's advice. Id. at *2. Forest countered that it "ha[d] not yet necessarily injected [into this litigation] its subjective views of the strength of the [relevant] patent or of its litigation positions in the [underlying] infringement action," noting that it could support its defenses with "objective evidence," such as the presumption of patent validity, the prosecution history of the patent, and factual material from the patent litigation. Id. at *4.

I found that, given the "stage of discovery and Forest's representations, I [could not] determine that Forest ha[d] broadly waived attorney-client privilege and work product protection." Id. at *5. Adopting a strategy used in In re Lidoderm Antitrust Litigation, No. 14-md-2521, 2016 WL 4191612 (N.D. Cal. Aug. 9, 2016), I required Forest to "disclose any subjective beliefs it will rely on in its defense of this action." Namenda, 2017 WL 2226591, at *5.

Forest did so, asserting that it would rely on "evidence from its current or former business executives or employees" to rebut (1) argument that its business deals were "motivated by illegitimate or anti-competitive justifications," (2) allegations

that "its conduct with respect to the Namenda patent litigations was anything but routine behavior" under the patent regime governing entry of generic drugs into the market, and (3) allegations that "the Namenda IR patent litigation settlement agreements provided generic competitors any consideration beyond the express terms of each of the final agreements." (Forest's Disclosure Pursuant to the May 19, 2017 Memorandum and Order ("Def. Disclosure"), attached as Exh. A to Memorandum in Support of Direct Purchaser Plaintiffs' Motion to Compel Production of Documents ("Pl. Initial Memo."), at 4-5).

The plaintiffs promptly filed a motion to compel seeking an "Order finding that [Forest] may not withhold factual information regarding its subjective intent evidence" even if that factual information "is embedded in attorney-client communications and/or attorney documents." (Pl. Initial Memo. at 3, 9). In response, Forest asserted that it had repeatedly committed to producing non-privileged documents responsive to the plaintiffs' requests, including redacted versions of documents containing privileged information, and that it had never argued that "non-privileged facts become privileged when communicated to a lawyer." (Defendants' Opposition to Direct Purchaser Plaintiffs' June 15, 2017 Motion to Compel Production of Documents ("Def. Initial Memo."), at 4, 6-7). Forest also made the (accurate) point that

it had neither completed production nor produced a privilege log and so the plaintiffs' "dispute" was not "ripe for the Court's review." (Def. Initial Memo. at 7). In light of Forest's representation that it would produce a privilege log on or before June 30, 2017, and would make significant production of documents in the surrounding weeks (Def. Initial Memo. at 7), I deferred resolution of the plaintiffs' motion. In mid-July, I requested that the parties update the briefing of the motion in light of the new production.

The plaintiffs' new submission focuses on Forest's argument that its business deals were not motivated by illegitimate or anti-competitive justifications, for which it "anticipates presenting evidence from its current or former executives or employees concerning the business considerations, rationales, and reasons for entering into the [settlement] agreements with [generic producers] Mylan and Orchid." (Def. Disclosure at 4). The plaintiffs contend that because this defense "place[s] at issue what Forest's management actually believed about the value and purpose of the deals," Forest must produce "factual information about such beliefs [that] are contained in attorney-client communications or attorney-created documents." (Supplemental Memorandum in Support of Direct Purchaser Class Plaintiffs' Motion to Compel Production of Documents ("Pl. Supp. Memo.") at 2).

4

Unlike in their initial submissions, where they "failed to cite a single document . . . that they believe is problematic" (Def. Initial Memo. at 7), the plaintiffs have now identified three documents or types of documents to support their hypothesis that Forest is improperly withholding information. The first is a draft slide presentation for a Mylan settlement meeting, which Forest inadvertently produced and then clawed back. (Pl. Supp. Memo. at 2-3). The second comprises up to 295 charts and spreadsheets containing financial analyses relevant to "the cost, value[], and purpose of the amendments to a prior Lexapro distribution and supply agreement, which [the] [p]laintiffs contend was a vehicle that Forest used to make a 'reverse payment' to Mylan as part of the Namenda patent settlement." (Pl. Supp. Memo. at 1, 3-4). This group includes a set of spreadsheets regarding the Lexapro amendment that was produced twice -- once in full and again with redactions. (Pl. Supp. Memo. at 3; Declaration of Dan Litvin dated July 24, 2017, Exhs. A & B). The third is an email from a former Forest in-house lawyer to Forest business executives "describing negotiations with Orchid regarding the Namenda patent-suit settlement" and a side deal concerning the drug Ceftaroline. (Pl. Supp. Memo. at 4). The plaintiffs suppose that the redactions in this email hide unprivileged factual information concerning Forest's justifications for the settlement

5

with Orchid. (Pl. Supp. Memo. at 4). Forest has since clawed back the document including this email and produced a version that redacts large swaths of the email chain, including the portion that the plaintiffs cite in their motion. (Letter of Heather K. McDevitt dated Aug. 1, 2017 ("McDevitt Letter"), at 1).

