UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

IN RE NAMENDA DIRECT PURCHASER
ANTITRUST LITIGATION

No. 15 Civ. 7488 (CM)

------------------------------------------------------------x

# MEMORANDUM DECISION AND ORDER ADOPTING IN PART AND DECLINING TO ADOPT IN PART THE RECOMMENDATION OF MAGISTRATE JUDGE JAMES C. FRANCIS IV (DKT. NO. 335)

McMahon, C.J.:

I have received and reviewed the Report and Recommendation (Dkt. No. 335) of the Hon. James C. Francis IV, U.S.M.J., in which the learned Magistrate Judge recommends that this Court: (1) deny Defendants' motion to disqualify Plaintiffs' proposed expert, Dr. Lon Schneider (Dkt. No. 269); and (2) deny Teva Pharmaceuticals USA, Inc.'s ("Teva") motion to disqualify Plaintiffs' proposed expert, Deborah Jaskot, a former Teva executive (Dkt. No. 308).

### Dr. Lon Schneider

I accept the Report and Recommendation as it pertains to Dkt. No. 269, Defendants' motion to disqualify Dr. Lon Schneider. With no objections having been filed, the Court adopts the opinion of the learned Magistrate Judge as the opinion of the Court. Defendants' motion to disqualify Dr. Lon Schneider is DENIED.

### Deborah Jaskot

Despite the fact that no objections were filed, I cannot accept the Report and Recommendation insofar as it pertains to Ms. Jaskot. Instead, Teva's motion to disqualify Ms. Jaskot (Dkt. No. 308) is GRANTED for the following reasons.

1

## A. Case Background

For purposes of this Order, I assume familiarity with the underlying facts and analysis as set forth in Magistrate Judge Francis's Report and Recommendation. I provide background only to the extent necessary for this opinion.

This action is one in a series of suits against Defendant Actavis PLC (now known as Allergan PLC) and its wholly-owned subsidiary, Forest Laboratories, LLC (collectively, "Forest").

On December 11, 2014, my colleague, the Hon. Robert Sweet, issued a preliminary injunction against Defendants in a suit in which the State of New York alleged that Forest, a pharmaceutical manufacturer, attempted to effectuate a "hard switch" from Namenda IR, a twice-daily drug that treats moderate-to-severe stages of Alzheimer's disease, to Namenda XR, a pharmacologically identical drug only taken once a day. The State of New York alleged that Forest attempted to effectuate the illegal "hard switch" by removing Namenda IR from the market before its patent exclusivity period expired and a generic substitute to the Namenda drug became available, which would allow Forest to extend its monopoly over a leading treatment for moderate to severe Alzheimer's disease through the end of Namenda XR's patent exclusivity period in 2029. The preliminary injunction blocked Forest from restricting access to Namenda IR for the remainder of Namenda IR's patent exclusivity period.

In short order, two related lawsuits were brought in August and September 2015, respectively, by health plans that are direct and indirect purchasers of Namenda brand drugs.

On August 19, 2015, plaintiff Sergeants Benevolent Association Health and Welfare Fund, a prescription benefit drug administrator and indirect purchaser of Namenda IR, filed a complaint against Forest, Merz Pharma GmbH & Co. KGaA and Merz Pharmaceuticals GmbH

2

(collectively, "Merz"),[1] as well as several manufacturers of generic Namenda (the "Generic Defendants"). One of the defendant manufacturers is Teva. The complaint alleges that "Forest engaged in a two-part anticompetitive scheme to block generic competition to Namenda: (i) Forest conspired with at least a dozen generic manufacturers of AB-rated generic versions of Namenda IR to drop their challenges to Patent No. 5,061,703 (the '703 patent) and delay their launch until after expiration of the '703 patent; and (ii) Forest launched a new branded product, Namenda XR . . . in an effort to force conversion of the memantine hydrochloride market from Namenda IR to the clinically equivalent Namenda XR before market entry of the generic versions of Namenda IR." (Am. Compl. ¶ 4, Case No. 15-cv-6549, the "Sergeants Benevolent Action," Dkt. No. 96.)[2] The complaint asserted state law claims against Forest for monopolization (Count I), against Forest and the Generic Defendants for conspiracy to monopolize (Count II), against Forest and the Generic Defendants for unfair and deceptive trade practices (Count III), and against Forest and the Generic Defendants for unjust enrichment (Count IV). No federal claims were alleged. This Court has diversity jurisdiction under 28 U.S.C. § 1332(d).

