**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE NAMENDA DIRECT PURCHASER ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>All Direct Purchaser Actions | **Civil Action No.: 1:15-CV-07488-CM-JCF**<br><br>**FILED UNDER SEAL** |

**MEMORANDUM IN SUPPORT OF DIRECT PURCHASER CLASS**
**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD**
**ON THE BASIS OF PRIVILEGE**

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................... 1

II.     BACKGROUND ................................................................................................. 3

     A.      Procedural History ................................................................................. 3

     B.      At-Issue Waiver ..................................................................................... 4

          i.      Forest Placed Its State-of-Mind at Issue Through the Def. Disclosure ...... 4

          ii.     Forest Placed Its State-of-Mind at Issue Through Other Discovery
               Responses ................................................................................... 7

          iii.    ███████████████████████████████████████
             ██████ ........................................................... 8

     C.      The Withholding of Business Advice on Privilege Grounds ............................... 10

III.    ARGUMENT ..................................................................................................... 11

     A.      Forest Must Produce Otherwise Privileged or Protected Documents That Relate to
         Its State of Mind or Subjective Beliefs ................................................. 11

     B.      Forest Has Likely Withheld Non-Privileged Business-Related Material Under the
         Guise of Privilege ............................................................................. 13

IV.     CONCLUSION ................................................................................................... 17

## TABLE OF AUTHORITIES

### CASES

*A.I.A. Holdings, S.A. v. Lehman Bros.*,
   2002 U.S. Dist. LEXIS 20107 (S.D.N.Y. 2002)) ....................................................5

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Alcoa S.S. Co.* ,
   2005 U.S. Dist. LEXIS 20288 (S.D.N.Y. 2005) ....................................................6

*Citigroup Mortg. Loan Tr. 2007-ACM3 v. Citigroup Glob. Mkts. Realty Corp.*,
   2016 U.S. Dist. LEXIS 185289 (S.D.N.Y. 2016) ..................................................15

*Complex Sys. v. ABN AMRO Bank N.V.*,
   279 F.R.D. 140 (S.D.N.Y. 2011) ..........................................................................14

*FTC v. Abbvie Inc.*,
   No. 14-5151, 2016 U.S. Dist. LEXIS 113731 (E.D. Pa. 2016) ...................15, 16, 17

*FTC v. AbbVie, Inc.*,
   2015 U.S. Dist. LEXIS 166723 (E.D. Pa. 2015) ..........................................15, 16, 17

*Gould, Inc. v. Mitsui Mining & Smelting Co.*,
   825 F.2d 676, 679-80 (2d Cir. 1987) .....................................................................14

*Hardy v. N.Y. News, Inc.*,
   114 F.R.D. 633 (S.D.N.Y. 1987) ...........................................................................14

*In re Pfizer Inc. Sec. Litig.*,
   1993 U.S. Dist. LEXIS 18215 (S.D.N.Y. 1993) ....................................................15

*In re Rivastigmine Patent Litig.* (MDL No. 1661),
   237 F.R.D. 69, 84 (S.D.N.Y. 2006) ........................................................................6

*Meranus v. Gangel*,
   1991 U.S. Dist. LEXIS 8731 (S.D.N.Y. 1991) ......................................................15

*MSF Holding, Ltd. v. Fiduciary Tr. Co. Int'l*,
   2005 U.S. Dist. LEXIS 34171 (S.D.N.Y. 2005) ....................................................14

*Ovesen v. Mitsubishi Heavy Indus. of Am.,Inc.*,
   2009 U.S. Dist. LEXIS 9762 (S.D.N.Y. 2009) ......................................................14

*United States v. Int'l Bhd. of Teamsters*,
   119 F.3d 210 (2d Cir. 1997) ..........................................................................13, 15

**MISCELLANEOUS AUTHORITIES**

MEDICARE PRESCRIPTION DRUG, IMPROVEMENT, AND MODERNIZATION ACT OF *2003*, 108 Pub. L. 173, 117 .......................................................................................................12

I.      INTRODUCTION

Direct Purchaser Class Plaintiffs ("Plaintiffs") respectfully bring this Motion seeking a ruling that: (1) by injecting into this litigation its subjective reasons and justifications for its patent settlements and associated side-deals, Forest[1] has waived any attorney-client privilege or work-product doctrine claims for documents (or testimony) regarding *all* of its reasons for those settlements and side-deals; and (2) Forest has improperly asserted attorney-client privilege or the work-product doctrine to shield business-related communications.

