```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
IN RE NAMENDA DIRECT PURCHASER       :    15 Civ. 7488 (CM) (JCF)
ANTITRUST LITIGATION                 :
                                     :         MEMORANDUM
                                     :         AND  ORDER
                                     :
                                     :
                                     :
- - - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

In this putative class action asserting violations of antitrust law by defendants Actavis plc (now known as Allergan plc) and Forest Laboratories, LLC (together, "Forest"), in connection with its patented Alzheimer's drugs Namenda IR and Namenda XR (brand names for memantine hydrochloride), the Direct Purchaser Class Plaintiffs have filed a motion to compel non-parties Macleods Pharmaceuticals Ltd. and Macleods Pharma USA, Inc. (collectively, "Macleods"), to produce documents responsive to a subpoena. For the reasons set forth below, the motion is granted.

Background

I have outlined the allegations in this litigation in numerous prior opinions. See In re Namenda Direct Purchaser Antitrust Litigation, No. 15 Civ. 7488, 2017 WL 3822883, at *1 (S.D.N.Y. Aug. 30, 2017); In re Namenda Direct Purchaser Antitrust Litigation, No. 15 Civ. 7488, 2017 WL 3314233, at *1 (S.D.N.Y. Aug. 2, 2017); In re Namenda Direct Purchaser Antitrust Litigation,

1

No. 15 Civ. 7488, 2017 WL 3085342, at *1-2 (S.D.N.Y. July 20, 2017); In re Namenda Direct Purchaser Antitrust Litigation, No. 15 Civ. 7488, 2017 WL 2693713, at *1-2 (S.D.N.Y. June 21, 2017); In re Namenda Direct Purchaser Antitrust Litigation, No. 15 Civ. 7488, 2017 WL 2226591, at *1-2 (S.D.N.Y. May 19, 2017). In brief, the plaintiffs allege that in late 2007, at least twelve generic manufacturers, not including Macleods, filed Abbreviated New Drug Applications ("ANDAs") with the FDA for generic versions of Namenda IR in which they contended that the patent, known as the "'703 patent," "was invalid, not infringed by their proposed products, or both." (First Amended Class Action Complaint ("Am. Compl."), ¶ 103); see Namenda, 2017 WL 2226591, at *2. In early 2008, Forest filed patent infringement suits against the generic manufacturers, which led the FDA to stay the action on the ANDAs. (Am. Compl., ¶¶ 104-105); Namenda, 2017 WL 2226591, at *2. In these lawsuits, the generic manufacturers again argued, among other things, that the patents were invalid. (Am. Compl., ¶ 109). Forest ultimately settled the lawsuits. Namenda, 2017 WL 2226591, at *2. The settlements included cash payments from Forest to the alleged infringers and licensing agreements that allowed the generic defendants to launch generic versions of Namenda IR months before Namenda IR's patent expired, but well after the generics could have begun selling generic Namenda IR if Forest's patent was found to be invalid. (Am. Compl., ¶ 114); Namenda, 2017 WL 2226591, at

\*2. The plaintiffs in this action, direct purchasers of Namenda products from Forest, allege that these settlements were collusive and anticompetitive, and they allege that because of the conduct, they had to pay "supracompetitive prices" for the products. Namenda, 2017 WL 2226591, at \*1.

The parties are now past the discovery cut-off in this case. However, before the deadline, the plaintiffs served a subpoena on Macleods -- a producer of generic memantine hydrochloride -- on August 14, 2017. (Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action dated Aug. 14, 2017 ("Document Subpoena"), attached as Exh. A to Declaration of Dan Litvin dated Sept. 15, 2017 ("Litvin Decl."), at 1). The subpoena seeks Macleods' "sales data for generic versions of Namenda in electronic format, at the transactional level," including the date of the transaction, the transaction type, the customer's name, bill-to customer information, ship-to customer information, dosage strength, package size, NDC code, and the number of units and dollar amount involved in the transaction, among other information. (Schedule A to Document Subpoena § III(1)(a)-(l)). Macleods objected to the subpoena on a number of grounds, but offered to produce the "product name, package sizes, dosage strengths, quantity sold of each dosage strength, and the net sales price." (Letter of Samuel J. Ruggio dated Aug. 21, 2017,

attached as Exh. B to Litvin Decl., at 4).[1] In emails that followed this response, Macleods' counsel clarified that it was willing to provide "total amounts" of "net quantities" and "net sales price" but would not produce the transactional level sales data sought by the plaintiffs. (Emails of Samuel J. Ruggio dated Aug. 22 & 23, 2017, attached as part of Exh. C to Litvin Decl.). On September 5, 2017, Macleods produced a one-page document providing monthly data of the number of units sold, net sales, and net sales price, but did not provide the names of its customers, bill-to-customer data, or a breakdown of individual transactions. (Memorandum of Law in Support of Direct Purchaser Class Plaintiffs' Motion to Compel Third Parties Macleods Pharmaceuticals Ltd. and Macleods Pharma USA, Inc. to Produce Documents Responsive to Subpoena Request Nos. 1-2 ("Pl. Memo.") at 3; Macleods' Memorandum in Opposition to Plaintiffs' Motion to Compel Documents ("Macleods Memo.") at 2).

