# Exhibit 323
# (Filed Under Seal)

* H I G H L Y C O N F I D E N T I A L *

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

Civil Action File No. 14-CV-7473

-----------------------------------x

THE PEOPLE OF THE STATE OF NEW YORK, by and through ERIC T. SCHNEIDERMAN, Attorney General of the State of New York,

Plaintiff,

- against -

ACTAVIS, PLC and FOREST LABORATORIES, LLC,

Defendants.

-----------------------------------x

November 5, 2014

9:38 a.m.

Videotaped Deposition of BARRY REISBERG, pursuant to Notice, held at the offices of White & Case LLP, 1155 Avenue of the Americas, New York, New York, before Jineen Pavesi, a Registered Professional Reporter, Registered Merit Reporter, Certified Realtime Reporter and Notary Public of the State of New York.

162

REISBERG - HIGHLY CONFIDENTIAL

people, just the way people drop out because of the side effects of placebo, and more from placebo in my study than from medication, the same thing can happen, I'm sure it will happen, that some people will think that the two is better than one, even though -- from a certain perspective two is better than one, but in actuality in this case two is not better than one.

So I as a doctor, to answer your question, would endeavor first to take a rational approach and to try to explain the risks and benefits and the benefits to the patient and whoever the person is, the caregiver, for example, why one is actually better than two here.

But at a certain point, one wants to make the patient -- you have two patients, one is the person with Alzheimer's disease, the other is the primary caregiver, if you will, and you need to make the primary caregiver happy, you need to make the person with

163

REISBERG - HIGHLY CONFIDENTIAL

Alzheimer's disease all that they can be.

So one can imagine such a situation.

Q. And in that situation, even after you tried to explain things to the patient, if they insisted they wanted the twice-a-day formulation, would you prescribe it?

MS. COLE: Objection.

A. I would prescribe it, I would fill out the form, just the way I have been describing that I fill out the form for -- fill out the prescription for physical therapy and then I fill out the forms certifying subsequently that the person needed the physical therapy when they fax them to me and just the way I fill out forms, I have someone -- I have more elaborate forms that I fill out for my patients, I have someone who is in a kind of nursing facility and I have to fill out forms for that person in terms of not only doing everything I just said, but also in terms of the facility form, they

164

REISBERG - HIGHLY CONFIDENTIAL

want a separate form, not just everything that I just said, but in addition to that, a facility form, just the way I fill out other forms, right.

Q. Doctor, it is your opinion that the Namenda instant-release formulation is remarkably safe and effective, I think you used that phrase?

MS. COLE: Objection, misstates prior testimony, vague.

A. Yes.

Q. Business or financial reasons aside, can you think of any strictly medical reason to restrict the access, restrict patient access, to Namenda IR through the specialty pharmacy program?

MS. COLE: Objection, vague, lacks foundation.

A. Yes, as I have been saying, minimizing amounts of medication, maximizing compliance by minimizing the amount of medication, minimizing agitation which is associated with many, many different kinds of adverse outcomes, are

165

REISBERG - HIGHLY CONFIDENTIAL

medical goals and physicians need to pursue those goals under all circumstances, that's the job of medicine.

And as I have been explaining, we have tried in many, many different ways, reaching out beyond what's considered the professional boundaries, speaking now of ourselves, myself and my collaborators, to maximize the person's capacities and health and well-being.

But in medicine more generally we try to help our patients and those are the reasons why the extended-release medication is better than the IR or the instant-release medication.

Q. But is that in itself a reason to restrict patient access to the IR formulation?

MS. COLE: Objection, lack of foundation, vague, incomplete hypothetical.

A. I believe, yes, in the same sense that I have been alluding to before.

We don't make an Aricept

REISBERG - HIGHLY CONFIDENTIAL

twice-a-day because it is not good for patients.

Nobody moves into the marketplace with a twice-a-day formulation because it would be considered deleterious, it would simply be considered deleterious.

Certainly medically, I don't speak for the FDA, but nobody is so foolhardy as to do that.

Same thing for the Excelon Patch, nobody is trying to move into the marketplace with an Excelon patch that you have to give twice-a-day.

So medically we try to do things that are advantageous for our patients and in this case, patients and caregivers, there is always a wider aspect to those statements.

Q. Do you know whether a generic version of Namenda IR will become available?

MS. COLE: Objection, vague, lack of foundation.

REISBERG - HIGHLY CONFIDENTIAL

A. I believe I do, I believe I do.

Q. Do you have an idea as to when?

MS. COLE: Objection, vague.

A. I believe I do.

Q. When would that be?

MS. COLE: Objection, vague.

A. I believe it would be approximately July of 2015, approximately July of 2015.

Q. Do you recall how you obtained that information?

A. I believe one source was your report.

Q. By report, you mean the complaint maybe that was at the beginning of your materials considered?

MS. COLE: Objection, vague.

A. The attorney -- you're representing the Attorney General?

Q. Correct.

A. So I said your report in that context, so this was the report of the Attorney General that mentioned that.

Q. So it wasn't from a generic

REISBERG - HIGHLY CONFIDENTIAL

drug company?

MS. COLE: Objection, misstates prior testimony, lacks foundation, vague.

A. Definitely not from a generic drug company.

Q. Do you ever get information or marketing materials directly from generic drug companies?

MS. COLE: Objection, vague, lacks foundation.

A. It is a very comprehensive statement.

Let me say that I don't focus my attention on that issue, I haven't researched that issue and it is very hard to say when something doesn't occur that you haven't focused attention to or researched.

But I am not aware of getting such information.

Q. Do you receive marketing materials or information from branded drug companies?

MS. COLE: Objection, vague,

REISBERG - HIGHLY CONFIDENTIAL

lack of foundation.

A. To some extent; I will leave it at that, to some extent.

Q. Doctor, are you aware of any studies to support the proposition that it is safe to convert patients from the extended-release formulation to the immediate-release formulation?

MS. COLE: Objection, vague, lack of foundation.

A. From the extended to the immediate?

Q. Correct.

A. No.

Q. In your practice, have you ever had a patient specifically ask you about the availability of generic drugs?

MS. COLE: Objection, vague, lack of foundation.

A. I discuss course considerations with my patients.

I'm not sure -- I have no specific recollections, but that would be within the purview of what I do, in other