# Exhibit 326
# (Filed Under Seal)

HIGHLY CONFIDENTIAL

Page 1

1  ** H I G H L Y   C O N F I D E N T I A L **
2  UNITED STATES DISTRICT COURT
3  SOUTHERN DISTRICT OF NEW YORK
4  Civil Action No.  1:15-cv-07488-CM
5  -------------------------------------x
6
   IN RE NAMENDA DIRECT PURCHASER
7  ANTITRUST LITIGATION
8
9  -------------------------------------x
              August 18, 2017
10             8:59 a.m.
11
12
13     Videotaped Deposition of FOREST
14  LABORATORIES, LLC; ACTAVIS, PLC; FOREST
15  LABORATORIES, INC.; and FOREST LABORATORIES
16  HOLDINGS LTD., by JUNE K. BRAY, taken by
17  Plaintiffs, pursuant to Rule 30(b)(6)
18  Notice, held at the offices of White & Case
19  LLP, 1221 Avenue of the Americas, New York,
20  New York, before Todd DeSimone, a
21  Registered Professional Reporter and Notary
22  Public of the State of New York.
23
24
25

HIGHLY CONFIDENTIAL

Page 100

1    Q.    I will ask it a little bit
2    differently.
3          Why didn't Forest simply tell
4    the FDA in this letter that it was pursuing
5    the development plan to determine the safe
6    and effective use of memantine
7    hydrochloride for autism with or without a
8    written request?
9          MR. JOHNSON:  Objection.
10   A.    When the PPSR was submitted to
11   the FDA, it was to also obtain their
12   agreement that there is an unmet medical
13   need, and that memantine would be an
14   appropriate product to develop and evaluate
15   for the safe and effective treatment in
16   children with autism where there is a
17   significant unmet medical need.
18   Q.    So could Forest have pursued a
19   development plan and conducted clinical
20   trials on its own without the PWR, without
21   the written request from FDA?
22         MR. JOHNSON:  Objection.
23   A.    Yes.
24   Q.    Could Forest have pursued a
25   development plan and conducted clinical

HIGHLY CONFIDENTIAL

Page 101

1  trials in adults for the treatment of
2  autism and then submitted a supplement to
3  its NDA to add an indication for Namenda
4  for the treatment of autism in adults?
5           MR. JOHNSON:  Objection.
6       A.    I suppose that could have
7  occurred, but autism is, based on my
8  understanding, really is very impactful on
9  children and their development.
10      Q.    So I think you're sort of
11 answering my question, but let me try and
12 ask you, are you saying, then, that Forest
13 believed that there was more merit to the
14 treatment of autism in children than there
15 would be in adults, and that's why it chose
16 to submit a pediatric written request?
17      A.    So let me -- let me go back to
18 this request.  What you did not read into
19 the record is the fact that there were
20 several publications with regard to the
21 off-label use of memantine for the
22 treatment of children with autism, which
23 was brought to our attention by physicians
24 who were actually interested in having more
25 data with regard to the safe and effective

HIGHLY CONFIDENTIAL

Page 102

1  use of memantine for the treatment of
2  autism in children, and the publications
3  that were referenced in the cover letter
4  spoke to the fact that the product was in
5  fact being used in children.
6           So that was really what
7  precipitated and prompted, you know, our
8  interest in, you know, taking a look at a
9  product that was in fact being used
10 off-label for the treatment of -- the use
11 of memantine for the treatment of autistic
12 spectrum disorder, which is why we pursued
13 moving forward with this.
14          To the best of my knowledge, we
15 were never contacted by physicians who were
16 treating adults with autism with memantine,
17 it was only in children.
18     Q.    Is that the only reason why
19 Forest submitted, or sought, rather, to
20 receive a pediatric written request from
21 the FDA?
22          MR. JOHNSON:  Objection.
23     A.    I'm not sure I understand the
24 question.
25     Q.    So let me go back a little bit,