# Exhibit 331
# (Filed Under Seal)

HIGHLY CONFIDENTIAL

Page 1

1        IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF NEW YORK
2
3
     IN RE: NAMENDA DIRECT      : CIVIL ACTION NO.
4    PURCHASER ANTITRUST        : 1:15-cv-07488-CM (JF)
     LITIGATION                 :
5
6
7
8            ** HIGHLY CONFIDENTIAL **
9
10                  July 18, 2017
11
12            Videotaped 30(b)(6) deposition of
13   Teva Pharmaceuticals, through LAUREN
14   RABINOVIC, taken at the offices of Post &
15   Schell, 1600 JFK Boulevard, Four Penn Center,
16   Philadelphia, Pennsylvania  19103, beginning
17   at 1:05 p.m., before LINDA ROSSI-RIOS, a
18   Federally Approved RPR, CCR and Notary Public.
19
20
21
22
23
24
25

Page 34

```
 1   says in the title of the e-mail. So
 2   I'm assuming that's what they're
 3   responding to.
 4   BY MR. ADAM:
 5       Q.   A letter like this or this
 6   letter specifically is something that is kept
 7   in the regular course of business at Teva.
 8   Correct?
 9           MS. FREDERICK: You can answer
10   if you know.
11           THE WITNESS: To the extent --
12   in the generic business and to the
13   extent that you're needing to inform
14   the FDA about a settlement agreement
15   and moving a product off of a
16   discontinued list, yes, you might
17   keep -- I mean, you would keep
18   correspondence with the FDA in the
19   regular course of business. So this
20   letter would fall into that class.
21   BY MR. ADAM:
22
```

Page 35

```
 6   BY MR. ADAM:
 7       Q.   You can put that aside.
 8           MR. ADAM: This would be Exhibit
 9   17.
10              - - -
11           (Exhibit Teva-17, Settlement
12   Agreement, 00000184 - 00000217, was
13   marked for identification.)
14              - - -
15   BY MR. ADAM:
16       Q.   Do you recognize this document?
17       A.   Yes.
18       Q.   What is it?
19       A.   This is the settlement agreement
20   between Forest and Teva regarding the
21   memantine IR product.
22       Q.   If you flip to the back, this is
23   the final executed version. Correct?
24       A.   That's what it -- yeah, that's
25   what it looks like. I see the licenses
```

Page 36

```
 1   executed. It looks like this -- it's both the
 2   settlement agreement and the license
 3   agreement. Yeah, it's executed.
 4       Q.   Just for the record, this is
 5   FRX-AT-000184.
 6           Ms. Rabinovic, did you review
 7   this document in preparing for your
 8   deposition?
 9       A.   I did.
10       Q.   I want to -- did you review any
11   earlier versions of this document?
12       A.   No.
```

Page 37

```
22   BY MR. ADAM:
23       Q.   And it's fair to say that how
24   Teva and force continued to litigate through
25   trial in this case, possibly appeal,
```

Page 38
```
 1  litigation costs would have continued to grow
 2  significantly beyond this number. Correct?
 3          MR. LUKENS: Object to form.
 4          THE WITNESS: They would have
 5      gone up. I don't know what the number
 6      would have been. It would have all
 7      depended on how far the case would go.
 8      Yeah, they would have continued to
 9      grow.
10  BY MR. ADAM:
11      Q.  There's nothing notable about
12  the Namenda IR patent litigation that would
13  have made it less expensive for these parties
14  to continue litigating as opposed to any other
15  case. Correct?
16          MS. FREDERICK: Object to form.
17      Object to the extent it calls for any
18      privileged information. But you can
19      answer to the extent if there is any
20      non-privileged response.
21          THE WITNESS: I don't know that
22      as a part of the -- I didn't compare
23      this litigation with the other cases
24      to -- you know, to do that kind of
25      assessment. That would be, I think,
```

Page 39
```
 1      work product in any event if I had,
 2      so...
 3  BY MR. ADAM:
 4      Q.  My question was, you're not
 5  aware of any other notable differences about
 6  the Namenda litigation that made it different
 7  from other cases. So your answer is no.
 8  Correct?
 9          MR. LUKENS: Object to the form.
10          MS. FREDERICK: Object to form.
11      Also to the extent it calls for expert
12      testimony.
13          THE WITNESS: I said I didn't do
14      the comparison, so...
15  BY MR. ADAM:
16      Q.  Understood. Can you turn to
17  page 202 of this document.
18      A.  Okay.
```



