# Exhibit 354
# (Filed Under Seal)

Page 1

1
2  * H I G H L Y   C O N F I D E N T I A L *
3  UNITED STATES DISTRICT COURT
4  SOUTHERN DISTRICT OF NEW YORK
5  Civil Action File No. 14-CV-7473
6  --------------------------------------x
7  THE PEOPLE OF THE STATE OF NEW YORK, by
8  and through ERIC T. SCHNEIDERMAN, Attorney
9  General of the State of New York,
10
11           Plaintiff,
12
13     - against -
14
15  ACTAVIS, PLC and FOREST LABORATORIES, LLC,
16
17           Defendants.
18 --------------------------------------x
19           October 25, 2014
20           8:02 a.m.
21
             Videotaped Deposition of
22  BRENTON L. SAUNDERS, pursuant to Notice,
    held at the offices of White & Case LLP,
23  1155 Avenue of the Americas, New York, New
    York, before Jineen Pavesi, a Registered
24  Professional Reporter, Registered Merit
    Reporter, Certified Realtime Reporter and
25  Notary Public of the State of New York.

Page 2

```
 1
 2  A P P E A R A N C E S :
 3  STATE OF NEW YORK
       OFFICE OF THE ATTORNEY GENERAL
 4  ERIC T. SCHNEIDERMAN
       120 Broadway
 5  New York, New York 10271-0332
       Attorneys for Plaintiff
 6  BY: ERIC STOCK, ESQ.
       eric.stock@ag.ny.gov
 7      ELINOR HOFFMAN, ESQ.
       elinor.hoffmann@ag.ny.gov
 8      LUCY HALLAM-EAMES, ESQ.
       lucy.hallam-eames@ag.ny.gov
 9
10  WHITE & CASE LLP
       1155 Avenue of the Americas
11  New York, New York 10036-2787
       Attorneys for Acravis and Forest
12  BY: J. MARK GIDLEY, ESQ.
       mgidley@whitecase.com
13      MARTIN M. TOTO, ESQ.
       mtoto@whitecase.com
14      AMANDA MURPHY, ESQ.
       amurphy@whitecase.com
15      PETER J. CARNEY, ESQ.
       pcarney@whitecase.com
16
    ALSO PRESENT:
17  TARA OPALINSKI, Legal Assistant, White &
       Case
18  ROBERT BAILEY, ESQ., Actavis
    MARC FRIEDMAN, The Video Technician
19
20
21
22
23
24
25
```

Page 3

```
 1
 2          THE VIDEO TECHNICIAN: We are
 3  now on the record.
 4          Please note that microphones
 5  are sensitive and may pick up whispering
 6  and private conversations.
 7          Please turn off all cell phones
 8  or place them away from the microphones as
 9  they can interfere with the deposition
10  audio.
11          Recordings will continue until
12  all parties agree to go off the record.
13          My name is Marc Friedman
14  representing Veritext Legal Services, the
15  date today is October 25, 2014, and the
16  time is approximately 8:02 a.m.
17          This deposition is being held
18  in the office of White & Case located at
19  1155 Avenue of the Americas, New York, New
20  York, it is being taken by counsel for the
21  plaintiff.
22          The caption of this case is the
23  State of New York versus Actavis PLC, et
24  al., this case is filed in the United
25  States District Court, Southern District
```

Page 4

```
 1
 2  of New York, Case No. 14-CV-7473.
 3          The name of the witness is
 4  Brenton L. Saunders.
 5          At this time the attorneys in
 6  the room will identify themselves, the
 7  parties they represent, starting with the
 8  noticing attorney, after which time our
 9  court reporter, Jineen Pavesi representing
10  Veritext, will swear in the witness and we
11  can proceed.
12          Counsel.
13          MR. STOCK: This is Eric Stock,
14  I am here on behalf of the New York
15  Attorney General's Office.
16          MS. HOFFMAN: Elinor Hoffman on
17  behalf of New York Attorney General's
18  Office.
19          MR. GIDLEY: Mark Gidley of
20  White & Case on behalf of Forest/Actavis.
21          MR. TOTO: Martin Toto, also
22  White & Case for Forest/Actavis.
23          MS. MURPHY: Amanda Murphy, also
24  White & Case on behalf of Forest/Actavis.
25          MR. BAILEY: Robert Bailey,
```

