# Exhibit 365
# (Filed Under Seal)

1
2    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
3    Civil Action File No. 14-CV-7473
     ---------------------------------------)
4
     THE PEOPLE OF THE STATE OF NEW YORK, by
5    and through ERIC T. SCHNEIDERMAN,
     Attorney General of the State of New York,
6
             Plaintiff,
7
             - against -
8
     ACTAVIS, PLC and FOREST LABORATORIES,
9    LLC,
10           Defendants.
     ---------------------------------------)
11
                **HIGHLY CONFIDENTIAL**
12
13              November 2, 2014
                 9:48 a.m.
14
15       Videotaped Deposition of ROBERT
16   A. STEWART, pursuant to Notice, held at
17   the offices of White & Case LLP, 1155
18   Avenue of the Americas, New York, New
19   York, before Debra Stevens, a Registered
20   Professional Reporter and Notary Public of
21   the State of New York.
22
23
24
25

VERITEXT REPORTING COMPANY

212-267-6868                                    516-608-2400

46

```
1         R. Stewart - Highly Confidential
2         So, a lot could be that
3   packaging run and you could have multiple
4   lots that are tied back to one batch.
5      Q.   So would one example of two lots
6   tied to a batch be if some of the pills or
7   tablets were sold in bottles of 30 and
8   others a bottle of 60, for example?
9      A.   Correct.
10     Q.   I see.
11        Now, between batches, I assume
12  one has to clean the equipment carefully
13  before using that equipment for another
14  product?
15     A.   Correct.
16     Q.   You made some reference to that
17  earlier.  Is that a complicated process?
18     A.   Depends on the product, but it
19  could be.
20     Q.   Does that typically take days or
21  weeks or a matter of hours to do, or does
22  it depend?
23     A.   In some cases, it could be
24  hours.  If you are changing over from the
25  same type of product from one lot to the
```

47

```
1         R. Stewart - Highly Confidential
2   next, that is just what is considered a
3   minor cleaning, and it is not as invasive.
4         Other -- when you are going from
5   one chemical to another chemical, could
6   now be a major cleaning where you are
7   stripping out everything within the rooms,
8   the equipment.  And that could be, you
9   know, days for a cleaning.
10     Q.   And that is just part of the
11  normal cost of doing business?
12     A.   Correct.
13     Q.   I am going to turn our attention
14  to your declaration, but if either you,
15  counsel, the reporter or the videographer
16  would like a short break, we can take a
17  short break.
18        MR. CARNEY:  Are you okay?
19        THE WITNESS:  I am okay.
20        MR. KASHA:   We'll mark as
21     Stewart 1 a document titled,
22     "Declaration of Robert Stewart."  It
23     is three pages long and was apparently
24     executed on October 21, 2014.
25        (Exhibit Stewart 1, Declaration
```

48

```
1         R. Stewart - Highly Confidential
2     of Robert Stewart, marked for
3     identification, as of this date.)
4        MR. CARNEY:  Jeremy, we'll
5     designate the transcript highly
6     confidential pursuant to the terms of
7     the protective order/stipulation.
8        MR. KASHA:  Okay.
9      Q.   Have you seen this document
10  before?
11     A.   I have.
12     Q.   What is it?
13     A.   It is a declaration.
14     Q.   Did you write the declaration?
15        MR. CARNEY:  You should not
16     disclose any communications you had
17     with counsel, but you can answer that
18     question otherwise.
19     A.   I worked with counsel to
20  formulate this declaration.
21     Q.   Let's start with paragraph 2,
22  the summary of the testimony.  Do you have
23  a sense of what you are going to be
24  testifying about at the preliminary
25  injunction hearing?
```

49

```
1         R. Stewart - Highly Confidential
2        MR. CARNEY:  I am going to
3     instruct him not to testify to the
4     extent it discloses attorney work
5     product and attorney-client
6     communications.
7      Q.   Can you answer, mindful of your
8   counsel's instruction?
9        MR. CARNEY:  I am instructing
10     you not to answer on that ground.
11     Q.   But you do expect that you may
12  testify about the topics covered in this
13  declaration?
14     A.   It's a possibility.
15     Q.   Once again, I am not asking
16  about any communications with counsel, but
17  do you have any expectation that you may
18  testify about anything that is not
19  included in this declaration?
20        MR. CARNEY:  You should not
21     disclose any communications with
22     counsel.  If you can answer it
23     otherwise, you may do so.
24     A.   I am not going to answer.
25     Q.   Let's take a look at the first
```

