# Exhibit 9

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re Namenda Direct Purchaser Antitrust Litigation**<br><br>**THIS DOCUMENT RELATES TO:**<br>**All Direct Purchaser Actions** | **Case No. 1:15-cv-07488-CM (JF)** |

**FOREST'S DISCLOSURE PURSUANT TO**
**THE MAY 19, 2017 MEMORANDUM AND ORDER**

Pursuant to the Court's May 19, 2017 Memorandum and Order, Dkt. No. 249 ("Order"), Defendants Actavis plc, Forest Laboratories, LLC, Forest Laboratories, Inc., and Forest Laboratories Holdings Ltd. (collectively "Forest") hereby list the "subjective beliefs" that Forest currently anticipates it may rely on in its defense of this action. Forest is making this disclosure based on the information currently available to it and based on its understanding of Direct Purchaser Plaintiffs' ("DPPs" or "Plaintiffs") contentions as set forth in the First Amended Complaint, Dkt. No. 26, Oct. 13, 2015 ("Complaint"). Plaintiffs' Complaint includes numerous conclusory and vague allegations, making it difficult for Forest to assess the alleged conduct at issue, let alone what evidence it may need to rebut Plaintiffs' allegations. Moreover, discovery is still underway in this action, with all depositions remaining to be completed, and, as such, in the event that Forest subsequently learns of additional or revised contentions of Plaintiffs, Forest reserves the right to identify and assert additional "subjective beliefs" in its defense of this action. As the Court acknowledged (Order at 11 n.6), referring to "objective" and "subjective" evidence is an imprecise exercise. The term "subjective beliefs" is open to multiple

**CONFIDENTIAL**

interpretations. For the purposes of this disclosure, Forest understands the term generally to mean the contemporaneous individual beliefs of one or more of Forest's relevant executives or employees concerning matters *not* directly observed or experienced by them as facts, including but not limited to beliefs about future events, or the intentions, opinions, or future conduct of other persons or parties.

Forest construes the Court's Order to require Forest to identify only its "subjective beliefs" as defined above, and not to require disclosure of objective facts or other evidence that Forest may rely upon in its defense of this action. While Forest is making a good faith effort to identify the matters covered by the Court's Order, because the term "subjective beliefs" is inherently ambiguous, some of the items listed herein may not necessarily be properly characterized as "subjective beliefs." Forest has nevertheless identified such items out of an abundance of caution and to avoid any dispute over the completeness of Forest's disclosures pursuant to the Court's Order.

Forest does not intend to waive any attorney-client privilege or attorney work product protections (or any other privileges), or to put any privileged communications at issue, by introducing or relying upon any of the "subjective beliefs" listed below in its defense of this action. While the Court has held that it is Forest's burden to establish that the privilege has not been waived, Plaintiffs must first make a threshold showing that the privilege is potentially implicated, such as establishing through testimony that certain evidence was based on attorney communications. *Bank Brussels Lambert v. Chase Manhattan Bank*, 93 Civ. 6876, 1996 U.S. Dist. LEXIS 4630, at *8 (S.D.N.Y. Apr. 11, 1996) ("[T]he burden should be on the party seeking to abrogate the privilege to demonstrate that (1) knowledge of the law has been placed at issue

2

**CONFIDENTIAL**

and (2) application of the privilege would deprive it of access to information necessary to rebut the claim or defense.").

To the extent the Court finds that introduction or reliance upon any of the "subjective beliefs" described below would constitute a waiver or otherwise require production of privileged materials, Forest reserves the right to reconsider its introduction or reliance upon that "subjective belief" and amend this disclosure, as necessary. *See In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2016 U.S. Dist. LEXIS 105619, at *39 (permitting defendants to choose whether to rely on their subjective beliefs informed by attorney advice and waive privilege or rely on objective evidence and protect privileged communications).

As Forest argued in its opposition to plaintiffs' motion to compel (Dkt. No. 232), Forest believes that requiring it to make this disclosure now, before discovery has been completed and indeed before any depositions have been taken in this action, is premature and prejudicial to Forest. Forest continues to believe that the appropriate approach for assessing issues relating to potential waiver is after depositions have been completed, at which point, if additional discovery on privileged communications or additional depositions are necessary, the schedule should be modified at that time to allow for that additional discovery.

