# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE NAMENDA DIRECT PURCHASER ANTITRUST LITIGATION | No.: 1:15-CV-07488-CM-RWL |

**MEMORANDUM OF LAW IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS'
MOTION TO ENFORCE FOREST'S ELECTION AGAINST RELYING ON ITS
SUBJECTIVE BELIEFS AND TO PRECLUDE AN ELEVENTH-HOUR CHANGE**

**TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................... 1

II.   SUMMARY OF ARGUMENT ................................................................................ 1

III.  FACTUAL BACKGROUND ................................................................................... 4

      A.    *Forest Elected to Forego Assertion of Its Subjective Beliefs in Response to a Court Order Requiring the Election.* ..................................................................... 4

      B.    *Consistent with Its Election, Forest Refused to Disclose Its Subjective Beliefs on Various Issues Throughout the Fact Discovery Period.* ......................................... 5

            1.    Deposition Testimony ............................................................................... 5

            2.    Interrogatories ........................................................................................ 10

            3.    Document Requests ................................................................................. 11

      C.    *Forest's Post-Discovery Gamesmanship* ............................................................ 12

IV.   ARGUMENT ......................................................................................................... 14

      A.    *Forest Cannot Offer "Subjective Belief" Evidence that Is Contrary to Its Election or that Was Withheld During Discovery* ............................................................... 14

            1.    The Court-Ordered Disclosure Binds Forest ........................................... 14

            2.    Forest Cannot Withhold Evidence as Privileged During Discovery But Then Introduce the Withheld Evidence at Trial ........................................ 15

      B.    *Plaintiffs Would Suffer Undue Prejudice by an Eleventh-Hour Waiver* .............. 18

V.    CONCLUSION ...................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Fed. Trade Comm'n v. Actavis, Inc.*,
No. 1:09-CV-955-TWT (N.D. Ga. Feb. 26, 2019) (ECF No. 855) .......................................... 17

*Ginns v. Towle*,
361 F.2d 798 (2d Cir. 1966)................................................................................................. 15, 16

*Guglielmo v. Kopald*,
No. 05-cv-7887 (CLB), 2007 U.S. Dist. LEXIS 46558 (S.D.N.Y. June 26, 2007)................. 16

*In re Lidoderm Antitrust Litig.*,
No. 14-md-02521-WHO, 2016 U.S. Dist. LEXIS 105619 (N.D. Cal. Aug. 9, 2016).......... 4,16

*In re Lidoderm Antitrust Litig.,*
No. 14-md-02521-WHO (N.D. Cal. July 17, 2017) (ECF No. 795) ....................................... 15

*In re Namenda Direct Purchaser Antitrust Litig.*,
No. 15-cv-7488, 2017 U.S. Dist. LEXIS 76675 (S.D.N.Y. May 19, 2017) ............................ 16

*Regeneron Pharm., Inc. v. Merus B.V.*,
144 F. Supp. 3d 530 (S.D.N.Y. 2015).............................................................................. 16, 19

*Union Pac. R. Co. v. Colony Nat'l Ins. Co.*,
No. 8:13CV84, 2016 U.S. Dist. LEXIS 122701 (D. Neb. Sept. 9, 2016) .............................. 17

*United States v. 4003-4005 5th Ave.*,
55 F.3d 78 (2d Cir. 1995)...................................................................................................... 16

*UnitedHealth Grp. Inc. v. Columbia Cas. Co.*,
47 F. Supp. 3d 863 (D. Minn. 2014)...................................................................................... 17

Direct Purchaser Plaintiffs ("Plaintiffs") respectfully bring this motion to estop Forest Laboratories, Inc. ("Forest") from conducting "trial by ambush" by introducing its subjective beliefs on various topics after (1) electing, pursuant to a court order, to disavow reliance upon them; and then (2) withholding discovery on them based on the invocation of privilege.

## I.      INTRODUCTION

In this antitrust case, Plaintiffs allege that Forest improperly settled a patent infringement case involving United States Patent No. 5,061,703 (the "'703 Patent") by paying a would-be competitor, Mylan Pharmaceuticals Inc. ("Mylan"), to delay marketing its generic version of the drug product Namenda IR ("Namenda"). Throughout discovery, Plaintiffs sought evidence of Forest's subjective beliefs on various topics, including its beliefs about the merits of the '703 Patent litigation and whether the agreed-upon date for Mylan's entry reflected Forest's subjective views of those merits. Following extensive motion practice, this Court ordered Forest to elect whether it would (1) rely upon its subjective beliefs and thereby waive privilege, or, in the alternative (2) forego reliance on its subjective beliefs and thereby maintain privilege. Forest elected the latter. Thereafter, Forest repeatedly asserted privilege to block discovery into its subjective beliefs that were informed by attorney communications or work product. Plaintiffs now wish to prevent an ambush at trial when Forest reverses course and tries — as it has indicated it will — to offer witness testimony on the very same subjective beliefs that it elected *not* to rely upon and then withheld from discovery on the basis of privilege.

## II.     SUMMARY OF ARGUMENT

For two reasons, this Court should preclude Forest from offering evidence of its subjective beliefs, particularly those relating to the patent litigation merits and whether Mylan's agreed entry date reflected Forest's subjective views of those merits.

