**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Namenda Direct Purchaser Antitrust Litigation | Case No. 1:15-cv-07488-CM-RWL |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>FOREST'S MOTION TO BIFURCATE TRIAL INTO TWO PHASES</u>**

**WHITE & CASE** LLP

*Counsel for Defendants Actavis plc, Forest
Laboratories, LLC, Forest Laboratories, Inc., and
Forest Laboratories Holdings Ltd*

# <u>TABLE OF CONTENTS</u>

<u>**Page(s)**</u>

I.     INTRODUCTION ...........................................................................................................1

II.    FACTUAL BACKGROUND........................................................................................3

III.   ARGUMENT ..............................................................................................................4

      A.     Rule 42(b) Gives the Court Broad Discretion to Structure Trial to Prevent Prejudice and Jury Confusion, and to Promote Judicial Efficiency.......................4

      B.     Bifurcation into Two Phases Will Promote Efficiency Because the Reverse-Payment and Hard-Switch Claims Are Distinct with Virtually No Overlap in Evidence......................................................................................................................5

           1.     Phase One: Reverse-Payment Liability and Causation...............................6

           2.     Phase Two: Hard-Switch Injury and Overall Damages.............................7

      C.     Bifurcation into Two Phases Is Necessary to Prevent Forest's Hard-Switch Violation from Tainting the Jury's Determination of Reverse-Payment Liability.......................................................................................................................9

      D.     Bifurcation into Two Phases Will Help Avoid Juror Confusion ..........................11

IV.   CONCLUSION.........................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amato v. City of Saratoga Springs, N.Y.*,
170 F.3d 311 (2d Cir. 1999)..........................................................................4, 9

*Bruton v. United States*,
391 U.S. 123 (1968)..........................................................................................10

*Chevron Corp. v. Donziger*,
800 F. Supp. 2d 484 (S.D.N.Y. 2011).................................................................5

*Crown Cork & Seal Co. v. Credit Suisse First Bos. Corp.*,
288 F.R.D. 335 (S.D.N.Y. 2013) .....................................................................4, 5

*Dallal v. New York Times Co.*,
352 Fed. App'x. 508 (2d Cir. 2009)....................................................................9

*Guidi v. Inter-Continental Hotels Corp.*,
No. 95-cv-9006, 2003 U.S. Dist. LEXIS 5739 (S.D.N.Y. Apr. 8, 2003) ................6

*In re Namenda Direct Purchaser Antitrust Litig.*,
331 F. Supp. 3d 152 (S.D.N.Y. 2018)..................................................................6

*In re Namenda Direct Purchaser Antitrust Litig.*,
No. 15-cv-7488, 2017 U.S. Dist. LEXIS 83446 (S.D.N.Y. May 23, 2017) ............4

*In re Nexium (Esomeprazole) Antitrust Litig.*,
No. 1:12-md-02409 (D. Mass. Dec. 5, 2014) .......................................................6

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
No. 1:14-md-02503 (D. Mass. Mar. 8, 2018) .......................................................6

*In re WorldCom, Inc. Sec. Litig.*,
02 Civ. 3288, 2005 U.S. Dist. LEXIS 2214 (S.D.N.Y. Feb. 17, 2005) ..................4

*Katsaros v. Cody*,
744 F.2d 270 (2d Cir. 1984)..............................................................................5

*Old Chief v. United States*,
519 U.S. 172 (1997)..........................................................................................10

*Reading Industries, Inc. v. Kennecot Copper Corp.*,
61 F.R.D. 662 (S.D.N.Y. 1974) ........................................................................11

*Rezende v. Citigroup Global Mkts., Inc.*,
   09-cv-9392, 2011 U.S. Dist. LEXIS 45475 (S.D.N.Y. Apr. 27, 2011) ...................................8

*Sergeants Benevolent Ass'n Health & Welfare Fund v, Actavis*
   *plc*, 1:15-cv-06549, 2016 U.S. Dist. LEXIS 128349 (S.D.N.Y. Sept. 13, 2016) .....................3

