**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE NAMENDA DIRECT PURCHASER ANTITRUST LITIGATION | **Civil Action No.: 1:15-CV-07488-CM-RWL** |

**MEMORANDUM OF LAW IN OPPOSITION TO FOREST'S MOTION FOR LEAVE
TO SUPPLEMENT ITS EXPERT REPORTS**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ........................................................................................................... 3

III. ARGUMENT ............................................................................................................. 7

  A. Forest Cannot Circumvent the Consequences of Its Election by Adopting DRL's Alleged Subjective Views About Patent Strength as Its Own ................................................... 7

  B. DRL and Forest Have Triggered a Subject-Matter Waiver ................................................ 8

  C. Use of the DRL Memo Here Would Be Far More Disruptive Than Forest Feigns ............. 9

  D. The DRL Memo Has No Relevance Regardless ............................................................. 11

    (1) Forest Has Not Established That the DRL Memo Reflects an Objective View of the Patent Merits ......................................................................................................... 11

    (2) Only Forest's and Mylan's Views of the Unique Circumstances of *Their* Patent Dispute Are Relevant and the DRL Memo Has No Probative Value on That Subject ........ 12

    (3) Only Forest's and Mylan's Unique Negotiating Circumstances and Leverage Are Relevant ................................................................................................................ 16

  E. Rule 37(c)(1) Is Inapt ................................................................................................. 17

IV. CONCLUSION ........................................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Alcoa S.S. Co.*,
232 F.R.D. 191 (S.D.N.Y. 2005) ................................................. 9

*Bowne, Inc. v. AmBase Corp.*,
150 F.R.D. 465 (S.D.N.Y. 1993) ................................................. 9

*FTC v. Actavis, Inc.*,
570 U.S. 136 (2013) ............................................................... 12

*G & G Closed Circuit Events, LLC v. Castillo*,
2016 WL 3551634 (N.D. Ill. June 30, 2016) ................................. 4

*GE v. Joiner*,
522 U.S. 136 (1997) ............................................................... 17

*Granite Partners, L.P. v. Bear, Stearns & Co.*,
184 F.R.D. 49 (S.D.N.Y. 1999) ................................................. 9

*In re Rezulin Prods. Liab. Litig.*,
369 F. Supp. 2d 398 (S.D.N.Y. 2005) ......................................... 17

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
17 F. Supp. 3d 400 (S.D.N.Y. 2014) ......................................... 8-9

*Nat'l Envelope Corp. v. Am. Pad & Paper Co. of Del., Inc.*,
2009 U.S. Dist. LEXIS 121308 (S.D.N.Y. Dec. 22, 2009) ................ 17

*Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*,
2016 WL 7034074 (N.D. Ill. Dec. 2, 2016) .................................. 4

*Regeneron Pharm., Inc. v. Merus B.V.*,
144 F. Supp. 3d 530 (S.D.N.Y. 2015) ..................................... 10-11

*Salomon Bros. Treasury Litig. v. Steinhardt Partners, L.P.*,
9 F.3d 230 (2d Cir. 1993) ........................................................ 8

*United States v. Bilzerian*,
926 F.2d 1285 (2d Cir. 1991) ................................................... 8

## STATUTES

Fed. R. Civ. P. 37(c)(1)...........................................................................................................17

Fed. R. Evid. 401.................................................................................................................12

Fed. R. Evid. 403.................................................................................................................12

Fed. R. Evid. 502(a)..............................................................................................................8

Fed. R. Evid. 703...........................................................................................................12, 17

## I. INTRODUCTION

Forest's Motion for Leave to Supplement its Expert Reports ("Motion" or "Mot.") is the latest installment of its eleventh-hour privilege-related discovery misconduct, akin to the conduct that is the subject of Plaintiffs' previous motion. ECF No. 687. In response to that Motion, the Court stated that: "No party who has failed to respond to discovery requests on the grounds of privilege will be permitted to assert an argument or to offer evidence that should have been the subject of discovery." ECF No. 684. Yet Forest again belatedly seeks to make tactical and selective use of material previously concealed on privilege grounds.

The material is an attorney-client memorandum from Dr. Reddy's Laboratories ("DRL"), signed by Lee Banks, its former intellectual property counsel (the "DRL Memo"). As a third-party to this litigation, DRL blocked *from Forest*, discovery of the DRL Memo on privilege grounds, but now as Forest's co-defendant in the end-payor case, produced it in that action, with "consent" for Forest to use it here. Toto Decl. ¶ 5 (ECF No. 696). Forest admits it withheld the DRL Memo for at least *five months* before disclosing it. Toto Decl. ¶ 5 (ECF No. 696).

