**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Namenda Direct Purchaser Antitrust Litigation | Case No. 1:15-cv-07488-CM (RWL) |

**MEMORANDUM IN SUPPORT OF FOREST'S MOTION
*IN LIMINE* 1 TO EXCLUDE EXPERT TESTIMONY THAT
FOREST'S POST-INJUNCTION NOTIFICATIONS CREATED DOUBT
AND CONFUSION ABOUT THE CONTINUED AVAILABILITY OF NAMENDA IR**

**WHITE & CASE** LLP

*Counsel for Defendants Actavis plc, Forest
Laboratories, LLC, Forest Laboratories, Inc., and
Forest Laboratories Holdings Ltd*

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

FACTUAL BACKGROUND.........................................................................................................2

ARGUMENT.................................................................................................................................3

      I.      Drs. Lamb and Berndt Cannot Testify about Physicians' Reactions to Forest's
           Post-Injunction Notifications Because They Failed to Conduct Physician
           Surveys or Other Empirical Analyses.......................................................................4

      II.     Drs. Lamb and Berndt Have Not Identified Any Other Evidence to Support an
           Opinion on Post-Injunction Physician Prescribing Behavior and Rely on Pre-
           Injunction Notice Testimony ...................................................................................6

CONCLUSION...............................................................................................................................8

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Faiveley Transp. USA, Inc. v. Wabtec Corp.*,
    511 Fed. App'x 54 (2d Cir. 2013)............................................................................8

*Highland Capital Mgmt., L.P. v. Schneider*,
    379 F. Supp. 2d 461 (S.D.N.Y. 2005)......................................................................5

*In re Libor-Based Fin. Instruments Antitrust Litig.*,
    299 F. Supp. 3d 430 (S.D.N.Y. 2018)......................................................................5

*In re Namenda Direct Purchaser Antitrust Litig.*,
    331 F. Supp. 3d 152 (S.D.N.Y. 2018)......................................................................2

*Insignia Sys., Inc. v. News Am. Mktg. In-Store Inc.*,
    No. 04-4213, 2011 U.S. Dist. LEXIS 5558 (D. Minn. Jan. 14, 2011)...................4, 5

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)..................................................................................................1

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
    542 F.3d 290 (2d Cir. 2008).....................................................................................3

*Scentsational Techs., LLC v. Pepsi, Inc.*,
    No. 13-cv-8645, 2018 U.S. Dist. LEXIS 24375 (S.D.N.Y. Feb. 14, 2018)............3

*Uchytil v. Avanade*,
    No. C12-2091, 2018 U.S. Dist. LEXIS 141699 (W.D. Wa. Aug. 21, 2018)...........5

### STATUTES AND RULES

Fed. R. Evid. 602 .......................................................................................................7

Forest moves to exclude expert testimony that Forest's widely distributed notifications regarding the December 15, 2014 injunction created doubt and confusion about the continued availability of Namenda IR because Forest mentioned that it intended to appeal Judge Sweet's decision.  DPPs' experts opine that this supposed doubt and confusion about Namenda IR availability caused prescribing physicians to move patient prescriptions to Namenda XR post-injunction, thereby continuing the hard switch.  ECF No. 699-1, Revised Pls.' Contentions ("DPPs' Cont.") at ¶ 189.  Yet neither DPPs nor their experts have identified any factual basis to support that even a single prescribing physician switched a patient to Namenda XR post-injunction based on fear that the injunction would be overturned.

DPPs' economists, Drs. Russell Lamb and Ernst Berndt, have conceded that they conducted no analysis or survey of post-injunction physician prescribing behavior to provide a reliable basis for such testimony.  In fact, DPPs did not take a single deposition of a doctor about their view of the post-injunction period, nor is there any documentary evidence about physicians' prescribing patterns from that post-injunction period (*i.e.*, December 15, 2014 onwards).  Neither DPPs nor their experts have provided any other evidence to make any opinion on physicians' post-injunction prescribing behavior reliable.  Nor are economists qualified to testify as to the state of mind of physicians.  DPPs cannot rely on the *ipse dixit* of their experts.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.") (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Forest recognizes that the Court has found that Dr. Lamb's opinion about "any lasting impact the anticompetitive conduct had post-injunction" is admissible and "fair ground for cross-

examination." *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 179-80 (S.D.N.Y. 2018) (*"Namenda III"*). This motion does not seek to re-litigate whether Dr. Lamb's damages methodology is inadmissible because it includes post-injunction impact in the damages calculation. Rather, Forest's motion only seeks to exclude testimony about the purported impact of the post-injunction notices on physician prescribing behavior.

