## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE NAMENDA DIRECT PURCHASER ANTITRUST LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br>**All Direct Purchaser Actions** | **Case No. 1:15-cv-07488-CM-RWL** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE* NO. 1: PRECLUDE FOREST FROM ASSERTING SUBJECTIVE BELIEFS CONCERNING THE '703 PATENT THAT IT BLOCKED DURING DISCOVERY ON PRIVILEGE AND WORK-PRODUCT GROUNDS**

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................. 1

II. SUMMARY OF ARGUMENT .......................................................................... 1

III. FACTUAL BACKGROUND .............................................................................. 5

    A. Forest Elected to Forego Assertion of Its Subjective Beliefs Concerning the '703 Patent and Litigation in Response to a Court Order Requiring the Election .......... 5

    B. Consistent with Its Election, Forest Refused to Disclose Its Subjective Beliefs on Various Issues Throughout the Fact Discovery Period ............................................ 6

        1. Deposition Testimony ................................................................................ 7

            a. Forest Rule 30(b)(6) Witness Charles Ryan ................................. 7

            b. Merz Rule 30(b)(6) Witness Patrick Jochum ................................. 9

            c. Forest In-House Patent Attorney Eric Agovino ........................... 10

            d. Forest's Lead Settlement Negotiator ........................................... 11

        2. Interrogatories ......................................................................................... 11

        3. Document Requests ................................................................................. 12

    C. Forest's Post-Discovery Gamesmanship ........................................................... 13

IV. ARGUMENT ...................................................................................................... 17

    A. Forest Cannot Offer "Subjective Belief" Evidence That Is Contrary to Its Election or That Was Withheld During Discovery ............................................................... 17

        1. The Court-Ordered Election Binds Forest ................................................ 17

        2. Forest Cannot Withhold Evidence as Privileged During Discovery but Then Introduce the Withheld Evidence at Trial ....................................... 18

    B. Plaintiffs Would Suffer Undue Prejudice by an Eleventh-Hour Change in Election ......................................................................................................................... 22

V. CONCLUSION ................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**                                                                         **Page(s)**

*Arista Records LLC v. Lime Grp. LLC,*
   2011 U.S. Dist. LEXIS 42881 (S.D.N.Y. Apr. 14, 2011)...................................................... 19, 20

*Fed. Trade Comm'n v. Actavis, Inc.,*
   No. 1:09-CV-955-TWT (N.D. Ga. Feb. 26, 2019) (ECF No. 855) ......................................... 20

*Ginns v. Towle*,
   361 F.2d 798 (2d Cir. 1966)...................................................................................................... 18

*Guglielmo v. Kopald*,
   No. 05-cv-7887 (CLB), 2007 U.S. Dist. LEXIS 46558 (S.D.N.Y. June 26, 2007)................. 19

*In re Lidoderm Antitrust Litig.*,
   No. 14-md-02521-WHO, 2016 U.S. Dist. LEXIS 105619 (N.D. Cal. Aug. 9, 2016)...... 4, 5, 19

*In re Lidoderm Antitrust Litig.,*
   No. 14-md-02521-WHO (N.D. Cal. July 17, 2017) (ECF No. 795) ......................................... 17

*In re Namenda Direct Purchaser Antitrust Litig.*,
   No. 15-cv-7488, 2017 U.S. Dist. LEXIS 76675 (S.D.N.Y. May 19, 2017) ............................ 19

*Regeneron Pharm., Inc. v. Merus B.V.*,
   144 F. Supp. 3d 530 (S.D.N.Y. 2015).................................................................................. 19, 22

*Union Pac. R. Co. v. Colony Nat'l Ins. Co.*,
   No. 8:13CV84, 2016 U.S. Dist. LEXIS 122701 (D. Neb. Sept. 9, 2016) ............................... 20

*United States v. 4003-4005 5th Ave.*,
   55 F.3d 78 (2d Cir. 1995)......................................................................................................... 19

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991).................................................................................................... 19

*UnitedHealth Grp. Inc. v. Columbia Cas. Co.*,
   47 F. Supp. 3d 863 (D. Minn. 2014).......................................................................................... 20

**Statutes**                                                                      **Page(s)**

Fed. R. Civ. P. 26(e) ................................................................................................................ 19, 20

Forest should be precluded from conducting "trial by ambush" by introducing its previously-withheld subjective beliefs informed by privileged attorney-client communications on various topics after (1) expressly disavowing an intent to rely on them in order to preserve privilege; and then (2) withholding discovery on them based on the invocation of privilege. Plaintiffs previously submitted a version of this memorandum on March 14, 2019 (ECF No. 685).  Pursuant to the Court's Order (ECF No. 684), Plaintiffs hereby refile as a Motion *in Limine*.

## I.    INTRODUCTION

Plaintiffs intend to prove that Forest improperly settled litigation concerning United States Patent No. 5,061,703 (the "'703 Patent") by paying Mylan, its would-be competitor, to delay entering the market for Namenda IR.  Throughout discovery, Plaintiffs sought evidence of Forest's subjective beliefs on various topics, including its beliefs about the strength of the '703 Patent and related patent litigation, and whether the agreed-upon date for Mylan's entry reflected Forest's subjective views of that strength.  Following extensive briefing, Judge Francis put Forest to a choice: (1) rely upon its subjective beliefs and thereby waive privilege, or, in the alternative (2) forego reliance on its subjective beliefs and thereby maintain privilege.  Forest elected the latter with respect to its subjective views of the strength of the '703 Patent. Thereafter, Forest repeatedly asserted privilege to block discovery into its subjective beliefs on the '703 Patent litigation.  This lasted throughout the discovery period.  Now, with discovery long closed and trial approaching, Forest seeks to offer testimony and evidence on the same subjective beliefs over which it asserted privilege during discovery.  This obviously should not be allowed.

## II.    SUMMARY OF ARGUMENT

For two reasons, this Court should preclude Forest from offering evidence of its

subjective beliefs relating to the '703 Patent and related litigation, and to whether Mylan's agreed entry date reflected those subjective beliefs.

