IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Namenda Direct Purchaser Antitrust Litigation | Case No. 1:15-cv-07488-CM (RWL) |

**MEMORANDUM IN SUPPORT OF FOREST'S MOTION
*IN LIMINE* 6 TO PRECLUDE TESTIMONY BY RUSSELL LAMB REGARDING
UNDISCLOSED DAMAGES OPINIONS BASED ON ALTERNATIVE ENTRY DATES**

**WHITE & CASE** LLP

*Counsel for Defendants Actavis plc, Forest Laboratories, LLC, Forest Laboratories, Inc., and Forest Laboratories Holdings Ltd*

## **TABLE OF CONTENTS**

ARGUMENT ...................................................................................................................................2

    I.       Failure to Disclose a Complete Statement of Damages Opinions in Discovery Warrants Exclusion of Any New Damages Opinions at Trial ...............2

    II.      Any New Damages Opinion or Estimate Based on a Different Generic Entry Date Should Be Excluded Because the Change Would Require an Assessment of Substantive Changes to Dr. Lamb's Damages Model .....................3

CONCLUSION ................................................................................................................................6

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*AMEX v. Mopex, Inc.*,
   215 F.R.D. 87 (S.D.N.Y. 2002) ...........................................................................................4

*Design Strategy, Inc. v. Davis*,
   469 F.3d 284 (2d Cir. 2006)................................................................................................3

*Ebowe v. Martinez*,
   309 F. Supp. 2d 600 (S.D.N.Y. 2004).................................................................................5

*Scantibodies Lab., Inc. v. Church & Dwight Co.*,
   No. 14-cv-02275, 2016 U.S. Dist. LEXIS 154396 (S.D.N.Y. Nov. 4, 2016)......................3

*Texas v. Penguin Group (USA)*,
   No. 12-cv-3394, 2014 U.S. Dist. LEXIS 42549 (S.D.N.Y. 2014).......................................5

*U.S. Bank Nat'l Ass'n. v. PHL Variable Life Ins. Co.*,
   112 F. Supp. 3d 122 (S.D.N.Y. 2015)...............................................................................3, 5

*Vernon v. S. Cal. Edison Co.*,
   955 F.2d 1361 (9th Cir. 1992) .............................................................................................5

### STATUTES AND RULES

Fed. R. Civ. P. 26(a)(2)................................................................................................................2

Fed. R. Civ. P. 37(c)(1)................................................................................................................3

The reverse payment damages DPPs seek in this action depend upon the date that generic Namenda IR would have entered the market absent any alleged reverse payment. DPPs' damages expert, Dr. Russell L. Lamb, disclosed twelve different estimates of DPPs' alleged reverse-payment damages, each calculated based on one of two entry dates: either in June 2012 or on November 2, 2012, when DPPs theorize that generic Namenda IR would have entered the market. Ex. 1, Oct. 6 2017 Dep. of Russell L. Lamb ("Lamb (Oct. 6) Dep.") 204:6-205:4; Ex. 2, Am. Expert Rep. of Russell L. Lamb ("Lamb Rep.") at ¶ 129. DPPs have not disclosed *any* estimate or opinion on damages for generic Namenda IR entry occurring on any other date.

Nevertheless, it is now clear that DPPs may elicit expert testimony that would lead the jury to speculate about or evaluate *undisclosed* damages alternatives beyond these two entry dates, without any foundation or economic analysis underlying them. In particular, DPPs have stated that one of their experts, Professor Einer Elhauge, "*will testify* that there was *a range of* no-payment dates that would have been mutually beneficial for Forest and Mylan to agree to," in the absence of a payment to Mylan. ECF No. 699-1, Revised Pls.' Contentions at ¶ 142 (emphases added). Moreover, Dr. Lamb has opined that "[he] could apply [his] same methodology for calculating damages under a but-for world where generic entry happened at *any date* prior to actual generic entry in July 2015." Ex. 3, Am. Expert Reply Rep. of Russell L. Lamb ("Lamb Reply Rep.") at ¶ 6 n.9 (emphasis added); *see also* Ex. 1, Lamb (Oct. 6) Dep. 209:2-15.

