**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

IN RE NAMENDA DIRECT PURCHASER
ANTITRUST LITIGATION

Case No. 1:15-cv-07488-CM (RWL)

**MEMORANDUM IN SUPPORT OF FOREST'S MOTION**
***IN LIMINE* 12 TO PRECLUDE PLAINTIFFS' EXPERT DR.**
**HERRMANN FROM USING A CLAIM CONSTRUCTION CONTRARY**
**TO THE SETTLED CLAIM CONSTRUCTION OF THE PATENT COURT**

**WHITE & CASE** LLP

*Counsel for Defendants Actavis plc, Forest
Laboratories, LLC, Forest Laboratories, Inc., and
Forest Laboratories Holdings Ltd.*

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................... 2

    I.    Dr. Herrmann Ignores the Delaware District Court's Construction of "Effective Amount" in Favor of Forest in the '703 Patent Litigation, and Further Ignores that the Generic Defendants Ultimately Yielded to Forest's Interpretation ........................................................................................... 3

    II.   Dr. Herrmann's Infringement Testimony Conflicts with the Claim Construction in the '703 Patent Litigation, and Is Based on Dr. Herrmann's Personal Views ................................................................................ 4

CONCLUSION ....................................................................................................... 6

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Comcast Cable Communs., LLC v. Sprint Communs. Co., LP*,
  Case No. 12-859, 2016 U.S. Dist. LEXIS 155214 (E.D. Pa. Nov. 8, 2016)............................4

*Cordis Corp. v. Boston Sci. Corp.*,
  658 F.3d 1347 (Fed. Cir. 2011)..................................................................................4

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009)..................................................................................3

*Forest Labs Inc., et al. v. Cobalt Labs Inc., et al.*,
  C.A. No. 08-21-GMS-LPS (D. Del.) ........................................................................2

*FTC v. Actavis, Inc. (In re Androgel Antitrust Litig. (No. II))*,
  MDL Docket No. 2084, 2018 U.S. Dist. LEXIS 99716 (N.D. Ga. June 14,
  2018) ...............................................................................................................4

*Greatbatch Ltd. v. AVX Corp.*,
  C.A. No. 13-723, 2015 U.S. Dist. LEXIS 182055 (D. Del. Dec. 8, 2015) ..............................4

*In re Maxim Integrated Prod., Inc.*,
  No. 12-244, 2015 U.S. Dist. LEXIS 124062 (W.D. Pa. Sept. 11, 2015)..................................4

*In re Rezulin Prods. Liab. Litig.*,
  309 F. Supp. 2d 531 (S.D.N.Y. 2004)..........................................................................5

*Informatica Corp. v. Bus. Objects Data Integration, Inc.*,
  No. C 02-03378 EDL, 2007 U.S. Dist. LEXIS 16247 (N.D. Cal. Feb. 23,
  2007) ...............................................................................................................1

*Markman v. Westview Instruments*,
  517 U.S. 370 (1996)..............................................................................................3

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  No. 04-1371-JJF, 2006 U.S. Dist. LEXIS 100909 (D. Del. Sept. 14, 2006) ...........................1

### STATUTES AND RULES

Fed. R. Evid. 702 ....................................................................................................2

iii

A central issue in this case is the merits of Mylan's challenge to U.S. Patent No. 5,061,703 (the "'703 patent").  *See* ECF No. 29, First Amended Class Action Complaint at ¶ 14 (DPPs allege that "many of the Potential First-Filing Generics would have launched their generic products earlier . . . upon prevailing against Forest in the underlying patent litigation"); ECF No. 699, Ex. 1 to Proposed Joint Pretrial Order: Pls.' Contentions ("DPPs' Contentions") at ¶ 24 (in which DPPs argue, "Mylan would have prevailed on non-infringement in the Namenda Patent Litigation").  A key causation issue is that the DPPs will seek to have the jury evaluate what would have happened in the patent case had Forest and Mylan not reached the settlement that they reached.  DPPs have retained and plan to proffer Dr. Nathan Herrmann to testify on the merits of the underlying patent litigation.  *See* DPPs' Contentions at ¶ 25 ("Plaintiffs' factual contentions regarding non-infringement of the '703 Patent are set forth in Dr. Herrmann's expert reports, which are hereby incorporated by reference.").

