IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE NAMENDA DIRECT PURCHASER ANTITRUST LITIGATION | Case No. 1:15-cv-07488-CM (RWL) |

**MEMORANDUM IN SUPPORT OF FOREST'S
MOTION *IN LIMINE* 14 TO EXCLUDE THE USE OF
INFLAMMATORY EVIDENCE AND ARGUMENT REGARDING
DRUG PRICING TRENDS AND PATENT SETTLEMENT AGREEMENTS**

**WHITE & CASE** LLP

*Counsel for Defendants Actavis plc, Forest Laboratories, LLC, Forest Laboratories, Inc., and Forest Laboratories Holdings Ltd.*

## TABLE OF CONTENTS

ARGUMENT ................................................................................................................................ 1

    I.    Evidence of General Drug Pricing Trends in the Pharmaceutical Industry, Including Higher Costs for Pharmaceuticals, Should be Excluded .................................................. 1

    II.    The Prejudicial Effect of Pejorative Characterizations of Patent Settlement Agreements Outweighs Any Minimal Probative Value .................................................... 3

CONCLUSION ............................................................................................................................. 5

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Novartis Pharms. Corp. v. Teva Pharms. USA, Inc.*, No. 05-cv-1887, 2009 U.S. Dist. LEXIS 103104 (D.N.J. Nov. 5, 2009) ........................................................................... 2

*United States Bank Nat'l Ass'n v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122 (S.D.N.Y. 2015) ................................................................................................... 2, 3

### STATUTES AND RULES

Fed. R. Evid. 401 ......................................................................................................................... 3

Fed. R. Evid. 402 ......................................................................................................................... 3

Fed. R. Evid. 403 ......................................................................................................................... 3

DPPs should be precluded from offering evidence or argument referring to general drug pricing trends in the pharmaceutical industry because such evidence and argument is irrelevant to the issues in this case. DPPs also should be precluded from (1) describing any transfer of value from Forest to Mylan in either the patent settlement agreement or the Lexapro Amendment as a "bribe," "bribery," or colloquial synonyms like "payoff," which are designed to associate federal crimes with the alleged civil antitrust violations at issue here in the minds of the jurors, and (2) referring to the eleven unchallenged non-Mylan settlement agreements as "anticompetitive," a "product of conspiracy," "illegal," or "automatically illegal." Such rhetoric is inaccurate and inflammatory, and the substantial prejudice from permitting such rhetoric would substantially outweigh whatever minimal probative value it otherwise may have.

## ARGUMENT

### I. Evidence of General Drug Pricing Trends in the Pharmaceutical Industry, Including Higher Costs for Pharmaceuticals, Should be Excluded

DPPs apparently intend to introduce evidence that blames pharmaceutical companies for the rising cost of pharmaceutical drugs or healthcare in general. *See, e.g.*, Ex. 1, Federal Trade Commission, *Pay-for-Delay: How Drug Company Pay-offs Cost Consumers Billions* (Jan. 2010) (PX-1065). DPPs also have indicated that they may seek to introduce other inflammatory articles about the overall pharmaceutical industry that are either on their exhibit list or were previously on their exhibit list but are now covered by the Expert Reliance Stipulation. *See e.g.*, Ex. 2, Duane M. Kirking, et al., *Economics and Structure of the Generic Pharmaceutical Industry*, 41 J. Am. Pharm. Ass'n 578, 578 (July/Aug. 2001) (stating that sales of prescription pharmaceuticals in the United States reached $140 billion and claiming that expenditures for pharmaceuticals are the fastest growing component of health care costs); Ex. 3, G. Michael Allen, et al., *Physician Awareness of Drug Cost: A Systematic Review*, 4 PLoS Med. 1486, 1486 ("Pharmaceutical costs

are the fastest-growing health-care expense in most developed countries."); Ex. 4, C. Scott Hemphill & Mark A. Lemley, *Earning Exclusivity: Generic Drug Incentives and the Hatch-Waxman Act*, 77 Antitrust L.J. 947 (2011) (PX-1360); Ex. 5, Donald W. Light & Rebecca Warburton, *Demythologizing the High Costs of Pharmaceutical Research*, BioSocieties 1, 2 (Mar. 2011) (theorizing that pharmaceutical companies inflate their reports of the cost of research and development as an excuse not to research primarily developing-world diseases "where high prices cannot be charged").

Evidence and argument about overall drug pricing trends, or the reasons for such trends, has no tendency to make any fact at issue in this case more or less probable. Therefore, such evidence and argument should be excluded under Rules 401 and 402 of the Federal Rules of Evidence. *See Novartis Pharms. Corp. v. Teva Pharms. USA, Inc.*, No. 05-cv-1887, 2009 U.S. Dist. LEXIS 103104, at *13-14 (D.N.J. Nov. 5, 2009) (granting in part a motion *in limine* seeking to exclude the price differential between brand-name and generic drugs and the purported role that generic drugs will play in healthcare reform efforts because ". . . the effect of generic drugs in the recent healthcare debate is entirely irrelevant and, therefore, is precluded.").

