## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Namenda Direct Purchaser Antitrust Litigation | Case No. 1:15-cv-07488-CM (RWL) |

## MEMORANDUM IN SUPPORT
## OF FOREST'S MOTION *IN LIMINE* 16 TO PREVENT
## IMPROPER USE OF THE COURT'S COLLATERAL ESTOPPEL ORDER

**WHITE & CASE LLP**

*Counsel for Defendants Actavis plc, Forest Laboratories, LLC, Forest Laboratories, Inc., and Forest Laboratories Holdings Ltd.*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

I.   DPPs Should Be Barred from Referencing or Characterizing the Collateral Estoppel Order, Offering Evidence That Was Rendered Irrelevant by the Order, and Expanding the Scope of the Order ..................................................................................................... 3

    A.   The Collateral Estoppel Order Is Not Evidence, and Neither DPPs nor Their Experts Should be Allowed to Reference the Order or Characterize the Effects of the Order to the Jury .......................................................................................... 3

    B.   DPPs Should Be Barred From Offering Evidence at Trial Unrelated to Injury Caused by the February 2014 Announcement ............................................................. 6

    C.   Causation and Injury Remain Open Questions for Trial, and DPPs Cannot Unilaterally Expand the Scope of the Collateral Estoppel Order to Suggest Otherwise ........................................................................................................... 9

II.  DPPs Should be Barred from Offering Speculative Evidence About the Enjoined Withdrawal and Mail Order Distribution Strategy ........................................................... 13

    A.   Evidence Related to the Enjoined IR Withdrawal And Mail Order Distribution Strategy Is Irrelevant ........................................................................................ 13

    B.   Any Limited Probative Value of the Enjoined IR Withdrawal and Mail Order Distribution Strategy is Substantially Outweighed by the Risk of Confusing the Issues ................................................................................................................ 16

CONCLUSION .................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aetna, Inc. v. Blue Cross Blue Shield of Mich.*,
No. 11-cv-15346, 2015 U.S. Dist. LEXIS 48534 (E.D. Mich. Apr. 14, 2015) ..................7, 13

*D'Agostino v. Hous. Auth.*,
No. 3:05-cv-01057, 2007 U.S. Dist. LEXIS 5965 (D. Conn. Jan. 29, 2007) ..........................6

*Dooley v. Columbia Presbyterian Med. Ctr.*,
06-cv-5644, 2009 U.S. Dist. LEXIS 66369 (S.D.N.Y. July 29, 2009)...................................16

*Gorbea v. Verizon N.Y., Inc.*,
No. 11-CV-3758, 2014 U.S. Dist. LEXIS 87295 (E.D.N.Y. Aug 02, 2011)............................7

*In re Initial Pub. Offering Sec. Litig.*,
174 F. Supp. 2d 61 (S.D.N.Y. 2001).......................................................................................4

*In re Namenda Direct Purchaser Antitrust Litig.*,
331 F. Supp. 3d 152 (S.D.N.Y. 2018)...................................................................................12

*In re Namenda Direct Purchaser Antitrust Litig.*,
No. 15-cv-07488, 2017 U.S. Dist. LEXIS 83446 (S.D.N.Y. May 23, 2017) ...........................1

*In re Namenda Direct Purchaser Antitrust Litig.*,
No. 15-cv-07488, 2018 U.S. Dist. LEXIS 140768 (S.D.N.Y. Aug. 2, 2018)....................9, 10

*In re Veeco Instruments, Inc., Sec. Litig.*,
No. 05-MC-01695, 2007 U.S. Dist. LEXIS 102363 (S.D.N.Y. June 28, 2007)...................4, 6

*Inventio AG v. Otis Elevator Co.*,
No. 06 Civ. 5377, 2011 U.S. Dist. LEXIS 88965 (S.D.N.Y. June 22, 2011).......................3, 4

*Jones v. N.Y. City Health & Hosp. Corp.*,
No. 00 Civ. 7002, 2003 U.S. Dist. LEXIS 9014 (S.D.N.Y. May 29, 2003).............................7

*Morrison v. Johnson*,
No. 1:01-CV-636, 2007 U.S. Dist. LEXIS 8525 (N.D.N.Y. Feb. 6, 2007)..............................8

*N. River Ins. Co. v. Phila. Reinsurance Corp.*,
63 F.3d 160 (2d Cir. 1995).......................................................................................................9

*New York v. Actavis, plc*, No. 14-cv-07473, 2014 U.S. Dist. LEXIS 172918
(S.D.N.Y. Dec. 11, 2014) ......................................................................................................16

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979)......................................................................................................8

*StreetEasy, Inc. v. Chertok*,
    651 Fed. App'x 37 (2d Cir. 2016)...............................................................................9

*United States v. Kaplan*,
    490 F.3d 110 (2d Cir. 2007)........................................................................................6

## STATUTES AND RULES

Fed. R. Evid. 401 ...................................................................................................6, 13

Fed. R. Evid. 402 ...................................................................................................6, 13

## <u>INTRODUCTION</u>

Forest moves to preclude DPPs from referencing or characterizing the Court's May 23, 2017 decision on collateral estoppel in front of the jury, or offering improper evidence or argument that is either inconsistent with, or rendered irrelevant by, that decision.  Forest also moves to preclude DPPs from offering speculative evidence regarding potential market effects in a hypothetical world in which Forest actually withdrew Namenda IR, or implemented a mail order distribution plan, because Forest implemented neither of those plans.

