IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE NAMENDA DIRECT PURCHASER
ANTITRUST LITIGATION

Case No. 1:15-cv-07488-CM (RWL)

**FOREST'S OPPOSITION TO PLAINTIFFS'
MOTION *IN LIMINE* NO. 5: EXCLUDE DEPOSITION TESTIMONY
FROM WITNESSES DEPOSED ONLY IN THE NAMENDA PATENT LITIGATION**

**WHITE & CASE** LLP

*Counsel for Defendants Actavis plc, Forest Laboratories, LLC, Forest Laboratories, Inc., and Forest Laboratories Holdings Ltd.*

## **TABLE OF CONTENTS**

ARGUMENT .................................................................................................................................. 2

    I.      Forest May Present Deposition Testimony from the '703 Patent Litigation Because It Concerns the Same Infringement and Validity Issues as the Present Case and Mylan Had the Opportunity and Same Motive as DPPs to Cure its Witnesses' Harmful Admissions ............................................................. 2

    II.     Forest May Present Deposition Testimony from the '703 Patent Litigation Because Forest Does not Intend to Offer the Testimony for its Truth and Because Mylan Had an Opportunity and a Similar Motive as DPPs to Develop the Testimony of Its Own Witnesses ......................................................... 5

    III.    Any Failure to Strictly Comply with the Expert Testimony Disclosure Requirements in Federal Rule of Civil Procedure 26 is Harmless ........................ 8

CONCLUSION ............................................................................................................................. 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Braccia v. D'Blass Corp.*,
   2011 U.S. Dist. LEXIS 77215 (S.D.N.Y. June 13, 2011) ........................................................... 4

*Byrne v. Gracious Living Indus.*,
   No. 01 Civ. 10153 (LAK), 2003 U.S. Dist. LEXIS 2552 (S.D.N.Y. Feb. 25, 2003) ................................................................................................................................................ 8

*Chevron Corp. v. Donziger,*
   No. 11 Civ. 0691 (LAK), 2013 U.S. Dist. LEXIS 46381 (S.D.N.Y. Mar. 26, 2013) ................................................................................................................................... 2, 3, 4, 5

*Doolittle v. Ruffo*,
   No. 88-CV-1175, 1996 U.S. Dist. LEXIS 8354 (N.D.N.Y. June 12, 1996) .............................. 7

*Fed. Hous. Fin, Agency v. Merrill Lynch & Co.*,
   No. 11 Civ. 6202 (DLC), 2014 U.S. Dist. LEXIS 26130 (S.D.N.Y. Feb. 28, 2014) ....................................................................................................................................... 2, 7

*Israeli v. Ruiz*,
   No. 14 CV 9244 (MHD), 2015 U.S. Dist. LEXIS 97650 (S.D.N.Y. July 27, 2015) .............................................................................................................................................. 8

*Mediavilla v. City of New York*,
   259 F. Supp. 3d 82 (S.D.N.Y. 2016) ..................................................................................... 4, 5

*Middle Mkt. Fin. Corp. v. D'Orazio*,
   No. 96 Civ. 8138 (SWK)(HBP), 2002 U.S. Dist. LEXIS 17817 (S.D.N.Y. Sept. 23, 2002) ............................................................................................................................ 6

*Shockley v. Minner*,
   726 F. Supp. 2d. 368 (D. Del. 2010) ......................................................................................... 5

*Shockley v. Minner*,
   No. 06-478 (JJF), D.I. 82 (D. Del. Apr. 5, 2010) ..................................................................... 5

*United States v. DiNapoli*,
   8 F.3d 909 (2d Cir. 1993) ..................................................................................................... 3, 8

*United States v. IBM Corp.*,
   90 F.R.D. 377 (S.D.N.Y. 1981) ................................................................................................ 5

*United States v. Jackson*,
    335 F.3d 170 (2d Cir. 2003)..................................................................................7

