**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE NAMENDA DIRECT PURCHASER ANTITRUST LITIGATION | Case No. 1:15-cv-07488-CM (RWL) |

**FOREST'S OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 3:
TO PRECLUDE FOREST FROM OFFERING FACT WITNESSES TO CHANGE
OR SUPPLEMENT THE RULE 30(b)(6) DEPOSITION TESTIMONY PROVIDED BY
<u>CHARLES RYAN AND DAVID SOLOMON WITH RESPECT TO CERTAIN KEY DOCUMENTS</u>**

**WHITE & CASE LLP**

*Counsel for Defendants Actavis plc, Forest Laboratories, LLC, Forest Laboratories, Inc., and Forest Laboratories Holdings Ltd*

# **TABLE OF CONTENTS**

BACKGROUND ..................................................................................................................1

ARGUMENT ......................................................................................................................5

    I.   DPPs' Motion Must Be Denied Because a Corporate Party Is Allowed to Correct, Explain, or Supplement Rule 30(b)(6) Deposition Testimony at Trial ..........................5

    II.  DPPs' Motion Must Be Denied Because It Seeks Untimely and Unwarranted Sanctions ..................................................................................................................6

        A.  DPPs' Motion Is Tactically Motivated To Limit Trial Testimony and Must Be Denied Because DPPs Failed to Seek Appropriate Relief in a Timely Manner ..................................................................................................6

        B.  Forest's Corporate Designees Were Adequately Prepared In Compliance with Rule 30(b)(6) ..........................................................................................7

CONCLUSION ..................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Agniel v. Central Park Boathouse LLC*,
   No. 12 Civ. 7227 (NRB), 2015 U.S. Dist. LEXIS 13450 (S.D.N.Y. Jan. 26,
   2015) ..................................................................................................................................7

*Bank of N.Y. v. Meridien Biao Bank Tanz.*,
   171 F.R.D. 135 (S.D.N.Y. 1997) ........................................................................................8

*Crawford v. Franklin Credit Mgmt. Corp.*,
   261 F.R.D. 34 (S.D.N.Y. 2009) ..........................................................................................7

*Eid v. KLM*,
   310 F.R.D. 226 (S.D.N.Y. 2015) .....................................................................................7, 9

*Keepers, Inc. v. City of Milford*,
   807 F.3d 24 (2d Cir. 2015)...............................................................................................1, 5

*MPD Accessories v. Urban Outfitters, Inc.*,
   No. 12 Civ. 6501 (LTS) (KNF), 2013 U.S. Dist. LEXIS 114553 (S.D.N.Y.
   Aug. 13, 2013) ....................................................................................................................8

*Nemec v. Shrader*,
   No. 09 Civ. 7466 (LAK), 2015 U.S. Dist. LEXIS 51221 (S.D.N.Y. Apr. 13,
   2015) ...................................................................................................................................6

*Oakley v. Fed'n Empl. & Guidance Servs.*,
   No. 10 Civ. 7739 (JSR), 2011 U.S. Dist. LEXIS 76896 (S.D.N.Y. July 11,
   2011) ................................................................................................................................7, 9

*Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC*,
   40 F. Supp. 3d 437 (E.D. Pa. 2014) ....................................................................................5

*Progress Bulk Carriers v. Am. S.S. Owners Mut. Protection & Indem. Ass'n, Inc.*,
   939 F. Supp. 2d 422 (S.D.N.Y. 2013).................................................................................9

*Reilly v. NatWest Mkts. Grp., Inc.*,
   181 F.3d 253 (2d Cir. 1999)................................................................................................6

*Sea Trade Co., Ltd. v. FleetBoston Fin. Corp.*,
  No. 03-cv-10254 (JFK), 2008 U.S. Dist. LEXIS 67221 (S.D.N.Y. Sept. 4,
  2008) ..................................................................................................................5

*Webster v. Travelers Transp. Servs.*,
  No. 14-CV-60-WMS-MJR, 2016 U.S. Dist. LEXIS 88454 (S.D.N.Y. July 6,
  2016) ..................................................................................................................9

*Zappia Middle E. Constr. Co. v. Abu Dhabi*,
  No. 94 Civ. 1942 (DC), 1995 U.S. Dist. LEXIS 17187 (S.D.N.Y. Nov. 17,
  1995) ..................................................................................................................8

**STATUTES AND RULES**

Fed. R. Civ. P. 30(b)(6)................................................................................................ passim

Fed. R. Civ. P. 37(d) ......................................................................................................6, 7

DPPs' requested relief—that Forest witnesses be precluded at trial from supplementing Rule 30(b)(6) deposition testimony about certain documents or testifying about such documents at all—is directly at odds with established Second Circuit law that "Rule 30(b)(6) testimony is not 'binding' in the sense that it precludes the deponent from correcting, explaining, or supplementing its statements." *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 34-35 (2d Cir. 2015) ("Nothing in the text of [Rule 30(b)(6)] or in the Advisory Committee notes indicates that the Rule is meant to bind a corporate party irrevocably to whatever its designee happens to recollect during her testimony.").

