UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE NAMENDA DIRECT PURCHASER ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>All Direct Purchaser Actions | Case No. 1:15-cv-07488-CM-RWL |

**PLAINTIFFS' OPPOSITION TO FOREST'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE EXPERT TESTIMONY THAT FOREST'S POST-INJUNCTION NOTIFICATIONS CREATED DOUBT AND CONFUSION ABOUT THE CONTINUED AVAILABILITY OF NAMENDA IR**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. FACTS ............................................................................................................................. 2

III. ARGUMENT ................................................................................................................... 4

    A. Forest's Motion Should Be Denied as an Untimely *Daubert* Motion .................... 4

    B. Even if Forest's Motion Were Timely, the Opinions of Drs. Lamb and Berndt About the Impact of Forest's Post-Injunction Communications are Reliable ........ 6

IV. CONCLUSION .............................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ............................................................................................................. 9

*Hart v. BHH, LLC*,
   No. 15CV4804, 2019 WL 1494027 (S.D.N.Y. Apr. 4, 2019) ................................................. 5

*Insignia Sys., Inc. v. News Am. Mktg. In-Store, Inc.*,
   No. 04-4213, 2011 WL 167259 (D. Minn. Jan. 14, 2011) ..................................................... 6

*Kumho Tire Co., Ltd. v. Carmichael*
   526 U.S. 137 (1999) ............................................................................................................. 7

*Major League Baseball Properties, Inc. v. Salvino, Inc.*,
   542 F.3d 290 (2d Cir. 2008) ................................................................................................. 7

*In re Namenda Direct Purchaser Antitrust Litig.*,
   331 F. Supp. 3d 152 (S.D.N.Y. 2018) .................................................................... 1, 2, 4, 8, 9

*Scentsational Techs., LLC v. Pepsi, Inc.*,
   No. 13-CV-8645 (KBF), 2018 WL 910587 (S.D.N.Y. Feb. 14, 2018) ................................... 7

*United States v. Teva Pharm. USA, Inc.*,
   No. 13 CIV. 3702 (CM), 2019 WL 1245656 (S.D.N.Y. Feb. 27, 2019) ................................. 5

**Other Authorities**

Loc. Civ. R. 6.3 ............................................................................................................................ 4

Fed. R. Evid. 702, Adv. Cmte. Notes ........................................................................................... 7

Fed. R. Evid. 702 ......................................................................................................................... 8

I.  INTRODUCTION

Forest's Motion *in Limine* 1 (ECF No. 737) is an untimely challenge to the reliability of the testimony of the Plaintiffs' economists, Drs. Russell Lamb and Ernst Berndt, that Forest's repeatedly announcing it was "appealing" Judge Sweet's injunction sowed fear and doubt in the marketplace about the continued availability of Namenda IR.  Forest's motion is at best an untimely effort to seek reconsideration of the *Daubert* motion that it filed against these same experts, and which this Court denied.  Alternatively, it is an untimely *Daubert* motion that should have been filed earlier in accordance with the Court's schedule for such motions.  The motion should be denied as untimely either way.

On the merits, Dr. Lamb's and Berndt's opinions are reliable and admissible, just as the Court already found.  *See In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 174-82, 216-21 (S.D.N.Y. 2018) ("*Namenda V*").  Forest nevertheless complains that Drs. Lamb and Berndt did not conduct "surveys" of post-injunction physician prescribing behavior as support for their opinions that Forest's informing the market that Forest was *appealing* the injunction resulted in confusion and doubt about the continued availability of Namenda IR.  No such formal surveys are required; Drs. Lamb and Berndt properly based their opinions on their extensive experience and the record evidence, including an admission of Forest's own expert.  Forest's argument that, as economists, Drs. Lamb and Berndt are not qualified to opine on physician prescribing behavior likewise fails.  They both have studied economics, and in particular, the healthcare industry, and can apply their experience and expertise to opine that Forest's communication about its appeal of the injunction would tell the market that there was uncertainty as to whether Namenda IR would remain on the market.  As Forest's own economist conceded, Forest's announcement of its appeal told the market that Forest "disagree[d]" with the injunction and had decided to "go to a higher court to see whether they can convince the higher

1

court that, in fact, the lower court's decision was in error," Defs.' Br. at 7, thereby creating doubt about whether the injunction would stand.  This Court *specifically* found that Dr. Lamb could rely on this admission of Forest's expert.  *Namenda V*, 331 F. Supp. 3d at 219.  Forest's own expert's testimony shows that economists are more than capable of understanding the effect on the market that a communication like Forest's would have.  Dr. Lamb's and Dr. Berndt's opinions are reliable and should not be excluded.

