**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE NAMENDA DIRECT PURCHASER ANTITRUST LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br>All Direct Purchaser Actions | **Case No. 1:15-cv-07488-CM-RWL** |

**PLAINTIFFS' OPPOSITION TO FOREST'S MOTION *IN LIMINE* NO. 3 SEEKING TO EXCLUDE IRRELEVANT EVIDENCE OF FOREIGN TRIBUNALS' FINDINGS OF PATENT INVALIDITY FOR FOREIGN PATENTS NOT AT ISSUE**

## TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................................1

II. ARGUMENT ........................................................................................................................2

    A.  The Foreign Tribunals' Decisions Are Highly Relevant to a Key Issue in This Case: Forest's Beliefs About the Weakness of the '703 Patent. .............................. 2

        1.  In Patent Infringement Cases, Foreign Tribunals' Decisions Invalidating Foreign Patents Are Admissible to Show a Litigant's Beliefs. ................................................................................................................. 2

        2.  This Is an Antitrust Case in Which Forest's Beliefs Are Highly Probative and Any Prejudicial Effect Is Minimal Because the Jury Will Not Determine Whether the '703 Patent Claims Are "Invalid." ........ 4

        3.  Any Perceived Prejudicial Effect Can Be Cured via Instruction ................ 8

III. CONCLUSION ....................................................................................................................9

# TABLE OF AUTHORITIES

**Cases**

*BIC Leisure Prod., Inc. v. Windsurfing Int'l, Inc.*
  1 F.3d 1214 (Fed. Cir. 1993) ................................................................................... 3

*Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*
  1999 WL 33756683 (W.D. Ky. Apr. 1, 1999) ........................................................... 3

*In re Namenda Direct Purchaser Antitrust Litig.*
  331 F. Supp. 3d 152 (S.D.N.Y. 2018) ............................................................... 4, 6, 8

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prod., LLC*
  2014 WL 12489857 (M.D. Pa. May 27, 2014) ......................................................... 3

*Phillips v. Netblue, Inc.*
  2007 WL 528722 (N.D. Cal. Feb. 13, 2007) ............................................................. 6

*Schneider (Europe) AG v. SciMed Life Sys., Inc.*
  852 F. Supp. 813 (D. Minn. 1994) ............................................................................ 3

*United States v. Monsalvatge*
  850 F.3d 483 (2d Cir.) ............................................................................................... 8

*Waddington N. Am., Inc. v. Sabert Corp.*
  2011 WL 3444150 (D.N.J. Aug. 5, 2011) ............................................................. 7, 8

*Windsurfing Int'l, Inc. v. Fred Ostermann GmbH*
  668 F. Supp. 812 (S.D.N.Y. 1987) ....................................................................... 2, 3

I.      INTRODUCTION

Plaintiffs respectfully request that this Court deny Forest's Motion *in Limine* No. 3 ("MIL No. 3") (ECF No. 759) seeking to exclude under Federal Rule of Evidence ("FRE") 403 evidence of foreign court decisions invalidating foreign counterpart patents to the '703 Patent.

Forest's argument is built on the fallacy that this is a *patent infringement case* rather than an *antitrust case*. ECF No. 759, Forest's Brief in Support of MIL No. 3 ("Defs.' Br."), at 1. In this *antitrust case*, the foreign tribunals' decisions are highly relevant to a key issue in the case – namely, Forest's beliefs about the weakness of the '703 Patent (beliefs which Forest withheld on privilege grounds). Nevertheless, the unrebutted expert testimony establishes that reasonable litigants consider such decisions in evaluating likelihood of success. And the unrebutted fact evidence – as set forth in Forest's own privilege log – establishes that Forest and its outside patent counsel in the Namenda patent litigation were monitoring foreign invalidation activity. Moreover, Forest's key asserted unfair prejudice – namely the concern that the jury will decide the "validity" of the '703 Patent claims based on the foreign courts' decisions – is largely misplaced because the jury in this *antitrust case* will not be tasked with deciding whether the '703 Patent claims are "invalid." And in any event, Rule 403 cannot justify exclusion because the "unfair prejudice," if any, does not substantially outweigh the significant probative value of the evidence. To the extent that the Court discerns any unfair prejudice, it can be readily cured with an appropriate instruction.

