**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE NAMENDA DIRECT PURCHASER ANTITRUST LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br>**All Direct Purchaser Actions** | **Case No. 1:15-cv-07488-CM-RWL** |

**PLAINTIFFS' OPPOSITION TO FOREST'S MOTION *IN LIMINE* NO. 4 SEEKING TO COMPEL ROCHESTER DRUG CO-OPERATIVE TO TESTIFY AT TRIAL OR BE DEEMED INADEQUATE**

**TABLE OF CONTENTS**

I.     FACTS .................................................................................................................. 1

II.    ARGUMENT ........................................................................................................ 4

       A.     Evidence Concerning RDC's Deferred Prosecution Agreement
              Is Inadmissible .......................................................................................... 4

       B.     RDC's Adequacy Is Not Impacted by Its DPA ....................................... 4

       C.     RDC's Adequacy Is Not Impacted by Plaintiffs' Decision Not to
              Call an RDC Witness ................................................................................ 7

III.   CONCLUSION ................................................................................................... 11

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                                  **Page(s)**

*Arabian v. Sony Elecs., Inc.*,
   No. 05-CV-1741WQHNLS, 2007 WL 627977 (S.D. Cal. Feb. 22, 2007)...............................9

*In re Asacol Antitrust Litig.*,
   15-cv-12730-DJC, ECF No. 691 (D. Mass. Jan. 11, 2018) ...................................................10

*Beaton v. SpeedyPC Software*,
   907 F.3d 1018 (7th Cir. 2018) ...............................................................................................6

*Bohn v. Pharmavite, LLC*,
   No. CV 11-10430-GHK AGRX, 2013 WL 4517895 (C.D. Cal. Aug. 7, 2013)......................9

*Chime v. Peak Sec. Plus, Inc.*,
   137 F. Supp. 3d 183 (E.D.N.Y. 2015) ....................................................................................5

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
   No. 12 Civ. 0256(LAK)(AJP), 2017 WL 3608298 (S.D.N.Y. Aug. 22, 2017) ........................5

*Eisenberg v. Gagnon*,
   No. Civ. A. 82-5051, 1986 WL 8127 (E.D. Pa. July 16, 1986)................................................8

*In re Fannie Mae 2008 Sec. Litig.*,
   891 F. Supp. 2d 458 (S.D.N.Y. 2012)......................................................................................4

*Fuller v. SunTrust Banks, Inc.*,
   No. 1:11-CV-784-ODE, 2018 WL 3949698 (N.D. Ga. June 27, 2018) ...................................8

*German v. Fed. Home Loan Mort. Corp.*,
   168 F.R.D. 145 (S.D.N.Y. 1996) .......................................................................................5, 6

*J.S. v. Attica Cent. Sch.*,
   No. 00-CV-513S, 2011 WL 4498369 (W.D.N.Y. Sept. 27, 2011)...........................................4

*Jane B. by Martin v. New York City Dep't of Soc. Servs.*,
   117 F.R.D. 64 (S.D.N.Y. 1987) ..............................................................................................6

*Jones v. Ford Motor Credit Co.*,
   No. 00CIV.8330RJHKNF, 2005 WL 743213 (S.D.N.Y. Mar. 31, 2005) ...............................5

*In re Lamictal Direct Purchaser Antitrust Litig.*,
   No. 2:12-cv-995-WHW-CLW, 2018 WL 6567709 (D.N.J. Dec. 12, 2018) ...........................7

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) ...........................................................................................5

*Rocco v. Nam Tai Elecs., Inc.*,
  245 F.R.D. 131 (S.D.N.Y. 2007) ............................................................6

*Ross v. A.H. Robins Co.*,
  100 F.R.D. 5 (S.D.N.Y. 1982) ...............................................................6

*Schwab v. Philip Morris USA, Inc.*,
  449 F. Supp. 2d 992 (E.D.N.Y. 2006) ...................................................9

