UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE NAMENDA DIRECT PURCHASER ANTITRUST LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br>All Direct Purchaser Actions | **Case No. 1:15-cv-07488-CM-RWL** |

**PLAINTIFFS' OPPOSITION TO FOREST'S MOTION *IN LIMINE* NO. 11 TO PRECLUDE PLAINTIFFS FROM CONTRADICTING THEIR JUDICIAL ADMISSION THAT MEMANTINE IS AN NMDA ANTAGONIST**

**TABLE OF CONTENTS**

I. LEGAL STANDARD FOR JUDICIAL ESTOPPEL ......................................................... 3

II. ARGUMENT ..................................................................................................................... 4

    A. Forest Does Not Satisfy the Required Elements of Equitable Estoppel ................. 4

        1. The Challenged Statements Are Perfectly Consistent ....................................... 4

        2. This Court Never Adopted the Challenged Statement ...................................... 8

        3. Plaintiffs Have Not Derived Any "Unfair Advantage" ................................... 10

        4. There Is No Risk to "Judicial Integrity" .......................................................... 10

    B. Forest's Motion Is an Untimely and Thinly-Disguised Daubert Motion .............. 11

III. CONCLUSION ................................................................................................................ 11

# **TABLE OF AUTHORITIES**

**Cases**

*Adelphia Recovery Tr. v. Goldman, Sachs & Co.*,
  748 F.3d 110 (2d Cir. 2014) ................................................................................................ 11

*Advanced Video Techs. LLC v. HTC Corp.*,
  Civ. No. 11-cv-6604, 2013 WL 6017923 (S.D.N.Y. Nov. 7, 2013) ............................... 3, 4, 10

*Ashmore v. CGI Grp., Inc.*,
  923 F.3d 260 (2d Cir. 2019) .................................................................................................. 4

*AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc.*,
  84 F.3d 622 (2d Cir. 1996) .................................................................................................... 4

*Baker-Rhett v. Aspiro AB*,
  324 F. Supp. 3d 407 (S.D.N.Y. 2018) .................................................................................... 9

*Clark v. AII Acquisition, LLC*,
  886 F.3d 261 (2d Cir. 201 ............................................................................................... 3, 10

*DeRosa v. Nat'l Envelope Corp.*,
  595 F.3d 99 (2d Cir. 2010) .................................................................................................... 3

*Hart v. BHH, LLC*,
  Civ. No. 15-cv-4804, 2019 WL 1494027 (S.D.N.Y. Apr. 4, 2019) ...................................... 11

*In re Adelphia Recovery Trust*,
  634 F.3d 678 (2d Cir. 2011) .................................................................................... 3, 9, 10, 11

*In re Namenda Direct Purchaser Antitrust Litig.*,
  No. 15 Civ. 7488 (CM), 2017 WL 4358244 (S.D.N.Y. May 23, 2017) ....................... 2, 9, 10

*Mitchell v. Washingtonville Cent. Sch. Dist.*,
  190 F.3d 1 (2d Cir. 1999) ...................................................................................................... 4

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ..................................................................................................... 3, 5, 6

*New York ex. rel. Schneiderman v. Actavis PLC*,
  787 F.3d 638 (2d Cir. 2015) .................................................................................................. 2

*New York v. Actavis, PLC*,
  No. 14 CIV. 7473, 2014 WL 7015198 (S.D.N.Y. Dec. 11, 2014) ......................................... 2

*Republic of Ecuador v. Chevron Corp*,
    638 F.3d 384 (2d Cir. 2011)......................................................................................................... 3

*Rodal v. Anesthesia Grp. of Onondaga, P.C.*,
    369 F.3d 113 (2d Cir. 2004)..................................................................................................... 6, 8

*Simon v. Safelite Glass Corp.*,
    128 F.3d 68 (2d Cir. 1997)........................................................................................................... 4

*Siuzdak v. Sessions*,
    295 F. Supp. 3d 77 (D. Conn. 2018)............................................................................................ 5

*United States v. Apple, Inc.*,
    791 F.3d 290 (2d Cir. 2015)......................................................................................................... 4

