**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE NAMENDA DIRECT PURCHASER ANTITRUST LITIGATION** <br><br> **THIS DOCUMENT RELATES TO:** <br> **All Direct Purchaser Actions** | **Case No. 1:15-cv-07488-CM-RWL** |

**PLAINTIFFS' OPPOSITION TO**
**DEFENDANTS' MOTION *IN LIMINE* NO. 16 TO PREVENT IMPROPER USE OF**
**THE COURT'S COLLATERAL ESTOPPEL ORDER**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

I.    INTRODUCTION ............................................................................................. 1

II.   ARGUMENT ..................................................................................................... 2

    A.    FOREST'S MOTION *IN LIMINE* IS AN IMPROPER ATTEMPT TO
        RECONSIDER THE COLLATERAL ESTOPPEL ORDER AND ESCAPE
        THIS COURT'S PRIOR FINDINGS ................................................................. 2

    B.    JURY INSTRUCTIONS – TO BE DELIVERED BY THE COURT –
        WOULD CORRECTLY INFORM THE JURY OF ISSUES PREVIOUSLY
        DECIDED ......................................................................................................... 3

    C.    FOREST'S REQUEST TO EXCLUDE EVIDENCE ON PRE AND POST
        FEBRUARY 14, 2014 WITHDRAWAL CONDUCT SHOULD BE
        DENIED ........................................................................................................... 7

        1.    The general categories of evidence that Forest seeks to exclude are
            relevant ................................................................................................ 8

            a.    Evidence related to Forest's "planned implementation of its
                hard switch" is relevant to frame the context of its impact ............ 9

            b.    Evidence of the "rationale for choosing a hard-switch
                strategy" and "dissatisfaction with its soft-switch conversion"
                is relevant to show the reasonable expectations from a soft
                switch alone. ................................................................................. 11

            c.    Evidence of the "timing" of the hard switch decision is
                 relevant to show that the decision affected formulary changes. ... 12

            d.    Evidence of "various 'soft switch' marketing efforts Forest
                considered or employed" will show Forest considered its soft
                switch efforts in forecasting a 30% soft switch share .................. 13

        2.    The specific testimony Forest seeks to exclude is relevant to show the
            impact of withdrawal statements on physicians' prescribing habits ......... 15

    D.    FOREST SUFFERS NO UNFAIR PREJUDICE FROM BEING
        PRECLUDED FROM RELITIGATING ITS PROCOMPETITIVE
        JUSTIFICATIONS ......................................................................................... 16

    E.    THE COLLATERAL ESTOPPEL ORDER IS ADMISSIBLE AND
        PLAINTIFFS' EXPERTS CAN REFER TO IT WHILE TESTIFYING ............ 17

    F.    PLAINTIFFS AGREE THAT THE COURT CAN EXCLUDE
        REFERENCES TO THE LIMITED DISTRIBUTION BY MAIL ORDER
        BY BOTH PARTIES ...................................................................................... 18

III.  CONCLUSION ................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**                                                                                         **Page(s)**

*In re Actos End-Payor Antitrust Litig.*,
   848 F.3d 89 (2d Cir. 2017)...................................................................................................5, 6

*Allen v. McCurry*,
   449 U.S. 90 (1980)..............................................................................................................6

*Bradburn Parent Teacher Store, Inc. v. 3M*,
   No. CIV.A. 02-7676, 2005 U.S. Dist. LEXIS 5313 (E.D. Pa. Mar. 30, 2005)........................3

*Chicago Bd. of Trade v. United States*,
   246 U.S. 231 (1918)............................................................................................................6

*D'Agostino v. Hous. Auth.*,
   No. 3:05-cv-01057, 2007 U.S. Dist. LEXIS 5965 (D. Conn. Jan. 29, 2007) ...........................9

*Federal Trade Comm'n v. Qualcomm Inc.*,
   No. 17-CV-002200-LHK, 2019 U.S. Dist. LEXIS 86219 (N.D. Cal. May 21,
   2019) ...................................................................................................................................6

*Gorbea v. Verizon N.Y., Inc.*,
   No. 11-CV-3758, 2014 U.S. Dist. LEXIS 87295 (E.D.N.Y. Aug. 2, 2011)...........................9

*Inventio AG v. Otis Elevator Co.*,
   No. 06-Civ.-5377(CM), 2011 U.S. Dist. LEXIS 88965 (S.D.N.Y. June 22,
   2011) .............................................................................................................................3, 4, 7

*Jones v. N.Y. City Health & Hosp. Corp.*,
   No. 00 Civ. 7002, 2003 U.S. Dist. LEXIS 9014 (S.D.N.Y. May 29, 2003)...........................9

*McWane, Inc. v. Federal Trade Comm'n*,
   784 F.3d 814 (11th Cir. 2015) ............................................................................................6

*MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*,
   232 F. Supp. 3d 558 (S.D.N.Y. 2017)..................................................................................3

*In re Namenda Direct Purchaser Antitrust Litig.*,
   331 F. Supp. 3d 152 (S.D.N.Y. 2018).......................................................................... *passim*

*In re Namenda Direct Purchaser Antitrust Litig.*,
   No. 15-cv-7488 (CM), 2017 U.S. Dist. LEXIS 83446 (S.D.N.Y. May 23,
   2017) ............................................................................................................................ *passim*

