**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE NAMENDA DIRECT PURCHASER ANTITRUST LITIGATION | Case No. 1:15-cv-07488-CM (RWL) |

**FOREST'S OPPOSITION TO PLAINTIFFS'
MOTION *IN LIMINE* NO. 10: EXCLUDE HEARSAY
STATEMENTS FROM THE NEW YORK ATTORNEY GENERAL**

**WHITE & CASE LLP**

*Counsel for Defendants Actavis plc, Forest Laboratories, LLC, Forest Laboratories, Inc., and Forest Laboratories Holdings Ltd.*

## TABLE OF CONTENTS

ARGUMENT ................................................................................................................................ 2

    I.    DPPs Stipulated That They Would Not Object on Hearsay Grounds to Forest's Settlement Agreement with the NYAG and the NYAG's Press Release Regarding the Settlement .................................................................................................................. 2

    II.    The Settlement Agreement and Press Release Are Admissible Under the Public Records Exception to Hearsay as They Set Forth Factual Findings and the NYAG's Activities ....................................................................................................................... 4

        A.    The Settlement Agreement and Press Release Contain Factual Findings ...... 5

        B.    The Settlement Agreement and Press Release Set Out the NYAG's Activities ........................................................................................................ 7

        C.    DPPs Have Not Met Their Burden of Demonstrating that the Settlement Agreement and Press Release are Untrustworthy Under Rule 803 ................ 9

    III.    The Settlement Agreement and the Press Release Are Admissible Non-Hearsay ... 10

    IV.    Evidence Relating to the Injunction Is Highly Probative and Not Unfairly Prejudicial to DPPs ...................................................................................................................... 11

CONCLUSION ........................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

### **CASES**

*Alexander v. CareSource*,
    576 F.3d 551 (6th Cir. 2009) ..................................................................................................7

*Am. Pegasus SPC v. Clear Skies Holding Co.,*
    *LLC*, No. 1:13-CV-03035-ELR, 2015 U.S. Dist. LEXIS 189547 (N.D. Ga.
    Sept. 22, 2015) ........................................................................................................................4

*Ariza v. N.Y.C.*,
    139 F.3d 132 (2d Cir. 1998) ....................................................................................................7

*Axiom Inv. Advisors, LLC v. Deutsche Bank AG*,
    No. 15 Civ. 9945 (LGS), 2018 U.S. Dist. LEXIS 152154 (S.D.N.Y. Sept. 6,
    2018) ...................................................................................................................................4, 5

*Beech Aircraft Corp. v. Rainey*,
    488 U.S. 153 (1988) ........................................................................................................ passim

*Byrd v. ABC Prof'l Tree Serv.*,
    832 F. Supp. 2d 917 (M.D. Tenn. 2011) ..................................................................................5

*Cary Oil Co. v. MG Ref. & Mktg.*,
    257 F. Supp. 2d 751 (S.D.N.Y. April 24, 2003) ....................................................................10

*Dacey v. New York County Lawyers' Ass'n*,
    423 F.2d 188 (2d Cir. 1969) ....................................................................................................4

*Daniel v. Cook Cty.*,
    833 F.3d 728 (7th Cir. 2016) ...................................................................................................9

*Dunkin v. Dorel Asia SRL*,
    No. 5:10-cv-00004 JWS, 2012 U.S. Dist. LEXIS 39652 (D. Alaska Mar. 23,
    2012) ........................................................................................................................................4

*EEOC v. E.I. duPont de Nemours & Co.*,
    No. 03-1605, 2004 U.S. Dist. LEXIS 20753 (E.D. La. Oct. 18, 2004) ....................................7

*Ellis v. Int'l Playtex, Inc.*,
    745 F.2d 292 (4th Cir. 1984) .............................................................................................9, 10

*In re 650 Fifth Ave. & Related Props.*,
   No. 08 Civ. 10934 (KBF), 2013 U.S. Dist. LEXIS 79667 (S.D.N.Y. June 6,
   2013) ...................................................................................................................................5