Although it is not completely clear, it appears that the plaintiffs seek a ruling that Forest has waived privilege over these documents because testing the "subjective belief" identified above can only be assessed by examining the documents. (Pl. Supp. Memo. at 2 n.3, 4-5; Pl. Initial Memo. at 7). Forest, for its part, has provided, for my in camera review, copies of the draft slide presentation and of the unredacted email chain. (McDevitt Letter & Exhs. A, C, D). As to the set of spreadsheets that was produced both unredacted and redacted, Forest has reviewed it and "agrees that [the] attachments are not privileged." (Defendants' Opposition to DPPs' Supplemental Memorandum in Support of June 15, 2017 Motion to Compel Production of Documents ("Def. Supp. Memo.") at 5). It disagrees, however, that all such charts and spreadsheets are not privileged. (Def. Supp. Memo. at 5).

Analysis

Forest's argument regarding the waiver issue is sparse. It asserts that it "agreed to forego presenting 'factual assertions' which require recourse to privileged communications, but

identified [] three narrow areas of subjective belief, all of which

turn exclusively on business judgment and experience." (Def.

Supp. Memo. at 2 (citation omitted)). According to Forest,

Lidoderm -- which Forest acknowledges provides the "framework" for

my analysis of the waiver issue (Def. Supp. Memo. at 2 (citing

Namenda, 2017 WL 2226591, at *5)) -- stands for the proposition

that "reliance on subjective beliefs to the extent they are

'derived exclusively from business judgment and experience' does

not effectuate an at issue waiver" (Def. Supp. Memo. at 3 (emphasis

omitted) (quoting Lidoderm, 2016 WL 4191612, at *1)).

The court in Lidoderm took pains to explain that the

defendants

> cannot avoid waiver by offering to rely at summary
> judgment or trial solely on non-legal justifications for
> certain subjective beliefs. There is no doubt -- given
> the question at issue is whether anticompetitive goals
> motivated defendants' settlement -- that business advice
> and non-legal facts were considered by settlement
> decision-makers. But if defendants inject their
> subjective beliefs on specific topics as part of their
> defense of the [relevant] settlement . . . where evidence
> establishes that the subjective belief was also informed
> by attorney advice, it would be unfair to not allow
> plaintiffs access to defendants' contemporaneous
> attorney-client information to test the veracity of the
> defendants' justifications in this litigation even
> though that belief is based in part on business judgment
> and executive experience.

Lidoderm, 2016 WL 4191612, at *5 (emphasis omitted). Similarly,

even subjective beliefs that "plausibly implicate only business

decisions and could have been theoretically reached without attorney-client input" may require access to attorney communications or attorney-created information, because in order to test the veracity of the defendants' asserted subjective beliefs, "other justifications that [the] plaintiffs have shown relied on attorney-client advice are also directly implicated." Id. at *6. So, for example, Lidoderm found that a defendant could not "rely on identified subjective beliefs [assertedly based on business judgment] where they are backed up by 'public statements'" without waiving privilege where there is evidence that "other motivations" influenced by attorney information "could have been at play." Id. at *8. And, perhaps more to the point, the opinion found that "the reasons, explanations, and intentions for the 'payment'    . . . to [the generic drug-maker] would appear to necessarily implicate attorney-client advice because that payment was a key, if not the central, term of the [] settlement agreement negotiated by [the] defendants' counsel." Id. at *10 (emphasis omitted). That is, Forest's promise to rely only on information from business people showing that the Lexapro agreement with Mylan and the Ceftaroline agreement with Orchid -- which are the alleged vehicles of the purportedly anticompetitive reverse payments -- were motivated by pro-competitive business concerns, does not necessarily shelter otherwise privileged information.   I am

8

therefore baffled by Forest's insistence that its position here is "consistent" with Lidoderm. (Def. Supp. Memo. at 3).

Moreover, in my prior opinion, I endeavored to be explicit in the penultimate paragraph as to Forest's responsibilities in challenging waiver:

> Let me be clear: it is Forest's burden to establish that it has not waived privilege. It is not acceptable for Forest to take the position "Trust us. The justifications we are putting forward here are why we settled." Thus, Forest will have to back up with argument and evidence any contention as to why the "subjective beliefs" on which it plans to rely do not, in fact, implicate privileged communications based on the guidelines applied in Lidoderm and similar cases. If there are disputes as to this issue, I will resolve them after receiving submissions on a truncated briefing schedule.

Namenda, 2017 WL 2226591, at *5 (citations omitted) (emphasis omitted) (quoting Lidoderm, 2016 WL 4191612, at *6). This dispute is based directly on that opinion. (Pl. Initial Memo. at 1; Pl. Supp. Memo. at 1; Def. Supp. Memo. at 1-2). And yet Forest has failed to explain, with evidence or argument (other than one based on a seeming misunderstanding of Lidoderm), why protection over the specific documents identified by the plaintiffs has not been waived.