On September 22, 2015, plaintiff J.M. Smith Corporation d/b/a, Smith Drug Company ("Smith"), a South Carolina corporation that purchased Namenda IR directly from Forest, filed the instant complaint against Forest and Merz on substantially the same grounds (the "Instant

---

[1] Merz is the German company that owned the patent on memantine and gave Forest the exclusive right to market a memantine-based drug in the U.S. under the trade name Namenda.

[2] On February 12, 2016, Sergeants Benevolent Association Health and Welfare Fund filed a First Amended Complaint naming the correct Merz entities as defendants, but making no other substantive changes. (*See* Sergeants Benevolent Action, Dkt. No. 92.)

Action").[3] The complaint did not name any of the Generic Defendants, including Teva. But it pleaded substantially the same facts as the pleading in the Sergeants Benevolent Action. The Instant Action complaint asserts federal claims, rather than state law claims, including unlawful maintenance of monopoly power under Section 2 of the Sherman Act for forcing Namenda IR consumers to switch to Namenda XR (Count I), unlawful maintenance of monopoly power under Section 2 of the Sherman Act "through an overarching scheme to prevent or delay generic competition" (Count II), unlawful maintenance of monopoly power under Section 2 of the Sherman Act for entering into agreements with generic manufacturers to delay generic entry for three months past the expiration of the '703 patent (Count III), and restraint of trade under Section 1 of the Sherman Act for entering into agreements with potential generic manufacturers to delay their entry into the market for three months beyond the expiration of the '703 patent term (Counts IV and V).

Counsel for Plaintiff Smith in the Instant Action filed a "Related Case Statement," suggesting that the matter overlapped with the Sergeants Benevolent Action and should be assigned to me. (*See* Dkt. No. 9, Instant Action.) On October 6, 2015, the actions were accepted as related and the Instant Action was also assigned to me.

Because of the substantial overlap between the two actions, this Court allowed the parties to file consolidated briefing on Defendants' motions to dismiss both actions. In their joint motion

---

[3] On December 28, 2015, Rochester Drug Co-Operative, Inc. (collectively with Smith, "Plaintiffs") filed an identical complaint against Forest and Merz. All parties stipulated to consolidation of the two duplicative actions, with the Smith Complaint serving as the operative complaint in the consolidated action (*see* Dkt. No. 12, Case No. 15-cv-10083), and an amended caption to reflect consolidation: *In Re Namenda Direct Purchaser Antirust Litigation*. (*See* Dkt. No. 22, Case No. 15-cv-10083.) On April 20, 2017, the parties entered a stipulation naming Forest Laboratories, Inc. and Forest Laboratories Holdings Ltd. as defendants to Counts III, IV, and V, and dismissing as defendants Merz Pharma GmbH & Co. KGaA and Merz Pharmaceuticals GmbH. (*See* Dkt. No. 207, Instant Action.)

4

for leave to file consolidated briefing, the parties noted that "in particular, as many allegations in the [Instant Action] and the [Sergeants Benevolent Action] overlap, this proposal would allow Defendants to efficiently brief the issues without needing to duplicate arguments." (Dkt. No. 63, Sergeants Benevolent Action.) On September 13, 2016, this Court issued a single Order denying both motions in substantial part.[4] (Dkt. No. 107, Sergeants Benevolent Action & Dkt. No. 106, Instant Action.) In that Order, this Court declined to dismiss plaintiffs' claims in the Sergeants Benevolent Action "until the [Instant Action's] federal antitrust claims [were] resolved." (*Id.* at 33.) Moreover, this Court stayed the Sergeants Benevolent Action so that the "factual record in this case is developed and the federal claims are resolved one way or another." (*Id.*)

In a Decision and Order dated May 23, 2017 (Dkt. No. 253, Instant Action), this Court denied, in relevant part, Plaintiffs' (Dkt. No. 138) and Defendants' (Dkt. No. 161) cross-motions for partial summary judgment on Count V, which alleges restraint of trade under Section 1 of the Sherman Act for entering into agreements with potential generic manufacturers to delay their entry into the market for three months beyond the expiration of the '703 patent term. This Court held:

> Whether the settlement agreements were anticompetitive or procompetitive will depend on several complex factual questions that cannot be decided on summary judgment. As the Court indicated in its earlier decision denying Defendants' motion to dismiss, Plaintiffs may have a viable Section 1 claim under the theory that the settlements contained unlawful reverse payments to Defendants' Generic Competitors in exchange for dropping their challenges to the validity of the '703 Patent. *See Namenda III*, 2016 WL 4992690, at *12-*15. Such a claim, however, will depend on the presence of 'evidence suggesting that the settlement agreements did, in fact, delay generic entry,' which will presumably require proof that the '703 Patent would likely have been found invalid or not infringed by the Generic Competitors, or that the litigation would have continued past the expiration of the thirty-month stay, or that the reverse payment at issue was large or unexplained. *Id.* at

---

[4] The Court dismissed Count II as duplicative in the Instant Action.

> *15. Resolution of these questions under a rule-of-reason analysis will
> require significantly more factual development than what is reflected in
> the present pre-discovery record.

(*Id.* at 40.) All discovery that has been taken to date may be used in both actions.

## B. Deborah Jaskot

Plaintiffs have retained Deborah Jaskot in the Instant Action as an expert on regulatory issues in the pharmaceutical industry. Ms. Jaskot spent twenty-three years in Teva's Regulatory Affairs Department – from June 1989 to November 2012 – starting as a Regulatory Affairs Associate in 1989 and working her way up to Teva's highest ranking executive in that department – Vice President of U.S. Generic Regulatory Affairs, from 2004 to 2009, and Vice President of U.S. Generic Regulatory Affairs and North American Policy, from 2009 to 2012. (Frederick Decl., Ex. H at 1.) In her role as Vice President, she was responsible for being the "primary liaison between Teva and [the Food and Drug Administration]," "overseeing a staff of 140 in the routine generic drug submission process and maintenance," "[d]esign[ing] regulatory strategies to routinely ensure timely approvals which provided quality, affordable alternatives to the consuming public," and working effectively "through complex regulatory and legal hurdles." (*Id.* at 2.) Ms. Jaskot "achieve[d] hundreds of [Abbreviated New Drug Application ("ANDA")] approvals for a vast variety of drugs and dosage forms," and "testified in 85-90 depositions during [her] career at Teva." (*Id.*)

## C. Discussion

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Under Fed. R. Civ. P. 72(b), a party may make "specific written objections to the proposed findings and recommendations" within 14 days of being served with a

copy of a magistrate judge's recommended disposition. Fed. R. Civ. P. 72(b)(2). A district court must review de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Where no party files a timely objection, the Court reviews the Report and Recommendation for clear error. *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 340 (S.D.N.Y. 2014). "A district court is justified in finding a magistrate judge's ruling clearly erroneous where, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 177 (S.D.N.Y. 2008) (internal citations and quotation marks omitted).

This is the rare case where I conclude that Magistrate Judge Francis committed clear error by recommending that the Jaskot motion be denied.

"There is no bright line rule as to when a party's expert should be disqualified due to disclosure of confidential information, and the Second Circuit has not set forth the precise test by which a district court should make the determination." *Auto-Kaps, LLC v. Clorox Co.*, No. 15 Civ. 1737, 2016 WL 1122037, at *2 (E.D.N.Y. Mar. 22, 2016). Nonetheless, "district courts in this Circuit have typically considered three elements in determining whether an expert should be disqualified due to his relationship with the adverse party . . . (1) the existence or reasonable expectation of a confidential relationship between the movant and the expert; and (2) whether the movant in fact disclosed confidential information to the expert." *Id.*; *see also Topps Co. v. Productos Stani Sociedad Anomina Indus. y Commercial*, No. 99 Civ. 9437, 2001 WL 406193, at *1 (S.D.N.Y. Apr. 20, 2001); *Hinterberger v. Catholic Health Sys., Inc.*, No. 08 Civ. 380, 2013 WL 2250591, at *6 (W.D.N.Y. May 21, 2013). As a third element, some courts also consider whether "the public [has] an interest in allowing or not allowing the expert to testify." *Grioli v.*

*Delta Int'l Mach. Corp.*, 395 F. Supp. 2d 11, 14 (E.D.N.Y. 2005); *see also Koch Ref. Co. v. Jennifer L. Boudreau M/V*, 85 F.3d 1178, 1181 (5th Cir. 1996). "The burden is on the party seeking disqualification to establish these elements." *Grioli*, 395 F. Supp. 2d at 14.