This Court's May 19, 2017 Order (the "May 19 Order") (ECF No. 249), directed Forest to "disclose any subjective beliefs it will rely on in its defense of this action." In response, Forest disclosed that, among other things, it intends to rely "upon evidence from its current or former business executives or employees" concerning its "Business Justifications for the Mylan and Orchid Business Agreements" "to rebut any argument that these business deals were motivated by illegitimate or anticompetitive justifications." Forest's Disclosure Pursuant to the May 19, 2017 Memorandum and Order ("Def. Disclosure") at 4.[2] Forest asserts that it can do so while still claiming purported attorney-client or work-product privilege over evidence which establishes that: (1) its subjective beliefs were also informed by attorney advice, and/or (2) it had undisclosed, anti-competitive reasons for the settlements and side-deals (such as paying for delay). However, as this Court stated in its August 2, 2017 Order (the "August 2 Order") (ECF

---

[1] "Forest" refers to Forest Laboratories, LLC, Actavis, plc, Forest Laboratories, Inc., and Forest Laboratories Holdings Ltd.

[2] Forest also claims it will rely "upon evidence from its current or former business executives or employees" concerning its "General Experience with ANDAs, Generic Manufacturers, and Patent Litigations" "to rebut any allegation that its conduct with respect to the Namenda patent litigations was anything but routine behavior under the Hatch-Waxman regime"; and the "Terms of the Agreed Upon Namenda IR Patent Litigation Settlements" "to rebut any allegation that the Namenda IR patent litigation settlement agreements provided the generic competitors any consideration beyond the express terms of each of the final agreements . . .". Def. Disclosure at 4-5.

No. 348), "Forest's promise to rely only on information from business people showing that the Lexapro agreement with Mylan and the Ceftaroline agreement with Orchid – which are the alleged vehicles of the purportedly anticompetitive reverse payments – were motivated by pro-competitive business concerns, does not necessarily shelter otherwise privileged information." August 2 Order at 8. And as the Court has repeatedly held, it is Forest's burden "to back up with argument *and evidence* any contention as to why the 'subjective beliefs' on which it plans to rely do not, in fact, implicate privileged communications based on the guidelines applied in Lidoderm and similar cases." August 2 Order at 9, quoting May 19 Order at 14-15 (emphasis added.).

Forest has failed to meet its burden. Instead, the evidence – ███████████████ ████████████████████████████ – demonstrates that Forest's subjective beliefs for entering into the Lexapro and Ceftaroline deals were necessarily informed not just by business justifications but also by attorney advice, and likely reflect anticompetitive goals. Having placed their state of mind at issue in this case, Forest may not tell just one part of the story.

Forest clearly seeks to introduce its subjective motivations, while attempting to make an end run around waiver. For example, ██████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████[3] ████████████████████████████████████████████████ ████████████████████████████████████████████████

---

[3] Plaintiffs have alleged that the Lexapro amendment included a ██████████ lump sum payment to Mylan as well as a favorable (to Mylan) change in the █████████ structure for Mylan's sales of Authorized Generic Lexapro. *See, e.g.,* Memorandum of Law in Support of Direct Purchaser Class Plaintiffs' Motion to Compel Third Party Mylan to Produce Documents Responsive to Subpoena Request No. 12, ECF No. 212, at 1-2.

███████████████████████████████████████████████

███████████████████████████   Since Plaintiffs did not have access to this needed evidence

during the Mylan deposition and other depositions, they have already been prejudiced by their

inability to confront witnesses with evidence regarding Forest's actual state of mind.[4] In addition

to the documents the Court has already reviewed *in camera*, Plaintiffs submit a list of ██

documents as potentially subject to waiver because they may pertain to the Def. Disclosure.

The parties have also reached impasse on Forest's assertion of privilege and work-

product over documents that in reality are likely business-related communications. Specifically,

Plaintiffs believe that Forest has withheld communications that do not involve attorney-advice at

all but may have been withheld simply because material was later sent to an attorney, because a

lawyer is nominally included, or where the lawyer is in reality providing advice on a business

issue. Plaintiffs currently challenge ██ such documents.

Plaintiffs provide, as Exhibit A hereto, a spreadsheet categorizing the documents still in

dispute. Plaintiffs respectfully request that Defendants provide them, and the Court review them

(or a sample of them) *in camera*.

## II.    BACKGROUND

### A.    Procedural History

This Motion represents the culmination of various privilege disputes between the parties.