The plaintiffs now move to compel Macleods to respond to the subpoena in full by providing (1) transactional sales data of Macleods' sales of generic memantine hydrochloride and (2) a legend or data dictionary to interpret the data. The dispute turns on whether the more detailed information sought by the plaintiffs is relevant and proportional to the needs of the case.

---

[1] Because the letter is not paginated, I use the pages generated by the Court's Electronic Case Filing system.

Discussion

The Federal Rules of Civil Procedure permit parties "to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In determining whether the discovery sought is proportional to the needs of the case, the Rules instruct courts to consider, among other factors, "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Although not unlimited, relevance, for the purpose of discovery, is an extremely broad concept." American Federation of Musicians of the United States and Canada v. Sony Music Entertainment, Inc., No. 15 Civ. 5249, 2016 WL 2609307, at *3 (S.D.N.Y. April 29, 2016) (quoting Condit v. Dunne, 225 F.R.D. 100, 105 (S.D.N.Y. 2004)).

To determine whether a subpoena imposes an undue burden, a court should examine "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described[,] and the burden imposed." MacNamara v. City of New York, No. 04 Civ. 9612, 2006 WL 3298911, at *15 (S.D.N.Y. Nov. 13, 2006) (quoting Travelers Indemnity Co. v. Metropolitan Life Insurance Co., 228 F.R.D. 111, 113 (D. Conn. 2005)). Litigants and courts are instructed to be especially unsolicitous of non-party targets of subpoenas. See, e.g., Fed.

R. Civ. P. 45(d)(1); MacNamara, 2006 WL 3298911, at *15. However, it is still the responsibility of the target of the subpoena to establish, with evidence and argument, that the discovery sought is unduly burdensome. See, e.g., Wells Fargo Bank, N.A. v. Konover, No. 05 CV 1924, 2009 WL 585430, at *6 (D. Conn. March 4, 2009); Jones v. Hirschfeld, 219 F.R.D. 71, 74-75 (S.D.N.Y. 2003).

Here, the plaintiffs seek Macleods' sales data to support their damages claim by showing that the entry of generic manufacturers into the market, which was allegedly delayed by Forest's collusive settlement scheme, reduced the cost of Namenda. (Pl. Memo. at 2). Macleods counters that it has already produced the "most relevant information" to the plaintiffs and that the additional discovery sought is unduly burdensome and not proportional to the needs of the case. (Macleods Memo. at 3-6).

There is little question that the transactional sales information sought by the plaintiffs is relevant. While monthly sales summaries provide a general overview of how the entry of Macleods into the market for Namenda impacted its price, data for each transaction would enable the plaintiffs to analyze the impact of generic manufacturers into the market more precisely. Cf. In re Neurontin Antitrust Litigation, MDL No. 1479, Civ. A. Nos. 02-1830, 02-2731, 2011 WL 286118, at *7 (D.N.J. Jan. 25, 2011) (holding that "transactional data reflecting that the generics'

actual market entry did in fact reduce the cost of gabapentin dramatically" contributed to showing of anticompetitive behavior).

As to undue burden and proportionality, Macleods asserts that providing sales data at the transactional level would require 150 hours of employee time, cost between $10,0000 and $15,000, and take approximately twenty-seven days to compile. (Macleods Memo. at 4, 6). It also claims that additional attorney expenses would be incurred for privilege and objection review but do not state how much those costs would be. (Macleods Memo. at 4). It further asserts that because it is smaller than other generic Namenda producers, its data would not be particularly compelling. (Macleods Memo. at 6-7). Finally, Macleods also points out that it has produced the most relevant material by providing the plaintiffs with a one-page summary of the information requested. (Macleods Memo. at 6).