Pages 40 and 41 redacted.

```
                                               Page 42
[redacted lines 1-17]
18  BY MR. ADAM:
19      Q.    Let's go to Bates ending in 207.
20  I'm referring to Sections 4.3 to 4.6.  Have
21  you reviewed these sections?
22      A.    Yes.
23      Q.    And do you understand -- sorry.
[redacted lines 24-25]
```

```
                                               Page 43
[redacted lines 1-16]
17      Q.    Including these provisions in
18  the patent settlement is in Teva's independent
19  self interest.  Correct?
20            MR. LUKENS:  Object to the form.
21            MS. FREDERICK:  Object to form.
22       To the extent it calls for any expert
23       testimony, but to the extent you can
24       answer.
25            THE WITNESS:  I mean, from a
```

```
                                               Page 44
1   business perspective, I would -- you
2   know, the -- we would want to have
3   these provisions in a settlement
4   agreement because we're settling the
5   case.  There were other filers, and so
6   we'd want to make sure that we were
7   getting as good a deal as anybody else
8   was.  So my business is going to have a
9   really hard time accepting an agreement
10  where, oh, yeah, I'm not allowed to go
11  to market even though somebody else got
12  that right to go to market.
13  BY MR. ADAM:
14      Q.    My question was, that provision
15  is in Teva's self interest to include that in
16  settlement agreements.  Correct?
17      A.    Yeah.  Yes.
18      Q.    This settlement agreement that
19  we're looking at is the result of some back
20  and forth negotiations between Forest and
21  Teva.  Correct?
22      A.    That's my understanding.
23      Q.    At no time during those
24  settlement negotiations did Teva communicate
25  with any other generic defendants in that case
```

```
                                               Page 45
1   regarding the terms of the Namenda settlement
2   agreement that they were entering into with
3   Forest.  Correct?
4             MR. LUKENS:  Object to the form.
5             THE WITNESS:  That is correct.
6             MR. ADAM:  I have no further
7        questions.
8             VIDEOGRAPHER:  The time is now
9        13:46.  Off the video record.
10                  - - -
11            (A recess was taken.)
12                  - - -
13            VIDEOGRAPHER:  The time on the
14       clock is 13:55.  We are back on video
15       record.
16                  - - -
17            EXAMINATION
18                  - - -
19  BY MR. LUKENS:
20      Q.    Good afternoon, Ms. Rabinovic.
21  My name is Joe Lukens, and I represent the
22  Direct Purchaser Class Plaintiffs in this
23  case.
24            I just want to focus on first,
25  to start off, the Teva Exhibit 5, the
```

12 (Pages 42 - 45)

Page 46

1  Paragraph IV letter. If you have that.
2    A.   Yes, I have.
3    Q.   So this is the Paragraph IV
4  letter that Teva sent to Forest in connection
5  with the '703 patent and the memantine ANDA.
6  Is that right?
7    A.   Yes.
8    Q.   And in the -- as part of the
9  letter Teva laid out its factual and legal
10 bases for its position regarding the
11 non-infringement position and invalidity
12 position that it took with respect to the '703
13 patent. Is that right?
14   A.   Yes.
15   Q.   And Teva provided this
16 information to Forest after an investigation
17 by Teva's counsel. Is that right?
18       MS. FREDERICK: Object to the
19       extent it calls for any privileged or
20       work product information. But you can
21       answer to the extent it does not.
22       MR. ADAM: Object to form as
23       well.
24       THE WITNESS: Counsel was
25       involved in preparing the legal

Page 47

1       arguments in support of the letter,
2       yes.
3  BY MR. LUKENS:
4    Q.   And so what Teva was doing was
5  letting Forest know at least some of the bases
6  under which Teva believed that its product did
7  not infringe the patent. Is that right?
8        MS. FREDERICK: Object to the
9        extent it calls for any privileged
10       information to Teva's belief informed
11       by legal counsel. But to extent you
12       can answer based on non-privileged
13       information, you can do so.
14       MR. ADAM: Object to the form.
15       THE WITNESS: As required by the
16       regulations, it does reflect Teva is
17       informing Forest of why it -- of its
18       reasons behind its position that it
19       doesn't infringe the patent, yes.
20 BY MR. LUKENS:
21   Q.   Similarly, it's letting Forest
22 know Teva's position with respect to the
23 reasons why the patent is challenged as being
24 invalid. Is that right?
25   A.   That's right.