Page 5

```
 1
 2  general counsel, Actavis.
 3  B R E N T O N  L.  S A U N D E R S,
 4  having first been duly sworn by a Notary
 5  Public of the State of New York, was
 6  examined and testified as follows:
 7  EXAMINATION BY
 8  MR. STOCK:
 9      Q.   Thank you, Mr. Saunders, and
10  may I also thank you for attending today,
11  I know you have a lot on your plate.
12           I am going to ask you a couple
13  of questions about the issues involved in
14  the New York versus Actavis case and the
15  court reporter will take down everything
16  we say and prepare a complete transcript
17  of this deposition.
18           Do you understand that?
19      A.   I do.
20      Q.   Do you understand that this
21  transcript and the video may be used in
22  court?
23      A.   I understand.
24      Q.   So although there is no judge
25  or jury sitting here today, you understand
```

Page 318

```
 1    SAUNDERS - HIGHLY CONFIDENTIAL
 2  switch?
 3    A.    I do.
 4    Q.    Do you have an understanding of
 5  what is being conveyed here in the
 6  presentation to Merz?
 7          MR. GIDLEY:  Objection,
 8  foundation.
 9    A.    Yes, I think what we're trying
10  to explain to Merz is that, you know, we
11  made significant investments in R&D around
12  Namenda XR in the fixed dose combination,
13  including clinical studies, we did a
14  pediatric study, unfortunately it didn't
15  work in autism, which was I kind of
16  remember about ▓▓▓▓▓ or thereabouts,
17  very expensive, that we are investing in
18  discounting to managed care organizations,
19  that we need to spend a lot of time if we
20  decide to do the conversion educating
21  doctors about the conversion, pharmacists
22  about the conversion, and net net all
23  that's pretty expensive.
24    Q.    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
```

Page 319

```
 1    SAUNDERS - HIGHLY CONFIDENTIAL
 2  ▓▓▓▓▓▓▓▓
 3          MR. GIDLEY:  Objection,
 4  foundation, form.
 5    A.    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
```



```
16    Q.    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
```

Page 320

```
 1    SAUNDERS - HIGHLY CONFIDENTIAL
 2  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
 5    Q.    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
 7          Has the decision been made to
 8  discontinue Namenda IR?
 9    A.    It has.
10    Q.    When was that decision made?
11    A.    We made it initially, as I
12  recall, on February 14th, 2014.
13    Q.    Why do you say you made it
14  initially on February 14th?
15    A.    Well, the way it works is you
16  have to apply to the FDA to withdraw
17  support of a product.
18          They have relatively new rules
19  and regulations around this because they
20  track drug shortages so carefully and so
21  they like to be informed of this.
22          And so we needed -- it is a
23  six-month review and so if we wanted to do
24  this by the fall or late August, we needed
25  to inform them in February.
```

Page 321

```
 1    SAUNDERS - HIGHLY CONFIDENTIAL
 2          Like all government -- most
 3  government agencies, when you apply they
 4  post it on their website, so it becomes
 5  public event.
 6    Q.    Who made the decision to
 7  discontinue Namenda IR?
 8    A.    I did.
 9          MR. GIDLEY:  Time frame.
10    Q.    You're saying February 2014 is
11  when the decision was made, is that
12  correct?
13    A.    I made the decision.
14    Q.    And you made the decision.
15          Was there a meeting that you
16  made the decision at, a telephone call?
17    A.    No, we had a series of meetings
18  throughout late 2013 and up until February
19  14th of 2014, this was not a decision we
20  made lightly, we carefully considered it,
21  we studied it.
22          And because we achieved all of
23  our objectives at the time, so we thought,
24  we thought we had the green light to go
25  ahead and do it.
```