VERITEXT REPORTING COMPANY

212-267-6868                        516-608-2400



50

```
1        R. Stewart - Highly Confidential
2   bullet point of paragraph 2.  Just for
3   clarity of the record -- and I won't make
4   you do this with the whole declaration --
5   but can you read that bullet point out
6   loud?
7
8
9
10
11
12
13
14
15       Q.    Thank you.
16       I am going to ask some questions
17  about that before we go on, if that is
18  okay with you.
19       A.    Okay.
20       Q.    We were just talking about
21  batches.  Now that we are talking
22  specifically about Namenda XR, can you
23  tell me how big the batches are?
24       A.    I don't recall what the batch
25  size is offhand.
```

51

```
1        R. Stewart - Highly Confidential
2
3
4
5
6
7
8
9
10
11
12
13       Q.    Okay.  I am going to come back
14  to that, but let's just clarify something
15  first.
16       Namenda XR, is that a tablet or
17  capsule or something else?
18       A.    Namenda XR is a capsule.
19       Q.    Is it always a capsule?
20       A.    It is a capsule.
21       Q.    Do you sell it in any other
22  form?
23       A.    XR?  No.
24       Q.    Is Namenda IR a capsule?
25       A.    No.  It is a tablet.
```

52

```
1        R. Stewart - Highly Confidential
2        Q.    I assume, based on all the talk
3   from earlier about the FDA rules, you
4   can't just switch from one to the other;
5   you can't make IR as a capsule and XR as a
6   tablet, right?
7        A.    That's correct.
8        Q.    Where is Namenda XR
9   manufactured?
10       A.    In Ireland.
11       Q.    Only in Ireland?
12       A.    Correct.
13       Q.    Could you make it anywhere else?
14       A.    Not today.
15
16
17
18
19
20
21
22
23
24
25
```

53

```
1        R. Stewart - Highly Confidential
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**14  (Pages 50 to 53)**

VERITEXT REPORTING COMPANY

212-267-6868                                    516-608-2400



VERITEXT REPORTING COMPANY

212-267-6868                                        516-608-2400

HIGHLY CONFIDENTIAL                          FRX-AT-01733135



58
R. Stewart – Highly Confidential

59
R. Stewart – Highly Confidential

60
R. Stewart – Highly Confidential

61
R. Stewart – Highly Confidential

16 (Pages 58 to 61)

VERITEXT REPORTING COMPANY

212-267-6868

516-608-2400



62

R. Stewart – Highly Confidential

63

R. Stewart – Highly Confidential

64

R. Stewart – Highly Confidential

65

R. Stewart – Highly Confidential

17 (Pages 62 to 65)

VERITEXT REPORTING COMPANY

212-267-6868                                          516-608-2400

HIGHLY CONFIDENTIAL                                          FRX-AT-01733137



**66**

```
1              R. Stewart - Highly Confidential
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21         Q.    Who was your counterpart at
22    Forest in that regard?
23         A.    Kevin Walsh.
24         Q.    Is he still at Actavis?
25         A.    He is not.
```

**67**

```
1              R. Stewart - Highly Confidential
2         Q.    Do you know when he left?
3         A.    Sometime in August, I believe.
4         Q.    Did he leave in part because of
5    this or is it for different reasons?
6         A.    He was -- he and I had
7    overlapping responsibilities, so we didn't
8    need two of us.
9         Q.    So it was because of the
10    acquisition?
11         A.    Correct.
12         Q.    And do you know Mr. Walsh?
13         A.    I have met him.
14
15
16
17
18
19
20
21
22
23
24
25
```

**68**

```
1              R. Stewart - Highly Confidential
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**69**

```
1              R. Stewart - Highly Confidential
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

18  (Pages 66 to 69)

VERITEXT REPORTING COMPANY

212-267-6868                                    516-608-2400



VERITEXT REPORTING COMPANY

212-267-6868

516-608-2400

HIGHLY CONFIDENTIAL

FRX-AT-01733141