Forest reserves the right to introduce or rely upon any subjective beliefs of other parties or non-parties that were elicited in discovery. In addition, to the extent that Plaintiffs elicit or present evidence of Forest's "subjective beliefs" on the topics below—for example, by questioning Forest witnesses about their subjective beliefs at depositions or on cross examination at trial, among other things—Forest believes that, in the interest of fairness, Forest must be permitted to respond without waiving privilege.

3

**CONFIDENTIAL**

Forest does not represent that these disclosures identify every "subjective belief" that it may raise in its defense, but merely Forest's good faith attempt to identify, based on the information currently available, the "subjective beliefs" it may use to support its defenses in this matter.  It is possible that Forest will rely on other types of subjective beliefs that do not remotely implicate the attorney-client or work product privileges.  While it is Forest's present intention to rely on the following subjective beliefs in its rebuttal of Plaintiffs' claims, Forest also reserves the right to not rely on any of the following beliefs in its defense.

Subject to the foregoing conditions and clarifications, and while reserving all rights, Forest responds as follows:

### A. Business Justifications for the Mylan and Orchid Business Agreements

Forest intends to rely, in part, upon evidence from its current or former business executives or employees to rebut any argument that its business deals, including the Lexapro Amendment with Mylan and the Ceftaroline Binding Term Sheet with Orchid, were allegedly motivated by illegitimate or anti-competitive justifications.  For example, Forest anticipates presenting evidence from its current or former executives or employees concerning the business considerations, rationales, and reasons for entering into the agreements with Mylan and Orchid, including evidence of their independence from the then-pending patent litigations and respective settlement agreements.

### B. General Experience with ANDAs, Generic Manufacturers, and Patent Litigations

Forest intends to rely, in part, upon evidence from its current or former business executives or employees to rebut any allegation that its conduct with respect to the Namenda patent litigations was anything but routine behavior under the Hatch-Waxman regime.  For example, Forest anticipates presenting evidence from its current or former business executives or

4

**CONFIDENTIAL**

employees concerning their general experience with respect to Hatch-Waxman litigations, including, but not limited to, the litigation expenses and the business costs of patent litigations. Forest also anticipates presenting evidence from its current or former business executives or employees based on competitive intelligence, business plans, and forecasts.

### C. Terms of the Agreed Upon Namenda IR Patent Litigation Settlements

Forest intends to rely, in part, upon evidence from its current or former business executives to rebut any allegation that the Namenda IR patent litigation settlement agreements provided the generic competitors any consideration beyond the express terms of each of the final agreements, ███████████████████████████████████████████████████████████████████████ Forest anticipates presenting evidence on the actual terms of the final agreements and how they were implemented.

\* \* \*

Subject to the reservation of rights discussed above, Forest does not intend to affirmatively rely on its subjective beliefs to rebut any argument that (1) its position in the patent case was weak, (2) any alleged payment to the generic competitors was "large," (3) Forest acted in "good faith," and (4) the settlement agreements were not "bona fide" and not "for fair value." Instead, to the extent necessary, Forest intends to rely on objective evidence to rebut (1) – (4), and that evidence may include testimony from experts knowledgeable about the underlying technology, the patented inventions (including the validity, enforceability, and infringement by generic ANDA filers of the asserted patent), patent and regulatory law and procedure, and Hatch-

**CONFIDENTIAL**

Waxman patent litigation.

Dated:  June 2, 2017 */s/ Heather K. McDevitt*
Heather K. McDevitt
Martin M. Toto
Jack E. Pace III
Michael E. Hamburger
Kristen O'Shaughnessy
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113

J. Mark Gidley
Peter J. Carney
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

Kevin C. Adam
WHITE & CASE LLP
75 State Street, Floor 24
Boston, MA 02109
Telephone: (617) 979-9300
Facsimile: (617) 979-9301
kevin.adam@whitecase.com

**Counsel for Defendants Actavis plc, Forest Laboratories, LLC, Forest Laboratories, Inc., and Forest Laboratories Holdings Ltd.**

**CONFIDENTIAL**