<u>First</u>, in response to the Court's order requiring an election, Forest declined "to waive any

attorney-client privilege or attorney work product protections" and therefore stated that it "does not intend to affirmatively rely on its subjective beliefs to rebut any argument that . . . its position in the patent case was weak." Ex. 1,[1] Forest's Disclosure Pursuant to the May 19, 2017 Memorandum and Order (hereinafter "Disclosure") at 2, 5. In its election, Forest identified just three topics,[2] all unrelated to the strength or weakness of its patent, for which it would rely on "subjective beliefs," and represented in a subsequent email that it "will not rely on any subjective beliefs beyond those outlined in its [election]." ECF No. 281-2 (June 22, 2017) at 3 (pagination in ECF). And in later briefing, Forest again reminded the Court that it was "committing to rely on subjective beliefs for only three narrow topics." ECF No. 282 (June 22, 2017) at 3. Forest should be held to its election and representations, which Plaintiffs relied upon in readying this case for trial.

Second, following its election, and in compliance therewith, Forest refused to allow discovery into its subjective beliefs concerning the merits of its patent litigation or the basis for the agreed-upon dates for generic entry in its settlement agreements with the various generic manufacturers. For example, Forest's attorneys instructed Forest's former chief patent counsel not to disclose his "assessment of the strengths of the arguments that Mylan was making in the

---

[1] References to exhibits herein are to the exhibits to the Declaration of Dan Litvin accompanying this memorandum.

[2] These were Forest's contentions that (1) its Lexapro agreement with Mylan was not "motivated by illegitimate or anti-competitive justifications"; (2) that Forest's "conduct with respect to the Namenda patent litigations was [nothing] but routine behavior under the Hatch-Waxman regime"; and (3) "that the Namenda IR patent litigation settlement agreements provided the generic competitors [no] consideration beyond the express terms of each of the final agreements, including, *inter alia*, licensed early entry for generic ANDA product and, for certain settled defendants, avoided litigation expense payments." Ex. 1, Disclosure at 4-5. Forest emphasized that its subjective evidence would *not* implicate the patent litigation. *See* Ex. 1, Disclosure at 4 (Forest would elicit evidence of its agreements' "independence from the then-pending patent litigations and respective settlement agreements").

Namenda patent litigation." Ex. 2, Ryan (Sept. 7, 2017) Dep. at 37:8-16. Indeed, after refusing to answer a battery of similar questions, he testified that he did not have any "non-privileged information" about "Forest's view as to the strengths of the '703 patent" or "Forest's beliefs of the merits of the Namenda patent litigation." *Id*. at 43:1-12. Forest likewise instructed the corporate representative for its partner, Merz, not to disclose what Forest told it about the patent litigation's merits (*see* Ex. 3, Jochum (August 30, 2017) Dep. – *see infra*), and prevented Plaintiffs from exploring and testing Forest's self-serving assertion that it would not have agreed to earlier generic entry. For instance, Forest admitted that attorney advice informed its "position with respect to the launch date that they would agree to" (Ex. 4, Agovino (Sept. 12, 2017) Dep. – *see infra*), yet Forest's counsel refused to let the witness disclose what that advice was. After having blocked all inquiry into these topics during discovery, Forest should not be allowed to ambush Plaintiffs with them at trial.

As this Court previously ruled, Forest's assertion of subjective beliefs informed by attorney advice would require it to produce otherwise-privileged documents and testimony relating to those beliefs. ECF No. 249 (May 19, 2017) at 14-15 ("[I]t is Forest's burden to establish that it has not waived privilege . . . Forest will have to back up with argument and evidence any contention as to why the 'subjective beliefs' on which it plans to rely do not, in fact, implicate privileged communications based on the guidelines applied in *Lidoderm* and similar cases."). Forest has withheld roughly 15,000 responsive documents on the basis of privilege, and has refused to fully answer interrogatories and deposition questions relating to its subjective beliefs. Forest should not be permitted to derail this litigation by disavowing and revising its election long after discovery has closed and the case is nearing trial. A Forest about-face, if permitted, would require Plaintiffs to seek a new round of document production (likely including extensive *in camera* document

review), interrogatory responses, and depositions.

Plaintiffs wrote to Forest seeking assurances – through a stipulation – that Forest would (1) abide by its court-ordered election; and (2) adhere to its discovery decisions by not seeking to introduce evidence at trial that had been withheld during the fact discovery period. Ex. 5, March 11, 2019 Ltr. and Stipulation. Forest declined Plaintiffs' request that Forest honor its prior commitments to the Court.

## III.    FACTUAL BACKGROUND

### A.    *Forest Elected to Forego Assertion of Its Subjective Beliefs in Response to a Court Order Requiring the Election.*

On April 12, 2017, Plaintiffs filed a motion to compel the production of documents based, in part, on an assertion of an "at issue" privilege waiver. ECF No. 197 (April 12, 2017). In response, Forest argued that it had not yet waived privilege and impliedly invited the Court to follow *In re Lidoderm Antitrust Litig.* by ordering it to elect those "subjective beliefs" on which it would rely:

> Plaintiffs' reliance on *Lidoderm* here is misplaced, as that decision set forth a framework for analysis that Plaintiffs seem to want this Court to skip. Indeed, far from issuing a blanket order on waiver, in *Lidoderm* . . . the court actually ordered defendants to expressly identify a specific list of all "subjective beliefs that they intend[ed] to introduce or rely on at trial" related to the underlying patent settlement agreements.