*Trujillo v. Am. Family Mut. Ins. Co.*,
   No. 1:08-cv-36, 2009 U.S. Dist. LEXIS 13381 (D. Utah Feb. 20, 2009).............................10

*Union Carbide Corp. v. Montell N.V.*,
   28 F. Supp. 2d 833 (S.D.N.Y. 1998).....................................................................................11

## STATUTES AND RULES

Fed. R. Civ. P. 42(b) ................................................................................................................4, 5

Fed. R. Evid. 611(a).....................................................................................................................5

## MISCELLANEOUS

8 Moore's Federal Practice § 42.20[4][c] (2019) ........................................................................9

As set forth below, the trial of this action should be bifurcated into two phases to prevent the jury's consideration of DPPs' reverse-payment claim from being unfairly tainted by evidence and argument that Forest violated the antitrust laws in announcing the withdrawal of Namenda IR.  The evidence and argument of Forest's violation of the antitrust laws in announcing the Namenda IR withdrawal is irrelevant to DPPs' reverse-payment claim, but is likely to prejudice the jury against Forest, notwithstanding any instruction from the Court.  Phasing of the trial, and the jury's separate consideration of each distinct claim, is necessary to avoid severe prejudice to Forest.

## I.   INTRODUCTION

The Court has set trial to begin on October 21, 2019 on DPPs' reverse-payment and hard-switch antitrust theories.  ECF No. 688.  This trial will be the first to involve separate antitrust claims based on both a reverse-payment settlement agreement and hard-switch theory of injury.  The trial will involve complex factual and legal issues with dozens of witnesses and hundreds of potential trial exhibits.  DPPs' reverse-payment claim will involve both antitrust and patent law theories and will require extensive expert testimony on the underlying patent litigations and settlements in 2009–10.  DPPs' hard-switch claim involves the distinct issue of whether patients switched to Namenda XR in 2014 before generic entry because of Forest's announced (but ultimately thwarted) withdrawal of Namenda IR, and the impact of the injunction in undoing any anticompetitive harm.  In addition to being separated by four years, the patent settlements and decision to withdraw Namenda IR involved different Forest management teams and personnel.

In addition to these complexities, Forest faces a substantial risk of prejudice if DPPs present these distinct claims to the jury at the same time because Forest's announced withdrawal of Namenda IR has already been determined to violate the antitrust laws.  The jury's

determination of Forest's liability on the distinct reverse-payment claim will likely be influenced by the jury hearing repeatedly that Forest has already been held to violate the antitrust laws as to the hard switch.  Indeed, the substantial risk that the jury could determine liability on the reverse-payment claim—the source of the vast majority of DPPs' more than $20 billion in asserted damages—through the taint of hearing about Forest's separate hard-switch violation rather than on the merits of DPPs' reverse-payment claim would be highly prejudicial to Forest.

Forest recognizes that the Court previously indicated that any prejudice from trying DPPs' separate claims together could be cured through repeated limiting instructions directing the jury to consider the collateral estoppel order on the hard-switch claim only.   Tr. of Proceedings at 5:3–22, ECF No. 689 (Mar. 15, 2019).  Forest respectfully submits that, due to the complexity of the issues here and the inflammatory impact of the finding that Forest has already violated the law, there is a substantial risk of juror confusion resulting in prejudice to Forest that cannot be cured through limiting instructions.  Accordingly, bifurcation is warranted because it would enhance judicial efficiency, promote fairness, and reduce the risk of juror confusion.

Forest proposes that the single trial proceed in two phases before the same jury:

- **PHASE ONE**:  The parties would present evidence of Forest's alleged reverse-payment violation and causation.  The jury would deliberate and determine whether Forest made an illegal reverse payment to Mylan to settle the patent litigation and, if necessary, whether the alleged reverse payment caused delay in generic entry.

- **PHASE TWO**:  The parties would present evidence of whether Forest's hard-switch announcement caused injury.  The parties would also present evidence of alleged damages for the hard switch and reverse payment (if necessary).  The jury would deliberate and determine hard-switch causation and, if necessary, damages for both reverse-payment and hard-switch claims.