Forest's latest attempt to improperly inject previously withheld privileged material should be denied for multiple reasons. *First*, Forest's Motion directly contradicts its privilege election – an election which has governed the parameters of discovery in this case for years – *not* "to affirmatively rely on its subjective beliefs to rebut any argument that (1) its position in the patent case was weak[.]" Ex. 1, Forest's Disclosure Pursuant to the May 19, 2017 Mem. and Order (the "Election") at 5 (exhibits are attached to the accompanying Litvin Declaration). Yet Forest expressly adopts *as its own* the DRL Memo's views about the merits of the '703 patent litigation (and wants the jury to do likewise). *See* Mot. at 7 ("Now, for the first time, direct evidence is

available showing that the generics (***like Forest***) believed that the *Markman* doomed the patent challenge.") (Emphasis added).

*Second*, Forest sought evidence concerning DRL's views about the strength of the underlying patent more than two years ago in this case, but DRL blocked that discovery on privilege grounds, and Forest took no further action. Now that Forest and DRL's interests are aligned as co-defendants in the end-payor action, however, DRL has "consented" to Forest using the DRL Memo here. But Forest's and DRL's selective disclosure should trigger a broad subject matter waiver with significant consequences.

*Third*, even though Forest filed its Motion a year-and-a-half after discovery closed, and almost two months after the Court told Forest that "there will be no more discovery" (Tr. at 8:17 (Mar. 15, 2019) (ECF No. 689); ECF No. 684 ("Discovery will not be reopened in this case.")), Forest ignores the massive chain reaction of additional fact and expert discovery and privilege-related motions that must occur if Forest were permitted to use the DRL Memo in this case. Forest's suggestion that its experts can simply serve supplemental reports focused on just the DRL Memo and Plaintiffs can do likewise is a non-starter. Instead, if Forest were permitted to use the DRL Memo, the resulting subject matter waiver would release thousands of privileged documents withheld from Plaintiffs, which would, in turn, result in extensive additional fact and expert discovery against Forest and DRL. Plaintiffs would also be entitled to test which of Forest's other generic co-defendants in the end-payor case intend to assert or waive privilege, because Forest ascribes the views in the DRL Memo to them as well. And if the Court countenances this stunt, nothing will prevent those other generics from "consenting" to a similar selective waiver in the future, even during trial.

*Fourth*, the DRL Memo purports to provide an "argument for settlement." Toto Decl. Ex. C (ECF No. 696-3) at DRL (Namenda AT Litig)0012500. Though the DRL Memo expressly relates to only DRL, Forest says that it reflects *all* generics' subjective views, which Forest may argue imbues those views with some objective merit. *See* Mot. at 1 (the DRL Memo "provides direct evidence of the generic challengers' views of the patent case."); *id*. at 7 (it "show[s] that the generics (like Forest) believed that the *Markman* doomed the patent challenge."). But without examining the privileged communications of *every* generic (and of Forest), it is impossible to establish whether DRL's alleged views as stated in a single document are broadly applicable, or idiosyncratic. Moreover, as an internal DRL document, the DRL Memo has no bearing on Mylan's and Forest's subjective views about *their* patent dispute and settlement negotiations (the only ones that matter here), which were vastly different from the DRL-Forest dispute and settlement.

## II.    BACKGROUND

On May 19, 2017, before depositions and the bulk of Forest's document production, Judge Francis ordered Forest to "disclose any subjective beliefs it will rely on in its defense of this action within two weeks[.]" ECF No. 249 at 14. Forest's Election stated that it *would not* "affirmatively rely on its subjective beliefs to rebut any argument that (1) its position in the patent case was weak[.]" Ex. 1, Election at 5. Forest said, however, that it *would* rely on its subjective beliefs to "rebut any allegation that the Namenda IR patent litigation settlement agreements provided the generic competitors any consideration beyond the express terms of each of the final agreements[.]" *Id*. Further procedural background concerning the Election is set forth in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion to Enforce Forest's Election Against Relying on its Subjective Beliefs and to Preclude an Eleventh Hour Change,

ECF No. 687 at 4-14 (as the Court called it, the "Motion with the Silly Name"), which Plaintiffs incorporate herein. The Court invited Plaintiffs to refile that motion as a motion *in limine*, and Plaintiffs intend to do so.