## FACTUAL BACKGROUND

On December 15, 2014, Judge Sweet entered a preliminary injunction enjoining the removal of Namenda IR from the market, which required, in part, that Forest "inform healthcare providers, pharmacists, patients, caregivers, and health plans of this injunction (and provide a copy of the injunction or other means to easily view the injunction) and the continued availability of Namenda IR in the same or substantially similar manner in which they informed them of Defendants' plan to discontinue Namenda IR in February 2014." Ex. 1, FRX-AT-01747641 (DTX-026) (Order regarding injunction) at ¶ 2. During the period between December 15, 2014 and June 2015, Forest undertook steps to provide court-ordered notices, designed to undo any purported effects of the February 2014 announcement. Forest posted the December 2014 Injunction to the Namenda website and circulated notices that Namenda IR would remain on the market in a substantially similar manner as the February 2014 discontinuation announcement, in full compliance with the injunction. Ex. 2, Decl. of Julie Snyder (DTX-025) at ¶ 5.

DPPs and their economists have repeatedly (and baselessly) asserted that the fact that the post-injunction notices also referenced an appeal "create[d] confusion and doubt in the marketplace, especially among physicians, about the future availability of Namenda IR." Ex. 3, Am. Reply Expert Rep. of Russell L. Lamb ("Lamb Reply Rep.") at ¶ 75; *see also* DPPs' Cont.

2

at ¶ 195 ("Forest's communications concerning the appeal were designed to sow continuing uncertainty and doubt about a potential disruption in Namenda IR supply in order to convince physicians to write prescriptions for Namenda XR."); Ex. 4, Am. Reply Expert Rep. of Ernst Berndt ("Berndt Reply Rep.") ¶ 24 (speculating that the post-injunction communications were "intended to sow confusion as they were tainted and compromised by the fact that Forest noted that it was appealing the injunction" and that "such a statement creates obvious uncertainty or doubt as to whether the injunction would be maintained").  Neither of DPPs' economists has identified any evidence showing that the post-injunction announcements instilled in physicians or other health care providers uncertainty or doubt, or that any such doubt caused physicians to prescribe less Namenda IR.

## ARGUMENT

A speculative or conclusory expert opinion unsupported by record evidence must be excluded from trial, as part of the Court's gatekeeper role.  *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) ("An expert's opinions that are without factual basis and are based on speculation or conjecture" should be excluded from consideration at trial); *see also Scentsational Techs., LLC v. Pepsi, Inc.*, No. 13-cv-8645, 2018 U.S. Dist. LEXIS 24375, at *19 (S.D.N.Y. Feb. 14, 2018) (excluding expert opinion where there was too great an analytical gap between facts and opinion offered) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).  Given the lack of factual predicate, any experts' assertions about the impact of Forest's post-injunction announcement on physician prescribing behavior are rank speculation and should be excluded.

**I.      Drs. Lamb and Berndt Cannot Testify about Physicians' Reactions to Forest's Post-Injunction Notifications Because They Failed to Conduct Physician Surveys or Other Empirical Analyses**

DPPs intend to rely on economists, Dr. Lamb and Dr. Berndt, to support their position about post-injunction prescribing behavior.  But neither Dr. Lamb nor Dr. Berndt conducted any analysis to determine whether prescribing practices were impacted by the injunction notifications.