*First*, in response to the Court's order (ECF No. 249) requiring Forest to disclose which subjective beliefs it would rely upon, Forest declined "to waive any attorney-client privilege or attorney work product protections" and therefore stated that it "does not intend to affirmatively rely on its subjective beliefs to rebut any argument that . . . its position in the patent case was weak." Ex. 1 (hereinafter "Election" or "Disclosure") at 2, 5 (exhibit references in these motions *in limine* are appended to the accompanying Declaration of Dan Litvin). In its Election, Forest identified just three topics, all unrelated to the strength or weakness of its patent, for which it would rely on "subjective beliefs":

1.   its Lexapro agreement with Mylan was not "motivated by illegitimate or anti-competitive justifications," Ex. 1, Election at 4-5;

2.   that Forest's "conduct with respect to the Namenda patent litigations was [nothing] but routine behavior under the Hatch-Waxman regime," *id*.; and

3.   "that the Namenda IR patent litigation settlement agreements provided the generic competitors [no] consideration beyond the express terms of each of the final agreements, including, *inter alia*, licensed early entry for generic ANDA product and, for certain settled defendants, avoided litigation expense payments." *Id*.

Forest confirmed in a subsequent email to Plaintiffs that it "will not rely on any subjective beliefs beyond those outlined in its [Election]." ECF No. 281-2 (June 22, 2017) at 3 (pagination in ECF). And in later briefing before Judge Francis concerning the Election, Forest again reminded the Court that it was "committing to rely on subjective beliefs for only [the] three narrow topics," listed above, that again, do not relate to the strength of the '703 Patent or the patent litigation. ECF No. 282 (June 22, 2017) at 3. *See also id.* at 9 ("[A]s set forth in its Disclosure, Forest does not intend to rely on subjective beliefs that were informed by attorney-client communications."). Plaintiffs relied upon these representations in conducting discovery

and readying this case for trial.

*Second*, following its Election, and in compliance with it, Forest blocked discovery into its subjective beliefs concerning the patent litigation.  As part of its privilege assertions, Forest also blocked discovery regarding whether the agreed-upon entry date for generic Namenda IR reflected Forest's views of the '703 Patent and litigation.  For example, Forest's attorneys instructed Forest's former chief patent counsel not to disclose his "assessment of the strengths of the arguments that Mylan was making in the Namenda patent litigation."  Ex. 2, Ryan Dep. at 37:8-16 (Sept. 7, 2017).  After being instructed not to answer a battery of similar questions, he testified that he did not have any "non-privileged information" about "Forest's view as to the strengths of the '703 patent" or "Forest's beliefs of the merits of the Namenda patent litigation."  *Id*. at 43:1-12.  Forest likewise instructed the corporate representative for its partner, Merz, not to disclose what Forest told it about the patent litigation's merits.  Ex. 3, Jochum Dep. at 140:11-144:19 (August 30, 2017).  Forest, using privilege as a sword, also prevented Plaintiffs from testing its self-serving assertion that it would not have agreed to earlier generic entry (that is, in an alternative settlement), a purported decision that Forest says reflected its attorneys' patent advice.  For instance, another Forest patent lawyer admitted that attorney advice informed its "position with respect to the launch date that [Forest] would agree to" (Ex. 4, Agovino Dep. at 75:10 - 77:4 (Sept. 12, 2017)), yet Forest's counsel then refused to let the witness disclose what that advice was.  *Id*.  Having blocked all inquiry into its views on the '703 Patent strength, related litigation and the settlement decisions made based on those views, Forest cannot reverse itself at trial.

As this Court previously ruled, Forest's assertion of subjective beliefs informed by attorney advice would have required it to produce otherwise-privileged documents and testimony

relating to those beliefs.  ECF No. 249 (May 19, 2017) at 13 ("[I]f defendants inject their

subjective beliefs on specific topics as part of their defense of settlement [of the patent case] . . .

it would be unfair to not allow plaintiffs access to defendants' contemporaneous attorney-client

information to test the veracity of the defendants' justifications in this litigation even though that

belief is based in part on business judgment and executive experience.") (quoting *In re Lidoderm*

*Antitrust Litig.*, No. 14-md-02521-WHO, 2016 U.S. Dist. LEXIS 105619, at *48 (N.D. Cal. Aug.

9, 2016)).  Forest has withheld as privileged over 15,000 responsive documents, and has refused

to fully answer interrogatories and deposition questions concerning its subjective beliefs.  Forest

should not be permitted to renege on its Election at trial, long after discovery has closed.  A

Forest about-face, if permitted, would require Plaintiffs to seek a whole new round of document

production (likely including extensive *in camera* document review), interrogatory responses, and

depositions.  Such additional fact discovery most likely would then lead to a new round of expert

reports and expert depositions.

      Because Forest had previously refused to commit to respect the discovery deadline in this

case by declining to rule out the use of discovery from the end-payor action (*see* Letter from Dan

Litvin to the Court (ECF No. 603) (Dec. 12, 2018) at 3), Plaintiffs wrote to Forest seeking

assurances – through a stipulation – that Forest would (1) abide by its court-ordered election; and

(2) adhere to its discovery decisions by not seeking to introduce evidence at trial that had been

withheld during fact discovery.  Ex. 5, March 11, 2019 Letter and Stipulation.  Forest declined

Plaintiffs' request that Forest honor its prior commitments to the Court.

      As the Court also knows, Forest has also sought to back-door its alleged subjective

beliefs about the '703 Patent litigation by adopting as its own the purported subjective

assessment – included in a late- and selectively-produced document – of Dr. Reddy's, one of

Forest's co-defendants in the end-payor case, who Plaintiffs do not contend received a reverse

payment.  *See* ECF No. 713 (May 6, 2019).  This latest Forest maneuver prompted the Court to

set a status hearing for June 4, 2019, and order the parties to submit 4-page letters by May 29,

2019, in advance of that hearing.  *See* ECF Nos. 260 (May 17, 2019) and 261 (May 21, 2019).