Any such testimony about undisclosed damages scenarios (e.g., alternative entry dates), or about a hypothetical, untested ability to calculate undisclosed damages, would be plainly improper and should be precluded. Because Dr. Lamb failed to disclose any estimate or opinion on damages based on an alternative generic entry date, any testimony about alternative damages

would be trial by ambush that would unfairly prejudice Forest. This failure to disclose is especially prejudicial because a change in the date of generic entry is not a simple change to an input in the calculation — the change fundamentally alters the basic assumptions underlying Dr. Lamb's damages model, and Forest would have no opportunity to challenge or test these modifications. Similarly, Dr. Lamb must be precluded from testifying that he could simply recalculate damages based on an alternative generic entry date; this testimony would invite the jury to speculate about possible alternative damages that DPPs never disclosed in the first place.

Accordingly, Forest moves to preclude any testimony at trial from Dr. Lamb about any estimates or opinions on damages that Dr. Lamb has not disclosed in his expert reports.

## ARGUMENT

**I.      Failure to Disclose a Complete Statement of Damages Opinions in Discovery Warrants Exclusion of Any New Damages Opinions at Trial**

Rule 26(a)(2)(B)(i) of the Federal Rules of Civil Procedure requires retained expert witnesses to prepare a written report that "must contain . . . a complete statement of all opinions the witness will express and the basis and reasons for them." The purpose of this complete disclosure requirement is to give the parties sufficient time to assess the expert's opinions and prepare to challenge them at trial. *See* Fed. R. Civ. P. 26(a)(2) advisory committee's notes to 1993 amendments (noting that the party offering the expert witness bears "an additional duty to disclose information regarding expert testimony *sufficiently in advance of trial* that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses" in response.) (emphasis added).

If a party fails to provide the full suite of expert damages opinions it intends to present at trial sufficiently in advance of the proceeding, then the Court should preclude trial testimony

regarding any undisclosed opinions. Fed. R. Civ. P. 37(c)(1); *see also Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297-98 (2d Cir. 2006) (finding no abuse of discretion where trial court precluded expert's damages testimony based on failure to disclose a damages calculation in conformity with Rule 26(a)); *U.S. Bank Nat'l Ass'n. v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 131-32 (S.D.N.Y. 2015) (McMahon, C.J.) ("It is well-established that 'expert testimony exceeding the bounds of the expert's report is excludable pursuant to Rule 37(c)(1).' This result is self-executing and is an automatic sanction . . . .") (citations omitted). All the party seeking preclusion must show is that the information was not disclosed in conformity with the rules. *Scantibodies Lab., Inc. v. Church & Dwight Co.,* No. 14-cv-02275, 2016 U.S. Dist. LEXIS 154396, at *57 (S.D.N.Y. Nov. 4, 2016).

As noted above, DPPs have disclosed only twelve modeled estimates of damages for their reverse-payment claim for two entry dates. *See* Ex. 3, Lamb Reply Rep. at Tbl. 3. Each estimate varies depending on the data set used and the different assumptions (made by Dr. Lamb) about soft switch conversion to Namenda XR. But critically, each estimate is calculated based on one of two proposed "but-for" generic entry dates, on which DPPs hypothesize generic competition would have commenced: June 2012 or November 2, 2012. *Id.* DPPs have not disclosed any other opinions or estimates of damages reflecting different "but-for" generic entry dates. Thus, in conformity with Rule 26, Dr. Lamb should not be permitted to present any new undisclosed damages estimates or to testify about the possibility of calculating alternative damages.

II. **Any New Damages Opinion or Estimate Based on a Different Generic Entry Date Should Be Excluded Because the Change Would Require an Assessment of Substantive Changes to Dr. Lamb's Damages Model**

Testimony at trial about any alternatively dated, undisclosed model would unfairly prejudice Forest. Fed. R. Civ. P. 37(c)(1). A change to the date of generic entry is not a simple

3

tweak, or an inconsequential change to an input in a simple formula. Dr. Lamb's damages model is a complex mathematical model incorporating numerous assumptions and extensive data sets. A calculation based on a different "but-for" generic entry date would substantively change the assumptions underlying Dr. Lamb's model, and alter how the data is utilized. Forest would have no opportunity to analyze or test those changes. *AMEX v. Mopex, Inc.*, 215 F.R.D. 87, 94-96 (S.D.N.Y. 2002) (noting the prejudice plaintiff suffers when being deprived of the opportunity to develop the factual record).