However, DPPs' expert may not present evidence or testimony that contradicts the claim construction in the underlying patent litigation, and courts routinely grant motions *in limine* to preclude evidence that seeks to relitigate Mylan's defeat on claim construction in the Delaware patent case.  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. 04-1371-JJF, 2006 U.S. Dist. LEXIS 100909, at *4 (D. Del. Sept. 14, 2006) (precluding expert from offering testimony that "might differ from the claim construction rendered by the Court"); *Informatica Corp. v. Bus. Objects Data Integration, Inc.*, No. C 02-03378 EDL, 2007 U.S. Dist. LEXIS 16247, at *10-11 (N.D. Cal. Feb. 23, 2007) (granting motion *in limine* "to exclude testimony and other evidence inconsistent with the Court's claim construction" and determining that patent defendants may not rely on alternative construction "to prove the availability of non-infringing alternatives").  DPPs' counsel apparently recognize this indisputable principle and sought to

limit discovery accordingly.  *See* Ex. 1, Herrmann Dep. 275:1–7 (by Russell Chorush) (objecting at the Herrmann deposition, "as you know, once the Court issues its claim construction ruling, that's what the experts have to work with.  The experts can't rely on extrinsic documents to alter the Court's claim construction rules.  That's objection number 1.").

By the time of the '703 patent settlement between Forest and Mylan, the patent court in Delaware had already held a *Markman* hearing (on December 15, 2008) and largely adopted Forest's constructions for the disputed claim terms in the '703 patent.  *See Forest Labs Inc., et al. v. Cobalt Labs Inc., et al.*, C.A. No. 08-21-GMS-LPS (D. Del.) (Consolidated) (the "'703 Patent Litigation") (ECF Nos. 373, 426) (resulting in nine out of thirteen of Forest's proposed constructions being adopted, and none from the generic defendants, including Mylan).  Yet, DPPs apparently seek to elicit claim construction testimony from Dr. Herrmann that would not have been allowed in the underlying Delaware patent action, because it is directly contrary to the patent court's adopted claim construction.  *Compare* Ex. 2, Expert Rep. of Nathan Herrmann ("Herrmann Rep.") at ¶ 73 (reading limitations into the claim term "effective amount" that the patent court refused to adopt), *with* '703 Patent Litigation, ECF No. 373 at 26-27 (construing the term "effective amount" to exclude Dr. Herrmann's suggested limitations).  Such an argument could not have been advanced by Mylan at the patent trial if it had occurred, and accordingly, should not be allowed here.  *See* Fed. R. Evid. 702 (the purpose of expert testimony is "to help the trier of fact to understand the evidence or to determine a fact in issue").

## ARGUMENT

Claim construction is a bedrock element of U.S. patent litigation, and the proper construction of patent claims in a *Markman* hearing is fundamental to resolving patent disputes in federal courts.  As a result, the seminal case in this area explains:  "the construction of a

patent, including terms of art within its claim, is ***exclusively*** within the province of the court."
*Markman v. Westview Instruments*, 517 U.S. 370, 372 (1996) (emphasis added).  "Once a district
court has construed the relevant claim terms, and unless altered by the district court, then that
legal determination governs for purposes of trial.  No party may contradict the court's
construction to a jury."  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir.
2009).

 Here, the *Markman* hearing occurred on December 15, 2008, and Forest won on nine of
thirteen disputed constructions, with the patent court applying its own constructions to the four
remaining terms in a manner favorable to Forest; the patent court adopted ***none*** of the
constructions proposed by Mylan or the other generic defendants.  *See* '703 Patent Litigation,
ECF No. 373 at 32-34 (Report and Recommendation by Magistrate Judge Stark largely adopting
Forest's constructions and rejecting Mylan's and the generic defendants' claim constructions);
*see also* ECF No. 426 (district court order adopting Magistrate Judge Stark's claim construction).

**I.**   **Dr. Herrmann Ignores the Delaware District Court's Construction of "Effective Amount" in Favor of Forest in the '703 Patent Litigation, and Further Ignores that the Generic Defendants Ultimately Yielded to Forest's Interpretation**

 During the *Markman* hearing before the Delaware district court, Forest argued that the
term "effective amount" should be construed as "an amount shown to cause improvement, in
comparison to placebo."  *See* '703 Patent Litigation, ECF No. 373 at 26-27.  The generic
defendants, including Mylan, argued instead that it should mean "an amount that is
therapeutically effective."  *Id*.  The district court ultimately adopted Magistrate Judge Stark's
recommendation, which explicitly rejected the generic defendants' proposed "therapeutically
effective" construction and adopted Forest's construction, holding that the term "effective
amount" meant "an amount shown to cause improvement, in comparison to placebo."  *Id*.; *see*

3

*also* ECF No. 426 at 9.  The generic defendants declined to challenge this construction.  *See* '703 Patent Litigation, ECF Nos. 381-384; *see also* ECF No. 426 (district court order adopting Magistrate Judge Stark's claim construction).

Because the generic defendants did not object to Magistrate Judge Stark's construction of "effective amount" there is no question of how the term "effective amount" would have been construed in the context of the '703 patent litigation.  DPPs cannot now support their antitrust claims by engaging in a revisionist interpretation of the history of the underlying patent litigation.  *FTC v. Actavis, Inc. (In re Androgel Antitrust Litig. (No. II))*, MDL Docket No. 2084, 2018 U.S. Dist. LEXIS 99716, at *53 ("Any opinion that would purport to state how a particular piece of litigation would turn out without any evidence from the court in question on how it would rule can only be characterized as pure speculation.").