Plaintiffs' only possible motive to reference the "high" or "rising" cost of pharmaceuticals would be to appeal to jurors' frustration with the cost of healthcare, to invoke associations with the national drug pricing debate, or to suggest that Forest is responsible. But the admission of exhibits or argument for this purpose, when they have limited or no relevance to the issues in this case, would be improper. *United States Bank Nat'l Ass'n v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 139 (S.D.N.Y. 2015) (McMahon, J.) (granting in part motion *in limine* to preclude disparagement of U.S. Bank for investing in life insurance policies because the evidence was not relevant and "a jury would undoubtedly find [the evidence] distasteful"). Introducing this type of

2

irrelevant evidence to a jury "perforce [would] resul[t] in prejudice that does not derive from proof relevant to the issues in the case," and would serve only to inflame the passions of the jury. *Id.*; *see also* Fed. R. Evid. 401, 402, 403. The resulting unfair prejudice substantially outweighs any probative value, and this evidence therefore should be excluded. Fed. R. Evid. 403.

## II. The Prejudicial Effect of Pejorative Characterizations of Patent Settlement Agreements Outweighs Any Minimal Probative Value

This Court should prohibit Plaintiffs from invoking terminology from the federal bribery laws or characterizing the unchallenged patent settlement agreements as anticompetitive or unlawful.

***"Bribery."*** Under Rule 403 of the Federal Rules of Evidence, Plaintiffs should be precluded from using, or introducing evidence that uses pejorative characterizations of any transfer of value from Forest to Mylan in either the patent settlement agreement or the Lexapro Amendment as a "bribe," "bribery" or "payoff" because the probative value of such language is "substantially outweighed by a danger of . . . unfair prejudice." *See e.g.*, Ex. 6, May 18, 2017 Hr'g Tr. 6:16-24 (Plaintiffs' counsel arguing certain documents should be produced to show agreements were not "a fig leaf to cover a bribe"); Ex. 7, Expert Rep. of Einer Elhauge (referring to "settlement payoff" throughout). The terms "bribe" and "bribery" are technical legal terms with specialized meanings. *See*, *e.g.*, 18 U.S.C. § 201(b) (defining bribery of federal officials). And the term "payoff" is generally synonymous with "bribe" in colloquial usage.

Allowing Plaintiffs to use the terms "bribe," "bribery" or colloquial synonyms of those words would imply that this case is a criminal one or that Forest committed criminal acts. But the case before the jury is not a criminal bribery case, and the use of such terms would create juror confusion by inviting the jury to apply common knowledge of bribery cases to the facts of this case. *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 192-93 (S.D.N.Y. 2008)

3

(prohibiting characterization of evidence as "inside information" because such characterization "may lead a juror to believe that the [Defendant] engaged in improper or illegal conduct" and, therefore, "any probative value of the term is outweighed by its misleading nature"); *see also* Final Pretrial Scheduling Order at 7, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-01827 (N.D. Cal. May 4, 2012), ECF No. 5597 (granting motion *in limine* to exclude inflammatory rhetoric).

***Unchallenged Patent Settlement Agreements.*** Furthermore, because Plaintiffs have abandoned their claims that the non-Mylan settlement agreements are anticompetitive or the product of a conspiracy, (*see* ECF No. 565, Aug. 13, 2018 Letter from Bruce E. Gerstein to Judge McMahon at 1 ("Plaintiffs are not claiming that the other [non-Mylan] patent settlement agreements between Forest and first filing generics were themselves unlawful under the *FTC v. Actavis, Inc.*, 570 U.S. 136 (2013) framework."); and DPPs' SJ Opp. at 1, n.1), Plaintiffs should be precluded from characterizing these agreements as "anticompetitive," a "product of conspiracy," "illegal," or "automatically illegal." *See, e.g.*, Ex. 1, Federal Trade Commission, *Pay-for-Delay: How Drug Company Pay-offs Cost Consumers Billions* at 1 (PX-1065) (describing patent settlement agreements as "automatically (or *per se*) illegal"). Courts typically exclude evidence and characterizations of unpleaded or dismissed claims based on a finding of prejudice. *See, e.g.*, *Catipovic v. Turley*, 68 F. Supp. 3d 983, 998-99 (N.D. Iowa 2014) (excluding references to "'fraud,' 'conspiracy,' 'collusion,' . . . or similar characterizations" under Rule 403 "because it could allow the jury to decide the case on the basis of alleged misconduct not properly at issue").

## CONCLUSION

For the foregoing reasons, Forest respectfully requests an order precluding Plaintiffs, their counsel, and their lay and expert witnesses, from using, or introducing evidence that uses the pejorative and prejudicial terms described above.

Dated: May 24, 2019

Respectfully submitted,

**WHITE & CASE LLP**

By: */s/ Heather M. Burke*
Martin M. Toto
Heather K. McDevitt
John H. Chung
Michael E. Hamburger
William H. Bave, III
Kristen O'Shaughnessy
Kevin C. Adam
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200

J. Mark Gidley
Christopher M. Curran
Eric Grannon
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 626-3600

Heather M. Burke
Eric E. Lancaster
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Ste. 900
Palo Alto, CA 94306
Telephone: (650) 213-0300

**Counsel for Defendants Actavis plc, Forest Laboratories, LLC, Forest Laboratories, Inc., and Forest Laboratories Holdings Ltd**