The 2014 NYAG injunction indisputably prevented Forest from removing Namenda IR from the market.  The injunction also indisputably prevented Forest from implementing its plan to make Namenda IR available via mail order to patients with a medical necessity for it.  DPPs' hard-switch claim in this case, however, is that the mere announcement that Namenda IR would be withdrawn in the future caused injury to DPPs.  On May 23, 2017, this Court ruled that Forest is collaterally estopped from challenging whether the February 2014 announcement was an antitrust violation, concluding that:

> Forest is precluded from relitigating the questions of (1) whether it possessed monopoly power over the U.S. memantine market up until the entry of generic competition; (2) whether its February 2014 announcement of the upcoming discontinuation of Namenda IR was coercive and anticompetitive; and (3) whether Forest had any non-pretextual procompetitive justification for its illegal conduct.

*In re Namenda Direct Purchaser Antitrust Litig.*, No. 15-cv-07488, 2017 U.S. Dist. LEXIS 83446, at *50-51 (S.D.N.Y. May 23, 2017) ("Collateral Estoppel Order" or "Order").  In light of the Court's Order, the only relevant trial issues on DPPs' hard-switch claim are whether DPPs can establish injury and damages caused by the February 2014 announcement.  Yet DPPs' pretrial submissions suggest that DPPs will use the Collateral Estoppel Order, and other evidence rendered irrelevant by the Order, improperly at trial in at least two key ways.

*(1) Improper Use of the Collateral Estoppel Order and Irrelevant Evidence.* DPPs' pretrial submissions reveal that, rather than using the Collateral Estoppel Order to narrow the scope of their case to focus on causation and injury, DPPs apparently plan to make this trial all about the Court's Collateral Estoppel Order itself. Indeed, it appears that DPPs expect to use the Collateral Estoppel Order as evidence at trial and characterize the scope and implications of the Order to the jury through their experts and attorney argument. But the Collateral Estoppel Order is not evidence, and it would be plainly improper for DPPs' counsel and witnesses to refer to and characterize the Collateral Estoppel Order in front of the jury. Similarly, DPPs apparently expect to flood the jury with duplicative and irrelevant evidence about Forest's enjoined withdrawal that is not relevant to causation or injury—the only issues remaining for the jury—and expand the scope of the Collateral Estoppel Order to include additional findings related to causation and injury. Any efforts by DPPs to poison the well on the jury's assessment of causation and injury by means of irrelevant evidence and mischaracterizations of the Collateral Estoppel Order, or to expand the scope of the Order, would be improper and must be foreclosed prior to trial.

*(2) Speculative Evidence of Market Effects from an Actual Withdrawal or Mail Order Distribution Strategy*. DPPs' pretrial submissions also indicate that DPPs intend to sow jury confusion by using evidence related to the "hard switch" that was originally contemplated by Forest in 2014 (i.e., product withdrawal and a mail order distribution plan) to suggest effects from the "hard switch" that was the subject of the Collateral Estoppel Order (*i.e.,* the February 14, 2014 announcement). Specifically, DPPs have designated testimony from the NYAG Action about potential market effects in a hypothetical world in which Forest actually withdrew Namenda IR or implemented the mail order distribution plan for Namenda IR. For example, DPPs have designated testimony from Dr. James Lah, a neurologist, and David Stitt, a pharmacist and health plan

manager, both of whom testified as witnesses in the NYAG Action about the impact on competition *if Forest had followed through with either the announced Namenda IR withdrawal or mail order distribution strategies*. DPPs have also cited similar evidence in their other pretrial filings. This proposed evidence, and any other proffered evidence or testimony on this issue, is irrelevant to DPPs' hard-switch claim and should be excluded from trial. Even assuming that there was some relevance to this evidence, it should nevertheless be excluded under Rule 403 of the Federal Rules of Evidence because the probative value is substantially outweighed by the danger of juror confusion about what constitutes the hard-switch conduct at issue in this case and alleged anticompetitive effects of that conduct.