*United States v. Scully*,
    877 F.3d 464 (2d Cir. 2017)..................................................................................6

## STATUTES AND RULES

Fed. R. Civ. P. 26................................................................................................2, 8, 9

Fed. R. Civ. P. 32................................................................................................ passim

Fed. R. Civ. P. 37........................................................................................................8

Fed. R. Civ. P. 702......................................................................................................8

Fed. R. Civ. P. 703......................................................................................................8

Fed. R. Evid. 801 ....................................................................................................1, 5

Fed. R. Evid. 802 ....................................................................................................1, 5

Fed. R. Evid. 804 ..........................................................................................5, 6, 7, 8

## MISCELLANEOUS

Charles Alan Wright et al.,
    Federal Practice and Procedure: Civil § 2150 (3d ed. 2010) .......................................3

After affirmatively designating deposition testimony from the underlying patent litigation ("the '703 Patent Litigation") in 2017, DPPs now request that this Court exclude all testimony through deposition designations from all witnesses in the '703 Patent Litigation, including highly relevant testimony from Mylan's witnesses that bears directly on the infringement and validity issues in this case. ECF No. 743, Mem. in Supp. of Pls.' Mot. *In Limine* No. 5: Exclude Deposition Testimony from Witnesses Deposed Only in the Namenda Patent Litigation ("DPPs' MIL 5") at 1-2. DPPs' retreat from the deposition testimony in the '703 Patent Litigation confirms that the testimony from the patent case is harmful to DPPs' positions in this case, and is inconsistent with DPPs' revisionist non-infringement and invalidity theories.

Two important questions in this antitrust case concern whether Mylan's ANDA product would have been found to infringe U.S. Patent No. 5,061,703 (the "'703 Patent") and whether Mylan would have succeeded in proving that one or more claims of the '703 Patent were invalid in the '703 Patent Litigation. Neither Federal Rule of Civil Procedure 32(a) nor Federal Rules of Evidence 801, 802, or 804(b)(1) precludes Forest from introducing deposition testimony from the '703 Patent Litigation at trial. DPPs have alleged that they were injured by the settlement of the Namenda patent litigation because but for the settlement, Mylan would have prevailed by proving non-infringement or invalidity of the '703 Patent. *See, e.g.*, ECF No. 699-1, Revised Pls.' Contentions at ¶ 114. Thus, in this case, DPPs stand in the shoes of Mylan, who had a similar motive to develop testimony from its witnesses on ***the same*** infringement and validity issues in the '703 Patent Litigation that DPPs allege here. The causation case that the DPPs have is no more than what Mylan itself was arguing in the patent infringement case. Moreover, Forest intends to offer deposition testimony from the '703 Patent Litigation as evidence of the likely outcome of the underlying patent case regardless of the truth of the testimony itself. Finally, any

alleged failure by Forest to identify witnesses from the '703 Patent Litigation in its Rule 26 disclosures does not preclude Forest from relying on that testimony here, where DPPs do not claim to have suffered any prejudice and where DPPs themselves affirmatively designated deposition testimony from eight witnesses in the '703 Patent Litigation.

## ARGUMENT

I. **Forest May Present Deposition Testimony from the '703 Patent Litigation Because It Concerns the Same Infringement and Validity Issues as the Present Case and Mylan Had the Opportunity and Same Motive as DPPs to Cure its Witnesses' Harmful Admissions**