Although their motion is styled as a motion *in limine*, DPPs are actually requesting that the Court *sanction* Forest for a supposed discovery violation for failing to offer adequate corporate representatives on the documents in question.  ECF No. 741, Mem. in Supp. of Pls.' Mot. *In Limine* No. 3 ("DPPs' MIL 3").  The Court should deny DPPs' motion as untimely because they never sought to resolve the alleged discovery deficiency through a meet and confer or motion to compel additional testimony on these documents.  DPPs' decision to take no action for *more than 18 months* after these Rule 30(b)(6) depositions but now seek exclusion of trial testimony as a discovery sanction is a misuse of a motion *in limine*.  Moreover, DPPs cannot establish that such sanctions are justified because Forest's corporate representatives were adequately prepared and provided sufficient answers to DPPs' questions.

## **BACKGROUND**

In November 2017, after Judge Francis's order compelling production of certain documents that Forest had withheld based on privilege, and after the close of fact discovery, Forest voluntarily made two former employees (Charles Ryan and David Solomon) that DPPs had already deposed as fact and Rule 30(b)(6) witnesses available for a second round of Rule

30(b)(6) depositions. Ex. 1, Oct. 2017 email exchange scheduling depositions. Both Charles Ryan and David Solomon had previously been deposed on September 7, 2017.

On November 7, 2017, Charles Ryan, former Forest Senior VP and Chief IP Counsel, was deposed as Forest's Rule 30(b)(6) corporate designee to discuss two nearly identical internal Forest PowerPoint presentations prepared in advance of a settlement meeting with Mylan on February 11, 2010. Ex. 2, Nov. 2, 2017 Notice of Rule 30(b)(6) Deposition listing FRX-AT-03882414 and FRX-AT-04628512 as the only topic for examination; *see also* ECF No. 761, Decl. of Dan Litvin ("Litvin Decl."), Exs. 11-12. Dr. Ryan was knowledgeable about the documents as he testified that he was responsible for all aspects of the Namenda patent infringement litigation and attended the February 11, 2010 settlement meeting with Mylan. Ex. 3, Nov. 7, 2017 Dep. of Dr. Charles Ryan ("Ryan Dep.") 337:7:11, 344:12-345:25. Dr. Ryan testified that in preparation for the deposition he worked with Forest's outside counsel and spoke with Eric Agovino, another former in-house Forest IP attorney who had authored the documents. Ex. 3, Ryan Dep. 342:20–343:12.

Dr. Ryan provided detailed information about the documents, including:

- The author of the documents. Ex. 3, Ryan Dep. 338:25-339:5 ("Q. Who created them? A. Eric Agovino [Forest in-house lawyer] was the person that authored the document. Q. He authored both of those documents? A. Yes.").

- The recipients of the documents, all Forest employees or outside legal counsel. Ex. 3, Ryan Dep. 340:5-341:1 (identifying the "very limited audience" that would have received the documents including Forest personnel and outside Forest legal counsel).

- The purpose for which Forest created the documents.  Ex. 3, Ryan Dep. 341:2-10 ("Q. For what purpose were these documents prepared?  A. It was in preparation for a settlement meeting with Mylan, so it was an internal document that we prepared so that the team attending that meeting had a general understanding of where we were at in terms of settling the case overall.").

- The procompetitive reasons for the settlement and Lexapro Amendment offers that were summarized in the presentations.  Ex. 3, Ryan Dep. 389:16-390:15 (Dr. Ryan testifying concerning value to both parties in amending the Lexapro agreement); *see also id.* at 387:9-389:2 (Dr. Ryan testifying concerning Mylan's saved litigation costs from settling the patent infringement litigation).