## II.     FACTS

In response to Judge Sweet's injunction, Forest issued a series of press releases announcing it was appealing the injunction and stating it was "optimistic" the injunction would be overturned. *See* Declaration of Joseph Opper ("Opper Decl.") Ex. 1, PX-0516.  *See also* Opper Decl. Ex. 2, PX-1582 (communications to customers about injunction and stating, "[w]e are appealing this decision"); Opper Decl. Ex. 3, PX-0515 (press release regarding "emergency appeal"); Opper Decl. Ex. 4, PX-0232 (letter to customers noting appeal); Opper Decl. Ex. 5, PX-0517 (letter to healthcare providers noting appeal).  Dr. Lamb and Dr. Berndt assert that Forest's statements regarding its appeal of the injunction sowed confusion and doubt in the marketplace about the continued availability of Namenda IR.  *See, e.g.,* Opper Decl. Ex. 6, excerpts of the Am. Expert Reply Report of Dr. Russell L. Lamb ("Lamb Reply Rpt.") at ¶¶ 69-75 (evidence discussed shows that communications regarding Forest's appeal were expected to "create confusion and doubt in the marketplace"); Opper Decl. Ex. 7, excerpts of the Am. Reply Expert Report of Ernst R. Berndt, Ph.D. ("Berndt Reply Rpt.") at ¶¶ 21-27 (Forest's communications promulgated "continuing fear, uncertainty, and doubt").  The experts also note that while Forest issued over 900,000 communications to inform the market of the continued availability of Namenda IR, many of them referenced Forest's appeal, and that campaign paled in comparison to the one that Forest undertook to announce Namenda IR's withdrawal.  Opper

Decl. Ex. 6, Lamb Reply Rpt. at ¶ 71 and n.146 (citing Fowdur Dep. Ex. 24, reporting on the *2.1 million* communications sent by just one of Forest's vendors to caregivers and the *465,000* communications sent to healthcare providers about the discontinuance in 2014).

As support for his opinion that the appeal language created confusion and doubt, Dr. Lamb relies on, *inter alia*, the following record evidence:

- The post-injunction communications themselves (Opper Decl. Ex. 6, Lamb Reply Rpt. at ¶ 71 n.145);

- The deposition of Forest's economist, Pierre-Yves Cremieux (*id*. at ¶ 71 n. 148);

- A December 2014 analyst report (*id*. at ¶ 71 n.150);

- A January 2015 transcript from Forest CEO, Brent Saunders (*id*. at ¶ 71 n.151); and

- Various pre-injunction documents concerning physician prescribing practices and the impact of withdrawal announcements, including testimony from Dr. James Lah from the NYAG action (Chung Decl. Ex. 7 (ECF No. 755-7), excerpts of the Am. Expert Report of Dr. Russell L. Lamb ("Lamb Report") at ¶ 116); testimony from Dr. Barry Reisberg from the NYAG action (*id*. at ¶ 117); and a speech regarding the Namenda XR launch (Opper Decl. Ex. 6, Lamb Reply Rpt. at ¶ 93).

And Dr. Berndt relies on, *inter alia*, the following:

- The post-injunction communications themselves (Opper Decl. Ex. 7, Berndt Reply Rpt. at ¶ 25 and nn.52-55);

- Documents concerning pre- and post-injunction dialogue between Forest's detail representatives and physicians and pharmacists (*id*. at ¶ 24 n.47); and

- Pre-injunction documents concerning physician prescribing practices and the impact of withdrawal statements, including testimony from Dr. Lah (*id*. at ¶ 27 n.57; *id*. at ¶ 30 n.62).

This Court specifically considered and rejected Forest's argument that the injunction somehow instantaneously cured the anticompetitive harm from its withdrawal announcement, and ruled that evidence that Forest "informed customers of the injunction [but] indicated that it was 'appealing' the order and intended to 'convince the higher court that, in fact, the lower court's decision was in error'" provided a sufficient foundation for Plaintiffs' expert to opine that Forest's post-injunction communications did not erase the anticompetitive effects of the withdrawal. *Namenda V*, 331 F. Supp. 3d at 219 (quoting deposition testimony of Forest's expert, Dr. Cremieux). Forest's bid to have the Court reconsider and reverse its ruling is both too late, and baseless.