## II. ARGUMENT

### A. The Foreign Tribunals' Decisions Are Highly Relevant to a Key Issue in This Case: Forest's Beliefs About the Weakness of the '703 Patent.

#### 1. *In Patent Infringement Cases, Foreign Tribunals' Decisions Invalidating Foreign Patents Are Admissible to Show a Litigant's Beliefs.*

Absent from Forest's Brief is any recognition that the law in *patent infringement cases* does not wholesale bar the introduction of foreign tribunals' decisions invalidating foreign counterparts to U.S. patents. Rather, as in many other areas of the law, the admissibility of this type of evidence turns on the purpose for which it is offered. On the one hand, as Forest's cases demonstrate, foreign tribunals' decisions invalidating foreign counterpart patents generally cannot be offered as evidence that the corresponding U.S. patent claims are invalid. On the other hand, foreign tribunals' decisions can be admitted for purposes of establishing the *beliefs* of a litigant regarding the weakness of the U.S. patent (*e.g.*, as evidence that an infringer formed a good faith belief of invalidity, in defense of a charge of willful infringement of the patent).

A good example of the admissibility of a foreign tribunal's adjudication of a foreign counterpart patent is *Windsurfing Int'l, Inc. v. Fred Ostermann GmbH*, 668 F. Supp. 812 (S.D.N.Y. 1987). In *Windsurfing*, the patent owner prevailed in the liability phase of a patent infringement lawsuit and sought damages for willful infringement. *Id*. at 813. The resolution of the willfulness issue turned in part on "whether the infringer . . . formed a good-faith *belief* that [the patent] was invalid or that it was not infringed." *Id*. (emphasis added). At the trial on willfulness, the infringer's witnesses "all testified that [a] British decision [invalidating the British counterpart patent] confirmed and indeed strengthened their opinion that the [the patentee's] United States reissue patent would be invalidated." *Id*. at 816.

2

Like Forest here, the patent owner in *Windsurfing* argued that the evidence "relating to the British decision and its impact on [the infringer's] state of mind is irrelevant." *Id*. at 817. The *Windsurfing* district court rejected the patent owner's argument, because the foreign tribunal's decision was relevant to the infringer's "beliefs concerning the invalidity of the [] patent":

> While evidence of the British decision was properly held to be irrelevant under *In re Dulberg* during the liability phase of this action, it is relevant to this damage proceeding, where the issue is not whether the reissue patent was obvious, but whether BIC Leisure's beliefs concerning the invalidity of the reissue patent were reasonable. . . . the British decision . . . was a promising endorsement of their theory that the Darby prior art rendered the reissue patent obvious.

*Id*. at 817-818.  The Federal Circuit affirmed the district court's opinion, in part because "the invalidation of Windsurfing's British patent served to strengthen further [the infringer's] **belief that the claimed invention was obvious** in light of prior art." *BIC Leisure Prod., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1223 (Fed. Cir. 1993) (emphasis added).

Since the Federal Circuit's affirmance in *Windsurfing*, a number of courts have recognized the admissibility of a foreign tribunal's invalidation of a foreign counterpart patent as evidence of a litigant's beliefs regarding the invalidity of a U.S. patent's claims. *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prod., LLC*, No. 1:09-CV-1685, 2014 WL 12489857, at *2 n.2 (M.D. Pa. May 27, 2014) ("[F]oreign proceedings can be relevant to claims of willful infringement."); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, No. CIV.A.3:89CV-0470-S, 1999 WL 33756683, at *49 (W.D. Ky. Apr. 1, 1999) ("[Defendant's] belief was further bolstered by the January, 1988 rejection of the Luke cigarette by the German tribunal. While this foreign decision has no direct bearing here, PM's position with respect to obviousness surely found reassurance in that German decision."); *Schneider (Europe) AG v. SciMed Life Sys., Inc.*, 852 F. Supp. 813, 856 (D. Minn. 1994) (holding that Scimed could have a "reasonable belief . . .

3

that a court might reasonably hold the patent invalid or unenforceable" in part because of the "invalidation of the German '129 patent").