*Weber v. Goodman*,
  9 F. Supp. 2d 163 (E.D.N.Y. 1998) ......................................................10

*Weikel v. Tower Semiconductor, Ltd*.,
  183 F.R.D. 377 (D.N.J. 1998).................................................................10

**Other Authorities**

 United States Attorney's Office for the Southern District of New York,
  FaceBook video (April 23, 2019, 10:07am, timestamp 21:27-21:49);
  https://www.facebook.com/usaosdny/posts/ .............................................3

Gary Craig, "*Rochester Drug Cooperative Bolsters Safeguards, Hires Two Heavy
  Hitter Compliance Experts,*" Rochester Democrat and Chronicle (May 7,
  2019) ..................................................................................................3, 4

U.S. Dep't of Justice, Justice Manual, Criminal Resource Manual § 163 n.2
  (Mar. 7, 2008); https://www.justice.gov/usao-sdny/press-
  release/file/1156381/download .................................................................1

Press Release, Dep't of Justice, Drug Maker Forest Pleads Guilty; To Pay More
  Than $313 Million to Resolve Criminal Charges and False Claims Act
  Allegations (Sept. 15, 2010) .....................................................................4

Forest's motion *in limine* No. 4 regarding Rochester Drug Co-Operative, Inc. ("RDC") should be denied, primarily for the reasons anticipated in Plaintiffs' own motion *in limine* No. 11. As Plaintiffs suspected, Forest is just dying to tell the jury about RDC's recent Deferred Prosecution Agreement ("DPA") with the United States Attorney's Office, which covers conduct that began in 2012 and ended in March of 2017. But as Plaintiffs explain in their own motion *in limine* No. 11, such evidence is not proper impeachment, is irrelevant, and is substantially more prejudicial than probative, and so must be excluded.

Moreover, neither RDC's DPA, nor Plaintiffs' decision not to call a RDC witness in its case in chief, renders RDC an inadequate class representative. If every class member had to testify at trial, the purpose of a class action would be thwarted. Here, Plaintiffs chose to call a representative of JM Smith to testify, and RDC's testimony is cumulative. RDC will have a representative at trial to monitor counsel, as it previously advised Forest and the Court.

Finally, motions *in limine* are not for late challenges to Rule 23 issues. Forest admits (Defs.' Br. at 2) it has known about the allegations against RDC that led to the DPA since shortly after they were made public in April of 2018 — over a year ago — and has not raised this with the Court until now. This motion is nothing more than a trial tactic.

## I.   FACTS

On April 22, 2019, RDC entered into a deferred prosecution agreement ("DPA") with the Unites States Attorney's Office for the Southern District of New York ("USAO"). As the Court well knows, a DPA is neither a guilty plea nor a conviction, and is distinguished from a non-prosecution agreement only by the fact that the formal charges are actually filed. *See* U.S. Dep't of Justice, Justice Manual, Criminal Resource Manual § 163 n.2 (Mar. 7, 2008).

The DPA is posted on the USAO's website at https://www.justice.gov/usao-sdny/press-release/file/1156381/download, and is reproduced as Hamburger Decl. Ex. 1. Under the DPA,

RDC consented to the filing of a three-count Information charging RDC with conspiracy to distribute controlled substances outside the scope of professional practice and not for a legitimate medical purpose (21 U.S.C. § 846); conspiracy to defraud the United States (18 U.S.C. § 371); and knowingly failing to furnish suspicious order reports to the United States Drug Enforcement Administration ("DEA") (21 U.S.C. §§ 842(a)(5), (c)(2) and 18 U.S.C. § 2).  DPA ¶ 1. According to the Information submitted with the DPA, the charged conduct began in or about 2012 and ceased in or about March 2017.  DPA Ex. B ¶ 12.