*United States v. Teva Pharm. USA, Inc.*,
    Civ. No. 13-cv-3702, 2019 WL 1245656 (S.D.N.Y. Feb. 27, 2019)....................................... 11

*Wight v. BankAmerica Corp*,
    219 F.3d 7989 (2d Cir. 2000)..................................................................................................... 10

Plaintiffs respectfully request that this Court deny Forest's Motion *in Limine* No. 11 (ECF No. 784), which seeks to judicially estop Plaintiffs and preclude their expert, Dr. Nathan Herrmann, from testifying that memantine does "not provide therapeutic effects to Alzheimer's disease patients by antagonizing NMDA receptors." Defs.' Br. at 2 (ECF No. 785). Judicial estoppel is wholly inapplicable here, as Dr. Herrmann's challenged opinion is not inconsistent at all (much less "clearly inconsistent") with any of Plaintiffs' prior representations, much less any relied on or adopted by the Court. The crux of Forest's motion is a prior statement by Plaintiffs simply describing Namenda's classification as an "NMDA antagonist." NMDA receptor antagonists are a class of Alzheimer's treatments, and Plaintiffs have consistently acknowledged that memantine, the active ingredient in Namenda, is in that drug class. Forest says that means Plaintiffs also have taken the position that the mechanism of action for Namenda is by antagonizing (*i.e.*, by blocking or dampening) NMDA receptors. The argument is groundless. Even Forest's own labeling recognizes that although memantine "is" an NMDA receptor antagonist, its actual *mechanism of action* in Alzheimer's disease is at most a "hypothesi[s]" or "postulate" (that is, an unproven assumption).

Plaintiffs maintain (as Mylan did before us) that while *high* doses of memantine can antagonize NMDA receptors – thereby justifying its inclusion in that drug class – the relevant dose here (*i.e.*, 20 mg per day) is too low to actually antagonize NMDA receptors (as required by the patent claims). Accordingly, while Dr. Herrmann agrees that memantine is an NMDA receptor antagonist, he disputes that Mylan's product operates by that mechanism of action. There is nothing remotely inconsistent about these opinions. Indeed, Forest's own labeling comports with the very distinction that Dr. Herrmann draws. In short, Plaintiffs have consistently maintained (as did Mylan in the patent litigation) that Namenda's true mechanism of

1

action is not NMDA receptor antagonism *despite* being properly classified as an NMDA receptor antagonist. Forest's attempt to leverage Plaintiffs' correct use of nomenclature into an estoppel is baseless.

Furthermore, judicial estoppel cannot apply because the Court never relied on or adopted Plaintiffs' prior statement that Namenda is an NMDA receptor antagonist by way of ruling or otherwise. This Court granted collateral estoppel based upon Judge Sweet's adjudication of the relevant market in the New York Attorney General ("NYAG") action, and the subsequent failure of Forest to contest that finding on appeal to the Second Circuit. "On appeal, Forest did not dispute that it possessed monopoly power over the U.S. memantine drug market until the expiration of the '703 Patent on July 11, 2015." *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 CIV. 7488 (CM), 2017 WL 4358244, at *10 (S.D.N.Y. May 23, 2017) ("*Namenda IV*") (citing *New York ex. rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 651-52 (2d Cir. 2015)). Namenda's true mechanism of action, the subject of Dr. Herrmann's challenged opinion, was legally irrelevant to the question of market power decided in the NYAG action. All that mattered regarding Forest's monopoly power was that (1) physicians and Forest did not treat memantine as a substitute for other drugs used to treat Alzheimer's disease (such as cholinesterase inhibitors), and (2) economic analysis revealed that Namenda exhibited low cross-price elasticity of demand with other candidate drugs. *See New York v. Actavis, PLC*, No. 14 CIV. 7473, 2014 WL 7015198, at *14-16 (S.D.N.Y. Dec. 11, 2014) ("*Namenda I*") (findings of fact 56-68); *id.* at *34-37 (conclusions of law on relevant market and monopoly power). Forest's argument that Plaintiffs prevailed on some issue that justifies judicial estoppel is equally baseless.