*New York v. Actavis, PLC*,
   No. 14 CIV. 7473, 2014 U.S. Dist. LEXIS 172918 (S.D.N.Y. Dec. 11, 2014)..................7, 17

*Nichol v. City of Springfield*,
   No. 6:14-CV-01983-AA, 2017 U.S. Dist. LEXIS 199467 (D. Or. Dec. 3,
   2017) ........................................................................................................................3

*Palmieri v. Defaria*,
   88 F.3d 136 (2d Cir. 1996)......................................................................................3

*Rekhi v. Wildwood Indus., Inc.*,
   61 F.3d 1313 (7th Cir. 1995) ..................................................................................7

*New York ex rel. Schneiderman v. Actavis PLC*,
   787 F.3d 638 (2d Cir. 2015)...................................................................................17

*U.S. Football League v. Nat'l Football League*,
   842 F.2d 1335 (2d Cir. 1988)..................................................................................6

## I.     INTRODUCTION

Forest's Motion *in Limine* No. 16 to Prevent Improper Use of the Court's Collateral Estoppel Order (ECF No. 800) should be denied.  It is an obvious effort to improperly limit this Court's May 23, 2017 collateral estoppel order (*In re Namenda Direct Purchaser Antitrust Litig.*, No. 15-cv-7488 (CM), 2017 U.S. Dist. LEXIS 83466 (S.D.N.Y. May 23, 2017) ("*Namenda IV*")) and to avoid the binding factual findings made against Forest in the New York Attorney General ("NYAG") action.  In its decision on collateral estoppel, this Court held that Forest is precluded from relitigating whether its withdrawal statements concerning Namenda IR (the "hard switch") were anticompetitive.  Forest seeks to cabin that ruling to apply only to the February 14, 2014 announcement of the withdrawal, but not to Forest's public statements in 2013 and early 2014 or its massive marketing campaign after February 14, 2014 to "overcommunicate" the withdrawal announcement to the market in order to "accelerate" switching to Namenda XR before Forest planned to stop distributing Namenda IR.  This Court rejected Forest's approach at summary judgment, and should do so again.

Plaintiffs' theory is that the hard switch caused a shift in physician prescribing well beyond the level a soft switch would have achieved (approximately 30% conversion from IR to XR, instead of the 53% conversion Forest says it achieved by the time of generic entry in July 2015, which Plaintiffs contend was a result of the hard switch).  It is that excess conversion that forms the basis for Plaintiffs' hard switch damages.  Consistent with this Court's rulings, Plaintiffs submitted proposed jury instructions relative to the collateral estoppel order that appropriately reflect the law of the case on Plaintiffs' burden of proof and of the application of the collateral estoppel order to the product hop damages.  Lastly, Plaintiffs' experts will testify within the confines of that order regarding the economic consequences of the Court's finding that Forest's hard switch was deemed anticompetitive.

## II.     ARGUMENT

### A.     Forest's Motion *in Limine* is an Improper Attempt to Reconsider the Collateral Estoppel Order and Escape this Court's Prior Findings

Through its motion, Forest essentially asks the Court to revisit and rewrite the collateral estoppel order.  The Court should refuse Forest's invitation.

The collateral estoppel order precludes Forest from challenging whether its public statements that it was withdrawing Namenda IR were anticompetitive.  Forest continues to insist that "Namenda IR was never withdrawn" (Defs.' Br. at 13), yet the collateral estoppel order holds otherwise, because, as the Second Circuit held in affirming the injunction, "announcing the imminent discontinuation of a drug is tantamount to withdrawal." *Namenda IV*, 2017 U.S. Dist. LEXIS 83466, *34 (quoting *New York ex rel. Schneiderman v. Actavis PLC,* 787 F.3d 638, 648 (2d Cir. 2015) ("*Namenda II*")).  That holding applies with equal force to any public statement by Forest employees that it would discontinue Namenda IR.  While the Court referred to the February 14, 2014 announcement specifically, the holding was that communication of withdrawal is the same as withdrawal and is anticompetitive.  Permitting Forest to relitigate this issue would give Forest a second bite at the apple and potentially confuse the jury about whether certain withdrawal statements were permissible, while others were not.

What remains to be litigated is the extent to which Forest's withdrawal statements injured the Direct Purchaser Class through overcharges on their purchases of Namenda XR that instead would have been purchases of cheaper generic Namenda IR.  Plaintiffs' experts have calculated these damages based upon the difference between the conversion that Forest obtained for Namenda XR (53%) and the approximately 30% conversion it reasonably could have expected had it employed only a soft switch.

**B.      Jury Instructions – To Be Delivered by the Court – Would Correctly Inform the Jury of Issues Previously Decided**

Forest claims Plaintiffs' proposed jury instructions are improper.  Forest's motion is misplaced, misinformed, ignores the clear terms of the Court's order and should be denied.

In its attack on Plaintiffs' jury instructions, Forest again is asking the Court to relieve it from adverse findings in the NYAG action.  Plaintiffs' proposed jury instructions appropriately ask the Court to inform the jury as to determinations of facts and law from that case.  Forest's attack is also misplaced.  *See Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) ("The purpose of an in limine motion  is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence") (internal quotes omitted); *MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 580 (S.D.N.Y. 2017) (ruling on motions to exclude "evidence or argument").