*LaBarre v. Werner Enters.*,
   No. 1:12-CV-1316 (MAD), 2015 U.S. Dist. LEXIS 162598 (N.D.N.Y. Dec. 4,
   2015) .................................................................................................................................13

*Lee v. TMZ Prods.*,
   No. 2:15-00234 (WJM), 2015 U.S. Dist. LEXIS 104387 (D.N.J. Aug. 10,
   2015) .................................................................................................................................10

*Moses v. Westchester Cty. Dep't of Corr.*,
   No. 10 Civ. 9468 (ER), 2017 U.S. Dist. LEXIS 163030 (S.D.N.Y. Sept. 29,
   2017) ...................................................................................................................................5

*Murphy v. Metro. Transp. Auth.*,
   548 F. Supp. 2d 29 (S.D.N.Y. 2008) ....................................................................................9

*New York v. Actavis, PLC*,
   No. 14-cv-07473, 2014 U.S. Dist. LEXIS 172918 (S.D.N.Y. Dec. 11, 2014) .....................1

*New York v. Actavis, PLC*,
   No. 14-cv-07473 (S.D.N.Y. Dec. 15, 2014), ECF No. 84 ....................................................2

*Rosales v. Kelly*,
   No. 07 Civ. 10554 (LAP), 2011 U.S. Dist. LEXIS 135083 (S.D.N.Y. Nov. 14,
   2011) ...................................................................................................................................5

*Scott v. WPIX, Inc.*,
   No. 10 Civ. 4622 (WHP), 2012 U.S. Dist. LEXIS 78284 (S.D.N.Y. May 17,
   2012) .................................................................................................................................11

*SEC v. Pentagon Cap. Mgmt. PLC*,
   No. 08 Civ. 3324, 2010 U.S. Dist. LEXIS 25092 (S.D.N.Y. Mar. 11, 2010) .......................7

*Taylor v. Bouchard Transp. Co.*,
   No. 89 Civ. 5965 (PKL), 1991 U.S. Dist. LEXIS 7993 (S.D.N.Y. June 12,
   1991) .................................................................................................................................12

*United States v. De Lillo*,
   620 F.2d 939 (2d Cir. 1980) ..............................................................................................11

*United States v. Iverson*,
   818 F.3d 1015 (10th Cir. 2016) ...........................................................................................7

*United States v. Mohr*,
  318 F.3d 613 (4th Cir. 2003) ..................................................................................................11

*Yates v. Ford Motor Co.*,
  No. 5:12-CV-752-FL, 2015 U.S. Dist. LEXIS 64309 (E.D.N.C. May 11,
  2015) ......................................................................................................................................11

## **STATUTES AND RULES**

Fed. R. Evid. 106 ..........................................................................................................................12

Fed. R. Evid. 403 ..........................................................................................................................11

Fed. R. Evid. 803 .................................................................................................................. passim

DPPs stipulated that they would not object to the admissibility of public statements made by the New York Attorney General on the basis of hearsay. The stipulation was "so ordered" by this Court. Incredibly, DPPs now try to renege on the unambiguous terms of their agreement. But DPPs should be held to their promise, and the stipulation alone is a sufficient basis for this Court to deny DPPs' Motion *In Limine* No. 10.

Independently, both the NYAG settlement agreement (DTX-027) (the "Settlement Agreement") and press release (DTX-028) (the "Press Release") fall within the public records exception to the hearsay rule, and DPPs have not met their burden of proving that the source of those statements is unreliable, or that other circumstances render those statements untrustworthy. Both documents contain findings based on facts that the NYAG derived from its investigative authority. As Forest's adversary in the 2014 proceedings before Judge Sweet (the "NYAG Action"), the NYAG had no incentive to lie on Forest's behalf about Forest's strict compliance with the injunction and the effect of the injunction at preserving competition in the market. There is nothing untrustworthy about the statements and the documents should be admitted.