The plaintiffs, for their part, introduce some different problems. Their initial motion was filed prematurely, prior to Forest's completion of document production or service of a

9

privilege log. (Def. Initial Memo. at 7). It argued (1) that facts included in otherwise privileged documents are not themselves privileged (Pl. Initial Memo. at 5-6), (2) that even if certain factual statements are privileged, Forest waived the privilege over such statements (Pl. Initial Memo. at 7-9), while (3) disclaiming, for the purpose of the motion, an intent to seek "legal analysis or legal advice" in connection with the underlying patent cases (Pl. Initial Memo. at 3). To the extent that the plaintiffs intended to argue that facts can never be protected by work product immunity, they are incorrect, see, e.g., US Bank National Association v. PHL Variable Insurance Co., Nos. 12 Civ. 6811, 13 Civ. 1580, 2013 WL 5495542, at *8-9 (S.D.N.Y. Oct. 3, 2013) (citing In re Grand Jury Subpoena dated October 22, 2001, 282 F.3d 156, 161 (2d Cir. 2002), but I will leave that aside, as in their supplemental memorandum, the plaintiffs appear to abandon that argument to press the waiver issue (Pl. Supp. Memo. at 4-5), while nevertheless pointing me to the section of their initial memorandum discussing that abandoned argument (Pl. Initial Memo. at 5-6; Pl. Supp. Memo. at 2 n.3). In any case, the plaintiffs have apparently ditched that issue (for now) in anticipation of filing a later "omnibus motion" (Pl. Supp. Memo. at 4), which will presumably address waiver of privilege over legal advice and analysis, as well as matters included in a letter from the

10

plaintiffs dated June 20, 2017, and filed under seal (Letter of Dan Litvin dated June 20, 2017; Letter of Heather M. Burke dated July 24, 2017, at 1).

Of course, Forest points out that the supplemental memorandum was also filed prior to any discussion between the parties as to the documents at issue, including hundreds of charts (which the plaintiffs fail to specifically identify). (Def. Supp. Memo. at 1; Pl. Supp. Memo. at 4). This chaotic presentation of disputes and arguments is part of a pattern (which also includes the filing and subsequent withdrawal of a prior discovery motion (Order dated June 13, 2017)) that indicates a failure to engage in a meaningful process of meeting and conferring prior to requesting court intervention (Def. Initial Memo. at 4; Def. Supp. Memo. at 1). I will not accept a continuation of this paradigm, which confuses the issues and wastes judicial resources.

Conclusion

The plaintiffs' motion to compel (Docket nos. 265 and 267) is denied at this time. The dispute regarding these documents may be raised in an orderly fashion in the plaintiffs' anticipated omnibus motion. Prior to filing that motion, the parties shall meet and confer in light of the guidance provided in this Order. Indeed, the parties are cautioned that any motion that is filed prior to a meaningful meet-and-confer process may be denied on

that basis alone, and the parties shall strictly adhere to the requirements of Rule 37(a)(1) of the Federal Rules of Civil Procedure. Recalcitrance in the meet-and-confer process on the part of the non-movant -- whether for the purpose of delay, cf. In re Namenda Direst Purchaser Antitrust Litigation, No. 15 Civ. 7488, 2017 WL 3085342, at *6 n.6 (S.D.N.Y. July 20, 2017), or for any other reason -- may result in sanctions. A tight discovery schedule does not absolve the parties of the responsibility to adhere to the Court's procedural rules. Further motions seeking rulings on waiver may be asserted only "with respect to specifically identified documents or communications so that I may rule on discrete waiver assertions." Lidoderm, 2016 WL 4191612, at *1.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          August 2, 2017

Copies transmitted this date:

Bruce E. Gerstein, Esq.
Dan Litvin, Esq.
Joseph Opper, Esq.
Noah H. Silverman, Esq.
Kimberly M. Hennings, Esq.
Garwin Gerstein & Fisher, L.L.P.
1501 Broadway Suite 1416
New York, NY 10036

Heather McDevitt, Esq.
Jack Pace, Esq.
Peter J. Carney, Esq.
Martin M. Toto, Esq.
Kristen O'Shaughnessy, Esq.
Ryan P. Johnson, Esq.
Michael E. Hamburger, Esq.
Charles C. Moore, Esq.
White & Case LLP
1221 Ave of the Americas
New York, NY 10020

John M. Gidley, Esq.
White & Case LLP (DC)
701 Thirteenth Street, NW
Washington, DC 20005

Kevin C. Adam, Esq.
White & Case LLP
75 State Street
Boston, MA 02109

Heather M. Burke, Esq.
White & Case LLP
5 Palo Alto Sq.
Palo Alto, CA 94306