Plaintiffs do not (and cannot) dispute that Teva and Ms. Jaskot had a long-term confidential relationship. (R&R at 17.) Instead, Plaintiffs argue that (1) Ms. Jaskot was not exposed to confidential information relevant to this litigation, and, in any event, (2) Teva will not be prejudiced by her participation in this case.

Plaintiffs initially argue that Ms. Jaskot could not have received "confidential information [relevant to the Instant Action] because her employment ended in November 2012, 'before Forest began its illegal hard switch on February 14, 2014,' and 'before Forest obtained pediatric exclusivity for Namenda IR in June 2013.'" (R&R at 18) (quoting Pls.' Mem. of Law at 3.) As Magistrate Judge Francis correctly concluded, this is simply wrong. One of the central allegations in this case is that Defendants colluded with Teva (and other generic competitors) by entering into allegedly anticompetitive patent settlements *between July 2009 and July 2010* – well before the end of Ms. Jaskot's employment in 2012. Moreover, Ms. Jaskot was Teva's Vice President of U.S. Generic Regulatory Affairs at all times relevant to the events leading up to and during Defendants' and Teva's execution of the settlement agreement at issue in this case, including: (1) Teva's 2007 ANDA filing for generic Namenda; (2) Defendants' 2008 Namenda patent litigation against Teva; (3) Defendants' and Teva's 2009 Namenda settlement agreement; and (4) the Food and Drug Administration's approval of Teva's generic Namenda in 2010 and 2011. (Teva Mem. of Law at 7-8.) It defies credulity to think that Ms. Jaskot, given the responsibilities of her role, was not privy to Teva's confidential information regarding generic Namenda. (*See* Gordon Decl. ¶¶ 3-4 (stating that a search of Ms. Jaskot's emails uncovered over

approximately 1,000 privileged or confidential messages and attachments sent from or received by Ms. Jaskot containing the words "memantine," the drug at issue, or "Namenda," its trade name).)

Next, Plaintiffs argue that Teva's confidential information is not relevant to the Instant Action because: (1) Teva is not a party to this litigation and Teva's interest will not be affected by this litigation; (2) Teva's product is not at issue in this litigation; and (3) Ms. Jaskot will not opine about Teva, its conduct, or its generic Namenda IR product in any way. It is here that I part ways with Magistrate Judge Francis's Report and Recommendation (beginning with the final paragraph on page 18).

It matters not a whit that Teva is not named as a defendant in the Instant Action; its conduct during the period when Ms. Jaskot was a senior Teva regulatory official is at issue in this case. Plaintiffs' omission to name Teva as a party is overcome by the substantial overlap between the Instant Action and the Sergeants Benevolent Action, where Teva is a party. The alleged collusion between Defendants and Teva (among others) is the predicate for both (1) the allegations concerning Defendants' unlawful maintenance of monopoly power and restraint of trade under the Sherman Act that give rise to the Instant Action, and (2) the claims for conspiracy to monopolize, unfair and deceptive trade practices, and unjust enrichment in the Sergeants Benevolent Action. The two actions have been proceeding together in all respects; Plaintiffs' counsel filed the Related Case Statement asking that the Instant Action be handled together with the Sergeants Benevolent Action. It does not lie in Plaintiffs' mouths to assert that the two cases are not inextricably intertwined.

In support of its motion to disqualify, Teva cites *Merck Sharp & Dohme Corp. v. Teva Pharm. USA, Inc.*, Nos. Civs. 14-874, 15-250, 2015 WL 5163035 (D. Del. Sept. 3, 2015), for the

proposition that a nonparty's motion to disqualify an expert witness may be granted where it is shown that disclosure of the nonparty's confidential information could adversely impact it in a related, concurrent litigation against the nonparty. Unlike Magistrate Judge Francis, I find *Merck* to be persuasive – especially given the absence of Second Circuit precedent on this point.