In the April 12 Mem., Plaintiffs explained that Forest had affirmatively inserted into this case

various legal and factual arguments that out of fairness, required a waiver of the attorney-client

privilege and work-product protection to test. *See* April 12 Mem. at 19-24. The Court provided

guidance in two Orders and the parties met and conferred on the "fairness-doctrine" issue (also

---

[4] *See, e.g., infra,* and as set forth in Plaintiffs' April 12, 2017 Memorandum in Support of Their
Motion to Compel (ECF No. 199) (the "April 12 Mem."), at 6-7.

known as "at-issue waiver") as well as various other privilege disputes, including whether Forest is withholding business advice under the guise of privilege. After several rounds of correspondence[5] and multiple phone calls, the parties agreed that the meet and confer process concluded on Friday, August 11. *See* Exhibit E.

**B.      At-Issue Waiver**

    *i.      Forest Placed Its State-of-Mind at Issue Through the Def. Disclosure*

In the May 19 Order, the Court ruled that Forest had not *yet* waived privilege, but left open the possibility that Forest would still be required to produce otherwise privileged material. Specifically, the Court held that:

> Given the current stage of discovery and Forest's representations, I cannot determine that Forest has broadly waived attorney-client privilege and work product protection at this time. However, the schedule in this action is constricted, with fact discovery closing on July 21, 2017, expert discovery closing on October 17, 2017, and the case trial-ready in January 2018. (Amended Case Management Order dated May 18, 2017; Minute Entry dated Dec. 16, 2016; Memorandum Endorsement dated Dec. 13, 2016). Therefore, I concur with the plaintiffs' suggestion that Forest disclose any subjective beliefs it will rely on in its defense of this action within two weeks of the date of this order.

May 19 Order at 14. The Court further added, "[l]et me be clear: it is Forest's burden to establish that it has not waived privilege. . . . Thus, Forest will have to back up with argument *and evidence* any contention as to why the 'subjective beliefs' on which it plans to rely do not, in fact implicate privileged communications . . .". *Id*. at 14-15 (emphasis added).

On June 2, 2017, Forest disclosed the subjective beliefs that it plans to raise at trial, but to date, has not "back[ed] up with argument and evidence" its claims of non-waiver. In the August 2 Order, the Court summarized the Def. Disclosure. Specifically Forest

---

[5] *See* Exhibit B, July 24, 2017 letter from Dan Litvin to Heather Burke; Exhibit C, July 28, 2017 letter from Heather Burke to Dan Litvin; Exhibit D, August 7, 2017 Letter from Dan Litvin to Heather Burke; and Exhibit E, August 11-14, 2017 email chain between Dan Litvin and Heather Burke.

. . . assert[ed] that it would rely on "evidence from its current or former business executives or employees" to rebut (1) argument that its business deals were "motivated by illegitimate or anti-competitive justifications," (2) allegations that "its conduct with respect to the Namenda patent litigations was anything but routine behavior" under the patent regime governing entry of generic drugs into the market, and (3) allegations that "the Namenda IR patent litigation settlement agreements provided generic competitors any consideration beyond the express terms of each of the final agreements."

August 2 Order at 2-3, quoting Def. Disclosure.

The Court deferred ruling on Plaintiffs' initial motion "[i]n light of Forest's representation that it would produce a privilege log on or before ████████, and would make significant production of documents in the surrounding weeks." August 2 Order at 4. Forest produced its privilege log on ████████,[6] ███████████████████████████████████ ████████ Plaintiffs have challenged aspects of Forest's privilege assertions and redactions,[7] and the parties met and conferred telephonically on those issues on August 1 and 11, 2017. On the latter call, the parties agreed that the dispute was ripe. *See* Exhibit E at 3.

Between the May 19 and the August 2 Orders, Plaintiffs submitted supplemental briefing, arguing that Forest improperly withheld factual material (not legal advice), embedded in attorney communications, pertaining to Def. Disclosure number one. August 2 Order at 4; Memorandum in Support of Direct Purchaser Class Plaintiffs' Motion to Compel Production of Documents ("Pl. Supp. Memo.") at 2. In support, Plaintiffs submitted three documents.

The first, ████████████████████████████████████ was a ███████████████████████████████████████████████



---

[6] Forest produced a revised log on ████████ .

[7] Including with respect to challenges to (1) communications made to third parties, (2) claims of joint-defense privilege, (3) communications that were actually business or factual communications (4) redactions on the basis of non-responsiveness. *See* Ex. B; Ex. D.