Macleods' arguments are unpersuasive. While the money and time that will be spent on the production is not trifling, it is small in comparison with the potential damages in this case. Macleods, while not the largest producer of generic Namenda, appears to make "over 10% of generic Namenda IR sales in the United States, making it the fourth largest seller of the product." (Direct Purchaser Class Plaintiffs' Reply Brief in Further Support of Their Motion to Compel Third Parties Macleods Pharmaceuticals Ltd. and Macleods Pharma USA, Inc. to Produce Documents Responsive

7

to Subpoena Request Nos. 1-2 at 2). Furthermore, the plaintiffs' request is not a broad one, and they seek only "a single transactional dataset" and explanatory documents. (Pl. Memo. at 4). While Macleods has produced a summary, a one-page outline of customer sales data is insufficient in a case such as this, where more specific material would be expected to support the plaintiffs' case. Additionally, the summary does not detail sales specific to customers, and those sales could inform an analysis of class member damages and injuries. Finally, Macleods appears to be the only source for the requested information. The request is therefore proportional to the needs of the case.

Macleods also suggests that the request should be rejected because, as a third party, it retains a greater expectation of privacy. (Macleods Memo. at 5). However, Macleods' unsubstantiated and cursory assertions of confidentiality are insufficient. See In re Mushroom Direct Purchaser Antitrust Litigation, Master File No. 06-0620, 2012 WL 298480, at *5 (E.D. Pa. Jan. 31, 2012). Additionally, discovery in this case is subject to a protective order. Macleods' confidentially argument is therefore unpersuasive.[2]

---

[2] Macleods also seeks leave to file a sur-reply (Docket no. 398) to respond to the plaintiffs' request that relief be ordered within a certain timeframe and to respond to the plaintiffs' argument that Macleods did not substantiate its claims of burden and cost. (Motion to File Sur-Reply at 1). This request is entirely frivolous. First, Macleods, in its first brief, already

8

Conclusion

The plaintiffs' motion to compel (Docket no. 378) is granted. Macleods shall produce the requested information within fourteen calendar days. The plaintiffs shall pay the reasonable expenses incurred by Macleods in complying with the requests. See Fed. R. Civ. P. Rule 45(d)(1). Macleods' application to file a sur-rely (Docket no. 398) is denied.

SO ORDERED.

*[signature: James C. Francis IV]*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
         October 19, 2017

---

pointed out that a response would take about twenty-seven days. (Macleods Memo. at 4). Second, Macleods has the burden of demonstrating burdensomeness, and the affidavit thus should have been including with the first brief. See Gross v. Lunduski, 304 F.R.D. 136, 151 (W.D.N.Y. 2014) (burdensomeness must be demonstrated by affidavit or other evidence). Finally, most of the sur-reply does not actually address those two issues and merely rehashes general arguments about relevance and burden. (Proposed Macleods' Sur-Reply in Further Opposition to Plaintiffs' Motion to Compel Documents, attached as Exh. 1 to Motion to File Sur-Reply, at 1-3). Macleods' motion is therefore denied.

9

Copies transmitted this date:

Bruce E. Gerstein, Esq.
Dan Litvin, Esq.
Joseph Opper, Esq.
Noah H. Silverman, Esq.
Kimberly M. Hennings, Esq.
Garwin Gerstein & Fisher, L.L.P.
1501 Broadway Suite 1416
New York, NY 10036

Chris Letter, Esq.
Dan Chiorean, Esq.
Odom & Des Roches, LLP
650 Poydras St., Suite 2020
New Orleans, LA 70130

Daniel C. Simons, Esq.
David F. Sorenson, Esq.
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103

David C. Raphael, Jr., Esq.
Erin R. Leger, Esq.
Smith Segura & Raphael, LLP
3600 Jackson Street, Suite 111
Alexandria, LA 71303

Russell A. Chorush, Esq.
Miranda Yan Jones, Esq.
Heim, Payne & Chorush, LLP
1111 Bagby, Suite 2100
Houston, TX 77002

Elizabeth A. Silva, Esq.
Faruqi & Faruqi, LLP
685 Third Avenue
26th Floor
New York, NY 10017

Joseph T. Lukens, Esq.
Neill W. Clark, Esq.
Peter R. Kohn, Esq.
Faruqi & Faruqi, LLP
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046

Heather McDevitt, Esq.
Jack Pace, Esq.
Peter J. Carney, Esq.
Martin M. Toto, Esq.
Kristen O'Shaughnessy, Esq.
Ryan P. Johnson, Esq.
Michael E. Hamburger, Esq.
Charles C. Moore, Esq.
White & Case LLP
1221 Ave of the Americas
New York, NY 10020

John M. Gidley, Esq.
White & Case LLP (DC)
701 Thirteenth Street, NW
Washington, DC 20005

Kevin C. Adam, Esq.
White & Case LLP
75 State Street
Boston, MA 02109

Eric R. Conway, Esq.
Amin Talati Upadhye LLP
100 S. Wacker Drive, Suite 2000
Chicago, IL 60606