Page 48

1    Q.   And when Teva sends out a
2  Paragraph IV letter, does Teva anticipate that
3  it may be get sued by the brand company with
4  respect to the patents that are issued within
5  the Paragraph IV letter?
6        MR. ADAM: Objection. Form.
7        THE WITNESS: It may, yeah. It
8        doesn't -- I mean, suit is a
9        possibility, yes.
10 BY MR. LUKENS:
11   Q.   And after Teva served this
12 Paragraph IV letter on Forest, it did get sued
13 by Forest. Is that right?
14   A.   That's my understanding, yes.
15   Q.   And did Teva learn at some point
16 that other ANDA filers had been sued by Forest
17 as well?
18   A.   Yes.
19   Q.   And did Teva believe, if you
20 know, that at the time it submitted this
21 Paragraph IV letter and its ANDA, that it
22 could be the first filer for the memantine
23 product?
24       MR. ADAM: Objection. Form.
25       MS. FREDERICK: Object to the

Page 49

1        extent it calls for any privileged
2        information. But to the extent that
3        you know any non-privileged
4        information, you can do so.
5        THE WITNESS: I thought this was
6        a brand product that had new chemical
7        entity exclusivity, which means there's
8        a date on which that's the earliest
9        date that any company can file a
10       Paragraph IV Cert -- an ANDA with a
11       Paragraph IV Certification. I believe
12       Namenda IR was one of those products.
13       So if we were filing on that date, we
14       would have anticipated that we would be
15       a first filer. Of course, that means
16       the ANDA is accepted by the FDA and all
17       of that as well.
18 BY MR. LUKENS:
19   Q.   At some point after that, Teva
20 learned that there were other entities that
21 believed that they would have first to file
22 status because they filed on the same day?
23   A.   We would have seen that other
24 companies are sued. We were sued along with a
25 bunch of other -- we would assume that they

13 (Pages 46 - 49)

Page 86

1  this point in time, that these are the
2  best terms. They could change. You
3  could get even better terms. But,
4  yeah, you're assuming that you're
5  getting the best date.
6  BY MR. LUKENS:
7     Q.   And if they change for some
8  other generic, the expectation with MFN is
9  that they're going to change for Teva?
10    A.   Correct.
11    Q.   If they're better?
12    A.   Yes, correct.
13  [redacted]
14  [redacted]
15  [redacted]
16  [redacted]
17  [redacted]
18  [redacted]
19  [redacted]
20  [redacted]
21  [redacted]
22  [redacted]
23  [redacted]
24  [redacted]
25  [redacted]

Page 87

1  [redacted]
2  [redacted]
3  [redacted]
4  [redacted]
5  [redacted]
6  [redacted]
7  [redacted]
8  [redacted]
9  [redacted]
10 [redacted]
11 [redacted]
12 [redacted]
13 [redacted]
14 [redacted]
15        MR. LUKENS:  I want to mark the
16    next exhibit, which is Number 20.
17           - - -
18        (Exhibit Teva-20, 7/15/09 E-mail
19    with attachment, 03633179 - 03633187,
20    was marked for identification.)
21           - - -
22  BY MR. LUKENS:
23    Q.   I've handed you what we've had
24  marked as Teva Exhibit 20.  It's a Forest
25  document that begins Bates RFX-AT-03633179.

Page 88

1  And I ask you if you recognize this as an
2  e-mail that was sent to David Stark from Eric
3  Agovino on July 15, 2009?
4     A.   Yes.
5     Q.   And do you see that Mr. Agovino
6  is the intellectual property litigation
7  counsel for Forest Laboratories?
8     A.   That's what it says.
9     Q.   The subject is amended
10 litigation and it appears to have an
11 attachment, Teva settlement proposal.  Do you
12 see that?
13    A.   Yes.
14    Q.   If you could take a -- just a --
15 I don't -- you're not -- I'm not going to ask
16 you too much details about the specifics.  If
17 you could take a look at the attachment.
18    A.   Okay.
19    Q.   Do you have any understanding of
20 whether this is the term sheet that you may
21 have been talking about earlier or is this
22 further along, do you think?
23    A.   I thought the term sheet said
24 term sheet on it.  I don't remember, but I
25 thought it said term sheet on it.  So I'm not

Page 89

1  sure.
2     Q.   So a term sheet is going to be
3  sent in advance of a draft settlement
4  agreement.  Is that right?
5     A.   It can be, yeah.  And I think in
6  this situation, that's my understanding, there
7  was a term sheet sent ahead of time.
8     Q.   And so this e-mail from
9  Mr. Agovino in the second sentence says it's a
10 draft settlement proposal for the Namenda
11 case.  And he says it's subject to comments by
12 Forest and Merz management.  And asks
13 Mr. Stark to review.  Do you see that?
14    A.   Yes.
15    Q.   So attached is the draft
16 settlement agreement.  And I'm not going to
17 ask you about much of this, but if you take a
18 look at paragraph 3, clause 3, it's on page 2
19 of the draft, and it says, "Launch Date."  Do
20 you see that?
21    A.   Yes.
22    Q.   And in the middle of that
23 paragraph, I guess it's the second sentence
24 in, it says, Plaintiffs hereby permit Teva to
25 commence commercial sale or distribution of

23 (Pages 86 - 89)