Page 354

```
 1   SAUNDERS - HIGHLY CONFIDENTIAL
 2        But the manufacturing group is
 3   still all the same group and so that is a
 4   shared resource in our company and so,
 5   again, until I'm satisfied that the focus
 6   on the new products, on the innovative
 7   products, is complete, I am not going to
 8   allow them to divert resources to the IR.
 9       Q.    You're certainly open to the
10   possibility that distributing Namenda IR
11   through the Actavis generic side of the
12   business may not undermine the increased
13   focus that you're aiming for in the forced
14   switch?
15            MR. GIDLEY:  Objection to form,
16   mischaracterizing the prior testimony.
17       A.    I am absolutely not saying
18   that.
19       Q.    What are you saying?
20       A.    I am saying there may be a
21   point in the future where I'm satisfied
22   that it could, and if at that time I
23   believe that, then we will make a
24   different decision.
25            But as of today I am not
```

Page 355

```
 1   SAUNDERS - HIGHLY CONFIDENTIAL
 2   allowing them to do an authorized generic.
 3            The only reason I raise it is
 4   to show you that they believe it will be a
 5   highly profitable market for the generics.
 6       Q.    If you concluded now that
 7   Actavis generic could distribute the
 8   product without interfering with the brand
 9   division's focus, might you allow them to
10   start the authorized generic now?
11            MR. GIDLEY:  Object to the
12   form, foundation.
13       A.    Probably not.
14       Q.    Why not?
15       A.    Because I want our people
16   focused on XR and we certainly don't have
17   the fixed dose combination out yet so
18   we've got a lot of work to do there, it is
19   only one part of the equation.
20       Q.    [REDACTED]
23            MR. GIDLEY:  Object to form.
24       A.    [REDACTED]
```

Page 356

```
 1   SAUNDERS - HIGHLY CONFIDENTIAL
 2   [REDACTED]
 4       Q.    But if you concluded now that
 5   you were willing to offer an authorized
 6   generic for a Namenda IR in the future and
 7   you were willing to incur the additional
 8   manufacturing responsibilities, then you
 9   could launch now, is that right?
10            MR. GIDLEY:  Objection,
11   incomplete hypothetical.
12       A.    Conceivably we could do
13   whatever we wanted, but we don't have --
14   unfortunately, we don't live in a world of
15   infinite resources.
16       Q.    What is discovery research?
17       A.    It is the most basic science
18   around looking for molecules and biologics
19   and other medicines that would have
20   activity against a targeted disease.
21       Q.    So looking for new drugs, is
22   that right?
23            MR. GIDLEY:  Objection --
24       A.    Well, they have got a long way
25   to go before they become drugs after
```

Page 357

```
 1   SAUNDERS - HIGHLY CONFIDENTIAL
 2   discovery research.
 3       Q.    Is that kind of the heart of
 4   innovation in the pharmaceutical industry?
 5            MR. GIDLEY:  Objection to the
 6   form.
 7       A.    I would say absolutely not.
 8       Q.    Why not?
 9       A.    Because the pharmaceutical
10   industry stinks at it.
11       Q.    Please explain.
12       A.    Virtually every drug that has
13   come to market has not been discovered in
14   the labs of pharmaceutical companies.
15            In fact, in the last decade,
16   the only drug I can think of that has come
17   from, of any size, that's come from the
18   original labs of the pharmaceutical
19   company is Januvia for Merck.
20            Every other one has been bought
21   and licensed and then developed in-house.
22       Q.    So you don't think
23   pharmaceutical companies are innovating by
24   developing new drugs?
25            MR. GIDLEY:  Objection,
```