ECF No. 232 (May 3, 2017) at 15 (citing *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2016 U.S. Dist. LEXIS 105619, at *38 (N.D. Cal. Aug. 9, 2016)). On May 19, 2017, the Court accepted Forest's invitation and ordered Forest to "disclose any subjective beliefs it will rely on in its defense of this action within two weeks[.]" ECF No. 249 at 14.

On June 2, 2017, Forest submitted its Disclosure identifying three "subjective beliefs" on which it intended to rely: (A) "business justifications for the Mylan and Orchid business agreements"; (B) "general experience with ANDAs, generic manufacturers, and patent

litigations"; and (C) "terms of the agreed upon Namenda IR patent litigation settlements." Ex. 1, Disclosure at 4-5. Forest also identified four "subjective beliefs" upon which it would ***not*** rely:

> . . . . Forest does not intend to affirmatively rely on its subjective beliefs to rebut any argument that (1) ***its position in the patent case was weak***, (2) any alleged payment to the generic competitors was "large," (3) Forest acted in "good faith," and (4) the settlement agreements were not "bona fide" and not "for fair value." Instead, to the extent necessary, Forest intends to rely on objective evidence to rebut (1) – (4) . . .

*Id.* at 5-6 (emphasis added).

In a subsequent email exchange, Forest reaffirmed that it would "not rely on any subjective beliefs beyond those outlined in its Disclosure":

> ***Forest*** will rely on objective evidence that does not waive any privilege or protection to support its position on certain affirmative defenses and ***will not rely on any subjective beliefs beyond those outlined in its Disclosure***. Forest believes this approach is in line with Second Circuit case law and Judge Francis's order.

ECF No. 281-2 (June 22, 2017) at 3 (emphasis added); *see also* ECF No. 282 (June 22, 2017) at 4. Forest then reiterated to the Court that it was "committing" to rely on its "subjective beliefs for only three narrow topics," listed above, and that "as set forth in its Disclosure, Forest does not intend to rely on subjective beliefs that were informed by attorney-client communications." ECF No. 282 (June 22, 2017) at 3, 9.

**B.** ***Consistent with Its Election, Forest Refused to Disclose Its Subjective Beliefs on Various Issues Throughout the Fact Discovery Period.***

Throughout discovery, Forest relied explicitly on its Disclosure to refuse to produce evidence concerning its subjective beliefs of the merits of its patent cases.

### 1. Deposition Testimony

Forest instructed not only its own witnesses, but also the witness of its German partner Merz Pharma GmbH & Co. KGaA ("Merz"), to refrain from divulging Forest's subjective beliefs about the merits of the patent or patent litigation.

*(a)     Forest Rule 30(b)(6) Witness Charles Ryan*

Charles Ryan testified as a corporate representative for Forest under Rule 30(b)(6) on September 7, 2017, one week before the close of fact discovery. Ex. 2, Ryan (Sept. 7, 2017) Dep. at 9:12-10:22. During the Namenda patent litigation (between 2008 and 2010), Dr. Ryan was Chief Intellectual Property Counsel at Forest, was "responsible for assessing the merits" of the generics' patent defenses, and did in fact "reach . . . conclusion[s] about the merits" of those defenses. *Id*. at 20:11-21:17, 31:1-9. However, consistent with Forest's election not to assert certain subjective beliefs informed by attorney advice, counsel instructed Dr. Ryan not to disclose his conclusions about the merits of those defenses. *Id*. at 32:10-18.

Defense counsel then blocked Dr. Ryan from disclosing his assessment of the strengths of Mylan's arguments in the patent litigation:

> Q.     What was your assessment of the strengths of the arguments that Mylan was making in the Namenda patent litigation?
>
> MR. JOHNSON:     And I'll instruct you not to answer that question, Dr. Ryan, on grounds of privilege and work product.
>
> Q.     Are you going to follow your counsel's instruction?
>
> A.     Yes.

*Id*. at 37:8-16. Defense counsel also instructed Dr. Ryan not to answer the following questions:

> Q.     At the time of the Mylan settlement, what did you believe was Forest's overall likelihood of success in the case of Mylan relating to the '703 patent? (*Id*. at 38:16-39:1)
>
> Q.     At the time of settlement of the Namenda patent litigation, did you believe that there were any weaknesses in Mylan's invalidity defense? (*Id*. at 39:2-23)
>
> Q.     At the time of the Mylan settlement, did you believe there were any weaknesses in Mylan's non-infringement defense? (*Id*. at 39:24-40:9)

Q. At the time of the Mylan settlement, what did you believe was Forest's likelihood of success as to Mylan's argument with respect to the patent term extension? (*Id*. at 40:10-25)

Q. How strong did you believe the '703 patent was in terms of its ability to exclude potential competitors from marketing generic Namenda products? (*Id*. at 41:1-12)

Q. Were beliefs about the strength of the '703 patent one of the factors that Forest considered when deciding to settle the Namenda patent litigation? (*Id*. at 41:13-23)

Q. And were beliefs of the strength of the '703 patent one of the factors Forest considered when negotiating the terms of the settlement of the Namenda patent litigation? (*Id*. at 41:24-42:10)

Q. In your view, does the final settlement agreement between Forest and Mylan in any way reflect Forest's assessment of patent merits of the Namenda patent litigation? (*Id*. at 42:11-25)

Dr. Ryan ultimately testified (again, as Forest's corporate representative) that Forest has no non-privileged information concerning the patent merits:

Q. Do you have any non-privileged information about Forest's view as to the strengths of the '703 patent?

MR. JOHNSON: Non-privileged information regarding the strength of the patent, you can answer.