2

The Court could schedule the phased trial to occur within the same six-week timeframe that the parties proposed in the joint pretrial order.  Proposed Joint Pretrial Order, ECF No. 529 at 2 ("The parties estimate that the trial will take approximately six (6) weeks.").  In fact, Phase Two could be further expedited depending on the outcome of Phase One.  If the jury returns a verdict of no reverse-payment liability, the damages portion of the trial would be limited to DPPs' hard-switch claim and simplified significantly.  Moreover, DPPs would not be prejudiced because they would still be able to present evidence of their full measure of alleged damages if they succeed in proving their reverse-payment claim in Phase One.  There would be no additional burden on the Court because it would still be a single trial with the same jury empaneled for the duration of the trial.

## II.   FACTUAL BACKGROUND

DPPs allege two distinct antitrust violations: a reverse payment settlement agreement and a hard switch.  DPPs allege that in 2009–10 Forest entered into patent settlement agreements that contained unlawful payments to delay the entry of generic memantine.  First Am. Class Action Compl. ("Compl.") ¶¶ 251–57, 266–74.  DPPs have limited their reverse-payment claim to the agreement with Mylan.  Letter from Bruce Gerstein, ECF No. 565.  Separately, DPPs allege that Forest unlawfully announced the withdrawal of Namenda IR from the market in February 2014.  Compl. ¶¶ 237–43.  The Court dismissed DPPs' claim related to a purported overarching scheme involving both a reverse payment and hard switch.  *Sergeants Benevolent Ass'n Health & Welfare Fund v, Actavis plc*, 1:15-cv-06549-CM-RWL, 2016 U.S. Dist. LEXIS 128349, at *52–53 (S.D.N.Y. Sept. 13, 2016) (dismissing Count II).

On May 23, 2017, the Court denied DPPs' motion for summary judgment on the hard-switch claim, finding that the prior action with the New York Attorney General had not resolved

3

the issues of causation and injury. *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15-cv-7488, 2017 U.S. Dist. LEXIS 83446, at *51–52 (S.D.N.Y. May 23, 2017) (finding that "questions of causation and injury to Plaintiffs were not adjudicated in the prior litigation"). The Court, however, did grant collateral estoppel on "the questions of (1) whether [Forest] possessed monopoly power over the U.S. memantine market up until the entry of generic competition; (2) whether [Forest's] February 2014 announcement of the upcoming discontinuation of Namenda IR was coercive and anticompetitive; and (3) whether Forest had any non-pretextual procompetitive justification for its illegal conduct." *Id.* at *50.

## III.   ARGUMENT

### A.   Rule 42(b) Gives the Court Broad Discretion to Structure Trial to Prevent Prejudice and Jury Confusion, and to Promote Judicial Efficiency

Rule 42(b) provides: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, [or] claims . . . ." Fed. R. Civ. P. 42(b); *see also Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 316 (2d Cir. 1999) (Rule 42(b) "affords a trial court the discretion to order separate trials where such an order will further convenience, avoid prejudice, or promote efficiency."). "Bifurcation requires the presence of only one of these conditions." *Crown Cork & Seal Co. v. Credit Suisse First Bos. Corp.*, 288 F.R.D. 335, 337 (S.D.N.Y. 2013) (internal quotation marks omitted). While the language of Rule 42(b) refers to a "separate trial," courts evaluate whether to bifurcate a single trial into multiple phases using the same standard. *See In re WorldCom, Inc. Sec. Litig.*, 02 Civ. 3288 (DLC), 2005 U.S. Dist. LEXIS 2214, at *6 (S.D.N.Y. Feb. 17, 2005) (granting motion to phase trial pursuant to Rule 42(b)).