Briefing over the scope of Forest's Election culminated in a September 25, 2017 Order in which Judge Francis found a limited waiver from Forest's Election *to rely* on its subjective beliefs to "rebut any allegation that the Namenda IR patent litigation settlement agreements provided the generic competitors any consideration beyond the express terms of each of the final agreements[.]" Ex. 1, Election at 5. Judge Francis held that privilege had been waived as to "five documents," which "contrary to defendants' position . . . appear to link the Namenda settlements with the side agreements with Mylan and Orchid." ECF No. 394 at 1. Judge Francis ordered Forest to produce "these [five] documents," and no others. Judge Francis found no waiver as to Forest's subjective views concerning the '703 patent litigation. Nor could he – Forest's Election expressly committed that it *would not* rely on those views. *Id.*

In December 2018 (when, unbeknownst to Plaintiffs, Forest already had the DRL Memo), Plaintiffs asked Forest to stipulate that it would not use discovery in the end-payor case in this action. *See* Letter from Dan Litvin to the Court, ECF No. 603 at 3. When Forest declined (*id.*), Plaintiffs apprised the Court that Forest wanted to use end-payor discovery "as a Trojan horse to reopen long-closed fact discovery in the Direct Purchaser Class case." ECF No. 603 at 3 (citing *Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, 2016 WL 7034074, at *3 (N.D. Ill. Dec. 2, 2016) (Rule 26(e) "was never intended to allow material to be smuggled into a case inside a Trojan horse"); *G & G Closed Circuit Events, LLC v. Castillo*, 2016 WL 3551634, at *7 (N.D. Ill. June 30, 2016) (defendant's "eleventh-hour supplement was, effectively, a Trojan Horse. Whether by design or consequence, it paints the court into a corner in which it has to

strike the disclosures or extend the discovery deadline. That tactic is unacceptable.")). Forest denied this Trojan Horse tactic (ECF No. 604 at 2), but that denial now rings hollow.

On March 14, 2019, Plaintiffs filed their motion (ECF No. 687), seeking to hold Forest to its Election, since Forest had refused to recommit not to rely on its subjective beliefs concerning the merits of the patent litigation. ECF No. 687, at 4. That same day, the Court entered an Order that "No party who has failed to respond to discovery requests on the ground of privilege will be permitted to assert an argument or to offer evidence that should have been the subject of discovery." ECF No. 684.

At the status conference the next day, Forest's counsel – who by then had had possession of the DRL Memo for four months but said nothing about it to the Court – tried to rewrite this history, implying that Judge Francis had found a broad waiver as to Forest's subjective views of the patent merits, thereby justifying its changed Election. Tr. 7:9-12 (Mar. 15, 2019) (ECF No. 689). But Forest's production of just five documents unrelated to the patent merits, and the two one-hour depositions limited to those five documents, contradict Forest's suggestion that Judge Francis had found a broad waiver (to say nothing of Forest's failure to produce thousands of privileged documents that Forest would have been obligated to produce had Judge Francis actually held that a broad waiver had occurred). The Court suggested that "if necessary," it would "convene a hearing at which the one and only witness will be Judge Francis" so that it would "not be bamboozled," or "countermand[] anything he has done." Tr. at 7:18-8:17 (Mar. 15, 2019). The Court emphasized that "there will be no more discovery. Discovery is over. We're going to trial." *Id*. at 8:17-18.

DRL and Forest are now co-defendants in the end-payor case, sharing aligned interests. But that was not always so. More than two years ago, while the end-payor case was stayed,

Forest subpoenaed DRL in this action requesting DRL's evaluation of the merits of its patent litigation with Forest.  Toto Decl. Ex. A at ECF p. 6 (Req. 1), ECF p. 15-16 (Req. 6, 8-9).  DRL lodged privilege objections.  Ex. 2, DRL's Resp. and Objections to Def.'s Subpoena at Resp. 1; Ex. 3, DRL's Resp. and Objections to Pls.' Subpoena at Resp. 6, 8-9 (invoking privilege).  Forest dropped the matter.  At DRL's 30(b)(6) deposition in this case, Forest's counsel asked, "Do you know whether the claim construction ruling was the impetus for the settlement negotiations between Dr. Reddy's and Forest?"  Dr. Reddy's lawyer raised privilege objections and instructed the witness not to answer: "I'm going to object.  You are calling for privileged information.  I'm instructing the witness not to answer.  You are instructed not to answer.  Next question, please."  Ex. 4, Dep. Tr. of Jinping McCormick at 104:22-105:7 (July 20, 2017).  Forest never moved to compel an answer or for production of any documents relating to it.