Both of DPPs' economists admitted under oath that they elected *not* to conduct any physician or other market participant surveys to gauge how the injunction and Forest's notifications about Namenda IR's continued availability affected prescribing decisions.  Ex. 5, Nov. 10, 2017 Dep. of Russell L. Lamb ("Lamb (Nov. 10) Dep.") 120:3-11 ("Q. Did you conduct any surveys of physicians about any uncertainty they might have felt about the availability of Namenda IR after December 2014 because of all of these communications that Forest had communicated? . . . A. I think I testified already I didn't conduct any physician surveys. . . ."); Ex. 6, Dep. of Ernst Berndt 70:4-7 ("Q. And you never conducted a survey of physicians regarding their decisions to prescribe Namenda IR or prescribe Namenda XR; is that right?  A. That is correct.").

The experts' failure to survey or otherwise speak to individuals with direct knowledge of physician or other market participant reactions to the post-December 15, 2014 injunction notices is fatal to the reliability of their opinions.  *See, e.g.*, *Insignia Sys., Inc. v. News Am. Mktg. In-Store Inc.*, No. 04-4213, 2011 U.S. Dist. LEXIS 5558, at *12-14 (D. Minn. Jan. 14, 2011) (excluding expert testimony on likely reactions to an announcement as speculative where the expert admitted that she had not spoken to or surveyed any market participants).

4

Dr. Lamb reached his conclusion based on his purported experience and ability as an economist to "understand, first of all, individual behavior; and, second of all, firm behavior." Ex. 5, Lamb (Nov. 10) Dep. 121:25:5-123:7.  Based on his experience, Dr. Lamb opines that he "can't see any other reason that Forest would have added that [appeal] language except to keep alive the possibility of the hard switch in the minds of the market, including the patient, caregivers and physicians and others, that the hard switch was still possibly going to be implemented." *Id*. at 123:1-7.

Likewise, Dr. Berndt's opinion focuses on Forest's supposed *intent* behind mentioning the appeal.  Ex. 4, Berndt Reply Rep. ¶ 24 (mentioning the appeal "reflected that Forest fully intended to follow through on the withdrawal if the appeal were favorable to Forest.").  But an economist's speculation about Forest's *intent* behind mentioning the appeal does not assist the jury in assessing a prescribing physician's reaction to the notice.  *See, e.g.*, *Uchytil v. Avanade*, No. C12-2091-JCC, 2018 U.S. Dist. LEXIS 141699, at *6-7 (W.D. Wa. Aug. 21, 2018) ("As an economic expert, Dr. Tapia is free to provide expert testimony to assist jurors in understanding barriers to entry, sole-source procurements, and impact on price.  But outside of economic factors, her expertise does not extend to '[evaluation of] the [parties'] communications, actions, or *intentions*.'") (alterations in original) (citation omitted) (emphasis added).

More fundamentally, any purported conclusions or opinions about the "intent or motives of parties or others lie outside the bounds of expert testimony."  *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469-70 (S.D.N.Y. 2005); *see also In re Libor-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 490 (S.D.N.Y. 2018).  And, above all, an expert's experience as an economist cannot provide a reliable foundation for this opinion where there is no factual evidence in the record to support it.  *See, e.g.*, *Insignia Sys.*, 2011 U.S. Dist.

5

LEXIS 5558, at *18 ("Speculation based on experience . . . with no evidence in support, cannot be a reliable basis for an opinion.").

## II.      Drs. Lamb and Berndt Have Not Identified Any Other Evidence to Support an Opinion on Post-Injunction Physician Prescribing Behavior and Rely on Pre-Injunction Notice Testimony

Dr. Berndt does not cite any evidence to support his opinion on post-injunction physician prescribing behavior, while Dr. Lamb cites to pre-injunction testimony.  Specifically, Dr. Lamb relies on November 10, 2014 testimony from Dr. James Lah, a neurologist who testified in the NYAG action *before the preliminary injunction issued.*  *See* Ex. 7, Amended Expert Rep. of Russell Lamb ("Lamb Rep.") at ¶ 116 (discussing Dr. Lah's NYAG testimony).  Testifying in the NYAG action, obviously Dr. Lah could not know what Judge Sweet was ultimately going to order, the contents of his injunction, or about the notices Judge Sweet ultimately ordered.