## III.    FACTUAL BACKGROUND

### A.    Forest Elected to Forego Assertion of Its Subjective Beliefs Concerning the '703 Patent and Litigation in Response to a Court Order Requiring the Election

On April 12, 2017, Plaintiffs filed a motion to compel, based in part on "at issue"

privilege waiver. ECF No. 197 (April 12, 2017).  In response, Forest argued that it had not yet

waived privilege and invited the Court to follow *In re Lidoderm Antitrust Litigation* by ordering

it to elect those "subjective beliefs" on which it would rely:

> Plaintiffs' reliance on *Lidoderm* here is misplaced, as that decision set forth a framework for analysis that Plaintiffs seem to want this Court to skip. Indeed, far from issuing a blanket order on waiver, in *Lidoderm* . . . the court actually ordered defendants to expressly identify a specific list of all "subjective beliefs that they intend[ed] to introduce or rely on at trial" related to the underlying patent settlement agreements.

ECF No. 232 (May 3, 2017) at 15 (citing *Lidoderm*, 2016 U.S. Dist. LEXIS 105619 at *38).  On

May 19, 2017, the Court accepted Forest's invitation and ordered Forest to "disclose any

subjective beliefs it will rely on in its defense of this action within two weeks[.]"  ECF No. 249

at 14.

On June 2, 2017, Forest submitted its Election identifying three "subjective beliefs" on

which it *did* intend to rely:

1.    its Lexapro agreement with Mylan was not "motivated by illegitimate or anti-competitive justifications";

2.    that Forest's "conduct with respect to the Namenda patent litigations was [nothing] but routine behavior under the Hatch-Waxman regime"; and

5

3.     "that the Namenda IR patent litigation settlement agreements provided the generic competitors [no] consideration beyond the express terms of each of the final agreements, including, *inter alia*, licensed early entry for generic ANDA product and, for certain settled defendants, avoided litigation expense payments."

Election at 4-5 (emphasis added).  In a subsequent email exchange with Plaintiffs concerning its Election, Forest reaffirmed that it would "*not* rely on any subjective beliefs beyond those outlined in its Disclosure":

> Forest will rely on objective evidence that does not waive any privilege or protection to support its position on certain affirmative defenses and ***will not rely on any subjective beliefs beyond those outlined in its Disclosure***.

ECF No. 281-2 (June 22, 2017) at 3 (emphasis added).  Forest then reiterated to the Court in further "at issue" waiver briefing, that it was "committing" to rely on its "subjective beliefs for *only* [the] three narrow topics," listed above, and that otherwise, "as set forth in its Disclosure, Forest does *not* intend to rely on subjective beliefs that were informed by attorney-client communications."  ECF No. 282 (June 22, 2017) at 3, 9 (emphasis added).

Forest further identified in its Election four "subjective beliefs" upon which it would ***not*** rely:

> Forest does not intend to affirmatively rely on its subjective beliefs to rebut any argument that (1) ***its position in the patent case was weak***, (2) any alleged payment to the generic competitors was "large," (3) Forest acted in "good faith," and (4) the settlement agreements were not "bona fide" and not "for fair value." Instead, to the extent necessary, Forest intends to rely on objective evidence to rebut (1) – (4).

Ex. 1, Election at 5.

### B.     Consistent with Its Election, Forest Refused to Disclose Its Subjective Beliefs on Various Issues Throughout the Fact Discovery Period

Throughout discovery, Forest relied explicitly on its Election to block discovery concerning its subjective views of the '703 Patent, related patent litigation, and settlement decisions animated by those subjects.

6

### 1. Deposition Testimony

Forest instructed not only its own witnesses, but also the witness of its German partner Merz Pharma GmbH & Co. KGaA ("Merz"), to refrain from divulging Forest's subjective beliefs about the patent or patent litigation.

#### a. *Forest Rule 30(b)(6) Witness Charles Ryan*

Charles Ryan testified as a corporate representative for Forest under Rule 30(b)(6) on September 7, 2017, one week before the close of fact discovery. Ex. 2, Ryan Dep. at 9:12-10:22 (Sept. 7, 2017). During the Namenda patent litigation (between 2008 and 2010), Dr. Ryan was Chief Intellectual Property Counsel at Forest, was "responsible for assessing the merits" of the generics' patent defenses, and did in fact "reach . . . conclusion[s] about the merits" of those defenses. *Id*. at 20:11-21:17, 31:1-9. However, consistent with Forest's Election not to assert certain subjective beliefs informed by attorney advice, defense counsel instructed Dr. Ryan not to disclose his conclusions about Forest's views of those defenses. *Id*. at 32:10-18.

Defense counsel then blocked Dr. Ryan from disclosing his assessment of the strength of Mylan's arguments in the patent litigation:

> Q. What was your assessment of the strengths of the arguments that Mylan was making in the Namenda patent litigation?
>
> MR. JOHNSON: And I'll instruct you not to answer that question, Dr. Ryan, on grounds of privilege and work product.

*Id*. at 37:8-16. Defense counsel also instructed Dr. Ryan not to answer the following questions, including a question concerning whether the patent settlements (which include a generic entry date) reflect Forest's subjective views of the patent strength:

> Q. At the time of the Mylan settlement, what did you believe was Forest's overall likelihood of success in the case of Mylan relating to the '703 patent? *Id*. at 38:16-39:1.

Q.      At the time of settlement of the Namenda patent litigation, did you believe that there were any weaknesses in Mylan's invalidity defense? *Id.* at 39:2-23.

Q.      At the time of the Mylan settlement, did you believe there were any weaknesses in Mylan's non-infringement defense? *Id.* at 39:24-40:9.

Q.      At the time of the Mylan settlement, what did you believe was Forest's likelihood of success as to Mylan's argument with respect to the patent term extension? *Id.* at 40:10-25.

Q.      How strong did you believe the '703 patent was in terms of its ability to exclude potential competitors from marketing generic Namenda products? *Id.* at 41:1-12.