As Dr. Lamb acknowledged, changing the date on which generics would have entered in that but-for world would result in a "different magnitude of damages." Ex. 1, Lamb (Oct. 6) Dep. 208:3-25. As an example, changing the "but-for" entry date also alters *every* "but-for" price for Namenda IR, Namenda XR, and generic Namenda IR for Dr. Lamb's damages calculation. *See* Ex. 1, Lamb (Oct. 6) Dep. 213:14-214:17 (describing Dr. Lamb's process of "back cast[ing] a 'but-for' generic price" in relation to the chosen "but-for" generic entry date). As Dr. Lamb concedes, changes in the price between branded Namenda products and generic memantine drive his damages calculation. *See* Ex. 3, Lamb Reply Rep. at ¶ 14. Forest cannot be expected to effectively test or cross-examine these changes in price or damages calculations, along with other inputs or assumptions, on the fly.

Additionally, Forest's experts have developed opinions about the viability of Dr. Lamb's model, based in part upon the "competitive dynamics" at play in the market in June 2012 and on November 2, 2012, the two generic entry dates disclosed by Dr. Lamb. Ex. 4, Expert Rep. of Pierre-Yves Cremieux, at ¶¶ 96-97. Forest's experts cannot prepare their challenges to Dr. Lamb's model based on alternative generic entry dates that have not been, and will not be, disclosed until the last moment. If Dr. Lamb were allowed to present at trial an undisclosed

4

damages model based on a new generic entry date, Forest would be deprived of the opportunity to properly evaluate and respond to DPPs' damages opinions.  Such a result would be a textbook example of "sandbagging" that Rules 26 and 37 are designed to eliminate.  *Ebowe v. Martinez*, 309 F. Supp. 2d 600, 606-08 (S.D.N.Y. 2004).

Finally, if Dr. Lamb were permitted to take the stand at trial and testify that he could simply recalculate damages based on a different generic entry date, it would force (and encourage) the jury to speculate about an alternative damages result without any foundation or guidance.  *Texas v. Penguin Group (USA)*, No. 12-cv-3394, 2014 U.S. Dist. LEXIS 42549, at *55-56 (S.D.N.Y. 2014) (barring expert economist's testimony where it would "merely invite the jury's speculation" under Fed. R. Evid. 702 and 403); *see Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361, 1372-73 (9th Cir. 1992) (noting that the "absence of a proper study" into the amount of damages leaves a jury "without 'competent evidence from which [it] could fairly estimate damages.'").  As discussed above, DPPs are barred from presenting damages calculated for any other date because no such alternative estimates have been disclosed.  *U.S. Bank Nat'l Ass'n.*, 112 F. Supp. at 131-32.  And even so, DPPs agree that this sort of jury speculation should not be permitted for damages calculations.  *See* ECF No 701, Pls.' Revised Proposed Jury Instructions at 66 ("You may not base your damages award on guesswork or speculation.").

Ultimately, any such testimony about the possibility of calculating alternative damages would be highly prejudicial and encourage impermissible speculation about damages.  The same would be true if Dr. Lamb is permitted to offer new estimates of damages.  They would be offered to the jury without any of the testing and vetting that should have taken place in discovery.  Rules 26 and 37 are in place to prevent parties from having to guess what opinions

and methodologies opposing parties may present through experts at trial. Neither should be allowed.

## CONCLUSION

Accordingly, Forest requests that the Court preclude Dr. Russell Lamb from offering any opinion on damages, or the ability to calculate them, other than those disclosed in his expert reports, based on the two disclosed "but-for" generic entry dates of June 2012 and November 2, 2012.

Dated: May 24, 2019                                           Respectfully submitted,

**WHITE & CASE LLP**

By: ____/s/ John H. Chung____
Martin M. Toto
Heather K. McDevitt
John H. Chung
Michael E. Hamburger
William H. Bave, III
Kristen O'Shaughnessy
Kevin C. Adam
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200

J. Mark Gidley
Christopher M. Curran
Eric Grannon
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 626-3600

Heather M. Burke
Eric E. Lancaster
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Ste. 900
Palo Alto, CA 94306

Telephone: (650) 213-0300

**Counsel for Defendants Actavis plc, Forest Laboratories, LLC, Forest Laboratories, Inc., and Forest Laboratories Holdings Ltd.**