In patent cases, courts "must disregard" an expert's testimony when it "is based on an incorrect understanding of the claim construction."  *Cordis Corp. v. Boston Sci. Corp.*, 658 F.3d 1347, 1357 (Fed. Cir. 2011) (citing *Frank's Casing Crew & Rental Inc. v. PMR Techs., Ltd.*, 292 F.3d 1363, 1375 (Fed. Cir. 2002); *see also In re Maxim Integrated Prod., Inc.*, No. 12-244, 2015 U.S. Dist. LEXIS 124062 at *4 (W.D. Pa. Sept. 11, 2015) ("It is well-settled that an expert can offer an opinion on how a court's claim construction should be applied to the facts of a case, but cannot offer an opinion that contradicts or disregards a court's claim construction rulings."); *Comcast Cable Communs., LLC v. Sprint Communs. Co., LP*, Case No. 12-859, 2016 U.S. Dist. LEXIS 155214 at *12 (E.D. Pa. Nov. 8, 2016); *Greatbatch Ltd. v. AVX Corp.*, C.A. No. 13-723, 2015 U.S. Dist. LEXIS 182055 at *17-18 (D. Del. Dec. 8, 2015).

## II.   Dr. Herrmann's Infringement Testimony Conflicts with the Claim Construction in the '703 Patent Litigation, and Is Based on Dr. Herrmann's Personal Views

Dr. Herrmann's "interpretation" of "effective amount" in the '703 patent litigation

4

directly conflicts with the '703 patent litigation's claim construction rulings and should be rejected.  Dr. Herrmann's alternative construction of "effective amount" essentially doubles-down on the generic challengers' rejected contention that "effective amount" means a "therapeutically effective amount," arguing:

> In my opinion . . . the term "effective amount" refers to the recited **therapeutic process** in each of the independent claims – namely, (1) the "prevention or treatment of cerebral ischemia" (original and reexamined claims 1-13); (2) the "treatment of cerebral ischemia" (reexamined claims 14-16); or (3) "treatment of an imbalance of neuronal stimulation after Alzheimer's disease" (reexamined claim 17-19).

Ex. 2, Herrmann Rep. at 33 (emphasis added); *see also* Ex. 1, Dep. of Nathan Herrmann ("Herrmann Dep.") 49:19-22 ("My opinion would be that if you are treating an ***Alzheimer's disease*** patient with this medication, you would be ***expecting*** a ***therapeutic effect***.") (emphasis added).

Neither DPPs now nor Mylan then have any justification for applying such a construction, and at deposition, Dr. Herrmann admitted that this is simply his opinion of how the term should have been construed by the court.  *See, e.g.* Ex. 1, Dep. of Nathan Herrmann ("Herrmann Dep.") 39:6-11, 47:3-55:17 ("Q.  And it's also your opinion that Forest also had to prove that the use of Mylan's product would have achieved therapeutic effects through this antagonistic intervention with regard to NMDA receptor channels?  A.  That is correct.  That is my read---***that is my interpretation of the patent***.") (emphasis added), 264:5-19.  Dr. Herrmann's personal opinion on how the patent should have been construed is not "based on sufficient facts or data" as required by Rule 702.  *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 560 (S.D.N.Y. 2004) (excluding opinion on ideal efficacy standards for drug manufacturers as not an expert opinion, but rather personal opinion that would not help the fact-finder determine a fact at issue).

Dr. Herrmann's opinion as it relates to "effective amount" regurgitates arguments that the patent court rejected and contradicts the patent court's adopted claim construction.  Such opinions would not have been allowed at trial in the patent litigation, and therefore are categorically irrelevant here.

<u>**CONCLUSION**</u>

For these reasons, Forest respectfully requests that this Court preclude Plaintiffs from offering evidence or testimony that the '703 patent claim term "effective amount" means anything other than "an amount shown to cause improvement in comparison to placebo."  *See* Ex. 2, Herrmann Rep. at ¶¶ 33-34, 72-84.

Dated: May 24, 2019                                              Respectfully submitted,

**WHITE & CASE**LLP

By: _/s/ Eric E. Lancaster_____

Martin M. Toto
Heather K. McDevitt
John H. Chung
Michael E. Hamburger
William H. Bave, III
Kristen O'Shaughnessy
Kevin C. Adam
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200

J. Mark Gidley
Christopher M. Curran
Eric Grannon
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 626-3600

Heather M. Burke
Eric E. Lancaster

WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Ste. 900
Palo Alto, CA 94306
Telephone: (650) 213-0300

**Counsel for Defendants Actavis plc, Forest Laboratories, LLC, Forest Laboratories, Inc., and Forest Laboratories Holdings Ltd.**