## **ARGUMENT**

I. **DPPs Should Be Barred from Referencing or Characterizing the Collateral Estoppel Order, Offering Evidence That Was Rendered Irrelevant by the Order, and Expanding the Scope of the Order**

A. **The Collateral Estoppel Order Is Not Evidence, and Neither DPPs nor Their Experts Should be Allowed to Reference the Order or Characterize the Effects of the Order to the Jury**

This Court has made clear that "I do not allow lawyers other than myself to explain the law to the jury, no matter their credentials" and that "in my courtroom, no one testifies about the law, and *no one interprets my opinions for the jury*." *Invention AG v. Otis Elevator Co.*, No. 06 Civ. 5377 (CM), 2011 U.S. Dist. LEXIS 88965, at *5-6 (S.D.N.Y. June 22, 2011) (McMahon, C.J.) (emphasis added). Yet DPPs' pretrial filings reveal that DPPs apparently plan to use the Collateral Estoppel Order at trial and characterize the effect of the Order to the jury. *See, e.g.*, ECF No. 699-1, Revised Pls.' Contentions ("DPPs' Cont.") at ¶ 156 (listing out contentions DPPs believe are supported by the Collateral Estoppel Order); ECF No. 701, Revised Pls.' Proposed Jury Instructions ("DPPs' Jury Inst.") at 4-5, n.9, 86, n.167, 87-88, n.171 (requesting instructions regarding the scope and effect of the Collateral Estoppel Order). Similarly, DPPs' experts have

already sought to improperly bolster their opinions on causation and injury by relying on the Collateral Estoppel Order, and without clear guidance from the Court they likely will do so again at trial. *See, e.g.*, Ex. 1, Lamb (Nov. 10) Dep. 41:16-42:10 (DPPs' damages expert testifying that including an analysis of the impact of the February 2014 announcement in his damages model was unnecessary because the "Court's order with regard to collateral estoppel has determined that, in fact, *the hard switch strategy did have an anticompetitive effect* in the marketplace") (emphasis added), 44:17-45:18 ("Q: . . . I believe you said that an empirical analysis to determine whether any prescribing physicians changed their prescribing practices because of this announcement would be irrelevant . . . .  A: I think that's correct . . . .  *My understanding is that that's an issue that has already been resolved by the Court's collateral estoppel order*.") (emphasis added); *see also* Ex. 2, Expert Reply Report of Russell Lamb ¶ 43 (incorporating Collateral Estoppel Order).

Neither DPPs nor their witnesses, however, should be permitted to reference the Collateral Estoppel Order or characterize the implications of the Order to the jury. *See, e.g.*, *Inventio*, 2011 U.S. Dist. LEXIS 88965, at *5-6; *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) ("The rule prohibiting experts from providing their legal opinions or conclusions is so well-established that it is often deemed a basic premise or assumption of evidence law -- a kind of axiomatic principle" and "every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law.") (internal quotation marks omitted); *see also In re Veeco Instruments, Inc., Sec. Litig.*, No. 05-MC-01695, 2007 U.S. Dist. LEXIS 102363, at *18-19 (S.D.N.Y. June 28, 2007) (McMahon, C.J.) ("The Second Circuit has consistently held . . . that expert testimony that 'usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it, by definition does

not 'aid the jury in making a decision;' rather, it 'undertakes to tell the jury what result to reach,' and thus 'attempts to substitute the expert's judgment for the jury's.'") (citation omitted).

DPPs' Proposed Jury Instructions expose how DPPs expect to use the Collateral Estoppel Order, and irrelevant evidence concerning the Court's finding of an antitrust violation, at trial to taint the jury's assessment of causation and injury. Specifically, even though the only issues remaining for the jury to consider with respect to the enjoined hard-switch are causation, injury, and damages, DPPs propose that the Court adopt their characterization of the Collateral Estoppel Order, explain to the jury that Forest "violated the law," and expand the scope of the Order to make it more likely that jurors will conclude that wholesaler class members were injured by the February 2014 announcement. *See, e.g.*, DPPs' Jury Instr. at 4-5, Inst. 59. For example, the two bolded portions of one of DPPs' instructions below outline DPPs' allegations regarding the February 2014 announcement; the language in between, however, is inaccurate, inflammatory, and, by DPPs' own admission, not necessary to assess causation or injury.