DPPs do not argue that the deposition testimony from the '703 Patent Litigation should be excluded because it is irrelevant. Nor could they; that testimony concerns precisely the same infringement and validity issues in question here and, due to the unique nature of reverse-payment cases, the "expert" testimony that DPPs seek to exclude from this case is part of the factual record of the '703 Patent Litigation. Rather, DPPs' motion is based on a reading of Federal Rules of Civil Procedure 32(a)(1)(A) and 32(a)(8) that requires DPPs to have been present or represented at the depositions in the '703 Patent Litigation in order for Forest to use those depositions against DPPs at trial. DPPs' MIL 5 at 2. But courts in the Second Circuit "recognize an exception to the requirement that the opposing party be present or represented at the deposition . . . [where] another party with the same motive to develop the testimony was present or represented." *Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK), 2013 U.S. Dist. LEXIS 46381, at * 7 (S.D.N.Y. Mar. 26, 2013) (internal quotation marks omitted); *see also Fed. Hous. Fin, Agency v. Merrill Lynch & Co.*, No. 11 Civ. 6202 (DLC), 2014 U.S. Dist. LEXIS 26130, at *2-3 (S.D.N.Y. Feb. 28, 2014). In fact, "'the same subject matter' and 'the same parties or their representatives or successors in interest' . . . requirements have been construed liberally in light of the twin goals of fairness and efficiency" and, in practice, "depositions taken

in prior actions are frequently admitted when the literal terms of the same-subject-matter-same-parties are not satisfied." *Chevron*, 2013 U.S. Dist. LEXIS at *8-9 (citations omitted).  Because Mylan and DPPs share the same motive to develop testimony, and Mylan had the opportunity to do so, such testimony is admissible against the DPPs here.

To assess whether a party with a similar motive to develop testimony was present at an earlier deposition, courts look to: (i) whether the party resisting the offered testimony at a pending hearing is on the same side of the same issues as the party in the earlier proceeding; and (ii) whether the party in the earlier proceeding had a similar degree of interest in prevailing on the issue as the party in the pending proceeding considering, for example, the nature of the dispute and the applicable burdens of proof.  *See, e.g.*, *United States v. DiNapoli*, 8 F.3d 909, 912 (2d Cir. 1993) (stating that the test for similarity of motive "must turn not only on whether the questioner is on the same side of the same issue at both proceedings, but also on whether the questioner had a substantially similar interest in asserting that side of the issue"); *Chevron*, 2013 U.S. Dist. LEXIS at *8 ("[C]ourts interpreting Rule 32(a) came increasingly to recognize that the real test should be whether the former testimony was given upon such an issue that the party-opponent in that case had the same interest and motive in his cross-examination that the present opponent now has." (quoting 8 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2150 (3d ed. 2010))).  DPPs here, like Mylan in the '703 Patent Litigation, allege that Mylan's ANDA product does not infringe the asserted claims of the '703 Patent and that the '703 Patent is invalid.  DPPs and Mylan are on the same side of the infringement and validity issues.

Mylan had the same concrete interest in prevailing on its non-infringement and invalidity theories in the '703 Patent Litigation as DPPs have in prevailing on these issues here: failure to

do so would have been fatal to Mylan's case, just as DPPs' failure to establish non-infringement or invalidity is fatal to their case here. And, because one of the issues in this case is what would have happened in the patent case but for the settlement, DPPs have to show that Mylan would have demonstrated non-infringement or proven invalidity by clear and convincing evidence. Counsel for Mylan, who was present at each of the depositions in the '703 Patent Litigation, had the opportunity and motive to ask questions to mitigate any damaging testimony by Mylan's witnesses on the same infringement and validity questions at issue in this case and DPPs have already counterdesignated testimony from each of the deposition transcripts that Forest intends to use. *See* Fed. R. Civ. P. 32(a)(6).

By virtue of DPPs' allegations of non-infringement and invalidity, DPPs now stand in Mylan's shoes and share an identity of interests and claims with Mylan from the '703 Patent Litigation. In these circumstances, Rule 32(a) does not preclude Forest from designating or playing at trial testimony from the underlying patent case. *See Chevron*, 2013 U.S. Dist. LEXIS at \* 9-13 (concluding that Rule 32 did not render inadmissible deposition testimony from a prior case where the issues in the two cases were "substantially identical" and where counsel in the earlier case had the same "incentive and motive" as counsel in the later case to cross examine the witnesses).