On November 15, 2017, David Solomon, a former Forest VP, was deposed as Forest's corporate designee on two "Mylan Deal Concept" documents, and a portion of one of the PowerPoint presentations, discussed above, related to the Mylan patent settlement negotiations. Ex. 4, Nov. 13, 2017 Notice of Rule 30(b)(6) Deposition listing FRX-AT-04628198, FRX-AT-04628195, and a portion of FRX-AT-03882414 as the only topics for examination; *see also* Litvin Decl. Exs. 13-14.  Mr. Solomon testified that he prepared an additional two to five hours for a one-hour deposition about those two documents. Ex. 5, Dep. of David Solomon ("Solomon Dep.") 419:15-24.  At his November 15, 2017 deposition, Mr. Solomon provided thorough testimony about the Mylan Deal Concept documents including:

- The expected benefit of substantial Medicaid rebate savings from the Lexapro Amendment discussed in the documents.  Ex. 5, Solomon Dep. 396:18-397:18, 415:5-416:12 (Mr. Solomon: "We had identified as a meaningful issue for Forest generally that, based on changes in the Medicare pricing laws, that we would be

3

responsible for these best price rebates. . . . And my recollection is that we had ranges over time that ranged from 25 or $30 million up to 70 or $75 million of potential liability due to the best price rebate issue. . . .").

- The expected benefit of reduced cost of goods sold from the Lexapro Amendment discussed in the documents. Ex. 5, Solomon Dep. 399:23-401:1 (Mr. Solomon testifying that Forest projected that the Lexapro Amendment would "result in greater profit for both parties because, remember, the transaction contemplated a profit sharing, so reducing the cost of manufacturing actually could benefit both Mylan and Forest").

- Forest's rationale for discussing payments to Mylan under the Lexapro Amendment in the documents. Ex. 5, Solomon Dep. 401:2-402:9 (Mr. Solomon: "Mylan, as I recall, knew that we wanted not to [manufacture the generic Lexapro] and they weren't going to take that over and solve our problem without a negotiation and a tangible benefit to them. And so I think our view at the time was that we were going to have to find a way to make it attractive to Mylan to take on that additional responsibility.").

- Contrary to DPPs' assertion (DPPs' MIL 3 at 2), information about the product profit split related to the Lexapro Amendment discussed in the documents. Ex. 5, Solomon Dep. 393:21-394:5, 404:20-405:14 (Mr. Solomon testifying that the profit split discussed in the "Mylan Deal Concept" document was the same as the profit split under the original Lexapro agreement).

At no point between the conclusion of these November 2017 depositions and the filing of their motions *in limine* on May 24, 2019 did DPPs raise any supposed deficiencies regarding the

4

preparedness of these witnesses with the Magistrate Judge or this Court or seek to depose any additional witnesses related to the documents in question. Under this circuit's precedents on Rule 30(b)(6) testimony, DPPs' inaction is dispositive here.

## ARGUMENT

I. **DPPs' Motion Must Be Denied Because a Corporate Party Is Allowed to Correct, Explain, or Supplement Rule 30(b)(6) Deposition Testimony at Trial**

DPPs' motion misconstrues the binding nature of a Rule 30(b)(6) deposition on a corporate party. The Second Circuit has explained that an "organization's deposition testimony is 'binding' in the sense that whatever its deponent says can be used against the organization. But Rule 30(b)(6) testimony is not 'binding' in the sense that it precludes the deponent from correcting, explaining, or supplementing its statements." *Keepers, Inc.*, 807 F.3d at 34-35; *see also Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC*, 40 F. Supp. 3d 437, 451 (E.D. Pa. 2014) ("Rule 30(b)(6) does not prohibit the introduction of evidence at trial that contradicts or expands on the deposition testimony of a Rule 30(b)(6) witness. . . .").

The proper procedure for any challenges to the credibility of Forest's Rule 30(b)(6) testimony is through cross-examination at trial, as with any other fact witness. *See Sea Trade Co., Ltd. v. FleetBoston Fin. Corp.*, No. 03-cv-10254 (JFK), 2008 U.S. Dist. LEXIS 67221, at *64 (S.D.N.Y. Sept. 4, 2008) (explaining that Rule 30(b)(6) testimony does not operate as a "judicial admission" but "may be explained or contradicted" like any other prior statement or testimony of a party or witness at trial) (citation omitted).

DPPs have not provided any basis to deviate from this binding Second Circuit authority to preclude other fact witnesses from discussing the four settlement negotiation documents addressed at the Rule 30(b)(6) depositions. Accordingly, the Court should deny DPPs' motion.