### III.  ARGUMENT

#### A.  Forest's Motion Should Be Denied as an Untimely *Daubert* Motion

As a threshold matter, Forest's motion is an untimely motion for reconsideration of the *Daubert* motion that it filed against Dr. Lamb, which was denied. *See Namenda V*, 331 F. Supp. 3d at 180. *See also* Loc. Civ. R. 6.3 (motions for reconsideration "shall be served within fourteen (14) days after the entry of the Court's determination of the original motion"). Forest's first *Daubert* challenge to Dr. Lamb raised the same criticism that it does here. Forest argued that Dr. Lamb's opinion that Forest's "intent in mentioning its appeal in the post-injunction notice was 'to create confusion and doubt in the marketplace, especially among physicians, about the future availability of Namenda IR'" was based on "speculat[ion]" because he "did no empirical analysis of whether the mere mention of an appeal had *any* effect on prescribing decisions or patient switching." Mem. in Supp. of Forest's Mot. to Exclude Dr. Russell Lamb,

4

ECF No. 643, at 17 (emphasis in original).  Rejecting this argument, the Court has already found that "Dr. Lamb's opinions about any lasting impact the anticompetitive conduct had post-injunction" are admissible and Forest's argument is, at best, fair ground for cross examination. *Namenda V*, 331 F. Supp. 3d at 179-80.  And the Court specifically found that Dr. Lamb could rely on Forest's post-injunction communications telling the market it was "appealing" – that is, challenging and seeking to overturn – the injunction to opine that the anticompetitive effects of the withdrawal continued after the injunction.  *Id*. at 219.  And as the Court noted, Dr. Lamb *also* relied on evidence "indicating the difficulty of transitioning patients back to Namenda IR once they had switched to Namenda XR."  *Id*.  Forest's second (and untimely) attempt at raising this same argument must similarly fail.

To the extent that this follow-up motion raises new arguments that were not (but certainly could have been) raised in Forest's first *Daubert* motion, it must nevertheless be denied as an untimely *Daubert* motion in violation of this Court's scheduling order.  Third Am. Case Mgmt. Order (ECF No. 397) at 2 ("Last date to file summary judgment and *Daubert* motions" was November 17, 2017).  Failure to raise these *Daubert* challenges at the time of summary judgment results in waiver.  *See United States v. Teva Pharm. USA, Inc*., No. 13 CIV. 3702 (CM), 2019 WL 1245656, at *12 (S.D.N.Y. Feb. 27, 2019) (McMahon, C.J.) ("As far as this court is concerned, the Parties have waived any *Daubert* arguments by not raising them at summary judgment.  If I can consider an expert's [testimony] at summary judgment, a jury can consider it at trial."); *Hart v. BHH, LLC*, No. 15CV4804, 2019 WL 1494027, at *1 (S.D.N.Y. Apr. 4, 2019) ("But these are classic *Daubert* questions which could have been raised in the first *Daubert* motion.  Accordingly, this Court construes Defendants' second motion *in limine* as an untimely *Daubert* motion in violation of this Court's scheduling order or as an untimely motion for

5

reconsideration."). Accordingly, the Court should deny Forest's motion as untimely and therefore waived.

### B. Even if Forest's Motion Were Timely, the Opinions of Drs. Lamb and Berndt About the Impact of Forest's Post-Injunction Communications are Reliable

Even if the Court were inclined to consider Forest's motion, it should be denied on the merits. Forest argues that Dr. Lamb's and Dr. Berndt's testimony regarding the impact of including the appeal language in its post-injunction communications is speculative and therefore unreliable, and that as economists they are not qualified to testify to physician prescribing practices. Neither argument has any merit.

Forest argues that Dr. Lamb's and Dr. Berndt's "failure to survey or otherwise speak to individuals" about their reactions to the post-December 15, 2014 injunction notices is "fatal" to the reliability of their opinions. Defs.' Br. at 4. The single item of non-binding authority that Forest relies upon for this assertion is inapposite. *Id.* (citing *Insignia Sys., Inc. v. News Am. Mktg. In-Store, Inc.*, No. 04-4213, 2011 WL 167259 (D. Minn. Jan. 14, 2011)). In *Insignia*, the expert was not excluded from testifying to the beliefs and understandings of consumer packaged goods companies ("CPGs") due to her failure to conduct surveys or interviews to formulate her opinion, but instead because she admittedly possessed no other evidence whatsoever to support her testimony. *Insignia*, 2011 WL 167259, at *5. As explained herein (and in prior briefing, *see* ECF No. 655 at 21-23; ECF No. 620 at 2, 12), Drs. Lamb and Berndt did rely on substantial record evidence in support of their opinions about the impact of Forest's injunction communications. Forest also fails to mention that the expert in *Insignia* was permitted to offer most of her proposed testimony, including testimony based on her experience about how CPGs "react to various communications from advertisers generally." *Id.* at *1.