Forest blocked all discovery as to its own subjective beliefs in this case, but consistent with the case law recognizing that foreign tribunals' decisions are relevant to the beliefs of an infringer regarding patent weakness, Plaintiffs' expert Mr. Johnston opined that details regarding foreign counterparts is one of the "red flags" *a reasonable litigant* takes into account in evaluating likelihood of success:

> In addition, the attorney would of course evaluate the particular merits of the case-at-hand to see if there were reasons to believe that the patent-at-issue was particularly "strong" (i.e., no viable patent defenses) or particularly "weak" (i.e., one or more significantly viable patent defenses). In other words, *the attorney may look for "red flags" that may be of concern* (e.g., assignments, declarations, anomalies during prosecution, substantial noninfringement arguments, substantial invalidity arguments, uncited prior art, correspondence, and *corresponding foreign patent applications and their prosecution*).

Declaration of Joseph Opper ("Opper Decl."), Ex. 12, Johnston Rpt., ¶ 112.  Forest's patent litigation expert, Mr. McKelvie, did not refute Mr. Johnston's opinions regarding the relevance of foreign counterpart patents on a reasonable litigant's beliefs.

> **2.    *This Is an Antitrust Case in Which Forest's Beliefs Are Highly Probative and Any Prejudicial Effect Is Minimal Because the Jury Will Not Determine Whether the '703 Patent Claims Are "Invalid."***

Forest's brief proceeds from the erroneous premise that this case should be viewed through the lens of a "patent litigation."  Defs.' Br. at 2.  But as this Court explained some time ago, "this is an antitrust case, not a patent infringement case. . . ."  *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 187 (S.D.N.Y. 2018) ("*Namenda V*").  This *antitrust case* differs from a *patent infringement case* in many respects, two of which fundamentally alter any Rule 403 balancing analysis as it relates to the foreign tribunals' decisions invalidating foreign counterpart patents.

4

First, unlike a patent infringement case, "Forest's understanding of the strength of its patent is highly relevant to this case." ECF No. 684, Order at 1 (emphasis added). Forest's subjective beliefs are relevant not only to whether it committed an antitrust violation, but also to one of Plaintiffs' causation theories. *See* Opp'n to Defs.' MIL No. 2 at 6-7. As mentioned, Forest blocked discovery of its own subjective beliefs, but evidence that tends to establish what a reasonable litigant's beliefs would be about the weakness of the '703 Patent is highly probative of key issues in this case. As discussed *supra*, both the law and the unrebutted expert evidence establish that foreign tribunals' invalidity decisions are significantly probative of the beliefs of reasonable litigants in patent infringement litigation.

The importance of the foreign tribunals' decisions is particularly probative here because Forest's privilege log establishes that Forest was actually monitoring the invalidation of the German counterpart to the '703 Patent. The German counterpart "was invalidated as lacking novelty and inventive step over several prior art articles" in the German Federal Patent Court on December 11, 2007. Lancaster Ex. 1, Johnston Report, ¶ 55. A review of Forest's privilege log reveals that not only Forest, but also Forest's outside counsel in the U.S. patent litigation (Mr. Gerald Flattmann), were kept apprised of that nullity proceeding by Merz's inside counsel (Mr. Patrick Jochum) around the time of the invalidity decision. Opper Decl. Ex. 15, Excerpt from Forest's Privilege Log. Under the license agreement with Merz, Forest received a license under the '703 Patent but did not receive any interest in the German counterpart patent. Opper Decl. Ex. 16, PX-1396 (License and Cooperation Agreement), at ¶¶ 1.11 and 2.1 and Exhibit 1.11 (granting a license from Merz to Forest under "Merz' Intellectual Property Rights," which were defined in Exhibit 1.11 to include the '703 Patent but not any non-U.S. patents). Accordingly, Forest's only plausible reason for monitoring the German proceedings was that it was doing what

5

any reasonable litigant would do evaluating the outcome as a harbinger of things to come in the U.S. patent litigation.