Under the DPA, RDC also accepted responsibility for the actions set forth in the Statement of Facts which is part of the DPA (DPA ¶ 2 & Ex. C), and agreed to forfeit $20 million (DPA ¶ 3), cooperate fully with the government, including with investigation of former RDC employees and retail pharmacy customers (DPA ¶¶ 8-9 & Ex. G ¶ 8), and make various changes related to controlled substances compliance, including retaining an independent monitor to be selected by the USAO (DPA ¶¶ 19-29 & Exs. D & E).  A civil settlement is also included. (DPA ¶¶ 35-37 & Ex. G).

In the 51-paragraph Statement of Facts (DPA Ex. C), RDC acknowledged the truth of many facts.  In summary fashion, the essential facts are these:

- from 2012 until March 2017, RDC sold increasingly large amounts of controlled substances to pharmacy customers it knew, should have known, or willfully avoided learning were dispensing those controlled substances for illegitimate purposes;

- RDC repeatedly represented to the DEA that it had standard operating procedures for conducting due diligence before and after opening customer accounts and for reporting suspicious orders to the DEA, but did not follow those procedures;

- RDC's then-CEO, Laurence Doud, who had financial incentives to bring on new pharmacy customers, repeatedly overruled concerns and "red flags" raised by employees in RDC's compliance department and by RDC's outside compliance consultants about suspicious orders and about existing and would-be customers' purchase patterns, and instead pressured them to continue to fill orders and open customer accounts. (RDC's then-chief compliance officer, William Pietruszewski, has pled guilty. RDC's then-CEO, Mr. Doud, who was terminated, has been separately charged with a variety of offenses, has pled not guilty, and is not part of the DPA.)

The duration of RDC's DPA is five years (DPA ¶¶ 10, 12), after which the Information will be dismissed if RDC remains in compliance (DPA ¶ 13). Geoffrey Berman, the United States Attorney for this District, has explained why RDC received a DPA. *See* United States Attorney's Office for the Southern District of New York, FaceBook video (April 23, 2019, 10:07am, timestamp 21:27-21:49) ("We believed that RDC could be reformed through a kind of rigorous increase in their compliance program, through a reorganization of the Board of Directors that requires two independent directors, and through a monitor that would be placed at the company to ensure that its conduct is appropriate and meeting all of its obligations") (remarks of United States Attorney Geoffrey Berman in partial response to question about why RDC received a DPA) (available at https://www.facebook.com/usaosdny/posts/).

Since the time of the DPA, RDC has announced the appointment of two well-respected compliance experts, one of whom is an 18-year veteran of the USAO and the other of whom is a former leader at the DEA. *See* Gary Craig, "*Rochester Drug Cooperative Bolsters Safeguards, Hires Two Heavy Hitter Compliance Experts*," Rochester Democrat and Chronicle (May 7,

2019), https://www.democratandchronicle.com/story/news/2019/05/07/rdc-bolsters-safeguards-hiring-two-compliance-experts/1128009001/.

## II.    ARGUMENT

### A.    Evidence Concerning RDC's Deferred Prosecution Agreement Is Inadmissible

For the reasons set forth in Parts I, II, and III of Plaintiffs' motion *in limine* No. 11, evidence concerning RDC's DPA cannot be used by Forest at the trial of this action for any purpose.  *See also In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 471 (S.D.N.Y. 2012) (non-prosecution agreements are inadmissible).  We incorporate that discussion by reference without repeating it here.  Forest is no more permitted to air RDC's dirty laundry than Plaintiffs are with respect to Forest.  *See* Press Release, Dep't of Justice, Drug Maker Forest Pleads Guilty; To Pay More Than $313 Million to Resolve Criminal Charges and False Claims Act Allegations (Sept. 15, 2010) (describing Forest's convictions for off-label marketing and marketing an unapproved drug, which are just as inadmissible as RDC's DPA).  Forest appeals to the Constitution as justifying admissibility (Defs.' Br. at 6-7), but Forest cites nothing remotely applicable, and so there is nothing to add.