Finally, Forest's motion is a thinly-veiled *Daubert* motion that was not timely filed. The motion should be denied.

## I. LEGAL STANDARD FOR JUDICIAL ESTOPPEL

Conspicuously absent from Forest's brief is any recitation, or even acknowledgement, of the legal elements of judicial estoppel. As this Court has recognized, the Second Circuit considers four elements before applying judicial estoppel:

> "Typically, judicial estoppel will apply if: (1) a party's later position is 'clearly inconsistent' with its earlier position; (2) the party's former position has been adopted in some way by the court in the earlier proceeding; and (3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001)). "In this circuit, moreover, we further limit judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain." *In re Adelphia Recovery Trust*, 634 F.3d 678, 696 (2d Cir. 2011) (internal quotation marks omitted).

*Advanced Video Techs. LLC v. HTC Corp.*, Civ. No. 11-cv-6604, 2013 WL 6017923, at *8 (S.D.N.Y. Nov. 7, 2013) (McMahon, J.).

The first two elements of judicial estoppel are "prerequisite elements." *Clark v. AII Acquisition, LLC*, 886 F.3d 261, 266 (2d Cir. 2018). But while they are "*necessary* conditions for judicial estoppel to be imposed, [] they are not *sufficient* ones." *Id.* (emphasis in original). Instead, even when the first two elements are met, the third element requires a court to "inquire into whether the particular factual circumstances of a case 'tip the balance of equities in favor' of doing so." *Id.* at 266-67. This inquiry "begins by asking whether the prior inconsistent position in question gave the party to be estopped an 'unfair advantage' over the party seeking estoppel." *Id.* Finally, the fourth element – certainty of impact on judicial integrity – is required. *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 397 (2d Cir. 2011) ("[R]elief [under the doctrine of judicial estoppel] is granted in the Second Circuit ***only*** when the risk of inconsistent results with

3

its impact on judicial integrity is certain.") (emphasis added and internal quotation marks omitted).

## II.     ARGUMENT

### A.     Forest Does Not Satisfy the Required Elements of Equitable Estoppel

As the "party invoking judicial estoppel," Forest bears the burden of proving its applicability. *AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc.*, 84 F.3d 622, 628 (2d Cir. 1996); *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999).  Because Forest failed even to acknowledge, much less address, each of the required elements of judicial estoppel, its motion fails as a matter of law.  In fact, Forest meets none of them.

#### 1.     The Challenged Statements Are Perfectly Consistent

To satisfy the first element of judicial estoppel – *i.e.*, "clearly inconsistent" statements – Forest must meet a very high burden.  It is not enough that the two challenged statements are in tension with one another; instead, there must be a "true inconsistency." *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72-73 (2d Cir. 1997).  Even when the statements are "facially inconsistent," a court must "carefully consider the contexts in which apparently contradictory statements are made to determine if there is, in fact, ***direct and irreconcilable contradiction***." *United States v. Apple, Inc.*, 791 F.3d 290, 337 (2d Cir. 2015) (emphasis added); *see also Advanced Video Techs.*, 2013 WL 6017923, at *9 (rejecting the application of judicial estoppel, in part because the earlier remark was taken "out of context" and thus the earlier and later arguments were not "clearly inconsistent"). "If the statements can be reconciled there is no occasion to apply an estoppel." *Ashmore v. CGI Grp., Inc.*, 923 F.3d 260, 272 (2d Cir. 2019).

Here, the challenged statements are perfectly consistent with one another, not "diametrically opposed" as Forest contends.  Defs.' Br. at 2.  Forest's argument is premised on an alleged inconsistency between (1) Plaintiffs' correct use of nomenclature accurately

4

describing the classification of memantine as an NMDA-receptor antagonist; and (2) Dr. Herrmann's later expert opinion that memantine does "not provide therapeutic effects to Alzheimer's disease patients by antagonizing NMDA receptors" ("the Two Statements").