 Plaintiffs' proposed jury instructions are, of course, neither evidence nor arguments, but set forth what Plaintiffs maintain is the correct governing law to be applied to the case, including what Plaintiffs believe to be the appropriate way for *the Court* to inform the jury about the findings in the NYAG action.  Indeed, use of jury instructions is a proper way for the Court to frame prior findings for the jury.  *See*, *e.g.*, *Nichol v. City of Springfield*, No. 6:14-CV-01983-AA, 2017 U.S. Dist. LEXIS 199467, at *28 (D. Or. Dec. 3, 2017) ("[D]efendants will be entitled to an issue preclusion jury instruction regarding the dishonest statements"); *Bradburn Parent Teacher Store, Inc. v. 3M*, No. CIV.A. 02-7676, 2005 U.S. Dist. LEXIS 5315, at *51 (E.D. Pa. Mar. 30, 2005) ("[A]ny residual danger that application of collateral estoppel could distort the remaining issues in this case can be prevented through the use of appropriate jury instructions at trial.").  *Cf. Inventio AG v. Otis Elevator Co.*, No. 06-Civ.-5377(CM), 2011 U.S. Dist. LEXIS 88965, at *5 (S.D.N.Y. June 22, 2011) (McMahon, J.) ("The jury will be instructed, at the

beginning and at the end of the case, that it is bound by the claim construction [in the court's claims construction opinion], and that it must reject any testimony that is inconsistent with the claim construction or that suggests the construction is wrong.").

While Forest complains about Plaintiffs' proposed jury instructions (*see* Defs.' Br. at 3, 5-6, 10, 15), the proposed instructions are correct.  For instance, Forest criticizes a block quote from Plaintiffs' proposed instructions (*id*. at 5-6), failing to note that much of that text comes *directly* from this Court's opinions.

> For instance, Plaintiffs request the following charge:
>
> As to this [the hard switch product hop] theory, I instruct you that a court has already decided that Defendants violated the law, and that you must take it as established that Defendants' conduct publicizing their plan to discontinue Namenda IR and convert the market to Namenda XR was "coercive and anticompetitive" and that Defendants lacked "any non-pretextual procompetitive justification for its illegal conduct."

Revised Pls.' Proposed Jury Instructions at 4 (ECF No. 701) ("Pls.' Proposed Inst.").  This instruction quotes this Court's express findings that Forest's conduct was "coercive and anticompetitive" and "lacked any non-pretextual procompetitive justification" for its illegal conduct. *Namenda IV*, 2017 U.S. Dist. LEXIS 83446, at *50.

Plaintiffs' proposed instruction also correctly informs the jury that Forest "*effectively withdrew*" Namenda IR from the market, and that "Defendants' hard switch – the combination of introducing Namenda XR into the market and effectively withdrawing Namenda IR – *forced* Alzheimer's patients who depend on memantine therapy to switch to [Namenda] XR[.]"  Pls.' Proposed Inst. at 4-5 (emphasis in original).  Again, these are direct quotes from the Court's estoppel opinion, which in turn are based on findings in the NYAG action.  *Namenda IV*, 2017 U.S. Dist. LEXIS 83446, at *30 ("'Defendants' actions *effectively withdrew* Namenda IR from the market,' starting with that announcement, and . . . Defendants' hard switch—the combination

of introducing Namenda XR into the market and effectively withdrawing Namenda IR—*forced* Alzheimer's patients who depend on memantine therapy to switch to XR'") (quoting *Namenda II,* 787 F.3d at 648, 654) (emphasis in original).

Plaintiffs' proposed instructions then focus the jury on the only questions remaining on the hard switch claim: "if Plaintiffs paid some overcharge that was materially caused by the hard switch product hop, and if so, how much the overcharges were." Pls.' Proposed Inst. at 5.  This is the only issue that the Court has left for the jury: "proof of an antitrust injury to Plaintiffs caused by Forest's conduct."  *Namenda IV*, 2017 U.S. Dist. LEXIS 83446, at *52.

Of course, it is up to the Court to determine how far collateral estoppel applies, and Plaintiffs will conform their proposed instructions and evidence to the Court's rulings.  But Forest does not point to any legal error in the instructions, which is unsurprising given how closely they adhere to the Court's decision.  Moreover, as the Court noted at the June 4, 2019 status conference, the time to consider the jury instructions is "way in the future." Declaration of Joseph Opper ("Opper Decl."), Ex. 17, Hearing Tr. at 23, *In re Namenda Direct Purchaser Antitrust Litig.*, No. 06 Civ. 5377 (CM) (S.D.N.Y. June 4, 2019).