Allowing DPPs to wriggle out of their promise would suppress relevant evidence from the jury that directly contradicts DPPs' contention that the injunction was ineffective at protecting against consumer harm (thereby preventing DPPs' alleged injury, the ultimate issue for the hard switch second phase of trial). Between February 28 and September 15, 2014, the New York Attorney General's office conducted an in-depth investigation of Forest's proposed withdrawal of Namenda IR. *New York v. Actavis, PLC*, No. 14-cv-07473, 2014 U.S. Dist. LEXIS 172918, at *4-5 (S.D.N.Y. Dec. 11, 2014) ("*Sweet Op.*"). On December 15, 2014, Judge Sweet enjoined the withdrawal, and issued an injunction requiring Forest to "continue to make Namenda IR (immediate-release tablets) available on the same terms and conditions applicable since July 21,

2013." *New York v. Actavis, PLC*, No. 14-cv-07473 (S.D.N.Y. Dec. 15, 2014), ECF No. 84. While Forest appealed, as part of its mandate, the NYAG monitored the market for potential complaints about Forest's compliance with the injunction. When the parties settled in November 2015, the NYAG issued its findings in the settlement agreement and accompanying press release. In short, the NYAG found that "the Injunction was effective in protecting competition in the relevant market and permitting lower cost generic drugs to enter the market in July 2015 and subsequently" and "as a result of the Attorney General's lawsuit, patients who wished to remain on Namenda IR during early 2015 and then switch to the generic version when it became available over the summer were able to do so without any disruption in their medical treatment." (The settlement agreement and press release themselves are attached as Exhibits 1 and 2, respectively.)

Because the documents are plainly admissible under the stipulation and the Federal Rules of Evidence, and are highly relevant to this the issue of whether DPPs were injured and suffered damages as a result of Forest's February 14, 2014 announcement, the Court should deny DPPs' Motion *In Limine* No. 10.

**ARGUMENT**

I.  **DPPs Stipulated That They Would Not Object on Hearsay Grounds to Forest's Settlement Agreement with the NYAG and the NYAG's Press Release Regarding the Settlement**

On March 15, 2017, DPPs and Forest entered into a stipulation (the "Stipulation") that provides:

1) The following categories of evidence from *The People of the State of New York v. Actavis, et al.*, Case No. 14-cv-7473 (S.D.N.Y.) (the "NYAG Action") are deemed to be, and shall be treated as if they were submitted or taken in this case: . . . **All press releases and other public statements made by parties to the NYAG Action** regarding the possible withdrawal and continuing availability of Namenda IR.

2) The parties agree that they will not object to the admissibility of deposition, hearing, or investigational testimony and all other evidence referenced in section (1) above on the grounds that it otherwise would violate Federal Rule of Evidence 802, except that

2

> the parties reserve the right to object on the ground that the testimony offered constitutes hearsay within hearsay.

ECF No. 153 at ¶¶ 1, 2. The Stipulation squarely applies to the Press Release and Settlement Agreement at issue here. Both the Press Release and the Settlement Agreement are public statements made by the NYAG—a party to the 2014 action—arising from the NYAG Action, and concerning the "withdrawal and continuing availability of Namenda IR." *Id.* ¶ 1.

DPPs now attempt to limit the scope of the Stipulation retroactively based upon the arguments that (1) the word "from" in the Stipulation means the documents must have been created before the injunction was entered; and (2) the two documents include some retrospective statements and thus were not about "continuing availability of Namenda." *See* ECF No. 748, Mem. in Supp. of Pls.' Mot. *In Limine* No. 10: Exclude Hearsay Statements from the New York Attorney General ("DPPs' MIL 10") at 7-8. Neither argument is correct. First, the two documents are *from* the NYAG Action, which is all that the Stipulation requires. The Settlement Agreement was filed on the NYAG Action docket and both documents directly arise from the NYAG Action. There would have been no settlement or press release without the NYAG Action. Second, both documents discuss and address the possible withdrawal and continuing availability of Namenda IR, as do the other statements identified by DPPs. For example, the Settlement Agreement states that following the injunction, "Allergan has continued to manufacture and supply Namenda IR . . . ." Ex. 1, Settlement Agreement at 2 (DTX-027). Similarly, the Press Release states, "As a result of the injunction, Alzheimer's patients have not been forced to switch from Namenda IR to Namenda XR, and instead have been able to select which drug to use based on their and their physicians' views of which drug is best for them. . . . In addition, Alzheimer's patients who wish to take Namenda XR instead of Namenda IR are also free to do so." Ex. 2, Press Release at 2

3

(DTX-028). It is plain that both documents discuss the continuing availability of Namenda IR and are covered by the parties' Stipulation. As such, DPPs' hearsay arguments should be rejected.