In *Merck*, Apotex, Inc. ("Apotex") had previously hired an expert to help defend itself against a 2009 patent infringement suit brought by Merck in the District of New Jersey. *Id.* at *1. In June 2012, the case was dismissed. *Id.* In 2014 and 2015, Merck brought three new lawsuits regarding the same patent: one against Teva and one against Amneal Pharmaceuticals LLC ("Amneal"), both in the District of Delaware, and one against Apotex in the District of New Jersey. *Id.* In connection with the Delaware cases, Merck hired the same expert that Apotex had used in its 2009 litigation against Merck. *Id.* Apotex then filed a nonparty motion to disqualify the expert from assisting Merck with the Delaware cases. *Id.* The court granted Apotex's motion, finding that while Apotex was not a party to the Delaware cases, "there can be no dispute that the first two factors are satisfied, i.e., a confidential relationship existed between Apotex and [the expert], and confidential information was actually disclosed to [the expert]." *Id.* at *3. The court held that given the "substantial relationship that exists between the Delaware cases [where Apotex is not a party] and the New Jersey cases [where Apotex was/is a party] . . . the potential for prejudice is clear." *Id.* The court found that "Apotex's confidential information is at a substantial risk of disclosure and/or adverse use, by virtue of the fact that Merck has chosen to pursue simultaneous cases against all three generic manufacturers—Teva, Amneal, and Apotex—regarding the [same] patent." *Id.*

Magistrate Judge Francis distinguishes *Merck* on the ground that, in *Merck*, one plaintiff brought three simultaneous cases against three different defendants about the same drug, whereas

10

here, two *different* plaintiffs have brought simultaneous cases against various drug makers regarding the same drug – a fact, in his opinion, that "ameliorates the 'risk of . . . adverse use.'" (R&R at 22) (citing *Merck*, 2015 WL 5163035, at *3.) However, this distinction does not account for the fact that, unlike in *Merck*, Forest is a defendant in both actions. Thus, plaintiffs in the Sergeants Benevolent Action have an interest, similar to that of the single plaintiff in *Merck*, in Plaintiffs' success on the merits in the Instant Action. It is true that "the circumstances at bar do not implicate the clear-cut case of an expert 'switching sides' in the *same* litigation," but suggesting that Teva's interest will not be affected by the Instant Action because it is not a party ignores "the realities of litigation and the substantial relationship that exists between the [Instant Action] and the [Sergeants Benevolent Action]." *Merck*, 2015 WL 5163035, at *3.

It is also clear that Teva is a nonparty in the Instant Action "in name only." (Teva Mem. of Law at 17.) The operative complaint in this action includes allegations against Teva. Teva has produced more than 3,800 pages of documents, and given Rule 30(b)(6) deposition testimony "covering well over a dozen topics," in the Instant Action. (*Id.*) When the parties in the two actions filed consolidated briefing on Defendants' motions to dismiss, I ultimately stayed the Sergeants Benevolent Action so that I would not have to deal with federal law and numerous different state laws at the same time. The factual record which is being developed in the Instant Action will inform the outcomes in both cases. (*See* Dkt. No. 106, Instant Action.) The discovery in this case will not be duplicated in the Sergeants Benevolent Action.

Plaintiffs insist that they will not communicate or share Ms. Jaskot's work with the Sergeants Benevolent Action plaintiffs. (Pls.' Mem. of Law at 7.) This representation is insufficient. The Sergeants Benevolent Action plaintiffs could obtain Teva's confidential information by attending a public hearing in which Ms. Jaskot testifies, obtaining publicly filed

deposition or affidavit testimony – or by reading an opinion by this Court that cites to her testimony. Sealing anything having to do with Ms. Jaskot is not a viable option; this Court does not and will not seal records in order to accommodate Plaintiffs' desire to use a former Teva employee as its expert, because the First Amendment interest in a public record clearly trumps Plaintiffs' interest in working with Ms. Jaskot.[5]