[8] As this Court noted, ████████████████████████████████████████



. The second, Exhibits A and B to the Pl. Supp. Memo., were ███████████████████. In Exhibit A, the attachments were not redacted while in Exhibit B, they were. The non-redacted version (Exhibit A to the Pl. Supp. Memo.) included, *inter alia*, evidence pertaining to a defense concerning Medicaid rebates which Forest has placed at issue in this litigation (*see, infra* at 7-10) as a good-faith justification for the Lexapro Amendment.[9] The third ███████████████████

███████████████████████████

███████████████████████ August 2 Order at 5-6. Each exhibit very likely speaks to all three disclosures. Indeed, the Court stated that it was "baffled" as to why Forest is maintaining privilege claims on these documents under the *Lidoderm* framework, "which Forest acknowledges" guides the analysis. August 2 Order at 7.[10]

████████████████ Forest should be required to provide actual proof in the form of an affidavit or other competent *evidence* ██████████████████. *See In re Rivastigmine Patent Litig. (MDL No. 1661)*, 237 F.R.D. 69, 84 (S.D.N.Y. 2006) (Francis, J.) ("If the assertions of privilege are challenged . . ., the withholding party then has to submit evidence, by way of affidavit, deposition testimony or otherwise, establishing . . . the challenged elements of the applicable privilege or protection, with the ultimate burden or proof resting with the party asserting the privilege or protection.") (quoting *A.I.A. Holdings, S.A. v. Lehman Bros.*, 2002 U.S. Dist. LEXIS 20107, at *16-17 (S.D.N.Y. Oct. 18, 2002)). Moreover, ████████████████████████████

████████████████████████████████
████████████████████████████████
███████████

[9] While Forest produced a non-redacted version of Exhibit B to the Pl. Supp. Memo., it is unknowable to Plaintiffs how many documents like Exhibit B are withheld for which there is no corresponding non-redacted version.

[10] In light of the guidance provided in the August 2 Order, any distinction Plaintiffs previously attempted to draw between factual material and legal advice in the context of what Forest had to disclose pursuant to the Def. Disclosure is academic. As is any ambiguity the Court perceived in the Pl. Supp. Memo. August 2 Order at 6. As explained herein, Plaintiffs now seek a waiver of *all* documents that Forest has withheld pertinent to the Def. Disclosure, to test Forest's affirmative assertions about its state of mind – regardless of whether the material withheld is factual or legal advice. Plaintiffs clarify that while factual material may in appropriate instances be considered work-product, the fairness doctrine applies equally to the attorney-client privilege and the work-product doctrine. *See Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Alcoa S.S.*

While, after meeting and conferring, ███████████████████████████████

█████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

██████████ ██████████████████████████████████████████████████████████

████████████████████████████████████ August 2 Order at 9. As mentioned *supra*,

Exhibit A hereto includes documents for *in camera* review.

> ii.   *Forest Placed Its State-of-Mind at Issue Through Other Discovery Responses*

Forest has placed its state of mind at issue in this case in ways beyond just the Def.

Disclosure. For example, in its July 12, 2017 supplemental response to an interrogatory which

asked Forest to "[i]dentify all reasons, explanations, business justifications and/or procompetitive

justifications for" among other things, the alleged Orchid and Mylan reverse-payments, Forest

simultaneously objected on privilege grounds while providing several self-serving reasons for

why it believed those deals to be fair and *bona fide*. ████████████████████████████

█████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ [12]

---

*Co.*, 2005 U.S. Dist. LEXIS 20288, at *2 (S.D.N.Y. Sep. 15, 2005) (Francis, J.) ("The 'fairness doctrine' analysis applies to waiver of work product protection just as it does to waiver of the attorney-client privilege.").

[11] *See* Ex. E at 1.

[12] In addition, response number 13 stated ███████████████████████████████

█████████████████████████████████████████████████████████████████████

Having asserted these self-serving business justifications, Forest cannot shield from discovery evidence reflecting other reasons, including anticompetitive reasons, for the transactions – such as payment to delay competition. Moreover, Forest has left the door open to offer further one-sided and untested justifications. In the same supplemental interrogatory response, Forest wrote that it ████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████ *Id*. (Emphasis added.). Forest may be concealing other reasons for the Lexapro and Ceftaroline deals, and/or information that contradicts its assertion that the deals were *bona fide* or for fair value.

*iii.*





. . .