A. That's not privileged? I think I probably have to answer no.

Q. Do you have any non-privileged information about Forest's beliefs of the merits of the Namenda patent litigation?

A. No.

*Id*. at 43:1-12. Clearly, Forest blocked Plaintiffs from learning any information concerning Forest's subjective beliefs about the merits of the patent litigation and the strength of its patent, as well as the bases for those beliefs.

(b) *Merz Rule 30(b)(6) Witness Patrick Jochum*

On August 30, 2017, Patrick Jochum testified as a corporate representative for Merz. Ex.

3, Jochum (Aug. 30, 2017) Dep. at 7:24-8:8; 12:15-25. Not only Merz's counsel Mr. Cerrito but also Forest's counsel Mr. Johnson instructed Mr. Jochum not to answer questions relating to Forest's subjective beliefs about the likelihood of success and merits of the patent litigation:

> Q. What did Forest tell Merz regarding its beliefs about the likelihood of success in the Namenda IR patent litigation?
>
> MR. CERRITO: Same instruction [not to answer based on attorney-client privilege, attorney work product, joint defense privilege.]
>
> Q. Are you following that instruction?
>
> MR. JOHNSON: Same here as well.
>
> A. I am following this instruction.
>
> Q. What did Forest tell Merz regarding its beliefs about the merits of the Namenda IR patent litigation?
>
> MR. CERRITO: Same instruction.
>
> MR. JOHNSON: Same instruction.
>
> A. I'm following this instruction.

*Id*. at 140:11-141:23.

At the same deposition, Merz's counsel queried Plaintiffs' counsel whether he was "purposely going for the [privilege] instruction." Plaintiffs' counsel explained that the questions directed at Forest's and Merz's subjective beliefs were being used to draw instructions and thereby ensure that Plaintiffs were not going to be ambushed with subjective beliefs for the first time at trial:

> Q. What did Merz tell Forest regarding its assessment of the merits of the '703 patent?
>
> MR. CERRITO: *I don't know if you're purposely going for the instruction, but if you are, then I'll give it, which is –*
>
> MR. CHORUSH: *I am. I just want to make sure we're not going to hear that*

> ***at trial for the first time.***

MR. CERRITO: ***I appreciate that, and thank you. So I'm going to instruct the witness not to answer.*** He's just trying to make sure that --

A. I understand.

MR. CERRITO: -- that -- so I instruct the witness not to answer based on attorney-client privilege, attorney work product, joint defense privilege.

MR. JOHNSON: Same instruction here.

Q. Are you following your counsel's instructions?

A. I am following my counsel's instructions, yes.

*Id*. at 143:18-144:19 (emphasis added).

### (c) Forest In-House Patent Attorney Eric Agovino

At his September 12, 2017 deposition, Forest's in-house patent counsel Eric Agovino was blocked by defense counsel from providing Forest's subjective reasons for the identical licensed entry date in the settlement agreements between Forest and the generics concerning the '703 Patent:

Q. Now, Mr. Agovino, how did it come about that all of the settlement agreements with the generic companies that were first filers had the same three month prior to patent expiration launch date?

A. That's all Forest would agree to.

Q. Why would Forest only agree to that date?

MR. TOTO: I caution you not to reveal the substance of any privileged communications or privileged legal analysis, which may mean you can't answer the question. But I defer to you.

Q Well, let me withdraw that question because I'm not trying to be tricky. I just want to know if you're going to assert privilege objections. Was Forest's position with respect to the launch date that they would agree to informed by its counsel?

MR. TOTO: So that is a yes or no question.

A.    Yes.

Q.    And what was the advice or position conveyed by Forest's counsel?

MR. TOTO:    I'll object and instruct you not to answer.

Q.    Are you going to follow your attorney's instructions?

A.    Yes.

Ex. 4, Agovino (Sept. 12, 2017) Dep. at 75:10 - 77:4. Forest's reasons for the agreed launch date

in each agreement with the generic manufacturers were thus kept from Plaintiffs, consistent with

Forest's election not to assert certain subjective beliefs informed by attorney advice.