District courts have broad discretion to bifurcate trials into phases. *Katsaros v. Cody*, 744 F.2d 270, 278 (2d Cir. 1984) (decision to bifurcate trial is "firmly within the discretion of the trial court" under Rule 42(b)) (internal quotation marks omitted); *see also* Fed. R. Evid. 611(a) (providing that a "court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . make those procedures effective for determining the truth . . . [and] avoid wasting time"). "Rule 42(b) is sweeping in its terms and allows the district court, in its discretion, to grant a separate trial of any kind of issue in any kind of case." *Chevron Corp. v. Donziger*, 800 F. Supp. 2d 484, 491 (S.D.N.Y. 2011) (internal quotation marks omitted). "On a case-by-case basis, courts should examine, among other factors, whether bifurcation is needed to avoid or minimize prejudice, whether it will produce economies in the trial of the matter, and whether bifurcation will lessen or eliminate the likelihood of juror confusion." *Crown Cork & Seal Co.*, 288 F.R.D. at 337 (internal quotation marks omitted).

### B. Bifurcation into Two Phases Will Promote Efficiency Because the Reverse-Payment and Hard-Switch Claims Are Distinct with Virtually No Overlap in Evidence

In determining whether bifurcation is appropriate, "pertinent considerations are the degree of difference between the issues to be tried separately, the overlap or lack thereof in the proof, and any prejudice to either side by the district court's failure to adopt its view of the matter." *Chevron Corp.*, 800 F. Supp. 2d at 491 (citations omitted). These considerations strongly weigh in favor of bifurcation in this case because the evidence relevant to DPPs' reverse-payment claim is completely different from the hard-switch evidence and there would be virtually no overlap between the proposed trial phases. *See Katsaros v. Cody*, 744 F.2d 270, 278 (2d Cir. 1984) (affirming bifurcation "because the two phases involved different types of

5

evidence"); *see also Guidi v. Inter-Continental Hotels Corp.*, No. 95-cv-9006, 2003 U.S. Dist. LEXIS 5739, at *4 (S.D.N.Y. Apr. 8, 2003) (granting motion to bifurcate where evidence on two issues was unrelated and "the degree of witness overlap between the two issues is extremely minimal").  DPPs' distinct claims are based on conduct that occurred four years apart and involved completely separate Forest management teams.  Thus, bifurcating the trial into phases would not result in fact witnesses being recalled to testify about the same topics.

### 1.     Phase One: Reverse-Payment Liability and Causation

During the first trial phase on reverse-payment liability and causation, DPPs would have to establish that Forest's patent settlement with Mylan included a "large and unexplained" reverse payment that was anticompetitive under a rule of reason analysis.  DPPs would also have to prove that the alleged anticompetitive payment caused them injury.  To prove causation, DPPs need to show that absent the payment, earlier generic entry would have occurred by: (1) Forest and Mylan entering into an alternative settlement agreement allowing Mylan to enter on November 2, 2012, or (2) Mylan continuing the litigation and prevailing, thereby obtaining the right to enter by June 2012.  *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 200 (S.D.N.Y. 2018).  Given the complexities required to establish both reverse-payment violation and causation, as distinct from the quantum of damages, several courts have bifurcated liability and damages claims for trial in reverse-payment cases.  *See, e.g.*, *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 1:14-md-02503-DJC (D. Mass. Mar. 8, 2018), ECF No. 1089 (reverse payment trial bifurcated with liability and causation in first phase, damages in second phase); *In re Nexium (Esomeprazole) Antitrust Litig.*, No. 1:12-md-02409-WGY (D. Mass. Dec. 5, 2014), ECF Nos. 833, 1383 (same).

The documentary evidence presented in Phase One would focus on the Lexapro Amendment with Mylan, the merits of the patent litigation, and the patent-litigation settlement negotiations between Forest and the generic manufacturers. The relevant period for this allegation is from January 2008 through July 2010, i.e., the commencement of the patent litigations through the Mylan settlement agreement. *See* DPPs' Contentions ¶ 125, ECF No. 529-1 (listing dates of patent settlement agreements). Moreover, the fact witnesses relevant to reverse-payment liability and causation do not overlap with the witnesses for the hard-switch claim. The key Forest fact witnesses relevant to this phase would be David Solomon and Charles Ryan, neither of whom were involved in the hard-switch decision. At the time of these patent-litigation settlement negotiations, Forest's CEO was Howard Solomon, who left the position in September 2013 before the hard-switch decision. Furthermore, the reverse-payment claim is likely to entail highly technical testimony from numerous patent experts and DPPs' proffered economic expert Einer Elhauge, none of whom offer opinions on the hard-switch claim. In fact, of DPPs' eight experts, six offer no opinions whatsoever related to the hard-switch claim.