Incredibly, now that Forest and DRL's interests are aligned against the end-payors, Forest injects the DRL Memo, and explicitly adopts it as its own subjective views.  *See* Mot. at 7 (claiming the DRL Memo shows that "the generics (*like Forest*) believed that the *Markman* doomed the patent challenge.") (Emphasis added).  Forest claims that more than 21 months after DRL first blocked discovery about its subjective patent views, more than five months after Forest first obtained the DRL Memo, and almost two months after the Court's unambiguous March 14 and 15 "no further discovery" rulings, DRL has suddenly reversed course and now "consents" to the DRL Memo's use.  Toto Decl. Ex C; Toto Decl. ¶ 5 (ECF No. 696).

Forest's Motion is a blatant effort to circumvent its own Election and the Court's Orders, and prejudice the Plaintiffs.  It should be denied.

## III.   ARGUMENT

### A.  Forest Cannot Circumvent the Consequences of Its Election by Adopting DRL's Alleged Subjective Views About Patent Strength as Its Own

The purpose of the Election was to bind Forest to a position about whether it would waive privilege on its subjective beliefs on, among other issues, the merits of the '703 patent litigation.  Forest said it would *not* rely on subjective views on that subject (Ex. 1, Election at 5), and withheld its views on the patent litigation.  ECF No. 687 at 3-12.  Yet Forest is now trying to use the DRL Memo to circumvent its Election, explicitly proffering it as a proxy for its own views.  *See* Mot. at 7 ("Now, for the first time, direct evidence is available showing that the generics (*like Forest*) believed that the *Markman* doomed the patent challenge.") (Emphasis added).  The Court rebuked this same kind of conduct almost two months ago.  *See* ECF No. 684; Tr. at 8:17 (Mar. 15, 2019) (ECF No. 689).

Forest's express adoption of DRL's alleged subjective views as its own directly contradicts the Court's directives and Forest's own Election.  Thousands of documents about Forest's actual views of the '703 patent litigation are withheld on Forest's privilege log because of its strategic decision *not* to assert its subjective beliefs about its patent litigation, and thereby keep its privilege intact.  Ex. 1, Election at 5.  Forest cannot now simply adopt as reflective of its views, one document from a third-party with aligned interests, particularly when Forest made the strategic choice not to challenge DRL's assertions of privilege in the direct purchaser case, and then held back the DRL Memo for five months.  Toto Decl. ¶ 5 (ECF No. 696).

Permitting Forest's supplementation not only would constitute a "redo" of its Election, but would trigger a massive "redo" of discovery.  *See, infra*.  This is no way to litigate a case, and the Court should not permit it.

**B. DRL and Forest Have Triggered a Subject-Matter Waiver**

Forest intends to use the DRL Memo in both the end-payor case and this one, and DRL, through its selective waiver, presumably hopes to collaterally benefit in the end-payor case from whatever benefit it believes Forest can achieve with it here. But during discovery in this case, both Forest and Plaintiffs subpoenaed DRL, seeking DRL's subjective views about the merits of the '703 patent litigation. DRL asserted privilege. *See supra* at 6. Now that DRL's renewed 12(b)(6) motion in the end-payor case has failed, and its interests have become aligned with Forest's, it apparently believes it can "consent" (Toto Decl. ¶ 5 (ECF No. 696)) to Forest's use of this cherry-picked, self-serving privileged document – and Forest apparently believes it can expressly adopt DRL's subjective views as its own – without triggering a waiver.

But Forest and DRL may not reverse course on privilege and rely on a select document concerning DRL's supposed views of the '703 patent litigation without triggering full and fair follow-up discovery. "[T]he attorney-client privilege cannot at once be used as a shield and a sword." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). *See also Salomon Bros. Treasury Litig. v. Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993) ("selective assertion of privilege should not be merely another brush on an attorney's palette, utilized and manipulated to gain tactical or strategic advantage.").

If Forest were permitted to use the DRL Memo as, *inter alia*, a proxy for (1) its own subjective views; (2) Mylan's subjective views; and (3) the views of the other generics (or a reasonable generic), then Forest and DRL must produce the remainder of the documents on their privilege logs concerning their respective views of the merits of the '703 patent litigation. *See, e.g.*, FED. R. EVID. 502(a); *Salomon Bros. Treasury Litig.*, 9 F.3d at 235 ("[V]oluntary disclosure of work product to an adversary waives the privilege as to other parties."); *John Wiley & Sons,*