Having only testified before the December 15, 2014 injunction (at the November 2014 injunction hearing), Dr. Lah's testimony, *categorically*, cannot support theories about how physicians reacted to notices *about the injunction*.  Dr. Lah's pre-injunction testimony related to potential harm to the market if Namenda IR *would have been* withdrawn or restricted to mail order.  Ex. 8, Nov. 10, 2014 Trial Tr. of James J. Lah ("Lah Trial Tr.") 71:21-24 ("Q. Does Forest's limited distribution plan, like discontinuation of the Namenda IR, interfere with your ability to choose Namenda IR tablets for any patients? A. Yes, I believe it does.").  Dr. Lamb points to Dr. Lah's pre-injunction statements about uncertainty with a potential "medial necessity" determination for Namenda IR prescriptions that would have been part of a mail order distribution strategy that was *never implemented,* and in fact was prohibited by the injunction.  Ex. 7, Lamb Rep. at ¶ 116; Ex. 1, FRX-AT-01747641 (DTX-026) (Order regarding injunction) at

¶ 3 ("The Defendants shall not impose a 'medical necessity' requirement or form for the filling of prescriptions of Namenda IR during the Injunction Term.").

Further, Dr. Lah was *not* presented as an expert witness and as such, his testimony cannot support a general proposition applied to all physician's prescribing practices.  Fed. R. Evid. 602 (requiring fact witnesses to possesses personal knowledge of matter upon which testimony is offered); Ex. 9, Oct. 8, 2014 Dep. of James J. Lah 73:15-17 ("Q. Are you providing expert opinion in this litigation? A. Not to my knowledge, no.").   Dr. Lah did not survey any prescribing physicians even prior to the injunction.  Ex. 8, Lah Trial Tr. 86:1-6 ("Q. OK.  But it's limited to your experience; you haven't conducted a survey of other physicians, correct?  A. No, I have not . . . .").  Therefore, Dr. Lah's pre-injunction testimony is, at most, only relevant to his personal prescribing practices *prior to* the entry of the injunction.  Remarkably, neither DPPs nor their experts engaged in any post-injunction discovery with Dr. Lah—or any other physician—to gauge whether or how the injunction and campaign to inform providers that Namenda IR would remain on the market impacted prescribing practices.

Dr. Lamb's view also lacks a factual basis when he relies on a highly misleading citation to testimony from Dr. Pierre Cremieux, one of Forest's economic experts in this case.  Ex. 3, Lamb Reply Rep. at ¶ 72.  Dr. Cremieux, who is an economist, not a prescribing physician, merely provided his "layman's perspective" of what it meant to appeal an injunction.  Ex. 10, Oct. 20, 2017 Dep. of Pierre Cremieux 13:14-21 ("Q. Now, what does 'appeal' mean to you, sir? A. I don't have any precise legal understanding of what it means. I understand it to mean from a lay – layman's perspective that it's a decision by the company to disagree with the initial decision and go to a higher court to see whether they can convince the higher court that, in fact, the lower court's decision was in error.").  This layman's definition of what an appeal means

7

does not support any conclusion about the medical community's interpretation of and reaction to the post-injunction notices.  *See, e.g.*, *Faiveley Transp. USA, Inc. v. Wabtec Corp.*, 511 Fed. App'x 54, 56-57 (2d Cir. 2013) (upholding exclusion of expert testimony that "included sweeping statements that were detached from the actual evidence").

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should exclude any evidence or argument that physicians were hesitant to prescribe Namenda IR following the Court's injunction due to uncertainty about Namenda IR's continued availability.

Dated: May 24, 2019

Respectfully submitted,

**WHITE & CASE** LLP

By: */s/ John H. Chung*
Martin M. Toto
Heather K. McDevitt
John H. Chung
Michael E. Hamburger
William H. Bave, III
Kristen O'Shaughnessy
Kevin C. Adam
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200

J. Mark Gidley
Christopher M. Curran
Eric Grannon
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 626-3600

Heather M. Burke
Eric E. Lancaster
WHITE & CASE LLP
3000 El Camino Real

8

2 Palo Alto Square, Ste. 900
Palo Alto, CA 94306
Telephone: (650) 213-0300

**Counsel for Defendants Actavis plc,
Forest Laboratories, LLC, Forest
Laboratories, Inc., and Forest
Laboratories Holdings Ltd.**