Q.      Were beliefs about the strength of the '703 patent one of the factors that Forest considered when deciding to settle the Namenda patent litigation? *Id.* at 41:13-23.

Q.      And were beliefs of the strength of the '703 patent one of the factors Forest considered when negotiating the terms of the settlement of the Namenda patent litigation? *Id.* at 41:24-42:10.

Q.      In your view, does the final settlement agreement between Forest and Mylan in any way reflect Forest's assessment of patent merits of the Namenda patent litigation? *Id.* at 42:11-25.

Dr. Ryan ultimately testified (again, as Forest's corporate representative pursuant to Rule

30(b)(6)) that Forest has no non-privileged information concerning the patent strength:

Q.      Do you have any non-privileged information about Forest's view as to the strengths of the '703 patent?

MR. JOHNSON:      Non-privileged information regarding the strength of the patent, you can answer.

A.      That's not privileged? I think I probably have to answer no.

Q.      Do you have any non-privileged information about Forest's beliefs of the merits of the Namenda patent litigation?

A.      No.

*Id.* at 43:1-12.  Clearly, Forest blocked Plaintiffs from learning any information concerning

8

Forest's subjective beliefs about the patent litigation and the strength of its patent, the bases for those beliefs, and whether they informed Forest's positions on settlement.

b.   *Merz Rule 30(b)(6) Witness Patrick Jochum*

On August 30, 2017, Patrick Jochum testified as a corporate representative for Merz.  Ex. 3, Jochum Dep. at 7:24-8:8; 12:15-25 (Aug. 30, 2017).  Not only Merz's counsel Mr. Cerrito but also Forest's counsel Mr. Johnson instructed Mr. Jochum not to answer questions relating to Forest's subjective beliefs about the likelihood of success and strength of the patent litigation:

> Q.      What did Forest tell Merz regarding its beliefs about the likelihood of
>          success in the Namenda IR patent litigation?
>
> MR. CERRITO:      Same instruction [not to answer based on attorney-client
>                   privilege, attorney work product, joint defense privilege.]
>
> Q.      Are you following that instruction?
>
> MR. JOHNSON:      Same here as well.
>
> A.      I am following this instruction.
>
> Q.      What did Forest tell Merz regarding its beliefs about the merits of the
>          Namenda IR patent litigation?
>
> MR. CERRITO:      Same instruction.
>
> MR. JOHNSON:      Same instruction.

*Id*. at 140:11-141:23.

At the same deposition, Merz's counsel asked Plaintiffs' counsel why he was asking questions whose answers were informed by legal advice.  Plaintiffs' counsel explained that he was asking questions directed at Forest's and Merz's subjective beliefs to ensure that, if the witness did not answer on the basis of privilege, Plaintiffs were not going to be ambushed with subjective beliefs for the first time at trial:

9

Q.      What did Merz tell Forest regarding its assessment of the merits of the
        '703 patent?

MR. CERRITO:        *I don't know if you're purposely going for the instruction,
                    but if you are, then I'll give it, which is –*

MR. CHORUSH:        *I am. I just want to make sure we're not going to hear
                    that at trial for the first time.*

MR. CERRITO:        *I appreciate that, and thank you. So I'm going to instruct
                    the witness not to answer.* He's just trying to make sure
                    that --

A.      I understand.

MR. CERRITO:        -- that -- so I instruct the witness not to answer based on
                    attorney-client privilege, attorney work product, joint
                    defense privilege.

MR. JOHNSON:        Same instruction here.

*Id*. at 143:18-144:19 (emphasis added).

                    c.      *Forest In-House Patent Attorney Eric Agovino*

        At his September 12, 2017 deposition, Forest blocked its former in-house patent counsel

Eric Agovino from providing Forest's reasons for the identical licensed entry date in the

settlement agreements between Forest and the generics concerning the '703 Patent:

Q.      Now, Mr. Agovino, how did it come about that all of the settlement agreements
        with the generic companies that were first filers had the same three month prior to
        patent expiration launch date?

A.       That's all Forest would agree to.

Q.      Why would Forest only agree to that date?

MR. TOTO:   I caution you not to reveal the substance of any privileged
            communications or privileged legal analysis, which may mean you can't
            answer the question. But I defer to you.

Q       Well, let me withdraw that question because I'm not trying to be tricky. I just
        want to know if you're going to assert privilege objections. Was Forest's position
        with respect to the launch date that they would agree to informed by its counsel?

MR. TOTO:   So that is a yes or no question.

A.      Yes.

Q.      And what was the advice or position conveyed by Forest's counsel?

MR. TOTO:   I'll object and instruct you not to answer.

Ex. 4, Agovino Dep. at 75:10 - 77:4 (Sept. 12, 2017).  As Forest self-servingly stated while

hiding behind privilege (*see* § IV.C., below), the generic entry-date decision involved legal

advice.  Yet, during discovery, Forest's reasons for the agreed launch date in each agreement

with the generic manufacturers was kept from Plaintiffs, consistent with Forest's Election not to

assert certain subjective beliefs informed by attorney advice.

d.      Forest's Lead Settlement Negotiator

On September 7, 2017, Plaintiffs asked David Solomon, Forest's head of business

development, and the decision-maker on the Mylan patent settlement and Lexapro side-deal,

"[w]hat did [D]r. Ryan tell you that led you to conclude that the generics had a very weak case

[p]ost Markman?"  Ex. 6, Solomon Dep. at 286:1-14 (Sept. 7, 2017).  Defense counsel objected

and instructed the witness not to answer on the basis of privilege.  *Id*.

**2.     Interrogatories**

On May 12, 2017 – during the pendency of the motion to compel briefing that culminated

in the Election – Plaintiffs served their first three interrogatories.  Ex. 7, Pls.' Am. First Set of

Interrogs.  The three interrogatories sought, respectively, (1) Forest's contentions relating to

patent infringement, (2) Forest's contentions relating to patent validity, and (3) "any facts or

law" on which Forest "will rely" relating to any contention that "Mylan's Defenses were not

meritorious or were unlikely to succeed or that Mylan was not going to or was unlikely to prevail

in the Namenda Patent Litigation absent a settlement."  *Id*. at 6-7.