> ***Plaintiffs assert they were injured as a result of conduct by Defendants known as a hard switch product hop. The "hard switch" refers to Defendants announcing they were going to withdraw Namenda IR from the market;*** and the "product hop" refers to Defendants converting the market from Namenda IR to Namenda XR. As to this theory, I instruct you that a court has already decided that Defendants violated the law, and that you must take it as established that Defendants' conduct publicizing their plan to discontinue Namenda IR and convert the market to Namenda XR was "coercive and anticompetitive" and that Defendants lacked "any non-pretextual procompetitive justification for its illegal conduct." I instruct you that Defendants' hard switch product hop violated the law, starting with Defendants' February 14, 2014 public announcement that Defendants would stop selling Namenda IR, which "*effectively withdrew*" Namenda IR from the market, and that "Defendants' hard switch – the combination of introducing Namenda XR into the market and effectively withdrawing Namenda IR – *forced* Alzheimer's patients who depend on memantine therapy to switch to [Namenda] XR[.]" These issues were already decided in a prior lawsuit brought by the New York Attorney General and Defendants are not permitted to dispute them again. ***As to Plaintiffs' claims regarding the hard switch product hop, you need to decide only if Plaintiffs paid some overcharge that was materially caused by the hard switch product hop, and if so, how much the overcharges were*. You must also decide the total overcharge damages, if any, suffered by the Direct Purchaser**

> ***Class as a result of the reverse payment and delay in generic competition and the hard switch product hop combined.***

DPPs' Jury Instr. at 4-5 (emphasis added in bold); *id.* (noting the only question for the jury is whether "Plaintiffs paid some overcharge that was materially caused by the hard switch product hop, and if so, how much the overcharges were."). This is the same type of argument that DPPs will likely make in their opening and closing statements, and that their experts will testify about, unless the Court rules that no one is permitted to reference or characterize the Collateral Estoppel Order in front of the jury.

**B.      DPPs Should Be Barred From Offering Evidence at Trial Unrelated to Injury Caused by the February 2014 Announcement**

Whether the February 2014 planned-withdrawal announcement was an antitrust violation is no longer an issue for the jury to decide in this case. DPPs, however, apparently intend to taint the jury's assessment of causation and injury by flooding the jury with irrelevant evidence regarding Forest's rationale for, and planned implementation of, its enjoined withdrawal of Namenda IR. *See generally* DPPs' Cont. at ¶¶ 156-75. But evidence related to violation issues (e.g., anticompetitive conduct and procompetitive justifications), as opposed to whether drug wholesaler class members were injured, simply is not relevant after the Collateral Estoppel Order and thus is inadmissible. *See* Collateral Estoppel Order at *50-51; Fed. R. Evid. 401, 402.

Evidence is not relevant unless it is "probative of the proposition it is offered to prove, and . . . the proposition to be proved must be one that is of consequence to the determination of the action." *United States v. Kaplan*, 490 F.3d 110, 120 (2d Cir. 2007); *see also* Fed R. Evid. 401 and 402. When, like here, an issue of consequence is removed from the jury's consideration by an earlier court ruling, evidence regarding that issue is no longer relevant. *See, e.g.*, *D'Agostino v. Hous. Auth.*, No. 3:05-cv-01057 (PCD), 2007 U.S. Dist. LEXIS 5965, at *5, *13-14 (D. Conn. Jan. 29, 2007) (excluding testimony and evidence related to issues the court had found to be barred by

collateral estoppel); *see also Gorbea v. Verizon N.Y., Inc.*, No. 11-CV-3758 (KAM)(LB), 2014 U.S. Dist. LEXIS 87295, at *5 (E.D.N.Y. Aug. 2, 2011) (granting defendant's motion *in limine*; "[C]laims . . . determined by summary judgment . . . may not be tried, and evidence relating thereto may not be introduced at trial" because under Rule 402, "the previously dismissed claims, and evidence thereof, are not 'of consequence in determining the action' and therefore will be excluded."); *Jones v. N.Y. City Health & Hosp. Corp.*, No. 00 Civ. 7002 (CBM), 2003 U.S. Dist. LEXIS 9014, at *2 (S.D.N.Y. May 29, 2003) (granting motion *in limine* seeking to prevent plaintiff from offering evidence regarding an issue that was disposed of at summary judgment); *Aetna, Inc. v. Blue Cross Blue Shield of Mich.*, No. 11-cv-15346, 2015 U.S. Dist. LEXIS 48534, at *7-10 (E.D. Mich. Apr. 14, 2015) (excluding proposed evidence that was "not relevant to the issues to be tried by the jury").

Much of the evidence DPPs intend to offer at trial regarding the enjoined hard switch relates to violation, not causation or injury. For example, DPPs plan to offer evidence regarding, among many other things, Forest's planned implementation of its hard switch (DPPs' Cont. at ¶ 157), Forest's rationale for choosing a hard-switch strategy (DPPs' Cont. at ¶ 158), Forest's supposed dissatisfaction with its soft-switch conversion results as a motive for withdrawing Namenda IR (DPPs' Cont. at ¶¶ 169-71), the timing of Forest's decision to seek to withdraw Namenda IR (DPPs' Cont. at ¶¶ 172-73), and various "soft switch" marketing efforts Forest considered or employed that DPPs have not challenged as being independently anticompetitive (DPPs' Cont. at ¶¶ 161, 167, 172-85). This evidence does not relate to whether DPPs here, a class of drug wholesalers, were injured by the February 2014 announcement.