The case law cited by DPPs does not suggest a different result. In *Braccia v. D'Blass Corp.*, for example, the court determined that depositions taken in a prior case were inadmissible in a later case where, among other things, the issues in the later litigation concerned violations of the Dram Shop Act and the issues in the prior litigation involved entirely different questions of negligence. *See* No. 08 Civ. 08927 (LTS)(KNF), 2011 U.S. Dist. LEXIS 77215, at \*18-19 (S.D.N.Y. June 13, 2011). In *Mediavilla v. City of New York*, the plaintiff submitted a "tangle of

exhibits" in support of its opposition to summary judgment including deposition transcripts from unrelated criminal proceedings in an attempt to establish that the alleged deprivations of constitutional rights that he experienced as a participant in the "Occupy Wall Street" protests were the result of a municipal policy, custom, or practice. *See* 259 F. Supp. 3d 82, 109-11 (S.D.N.Y. 2016). The court determined that the cited deposition testimony was inadmissible because it involved neither the same subject matter nor the same parties as the pending lawsuit. *See id.* at *110-11. The subject matter of the two actions in *Shockley* was also not the same — the earlier case concerned a challenge to an alleged racial quota system that was used to manipulate the process for testing candidates for promotions in a state police department and the later case was limited to challenging the post-testing decision-making process for promotions. *Shockley v. Minner*, 726 F. Supp. 2d. 368, 374 n.2 (D. Del. 2010); *see also* Defendant Ruth Ann Minner's Reply Brief in Support of Her Motion for Summary Judgment at 5-6, *Shockley v. Minner*, No. 06-478 (JJF), D.I. 82 (D. Del. Apr. 5, 2010).

Because of the divergent subject matter between the litigations at issue in each of these cases, neither *Braccia*, *Mediavilla*, nor *Shockley* address the question present here: whether a party in an earlier proceeding had the opportunity and a similar motive to develop testimony sought to be admitted in a later proceeding concerning the same issues.

II. **Forest May Present Deposition Testimony from the '703 Patent Litigation Because Forest Does not Intend to Offer the Testimony for its Truth and Because Mylan Had an Opportunity and a Similar Motive as DPPs to Develop the Testimony of Its Own Witnesses**

Because the deposition testimony from the '703 Patent Litigation is admissible under Federal Rule of Civil Procedure 32, it need not also meet the requirements for admissibility set forth in Federal Rule of Evidence 804(b)(1). *See United States v. IBM Corp.*, 90 F.R.D. 377, 384 (S.D.N.Y. 1981) ("Rule 32 and Rule 804 are independent bases for the admission of a

deposition."). Rules 801, 802, and 804(b)(1) do not preclude Forest from playing deposition testimony from the '703 Patent Litigation at trial.

Critically, Forest intends to offer deposition testimony from the '703 Patent Litigation as evidence of the likely outcome of the underlying patent case. The fact that Mylan's own witnesses offered testimony at deposition that contradicted the non-infringement and invalidity positions that Mylan planned to present at the patent infringement trial is probative of the outcome of the '703 Patent Litigation — in the manner that Mylan was litigating that case. Because Forest does not intend to offer deposition testimony from the '703 Patent Litigation for the truth of the assertions in that testimony, deposition testimony from the underlying patent case is not hearsay. *See United States v. Scully*, 877 F.3d 464, 474 (2d Cir. 2017) ("A statement is only hearsay if it is offered to prove 'the truth of the matter asserted.'" (quoting Fed. R. Evid. 801(c)(2))); *see also Middle Mkt. Fin. Corp. v. D'Orazio*, No. 96 Civ. 8138 (SWK)(HBP), 2002 U.S. Dist. LEXIS 17817, at *33-36 (S.D.N.Y. Sept. 23, 2002) (denying defendants' motion *in limine* to preclude plaintiff from offering transcripts from depositions taken in an earlier action at trial in a later legal malpractice action and stating that because "the transcripts would be offered merely to show the fact that certain testimony was given or that certain questions were asked; the truth of the testimony would not be implicated and the general prohibition against hearsay would, therefore, be inapplicable").