## II. DPPs' Motion Must Be Denied Because It Seeks Untimely and Unwarranted Sanctions

DPPs' "motion *in limine*" is actually a request for a discovery sanction that should have been brought, if at all, in a timely manner under Rule 37(d). For example, DPPs rely on *Reilly v. NatWest Mkts. Grp., Inc.*, 181 F.3d 253 (2d Cir. 1999). But in *Reilly*, the Second Circuit upheld the decision to preclude witness testimony about topics covered in a Rule 30(b)(6) deposition as a sanction where there was a violation of *both* Rule 30(b)(6) *and* an explicit discovery order. 181 F.3d at 268-69. DPPs' motion must be denied as untimely because DPPs never sought to compel additional deposition testimony on these documents and deliberately waited until right before trial to try to limit Forest witnesses' trial testimony. Moreover, any such sanctions are inappropriate here because Forest's corporate designees were adequately prepared to address the noticed topics and Forest has not violated any prior court order.

### A. DPPs' Motion Is Tactically Motivated To Limit Trial Testimony and Must Be Denied Because DPPs Failed to Seek Appropriate Relief in a Timely Manner

DPPs' motion must be denied because DPPs never sought to resolve this purported discovery deficiency by means of a meet and confer, much less seek relief from the Court until now. The Rule 30(b)(6) depositions at issue occurred more than *18 months ago*, yet DPPs never followed up with Forest to obtain additional testimony about the relevant documents or sought any relief with the Magistrate Judge or this Court, which constitutes an independent basis to deny their motion.

Motions *in limine* are not a substitute for timely fact discovery. *See Nemec v. Shrader*, No. 09 Civ. 7466 (LAK), 2015 U.S. Dist. LEXIS 51221, at *7 (S.D.N.Y. Apr. 13, 2015) (denying motion for discovery sanctions where the party "cloaked the issue in the sheep's clothing of a so-called *in limine* motion rather than call it what it is—a motion for discovery

6

sanctions filed nearly 17 months after the close of discovery."); *see also Crawford v. Franklin Credit Mgmt. Corp.*, 261 F.R.D. 34, 40 (S.D.N.Y. 2009) (denying request for sanctions where "there [was] no suggestion that [plaintiff's] counsel ever attempted in good faith to seek additional Rule 30(b)(6) testimony"); *Agniel v. Central Park Boathouse LLC*, No. 12 Civ. 7227 (NRB), 2015 U.S. Dist. LEXIS 13450, at *6 (S.D.N.Y. Jan. 26, 2015) ("[C]ourts are reluctant to award sanctions on the basis of deficient Rule 30(b)(6) testimony when counsel fail to make a good faith effort to resolve the deficiencies or when the application for sanctions appears tactically motivated.") (citation omitted).

DPPs' motives are clear. DPPs took no action on this supposed discovery violation for over 18 months as a tactical device to limit trial testimony of Forest witnesses. Such blatant gamesmanship cannot be condoned, and DPPs' motion must be denied. *See Oakley v. Fed'n Empl. & Guidance Servs.*, No. 10 Civ. 7739 (JSR), 2011 U.S. Dist. LEXIS 76896, at *10-12 (S.D.N.Y. July 11, 2011) (denying as "sheer gamesmanship" a motion for sanctions where plaintiff failed to make an effort to resolve alleged Rule 30(b)(6) deficiencies and it was "clear to the Court that plaintiff's counsel was more interested in sanctioning defendants in order to gain a tactical advantage than in actually obtaining answers . . . .").

### B. Forest's Corporate Designees Were Adequately Prepared In Compliance with Rule 30(b)(6)

In certain egregious cases, a court may treat the production of an unprepared Rule 30(b)(6) witness as "tantamount to a failure to appear" and award appropriate sanctions under Rule 37(d). *See Eid v. KLM*, 310 F.R.D. 226, 228 (S.D.N.Y. 2015) (internal quotation marks and citation omitted). "In order for the Court to impose sanctions, the inadequacies in a deponent's testimony must be egregious and not merely lacking in desired specificity in discrete areas." *Zappia Middle E. Constr. Co. v. Abu Dhabi*, No. 94 Civ. 1942 (DC), 1995 U.S. Dist. LEXIS

7

17187, at *26 (S.D.N.Y. Nov. 17, 1995). To warrant the severe sanction of preclusion of witness testimony at trial, DPPs must meet an even higher standard by proving "flagrant discovery abuses." *See Bank of N.Y. v. Meridien Biao Bank Tanz.*, 171 F.R.D. 135, 151-52 (S.D.N.Y. 1997) (denying motion for preclusion of testimony at trial as sanction despite finding that the Rule 30(b)(6) witness was wholly unprepared and whose "performance amount[ed] to non-appearance").