6

Forest also argues that Dr. Lamb's and Berndt's reliance on pre- rather than post-injunction evidence of physician prescribing behavior renders their opinions speculative. Defs.' Br. at 6-8. But Forest's experts do not rely on *any* record evidence of patient or physician behavior in coming to the contrary conclusion that the effects of the hard switch ended or were reversed at the time of the injunction. *See* Opper Decl. Ex. 8, excerpts of the Expert Report of Lona Fowdur, Ph.D. ("Fowder Rpt") at ¶¶ 100, 116 (citing no record evidence as support for the assertion that Forest undid the effects of the withdrawal announcement); Opper Decl. Ex. 9, excerpts of the Expert Report of Pierre-Yves Cremieux ("Cremieux Rpt.") at ¶¶ 41, 59 (same). Plaintiffs' experts, on the other hand, relied on the record evidence in the case. *See* Section II, *supra*. *See also* Chung Decl. Ex. 7 (ECF No. 755-7), Lamb Report at ¶¶ 116-117 (analyzing physician reactions to Forest's communications related to withdrawal). Moreover, unlike the cases cited by Forest, this is not a situation where the experts did not rely on any factual evidence at all. *See Major League Baseball Properties, Inc. v. Salvino, Inc*., 542 F.3d 290, 311 (2d Cir. 2008) (expert's opinions characterized as "conclusory" where they were not "accompanied by any evidentiary citation nor followed by any elaboration" by the expert). In another case, the expert's opinions were inadmissible because they were "neither supported by data or analysis nor clearly connected to underlying facts." *Scentsational Techs., LLC v. Pepsi, Inc.*, No. 13-CV-8645 (KBF), 2018 WL 910587, at *6 (S.D.N.Y. Feb. 14, 2018). Dr. Lamb's and Dr. Berndt's opinions, by contrast, were properly linked to the evidence in this case and are not based on rank speculation, as Forest contends.

In addition to the record evidence that Drs. Lamb and Berndt rely upon (*see* Section II, *supra*), they also base their opinions on their extensive experience studying economics and the healthcare industry. Experts are routinely permitted to testify on the basis of their experience.

*See* Fed. R. Evid. 702, Adv. Cmte. Notes ("In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."); *Kumho Tire Co., Ltd. v. Carmichael* 526 U.S. 137, 156 (1999) ("no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."). Dr. Lamb's and Dr. Berndt's experience in the industry in part formed the basis for their opinions that Forest's announcing it was "appealing" and stating it was "optimistic" the injunction would be overturned would have a lingering impact, as they are permitted to do.

Forest also argues that, as economists, Drs. Lamb and Berndt are not qualified to testify to the medical community's interpretation of and reaction to the post-injunction notices. Defs.' Br. at 1. An expert's qualification may be based on "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. As the Court has already noted in denying Forest's *Daubert* motion against Dr. Berndt, he has "stud[ied] the pharmaceutical industry" for "many decades." *Namenda V*, 331 F. Supp. 3d at 181. He has focused his scholarship on pertinent topics such as "the impacts of marketing . . . on sales of pharmaceutical drugs," has authored several publications about the pharmaceutical industry and economics, and has served in advisory roles to government agencies and district court judges. *See* Opper Decl. Ex. 10, excerpts of the Expert Report of Ernst R. Berndt, Ph.D. ("Berndt Rpt.") at ¶¶ 1-5; *id.* at C.V. of Ernst R. Berndt, Ph.D. (publications include "Promotion of Prescription Drugs to Consumers" (2002), "Effects of Direct-to-Consumer Advertising on Medication Choice: The Case of Antidepressants" (2004), "Promotion of Prescription Drugs to Consumers and Providers, 2001-2010" (2013), among others). Dr. Lamb has thirty years of experience "study[ing] individual choice and individual behavior," which permits an economist to understand "how uncertainty affects consumer choice . . . both for consumers and for others in the marketplace." Chung Decl. Ex. 5 (ECF No. 755-5),