Second, unlike a patent infringement case, the jury in this case will not be asked to determine whether the '703 Patent claims are "invalid." The Court has previously noted that, because this is an antitrust case rather than a patent infringement case, "the Court's concern with the technical issues of patent infringement and validity is indirect." *Namenda V*, 331 F. Supp. 3d at 187. Consistent with the Court's reasoning, the parties' proposed verdict forms do not seek to have the jury determine whether the claims of the '703 Patent are "invalid," as would occur in a patent infringement case. ECF No. 704-1 (Defendants' Proposed Verdict Form) at 4 (Nos. 9-12); ECF No. 702-1 (Plaintiffs' Proposed Verdict Form). Accordingly, any alleged unfair prejudice from the admission of the foreign tribunals' invalidity decisions is far less significant than it would be in a patent infringement case in which the jury is tasked with deciding whether the claims are invalid.

These two differences between this antitrust case and a patent infringement case weigh heavily against exclusion under FRE 403. To support its argument, Forest bears the burden of demonstrating that the "probative value" of the foreign tribunals' invalidity decisions "is substantially outweighed by the danger of . . . unfair prejudice." *Phillips v. Netblue, Inc.*, Civ. No. C-05-4401 SC, 2007 WL 528722, at *4 (N.D. Cal. Feb. 13, 2007) ("[A] party challenging offered evidence on Rule 403 grounds bears a two part burden: it must first prove that the offered evidence has an unfairly prejudicial 'non-probative aspect,' . . . and, assuming the party has made this initial showing, it must prove that this unfairly prejudicial, non-probative aspect of the evidence substantially outweighs the offered evidence's probative aspect."). Forest's Brief never comes to grips with the key differences between this antitrust case and a patent infringement

6

case, much less meets this burden. As explained above, the "probative value" of the foreign tribunals' invalidity decisions is very high owing to what their impact on a reasonable litigant's beliefs would be about the weakness of the '703 Patent. And Forest's stated basis for "unfair prejudice" – that the jury will find the '703 Patent invalid based on the foreign tribunals invalidity decisions – is relatively low, inasmuch as the jury will not be asked to decide validity.

Forest's reliance on *Waddington N. Am., Inc. v. Sabert Corp.,* Civil Action No. 09-4883 (GEB), 2011 WL 3444150 (D.N.J. Aug. 5, 2011) is misplaced. In *Waddington*, the accused infringer's counsel represented that the "only reason for seeking the[] admission [of the foreign tribunals' decisions] was that the jury might be aided in its obviousness determination by knowing another country applied similar law to a similar patent to find the invention was invalid." *Id*. at *6. After the court excluded the evidence, the accused infringer's counsel nevertheless solicited testimony from witnesses regarding the excluded evidence. *Id*. Although the accused infringer's counsel belatedly sought to justify the violation by arguing that the tribunals' decisions went to state of mind (*id*. at *6-7), that argument was clearly pretextual. Moreover, the *Waddington* court made clear that its reasoning behind excluding the admissibility of the foreign tribunals' decisions under Rule 403 related "to the liability phase of a jury trial" (*id*. at *9 n.5), when the jury is resolving validity issues rather than damages (willfulness) issues.

This case is readily distinguishable from *Waddington*. As an initial matter, *Waddington* was a patent infringement case (*id*. at *1), not an antitrust case. And unlike this antitrust case, the jury in *Waddington* was tasked with making explicit findings as to validity (*id*.), whereas no such findings will be made here. As explained above, Plaintiffs agree with the *Waddington* court that, *in a patent infringement case*, evidence of foreign tribunals' invalidity decisions are generally excluded from *the liability phase* under Rule 403 because they are relevant only in the

7

damages phase when willful infringement is assessed and state of mind is pertinent. In this antitrust case, in sharp contrast, this Court has already recognized that Forest's beliefs are "highly relevant" to the outcome of the reverse-payment antitrust claim. ECF No. 684, Order at 1. Given the undisputed expert and fact evidence the foreign tribunals' invalidity decisions are relevant to a reasonable litigant's beliefs about likelihood of success (*i.e.*, high probative value), and the fact that the jury is not being asked to specifically decide the validity issues (*i.e.*, low potential for unfair prejudice), the Rule 403 analysis is flip-flopped from *Waddington*. *United States v. Monsalvatge*, 850 F.3d 483, 494 (2d Cir.), *cert. denied*, 138 S. Ct. 280, (2017) ("[I]n reviewing a district court's Rule 403 ruling, we generally maximiz[e] [the evidence's] probative value and minimiz[e] its prejudicial value.") (internal quotations omitted).