### B.    RDC's Adequacy Is Not Impacted by Its DPA

Forest argues that RDC is no longer adequate because of the DPA.  Forest's argument is both inapt and inaccurate.

It is inapt because a motion *in limine* is for ruling on trial evidence and is not a proper vehicle for challenging class certification.  *See J.S. v. Attica Cent. Sch.*, No. 00-CV-513S, 2011 WL 4498369, at *16 (W.D.N.Y. Sept. 27, 2011) ("Although Defendant's motion is entitled 'Motion in Limine to Preclude Evidence', the substance of the motion challenges the propriety of class certification on the basis that the elements of Rule 23 have not been met.  * * * These issues have been resolved earlier in this Decision and Order … as well as in this Court's previous

4

decisions. Defendant's motion is therefore denied.").  Evidence purportedly relating to class

representative adequacy is not presented to a jury, as Forest itself has conceded in (correctly) not

listing that issue in its jury instructions (ECF No. 704-2) or proposed verdict form (ECF No. 704-

1).

  Moreover, RDC's past conduct (sales of controlled substances) is not related to the

claims in this litigation (purchases of Namenda, a non-controlled substance), and so as a matter

of law the evidence relating to the DPA is irrelevant to adequacy.  *See City of Westland Police &*

*Fire Ret. Sys. v. MetLife, Inc.*, No. 12 Civ. 0256(LAK)(AJP), 2017 WL 3608298, at \*12

(S.D.N.Y. Aug. 22, 2017), *r. & r. adopted*, ECF No. 178 (S.D.N.Y. Sept. 22, 2017) (plaintiff

adequate notwithstanding consent decree resolving corruption charges and alleged ongoing

misconduct because defendant "makes no argument that the conduct giving rise to the consent

decree could become relevant to issues in *this* litigation") (emphasis in original); *Chime v. Peak*

*Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 211 (E.D.N.Y. 2015) (plaintiff adequate notwithstanding

allegations of fraud in applying for a license because the allegations "do not touch upon the

prosecution of this lawsuit"); *Jones v. Ford Motor Credit Co.*, No. 00CIV.8330RJHKNF, 2005

WL 743213, at \*19 (S.D.N.Y. Mar. 31, 2005) ("the inquiry … into the representatives' personal

qualities is not an examination into their moral righteousness, but rather an inquiry directed at

improper or questionable conduct arising out of or touching upon the very prosecution of the

lawsuit") (quotation omitted); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v.*

*LaBranche & Co.*, 229 F.R.D. 395, 416–17 (S.D.N.Y. 2004) ("the absence of any specific

connection between the types of violations claimed and the [class claims] alleged here" made

past violations irrelevant to adequacy of class representative); *German v. Fed. Home Loan Mort.*

*Corp.*, 168 F.R.D. 145, 155 (S.D.N.Y. 1996) ("most courts have rejected challenges to adequacy

based on allegations that plaintiffs' backgrounds were alleged to include 'unrelated unsavory, unethical, or even illegal conduct.' * * * [A] proposed class representative's interest may only be said to be in conflict with those of other class members where the class representative is vulnerable to unique defenses and sharp attacks *relevant to the issues in the litigation*.") (emphasis in original) (citation omitted); *Jane B. by Martin v. New York City Dep't of Soc. Servs.*, 117 F.R.D. 64, 71 (S.D.N.Y. 1987) ("[T]he courts look to personal characteristics only insofar as they touch upon the lawsuit.") (citations omitted).

Even if the relevance theory for the DPA-related evidence were reconfigured to be about RDC's "credibility," the analysis is the same.  *See German*, 168 F.R.D. at 154-55 ("Plaintiffs' testimony or credibility that is subject to attack must be 'on an issue critical to one of their … causes of action'") (quoting *Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir. 1983)); *Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 137 (S.D.N.Y. 2007) ("consideration of trustworthiness and credibility are … restricted to their relevance to issues in the litigation" such that previous conviction was "irrelevant to this securities fraud case").  *See also Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1028 (7th Cir. 2018) (under Rule 23(a)(4), "assaults on the credibility of a named plaintiff must be supported by *admissible* evidence.") (emphasis in original).