But there is no inconsistency. Forest's own labeling for Namenda says that memantine "is" an "NMDA receptor antagonist," yet recognizes that its proposed mechanism of action in Alzheimer's disease (*i.e.*, antagonizing NMDA receptors) is only a "hypothesi[s]" or "postulate":

> ***NAMENDA (memantine hydrochloride) is an orally active NMDA receptor antagonist***. . . . Persistent activation of central nervous system N-methyl-D-aspartate (NMDA) receptors by the excitatory amino acid glutamate has been ***hypothesized*** to contribute to the symptomatology of Alzheimer's disease. Memantine is ***postulated*** to exert its therapeutic effect through its action as a low to moderate affinity uncompetitive (open-channel) NMDA receptor antagonist which binds preferentially to the NMDA receptor-operated cation channels. There is no evidence that memantine prevents or slows neurodegeneration in patients with Alzheimer's disease.

Declaration of Joseph Opper ("Opper Decl.") Ex. 26 (DTX-133, Namenda IR Label) at 7 (emphasis added). If the mere fact that memantine is classified as an NMDA-receptor antagonist compelled the conclusion that its mechanism of action in Alzheimer's disease was, in fact, NMDA-receptor antagonism – as Forest's brief falsely argues – then Forest's own Namenda label would be inaccurate and at war with itself. The implicit recognition in the Namenda label – *i.e.*, that while memantine "is" an "NMDA receptor antagonist," it might nevertheless achieve its effects in Alzheimer's disease through a different mechanism of action – precludes even the possibility of judicial estoppel because it demonstrates that the Two Statements can "exist simultaneously." *Siuzdak v. Sessions*, 295 F. Supp. 3d 77, 112 (D. Conn. 2018) ("Because Mr. Siuzdak's two reasons can, as a factual matter, exist simultaneously, there is no 'clearly inconsistent' position being made here and little to no risk of inconsistent court determinations.") (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)). Thus, the Two Statements cannot

possibly be in "irreconcilable direct conflict." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 119-120 (2d Cir. 2004).

Plaintiffs are thus not seeking in any way to "chang[e] positions" from their earlier statements. *New Hampshire*, 532 U.S. at 749-50. Plaintiffs have simply (and accurately) identified Namenda as a "member of the class of NMDA receptor antagonists." ECF No. 499 ¶ 4. And, Plaintiffs readily "Admitted" Forest's Rule 56.1 statement that "Memantine, 'an N-methyl D-aspartate (NMDA) antagonist, is prescribed to treat moderate to severe Alzheimer's disease.'" ECF No. 500 ¶ 42. Likewise, Plaintiffs' expert Dr. Herrmann has never refuted that memantine is classified as an NMDA-receptor antagonist. *See* Opper Decl. Ex. 27 (Herrmann Opening Rpt.) at ¶¶ 45-46 ("It has long been understood that NMDA receptor antagonists cause memory dysfunction. Memantine is no exception . . . memantine appears typical of the other drugs *in this class* because it causes memory dysfunction at lower doses than are required to achieve neuroprotection.") (emphasis added). Dr. Herrmann testified to the same effect at his deposition, carefully maintaining the distinction that Forest seeks to blur, that the classification of memantine and its mechanism of action are two different things. *See* Lancaster Decl. Ex. 2 (Herrmann Dep.) at 73:21-25 ("[T]he fact that it is a member of the drug class called NMDA receptor antagonist does not, neither here or anywhere else, imply that that's how it's achieving its therapeutic benefit in Alzheimer's disease patients."). *See also* Opper Decl. Ex. 28 (Herrmann Dep.) at 77:5-10, 79:5-18, 95:8-15, 147:23-148:8.