Rather, Forest is upset the jury would be told that Forest was already found to have broken the law.  But, of course, it has.  Forest would prefer for jurors to make the injury determination in a vacuum.  But the jury needs to be told of the finding, because the nature and intent of Forest's conduct is probative of whether it caused such harm.  For instance, that Forest engaged in illegal conduct that was likely to generate anticompetitive harm (here, higher prices) is highly relevant to – and creates a presumption of – Plaintiffs' injuries.  *See In re Actos End-Payor Antitrust Litig.*, 848 F.3d 89, 101 (2d Cir. 2017) ("[A]n antitrust plaintiff may be entitled to a presumption of causation where the anticompetitive conduct 'is deemed wrongful because it

is believed significantly to increase the risk of a particular injury' and that injury occurred.")
(quoting *In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51, 66 (2d Cir. 2012)).  *See* Pls.' Proposed
Inst. at 92 & n.180, and at 99.

Likewise, the injury question is informed by evidence that it was Forest's intent to
suppress generic competition through the hard switch. As the Court of Appeals has held,
"evidence of intent and effect helps the trier of fact to evaluate the actual effect of challenged
business practices[.]" *U.S. Football League v. Nat'l Football League,* 842 F.2d 1335, 1359 (2d
Cir. 1988) (citations omitted).  *See also Chicago Bd. of Trade v. United States*, 246 U.S. 231,
238 (1918) ("[K]nowledge of intent may help the court to interpret facts and to predict
consequences."); *Federal Trade Comm'n v. Qualcomm Inc*., No. 17-CV-002200-LHK, 2019
U.S. Dist. LEXIS 86219, at *385 (N.D. Cal. May 21, 2019) ("This evidence of Qualcomm's
intent confirms the Court's conclusion that Qualcomm's practices cause anticompetitive harm");
*McWane, Inc. v. Federal Trade Comm'n*, 783 F.3d 814, 840 (11th Cir. 2015) ("[T]he clear
anticompetitive intent… supports the inference that it harmed competition."). Thus, the jury may
extrapolate from the prior findings and determine whether Forest actually achieved at least some
of the anticompetitive harm it planned to wreak.

Defendants cite the portion of the Court's collateral estoppel order sending the injury
issue to the jury, pretending as though the Court meant to bar *any* mention of anticompetitive
effects found in the NYAG case.

In addition to the determinations this Court has already made on Plaintiffs' hard switch
theory, Forest can also be estopped from contesting factual findings in the NYAG case that
inform the jury's determination on the injury issue.  *See Allen v. McCurry,* 449 U.S. 90, 94
(1980) ("Under collateral estoppel, once a court has decided an issue of *fact or law* necessary to

its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.") (emphasis added); *Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313, 1317 (7th Cir. 1995) ("Collateral estoppel applies to rulings of law *as well as to findings of fact*.") (emphasis added).  The factual findings underlying the finding of anticompetitive harm from the hard switch were necessarily decided in the NYAG Action.  *See Namenda IV*, 2017 U.S. Dist. LEXIS 83446, at *50 (observing that Judge Sweet must have found that "Forest had *already* caused anticompetitive injury to the memantine market that had to be rectified.") (emphasis in original).  Hence, Forest should be estopped from contesting at trial the same issues of market harm already decided in the NYAG case, including the fact that "'Defendants' actions *effectively withdrew* Namenda IR from the market,'" and "'*forced* Alzheimer's patients who depend on memantine therapy to switch to XR.'"  *Id.* at *30 (*quoting Namenda II*, 787 F.3d at 648, 654).  Likewise, Forest should be estopped from contesting other facts found in the NYAG action, including that Forest's own internal projections estimated that, using only soft-switch tactics, only 30% of Namenda's IR patients would voluntarily switch to Namenda XR. *In re Namenda Direct Purchaser Antitrust Litig.,* No. 15-cv-7488 (CM), Mem. Op. at 24-25 (S.D.N.Y. May 23, 2017) (ECF No. 253) (sealed version) (citing *New York v. Actavis, PLC*, No. 14 CIV. 7473 (RWS), Mem. Op. at 80 (S.D.N.Y. Dec. 11, 2014)(unredacted version)).  Those findings could be read to the jury by the Court as having been already established if the Court determines that its own opinion on collateral estoppel, or Judge Sweet's opinion is not admissible (or they could be read to the jury in addition to their admission).  The only issue for the jury in deciding damages is how much additional share Forest's hard switch conduct caused.

> **C.     Forest's Request to Exclude Evidence on pre and post February 14, 2014 Withdrawal Conduct Should be Denied**

Forest argues that the collateral estoppel order renders irrelevant evidence of "Forest's rationale for, and planned implementation of, its enjoined withdrawal of Namenda IR." Defs.' Br. at 6. The Court should reject this as even Forest admits "the Court has already concluded that [Plaintiffs'] experts will be allowed to testify about Forest's pre-and post- announcement conduct[.]" *Id.* at 12. Forest's admission is correct; the evidence is relevant.

1. **The general categories of evidence that Forest seeks to exclude are relevant**

Forest does not detail what specific evidence it seeks to exclude (other than snippets of testimony discussed below), and instead attacks broad categories of evidence. Those categories include evidence relating to (i) its "planned implementation of its hard switch," (ii) its "rationale for choosing a hard-switch strategy," (iii) its "dissatisfaction with its soft-switch conversion efforts as a motive for withdrawing Namenda IR," (iv) the "timing" of its hard switch decision, and (v) the "various 'soft switch' marketing efforts Forest considered or employed."