II. **The Settlement Agreement and Press Release Are Admissible Under the Public Records Exception to Hearsay as They Set Forth Factual Findings and the NYAG's Activities**

Even apart from the Stipulation, the Press Release and Settlement Agreement are admissible under the public records exception as statements made by a public office that set out "factual findings [and opinions and conclusions] from a legally authorized investigation" or that set out "the office's activities." Fed. R. Evid. 803 (8)(A)(i), (iii); *see Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169, 175 (1988) (adopting a "broad approach to admissibility" under the public records exception, and holding that "statements in the form of opinions or conclusions are not by that fact excluded from the scope of" the exception); *see also Dacey v. New York County Lawyers' Ass'n*, 423 F.2d 188, 190 n.4 (2d Cir. 1969) (defining the state attorney general as a public official).

Courts routinely admit as public records under Rule 803(8) settlement agreements and consent decrees entered into with public offices following an investigation. *See, e.g.*, *Axiom Inv. Advisors, LLC v. Deutsche Bank AG*, No. 15 Civ. 9945 (LGS), 2018 U.S. Dist. LEXIS 152154, at *20 n.6 (S.D.N.Y. Sept. 6, 2018) (admitting under Rule 803(8) findings in the New York State Department of Financial Services' consent order settling its enforcement action against Deutsche Bank); *Am. Pegasus SPC v. Clear Skies Holding Co., LLC*, No. 1:13-CV-03035-ELR, 2015 U.S. Dist. LEXIS 189547 at *20 (N.D. Ga. Sept. 22, 2015) (admitting under Rule 803(8) SEC consent order settling a cease-and-desist action, explaining that "[t]he SEC Order clearly falls under [Rule 803(8)] because it is the result of a legally authorized investigation"); *Dunkin v. Dorel Asia SRL*, No. 5:10-cv-00004 JWS, 2012 U.S. Dist. LEXIS 39652, at *4 (D. Alaska Mar. 23, 2012) (admitting settlement agreement with the Consumer Product Safety Commission as it "meets the

criteria of Rule 803(8) . . . and is admissible as a public record"); *Rosales v. Kelly*, No. 07 Civ. 10554 (LAP), 2011 U.S. Dist. LEXIS 135083, at *4-6 (S.D.N.Y. Nov. 14, 2011) (finding that settlement agreement between the New York Department of Correctional Services and a nonparty would be admissible on Rule 803(8) grounds).

Similarly, courts routinely admit government-issued press releases under Rule 803(8). *See, e.g.*, *Moses v. Westchester Cty. Dep't of Corr.*, No. 10 Civ. 9468 (ER), 2017 U.S. Dist. LEXIS 163030, at *34-35 (S.D.N.Y. Sept. 29, 2017) (admitting "DOJ Report and accompanying press release" as they "satisfy the criteria of Rule 803(8)—they contain factual findings from an investigation carried out by the DOJ"); *In re 650 Fifth Ave. & Related Props.*, No. 08 Civ. 10934 (KBF), 2013 U.S. Dist. LEXIS 79667, at *13 n.3 (S.D.N.Y. June 6, 2013) (Treasury department press release admitted under Rule 803(8)(A)(iii)); *Byrd v. ABC Prof'l Tree Serv.*, 832 F. Supp. 2d 917, 921 n.3 (M.D. Tenn. 2011) (admitting press release from Department of Labor as a statement setting forth the activities of the office and factual findings made pursuant to its authority under Rule 803(8)).