Plaintiffs also assert that Ms. Jaskot has agreed that she will not reveal confidential information about Teva or its product that is relevant to the Sergeants Benevolent Action. However, the "human brain does not compartmentalize information in that manner." *Eastman Kodak Co. v. Kyocera Corp.*, No. 10 Civ. 6334, 2012 WL 4103811, at *8 (W.D.N.Y. Sept. 17, 2012) (quoting *Pellerin v. Honeywell Int'l Inc.*, No. 11 Civ. 1278, 2012 WL 112539, at *3 (S.D. Cal. Jan. 12, 2012)). An "expert cannot build a Chinese wall in his own mind, despite his best efforts to do so." *Auto-Kaps*, 2016 WL 1122037, at *4. I conclude that it will be impossible for Ms. Jaskot to prevent her twenty-three years of experience at Teva from bearing (even inadvertently) on her opinion in this case. "Disqualification of a party's expert is designed to protect the integrity of the judicial process by ensuring that experts do not use, even unwittingly, confidential information that they learned from a party in the course of an earlier engagement against that party in a later lawsuit." *Hinterberger*, 2013 WL 2250591, at *6 (internal citations and quotation marks omitted).

Finally, Plaintiffs suggest that – failing these assurances – if Teva's confidential information makes its way into Ms. Jaskot's expert report or public testimony, Teva will be able to file a motion *in limine* in the Sergeants Benevolent Action to exclude any prejudicial evidence.

---

[5] As the parties are aware, there is no guarantee that a Protective Order in this case will result in a "sealed record." Except for actual trade secrets, everything will be made public. Anticompetitive conduct, if it occurred, is not a trade secret.

But Teva cannot file motions *in limine* in this case, and there is a "substantial risk that [Ms. Jaskot] may inadvertently disclose confidential information [she] acquired during [her employment with Teva] while serving as Plaintiffs' expert." *Auto-Kaps*, 2016 WL 1122037, at *4. By the time Teva has an opportunity to file a motion *in limine* in the Sergeants Benevolent Action, its confidential information will have already informed Ms. Jaskot's expert report, and thus the Instant Action's outcome. It will impact Plaintiffs' fact-gathering and litigation strategy. And no motion *in limine* can solve the problem created by the fact that the Sergeants Benevolent Action plaintiffs will undoubtedly be present and hear any public testimony Ms. Jaskot may give. I have no basis to exclude them from a public courtroom. There is even the probability that matters determined in the Instant Action could be *res judicata* or collaterally estopped against particular parties in the Sergeants Benevolent Action.

While the Second Circuit does not appear to have directly addressed the issue confronting me, in the related context of disqualification of counsel, the Second Circuit recently ruled that a nonparty's motion for disqualification can be granted because of past disclosed confidences with counsel – particularly where allegations against that nonparty are at issue. *See United States v. Prevezon Holdings Ltd.*, 839 F.3d 227 (2d Cir. 2016). While the tests for disqualifying attorneys and expert witnesses are slightly different, federal courts' authority in both instances derives from the same duty to protect the integrity of the legal process. *See Grioli*, 395 F. Supp. 2d at 13 ("[T]he reasons behind disqualifying an expert witness are similar to those behind disqualifying an attorney that has a conflict of interest.").

In *Prevezon*, the Second Circuit granted a writ of mandamus to decide a "question of first impression in this Circuit: disqualification of counsel on the basis of a conflict of interest posing a potential harm to a nonparty non-witness." 839 F.3d at 238. The United States government had

brought a civil forfeiture action against Prevezon for receiving proceeds from "a complex, sweeping scheme that defrauded the Russian treasury of roughly $230 million." *Id.* at 230. Hermitage, an investment advisory firm, who lost money as a result of the fraud, sought to disqualify Prevezon's counsel because it had previously used the same counsel in a substantially related matter, and part of Prevezon's defense strategy included pinning the fraud on Hermitage. Hermitage feared that disclosure of its confidential information might subject it to future prosecution by the Russian government. Thus, Hermitage brought a nonparty motion to disqualify Prevezon's counsel.

The standard for granting such a motion is whether "(1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, the relevant privileged information in the course of his prior representation of that client." *Id.* at 239 (quoting *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d. Cir. 1983)). "A substantial relationship exists where facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation." *Id.* (internal citations and quotation marks omitted).