Exhibit G, Excerpts from Aug. 3, 2017 Deposition of Mylan, Inc. (Silber), at 27:6 - 31:7.

### C.    The Withholding of Business Advice on Privilege Grounds

In their letters to Forest (Exs. B and D), Plaintiffs also challenged documents they suspected were run-of-the-mill business communications withheld as privileged or work-product. The bases for these suspicions were, *first*, that the communications did not involve attorneys or involved them only passively as cc recipients; *second*, that in-house attorneys often play dual business and legal roles, and thus the withholding party must provide evidence beyond mere log assertions that the advice was legal in nature; and *third*, Forest produced redacted and non-redacted versions of otherwise identical documents demonstrating an altogether freewheeling application of privilege. *See*, *infra*, at 17.

Exhibits H-M are a ████████████████████████ ████████████████████████████████████████████ On each document, Plaintiffs have provided an overlay of the description field from Forest's privilege log for these documents. Exhibit N contains ████ excerpts from Forest's privilege log that carry the same or substantially similar descriptions, provided simply to demonstrate that Forest's privilege descriptions are unhelpful to determine whether a document actually is privileged – more evidence is needed for documents subject to challenge. Exhibit A contains a list of documents Plaintiffs hereby request that Forest provide the Court for *in camera* review to determine whether Forest has asserted privilege over business advice.

10

## III.    ARGUMENT

### A.    Forest Must Produce Otherwise Privileged or Protected Documents That Relate to Its State of Mind or Subjective Beliefs

Plaintiffs have briefed the law governing at-issue waiver/the fairness doctrine and incorporate their April 12 Mem. and other briefing herein. Additionally the Court provided clear guidance in the May 19 and August 2 Orders:

> a defendant could not "rely on identified subjective beliefs [assertedly based on business judgment] where they are backed up by 'public statements'" without waiving privilege where there is evidence that "other motivations" influenced by attorney information "could have been at play." [] And, perhaps more to the point, [*Lidoderm*] found that "the reasons, explanations, and intentions for the 'payment' . . . to [the generic drug-maker] would appear to necessarily implicate attorney-client advice because that payment was a key, if not the central, term of the [] settlement agreement negotiated by [the] Defendants' counsel."

August 2 Order at 8, quoting *Lidoderm*. This is true here as well: The contemporaneous evidence demonstrates not only that the Ceftaroline and Lexapro side deals were interrelated with the Namenda '703 patent settlements, but also that the '703 patent settlements were a precondition of the side-deals. As "a key, if not the central, term of the [] settlement agreement negotiated by [the] Defendants counsel," the Mylan and Orchid side-deals "necessarily implicate attorney-client advice." *Id*. In addition to the material the Court reviewed *in camera* as part of the Pl. Supp. Memo., as to the Ceftaroline deal with Orchid the evidence shows that:

- The Namenda '703 patent settlement agreement and the Ceftaroline side-deal were ███████████████. *See* Exhibit O, FRX-AT-█████████ at █████

- Forest and Orchid executives were clear with one-another that the Ceftaroline side-deal was entirely ████████████████████████████████████ *See, e.g.*, Exhibit P, FRX-AT-████████████████████████████████████ *Id*. at 67 (██████████████████████████████████████

11

██████████████████████████████████████████████ ”); *id.* at 69.[13]

- ████████████████████████████████████████████ pursuant to Section 1112(a) of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, which requires the parties to certain Hatch-Waxman related patent settlements to "file with the Assistant Attorney General and the Commission the text of any agreements between the parties that are . . . contingent upon, provide a contingent condition for, or are otherwise related to" a patent settlement agreement. MEDICARE PRESCRIPTION DRUG, IMPROVEMENT, AND MODERNIZATION ACT OF 2003, 108 P.L. 173, 117 Stat. 2066, 2462. *See* Exhibit O, FRX-AT-██████

And with respect to the Lexapro Amendment with Mylan, the evidence shows that:

- The Namenda '703 patent settlement agreement and the Lexapro Amendment were ████████████████. *See* Exhibit S, FRX-AT-0████ at █████

- The Lexapro Amendment and the Namenda '703 patent settlement proceeded in tandem and/or were considered interrelated. For example, the "Material Contracts" section of the Agreement and Plan of Merger between Actavis plc and Forest Laboratories listed, along with all the other '703 Namenda patent settlements, the ████████████████████████████████████ ███████████████ Exhibit T, FRX-AT-██████████ (emphasis added).