*(d)    Forest's Lead Settlement Negotiator*

On September 7, 2017, Plaintiffs asked David Solomon, Forest's head of business

development, and the decision-maker on the Mylan patent settlement and Lexapro side-deal,

"[w]hat did [D]r. Ryan tell you that led you to conclude that the generics had a very weak case

[p]ost Markman?" Ex. 6, Solomon (Sept. 7, 2017) Dep. at 286:1-14. Defense counsel objected and

instructed the witness not to answer on the basis of privilege. *Id.*

**2.    Interrogatories**

On May 12, 2017 – during the pendency of the motion to compel briefing that culminated

in the Disclosure – Plaintiffs served their first three interrogatories. Ex. 7, Plaintiffs' Amended

First Set of Interrogatories. The three interrogatories sought, respectively, (1) Forest's contentions

relating to patent infringement, (2) Forest's contentions relating to patent validity, and (3) "any

facts or law" on which Forest "will rely" relating to any contention that "Mylan's Defenses were

not meritorious or were unlikely to succeed or that Mylan was not going to or was unlikely to

prevail in the Namenda Patent Litigation absent a settlement." *Id.* at 6-7.

On June 12, 2017, after having made its election via its June 2017 Disclosure, Forest

responded to these three interrogatories.  Each response included the following language, citing

the Disclosure and disavowing that it would assert its subjective beliefs:

> ***Forest objects to this Interrogatory to the extent that it seeks irrelevant information, particularly in light of Forest's June 2, 2017 Disclosures that it does not intend to affirmatively rely on Forest's subjective beliefs to rebut any argument that its position in the patent case was weak***. . . . Forest further objects to this Interrogatory to the extent that it seeks information or discovery of Privileged Information. ***Forest's subjective beliefs regarding the underlying patent litigation are privileged*** and nothing contained in these responses is intended to be, or in any way constitutes, a waiver of any such applicable privilege, immunity, or doctrine.

Ex. 8, Forest's Response to Plaintiffs' Amended First Set of Interrogatories at 10-11, 12-13, 14-15 (emphasis added). On the final day in the discovery period (September 15, 2017), Forest submitted its second supplemental responses to these interrogatories and repeated the objections set forth above. Ex. 9, Forest's Second Supplemental Response to Plaintiffs' First Set of Interrogatories at 10, 12.

### 3. Document Requests

Plaintiffs also sought documents reflecting Forest's subjective beliefs about the merits of the '703 Patent. For example, Plaintiffs' request for production ("RFP") no. 43 sought:

> All documents, regardless of date, concerning the validity, enforceability, infringement, claim interpretation, and strengths or weaknesses of the Patents, including, but not limited to: (a) documents concerning any investigation done by or for any of the Defendants concerning the Patents and (b) legal opinions and analyses concerning the Patents.

ECF 203-1 (Apr. 18, 2017) at 23. In response, Forest "object[ed] to this Request to the extent that it calls for production of documents protected from disclosure by the attorney-client privilege, work product doctrine, joint defense privilege or agreement, or other privilege or protection." ECF 203-2 (Apr. 18, 2017) at 65. Following a letter from Plaintiffs identifying deficiencies in Forest's objections and responses to Plaintiffs' RFPs (ECF 203-3 (Apr. 18, 2017)), Forest explained that it planned to "maintain[] all applicable privileges" (ECF 203-5 (Apr. 18, 2017) at 1). Further, with regard to the documents responsive to Plaintiffs' RFPs pertaining to patents, Forest only "agree[d]

to produce non-privileged documents." ECF 203-5 (Apr. 18, 2017) at 4; *id*. ("Forest is not making an issue of any patents, and rejects any argument of a waiver of any applicable privileges . . . while at the same time confirming on the meet and confer that the patent documents are only relevant to DPPs' causation burden. Indeed, it is for this limited purpose of responding to DPPs that Forest is willing to produce non-privileged, responsive documents to the patent requests outlined by DPPs.").

Forest has maintained its privilege objections and has not produced otherwise privileged information about the patent merits. Forest's privilege log lists roughly *15,000 documents*[3] of which close to 6,000 entries potentially relate to its subjective beliefs about patent merits and/or generic launch dates. Ex. 10, Excerpts from Forest's September 22, 2017 privilege log.

### C.    *Forest's Post-Discovery Gamesmanship*

After the close of fact discovery, on September 25, 2017, the Court ordered Forest to produce five documents that had been "withheld on the basis of privilege," finding that "these documents appear to link the Namenda settlements with the side agreements with Mylan and Orchid." ECF No. 394 at 1. In a post-discovery deposition of Dr. Ryan concerning the newly-produced documents, Forest renewed its position that it was not waiving any privilege:

> As Forest has stated throughout this litigation, and in particular in our May 19th, 2017 [sic] disclosures, Forest does not intend to waive the attorney-client privilege in this matter.

Ex. 11, Ryan (Nov. 7, 2017) Dep. at 334:13-16.[4] Nevertheless, Dr. Ryan – the very same witness

---

[3] Due to the voluminous nature of Defendants' full privilege log, it has not been included as an exhibit, but it can be provided at the Court's request.

[4] Forest made a similar proclamation at the outset of the second deposition of David Solomon, Forest's head of business development: "Before you get started, Mr. Litvin, I wanted to say, as I did in Charles Ryan's most recent deposition, Forest maintains its position that it does not intend to waive any attorney-client privilege or work product production [sic]." Ex. 12, Solomon (Nov. 15, 2017) Dep. at 379:10-15.

who had previously refused to answer questions (at the instruction of defense counsel) about the patent merits during the discovery period (*see supra* at 5-6) – gratuitously injected Forest's belief that the Namenda patent case was "strong" and that, consequently, Forest would not have agreed to license any generic to enter the market earlier than three (3) months before patent expiry:

> Q.  But you are testifying here today that modifying the Lexapro authorized generic deal was not a component of the current settlement offer Forest was proposing to Mylan as of February 11, 2010?