### 2.    Phase Two: Hard-Switch Injury and Overall Damages

In Phase Two, the jury would determine whether Forest's hard-switch announcement caused DPPs any injury. The parties agree that the decision to do the hard switch occurred no earlier than October 2013—more than three years after Forest's patent settlements and the Lexapro Amendment with Mylan. *See* DPPs' Contentions ¶ 172, ECF No. 529-1. As such, the hard-switch claim focuses on an entirely different period than the reverse-payment claim. The key Forest employees relevant to the hard-switch claim would be Brent Saunders, William Meury, and Mark Devlin—none of whom were involved in the patent settlement negotiations or

Lexapro Amendment. In fact, Mr. Saunders, Forest's CEO that was responsible for the hard-switch decision, did not join Forest until October 1, 2013 when he replaced Howard Solomon, years after the relevant patent settlement agreements were executed.

Phase Two would also include evidence as to DPPs' alleged damages, which Forest expects to be presented entirely through expert testimony, including DPPs' economist Dr. Russell Lamb. Notably, Dr. Lamb has two distinct damages models: (1) "No Reverse-Payment" model, which includes impact from the hard switch allegation; and (2) "No Hard-Switch" model. Mot. to Exclude Certain Ops. and Proposed Test. of Dr. Russell Lamb, ECF No. 643 at 4–8. The No Reverse-Payment model is especially complex and, to be applicable, would at a minimum require the jury to have found that both DPPs' theories as to liability and causation from the reverse payment and hard switch are correct. Bifurcation would create efficiencies because, if the jury were to find no reverse-payment violation, the damages presentation would be limited to the No Hard-Switch model. There is also no prejudice to DPPs because, if they are successful in proving liability and causation as to their reverse-payment claim in Phase One, they could still present the No Reverse-Payment model as the proper measure of damages in Phase Two.

\*   \*   \*

In summary, the fact-witness testimony will be almost completely distinct in each phase, with no witnesses required to appear in both phases to testify about the same subjects. Similarly, the vast majority of experts would be called in only one phase. The fact that a few experts may be required to testify twice does not weigh against bifurcation because they are paid witnesses and each expert would provide distinct testimony in each phase. *See Rezende v. Citigroup Global Mkts., Inc.*, 09-cv-9392, 2011 U.S. Dist. LEXIS 45475, at \*23 (S.D.N.Y. Apr. 27, 2011) ("Although witnesses . . . may have to testify twice, the issues are sufficiently different such that

witness testimony will not be duplicative.").  Moreover, because the same jury would hear both

phases, there would be no need to reestablish the experts' qualifications.  *See, e.g.*, *Dallal v. New*

*York Times Co.*, 352 Fed. App'x 508, 512 (2d Cir. 2009) ("There was no need for redundant

presentation of evidence . . .  because the same jury was to hear each phase.").

### C. Bifurcation into Two Phases Is Necessary to Prevent Forest's Hard-Switch Violation from Tainting the Jury's Determination of Reverse-Payment Liability

In a case with multiple claims, a court may bifurcate the trial when certain evidence is

admissible only on a particular issue, and it is feared that the party may be prejudiced in the

minds of the jury if such evidence is considered for a different issue to be adjudicated.  *See* 8

Moore's Federal Practice § 42.20[4][c] (2019) ("When a jury's reaction to potentially prejudicial

material contained within one claim or issue threatens to injure a litigant, courts are authorized to

bifurcate the case and separately try other issues in the action first, so as to minimize the risk of

untoward prejudice."); *see also Amato*, 170 F.3d at 316 (affirming bifurcation to prevent

prejudice where prejudicial evidence was admissible only as to one of the claims).  This principle

is directly applicable here.

Allowing DPPs to present evidence and argument on their distinct claims at the same

time raises a high likelihood of prejudice against Forest.  The jury will hear that Forest has

violated the antitrust laws by announcing the discontinuation of Namenda IR and may not be

able to separately analyze the evidence with respect to the reverse-payment claim by putting the

separate hard-switch claim out of their minds.