*Inc. v. Book Dog Books, LLC*, 17 F. Supp. 3d 400, 405 (S.D.N.Y. 2014) (subject matter waiver triggered under FED. R. EVID. 502(a) by selective disclosure at deposition); *Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Alcoa S.S. Co.*, 232 F.R.D. 191, 199 (S.D.N.Y. 2005) (Francis, J.) ("if a party's disclosure . . . may be misleading because the party has disclosed only favorable material while concealing unfavorable information, waiver is likely to be found for so much of the withheld information as will make the disclosure complete and not misleadingly one-sided.") (Internal quotation marks omitted.); *Granite Partners, L.P. v. Bear, Stearns & Co.*, 184 F.R.D. 49, 55 (S.D.N.Y. 1999) (ordering production of document selectively used and all underlying materials since "[w]aiver typically occurs when the party asserting the . . . makes selective use of the privileged materials."); *Bowne, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 485 (S.D.N.Y. 1993) ("It appears sufficient, for a waiver as to subjects discussed in the disclosed conversations, that the privilege holder has voluntarily revealed only some of the communications on the subject and has withheld others.").

Even if the Court were to order full and fair discovery of Forest's and DRL's previously privileged, internal views of the patent merits, however, it would not cure the prejudice from Forest's plan to have the factfinder infer that the DRL Memo's views apply broadly to all generics (Mot. at 1, 7) and thus are also a proxy for an objective view of the patent merits. The actual views of DRL's fellow generic competitors, including Mylan, would remain privileged and unavailable to Plaintiffs.

### C. Use of the DRL Memo Here Would Be Far More Disruptive Than Forest Feigns

On March 15, 2019, the Court directed that "there will be no more discovery. Discovery is over." Tr. at 8:17-18 (Mar. 15, 2019). Yet Forest makes the absurd argument that introducing the DRL Memo requires no further discovery, because its experts can simply limit their

supplemental reports to the single DRL Memo, Plaintiffs' experts can respond only on that issue, and then limited expert depositions can occur. Mot. at. 1. That argument is wrong because it ignores the very extensive and time-consuming discovery that would be required to prevent the obvious prejudice from this untimely, selective and self-serving disclosure.

If the Court permits Forest to use the DRL Memo for any purpose, the following discovery and related motion practice would be required: (1) a reopening of the DRL subpoena; (2) a waiver of privilege by DRL and Forest; (3) a large scale production of new DRL documents; (4) depositions and re-depositions of DRL witnesses; (5) reopening the subpoenas on Forest's co-defendants in the end-payor case to test their treatment of privilege and possibly a repeat of steps 1-4 as to each of them; (6) reopening of fact discovery against Forest; (7) production from Forest of up to 6,000 documents currently on its privilege log concerning the '703 patent litigation; (8) new depositions of multiple Forest fact witnesses about those documents; (9) new expert reports concerning all this new discovery; (10) new expert depositions concerning the new expert reports; (11) potentially new dispositive and *Daubert* motions; and (12) the submission of a new, revised Joint Proposed Pre-Trial Order and all of its attendant exhibits. This list does not even include the additional motion practice that all this discovery would likely generate.

Obviously, this discovery would completely derail and significantly postpone the October 21, 2019 trial date. Forest's Motion should be denied on that basis alone. The path forward is not to allow all of this massive discovery – it is to reiterate that discovery is over, and to force Forest to once and for all live with the consequences of its Election. *See Regeneron Pharm., Inc. v. Merus B.V.*, 144 F. Supp. 3d 530, 594-95 (S.D.N.Y. 2015) (post discovery assertion of subjective views of patent merits, required "in fairness . . . a wholesale re-opening of

discovery," including "a top-to-bottom re-review of the Regeneron privilege log . . . to be followed by additional document production, fact depositions, and revised expert reports and depositions," which "is not a fair burden for Merus or the Court.").

Forest says its improper and untimely supplemental reports "are central to Forest's liability and causation defenses and should be considered by the jury." Mot. at 6. Plaintiffs disagree that the DRL Memo is even relevant. *See infra*. Its alleged importance to Forest, however, simply underscores why extensive discovery would be necessary to prevent the palpable prejudice to Plaintiffs that would be caused if the Court were to permit Forest to use the DRL Memo. Moreover, discovery in the end-payor case is ongoing and may continue through trial in this case, which means Forest could try this trick again if it procures additional "consents" from additional end-payor co-defendants, even after the start of trial in this case.

### D. The DRL Memo Has No Relevance Regardless

#### (1) Forest Has Not Established That the DRL Memo Reflects an Objective View of the Patent Merits

Forest hopes to get the DRL Memo (or at least its contents) in front of the jury through its experts – that is the whole point of the proffered supplemental reports. But the DRL Memo is inadmissible not only because it is irrelevant but also because any possible relevance it might have is easily outweighed by its danger of causing unfair prejudice. Under these circumstances, Forest cannot use its experts to slip the DRL Memo into this case.