11

Forest responded to these interrogatories on June 12, 2017, days after serving its Election, citing to its Election to disavow that it would assert its subjective beliefs:

> ***Forest objects to this Interrogatory to the extent that it seeks irrelevant information, particularly in light of Forest's June 2, 2017 Disclosures that it does not intend to affirmatively rely on Forest's subjective beliefs to rebut any argument that its position in the patent case was weak***. . . . Forest further objects to this Interrogatory to the extent that it seeks information or discovery of Privileged Information. ***Forest's subjective beliefs regarding the underlying patent litigation are privileged*** and nothing contained in these responses is intended to be, or in any way constitutes, a waiver of any such applicable privilege, immunity, or doctrine.

Ex. 8, Forest's Resp. to Pls.' Am. First Set of Interrogs. at 10-11, 12-13, 14-15 (emphasis added).

On the final day of discovery (Sept. 15, 2017), Forest submitted its second supplemental responses to these interrogatories and repeated these same objections. Ex. 9, Forest's Second Supplemental Resp. to Pls.' First Set of Interrogs. at 10, 12.

### 3. Document Requests

Plaintiffs also sought documents reflecting Forest's subjective beliefs about the '703 Patent. For example, Plaintiffs' request for production ("RFP") no. 43 sought:

> All documents, regardless of date, concerning the validity, enforceability, infringement, claim interpretation, and strengths or weaknesses of the Patents, including, but not limited to: (a) documents concerning any investigation done by or for any of the Defendants concerning the Patents and (b) legal opinions and analyses concerning the Patents.

ECF 203-1 at 23 (Apr. 18, 2017). In response, Forest "object[ed] to this Request to the extent that it calls for production of documents protected from disclosure by the attorney-client privilege, work product doctrine, joint defense privilege or agreement, or other privilege or protection." ECF 203-2 at 65. Following a RFP deficiency letter from Plaintiffs, (ECF 203-3), Forest explained that it planned to "maintain[] all applicable privileges" (ECF 203-5 at 1). Further, with regard to the documents responsive to Plaintiffs' RFPs pertaining to patents, Forest only "agree[d] to produce non-privileged documents." ECF 203-5 at 4.

Forest has maintained its privilege objections and has not produced otherwise privileged information about the '703 Patent suit and settlement.  Forest's privilege log (available at the Court's request) lists well over *15,000 documents*, of which close to 6,000 entries potentially relate to its subjective beliefs about the '703 Patent suit, settlement and/or, relatedly, generic launch dates.  Ex. 10, Excerpts from Forest's September 22, 2017 privilege log.

### C.   Forest's Post-Discovery Gamesmanship

After the close of fact discovery, on September 25, 2017, the Court ordered Forest to produce *five* documents that had been "withheld on the basis of privilege," finding that "these documents appear to link the Namenda settlements with the side agreements with Mylan and Orchid."  ECF No. 394 at 1 (Judge Francis later added a document to his Order. *See* ECF No. 405).  Forest's Election waived privilege over them because it disclosed that Forest would rely on its subjective beliefs "concerning the business considerations, rationales, and reasons for entering into the agreements with Mylan and Orchid, including evidence of their independence from the then-pending patent litigations and respective settlement agreements," and to "rebut any allegation that the Namenda IR patent litigation settlement agreements provided the generic competitors any consideration beyond the express terms of each of the final agreements[.]"  Ex. 1, Election at 4-5 (§§ A, C).  Judge Francis did not order the production of any documents relating to Forest's subjective views concerning the strength of the '703 Patent or the '703 Patent litigation.  He had no reason to do so – Forest's Election expressly committed that Forest would not rely on those views.  *Id.* at 5.

After Judge Francis's Order, Forest agreed to make Dr. Ryan available for one hour to testify as to two of the documents (two versions of the "Forest-Mylan Settlement Presentation" (Exs. 11 & 12)), and to make Mr. Solomon available for one hour to testify as to another two of the documents (the Jan. 15 and Jan. 20, 2010 Mylan Deal Concept documents (Exs. 13 & 14))

(the remainder of the documents subject to Judge Francis's Order are appended as Exs. 15 - 16. At both 30(b)(6) depositions, Forest renewed its position that it was not waiving any privilege. Ex. 17, Ryan Dep. at 334:13-16 (Nov. 7, 2017) ("As Forest has stated throughout this litigation, and in particular in our May 19th, 2017 [sic] disclosures, Forest does not intend to waive the attorney-client privilege in this matter."); Ex. 18, Solomon Dep. at 379:10-15 (Nov. 15, 2017) (similar).  Nevertheless, Dr. Ryan – the very same witness Forest's counsel previously blocked from answering questions about the patent strength and patent litigation during the discovery period (*see supra* at 7-8) – gratuitously (and non-responsively) injected Forest's purported belief that the Namenda patent case was "very strong" and that, consequently, Forest would not have agreed to license generics to enter the market earlier than three (3) months before patent expiry:

> Q.       But you are testifying here today that modifying the Lexapro authorized generic deal was not a component of the current settlement offer Forest was proposing to Mylan as of February 11, 2010?
>
> MR. TOTO: Objection, argumentative. You may answer.
>
> A.       So let me restate my testimony, because I think you're mischaracterizing it. So we were in -- so *maybe I should back up. So we had a very strong case. We were prepared to go to trial. We weren't going to give more than three months to anyone, including Mylan*. So if Mylan wanted to go to trial, we could do that. . . .
>
> * * *
> Q.       Dr. Ryan, you said "we had a very strong case." Was that based in any way on the opinions of Forest's patent counsel in this case?
>
> A.       *It was based on my opinion, so yes, I'm Forest's patent counsel*.