Allowing DPPs to offer irrelevant and unnecessary evidence that does not bear on the issues of causation and injury would also be unfairly prejudicial to Forest. Based on the Court's

Collateral Estoppel Order, Forest's experts did not submit expert reports on issues related to violation on the hard-switch claim.

Moreover, under the Court's Collateral Estoppel Order, Forest is barred from offering evidence of its justifications for announcing its planned withdrawal of Namenda IR (e.g., testimony regarding why Forest believed it was required to make the announcement). *See* Collateral Estoppel Order at *51-52. If DPPs offer irrelevant evidence about Forest's forward-looking analysis of the planned hard switch, its planned implementation, or its reasons for considering the hard switch, Forest would be in an untenable position. Forest could defend itself against or challenge such evidence, but then DPPs would argue that Forest was violating the Court's Collateral Estoppel Order. Or Forest could remain silent, despite having a number of legitimate responses to DPPs' evidence, and then the jury would be left hearing only one side of the story on issue that is not even related to causation or injury. It cannot be that DPPs can offer irrelevant evidence to which Forest is allowed no response.

Lastly, presentation of such evidence and the re-hashing of issues precluded by the Court's Collateral Estoppel Order will prolong the trial and undermine any potential efficiencies that come with the granting of collateral estoppel. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979) (collateral estoppel serves the purpose "of promoting judicial economy by preventing needless litigation"); *see also Morrison v. Johnson*, No. 1:01-CV-636 (RFT), 2007 U.S. Dist. LEXIS 8525, at *5 (N.D.N.Y. Feb. 6, 2007) ("One of the missions of a court conducting a trial is to assure, to the extent that it can, that a single lawsuit does not become 'unnecessarily complex, unwieldy or prolonged … [and avoid] … exacerbate[ion] [of the] matters, especially when doing so would prejudice the existing parties by expanding the scope of litigation to include collateral [and cumulative] issues.'") (alterations in original, citation omitted). The purpose of collateral

estoppel is to eliminate the relitigation of issues that the party has already had the opportunity to litigate.  It would make little sense to enter such an Order only to have DPPs put on the same evidence they would have put on had they lost the motion.

Accordingly, Forest requests an Order from the Court that DPPs cannot offer irrelevant and unnecessary evidence regarding Forest's plans to actually withdraw Namenda IR that were rendered irrelevant by the Court's Collateral Estoppel Order.

### C.   Causation and Injury Remain Open Questions for Trial, and DPPs Cannot Unilaterally Expand the Scope of the Collateral Estoppel Order to Suggest Otherwise

While Forest respectfully disagrees with the Collateral Estoppel Order, the Court's three findings constitute the law of the case and must be adhered to absent extraordinary circumstances. *See StreetEasy, Inc. v. Chertok*, 651 Fed. App'x 37, 40 (2d Cir. 2016) ("[T]he law of the case doctrine requires that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case, unless cogent and compelling reasons militate otherwise.") (quoting *United States v. Quintieri*, 306 F.3d 1217, 1229 (2d Cir. 2002)) (quotation marks omitted); *see also N. River Ins. Co. v. Phila. Reinsurance Corp.*, 63 F.3d 160, 165 (2d Cir. 1995) ("a court should be loathe to revisit an earlier decision in the absence of extraordinary circumstances").

Notwithstanding the Court's clear articulation of the three specific findings covered by the Collateral Estoppel Order—the scope of which was confirmed in its August 2, 2018 decision (*In re Namenda Direct Purchaser Antitrust Litig.*, No. 15-cv-07488, 2018 U.S. Dist. LEXIS 140768, at *76-77 (S.D.N.Y. Aug. 2, 2018))—DPPs apparently seek to expand the scope of the Collateral Estoppel Order beyond these three findings and suggest that the Collateral Estoppel Order also supports a finding of injury.  *See, e.g.*, DPPs Cont. ¶¶ 156, 173 (including characterizations of the Collateral Estoppel Order that exceed the three decided issues of violation, as outlined in detail

9

below); DPPs' Jury Instr. 59, 63, 67 (same).  But the Court could not have been clearer that causation and injury remain open questions for trial:  "Forest is correct that a necessary aspect of Plaintiffs' Section 2 claim is proof of an antitrust injury to Plaintiffs caused by Forest's conduct, and that outstanding questions of material fact remain regarding that element of Plaintiffs' claim." Collateral Estoppel Order at *52.

Nevertheless, as the examples below illustrate, DPPs seek to rewrite the Collateral Estoppel Order now to make an end run on their burden of proving causation and injury at trial by arguing the following facts are already established.