Furthermore, DPPs do not dispute that at least Drs. Buccafusco and Olney are "unavailable" within the meaning of Rule 804(b)(1) because they are deceased. Nor do DPPs dispute that Dr. Buccafusco's and Dr. Olney's depositions in the '703 Patent Litigation were "lawful" under Rule 804(b)(1). Therefore, the only remaining precondition to the admissibility of Dr. Buccafusco's and Dr. Olney's deposition testimony under Rule 804 is whether DPPs'

6

"predecessor in interest" had the opportunity and a similar motive to question these witnesses. Fed. R. Evid. 804(b)(1). As with Fed. R. Civ. P. 32, courts interpreting the "predecessor in interest" element of Rule 804(b)(1) "have adopted a realistically generous [approach] over one that is formalistically grudging, admitting testimony where it appears in the former suit a party having a like motive to cross-examine about the same matters as the present party would have, was accorded an adequate opportunity for such examination." *Fed. Hous. Fin. Agency*, 2014 U.S. Dist. LEXIS 26130, at *3 (internal quotation marks omitted). For the reasons discussed above concerning Rule 32, Mylan had both an opportunity and a similar motive to develop Dr. Buccafusco's and Dr. Olney's testimony and to mitigate the effect of any damaging testimony from these witnesses concerning infringement and validity.

DPPs' reliance on the *Jackson*, *Doolittle*, and *DiNapoli* cases for the proposition that Mylan had no motivation to develop testimony from its own expert witnesses is misplaced. DPPs' MIL 5 at 4-5. In *Jackson*, the Government had neither the opportunity nor a similar motive to examine a defendant at a plea allocution as it later had at trial: "the Government's role at a plea proceeding is quite limited, and certainly does not include the opportunity to engage in the type of examination contemplated by Rule 804(b)(1)," and it "had no reason to cross-examine Brown at his plea allocution" despite Brown giving inconsistent statements because he still provided "an adequate factual basis for the plea." *United States v. Jackson*, 335 F.3d 170, 177-78 (2d Cir. 2003). Similarly, in *Doolittle*, although defendants' counsel was present at an earlier deposition, testimony from that deposition was inadmissible because fact discovery had not been reopened as to defendants and therefore counsel for defendants "could not have[] questioned Ms. Doolittle about any aspect of her case at that time." *Doolittle v. Ruffo*, No. 88-CV-1175, 1996 U.S. Dist. LEXIS 8354, at *30 (N.D.N.Y. June 12, 1996). Finally, in *DiNapoli*,

7

the Second Circuit held that the exclusion of a grand jury witness's testimony at trial was proper because in the grand jury context, "the prosecutor is not trying to prove any side of any issue, but only to develop the facts to determine if an indictment is warranted." *DiNapoli*, 8 F.3d at 913. Here, however, because Mylan had both the opportunity and a similar motive to question Drs. Buccafusco and Olney during their depositions, and those witnesses are now deceased, Rule 804(b)(1) does not provide a basis for excluding these witnesses' depositions at trial.

### III.     Any Failure to Strictly Comply with the Expert Testimony Disclosure Requirements in Federal Rule of Civil Procedure 26 is Harmless

Finally, DPPs argue that Forest's alleged failure to identify Mylan's expert witnesses from the '703 Patent Litigation in its Rule 26 disclosures warrants excluding that testimony from this trial. DPPs' MIL 5 at 3-4. But the testimony DPPs are seeking to exclude is not traditional expert testimony that is being presented under Federal Rules of Civil Procedure 702, 703, or 705. Rather, this "expert" testimony is part of the factual record of how Mylan actually approached the '703 Patent Litigation in the real world litigation of that patent case and is directly relevant to the issues of non-infringement and invalidity alleged here by DPPs. Therefore, DPPs' Rule 26 argument is inapplicable.