But DPPs' vague and conclusory assertions about the inadequacy of Forest's Rule 30(b)(6) testimony do not warrant such an extreme sanction. DPPs' MIL 3 at 1-2. In fact, DPPs do not identify *any* purported deficiencies with Dr. Ryan's testimony beyond the conclusory (and baseless) assertion that he had "limited recollection of why [the documents] were prepared or what the statements in the document meant." DPPs' MIL 3 at 1. Likewise, DPPs focus on a single question related to the profit split in the Lexapro Amendment to which Mr. Solomon asserted a lack of specific knowledge, while ignoring that he provided information on the profit split during other portions of his testimony. DPPs' MIL 3 at 2; *see also* Ex. 5, Solomon Dep. 393:21-394:5, 404:20-405:14 (testifying that the profit split discussed in the "Mylan Deal Concept" document was the same as the profit split under the original Lexapro agreement).

Tellingly, DPPs did not include the full deposition transcripts as part of their motion to allow the Court to evaluate the adequacy of the testimony. *See MPD Accessories v. Urban Outfitters, Inc.*, No. 12 Civ. 6501 (LTS) (KNF), 2013 U.S. Dist. LEXIS 114553, at *34-35 (S.D.N.Y. Aug. 13, 2013) (denying motion for sanctions for failure to offer adequate Rule 30(b)(6) witness where moving party "did not submit the entire transcript" or explain the purported lack of knowledge). Forest has included the full deposition transcripts with its

8

opposition, but simply reviewing the portions of the deposition detailed above demonstrates that these witnesses were knowledgeable and well prepared to discuss the documents at issue.

DPPs have failed to meet the high threshold to prove "egregious" inadequacies sufficient to warrant any sanctions, let alone the flagrant discovery abuse needed to justify the severe sanction of preclusion of witness testimony.  *See, e.g., Eid*, 310 F.R.D. at 229 (denying motion for sanctions because plaintiff failed to meet "burden of establishing that the Defendants' preparation of their Rule 30(b)(6) witnesses was deficient"); *Webster v. Travelers Transp. Servs.*, No. 14-CV-60-WMS-MJR, 2016 U.S. Dist. LEXIS 88454, at *3-6 (S.D.N.Y. July 6, 2016) (denying motion for sanctions because movant failed to show Rule 30(b)(6) witness was unprepared); *Oakley*, 2011 U.S. Dist. LEXIS 76896, at *9-10 (denying motion for sanctions because "while [the witness] did not know the answers to all of plaintiff's counsel's question, he was able to answer the vast majority of questions that were within the scope of the 30(b)(6) notice").

Further, DPPs' assertion that Forest should have designated former in-house attorney Mr. Agovino, or another unspecified person, as its corporate representative is meritless.  DPPs' MIL 3 at 4-5.  To start, DPPs acknowledge that Dr. Ryan spoke with Mr. Agovino to prepare for the deposition and relied upon that conversation in providing his testimony about the Mylan settlement negotiation documents.  DPPs' MIL 3 at 1.  Those types of discussions are part and parcel of Rule 30(b) deposition preparation.  DPPs may not dictate Forest's choice of whom to designate as a Rule 30(b)(6) witness, and any DPP preference for an alternative witness provides no basis for bringing a motion for sanctions if the designee is sufficiently knowledgeable, as is the case here.  *See Progress Bulk Carriers v. Am. S.S. Owners Mut. Protection & Indem. Ass'n, Inc.*, 939 F. Supp. 2d 422, 430 (S.D.N.Y. 2013) (Rule 30(b)(6) "does not permit the party issuing

the notice to select who will testify on the organization's behalf . . . ."). DPPs could have also sought further deposition testimony from Mr. Agovino, but never did so.

## CONCLUSION

For the foregoing reasons, the Court should deny DPPs' Motion *in Limine* No. 3.

Dated: June 14, 2019

Respectfully submitted,

**WHITE & CASE** LLP

By: */s/ Martin M. Toto*
Martin M. Toto
Heather K. McDevitt
John H. Chung
Michael E. Hamburger
William H. Bave, III
Kristen O'Shaughnessy
Kevin C. Adam
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200

Beth Wilkinson
Rakesh Kilaru
Kieran Gostin
WILKINSON WALSH + ESKOVITZ
2001 M Street NW, 10th Floor
Washington, D.C. 20036
Telephone: (202) 847-4000

**Counsel for Defendants Actavis plc, Forest Laboratories, LLC, Forest Laboratories, Inc., and Forest Laboratories Holdings Ltd.**

J. Mark Gidley
Christopher M. Curran
Eric Grannon
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 626-3600

Heather M. Burke
Eric E. Lancaster
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Ste. 900
Palo Alto, CA 94306
Telephone: (650) 213-0300

**Counsel for Defendants Actavis plc, Forest Laboratories, LLC, Forest Laboratories, Inc., and Forest Laboratories Holdings Ltd**