Lamb (Nov. 10) Dep. 123:12-25.  Forest does not submit any evidence to suggest that the medical community's interpretation of Forest's communications was somehow so idiosyncratic that economists with the experience of Drs. Lamb and Berndt cannot opine about the communications' impact on the marketplace.  Indeed, testimony from Forest's own expert supports the notion that an economist would understand Forest's announcement of its appeal to mean that it "disagree[d]" with the injunction and had decided to "go to a higher court to see whether they can convince the higher court that, in fact, the lower court's decision was in error," thereby creating doubt about whether Namenda IR would remain on the market.  Chung Decl. Ex. 10 (ECF No. 755-10), Cremieux Dep. 13:14-21.  *See also* Chung Decl. Ex. 5 (ECF No. 755-5), Lamb (Nov. 10) Dep. 121:25:5-123:7 (Dr. Lamb could not "see any other reason that Forest would have added that [appeal] language except to keep alive the possibility of the hard switch in the minds of the market, including the patient, caregivers and physicians and others, that the hard switch was still possibly going to be implemented.").  Thus, there is no question that Drs. Lamb and Berndt are qualified to render the testimony at issue.

At most, Forest's arguments go to the weight—not the admissibility—of Dr. Lamb's and Dr. Berndt's opinions.  *See Namenda V*, 331 F. Supp. at 179 ("At most, [Forest's] arguments concerning the assumptions in [expert's] analysis go to its weight, not admissibility of that testimony") (quoting *Dial Corp. v. News Corp.*, No. 13 Civ. 6802, 2016 WL 690868, at *4 (S.D.N.Y. Feb. 17, 2016)).  Accordingly, so long as this Court determines that the experts' proffered opinions and testimony are reliable and relevant (as this Court has already ruled regarding Drs. Berndt and Lamb), the "appropriate means" of attacking them is through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" — not exclusion.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596

(1993). That is what this Court has already ruled: "Dr. Lamb's opinions about any lasting impact the anticompetitive conduct had post-injunction" are admissible. *Namenda V*, 331 F. Supp. 3d at 179-80.

## IV.     CONCLUSION

Forest's motion *in limine* No. 1 should be denied.

Dated: June 14, 2019

David F. Sorensen
Ellen T. Noteware
Daniel C. Simons
Nick Urban
Berger Montague PC
1818 Market Street – Suite 3600
Philadelphia, PA 19103
(215) 875-3000
(215) 875-4604 (fax)
dsorensen@bm.net
enoteware@bm.net
dsimons@bm.net
nurban@bm.net

Peter Kohn
Joseph T. Lukens
Faruqi & Faruqi, LLP
1617 John F Kennedy Blvd., Suite 1550
Philadelphia, PA 19103
(215) 277-5770
(215) 277-5771 (fax)
pkohn@faruqilaw.com
jlukens@faruqilaw.com

Respectfully Submitted:

/s/ *Dan Litvin*
Bruce E. Gerstein
Joseph Opper
Kimberly M. Hennings
Dan Litvin
Garwin Gerstein & Fisher LLP
88 Pine Street, 10th Floor
New York, NY 10005
Tel: (212) 398-0055
Fax: (212) 764-6620
bgerstein@garwingerstein.com
jopper@garwingerstein.com
khennings@garwingerstein.com
dlitvin@garwingerstein.com

David C. Raphael, Jr.
Erin R. Leger
Smith Segura & Raphael, LLP
3600 Jackson Street, Suite 111
Alexandria, LA 71303
Tel: (318) 445-4480
Fax: (318) 487-1741
draphael@ssrllp.com
eleger@ssrllp.com

Stuart E. Des Roches
Andrew W. Kelly
Odom & Des Roches, LLC
650 Poydras Street, Suite 2020
New Orleans, LA 70130
Tel: (504) 522-0077
Fax: (504) 522-0078
stuart@odrlaw.com
akelly@odrlaw.com

Russ Chorush
Heim Payne & Chorush, LLP
1111 Bagby, Suite 2100
Houston, TX 77002
Tel: (713) 221-2000
Fax: (713) 221-2021
rchorush@hpcllp.com

*Counsel for the Direct Purchaser Class Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 14, 2019, I electronically filed the above by CM/ECF system.

                              Respectfully submitted,

                              /s/ *Dan Litvin*
                              Dan Litvin