### 3. Any Perceived Prejudicial Effect Can Be Cured via Instruction

Despite the substantial probative value of the foreign tribunals' decisions for purposes of establishing a reasonable litigant's beliefs, Plaintiffs do recognize a limited potential for unfair prejudice. To be clear, this slight potential for prejudice – explained below – does not substantially outweigh the probative value and thus the foreign tribunals' decisions are not properly excludable under Rule 403. However, as described below, any unfair prejudice the Court discerns can be eliminated via an appropriate instruction without eviscerating the significant probative value of the foreign tribunals' decisions.

One of Plaintiffs' causation theories is that "absent a settlement Mylan would have prevailed in the patent litigation." *Namenda V*, 331 F. Supp. 3d at 200. Although the jury will not be asked to determine whether the patent claims are "invalid," the jury's resolution of whether Mylan "would have prevailed in the patent litigation" will indirectly involve the jury's consideration of infringement and validity issues. As this Court has acknowledged, a finding that Mylan would have won is not synonymous with a finding of invalidity or non-infringement.

8

*Id*. at 187, 201 (noting that "Mr. Johnston is not opining that the '703 is invalid, or that Mylan did not infringe the patent" but nevertheless holding that his opinions are "sufficient to raise a genuine dispute of material fact on [the Mylan would have prevailed] causation theory"). Nevertheless, to avoid any risk of unfair prejudice, Plaintiffs are amenable to an instruction that makes clear that the foreign tribunals' decisions can be considered for purposes of evaluating a reasonable litigant's beliefs regarding patent weakness (particularly given that Forest blocked all discovery on its own subjective beliefs on privilege grounds), but may not be considered in determining whether the '703 Patent claims are in fact invalid.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Forest's MIL No. 3.

| | |
|---|---|
| Dated: June 14, 2019 | Respectfully Submitted: |
| | |
| David F. Sorensen | /s/ *Dan Litvin* |
| Ellen T. Noteware | Bruce E. Gerstein |
| Daniel C. Simons | Joseph Opper |
| Nick Urban | Kimberly M. Hennings |
| Berger Montague PC | Dan Litvin |
| 1818 Market Street – Suite 3600 | Garwin Gerstein & Fisher LLP |
| Philadelphia, PA 19103 | 88 Pine Street, 10th Floor |
| (215) 875-3000 | New York, NY 10005 |
| (215) 875-4604 (fax) | Tel: (212) 398-0055 |
| dsorensen@bm.net | Fax: (212) 764-6620 |
| enoteware@bm.net | bgerstein@garwingerstein.com |
| dsimons@bm.net | jopper@garwingerstein.com |
| nurban@bm.net | khennings@garwingerstein.com |
| | dlitvin@garwingerstein.com |
| | |
| Peter Kohn | David C. Raphael, Jr. |
| Joseph T. Lukens | Erin R. Leger |
| Faruqi & Faruqi, LLP | Smith Segura & Raphael, LLP |
| 1617 John F Kennedy Blvd., Suite 1550 | 3600 Jackson Street, Suite 111 |
| Philadelphia, PA 19103 | Alexandria, LA 71303 |
| (215) 277-5770 | Tel: (318) 445-4480 |
| (215) 277-5771 (fax) | Fax: (318) 487-1741 |
| pkohn@faruqilaw.com | draphael@ssrllp.com |
| jlukens@faruqilaw.com | eleger@ssrllp.com |
| | |
| | Stuart E. Des Roches |
| | Andrew W. Kelly |
| | Odom & Des Roches, LLC |
| | 650 Poydras Street, Suite 2020 |
| | New Orleans, LA 70130 |
| | Tel: (504) 522-0077 |
| | Fax: (504) 522-0078 |
| | stuart@odrlaw.com |
| | akelly@odrlaw.com |
| | |
| | Russ Chorush |
| | Heim Payne & Chorush, LLP |
| | 1111 Bagby, Suite 2100 |
| | Houston, TX 77002 |
| | Tel: (713) 221-2000 |
| | Fax: (713) 221-2021 |
| | rchorush@hpcllp.com |

*Counsel for the Direct Purchaser Class Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 14, 2019, I electronically filed the above by CM/ECF system.

        Respectfully submitted,

        /s/ *Dan Litvin*
        Dan Litvin

11