Here, Forest does not, because it cannot, draw any connection whatsoever between the conduct that resulted in the DPA (sales of controlled substances) and the issues to be tried in this case (purchases of Namenda, a non-controlled substance).  Nor does Forest cite a single case where unrelated criminal conduct sufficed to render a named plaintiff inadequate.  RDC need not show that it is "the best of all representatives," but only that it will "pursue a resolution of the controversy in the interests of the class."  *Ross v. A.H. Robins Co.*, 100 F.R.D. 5, 6 (S.D.N.Y. 1982) (quoting *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 101 (S.D.N.Y. 1981)).

It is doing so in this case, and in other cases, as a certified class representative.  *E.g.*, *In re Lamictal Direct Purchaser Antitrust Litig.*, No. 2:12-cv-995-WHW-CLW, 2018 WL 6567709, at *4 (D.N.J. Dec. 12, 2018) (RDC found adequate).  In two pending cases, RDC's adequacy was not challenged despite the DPA.  *See In re Niaspan Antitrust Litig.*, No. 2:13-md-2460, ECF No. 607 at 31-34 (E.D. Pa. Feb. 25, 2019) (making no mention of the DPA or related conduct); *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, No. 2:13-md-2445-MSG, ECF No. 513-2 at 23-24 (E.D. Pa. Feb. 1, 2019) (same).  In all of the foregoing cases, RDC has discharged, and continues to discharge, its fiduciary duties to the class, and is continuing to do so here.

### C.   RDC's Adequacy Is Not Impacted by Plaintiffs' Decision Not to Call an RDC Witness

Forest argues that Plaintiffs' decision not to call an RDC witness at trial renders RDC an inadequate class representative.  Again, Forest's argument is both inapt and inaccurate.

It is inapt because Forest already raised this issue with the Court, in February of 2018, challenging class certification and RDC's adequacy on the basis that the original pretrial order from January of 2018 lacked any RDC trial witness, and arguing that this rendered RDC inadequate.  ECF No. 514.  RDC responded that this did not affect RDC's adequacy, and that if the Court believed it did, in light of the retirement and unavailability of its former CEO, Laurence Doud, it would make its successor CEO available for deposition, and at all events would have a representative present at trial to monitor counsel.  ECF No. 523.  (Contrary to Forest's accusations that counsel lacked candor in explaining that Mr. Doud was retired and unavailable (Defs.' Br. at 2), it has been public record for over a year that RDC banished Mr. Doud from Board meetings in November of 2017, an alleged constructive termination.  *See* Compl. ¶ 57 & Ex. C, *Doud v. Rochester Drug Coop.*, No. 1:18-cv-03026, ECF No. 4-3

(S.D.N.Y. filed Apr. 5, 2018)).  With these briefs before it, the Court then certified the class in August of 2018, finding RDC adequate.  ECF No. 570.  Plaintiffs reminded Forest of this procedural history previously.  *See* Hamburger Decl. Ex. 3 (letter from Peter Kohn to Michael Hamburger).  Forest's repeatedly raising this issue in different procedural forms does not make it any more meritorious.

Moreover, as Plaintiffs previously explained, a class representative is not divested of adequacy if counsel does not place it on a trial witness list.  ECF No. 523 at 2-3 (distinguishing Forest's inapposite citations and citing *Romero v. La Revise Assocs.*, 58 F. Supp. 3d 411, 418-422 (S.D.N.Y. 2014) (class representative did not attend the mediation or any court proceedings)).  *See also Fuller v. SunTrust Banks, Inc*., No. 1:11-CV-784-ODE, 2018 WL 3949698, at *6 (N.D. Ga. June 27, 2018) (finding adequacy requirement satisfied and noting that, "[w]hile counsel could opt to have each named Plaintiff testify at trial, it does not appear that they would be strictly required to do so"); *Eisenberg v. Gagnon*, No. Civ. A. 82-5051, 1986 WL 8127, at *4 (E.D. Pa. July 16, 1986) (class representative not required to testify at trial or deposition to be adequate).