Rather, what Plaintiffs have said (as Mylan did before us in the patent litigation) is that, despite being classified as an NMDA receptor antagonist, Mylan's generic memantine did not work through that mechanism of action, because the dosage was too low to actually antagonize NMDA receptors. As Dr. Herrmann stated in his report, "it is very unlikely that memantine is

6

acting as an NMDA antagonist at the maximum proposed oral dose of 20 mg a day." Opper Decl. Ex. 27 (Herrmann Opening Rpt.) at ¶ 46. And, when Forest's experts attempted to mischaracterize his opinions, Dr. Herrmann specifically reiterated the distinction between memantine's classification and true mechanism of action in his reply report:

> ***Dr. Farlow cites evidence that memantine is an NMDA receptor antagonist. But as I explained in my opening report, there is no dispute that, at high doses, memantine can antagonize NMDA receptors.*** What is in dispute (among other things) is whether memantine achieves its therapeutic effects by NMDA receptor antagonism at the doses reflected in Mylan's package insert.

Opper Decl. Ex. 29 (Herrmann Reply Report) at ¶¶ 4-5 (emphasis added). *See also* Opper Decl. Ex. 28 (Herrmann Dep.) at 95:8-15 ("I'm not arguing that [memantine] is not a member of the NMDA receptor class of drugs. I am not arguing that it does not have NMDA receptor antagonism. But at therapeutic doses in Alzheimer's disease patients, there is no evidence that it's acting as an NMDA receptor antagonist.").

> Plaintiffs carefully maintained this distinction on summary judgment as well:
>
> Although memantine hydrochloride is a member of the class of NMDA receptor antagonists and antagonizes NMDA receptors at high enough doses (*see infra*), the mechanism of action of memantine hydrochloride at the doses used for the treatment of Alzheimer's disease is a disputed issue in this case. ***Accordingly, references to memantine being a member of the class of NMDA receptor antagonists are not intended to reflect any agreement by Plaintiffs that memantine hydrochloride acts in that manner at the relevant doses in the treatment of Alzheimer's disease.***

ECF No. 499 at 4 n.1 (emphasis added).

In short, Forest's argument that Plaintiffs have taken "diametrically opposed" positions is erroneous. Forest's own lead scientist, Dr. Banerjee, has admitted that Forest did not even conduct studies to establish the mechanism of action of memantine:

> Q. Did you ever conduct any tests aimed at determining or verifying the mechanism of action of memantine?

7

\* \* \* \*

A.   No, we didn't.

Opper Decl. Ex. 30 (Banerjee Deposition) at 21:23-22:17. Further, he (along with two other Forest scientists) have specifically acknowledged that memantine's therapeutic effects might be achieved through means other than NMDA receptors. *See* Opper Decl. Ex. 31 (PX-436) at 928-69.

Respected scientists have concluded – just as Plaintiffs assert here – that although classified as an NMDA-receptor antagonist, memantine at the 20 mg/day dose is insufficient to antagonize NMDA receptors. *See*, *e.g.*, Opper Decl. Ex. 32 (PX-433) at 3931 ("if our interpretation is correct, it is untenable to maintain that memantine arrests neurodegeneration in AD, or has any other beneficial effect in AD, by blocking NMDA receptors."); Opper Decl. Ex. 33 (PX-434) at 320 ("We present results that challenge the assumption that memantine's partially beneficial action in AD patients is due to its action as an NMDA antagonists. . . . [W]e propose that memantine's cholinergic stimulation rather than NMDA antagonism is the basis for its beneficial albeit transient, actions in the treatment of AD.").

Forest also cites to witness testimony from the NYAG action. Defs.' Br. at 4. The cited testimony, however, stands for the simple proposition – already addressed – that memantine is classified as an NMDA receptor antagonist, or at least is perceived as such by consumers. No dispute exists on that score, and so there is no "irreconcilable direct conflict." *Rodal*, 369 F.3d at 119.

### 2.   This Court Never Adopted the Challenged Statement

Forest further misdirects the Court in claiming that the Court somehow adopted Plaintiffs' statement that memantine is an NMDA receptor antagonist. This Court never even addressed, much less adopted, Plaintiffs' statement that memantine is an NMDA receptor

8

antagonist. *In re Adelphia Recovery Tr.*, 634 F.3d at 696 ("[J]udicial estoppel may only apply where the earlier tribunal accepted the accuracy of the litigant's statements."); *Baker-Rhett v. Aspiro AB*, 324 F. Supp. 3d 407, 418 (S.D.N.Y. 2018) ("Judicial estoppel does not apply here because the Court did not adopt the argument advanced by Aspiro in its motion to dismiss the first amended complaint.").