This evidence is relevant. In its summary judgment decision, the Court considered evidence concerning the planning and expectations of effects of the hard switch communications before February 2014, and held that Plaintiffs' experts' opinions relying upon that evidence are admissible. *See, e.g., In re Namenda Direct Purchaser Antitrust Litig.,* 331 F. Supp. 3d 152, 179 (S.D.N.Y. 2018) ("*Namenda V*") ("Specifically, Defendants claim that [Dr. Lamb's] methodology improperly includes alleged injury from before the February 2014 announcement, in violation of this Court's earlier conclusion about the proper damages period … In his report, Dr. Lamb cites documents demonstrating that, before the February 2014 announcement, Forest had already begun discuss[ing] its hard switch plan outside the company"). This evidence is relevant, as outlined in Section II.B above, to show Forest's intent, which is relevant to evaluate the actual effect of the challenged conduct. Moreover, it is relevant to show the share Forest

would have obtained absent its hard switch conduct – an issue the jury will consider in determining damages.

Review of the cases that Forest cites (Defs.' Br. at 6-7) to support the preclusive effect of prior decisions of the court (whether by collateral estoppel or other order) reflects the unremarkable proposition that when a court rules before trial that a party cannot pursue a claim or present certain evidence, that party cannot do so at trial.  The cited cases do not turn the prior rulings on their head to preclude use of relevant evidence proffered by the party that *prevailed* on the issue adjudicated.  *See D'Agostino v. Hous. Auth.*, No. 3:05-cv-01057, 2007 U.S. Dist. LEXIS 5965, at *5, *13-14 (D. Conn. Jan. 29, 2007) (plaintiffs could not offer evidence on allegations for which court had granted *defendants* summary judgment); *Gorbea v. Verizon N.Y., Inc.*, No. 11-CV-3758, 2014 U.S. Dist. LEXIS 87295, at *5 (E.D.N.Y. Aug. 2, 2011) (granting motion *in limine* to preclude plaintiff from offering evidence regarding its own "previously dismissed claims"); *Jones v. N.Y. City Health & Hosp. Corp.*, No. 00 Civ. 7002, 2003 U.S. Dist. LEXIS 9014, at *2 (S.D.N.Y. May 29, 2003) (granting motion *in limine* to prevent plaintiff from offering evidence of discrimination after court dismissed claim at summary judgment).  If a claim is dismissed, evidence supporting the dismissed claim likely is not relevant at trial.  But that is not the situation here.  Here, *Forest* lost. The fact that evidence may relate to an issue upon which Forest is estopped from relitigating does not render it irrelevant to issues that remain.  Plaintiffs show below the relevance of the challenged evidence.

> **a.    Evidence related to Forest's "planned implementation of its hard switch" is relevant to frame the context of its impact**

Evidence of how Forest planned to implement the hard switch is relevant to show, among other things, that Forest planned a marketwide blitz to over communicate its anticompetitive withdrawal message, and that Forest expected that the mere communication of withdrawal would

accelerate switching to Namenda XR long before it stopped shipping Namenda IR.  *See, e.g.,* Opper Decl. Ex. 46, PX-0479 at FRX-AT-03724244 (excerpted) (Forest forecaster: "I have IR to XR conversion accelerating two-fold following the announcement of withdrawal.  I think acceleration will definitely happen but the exact magnitude is difficult to predict"); Opper Decl. Ex. 47, PX-0977 at FRX-AT-03872027, '29 ("Namenda Withdrawal Sales Force Training": "In addition to a broad outreach communication plan to caregivers and AD professionals, the Forest sales force will provide information and resources to help make this a smooth transition."); Opper Decl. Ex. 48, PX-0926 at FRX-AT-03565770 ("it is going to be vital that we over communicate this change").  After the February 14, 2014 announcement, the prediction of Forest's forecaster about acceleration was proven true, as Forest credited the significant shift to Namenda XR to the withdrawal announcement.  *See* Opper Decl. Ex. 49, PX-0496 at FRX-AT-03588065 (April 3, 2014 email: "Since the announcement that we will be discontinuing Namenda IR later this summer, we have seen steady increases in the conversion rates with Namenda XR across the nation.").

Another example, cited by the Court on summary judgment, includes Forest telling investors in the Summer of 2013 that Forest had expected a 30% share for XR (before it decided to do the hard switch), and that it was considering the hard switch.  *See Namenda V*, 331 F. Supp. 3d at 181, 182 (Dr. Berndt relied upon fact that "Forest's executives valued these analyses as reliable and accurate as they used them when communicating their expectations about Namenda XR share in the soft switch scenario internally (including to Forest's Board of Directors) and externally to the investing community"; Dr. Lamb confirmed his finding of 30% market share for XR from just a soft switch "was reasonable based on its specific use in numerous company presentations, statements by company executives on earnings calls, and testimony by these

executives.").  Forest's public statements in 2013 were preparing the market for the ultimate

announcement of the hard switch and beginning to create doubt about the continued availability

of Namenda IR.

The evidence above shows Forest planned to, and did, leverage its hard switch

communications to shift the market even before the February 14, 2014 announcement, and

evidence discussed below (that Forest also wants excluded) shows that Forest knew this

campaign would have an immediate and long-term impact on physician prescribing habits.