### A. The Settlement Agreement and Press Release Contain Factual Findings

Both the Settlement Agreement and the Press Release consolidate numerous factual findings that the NYAG derived from its investigation into, its lawsuit against, and the eventual injunction preventing Forest's withdrawal of Namenda IR. DPPs ask this Court to narrowly define "investigation" and read Rule 803(8)(A)(iii) with a temporal restriction that would require the Court to exclude all public statements that occurred after the NYAG filed its lawsuit. But doing so would defy the numerous cases that have found that settlement agreements are admissible under the public records exception. *See, e.g.*, *Axiom*, 2018 U.S. Dist. LEXIS 152154, at *20 n.6.

For example, the following statements from the Settlement Agreement are findings that the NYAG made based on the facts it discovered pursuant to its investigative and monitoring authority:

- "the NYAG is unaware of any violation of the Injunction";
- "NYAG has received no reports that any patient was denied access to Namenda IR by Allergan . . . ."

Ex. 1, Settlement Agreement at 3 (DTX-027). Similarly, following its two-year long investigation into Allergan's actions, the NYAG's determination that the injunction remedied the actions that it sought to restrict as anticompetitive, and the facts it derived leading it to settle the action with Allergan, the NYAG opined that: "the Injunction was effective in protecting competition in the relevant market and permitting lower cost drugs to enter the market in July 2015 and subsequently . . . ." *Id.*

Moreover, by arguing that the NYAG's opinions and conclusions derived from its factual investigation are not "factual findings," DPPs seek a narrower definition of "factual finding" than is recognized by courts. The Supreme Court defines a "finding of fact" as "[a] conclusion by way of reasonable inference from the evidence." *See Beech*, 488 U.S. at 164 (quotations omitted). The Court in *Beech* held that the scope of Rule 803(8) includes "statements in the form of opinions or conclusions." *Id.* at 175. For example, statements in the Press Release regarding the NYAG's view of the effects of its lawsuit or the effects of the injunction are the opinions and conclusions of the NYAG's antitrust specialists that followed their investigation into, and lawsuit to enjoin, Forest's actions.

Contrary to DPPs' contention (DPPs' MIL 10 at 3), Rule 803(8)(A)(iii) does not require the NYAG to "ha[ve] personal knowledge" or "conduct[] expert economic analysis . . . to offer

6

any opinion [o]n the Settlement Agreement or Press Release." *See Beech*, 488 U.S. at 170 ("As long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report."); *Alexander v. CareSource*, 576 F.3d 551, 562-63 (6th Cir. 2009) ("[T]he personal knowledge requirement does not extend to official reports admissible under Rule 803(8). . . . Therefore, lack of personal knowledge is not a proper basis for exclusion of a report otherwise admissible under Rule 803(8)."); *SEC v. Pentagon Cap. Mgmt. PLC*, No. 08 Civ. 3324, 2010 U.S. Dist. LEXIS 25092, at *4-6, 12-13 (S.D.N.Y. Mar. 11, 2010) (admitting under Rule 803(8) Orders Instituting Proceedings containing SEC's factual findings based on facts discovered pursuant to its investigative authority because "[s]uch findings are presumed reliable and admissible under Rule 803(8)(C)").

DPPs rely on *Ariza* (DPPs' MIL 10 at 4-5), but *Ariza* is inapposite. In *Ariza*, the Court found that the report at issue did not result from a factual investigation, and instead summarized the "attitudes and beliefs of a small group of [police] officers" obtained from an internal focus group; "its stated purpose was . . . 'to identify and explore some of the prevailing attitudes, perceptions, and opinions of Police Officers toward a range of integrity-related issues.'" *Ariza v. N.Y.C.*, 139 F.3d 132, 134 (2d Cir. 1998). The Settlement Agreement and Press Release, by contrast, contain the NYAG's conclusions and findings based on the information that the NYAG discovered pursuant to its investigative authority.