The Second Circuit held that the district court erred by denying Hermitage's motion to disqualify Prevezon's counsel and rejected the district court's finding that the "two representations were not substantially related because (1) '[t]his case is not about Hermitage, nor is this case centrally focused on the Russian Fraud,' (2) the 'Russian Fraud is merely background information and Hermitage cannot be held liable as a result of this lawsuit,' and (3) 'Hermitage is [ ] a mere spectator in this litigation . . . and its rights are not directly at stake.'" *Id.* at 239

(quoting *United States v. Prevezon Holdings Ltd.*, No. 13 Civ. 6326, 2016 WL 96170, at *4 (S.D.N.Y. Jan. 8, 2016)).

The Second Circuit found these reasons unpersuasive, emphasizing that the same counsel now representing the defendant, Prevezon, had been previously retained by the nonparty, Hermitage, to investigate facts that now comprised essential elements of the government's claims against Prevezon and that "Prevezon's trial strategy turns on proving Hermitage [was] not the victim of the Russian Treasury Fraud, but the perpetrator." *Id.* at 239-40. The Second Circuit took into account that exposure of Hermitage's confidential information by Prevezon's counsel may cause the "nonparty, nonwitness [to] face the risk of prosecution by a foreign government." *Id.* at 242.

In *Prevezon*, disqualification was appropriate even though Hermitage was a party neither in the case at bar nor in any other pending litigation. *Id.* Here, where Teva has already been sued on "the same facts and circumstances" at issue in the Instant Action – in a lawsuit that Plaintiffs' own counsel admits is "related" to the Instant Action – the risk of prejudice is even more substantial. *Id.* at 240.

Moreover, the propriety of Teva's settlement agreement with Defendants – which is at issue in both cases – depends, in relevant part, on Teva's strategy and decision-making about generic Namenda in the context of the regulatory environment, Teva's litigation strategy while defending against Defendants' patent infringement suit, and Teva's settlement discussions with Defendants and other generic competitors. All of this information is undoubtedly confidential to Teva, and it is stored in Ms. Jaskot's memory banks.

In short, Teva has met its burden for disqualification by showing that Ms. Jaskot and Teva had a confidential relationship, and that Ms. Jaskot received confidential information

relevant to the Instant Action; thus, there can be no question that Teva is at a "substantial risk of inadvertent disclosure," regardless of whether it is technically a party to the Instant Action. *Auto-Kaps*, 2016 WL 1122037, at *3; *see also Eastman Kodak Co. v. Agfa-Gevaert N.V.*, No. 02 Civ. 6564, 2003 WL 23101783, at *5 (W.D.N.Y. Dec. 4, 2003) (finding that in "retaining [the expert witness], [the non-movant] assumed the risk that his knowledge of tabular grain technology was based, at least in part, on an 18 year career with [the movant]").

Additionally, public policy does not weigh against disqualifying Ms. Jaskot. Ms. Jaskot is not a "testimonial expert who is being deprived of [her] livelihood." *Grioli*, 395 F. Supp. 2d at 15. Plaintiffs can easily retain a new expert in the field, one who did not work for a company that is a key witness in this case (and a defendant in the related action) for two decades. *See Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, No. 95 Civ. 8833, 2000 WL 42202, at *5 (S.D.N.Y. Jan. 19, 2000). Indeed, Plaintiffs already disclosed a second expert with a regulatory background. (*See* Frederick Decl., Ex. I. (Janet K. Deleon CV)).

Finally, Plaintiffs' undue delay and burden argument is moot as the expert report deadline is no longer August 3, 2017; it is September 15, 2017. (*See* Dkt. No. 331.) Furthermore, I will ameliorate any burden by giving Plaintiffs sixty additional days to produce a new expert report.

**Conclusion**

For the foregoing reasons, Defendants' motion to disqualify Dr. Lon Schneider (Dkt. No. 269) is DENIED. Teva's motion to disqualify Ms. Jaskot (Dkt. No. 308) is GRANTED. The Clerk of the Court is directed to remove Dkt. Nos. 269 and 308 from the Court's list of pending motions. The Court thanks Magistrate Judge Francis for his diligent management of this case throughout its contentious pre-trial phase.

Dated: August 21, 2017

                                                                                               Chief Judge

BY ECF TO ALL COUNSEL

17