- Forest could have, from 2005 to 2010 (between the original Lexapro deal and the Lexapro Amendment) secured an alternate manufacturer or manufacturing site[14] for the Lexapro Authorized Generic (while retaining the original Lexapro deal) to ease any purported capacity restraints. Forest's response to an interrogatory

---

[13] *See also*, Exhibit Q, FRX-AT-█████ (████████████████



████████████████████); Exhibit R, FRX-AT-███████████ █

[14] *See supra* at 7-10.

requesting that they "[i]dentify and fully describe Your efforts in the two-year period prior to execution of the 2010 Amendment and Distribution Agreement (Generic Lexapro) to secure an alternate manufacturer or manufacturing site for the Lexapro Authorized Generic product," was entirely evasive. *See* Exhibit U, Responses and Objections of Actavis PLC, Forest Laboratories, LLC, Forest Laboratories, Inc., and Forest Laboratories Holdings, Ltd. To the Third Set of Interrogatories Served by Direct Purchaser Plaintiffs at 9-10.[15]

- ███████████████████████████████████████████████████████████
███████████████████████████████████. *See* Exhibit S, FRX-AT-0███████.

As the Court has pointed out twice, it is Forest that must come forward with evidence of non-waiver under *Lidoderm* and the fairness doctrine in general,[16] a task at which it has thus far failed, and one that is surely made all the more difficult in light of the evidence Plaintiffs have provided herein to support a waiver. Plaintiffs request that Forest submit for *in camera* review all (or a sampling depending on the Court's preference), of the documents listed in Exhibit A, which remain in dispute following meet and confer.

**B.    Forest Has Likely Withheld Non-Privileged Business-Related Material Under the Guise of Privilege**

"The broad outlines of the attorney-client privilege are clear: '(1) where ***legal advice*** of any kind is sought (2) from a professional legal advisor ***in his capacity as such***, (3) the communications ***relating to that purpose***, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived." *Int'l Bhd. of Teamsters*, 119 F.3d at 214, quoting *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032, 1036 (2d Cir. 1984) (emphasis added). Since "[i]n-house counsel often fulfill the dual role of legal advisor and

---

[15] Plaintiffs do not now seek to compel a different response, although we reserve our right to do so. Instead, Plaintiffs reference Forest's interrogatory response to demonstrate that Defendants lack evidence that the Lexapro Amendment and the '703 patent settlement are not intertwined and interdependent.

[16] May 19 Order at 14; August 2 Order at 9.

business consultant. . . ., to determine whether counsel's advice is privileged, we look to whether the attorney's performance depends principally on [her] knowledge of or application of legal requirements or principles, rather than [her] expertise in matters of commercial practice." *MSF Holding, Ltd. v. Fiduciary Tr. Co. Int'l*, 2005 U.S. Dist. LEXIS 34171, at *2 (S.D.N.Y. Dec. 7, 2005) (Francis, J.) (internal citations and quotation marks omitted).[17] Additionally, a communication "should only be shielded if [it] would not have been made but for the client's need for legal advice or services." *Ovesen v. Mitsubishi Heavy Indus. of Am., Inc.*, 2009 U.S. Dist. LEXIS 9762, at *10 (S.D.N.Y. Jan. 23, 2009), *quoting First Chi. Int'l v. United Exch. Co.*, 125 F.R.D. 55, 57 (S.D.N.Y. 1989).

Thus, that a communication or other document is sent to an attorney is not dispositive as to privilege. *See* Rice, Attorney-Client Privilege in the United States § 5:20 (2d Ed. 2010)) ("the most difficult problem with e-mail communications has been the tendency of corporations to exaggerate attorney-client privilege claims simply because lawyers' names appear in headers, either as an addressee or copyee.")[18]; *Gould, Inc. v. Mitsui Mining & Smelting Co.*, 825 F.2d 676, 679-80 (2d Cir. 1987) ("documents received by [a law firm] from its clients, which would not be privileged if they remained in the clients' hands, would not acquire protection merely because they were transferred to [the lawyers]." Instead, they must have been prepared "for the purpose

---

[17] *See also Complex Sys. v. ABN AMRO Bank N.V.*, 279 F.R.D. 140, 150 (S.D.N.Y. 2011) ("Communications that principally involve the performance of non-legal functions by an attorney are not protected."); *Hardy v. N.Y. News, Inc.,* 114 F.R.D. 633, 643-44 (S.D.N.Y. 1987) ("The attorney-client privilege is triggered only by a client's request for legal, as contrasted with business advice . . . When the ultimate corporate decision is based on both a business policy and a legal evaluation, the business aspects of the decision are not protected simply because legal considerations are also involved.").