> MR. TOTO: Objection, argumentative. You may answer.

> A.  So let me restate my testimony, because I think you're mischaracterizing it. So we were in -- so ***maybe I should back up. So we had a very strong case. We were prepared to go to trial.*** We weren't going to give more than three months to anyone, including Mylan. So if Mylan wanted to go to trial, we could do that. . . .

*Id.* at 367:1-17 (emphasis added). After Plaintiffs' counsel asserted that this testimony would constitute a waiver and sought to strike the testimony as nonresponsive (*id.* at 370:12-13 and 370:20-371:22), Forest's counsel responded: "This is not a waiver. This is not putting anything at issue. This is simply him answering your questions about this document." *Id.* at 371:3-15.

But, the testimony was clearly gratuitous and not responsive to the pending question. The question pertained to the connection between the settlement agreement and modification of the Lexapro authorized generic deal between Forest and Mylan as clearly articulated in the deposition exhibit, not Forest's subjective views of the patent or patent litigation. This testimony was an intentional effort to inject Forest's purported subjective patent beliefs into the case despite its contrary election, while still not providing all withheld documents on this same subject matter to Plaintiffs so as to prevent a full and fair cross examination.

Forest again engaged in post-discovery gamesmanship in another post-discovery deposition concerning the newly produced documents (this time of Mr. Solomon) by having

***Forest's own attorneys elicit from Mr. Solomon, after Plaintiffs' examination had concluded***, Forest's subjective views on the patent merits under questions from its own attorneys:

> Q.      Switching topics to the patent settlement with Mylan, would a settlement with Mylan that had a launch in 2012 have been acceptable to Forest?
>
> A.      We wouldn't have considered that at all . . . We had settled at that point with over a dozen generics for no more than three months, some of them for no time at all. ***We had, we felt, a very strong case*** . . .

Ex. 12, Solomon (Nov. 15, 2017) Dep. at 421:12-25 (emphasis added). At no time following these depositions did Forest offer to (1) produce otherwise-privileged documents necessary to cross examine these witnesses on the veracity of their assertions; (2) withdraw their privilege objections and fully answer Plaintiffs' interrogatories; or (3) provide Plaintiffs any opportunity to re-depose witnesses to obtain answers to questions Forest's counsel had previously instructed witnesses not to answer.

Following these depositions, Forest sought to rely on Mr. Ryan's subjective belief testimony in support of its motion for summary judgment. *See* ECF No. 665 (Dec. 6, 2017) at 39 (quoting deposition testimony that the reason that Forest was not "going to give more than three months to anyone, including Mylan," was because "we had a very strong case."). Plaintiffs urged the Court to "disregard" this evidence in light of Forest's election not to assert such subjective beliefs and its maintenance of privilege during discovery to block inquiry into Forest's subjective beliefs.  ECF No. 657 (Dec. 11, 2017) at 50-51, n.14.

## IV.      ARGUMENT

### A.      *Forest Cannot Offer "Subjective Belief" Evidence that Is Contrary to Its Election or that Was Withheld During Discovery*

#### 1.      The Court-Ordered Disclosure Binds Forest

The Court's May 19, 2017 Order that Forest elect which "subjective beliefs" it would rely upon (ECF No. 249) was mandatory, not permissive; and Forest's Disclosure is binding, not

revocable. First, it was Forest that suggested the *Lidoderm* "framework" (ECF No. 232 (May 3, 2017) at 15) to elect whether to assert subjective beliefs about matters informed by attorney advice (and thereby waive privilege). As the *Lidoderm* court explained, its framework is binding:

> Having forced defendants to choose between waiving attorney-client privilege and foregoing testimony by percipient and expert witnesses about their subjective motivations and beliefs, the defendants have made their elections and now must live with them.

Ex. 13, *In re Lidoderm Antitrust Litig.*, Civil No. No. 14-md-02521-WHO (N.D. Cal. July 17, 2017) (ECF No. 795) (slip opinion) at 1.

Second, Plaintiffs argued that an early election was necessary so that they would have time to address in discovery those subjects for which Forest elected to assert its subjective beliefs:

> [I]f the Court rules that Forest's assertions addressed herein would trigger a waiver, Plaintiffs would be amenable to the *Lidoderm* approach, which would enable Forest to abandon its defenses if it wanted -- provided that Forest produce such a list in 14 days, which was the time frame used by the *Lidoderm* court and which would be appropriate here in light of the aggressive discovery schedule.

ECF No. 238 (May 8, 2017) at 10. The Court subsequently noted that the "schedule in this action is constricted" and therefore ordered "that Forest disclose any subjective beliefs it will rely on in its defense of this action within two weeks of the date of this order." ECF No. 249 at 14 (May 19, 2017 Order). Thus, it was clear to the parties that Forest's election was going to be binding and that the parties could rely on it in conducting discovery.