Even if the Court instructs the jury that the two claims are separate and distinct, Forest

would inevitably be prejudiced by trying the issues together.  Permitting the jury to hear

evidence of Forest's hard-switch violation before adjudicating the reverse-payment claim is

tantamount to permitting evidence of prior wrongful conduct at trial, which is generally inadmissible under Rule 404(b) of the Federal Rules of Evidence. Prior wrongful conduct is generally excluded from evidence because "it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence . . . is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." *Old Chief v. United States*, 519 U.S. 172, 181 (1997) (citation omitted).

The same rationale applies squarely here. Especially given that the wrongful conduct here has the imprimatur of holdings by this Court and the Second Circuit, the jurors are highly likely to give the evidence of Forest's prior wrongful conduct undue weight such that no jury instruction could prevent undue prejudice from potential misuse of that information. *See Bruton v. United States*, 391 U.S. 123, 135 (1968) ("[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored."); *see also Trujillo v. Am. Family Mut. Ins. Co.*, No. 1:08-cv-36 TS, 2009 U.S. Dist. LEXIS 13381, at *7 (D. Utah Feb. 20, 2009) (granting motion to phase trial before the same jury recognizing that "even a limiting instruction may not be enough to mitigate the potential for prejudice in certain circumstances") (citation omitted). With DPPs seeking more than $20 billion in trebled damages, the vast majority of which is based on the alleged reverse payment, the "consequences" to Forest could not be any more "vital." Therefore, fairness requires phasing the trial.

### D. Bifurcation into Two Phases Will Help Avoid Juror Confusion

Bifurcating the trial into phases will also help the jury process the relevant issues by separating complex antitrust and patent issues into more manageable sections. The reverse-payment claim will likely include testimony from several experts on scientific issues related to the development and medical functions of memantine hydrochloride to evaluate the underlying patent infringement and invalidity theories. This testimony will be challenging for any layperson to fully comprehend, and none of those complex patent issues are relevant to the hard-switch claim. Moreover, the reverse-payment claim will involve DPP expert Mr. Elhauge's mathematically derived alternative settlement dates that are unrelated to the hard-switch claim. Courts recognize that when dealing with multiple, complex issues, bifurcation is beneficial to help juror comprehension. *See, e.g.*, *Union Carbide Corp. v. Montell N.V.*, 28 F. Supp. 2d 833, 837 (S.D.N.Y. 1998) (holding that separation of issues to be tried was appropriate in an antitrust trial predicted to last eight weeks because "[c]onfronting one complex set of issues at a time is likely to reduce the possibility of jury frustration and confusion."); *Reading Industries, Inc. v. Kennecot Copper Corp.*, 61 F.R.D. 662, 665 (S.D.N.Y. 1974) (separating distinct antitrust claims to avoid presenting jury with "what would inevitably be an enormously complex charge at the end of trial"). In this case, simplifying the proposed jury instructions and verdict form through phasing of the claims would be a significant benefit to juror comprehension of the issues.

## IV.     CONCLUSION

For the foregoing reasons, Forest respectfully requests that the Court grant its motion to bifurcate the trial into the two phases discussed above.

Dated:  April 19, 2019

WHITE & CASE LLP

By:   /s/ Martin M. Toto
Martin M. Toto
Heather K. McDevitt
John H. Chung
Michael E. Hamburger
William H. Bave, III
Kristen O'Shaughnessy
White & Case LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200

J. Mark Gidley
Christopher M. Curran
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 626-3600

Heather M. Burke
Eric E. Lancaster
White & Case LLP
3000 El Camino Real
5 Palo Alto Square, 9th Floor
Palo Alto, CA 94306
Telephone: (650) 213-0300

Kevin C. Adam
White & Case LLP
75 State Street, Floor 24
Boston, MA 02109
Telephone: (617) 979-9300

**Counsel for Defendants Actavis plc,
Forest Laboratories, LLC, Forest
Laboratories, Inc., and Forest
Laboratories Holdings Ltd.**