Forest says the DRL Memo is reflective of the views of all the generics, so it may argue that it is thereby reflective of an objective view. Mot. at 1 (the DRL Memo "provides direct evidence of the generic challengers' views of the patent case."); *id*. at 7 (the DRL Memo "show[s] that the generics (like Forest) believed that the *Markman* doomed the patent challenge."). That cannot be established except by Forest's *ipse dixit* because those views have

11

to date been blocked by privilege and cannot be compelled without first reopening the subpoenas as to each generic and putting them to an election like Forest's. Forest is asking the Court to simply adopt, as a basis for relevancy, its assumption about what the DRL Memo may mean about an objective view of the patent merits.

>    **(2)    Only Forest's and Mylan's Views of the Unique Circumstances of**
>    ***Their* Patent Dispute Are Relevant and the DRL Memo Has No**
>    **Probative Value on That Subject**

As explained further below, the DRL Memo is inadmissible because DRL's subjective beliefs are irrelevant here and, regardless, the Memo's prejudicial effect substantially outweighs any legally cognizable probative value it could have. Because the DRL Memo is not itself admissible under Rules 401 and 403, Forest's experts are likewise precluded from disclosing it to the jury. FED. R. EVID. 703 (precluding disclosure to the jury of inadmissible evidence relied on by an expert unless the evidence's "probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect"). Inasmuch as the sole purpose of the proposed supplemental reports is to disclose the details of the DRL Memo to the jury, Forest's requested supplementation is improper.

As both this Court and the U.S. Supreme Court have recognized, the relevant issue in this case is (1) Forest's subjective beliefs about the strength of the patent, (2) at the time Forest paid Mylan not to compete in March 2010. ECF No. 684 at 1 ("I am of the belief that Forest's understanding of the strength of its patent is highly relevant to this case; but if Forest has not answered questions or produced documents on that subject during discovery, Forest will not be permitted to offer any evidence on the point."); *FTC v. Actavis, Inc.*, 570 U.S. 136, 158 (2013) ("Although the parties may have reasons to prefer settlements that include reverse payments, the relevant antitrust question is: What are those reasons?"). The DRL Memo is not legally relevant for two independent reasons. First, it purports to be the subjective belief of DRL, ***not Forest***.

Second, it purports to be DRL's belief sometime prior to DRL's November 11, 2009 settlement, whereas the relevant issue is Forest's belief **at the time it settled with Mylan in March 2010**.

Because the DRL Memo purports to be the confidential, subjective belief of DRL, it has no relevance to the legality of the settlement between Forest and Mylan. Rather than disputing this incontrovertible fact, Forest instead brazenly admits that it is relying on the DRL Memo as a proxy for its *own* subjective beliefs: "Now, for the first time, direct evidence is available showing that the generics (**like Forest**) believed that the *Markman* doomed the patent challenge." Mot. at 7 (emphasis added). This is precisely what the Court already forbade Forest from doing. *See* ECF No. 684. It shocks the conscience that Forest wishes to withhold its actual subjective beliefs as privileged while at the same time offering another company's purported beliefs as a surrogate for its own, withheld beliefs.

Even if Forest could – despite its Election – close the analytical gap between its own subjective beliefs and those of another company, the timing of the DRL Memo and the nature of DRL's patent defenses renders it irrelevant. Although the DRL Memo is undated (Forest produced no cover email or metadata), it sets a "Target Date" of November 2009, indicating that it was created sometime in October 2009 or earlier. Forest's Ex. C at DRL (Namenda AT Litig)0012499. Importantly, however, the relevant date for the challenged settlement between Forest and Mylan in this case is March 2010. Ex. 5, Mar. 16, 2010 letter from Daniel Folt to Hon. J. Sleet (informing Judge Sleet that Forest and Mylan had reached settlement in principle). If the strength and nature of Mylan's patent defenses in March 2010 differed from the strength and nature of DRL's patent defenses DRL in October 2009, then DRL's purported assessment in or around October 2009 is irrelevant.

Mylan did not even serve its expert reports on Forest, however, until ***after DRL had***
***already settled*** on November 11, 2009.