Ex. 18, Ryan Dep. at 367:1-17; 368:15-22 (Nov. 7, 2017) (emphasis added).  After Plaintiffs' counsel asserted that this testimony would constitute a waiver and sought to strike the testimony as nonresponsive (*id*. at 370:12-13 and 370:20-371:22), Forest's counsel responded: "This is not a waiver.  This is not putting anything at issue.  This is simply him answering your questions about this document."  *Id*. at 371:3-15.

14

But, the testimony was clearly gratuitous and not responsive to the pending question, which pertained merely to the connection between the settlement agreement and the Lexapro Amendment, as articulated in the deposition exhibit (Ex. 11 hereto), not Forest's subjective views of the '703 Patent or patent litigation that Forest had withheld throughout discovery.  Yet as a 30(b)(6) designee, Dr. Ryan intentionally injected Forest's purported subjective patent beliefs, despite Forest's contrary Election, while still not providing all withheld documents on this same subject matter to Plaintiffs, thereby preventing a full and fair cross examination.

Forest again engaged in post-discovery gamesmanship in another post-discovery 30(b)(6) deposition, this time of Mr. Solomon, concerning the newly produced "Mylan Deal Concept" documents.  Specifically, Forest's own attorneys elicited from Mr. Solomon, after Plaintiffs' examination had concluded, Forest's views on the generic launch date, animated by its purported subjective views of the patent strength:

> Q. [BY MR. TOTO] Switching topics to the patent settlement with Mylan, would a settlement with Mylan that had a launch in 2012 have been acceptable to Forest?
>
> A. We wouldn't have considered that at all . . . We had settled at that point with over a dozen generics for no more than three months, some of them for no time at all. *We had, we felt, a very strong case* . . . *And I think we wouldn't have contemplated in any serious way an earlier settlement than the three months*[.]

Ex. 18, Solomon Dep. at 421:12-422:5 (Nov. 15, 2017) (emphasis added).  That this testimony was not merely gratuitous but purposely elicited by defense counsel was remarkable, to put it mildly.  It was completely outside the scope of Plaintiffs' cross-examination (*id*. at 422:7-9) and the "Mylan Deal Concept Documents."  *See* Exs. 13 & 14.  And at no time had Forest offered to (1) produce otherwise-privileged documents necessary to cross examine these witnesses on the veracity of their assertions; (2) withdraw its privilege objections and fully answer Plaintiffs'

interrogatories; or (3) provided Plaintiffs any opportunity to re-depose witnesses to obtain answers to questions Forest's counsel had previously instructed those witnesses not to answer.

Following these two depositions, Forest sought to rely on Dr. Ryan's subjective belief testimony in support of its motion for summary judgment.  *See* ECF No. 665 at 39 (Dec. 6, 2017) (quoting deposition testimony that the alleged reason that Forest was not "going to give more than three months to anyone, including Mylan," was because "we had a very strong case."). Plaintiffs urged the Court to "disregard" this evidence in light of Forest's Election not to assert such subjective beliefs and its maintenance of privilege during discovery to block inquiry into Forest's subjective beliefs. ECF No. 657 at 50-51, n.14 (Dec. 11, 2017).

More recently still, on April 29, 2019 Forest dropped what the Court called a "little grenade" (ECF No. 260 at 2) by moving to supplement its expert reports based on a single document (of likely thousands) produced in the end-payor action (to which direct purchasers have no access).  ECF No. 694.  The document, from one of Forest's end-payor case co-defendants, Dr. Reddy's Labs ("DRL"), purports to provide DRL's (and only DRL's) rationale for a possible settlement.  In its motion, Forest expressly adopted DRL's views as its own subjective views, again contravening the Election.  *E.g.*, ECF No. 713 at 2.  Forest had the document for *five months* before moving to supplement its expert reports, an "apparent[] deliberate delay," as the Court noted.  ECF No. 260 at 1.  Forest moved to supplement its expert reports *after* the Court told Forest that (1) "there will be no more discovery" (ECF No. 689 at 8:17) and "[d]iscovery will not be reopened in this case" (ECF No. 684); and that (2) "No party who has failed to respond to discovery requests on the grounds of privilege will be permitted to assert an argument or to offer evidence that should have been the subject of discovery."  ECF No. 684.

In its reply seeking to supplement its expert reports, Forest attempted to controvert its opening brief by claiming that the DRL document only reflects a "reasonable person['s]" view of the patent case (ECF No. 717 at 6 (May 13, 2019)), but Lona Fowdur's proposed supplemental expert report expressly says that "[t]he newly available Dr. Reddy's document **supports the view of Forest executives** that the claim construction ruling made it **highly likely that Forest would prevail in the patent litigation**," and that "[t]he Dr. Reddy's document also **mirrors the view of Forest executives** that the 2009 Markman ruling was highly favorable to Forest. ECF no. 696-7 at ¶¶ 5, 9 (emphases added).

## IV.   ARGUMENT

### A.   Forest Cannot Offer "Subjective Belief" Evidence That Is Contrary to Its Election or That Was Withheld During Discovery

#### 1.   The Court-Ordered Election Binds Forest

The Court's May 19, 2017 Order that Forest elect which "subjective beliefs" it would rely upon (ECF No. 249) was mandatory, not permissive; and Forest's Election is binding, not revocable.  First, it was Forest that suggested the *Lidoderm* "framework" (ECF No. 232 at 15) to elect whether to assert subjective beliefs about matters informed by attorney advice (and thereby waive privilege).  As the *Lidoderm* court explained, its framework is binding:

> Having forced defendants to choose between waiving attorney-client privilege and foregoing testimony by percipient and expert witnesses about their subjective motivations and beliefs, the defendants have made their elections and now must live with them.

Ex. 19, *In re Lidoderm Antitrust Litig.*, Civil No. No. 14-md-02521-WHO (N.D. Cal. July 17, 2017) (ECF No. 795) (slip opinion) at 1.

Second, Plaintiffs argued that an early election was necessary so that they would have time to address in discovery those subjects for which Forest elected to assert its subjective beliefs:

> [I]f the Court rules that Forest's assertions addressed herein would trigger a
> waiver, Plaintiffs would be amenable to the *Lidoderm* approach, which would
> enable Forest to abandon its defenses if it wanted -- provided that Forest produce
> such a list in 14 days, which was the time frame used by the *Lidoderm* court and
> which would be appropriate here in light of the aggressive discovery schedule.