*"Forest expected that a soft switch would result in a conversion of approximately 30% of Namenda IR prescriptions to Namenda XR prescriptions."*  *See* DPPs' Jury Instr. 59, 63; DPPs' Cont. ¶ 156; DPPs' Resp. to FRCP 23(f) Pet. at 17.  The volume of conversions from Namenda IR to Namenda XR absent the February 2014 announcement will be a key issue at trial with respect to causation and injury and simply was not one of the three factual findings of the Collateral Estoppel Order.  *See* Collateral Estoppel Order at *50-52.  As the Court recognized at summary judgment, the soft switch XR conversion rate is a contested factual issue, and Forest has put forth evidence that Forest expected greater than 30% conversion under a soft switch scenario. *See In re Namenda Direct Purchaser Antitrust Litig.*, No. 15-cv-7488, 2018 U.S. Dist. LEXIS 140768, at *45 (S.D.N.Y. Aug. 2, 2018) (noting DPPs' experts not considering other Forest forecasts "is a matter for cross-examination").

*The February 2014 announcement caused injury.*  *See, e.g.*, DPPs' Jury Instr. 59 ("As of December 2014, Forest had already caused anticompetitive injury to the memantine market. . . . As a result of Defendants' 'hard-switch' a 'significantly higher' number of patients converted from Namenda IR to Namenda XR than if Forest had not attempted to pull Namenda IR from the market.

. . . Forest's hard switch tactics had already resulted in more customers converting from Namenda IR to Namenda XR than Forest had estimated would convert voluntarily."); DPPs' Jury Instr. 63; DPPs Resp. to FRCP 23(f) Pet. at 20 ("the District Court already held that Forest's hard switch conduct disrupted the entire memantine market"); *id.* at 16 (arguing Forest is estopped from "relitigating" whether the hard switch impacted the market). DPPs' experts have also incorporated this expansive view of the Collateral Estoppel Order in their testimony. *See, e.g.*, Ex. 1, Lamb (Nov. 10) Dep. 44:17-45:18 ("Q: . . . I believe you said that an empirical analysis to determine whether any prescribing physicians changed their prescribing practices because of this announcement would be irrelevant . . . . A: I think that's correct . . . . My understanding is that that's an issue that has already been resolved by the Court's collateral estoppel order.").

The Court ruled in its Collateral Estoppel Order, however, that DPPs would need to show *actual injury* caused by the February 2014 announcement in order to prevail on its hard-switch claim. *See* Collateral Estoppel Order at *52 ("Forest is correct that a necessary aspect of Plaintiffs' Section 2 claim is proof of an antitrust injury to Plaintiffs caused by Forest's conduct, and that outstanding questions of material fact remain regarding that element of Plaintiffs' claim."). Indeed, as this Court recognized, injury could not occur until generic entry in July 2015, more than six months after the injunction that prevented the withdrawal of Namenda IR. Quite clearly, then, the decision in the NYAG Action could not have determined the ultimate injury to the market, let alone to drug wholesalers, and DPPs should be barred from suggesting otherwise.

**The "hard switch" began prior to the February 2014 announcement.** DPPs seek to mischaracterize the Court's Collateral Estoppel Order as establishing that the "hard switch strategy" began in October 2013. DPPs Cont. ¶¶ 156(6), 173. But the language of the Collateral Estoppel Order is clear that the scope of the Order is limited to the February 2014 announcement

and does not include pre-announcement or post-announcement conduct.  *See* Collateral Estoppel

Order at *50-51 ("Forest is precluded from relitigating the questions of  . . . (2) whether its

February 2014 announcement of the upcoming discontinuation of Namenda IR was coercive and

anticompetitive") (emphasis added).  In fact, this is precisely the relief requested by DPPs in their

briefing on collateral estoppel.  *See, e.g.*, ECF No.134, Pls' Mot. for Collateral Estoppel and Partial

Summ. J. on Count One at 1 ("Defendants' **announcement** of a planned withdrawal of Namenda IR

is ('tantamount to a withdrawal')"); *id* ("the anticompetitive impact of Defendants' **announcement** of

a planned withdrawal of Namenda IR"), 7 ("beyond the harm already caused by the **announcement**"),

11 ("As a result of its **February 2014 announcement** of a hard-switch"), 13 ("on the market at the

time of the IR **withdrawal announcement**"), 21 ("First, patients whose doctors prescribed XR **as a**

**result of the withdrawal announcement** would not automatically receive generic IR upon its entry"),

22 ("thus, **as a result of the announcement**, a large portion of the market shifted from IR to XR . . . .

These patients would not have switched **but for the announcement**, and would have otherwise paid

less for generic IR than for brand XR") (emphasis added for all).