Even if one were to stretch the bounds of Rule 26 to encompass the testimony at issue here, it is settled that non-compliance with the rules of disclosure may be excused if a party can demonstrate that any non-compliance was harmless, or that the opposition has not suffered surprise or prejudice. *See* Fed. R. Civ. P. 37(c)(1); *Israeli v. Ruiz*, No. 14 CV 9244 (MHD), 2015 U.S. Dist. LEXIS 97650, at *8 (S.D.N.Y. July 27, 2015). DPPs have not asserted (nor could they) that they suffered any harm or prejudice by Forest's alleged failure to strictly comply with the disclosure requirements in Rule 26. *See Byrne v. Gracious Living Indus.*, No. 01 Civ. 10153 (LAK), 2003 U.S. Dist. LEXIS 2552, at *5-6 (S.D.N.Y. Feb. 25, 2003) (denying

defendants' motion *in limine* to exclude expert testimony not disclosed under Rule 26(a)(2)(A) and finding any failure to strictly comply with Rule 26(a)(2)(A) harmless where, among other things, the objecting party "claim[ed] no prejudice from any delay in its disclosure"). Nor can DPPs feign surprise that testimony from a specific lawsuit their own claims put at issue would be relevant and utilized by the parties here, particularly since DPPs themselves affirmatively designated deposition testimony from the '703 Patent Litigation in 2017.

DPPs confusingly argue that while targeted video deposition testimony from certain Mylan witnesses should be excluded, the full deposition transcripts and expert reports from the underlying '703 Patent Litigation may be admitted into evidence as trial exhibits. DPPs' MIL 5 at 5. But Federal Rule of Civil Procedure 32(a)(6) specifically contemplates that where, as here, a party identifies portions of a deposition for use at trial, "an adverse party may require the offeror to introduce other parts that in fairness should be considered with the part introduced." Because DPPs have already counterdesignated testimony from each of the deposition transcripts that Forest intends to use, it makes far more sense to play for the jury the targeted deposition testimony the parties have designated, than to wholesale admit the transcripts and related expert reports as exhibits. Furthermore, the fact that the parties have exchanged designations of these witness's testimony obviates DPPs' vague, speculative concerns about prejudice. *See* Fed. R. Civ. P. 32(a)(6).

## **CONCLUSION**

For the foregoing reasons, Forest respectfully requests that this Court deny Plaintiffs' Motion *In Limine* No. 5: Exclude Deposition Testimony from Witnesses Deposed Only in the Namenda Patent Litigation.

Dated: June 14, 2019                                                                           Respectfully submitted,

**WHITE & CASE** LLP

By: */s/ Eric E. Lancaster*

| | |
|---|---|
| Beth Wilkinson | Martin M. Toto |
| Rakesh Kilaru | Heather K. McDevitt |
| Kieran Gostin | John H. Chung |
| WILKINSON WALSH + ESKOVITZ | Michael E. Hamburger |
| 2001 M Street NW, 10th Floor | William H. Bave, III |
| Washington, D.C. 20036 | Kristen O'Shaughnessy |
| Telephone: (202) 847-4000 | Kevin C. Adam |
| | WHITE & CASE LLP |
| **Counsel for Defendants Actavis plc, Forest Laboratories, LLC, Forest Laboratories, Inc., and Forest Laboratories Holdings Ltd.** | 1221 Avenue of the Americas |
| | New York, New York 10020 |
| | Telephone: (212) 819-8200 |

J. Mark Gidley
Christopher M. Curran
Eric Grannon
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 626-3600

Heather M. Burke
Eric E. Lancaster
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Ste. 900
Palo Alto, CA 94306
Telephone: (650) 213-0300

**Counsel for Defendants Actavis plc, Forest Laboratories, LLC, Forest Laboratories, Inc., and Forest Laboratories Holdings Ltd.**