Particularly where, as here, the claims hinge on the defendants' conduct, plaintiffs' testimony is not essential.  Here, the disputed issues between the parties concern Forest's conduct in impairing generic competition, not any conduct of RDC.  In Phase I of the upcoming bifurcated trial, the common issues of law and fact that unite the class include whether Forest made a large and unjustified payment to Mylan; whether, in exchange for this reverse payment, Mylan agreed to delay its entry into the market with generic memantine IR; whether absent this pay-for-delay deal additional generic entrants would have entered, including an authorized generic; whether the Defendants' conduct increased the prices paid by direct purchasers of brand

8

and generic Namenda; and what amount in aggregate overcharges should be awarded to the direct purchaser class.  In Phase II, the common issue is whether Forest's established hard-switch product hop injured the direct purchaser class and in what aggregate amount.

At most, RDC's testimony would have addressed the fact of RDC's purchases, and the prices RDC paid.  None of these facts is disputed, particularly since brand and generic Namenda sales data produced in this case by Defendants and generic manufacturers establishes those facts beyond doubt and is independently admissible, either through the expert economists that relied on that data under Rule 703, under Rule 1006, or under Rule 803(6) or (as to Forest's data) 801(d)(2).  *See Schwab v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 992, 1109 (E.D.N.Y. 2006), *rev'd on other grounds sub nom. McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008) (rejecting challenge to adequacy of class representative where "individual claims are not based on credibility of individual smokers, but on the characteristics of a universe to be determined with the aid of experts").

Forest's newly-cited decision, a consumer fraud case, is inapposite for this very reason: the primary question at trial was whether the plaintiff purchased the product at all.  *See Bohn v. Pharmavite, LLC*, No. CV 11-10430-GHK AGRX, 2013 WL 4517895, at *2 (C.D. Cal. Aug. 7, 2013) ("The inconsistencies in Plaintiff's statements regarding her purchase—which forms the basis of this lawsuit—raise serious questions about her standing to assert the UCL and CLRA claims and her ability to prove a key element of the ICFA claim.").

Forest's other new citations on this point are equally inapposite.  None stands for the proposition that not being called to the stand at trial divests a class representative of adequacy. In one, the class representative was inadequate not because he would not testify, but because (unlike here) he would not be present to monitor counsel.  *E.g.*, *Arabian v. Sony Elecs., Inc.*, No.

9

05-CV-1741WQHNLS, 2007 WL 627977, at *6-7 (S.D. Cal. Feb. 22, 2007) (class representative inadequate because he was "in a different country for the trial's entire duration" and therefore unable to "check the discretion of trial counsel").  Another similarly found that a class representative was inadequate not based on his unwillingness to testify, but because of concern over his "ability to control class counsel."  *Weber v. Goodman*, 9 F. Supp. 2d 163, 172 (E.D.N.Y. 1998) (class representative inadequate where his counsel was "the real decision-maker").  In another, the class representative was inadequate because the entire trial schedule would have to be delayed to accommodate his attendance.  *See Weikel v. Tower Semiconductor, Ltd*., 183 F.R.D. 377 (D.N.J. 1998) (class representative inadequate because his presence "would likely subject the proceedings to delay" in that he required several weeks advance notice of trial). Forest's final citation on this point undermines its argument and, instead, supports Plaintiffs' position that they are not required to call a RDC witness in their case in chief.  *See In re Asacol Antitrust Litig.*, 15-cv-12730-DJC, ECF No. 691 (D. Mass. Jan. 11, 2018) ("The Court does not agree that the Plaintiffs must call all class representatives to maintain a showing of adequacy under Fed. R. Civ. P. 23 where the Court has found such adequacy and certified the class. Moreover, any choice by Plaintiffs not to call all the class representatives, does not, as the Defendants have suggested, lead inevitably to a viable basis for decertification.  Plaintiffs' choice not [to] call all of the class representatives also does not implicate Defendants' due process rights to defend itself against the claims asserted here.").  The court in *Asacol* only required the class representatives to be made available for live testimony if defendants chose to call them in their defense case, which would be improper as to RDC for the reasons explained in Plaintiffs' motion *in limine* No. 11 (and because Forest never listed any RDC witness on its Rule 26(a)(1)(A) disclosures).