What was material for relevant market purposes was not the actual mechanism of action for Namenda, but that doctors and Forest perceived it to be non-substitutable with other Alzheimer's treatments, and economic analysis revealed it to have low cross-price elasticity of demand with such other treatments. *See Namenda I*, 2014 WL 7015198, at *14-15, *16 (in Findings of Fact 56-62 and 68, finding that medical practice establishes that memantine is not a substitute for cholinesterase inhibitor ("CI") drugs, because Namenda is prescribed and FDA-indicated for moderate disease, and CIs for mild disease, because doctors do not consider Namenda and CIs substitutes, and because not even Forest considered Namenda and CIs substitutes); *id.* at *15-16 (in Findings of Fact 63-67, finding that economic analysis shows that Namenda does not exhibit the requisite cross-price elasticity of demand with CIs to permit them to inhabit the same relevant product market); *id.* at *35 ("Industry categorizations of memantine and CIs as part of the 'Alzheimers' Drug Market' or an 'anti-dementia' category do not alter the observable behavior of patients and physicians, as reflected in the cross elasticity of demand analyses summarized above."). Judge Sweet made no determination of the actual mechanism of action for Namenda material to his relevant market and market power findings.

This Court, too, made no determination of the actual mechanism of action for Namenda, but rather focused on the fact that the market power question was "actually decided in the first

9

litigation" and found Forest estopped from challenging it here. *Namenda IV*, 2017 WL 4358244, at *10 (citing *Namenda I*, 2014 WL 7015198, at *35).

The briefing on Plaintiffs' prior collateral estoppel motion – and this Court's ruling – make clear that the Court did not adopt (or have any occasion to adopt) any statement by Plaintiffs that the method of action in Namenda is, in fact, NMDA receptor antagonism.

### 3. Plaintiffs Have Not Derived Any "Unfair Advantage"

Even if the first two prerequisites for judicial estoppel were satisfied – and for the foregoing reasons, they clearly are not – they would not be "sufficient" to apply the doctrine. *Clark*, 886 F.3d at 266. Instead, this Court would next need to "inquire into whether the particular factual circumstances of a case 'tip the balance of equities in favor' of doing so." *Id.* at 266-67. This inquiry "begins by asking whether the prior inconsistent position in question gave the party to be estopped an 'unfair advantage' over the party seeking estoppel." *Id.* Forest does not, because it cannot, show that this element has been satisfied. *See Advanced Video Techs.*, 2013 WL 6017923, at *9 (rejecting a request for judicial estoppel, in part because "Defendants have also failed to show any unfair advantage"); *Wight v. BankAmerica Corp.*, 219 F.3d 79, 89 (2d Cir. 2000) ("Judicial estoppel is designed to prevent a party who plays fast and loose with the courts from gaining unfair advantage through the deliberate adoption of inconsistent positions in successive suits."); *In re Adelphia Recovery Tr.*, 634 F.3d at 698-99 ("[A]lthough a court is unlikely to be asked to apply judicial estoppel when no party has been prejudiced, it is unfair *advantage* to the potentially prejudiced party's adversary that is the touchstone of the doctrine.") (emphasis in original).

### 4. There Is No Risk to "Judicial Integrity"

Forest's motion also fails even to acknowledge, much less tries to satisfy, the Second Circuit's additional limitation on judicial estoppel that "relief is granted ***only*** when the risk of

10


inconsistent results with its impact on judicial integrity is certain." *Adelphia Recovery Tr. v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014) (internal quotation marks omitted) (emphasis added). A party "puts the integrity of the judicial process at risk" when it "knowingly lies" or "takes a position in the short term knowing that it may be on the verge of taking an inconsistent future action." *In re Adelphia Recovery Tr.*, 634 F.3d at 696. In light of the actual record here, there is no risk to the integrity of the judicial process here, much less certainty. For that reason alone Forest's motion must be denied.