> **b.  Evidence of the "rationale for choosing a hard-switch strategy"
> and "dissatisfaction with its soft-switch conversion" is relevant
> to show the reasonable expectations from a soft switch alone.**

Forest seeks to exclude evidence that shows that its soft switch efforts prior to February

2014 were not converting enough of the market to even reach a 30% share for XR, and shows

why Forest chose to do the hard switch – *i.e.,* it was not satisfied with the pace of conversion

resulting from its soft switch marketing activities.  *See, e.g.,* Opper Decl. Ex. 50, PX-0478 at

FRX-AT-03860760 (September 2013: "Over the past few weeks, Namenda XR conversion is on

the upturn but we need to accelerate our efforts in order to meet our FY14 goal of 20%."); Opper

Decl. Ex. 51, PX-0483 at FRX-AT-01806018 (October 30, 2013: market research department

was "concerned that [the] XR business is not picking up as much as expected in [Long-term

Care]").  Additional evidence in this category includes the analog analyses, Forest's internal

discussions of its share expectations, its soft switch plans, the formulary placement it achieved

shortly after the launch of Namenda XR, and Forest's expectation that the mere announcement of

withdrawal would cause switching to accelerate.

The Court has already held that Dr. Lamb's and Dr. Berndt's opinions, which relied upon

this evidence and which Forest attacked as being without basis, are admissible.  *See Namenda V*,

331 F. Supp. 3d at 180-82 (holding admissible Dr. Lamb's and Dr. Berndt's analysis of Forest's

11

forecasting and analyses).  This evidence is probative of what percentage of conversion a soft switch campaign, unaided by withdrawal conduct, would achieve.  Forest was struggling to achieve share conversion of even 30% before it began to communicate the hard switch to the market, and a jury could conclude that the additional share that Forest obtained above 30% was caused by the acceleration of switching caused by the withdrawal announcement.

Contrary to the evidence of its pre-hard switch announcement experience, Forest argues that its soft switch efforts were on a trend to achieve the 53% share XR ultimately obtained, and that it was its aggressive soft switch marketing campaign after the injunction that brought XR share from 36% at the time of the injunction (itself an overly inflated number due to the hard switch efforts) to 53%.  *See* Defs.' Contentions at page 13 (bullet points 2-4) (ECF No. 699-2). Forest wants to exclude the evidence of the weak results of its soft switch campaign because that evidence, alone, could support a jury finding that Forest's soft switch efforts were going to result in, at most, the 30% Namenda XR share Forest expected in its forecasts, and that it was the hard switch communications campaign that caused IR/XR conversion to accelerate and enabled Forest to gain the share that Namenda XR attained in excess of 30%.  *Cf. Namenda V*, 335 F. Supp. 3d at 179 ("Plaintiffs meet their burden if they show that the defendants' unlawful facts substantially contributed to their injuries, even though other facts may have contributed significantly.") (*quoting U.S. Football League*, 842 F.2d at 1377)).

### c.   Evidence of the "timing" of the hard switch decision is relevant to show that the decision affected formulary changes.

The timing of the hard switch decision is relevant to show that certain formulary changes that Forest credits with being the cause of significant conversion were, in fact, themselves tainted by withdrawal communications.  Forest contends the hard switch decision was not made until late January 2014, despite a Forest document from October 18, 2013 that clearly states, "Forest

has made the decision to discontinue sales of Namenda IR and transition all patients to Namenda XR." Opper Decl. Ex. 52, PX-0480 at FRX-AT-01779417. The timing is relevant to show the impact on formulary placement and increased conversion to Namenda XR. Of particular relevance, just two weeks later, on October 30, 2013, Forest told MCO Optum it was withdrawing IR, and Optum agreed to add XR to its formulary and tell members about the withdrawal. *See* Opper Decl. Ex. 53, PX-1569 at FRX-AT-00952577 ("[Optum] said they would add [Namenda XR] on 1/1/2014 and assist us with communicating the IR withdrawal from market to the membership. They would provide a letter (we will get a sample soon) that would promote the conversion to IR once the removal date was announced"); Opper Decl. Ex. 54, PX-0938, FRX-AT-03684533-35 (October 31, 2013, email from Optum attaching a draft letter to patients about withdrawal). The Court has already held this pre-February 14, 2014 evidence is admissible. *See Namenda V*, 331 F. Supp. 3d at 179 ("Defendants argue that Dr. Lamb improperly expanded the time period of alleged injury to include data from before the February 2014 Namenda IR discontinuation announcement . . . . These opinions are admissible."). The timing of the announcement is plainly relevant; Forest can seek to convince the jury that its own document is not credible, or that it did not tell Optum about the withdrawal in 2013.

> **d.     Evidence of "various 'soft switch' marketing efforts Forest considered or employed" will show Forest considered its soft switch efforts in forecasting a 30% soft switch share.**

Forest wants to exclude evidence of its long planned soft switch marketing efforts in order to convince the jury that the share it obtained after the November 2014 injunction was the result of new and more aggressive marketing efforts not already factored into its forecasts. However, the evidence Forest seeks to preclude, some from even before the launch of Namenda XR, shows Forest had long planned to use a variety of aggressive soft switch marketing efforts, and thus Forest's forecasts would have already factored in these efforts.