### B. The Settlement Agreement and Press Release Set Out the NYAG's Activities

The Settlement Agreement and Press Release also set out the NYAG's activities and thus are admissible under Rule 803(8)(A)(i). *See e.g.*, *EEOC v. E.I. duPont de Nemours & Co.*, No. 03-1605 SECTION "R" (4), 2004 U.S. Dist. LEXIS 20753, at *3-5 (E.D. La. Oct. 18, 2004) (admitting U.S. Census Bureau's "record of the activities of the agency—namely, the collection, organization, and reporting of census data to the public"); *see also United States v. Iverson*, 818

7

F.3d 1015, 1021-22 (10th Cir. 2016) (the FDIC's "website reports which banks are insured by the FDIC, thereby 'set[ting] out . . . the office's activities' related to deposit insurance").

For example, the Settlement Agreement states:

- "in 2014, the NYAG commenced an investigation ('the Investigation') pursuant to New York General Business Law . . .";
- "the NYAG regularly conducts investigations into potential violations of the antitrust laws, through its Antitrust Bureau, as it did in the Investigation . . .";
- "on September 5, 2014, the NYAG filed a Complaint in the Southern District of New York . . .";
- "the NYAG brought suit on behalf of New York State and state agencies that serve as a direct or indirect purchaser of Namenda IR and Namenda XR . . ."; and
- "the NYAG made a motion for a preliminary injunction . . . ."

Ex. 1, Settlement Agreement at 1-2 (DTX-027). Even the statements that DPPs take issue with in their motion make clear that the Settlement Agreement sets forth the NYAG's activities. DPPs' MIL 10 at 2 (quoting from Settlement Agreement: "the NYAG regularly collects complaints in the ordinary course of its operations").

The press release similarly sets out the NYAG's activities:

- "Attorney General Eric T. Schneiderman today announced that his office has resolved the antitrust lawsuit it brought in September 2014 . . .";
- "[T]he Attorney General's office has determined that it is no longer necessary to continue legal action";
- "'My office will continue to protect patients and the public from anticompetitive practices . . . '"; and

- "In September 2014, The New York Attorney General's office filed its groundbreaking lawsuit seeking to stop the 'forced switch,' and sought a preliminary injunction from the federal court in New York."

Ex. 2, Press Release at 1 (DTX-028). All of these statements fall within Rule 803(8)(A)(i)'s exception.

### C. DPPs Have Not Met Their Burden of Demonstrating that the Settlement Agreement and Press Release are Untrustworthy Under Rule 803

DPPs ultimately ask this Court to rule that the statements made by the NYAG in the Settlement Agreement and Press Release are untrustworthy. DPPs' MIL 10 at 5. But DPPs have not presented any documents, evidence, or even viable argument that the NYAG statements are unreliable. Fed. R. Evid. 803(8)(B) (requiring that the opponent of the evidence demonstrate the source of the information or some other circumstances "indicate a lack of trustworthiness").

Factual findings made by government officials in public records following a factual investigation are given a presumption of trustworthiness. *Murphy v. Metro. Transp. Auth.*, 548 F. Supp. 2d 29, 43 (S.D.N.Y. 2008) (McMahon, J.) (finding that opponent of evidence had "clearly" not met burden to establish untrustworthiness) (citing *In re Congdon*, 365 B.R. 433, 440 (D. Vt. 2007)). Factual findings are presumed trustworthy because it is assumed "that a public official will perform his duty properly," that public agencies usually conduct investigations in a reliable manner, and that government investigations "employ well accepted methodological means of gathering and analyzing data." *Ellis v. Int'l Playtex, Inc.*, 745 F.2d 292, 300-01 (4th Cir. 1984). "[T]he general presumption of admissibility in the text of Rule 803(8) has considerable force." *Daniel v. Cook Cty.*, 833 F.3d 728, 742 (7th Cir. 2016). Thus, DPPs must demonstrate "sufficient negative factors" to overcome admissibility. *Beech*, 488 U.S. at 167.