[18] *See also MSF Holding, Ltd.*, 2005 U.S. Dist. LEXIS 34171, at *2 (withholding party failed to show that the "documents were authored by an attorney acting in her legal, as opposed to business, capacity.").

of obtaining or rendering legal advice." *Id.*[19]

Importantly, "[t]he burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it." *Int'l Bhd. of Teamsters*, 119 F.3d at 214. This must be done by "affidavit or other competent *evidence* sufficient facts to bring the disputed documents within the confines of privilege." *Meranus v. Gangel*, No. 85 Civ. 9313 (WK) Consolidated with Nos. 86 Civ. 8542 (WK), 87 Civ. 3823 (WK), 88 Civ. 2449 (WK), 1991 U.S. Dist. LEXIS 8731, at *11 (S.D.N.Y. June 26, 1991) (Francis, J.), quoting *United States v. Davis,* 131 F.R.D. 391, 402 (S.D.N.Y. 1990) (emphasis added). *See also* n. 8, *supra.*

In a pair of very recent cases, Judge Harvey Bartle of the Eastern District of Pennsylvania closely examined the business versus legal-advice dichotomy in the specific context of an antitrust challenge to a reverse-payment agreement. *See FTC v. AbbVie, Inc.*, No. 14-5151, 2015 U.S. Dist. LEXIS 166723 (E.D. Pa. Dec. 14, 2015) ("*AbbVie 1*") and *FTC v. AbbVie Inc.*, No. 14-5151, 2016 U.S. Dist. LEXIS 113731, at *10 (E.D. Pa. Aug. 25, 2016) ("*AbbVie 2*"). In finding that a substantial number of documents were wrongfully withheld, Judge Bartle articulated a number of principles that Plaintiffs respectfully submit should apply here:

1) "The number of anticipated competitors is one relevant business consideration that the [drug] company takes into account in assessing its own potential for profitability. [The in-house attorney's] communications, which undertook this business analysis, reflect business concerns." *AbbVie 1*, 2015 U.S. Dist. LEXIS 166723, at *16-17.

2) "[N]o privilege applies when business colleagues discuss pending litigation and the likelihood of settlement so as to plan a business strategy because such a discussion is not

---

[19] *See also Citigroup Mortg. Loan Tr. 2007-ACM3 v. Citigroup Glob. Mkts. Realty Corp.*, No. 13cv2843 (GBD) (DF), 2016 U.S. Dist. LEXIS 185289, at *22 (S.D.N.Y. Dec. 7, 2016) ("[t]he mere circumstance that . . . documents were revealed in confidence to a lawyer does not of itself transform the papers into privileged communications.") quoting *Matter of Berkins Record Storage Co.*, 62 N.Y.2d 324, 465 N.E.2d 345, 476 N.Y.S.2d 806, 807 (1984); *In re Pfizer Inc. Sec. Litig.*, 90 Civ. 1260 (SS), 1993 U.S. Dist. LEXIS 18215, at *28 (S.D.N.Y. Dec. 22, 1993) ("pre-existing documents . . . do not become privileged simply by virtue of being transferred to an attorney.").

for the purpose of providing or obtaining legal advice" even where an attorney is present. *Id.* at \*18, citing *In re Teleglobe Communications Corp.*, 493 F.3d 345, 359 (3d Cir. 2007).

3) "[A] business strategy is always infused with some legal concerns, particularly where the business strategy focuses on the likelihood of competitor actions." But where a lawyer's "communication was for the purpose of business rather than legal concerns, th[e] communication is not privileged." *Id.* at \*20.

4) "There is no privilege where one non-attorney employee states to another non-attorney employee his or her desire to speak with in-house counsel." *Id.* at \*26, citing *In re Teleglobe*, 493 F.3d at 359.

5) Privilege "does not apply if the client seeks regulatory advice for a business purpose." *Id.* at \*26-27 (citing *In re Avandia Mktg.*, No. 1871 07-md-01871-CMR, 2009 U.S. Dist. LEXIS 122246, at \*10-11 (E.D. Pa. Oct. 2, 2009) and *In re Grand Jury Matter*, 147 F.R.D. 82, 85-88 (E.D. Pa. 1992)).