Finally, logic compels the conclusion that Forest's own election is binding. The entire purpose of the election was for Forest to finally decide which "subjective beliefs" it intended to rely upon going into discovery. The election was meaningless if Forest was free to later modify it, particularly after the close of discovery, without leave of Court.

## 2. Forest Cannot Withhold Evidence as Privileged During Discovery But Then Introduce the Withheld Evidence at Trial

An independent basis to preclude Forest from relying at trial on its subjective views of its

patent or the patent litigation is its refusal to disclose those views in discovery. The Second Circuit long ago recognized that "[t]he basic purpose of the federal rules, particularly those concerning discovery and disclosure, is to eliminate trial by ambush[.]" *Ginns v. Towle*, 361 F.2d 798, 801 (2d Cir. 1966). But "trial by ambush" would be a regular practice if parties could withhold relevant evidence in discovery but then offer it at trial. As set forth above, Forest repeatedly blocked Plaintiffs from discovery relating to its beliefs on various subjects, most notably including its subjective views of the merits of the '703 Patent and patent litigation. If Forest wanted to preserve its ability to assert its subjective beliefs in defending this case, it was required to timely produce all otherwise-privileged documents related to those beliefs to permit Plaintiffs the opportunity to test the credibility of its assertions. *In re Namenda Direct Purchaser Antitrust Litig.*, 2017 U.S. Dist. LEXIS 76675, at *13 (S.D.N.Y. May 19, 2017) (when "attorney-client advice played a significant role in formulating a party's subjective beliefs on central issues in the case, the adversaries are entitled to disclosure of the otherwise privileged material to test the credibility of those subjective beliefs."), quoting *Lidoderm*, 2016 U.S. Dist. LEXIS 105619, at *36; *Regeneron Pharm., Inc. v. Merus B.V.*, 144 F. Supp. 3d 530, 593-96 (S.D.N.Y. 2015) (where Regeneron wanted to rely on its state of mind at trial, it "was obligated to have previously produced the documents . . . that would have allowed Merus to test [its] various assertions.").

Courts routinely preclude litigants from offering at trial evidence that was withheld as privileged during discovery:

> [I]t should be made clear to the Defendants . . . that they will be unable to withhold production of arguably privileged documents during discovery and thereafter appear at trial, waive the privilege and claim to the jury that they relied in good faith on the advice of counsel . . .

*Guglielmo v. Kopald*, No. 05-cv-7887 (CLB), 2007 U.S. Dist. LEXIS 46558, at *11-12 (S.D.N.Y. June 26, 2007). *See also United States v. 4003-4005 5th Ave.*, 55 F.3d 78, 84-85 (2d Cir. 1995) (in

the closely related Fifth Amendment context, explaining if privilege is invoked "to abuse or obstruct the discovery process . . . particularly if the litigant's request to waive comes only at the 'eleventh hour' and appears to be part of a manipulative, 'cat-and-mouse approach' to the litigation, a trial court may be fully entitled, for example, to bar a litigant from testifying later about matters previously hidden from discovery through an invocation of the privilege."); *Union Pac. R. Co. v. Colony Nat'l Ins. Co.*, No. 8:13CV84, 2016 U.S. Dist. LEXIS 122701, at *11-12 (D. Neb. Sept. 9, 2016) ("[I]f Union Pacific continues to invoke privilege in response to Colony's discovery requests, Union Pacific will be barred from introducing any evidence of how its attorneys evaluated the underlying claims at the time of settlement or how its attorneys perceived Union Pacific's liability at the time of the settlement.").[5]

Just last month, in another reverse-payment antitrust litigation concerning the drug Androgel, the court barred the defendants from "introduc[ing] opinion testimony about the merits of the underlying patent litigation where it has invoked attorney-client privilege or work product privilege as to the bases for that opinion." Ex. 14, Order, *Fed. Trade Comm'n v. Actavis, Inc.*, No. 1:09-CV-955-TWT (N.D. Ga. Feb. 26, 2019) (ECF No. 855) at 1.

Here, Forest understood very clearly that its election (via its Disclosure) was going to limit the evidence it could present at trial. At no time did Forest approach Plaintiffs or seek leave of the

---

[5] *See also UnitedHealth Grp. Inc. v. Columbia Cas. Co.*, 47 F. Supp. 3d 863, 875 (D. Minn. 2014), *aff'd sub nom. UnitedHealth Grp. Inc. v. Exec. Risk Specialty Ins. Co.*, 870 F.3d 856 (8th Cir. 2017) ("The first type of evidence—that is, evidence of how the insured or its attorneys evaluated the claims at the time of settlement—is not available to United, as United repeatedly invoked the attorney-client privilege and work-product doctrine to prevent the insurers from inquiring into United's (or its counsels') subjective evaluations of AMA, Malchow, and the Settlement."); *id.* ("Needless to say, a party cannot use the attorney-client privilege or the work-product doctrine both as a shield and as a sword. If United wanted to use evidence of its or its counsels' settlement evaluations as evidence in this case—which is what United would be doing were it to offer its or its counsels' out-of-court statements on that subject—then United had to allow the insurers to inquire about those evaluations during discovery.").