First, regarding infringement, the December 2009 report of Mylan's expert Dr. Olney
sent shock waves through Forest.  Forest served the opening expert report of Dr. Rachelle Doody
regarding infringement on November 20, 2009.  Ex. 6, Doody Rpt.  Mylan responded with the
December 18, 2009 report of Dr. John Olney. Ex. 7, Olney Rebuttal Rpt.  Importantly, Dr.
Olney's research and publications, undertaken well before the Namenda patent litigation
commenced, provided compelling evidence that the relevant dose of memantine in Namenda and
in Mylan's generic product did not function as the patent claims required for infringement.  *See,*
*e.g.*, *id*. ¶¶ 28-29, 50, 57.  Dr. Olney's opinion so decimated Dr. Doody's analysis, that Forest
was forced to file the untimely supplemental report of a different expert, Dr. Malinow, to address
them.  Ex. 8, Malinow Supp. Rpt.  When Mylan moved to strike that untimely report (Ex. 9, Mot.
to Strike), Forest sought to justify the new report in light of "Mylan's ***new*** noninfringement
positions."  Ex. 10, Forest's Opp'n Br. at Table of Contents (emphasis added); *see also id*. at 1
(arguing that the untimely supplemental report was "limited in scope to rebutting the ***newly-***
***expressed*** opinions of Dr. Olney.") (Emphasis added).  There is no evidence that DRL
appreciated Mylan's new non-infringement theories at the time it settled in November 2009.

Second, the DRL Memo states that DRL's sole "invalidity argument has low probability
of success at the district court level."  Toto Decl., Ex. C at DRL (Namenda AT Litig)0012499.
As an initial matter, the relevant issue addressed by the parties' experts in this case is likelihood
of success upon exhaustion of appeals.  Toto Decl., Ex. I, Johnston Report ¶ 16.  DRL's specific
acknowledgement that its concern was limited to the district court level is telling.  Equally
important however, DRL's PIV Certification Notice Letter and interrogatory responses reflect

that it was championing an obviousness defense. Ex. 11, DRL Paragraph IV Certification Notice

Letter, at 18-25 (raising solely an obviousness invalidity defense); Ex. 12, DRL Interrogatory

Responses, at 18-20 (focusing on obviousness). Plaintiffs' expert Mr. Johnston likewise

concluded that Mylan's likelihood of success on the obviousness defense was less than 50%.

Toto Decl., Ex. I, Johnston Report, ¶ 187. But Mylan was pursuing several *other* defenses (*see*

Ex. 13, Mylan's Proposed Findings of Fact and Conclusions of Law, at Table of Contents),

which DRL was either unaware of or did not fully appreciate. Thus, the DRL Memo's views

about DRL's obviousness defense is simply irrelevant since it has no bearing on the merits of

Mylan's other invalidity defenses, for which Mylan had mounted substantial evidence.

Third, there is no mention in the DRL Memo of Mylan's validity challenge to the term

extension of the '703 patent. On November 20, 2009, after the DRL settlement, Mylan served

the expert report of Cameron Weiffenbach explaining not only why the patent term extension

was invalid but also how Forest had obtained it though inequitable conduct. Ex. 14,

Weiffenbach Rpt., at 24-25. Notably, Mylan's 30(b)(6) witness in this case testified that the

reverse payment Mylan received was based on the strength of Mylan's challenge to Forest's

patent term extension, which Mylan had embodied in a draft antitrust complaint it presented to

Forest. Ex. 15, Dep. Tr. of Seth Silber at 1-2, 18:1-19:14, 67:4-69:10; 84:1-10 (Aug. 3, 2017);

Pls.' Revised Contentions (ECF No. 699-1) at ¶¶ 138-40.

Ultimately, the fact that DRL settled without meaningfully investigating its potential

defenses is unsurprising. Based on a study by RBC Capital, DRL has an abysmal 28% success

rate in Hatch-Waxman litigations (Ex. 16, RBC Study, at 5), and it was unable to develop the

evidence Mylan eventually mounted. Indeed, although DRL settled before even submitting any

expert reports, the DRL Memo admits that it was only planning to spend $1 million to get to a

district court decision (*i.e.*, for expert discovery, trial preparation, trial, and post-trial briefing). Toto Decl., Ex. C at DRL (Namenda AT Litig)0012500. The only reasonable conclusion is that DRL intended to focus exclusively on the obviousness defense it had already put forth. But that very same fact highlights why it would be improper for any jury to infer Mylan's, Forest's or all the other generics' beliefs from DRL's.

At bottom, the DRL Memo is only potentially probative if Forest is permitted to proffer DRL's supposed beliefs as a proxy for Forest's or Mylan's own subjective beliefs, or as reflective of all the generics' views (and by implication, an "objective" view). But as explained *supra*, that is plainly impermissible. And even if Forest could do that, the prejudicial effects of the analytical gaps between the October 2009 DRL Memo and the relevant issue in this case (Forest's and Mylan's subjective beliefs in March 2010 in light of Mylan's expert reports) substantially outweigh any probative value. The only purpose of the supplemental reports is to disclose the details of the DRL Memo to the jury. *See, e.g.,* Toto Decl., Ex. C ¶¶ 3-8 (reciting the details of the DRL Memo, but offering no new opinions based on the DRL Memo). But the Memo is not admissible.