ECF No. 238 (May 8, 2017) at 10.  The Court subsequently noted that the "schedule in this

action is constricted" and therefore ordered "that Forest disclose any subjective beliefs it will

rely on in its defense of this action within two weeks of the date of this order."  ECF No. 249 at

14.  Thus, it was clear to the parties that Forest's Election was going to be binding and that the

parties could rely on it in conducting discovery.

Finally, logic compels the conclusion that Forest's own Election is binding.  The entire

purpose of the Election was for Forest to finally decide once and for all which "subjective

beliefs" it intended to rely upon going into discovery.  The Election was meaningless if Forest

was free to later modify it, particularly after the close of discovery, without leave of Court.

### 2.    Forest Cannot Withhold Evidence as Privileged During Discovery but Then Introduce the Withheld Evidence at Trial

An independent basis to preclude Forest from relying at trial on its subjective views of its

patent or the patent litigation is its refusal to disclose those views in discovery.  The Second

Circuit long ago recognized that "[t]he basic purpose of the federal rules, particularly those

concerning discovery and disclosure, is to eliminate trial by ambush[.]"  *Ginns v. Towle*, 361

F.2d 798, 801 (2d Cir. 1966).  But "trial by ambush" would be a regular practice if parties could

withhold relevant evidence in discovery but then offer it at trial.  As set forth above, Forest

repeatedly blocked Plaintiffs from discovery relating to its beliefs on various subjects, most

notably including its subjective views of the strength of the '703 Patent and the patent litigation.

If Forest wanted to preserve its ability to assert its subjective beliefs in defending this case, it was

required to elect to do so when it had the opportunity Judge Francis afforded, and then timely

produce all otherwise-privileged documents related to those beliefs to permit Plaintiffs the
opportunity to test the credibility of its assertions.  *In re Namenda Direct Purchaser Antitrust
Litig.*, 2017 U.S. Dist. LEXIS 76675, at *13 (S.D.N.Y. May 19, 2017) (when "attorney-client
advice played a significant role in formulating a party's subjective beliefs on central issues in the
case, the adversaries are entitled to disclosure of the otherwise privileged material to test the
credibility of those subjective beliefs") (quoting *Lidoderm*, 2016 U.S. Dist. LEXIS 105619, at
*36); *Regeneron Pharm., Inc. v. Merus B.V.*, 144 F. Supp. 3d 530, 593-96 (S.D.N.Y. 2015)
(where Regeneron wanted to rely on its state of mind at trial, it "was obligated to have previously
produced the documents . . . that would have allowed Merus to test [its] various assertions").
Courts routinely preclude litigants from offering at trial evidence that was withheld as privileged
during discovery.  As Judge Wood explained in a case in a similar procedural context "*Bilzerian*
provides that a party who intends to rely at trial on a good faith defense must make a full
disclosure during discovery; failure to do so constitutes a waiver of that defense." *Arista
Records LLC v. Lime Grp. LLC*, 2011 U.S. Dist. LEXIS 42881, at *9 (S.D.N.Y. Apr. 14, 2011)
(*citing United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991)) (quotations omitted).  *See also
Guglielmo v. Kopald*, No. 05-cv-7887 (CLB), 2007 U.S. Dist. LEXIS 46558, at *11-12
(S.D.N.Y. June 26, 2007) ("Defendants . . . will be unable to withhold production of arguably
privileged documents during discovery and thereafter appear at trial, waive the privilege and
claim to the jury that they relied in good faith on the advice of counsel[.]"); *United States v.
4003-4005 5th Ave.*, 55 F.3d 78, 84-85 (2d Cir. 1995) (in the closely related Fifth Amendment
context, explaining if privilege is invoked "to abuse or obstruct the discovery process . . .
particularly if the litigant's request to waive comes only at the 'eleventh hour' and appears to be
part of a manipulative, 'cat-and-mouse approach' to the litigation, a trial court may be fully

entitled, for example, to bar a litigant from testifying later about matters previously hidden from discovery through an invocation of the privilege."); *Union Pac. R. Co. v. Colony Nat'l Ins. Co.*, No. 8:13CV84, 2016 U.S. Dist. LEXIS 122701, at \*11-12 (D. Neb. Sept. 9, 2016) ("[I]f Union Pacific continues to invoke privilege in response to Colony's discovery requests, Union Pacific will be barred from introducing any evidence of how its attorneys evaluated the underlying claims at the time of settlement or how its attorneys perceived Union Pacific's liability at the time of the settlement."); *UnitedHealth Grp. Inc. v. Columbia Cas. Co.*, 47 F. Supp. 3d 863, 875 (D. Minn. 2014), *aff'd sub nom. UnitedHealth Grp. Inc. v. Exec. Risk Specialty Ins. Co.*, 870 F.3d 856 (8th Cir. 2017) (barring plaintiff from using at trial evidence of its attorneys' evaluations of underlying claims since "United repeatedly invoked" privilege "to prevent [defendants] from inquiring into United's (or its counsels') subjective evaluations.").

Just this past February, in another reverse-payment antitrust litigation concerning the drug AndroGel, the court barred the defendants from "introduc[ing] opinion testimony about the merits of the underlying patent litigation where it has invoked attorney-client privilege or work product privilege as to the bases for that opinion." Ex. 20, Order, *Fed. Trade Comm'n v. Actavis, Inc.*, No. 1:09-CV-955-TWT (N.D. Ga. Feb. 26, 2019) (ECF No. 855) at 1.