    Moreover, the Court has already concluded that DPPs' experts will be allowed to testify about

Forest's pre- and post-announcement conduct, confirming that the Court does not share DPPs' view

that the Collateral Estoppel Order addressed conduct prior to the February 2014 announcement (or

after it).  *See In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 179-80

(S.D.N.Y. 2018) (allowing Dr. Lamb to testify about pre- and post-announcement conduct).  DPPs

should not be allowed to go outside the scope of the Collateral Estoppel Order (and their

Complaint) at trial and argue that conduct other than the February 2014 announcement also

constituted anticompetitive conduct.  But if DPPs do so, Forest must be free to respond with

evidence of its own and any procompetitive justifications for that conduct, and DPPs cannot be

permitted to suggest that the Collateral Estoppel Order covered any conduct other than the February 2014 announcement.

## II.     DPPs Should be Barred from Offering Speculative Evidence About the Enjoined Withdrawal and Mail Order Distribution Strategy

### A.     Evidence Related to the Enjoined IR Withdrawal And Mail Order Distribution Strategy Is Irrelevant

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401; *see also* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."). DPPs have designated testimony from the NYAG Action related to the anticipated effect on competition *assuming* that Namenda IR would actually be withdrawn from the market or made available only through mail order. DPPs have made similar assertions in their other pretrial filings. Because of the injunction, however, Namenda IR was never withdrawn, and remained available on the market without the need for a prescribing physicians to attest to its medical necessity. ECF No. 616, Defs.' Statement of Undisputed Material Facts In Support of Defs.' Mot. for Summ. J. ¶¶ 397-99; ECF No. 528, Pls.' Responses & Objections to Forest's Statement of Undisputed Facts in Supp. of Defs. Mot. for Summ. J. ¶ 399 (responding "admit" to the statement "Allergan did not impose a medical necessity requirement for patients to receive Namenda IR before, during or after the Injunction; Whereas at no time before, during or after the Injunction was Namenda IR made unavailable by Allergan or otherwise limited in distribution.") (internal quotations omitted).

Such speculation about events that never happened is irrelevant to DPPs' claims here, where the only relevant inquiry is whether Forest's discontinuation announcement caused injury by coercing patients and prescribing physicians to switch to Namenda XR. *See, e.g.*, *Aetna, Inc.*, 2015 U.S. Dist. LEXIS 48534, at *7-10 (excluding proposed evidence that was not relevant to the antitrust issues to be tried by the jury); *see also* Collateral Estoppel Order at *50-51.

13

For example, DPPs have designated testimony from Dr. James Lah, a neurologist, and David Stitt, a pharmacist and health plan manager, both of whom testified as witnesses in the NYAG Action about the impact on competition *if Forest had followed through with either the announced Namenda IR withdrawal or mail order distribution strategies*.  Ex. 3, Dep. of James J. Lah 273:14-20, 306:3-15 (discussing conversations with colleagues about harm to patients if Namenda IR removed from the market); Ex. 4, NYAG Trial Tr. (Nov. 10, 2014) 66:13-20, 67:1-17, 68:15-70:17, 71:11-72:16  (Lah) (discussion of potential impact from mail order distribution strategy requiring physicians to attest to medical necessity of Namenda IR); *id.* at 124:21-125:9 (Stitt) (discontinuing or requiring a medical necessity form for Namenda IR tablets would have an effect on doctors' prescribing habits for their patients currently taking Namenda IR); *see also id.* at 132:12-16 ("Q. [D]o you believe that Forest's decision to discontinue or limit the availability of Namenda IR tablets will result in significantly less use of the generic Namenda IR tablets when they become available? A. Oh, yes. Most definitely.").

DPPs have also designated testimony from Forest's CEO, Brent Saunders, related to the anticipated impact of a hard switch—defined at the time as full removal of Namenda IR from the market. Ex. 4, NYAG Trial Tr. (Nov. 11, 2014) 218:12-16 (Saunders) ("Q. If the hard switch were properly executed, Forest would achieve significantly higher levels of conversion from Namenda IR to Namenda XR than it would have achieved absent the forced switch, right? A. That was the goal."); *see also id.* at 219:12-16 ("Q. And so by doing the hard switch, Forest hopes to hold on to a large share of its bases instead of losing them to generic competition? A. That would be the hope as well but up against lots of barriers and obstacles."); Ex. 5, Oct. 25, 2014 Dep. of Brenton L. Saunders 114:17-115:2 ("Q. Did you expect the hard switch to assist Forest in achieving a higher conversion rate to Namenda XR? A. I believe that by implementing what you call a hard switch,

14

what we call hard switch, would allow us to, as I've stated earlier, promote a better, more innovative product, and hopefully maintain part of the franchise in a highly competitive market."); *id*. at 116:14-25 ("Q. If the hard switch is properly executed, Forest will achieve significantly higher levels of conversion from Namenda IR to Namenda XR than it would have achieved absent the hard switch, is that correct? A. Over what period of time? Q. Prior to loss of exclusivity. A. If executed well, that would be right.").