Ultimately, Plaintiffs have chosen to have a representative of JM Smith testify, and have listed that individual, Mr. Benton, on their witness list.  This would make RDC's testimony cumulative.  However, the caveat Plaintiffs previously offered in ECF No. 523 still applies:  if the Court will require an RDC witness to testify, RDC will revise its Rule 26(a)(1)(A) disclosure and amend its witness list to include such a witness.  Plaintiffs would further agree that the prior Rule 30(b)(6) deposition transcript of RDC's then-designee Mr. Doud could be used to impeach the trial witness, since that transcript is, after all, RDC's own binding testimony.  But given the obvious, admitted but impermissible reason why Forest wants an RDC witness on the stand in the first place (to impeach him or her using the DPA), and the uncontested fact of RDC's purchases, it should be sufficient to have an RDC representative in the courtroom monitoring counsel during trial.

## III.   CONCLUSION

Forest's motion *in limine* No. 4 should be denied.


Dated: June 14, 2019                    Respectfully Submitted:


David F. Sorensen                       /s/ *Dan Litvin*
Ellen T. Noteware                        Bruce E. Gerstein
Daniel C. Simons                         Joseph Opper
Nick Urban                               Kimberly M. Hennings
Berger Montague PC                       Dan Litvin
1818 Market Street – Suite 3600          Garwin Gerstein & Fisher LLP
Philadelphia, PA 19103                   88 Pine Street, 10th Floor
(215) 875-3000                           New York, NY 10005
(215) 875-4604 (fax)                     Tel: (212) 398-0055
dsorensen@bm.net                         Fax: (212) 764-6620
enoteware@bm.net                         bgerstein@garwingerstein.com
dsimons@bm.net                           jopper@garwingerstein.com
nurban@bm.net                            khennings@garwingerstein.com
                                         dlitvin@garwingerstein.com

11

Peter Kohn
Joseph T. Lukens
Faruqi & Faruqi, LLP
1617 John F Kennedy Blvd., Suite 1550
Philadelphia, PA 19103
(215) 277-5770
(215) 277-5771 (fax)
pkohn@faruqilaw.com
jlukens@faruqilaw.com

David C. Raphael, Jr.
Erin R. Leger
Smith Segura & Raphael, LLP
3600 Jackson Street, Suite 111
Alexandria, LA 71303
Tel: (318) 445-4480
Fax: (318) 487-1741
draphael@ssrllp.com
eleger@ssrllp.com

Stuart E. Des Roches
Andrew W. Kelly
Odom & Des Roches, LLC
650 Poydras Street, Suite 2020
New Orleans, LA 70130
Tel: (504) 522-0077
Fax: (504) 522-0078
stuart@odrlaw.com
akelly@odrlaw.com

Russ Chorush
Heim Payne & Chorush, LLP
1111 Bagby, Suite 2100
Houston, TX 77002
Tel: (713) 221-2000
Fax: (713) 221-2021
rchorush@hpcllp.com

*Counsel for the Direct Purchaser Class Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 14, 2019, I electronically filed the above by CM/ECF system.


Respectfully submitted,

/s/ *Dan Litvin*
Dan Litvin