### B. Forest's Motion Is an Untimely and Thinly-Disguised Daubert Motion

Under the Third Amended Case Management Order, *Daubert* challenges to expert testimony were due on November 17, 2017. ECF No. 397 at 2. In substance, Forest's present motion argues that Dr. Herrmann's opinions do not "fit the facts" of this case under *Daubert* because Plaintiffs are purportedly estopped from advancing the facts on which Dr. Herrmann relies. Accordingly, Forest's motion is untimely, and should be denied for that independent reason. *Hart v. BHH, LLC*, Civ. No. 15-cv-4804, 2019 WL 1494027, at *1 (S.D.N.Y. Apr. 4, 2019) ("But these are classic *Daubert* questions which could have been raised in the first *Daubert* motion. Accordingly, this Court construes Defendants' second motion in limine as an untimely *Daubert* motion in violation of this Court's scheduling order or as an untimely motion for reconsideration.") As this Court has explained:

> As far as this court is concerned, the Parties have waived any *Daubert* arguments by not raising them at summary judgment. ***If I can consider an expert's [testimony] at summary judgment, a jury can consider it at trial***.

*United States v. Teva Pharm. USA, Inc.*, Civ. No. 13-cv-3702, 2019 WL 1245656, at *12 (S.D.N.Y. Feb. 27, 2019) (McMahon, J.) (emphasis added).

### III. CONCLUSION

For these reasons, Forest's Motion *in Limine* No. 11 should be denied.

11

| | |
|---|---|
| Dated: June 14, 2019 | Respectfully Submitted: |
| David F. Sorensen<br>Ellen T. Noteware<br>Daniel C. Simons<br>Nick Urban<br>Berger Montague PC<br>1818 Market Street – Suite 3600<br>Philadelphia, PA 19103<br>(215) 875-3000<br>(215) 875-4604 (fax)<br>dsorensen@bm.net<br>enoteware@bm.net<br>dsimons@bm.net<br>nurban@bm.net | /s/ *Dan Litvin*<br>Bruce E. Gerstein<br>Joseph Opper<br>Kimberly M. Hennings<br>Dan Litvin<br>Garwin Gerstein & Fisher LLP<br>88 Pine Street, 10th Floor<br>New York, NY 10005<br>Tel: (212) 398-0055<br>Fax: (212) 764-6620<br>bgerstein@garwingerstein.com<br>jopper@garwingerstein.com<br>khennings@garwingerstein.com<br>dlitvin@garwingerstein.com |
| Peter Kohn<br>Joseph T. Lukens<br>Faruqi & Faruqi, LLP<br>1617 John F Kennedy Blvd., Suite 1550<br>Philadelphia, PA 19103<br>(215) 277-5770<br>(215) 277-5771 (fax)<br>pkohn@faruqilaw.com<br>jlukens@faruqilaw.com | David C. Raphael, Jr.<br>Erin R. Leger<br>Smith Segura & Raphael, LLP<br>3600 Jackson Street, Suite 111<br>Alexandria, LA 71303<br>Tel: (318) 445-4480<br>Fax: (318) 487-1741<br>draphael@ssrllp.com<br>eleger@ssrllp.com |
| | Stuart E. Des Roches<br>Andrew W. Kelly<br>Odom & Des Roches, LLC<br>650 Poydras Street, Suite 2020<br>New Orleans, LA 70130<br>Tel: (504) 522-0077<br>Fax: (504) 522-0078<br>stuart@odrlaw.com<br>akelly@odrlaw.com |
| | Russ Chorush<br>Heim Payne & Chorush, LLP<br>1111 Bagby, Suite 2100<br>Houston, TX 77002<br>Tel: (713) 221-2000<br>Fax: (713) 221-2021<br>rchorush@hpcllp.com |

*Counsel for the Direct Purchaser Class Plaintiffs*

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 14, 2019, I electronically filed the above by CM/ECF system.

                                        Respectfully submitted,

                                        /s/ *Dan Litvin*
                                        Dan Litvin