Forest had planned a very aggressive and broad marketing campaign to tout differences between Namenda IR and Namenda XR that was targeted to MCOs, physicians, long term care, caregivers, and patients.  Even before the launch of Namenda XR, Forest planned to blitz the market, to "Use pharmacies to reach caregivers and to aid in conversion," to "Announce XR directly to 115,000+ caregivers," to send out hundreds of thousands of emails and messages, to utilize direct to consumer marketing through in pharmacy television advertising and in store messaging.  Opper Decl. Ex. 55, PX-0928 at FRX-AT-03573568, slides 25, 28, and 44 (2013 "Namenda Franchise Business Plan").  Forest planned to engage in broad multi-media marketing efforts to anyone with any influence over the prescribing decision, including caregivers.  In making its forecasts, it is inconceivable that Forest's forecasters did not assume that Forest was undertaking its best efforts to market Namenda XR, and would have taken these plans into account.

This evidence can rebut Forest's claim that its soft switch marketing efforts after November 2014 were new and different (the impression that it would exploit if Plaintiffs are prevented from showing those efforts were either already in use or contemplated when Forest projected it would get only 30% share for XR).  Forest can seek to argue that it got more aggressive in its marketing (more than it planned in 2013 when it had the same interest in shifting share to Namenda XR), but it should not be able to use the collateral estoppel order to prevent Plaintiffs from showing there was nothing materially new or unexpected about the post injunction soft switch marketing efforts not already accounted for when Forest projected XR would get a 30% share through a soft switch alone.

Forest bemoans the unfairness of the collateral estoppel ruling for not allowing it to re-litigate its alleged procompetitive arguments about acts already found to be anticompetitive, yet

it wants to use the collateral estoppel order to allow it to present a one-sided view of the impact of its post-injunction soft switch marketing efforts, as if they all were employed for the first time. This makes no sense.  Forest did not win the collateral estoppel motion. It lost.

> **2.    The specific testimony Forest seeks to exclude is relevant to show the impact of withdrawal statements on physicians' prescribing habits.**

Forest seeks to exclude testimony about the impact of withdrawal on the market primarily on the baseless distinction that Forest continues to press – that Forest did not actually withdraw Namenda IR – and thus statements about the impact of an incomplete withdrawal are irrelevant to showing the impact of announcing a withdrawal.  *See* Defs.' Br. at 14-15.

Importantly, the impact of switching, whether resulting from literal withdrawal, or the communication of withdrawal, is similar and long lasting.  As Forest's own CEO admitted, once a physician switches the prescribing decision, the prospect of reverse commuting is much more difficult.  Opper Decl. Ex. 56, PX-0893, FRX-AT-01775500-18 at 16 (if Forest converts a prescription, "it's very difficult for the generics to reverse commute back").  Consistent with that, in testimony that Forest wants to exclude, Mr. Saunders admitted that a hard switch could help Forest "achieve significantly higher levels of conversion," "hold on to a larger share of its bases" against generic competition, and achieve "a higher conversion rate."  *See* Defs.' Br. at 14-15.  Forest contends that Mr. Saunders' testimony should be excluded because it was premised upon a fully executed hard switch and Forest never finalized the removal of IR from the market. Leaving aside that this is contrary to the holdings of the Second Circuit and this Court that announcement of withdrawal is tantamount to withdrawal, as shown above Forest's own forecaster projected that the mere announcement of withdrawal would accelerate IR to XR switching, and Forest credited the withdrawal communications campaign with increasing conversion.  Thus, Mr. Saunders' testimony is consistent with that evidence, and is highly

relevant to the jury's understanding of the impact of withdrawal statements.  There is no basis to exclude it.

Forest also seeks to exclude the testimony of Dr. Lah and Mr. Stitt about the impact of withdrawal on physicians – that it causes them to switch – which is consistent with Forest's own expectations and relevant to impact.  Dr. Lah testified "if Forest implements its plan to cease selling Namenda IR, then I will have no choice but to switch." Toto Decl., Ex. 3, ECF No. 801-8 (NYAG Dep. of James Lah, 273:14-20).  Mr. Stitt testified that "prescribers will be forced essentially to switch to the XR product" as a result of "discontinuing" Namenda IR, and he agreed that "Forest's decision to discontinue" Namenda IR "will result in significantly less use of the generic Namenda IR tablets."  Toto Decl., Ex. 4, ECF No. 801-4, (NYAG Trial Tr. Nov. 10, 2014, 124:21-125:9, 132:12-16).  As noted above, the announcement of withdrawal is tantamount to actual withdrawal, which makes Dr. Lah's and Mr. Stitt's testimony plainly relevant to the impact of the announcement of withdrawal.

### D.   Forest Suffers No Unfair Prejudice from Being Precluded from Relitigating its Procompetitive Justifications

Forest complains that it is somehow unfair for Plaintiffs to be able to present evidence about how Forest's actions harmed the market, without Forest being able to present its purported procompetitive justifications for the hard switch.  The time for Forest to try to justify and excuse its conduct has come and gone.  All that remains now is for Plaintiffs to prove their overcharge injuries and damages resulting from the hard switch.  *See Namenda IV*, 2017 U.S. Dist. LEXIS, at *52.