DPPs argue that the NYAG's statements are unreliable because there is no evidence showing that the NYAG "analyzed the extent to which Forest's conduct actually undid the effects of [Forest's] . . . communications campaign." DPPs' MIL 10 at 5. But DPPs' attempt to shift the burden is a red herring. DPPs must prove that the source of the information lacks trustworthiness; merely claiming there is a lack of evidence as to the NYAG's analysis is insufficient. *See* Fed. R. Evid. 803(8)(B); *Ellis*, 745 F.2d at 300 ("the burden rested with [the opponent] . . . to demonstrate that the methodology was flawed," as "[t]he hearsay exception assumes regularity of procedure absent a showing to the contrary," and merely arguing that the "report [did not] state[] its methodology," is not by itself a "reason[] to exclude the studies.").

### III. The Settlement Agreement and the Press Release Are Admissible Non-Hearsay

Alternatively, the NYAG Settlement Agreement and Press Release are admissible as non-hearsay. If the Court finds that the statements are not admissible for the truth, they should still be admitted as non-hearsay (with an appropriate limiting instruction). Forest would offer the Settlement Agreement in part to show that the NYAG settled with Forest because it was satisfied with Forest's compliance with the injunction. *See Cary Oil Co. v. MG Ref. & Mktg.*, 257 F. Supp. 2d 751, 762 (S.D.N.Y. April 24, 2003) (admitting defendants' consent order, i.e., settlement agreement, with Commodity Futures Trading Commission as it was offered not for truth, but "to explain why [the settling party] took the actions and positions that it did in negotiating and entering into the Consent Order."). Similarly, Forest would offer the Press Release to show that the NYAG independently alerted the market of the injunction, which preserved patient access to Namenda IR. *See Lee v. TMZ Prods.*, No. 2:15-00234 (WJM), 2015 U.S. Dist. LEXIS 104387, at *8 n.4 (D.N.J. Aug. 10, 2015) (holding that NYAG press release was non-hearsay as it was "offer[ed] . . . to show that the NYAG officially made those allegations in a public meeting").

## IV. Evidence Relating to the Injunction's Effect on DPPs' Alleged Injury Is Highly Probative and Not Unfairly Prejudicial to DPPs

DPPs claim that the Settlement Agreement and Press Release are "prejudicial" solely because the documents are harmful to DPPs' case and not because the documents unfairly prejudice DPPs. But Rule 403 is concerned only with unfair prejudice, not the damage to a party's case that results from the legitimate probative force of the challenged evidence. *United States v. De Lillo*, 620 F.2d 939, 947 n. 2 (2d Cir. 1980) ("The prejudice resulting to [a party] from the fact that introduction of the evidence was damaging to their case is, of course, not the kind of prejudice against which Fed. R. Evid. 403 protects . . . ."); *see also United States v. Mohr*, 318 F.3d 613, 619 (4th Cir. 2003) (finding that unfair prejudice "does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence") (citation omitted). Evidence is excludable under Rule 403 only if it "damages an opponent for reasons other than its probative value, for instance, an appeal to emotion, and only when that unfair prejudice *substantially* outweighs the probative value of the evidence." *Mohr*, 318 F.3d at 619-20 (internal quotation marks and citation omitted); *see also Scott v. WPIX, Inc.*, No. 10 Civ. 4622 (WHP), 2012 U.S. Dist. LEXIS 78284, at *4 (S.D.N.Y. May 17, 2012) (Rule 403 primarily offers protection against evidence that provides an "improper basis" for the jury's verdict); *Yates v. Ford Motor Co.*, No. 5:12-CV-752-FL, 2015 U.S. Dist. LEXIS 64309, at *66-67 (E.D.N.C. May 11, 2015) ("There is nothing unfairly prejudicial about an official document representing itself as an official document."); Fed. R. Evid. 403 notes of advisory committee on proposed rules ("Unfair prejudice within [Rule 403's] context means an undue tendency to suggest decision on an improper basis . . . ."). DPPs identify no prejudice beyond the fact that the two documents undermine their entire theory of the hard switch portion of the case.