6) "[S]trategies to extend a product's life cycle and exclusivity are commercial, not legal in nature. . . . [T]he length of a patent's exclusivity or plans for launching a product are not privileged simply because they are determined by referencing a statute or regulation." *Id.* at \*41-42.

7) "Even though in-house counsel may have been consulted to help determine the market entry date for [anticipated generic] competitors, this does not mean that any document using that date must be privileged." *Id.* at \*33-34.

8) "A company's 'decision on how to market or advertise a product, or what conditions of sale should apply' is not privileged because '[a]lthough it is based on legal advice, the policy is primarily a business policy." *AbbVie 2*, 2016 U.S. Dist. LEXIS 113731 at \*23, quoting *In re Domestic Drywall Antitrust Litig.*, No. MDL No. 2437, 2014 U.S. Dist. LEXIS 144263, at \*10 (E.D. Pa. Oct. 9, 2014).

9) A "marketing strategy in light of possible competition for [the brand product]" was not privileged because "[t]he redactions concern business strategy." *Id.* at \*30-31.

10) Material provided from lawyers to "finance colleagues" for "predominantly business, not legal, purpose[s]" are not privileged. *Id.* at \*34-35.

The above principles animate Plaintiffs' view of the law and serve as the legal basis for their challenge. Apparently Forest does not agree with these principles. Through their meet and confers, the parties were able to narrow the number of documents challenged on the basis that

they conceal business rather than legal advice. However, there remain █████ documents, referenced in Exhibit A for which Plaintiffs respectfully request *in camera* review (or a sample thereof).

In addition, Plaintiffs refer the Court to (1) the materials submitted in the Pl. Supp. Memo.; (2) an additional document ████████████████████████████ ████████████████████████████████████████████████ and (3) certain examples of non-redacted and redacted versions of otherwise identical documents, demonstrating redactions to attorney communications outside the attorney's advisory role. We have submitted some examples as Exhibits V-1 through X-2. While Plaintiffs are not prejudiced by the erroneous and inconsistent privilege clams over *these* documents, we are concerned that Defendants have redacted or withheld other, non-duplicated documents, without a proper basis.

## IV.   CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court conduct an *in camera* review of the material (or a sample thereof) in Exhibit A and determine whether any of those documents (or categories of documents) should be produced under the fairness doctrine/at-issue waiver or because they are business rather than legal communications. Moreover, to the extent the Court determines that privilege has been waived or misapplied to any of the documents reviewed *in camera*, Plaintiffs respectfully request that Forest be ordered to produce material consistent with the Court's guidance.

Dated: August 29, 2017

Dan Litvin

---

[20] Specifically, Plaintiffs believe that pages ██████████████████████ which may be launch timelines, fall within the ambit of *AbbVie I* and *II* and should not have been clawed back.

**Rochester Drug Co-Operative, Inc. and the Proposed Class**

**JM Smith Corporation d/b/a Smith Drug Company and the Proposed Class**

David F. Sorensen
Daniel C. Simons
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
(215) 875-4604 (fax)
dsorensen@bm.net
dsimons@bm.net

Bruce E. Gerstein
Joseph Opper
Dan Litvin
Garwin Gerstein & Fisher LLP
88 Pine Street, 10th Floor
New York, NY 10005
Tel: (212) 398-0055
Fax: (212) 764-6620
bgerstein@garwingerstein.com
jopper@garwingerstein.com
dlitvin@garwingerstein.com

Peter Kohn
Joseph T. Lukens
Faruqi & Faruqi, LLP
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046
(215) 277-5770
(215) 277-5771 (fax)
pkohn@faruqilaw.com
jlukens@faruqilaw.com

David C. Raphael, Jr.
Erin R. Leger
Smith Segura & Raphael, LLP
3600 Jackson Street, Suite 111
Alexandria, LA 71303
Tel: (318) 445-4480
Fax: (318) 487-1741
draphael@ssrllp.com

Stuart E. Des Roches
Andrew W. Kelly
Odom & Des Roches, LLC
650 Poydras Street, Suite 2020
New Orleans, LA 70130
Tel: (504) 522-0077
Fax: (504) 522-0078
stuart@odrlaw.com

Russ Chorush
Miranda Jones
Heim Payne & Chorush, LLP
1111 Bagby St. Ste. 2100
Houston, TX 77002
Tel:  (713) 221-2000
Fax:  (713) 221-2021
rchorush@hpcllp.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2017, I served the foregoing on counsel of record via email.

Respectfully submitted,

Dan Litvin