Court to amend its Disclosure to include the strength or weakness of its patents or patent litigation, or the basis for the agreed entry date in its settlement agreements with the various generic manufacturers, as subjective beliefs it would assert at trial. Nor did it produce any otherwise privileged documents concerning those subjects. Instead, as noted above, Forest repeatedly invoked privilege to withhold documents, deposition testimony and complete interrogatory responses concerning its subjective views of the patent case. Notably, Dr. Ryan, Forest's chief patent counsel, was repeatedly instructed not to answer questions going to Forest's subjective beliefs about the patent merits. *See supra* at 5-6. Then, during the limited post-discovery depositions of Messrs. Ryan and Solomon convened to address documents not relating to the patent merits, Forest sandbagged Plaintiffs by gratuitously injecting its purported belief that it "had a very strong [patent] case" while standing firm on its refusal to produce some or all of the 15,000 documents and other information touching on this same subject withheld on the basis of privilege and its election. Forest's attempted sand-bagging should not be countenanced.

### B.     *Plaintiffs Would Suffer Undue Prejudice by an Eleventh-Hour Waiver*

In hindsight, Forest's shifting pre- and post-discovery strategies concerning its subjective patent views appears to have been a carefully-crafted plan to conduct an end-run around the Court's Order by (1) asserting privilege during discovery to avoid waiving privilege and scrutiny over its purported subjective beliefs that it elected not to assert in its Disclosure but then (2) pulling the rug out from under Plaintiffs by offering a bare bones statement of its subjective beliefs after discovery was over without producing the relevant discovery that would have enabled Plaintiffs to test its assertions.[6] If this type of gamesmanship was tolerated by the courts, litigations would have

---

[6] To the extent Forest now contends it has abandoned its election, it would be improper for it to continue to withhold documents as privileged in the ongoing End-Payor action.

to conduct discovery twice – once pursuant to the original election and a second time after a post-discovery decision to rescind the election.

During discovery, Plaintiffs detrimentally relied on Forest's explicit Disclosure that it would ***not*** assert subjective beliefs about the strength or weakness of its patents, and were deprived of the otherwise-privileged documents Forest would have been required to produce that would have permitted Plaintiffs to test those beliefs. Plaintiffs took discovery, prepared their pretrial filings, and have built their case predicated on the election Forest made. Plaintiffs would be severely prejudiced by any last-minute change now. A late waiver in contradiction of the Disclosure would derail the schedule in this case as it heads toward trial, and/or turn the trial into a circus. *See Regeneron Pharm., Inc.,* 144 F. Supp. 3d at 594-95 (subjective views about patent inadmissible at trial because to allow them would require "in fairness . . . a wholesale re-opening of discovery," including "a top-to-bottom re-review of the Regeneron privilege log . . . to be followed by additional document production, fact depositions, and revised expert reports and depositions," which "is not a fair burden for Merus or the Court."). Forest's privilege log consists of roughly 15,000 documents, more than a third of which potentially relate to subjective beliefs withheld by Forest. *See* Ex. 10 (privilege log excerpts). It is simply late too reverse course.

## V.     CONCLUSION

For the foregoing reasons, Forest should be precluded from offering at trial any "subjective beliefs" assertion it did not list on its June 2017 Disclosure.

Dated: March 14, 2019

Respectfully Submitted:

/s/ *Dan Litvin*

David F. Sorensen
Daniel C. Simons
Berger & Montague, P.C.
1818 Market Street – Suite 3600
Philadelphia, PA 19103
(215) 875-3000
(215) 875-4604 (fax)
dsorensen@bm.net
dsimons@bm.net

Bruce E. Gerstein
Joseph Opper
Kimberly M. Hennings
Dan Litvin
Garwin Gerstein & Fisher LLP
88 Pine Street, 10th Floor
New York, NY 10005
Tel: (212) 398-0055
Fax: (212) 764-6620
bgerstein@garwingerstein.com
jopper@garwingerstein.com
khennings@garwingerstein.com
dlitvin@garwingerstein.com

Peter Kohn
Joseph T. Lukens
Faruqi & Faruqi, LLP
1617 John F Kennedy Blvd. – Suite 1550
Philadelphia, PA 19103
(215) 277-5770
(215) 277-5771 (fax)
pkohn@faruqilaw.com
jlukens@faruqilaw.com

David C. Raphael, Jr.
Erin R. Leger
Smith Segura & Raphael, LLP
3600 Jackson Street, Suite 111
Alexandria, LA 71303
Tel: (318) 445-4480
Fax: (318) 487-1741
draphael@ssrllp.com

Stuart E. Des Roches
Andrew W. Kelly
Odom & Des Roches, LLC
650 Poydras Street, Suite 2020
New Orleans, LA 70130
Tel: (504) 522-0077
Fax: (504) 522-0078
stuart@odrlaw.com

Russ Chorush
Miranda Jones
Heim Payne & Chorush, LLP
1111 Bagby, Suite 2100
Houston, TX 77002
Tel: (713) 221-2000
Fax: (713) 221-2021

rchorush@hpcllp.com

*Counsel for the Direct Purchaser Class Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2019, I electronically filed the above by CM/ECF system.

Respectfully submitted

/s/ *Dan Litvin*

Dan Litvin