### (3) Only Forest's and Mylan's Unique Negotiating Circumstances and Leverage Are Relevant

Mylan was the last generic to settle the '703 patent litigation. Since all prior settlements contained a most favored nations clause (*see* Revised Plaintiffs' Contentions (ECF No. 699-1) ¶ 126-27; SJ Opp'n PASoF (ECF No. 613) ¶¶ 200-15), each generic delegated the final determination of launch date to Mylan, giving Mylan unique leverage the other generic companies (including DRL) lacked. SJ Opp'n PASoF (ECF No. 613) ¶¶ 214-15). Namely, Mylan had the ability to disrupt the entry dates all the other generics had agreed to, an outcome

Forest sought to avoid. *Id. See also* Aug. 13, 2018 Letter from Bruce E. Gerstein to Hon. Colleen McMahon at 1-2 (ECF No. 565).

There is no way DRL's views can be instructive of Forest's or Mylan's views on either the patent merits or Mylan's unique negotiating posture and leverage that incented Forest to offer and Mylan to demand a reverse payment, so they simply have no probative value. *See, e.g.*, *GE v. Joiner,* 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."); *Nat'l Envelope Corp. v. Am. Pad & Paper Co. of Del., Inc.*, 2009 U.S. Dist. LEXIS 121308, at *25-27 (S.D.N.Y. Dec. 22, 2009) (striking irrelevant portions of expert opinion on "fit" grounds because they did not relate to any dispute at issue.); *In re Rezulin Prods. Liab. Litig.*, 369 F. Supp. 2d 398, 420, 438 (S.D.N.Y. 2005) (irrelevant studies improper basis for expert opinion on "fit" grounds); FED. R. EVID. 703 (precluding an expert's disclosure of inadmissible evidence unless the evidence's "probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.").

### E. Rule 37(c)(1) Is Inapt

This Motion has nothing to do with Rule 37(c)(1). Forest is trying to evade the Court's prior orders and circumvent its own Election, while denying Plaintiffs the extensive discovery that would be triggered by Forest's use of the DRL Memo and that would be required to prevent the severe prejudice that its use would inflict on the Plaintiffs. Defendants cite no case law or authority that remotely resembles this case; their cited precedents are irrelevant here.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Forest's

Motion for Leave to Supplement.

Dated: May 6, 2019

Respectfully Submitted:

/s/ *Dan Litvin*


David F. Sorensen
Ellen T. Noteware
Daniel C. Simons
Berger & Montague, P.C.
1818 Market Street – Suite 3600
Philadelphia, PA 19103
(215) 875-3000
(215) 875-4604 (fax)
dsorensen@bm.net
dsimons@bm.net


Peter Kohn
Joseph T. Lukens
Faruqi & Faruqi, LLP
One Penn Center, Suite 1550
1617 John F. Kennedy Blvd.
Philadelphia, PA 19103
(215) 277-5770
(215) 277-5771 (fax)
pkohn@faruqilaw.com
jlukens@faruqilaw.com

Bruce E. Gerstein
Joseph Opper
Kimberly M. Hennings
Dan Litvin
Garwin Gerstein & Fisher LLP
88 Pine Street, 10th Floor
New York, NY 10005
Tel: (212) 398-0055
Fax: (212) 764-6620
bgerstein@garwingerstein.com
jopper@garwingerstein.com
khennings@garwingerstein.com
dlitvin@garwingerstein.com


David C. Raphael, Jr.
Erin R. Leger
Smith Segura & Raphael, LLP
3600 Jackson Street, Suite 111
Alexandria, LA 71303
Tel: (318) 445-4480
Fax: (318) 487-1741
draphael@ssrllp.com



Stuart E. Des Roches
Andrew W. Kelly
Odom & Des Roches, LLC
650 Poydras Street, Suite 2020
New Orleans, LA 70130
Tel: (504) 522-0077
Fax: (504) 522-0078
stuart@odrlaw.com


Russ Chorush
Miranda Jones
Heim Payne & Chorush, LLP
1111 Bagby, Suite 2100

Houston, TX  77002
Tel:  (713) 221-2000
Fax:  (713) 221-2021
rchorush@hpcllp.com

**_Counsel for the Direct Purchaser Class Plaintiffs_**

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2019, I electronically filed the forgoing via the Court's CM/ECF system.

Respectfully submitted,

/s/ *Dan Litvin*
Dan Litvin