Forest may argue that Plaintiffs should have filed a motion to compel based upon gratuitous and nonresponsive testimony from Forest's witnesses after the close of fact discovery. Such an argument can be "rejected outright." *Arista Records*, 2011 U.S. Dist. LEXIS 42881, at \*9. Just as in *Arista Records*, "Plaintiffs are not seeking privileged communications; rather they are seeking to preclude argument and testimony where Defendants have already blocked inquiry on the basis of privilege," and "[i]n any event, a motion to compel is not a prerequisite to invoking the *Bilzerian* rule." *Id*. Rather, the burden was on Forest to "make a full disclosure

during discovery" concerning its subjective Patent views, and "failure to do so constitutes a waiver of that defense." *Id*. Any assertion by Forest that the lack of a motion to compel entitled it to belatedly offer its subjective views – or, alternatively, to adopt another company's purported subjective views – while at the same time withholding privileged information is nothing more than legal chicanery.

Here, Forest understood very clearly that its Election was going to limit the evidence it could present at trial. At no time did Forest approach Plaintiffs or seek leave of the Court to amend its Election to include the '703 Patent strength or litigation, or the basis for the agreed entry date in its settlement agreements with the various generic manufacturers that Forest's 30(b)(6) designee confirmed was based on attorney advice, as subjective beliefs it would assert at trial. Nor did it produce any otherwise privileged documents concerning those subjects as it would have had an obligation to do under Fed. R. Civ. P. 26(e), confirming that Forest is improperly attempting to selectively insert its alleged subjective beliefs while continuing to withhold discovery that would be necessary to test those assertions. Instead, as noted above, Forest repeatedly invoked privilege to withhold documents, deposition testimony and complete interrogatory responses on those subjects. Notably, Dr. Ryan, Forest's chief patent counsel, was repeatedly instructed not to answer questions going to Forest's subjective beliefs about the patent. *See supra* at 7-8. Then, during the limited post-discovery depositions of Dr. Ryan and Mr. Solomon convened to address documents not relating to the patent, Forest ambushed Plaintiffs by gratuitously injecting its purported belief that it "had a very strong [patent] case" while standing firm on its refusal to produce some or all of the more than 15,000 documents and other information touching on this same subject withheld on the basis of privilege and its Election. These games should not be countenanced.

### B.   Plaintiffs Would Suffer Undue Prejudice by an Eleventh-Hour Change in Election

In hindsight, Forest's shifting pre- and post-discovery strategies concerning its subjective patent views appear to have been part of a carefully-crafted plan to conduct an end-run around Judge Francis's Order by (1) asserting privilege during discovery to avoid waiving privilege and scrutiny over its purported subjective beliefs that it elected to not assert in its Election but then (2) pulling the rug out from under Plaintiffs by offering a bare bones statement of its subjective beliefs after discovery was over without producing the relevant discovery that would have enabled Plaintiffs to test its assertions.  If this type of gamesmanship were tolerated by the courts, parties would have to conduct discovery twice – once pursuant to the original Election and a second time after a post-discovery decision to rescind the Election.

During discovery, Plaintiffs detrimentally relied on Forest's explicit Election that it would ***not*** assert subjective beliefs about the strength or weakness of its patents, and were deprived under assertions of privilege of the otherwise-privileged documents and testimony Forest would have been required to produce that would have permitted Plaintiffs to test those beliefs.  Plaintiffs took discovery, prepared their pretrial filings, and have built their case predicated on the Election.  Plaintiffs would now be severely prejudiced by any last-minute change.  A late change of the Election would derail the schedule in this case as it heads toward trial, and/or would turn the trial into a circus.  *See Regeneron Pharm., Inc.,* 144 F. Supp. 3d at 594-95 (subjective views about patent inadmissible at trial because to allow them would require "in fairness . . . a wholesale re-opening of discovery," including "a top-to-bottom re-review of the Regeneron privilege log . . . to be followed by additional document production, fact depositions, and revised expert reports and depositions," which "is not a fair burden for Merus or the Court.").  Forest's privilege log consists of more than 15,000 documents, more than a third of

which potentially relate to subjective beliefs withheld by Forest. *See* Ex. 10 (privilege log excerpts). It is simply too late to reverse course.

## V.   CONCLUSION

For the foregoing reasons, Forest should be precluded from offering at trial any "subjective beliefs" about the '703 Patent, the '703 Patent litigation and settlement, or whether it would have agreed to earlier generic entry dates.

Dated: May 24, 2019                    Respectfully Submitted:

                                        */s/ Dan Litvin*

David F. Sorensen                       Bruce E. Gerstein
Ellen T. Noteware                       Joseph Opper
Daniel C. Simons                        Kimberly M. Hennings
Berger Montague PC                      Dan Litvin
1818 Market Street, Suite 3600          Garwin Gerstein & Fisher LLP
Philadelphia, PA 19103                  88 Pine Street, 10th Floor
Tel: (215) 875-3000                     New York, NY 10005
Fax: (215) 875-4604                     Tel: (212) 398-0055
dsorensen@bm.net                        Fax: (212) 764-6620
enoteware@bm.net                        bgerstein@garwingerstein.com
dsimons@bm.net                          jopper@garwingerstein.com
                                        khennings@garwingerstein.com
                                        dlitvin@garwingerstein.com

Peter Kohn                              David C. Raphael, Jr.
Joseph T. Lukens                        Erin R. Leger
Faruqi & Faruqi, LLP                    Smith Segura & Raphael, LLP
1617 John F Kennedy Blvd., Suite 1550   3600 Jackson Street, Suite 111
Philadelphia, PA 19103                  Alexandria, LA 71303
Tel: (215) 277-5770                     Tel: (318) 445-4480
Fax: (215) 277-5771                     Fax: (318) 487-1741
pkohn@faruqilaw.com                     draphael@ssrllp.com
jlukens@faruqilaw.com                   eleger@ssrllp.com

                                        Russ Chorush
                                        Heim Payne & Chorush, LLP
                                        1111 Bagby, Suite 2100
                                        Houston, TX 77002
                                        Tel: (713) 221-2000
                                        Fax: (713) 221-2021
                                        rchorush@hpcllp.com

*Counsel for the Direct Purchaser Class Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 24, 2019, I electronically filed the above by CM/ECF system.


Respectfully submitted,

/s/ *Dan Litvin*
Dan Litvin