DPPs' other pretrial filings also conflate the anticipated effect of an actual withdrawal or mail order distribution strategy (at issue in the NYAG Action) with the February 2014 announcement (at issue in this case). *See, e.g.*, DPPs' Cont. at ¶ 166 ("Forest knew its hard switch strategy would have a long term effect in shifting sales from Namenda IR to Namenda XR because once converted to XR, physicians and patients would not switch back to IR."); ¶ 177 (statements from Brent Saunders regarding what DPPs describe as the "hard switch strategy" that refer to actual Namenda IR withdrawal, not announced withdrawal); ¶ 194 (referencing conversion discussion that outlines actual withdrawal, not announced withdrawal).  By blurring the lines on what conduct is at issue, DPPs even sweep lawful soft-switch strategies into their proposed broad definition of the "product hop."  *See* DPPs' Jury Inst. at 4-5 (claiming "the 'product hop' refers to Defendants converting the market from Namenda IR to Namenda XR").

None of this evidence, however, is relevant to whether the *announced*, but ultimately enjoined, withdrawal strategy adversely affected competition and injured DPPs.  Any testimony or evidence that relates to the projected effects of a complete withdrawal or mail order distribution strategy is irrelevant and should be excluded from trial.

### B. Any Limited Probative Value of the Enjoined IR Withdrawal and Mail Order Distribution Strategy is Substantially Outweighed by the Risk of Confusing the Issues

The term "hard switch" as used in the NYAG action meant the *actual* withdrawal of Namenda IR from the market. *See New York v. Actavis, plc*, No. 14-cv-07473, 2014 U.S. Dist. LEXIS 172918, at *90 (S.D.N.Y. Dec. 11, 2014) ("*If* Defendants are allowed to implement their hard switch strategy . . . ."); Ex. 6, New York's Post-Hearing Proposed Findings of Fact ¶ 60 (defining Forest's "forced switch" as "completely discontinuing Namenda"). In contrast, the "hard switch" conduct in this case is limited to the February 2014 discontinuation announcement, based on this Court's application of the *Namenda* Second Circuit decision. Collateral Estoppel Order at *28 ("Plaintiffs seek a partial summary judgment of liability on Count One, which asserts that Forest's February 2014 announcement of the upcoming withdrawal of Namenda IR from the market constituted a violation of Section 2 of the Sherman Act."). As a result, testimony about Forest's expectations from the "hard switch" at issue in the NYAG Action are likely to mislead the jury and confuse the issues about what the conduct at issue is in this action and that conduct's likely effects. As discussed above, DPPs have designated testimony about the expected impact of the "hard switch" strategy (i.e., actual removal of Namenda IR) and have referenced similar evidence in their pretrial filings. This type of NYAG testimony and evidence is irrelevant and has a high probability of causing the jury to consider (incorrectly) the effects of an *actual* withdrawal of Namenda IR that never occurred, rather than the real issue of whether the *discontinuation announcement* for a drug that was not actually discontinued caused any anticompetitive harm to DPPs. The Court should exclude this irrelevant evidence because any probative value is substantially outweighed by its likelihood to mislead and confuse jurors as to what conduct is relevant to deciding the ultimate issues in the case. *See Dooley v. Columbia Presbyterian Med. Ctr.*, 06-cv-5644, 2009 U.S. Dist. LEXIS 66369, at *4 (S.D.N.Y. July 29, 2009) (excluding

evidence under Rule 403 where the evidence could "confuse the issues before the jury, or inappropriately lead the jury to [render a decision] on the basis of conduct not at issue in the trial") (*citing United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006).

### CONCLUSION

For the foregoing reasons, the Court should (1) preclude DPPs from offering improper evidence or argument at trial that is either inconsistent with, or rendered irrelevant by, the Court's May 23, 2017 Collateral Estoppel Order, and (2) exclude any evidence or argument relating to the anticipated market effects from the ultimately enjoined Namenda IR withdrawal or mail order distribution strategy.

Dated: May 24, 2019

Respectfully submitted,

**WHITE & CASE** LLP

By: */s/ Martin Toto*
Martin M. Toto
Heather K. McDevitt
John H. Chung
Michael E. Hamburger
William H. Bave, III
Kristen O'Shaughnessy
Kevin C. Adam
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200

J. Mark Gidley
Christopher M. Curran
Eric Grannon
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 626-3600

Heather M. Burke

Eric E. Lancaster
WHITE & CASE LLP
3000 El Camino Real
5 Palo Alto Square, 9th Floor
Palo Alto, CA 94306
Telephone: (650) 213-0300

**Counsel for Defendants Actavis plc, Forest Laboratories, LLC, Forest Laboratories, Inc., and Forest Laboratories Holdings Ltd.**