Forest previously litigated its claimed procompetitive justifications in the NYAG action (both before Judge Sweet and before the Second Circuit), and those justifications were rejected on the merits.  In the NYAG trial, Forest cited claims by CEO Saunders that Forest wanted to

focus on follow-on Namenda products rather than continuing to market immediate-release Namenda.  Judge Sweet did not credit this assertion, finding it "was not as specific, or as persuasive, as his earlier representations to shareholders" and that the purpose of the hard switch was "to put barriers obstacles in the path of producers of generic memantine and thereby protect Namenda's revenues from a precipitous decline following generic entry." *New York v. Actavis, PLC*, No. 14 CIV. 7473, 2014 U.S. Dist. LEXIS 172918, at *110 (S.D.N.Y. Dec. 11, 2014), *aff'd sub nom. Namenda II*, 787 F.3d 638.  The Court of Appeals considered this specific question, only to affirm that "[a]ll of Defendants' procompetitive justifications for withdrawing IR are pretextual."  *Namenda II*, 787 F.3d at 658.  As this Court then held, "Forest is precluded from relitigating the questions of ...whether Forest had any non-pretextual procompetitive justifications for its illegal conduct."  *Namenda IV*, 2017 U.S. Dist. LEXIS 83446, at *50.

Simply put, Forest had its bite at the apple to convince Judge Sweet or the Court of Appeals of its procompetitive justifications.  It lost.  Collateral estoppel precludes it from trying a third time.  There is nothing unfair about that.

### E.    The Collateral Estoppel Order Is Admissible and Plaintiffs' Experts Can Refer to It While Testifying

The collateral estoppel order is admissible.  It is the clearest explanation of what the Court has ruled with respect to the hard switch campaign and how it applies here, and there is nothing improper about simply providing the order to the jury.   As more fully explained in Plaintiffs' opposition to Forest's Motion *In Limine* No. 15 To Exclude The NYAG *Namenda* Decisions, the collateral estoppel order is not hearsay and is otherwise admissible.  *See also Inventio AG,* 2011 U.S. Dist. LEXIS 88965, at *5 (court's prior opinions admissible in evidence).

Given that the Court's order informed how both sides' experts addressed the issues, it is

perfectly appropriate for the experts to refer to the order in their testimony, as relevant to their testimony, including that the Court found that the withdrawal statements are anticompetitive.

### F. Plaintiffs Agree that the Court Can Exclude References to the Limited Distribution by Mail Order by Both Parties

Plaintiffs agree with Forest that references to Forest's planned mail order scheme to provide for limited distribution of Namenda IR, which never was implemented, are not relevant. Plaintiffs only plan to present such evidence if Forest does. Plaintiffs are willing to work with Forest to excise both parties' deposition designations referring to the mail order distribution scheme.

## III.   CONCLUSION

Forest's Motion *in Limine* No. 16 should be denied.


Dated: June 14, 2019                          Respectfully Submitted:


|                                         | /s/ *Dan Litvin*                          |
| David F. Sorensen                       | Bruce E. Gerstein                         |
| Ellen T. Noteware                       | Joseph Opper                              |
| Daniel C. Simons                        | Kimberly M. Hennings                      |
| Nick Urban                              | Dan Litvin                                |
| Berger Montague PC                      | Garwin Gerstein & Fisher LLP              |
| 1818 Market Street – Suite 3600         | 88 Pine Street, 10th Floor                |
| Philadelphia, PA 19103                  | New York, NY 10005                        |
| (215) 875-3000                          | Tel: (212) 398-0055                       |
| (215) 875-4604 (fax)                    | Fax: (212) 764-6620                       |
| dsorensen@bm.net                        | bgerstein@garwingerstein.com              |
| enoteware@bm.net                        | jopper@garwingerstein.com                 |
| dsimons@bm.net                          | khennings@garwingerstein.com              |
| nurban@bm.net                           | dlitvin@garwingerstein.com                |

| Peter Kohn                              | David C. Raphael, Jr.                     |
| Joseph T. Lukens                        | Erin R. Leger                             |
| Faruqi & Faruqi, LLP                    | Smith Segura & Raphael, LLP               |
| 1617 John F Kennedy Blvd. – Suite 1550  | 3600 Jackson Street, Suite 111            |
| Philadelphia, PA 19103                  | Alexandria, LA 71303                      |
| (215) 277-5770                          | Tel: (318) 445-4480                       |

(215) 277-5771 (fax)
pkohn@faruqilaw.com
jlukens@faruqilaw.com

Fax: (318) 487-1741
draphael@ssrllp.com


Stuart E. Des Roches
Andrew W. Kelly
Odom & Des Roches, LLC
650 Poydras Street, Suite 2020
New Orleans, LA 70130
Tel: (504) 522-0077
Fax: (504) 522-0078
stuart@odrlaw.com

Russ Chorush
Heim Payne & Chorush, LLP
1111 Bagby, Suite 2100
Houston, TX 77002
Tel: (713) 221-2000
Fax: (713) 221-2021
rchorush@hpcllp.com

***Counsel for the Direct Purchaser Class Plaintiffs***

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 14, 2019, I electronically filed the above by the CM/ECF

system.

Respectfully submitted,

<u>/s/ *Dan Litvin*</u>
Dan Litvin