As the Court's collateral estoppel ruling has removed from trial the issue of whether Forest's February 2014 announcement was anticompetitive, most of the documents from the NYAG Action are irrelevant and should not come into evidence at trial. ECF No. 800, Mem. in Supp. of Forest's Mot. *In Limine* 16 to Prevent Improper Use of the Court's Collateral Estoppel Order at 2. However, certain documents from the NYAG Action are relevant to the hard switch issues that remain for trial: whether and to what extent DPPs suffered harm from the February 2014 announcement. The Settlement Agreement and Press Release at issue in this motion are two such documents. Moreover, if the Court permits DPPs to offer evidence that the NYAG pursued an injunctive action against Forest, admitting the final Settlement Agreement and Press Release is necessary in fairness to explain to the jury the outcome of that Action and how the NYAG viewed the resolution of that case. *Cf.* Fed. R. Evid. 106 (permitting introduction of additional evidence "that in fairness ought to be considered at the same time"). DPPs claim that the Press Release and Settlement Agreement contain "ultimate issues of fact for the jury." DPPs' MIL 10 at 9. But neither the Settlement Agreement nor the Press Release discusses any alleged harm to DPPs as a result of the announcement.

Ultimately, DPPs' arguments go to the weight of the evidence and not its admissibility. DPPs remain free to attempt to undermine the evidence through cross-examination. As explained by the Supreme Court, "the admission of a report [under the public records exception] . . . is subject to the ultimate safeguard – the opponent's right [at trial] to present evidence tending to contradict or diminish the weight of those conclusions." *Beech*, 488 U.S. at 169; *see also Taylor v. Bouchard Transp. Co.*, No. 89 Civ. 5965 (PKL), 1991 U.S. Dist. LEXIS 7993, at *13 (S.D.N.Y. June 12, 1991) (denying motion to exclude government report, explaining "[i]t is important to recall that, as with any piece of admitted evidence, the ultimate determination of the Report's trustworthiness

will rest with the jury. The weight and credibility extended to government reports admitted as exceptions to the hearsay rule are to be determined by the trier of fact.") (internal quotation marks omitted); *LaBarre v. Werner Enters.*, No. 1:12-CV-1316 (MAD), 2015 U.S. Dist. LEXIS 162598, at *22 (N.D.N.Y. Dec. 4, 2015) ("The reliability of [the New York state police report's] investigation, findings of facts, and conclusions are subject to cross examination at trial and are not for preclusion.").

## CONCLUSION

For the foregoing reasons, Forest respectfully requests that the Court deny DPPs' Motion *In Limine* No. 10 to Exclude Statements from the New York Attorney General.

Dated: June 14, 2019

Respectfully submitted,

**WHITE & CASE LLP**

By: /s/ Heather M. Burke

| | |
|---|---|
| Beth Wilkinson | Martin M. Toto |
| Rakesh Kilaru | Heather K. McDevitt |
| Kieran Gostin | John H. Chung |
| WILKINSON WALSH + ESKOVITZ | Michael E. Hamburger |
| 2001 M Street NW, 10th Floor | William H. Bave, III |
| Washington, D.C. 20036 | Kristen O'Shaughnessy |
| Telephone: (202) 847-4000 | Kevin C. Adam |
| | WHITE & CASE LLP |
| **Counsel for Defendants Actavis plc, Forest Laboratories, LLC, Forest Laboratories, Inc., and Forest Laboratories Holdings Ltd.** | 1221 Avenue of the Americas |
| | New York, New York 10020 |
| | Telephone: (212) 819-8200 |
| | |
| | J. Mark Gidley |
| | Christopher M. Curran |
| | Eric Grannon |
| | WHITE & CASE LLP |
| | 701 Thirteenth Street, NW |
| | Washington, DC 20005 |
| | Telephone: (202) 626-3600 |
| | |
| | Heather M. Burke |
| | Eric E. Lancaster |
| | WHITE & CASE LLP |
| | 3000 El Camino Real |

13

2 Palo Alto Square, Ste. 900
Palo Alto, CA 94306
Telephone: (650) 213-0300

**Counsel for Defendants Actavis plc, Forest Laboratories, LLC, Forest Laboratories, Inc., and Forest Laboratories Holdings Ltd.**

14