IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE NAMENDA DIRECT PURCHASER ANTITRUST LITIGATION | Case No. 1:15-cv-07488-CM (RWL) |

**FOREST'S OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 12:
EXCLUDE EVIDENCE OF ANY PARTY'S SIZE OR FINANCIAL CONDITION**

**WHITE & CASE LLP**

*Counsel for Defendants Actavis plc, Forest Laboratories, LLC, Forest Laboratories, Inc., and Forest Laboratories Holdings Ltd*

## **TABLE OF CONTENTS**

ARGUMENT ................................................................................................................................. 1

    I.      The Size and Financial Condition of the Parties is Relevant .................................. 1

          A.   Evidence of DPPs' Size and Financial Condition is Relevant to Buying Power and Claimed Damages ................................................................................ 2

          B.   Evidence of Forest's Size and Financial Condition is Relevant to Whether The Reverse Payment Was "Large" ...................................................................... 6

    II.     DPPs' Motion is Overbroad and Premature............................................................ 7

CONCLUSION ............................................................................................................................... 9

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*,
 No. 14-CV-6544(KAM)(GRB), 2019 U.S. Dist. LEXIS 91965 (E.D.N.Y. May
 31, 2019) ...................................................................................................................................4

*Baxter Diagnostics, Inc. v. Novatek Med., Inc.*,
 No. 94 Civ. 5220 (AJP), 1998 U.S. Dist. LEXIS 15093 (S.D.N.Y. Sept. 25,
 1998) .........................................................................................................................................7

*Dial Corp. v. News Corp.*,
 No. 13cv6802, 2016 U.S. Dist. LEXIS 20427 (S.D.N.Y. Feb. 17, 2016) .................................4

*Ferreira v. City of Binghamton*,
 No. 3:13-CV-107, 2016 U.S. Dist. LEXIS 126011 (N.D.N.Y. Sept. 16, 2016) ........................8

*FTC v. Actavis, Inc.*,
 570 U.S. 136 (2013) ..............................................................................................................1, 6

*Griffith v. Goodyear Dunlop Tires N. Am., Ltd.*,
 No. 11-cv-761S, 2018 U.S. Dist. LEXIS 167976 (W.D.N.Y. Sept. 28, 2018) ..........................8

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
 256 F.R.D. 82 (D. Conn. 2009) .................................................................................................3

*In re Nexium (Esomeprazole) Antitrust Litig.*,
 42 F. Supp. 3d 231 (D. Mass. 2014) .........................................................................................6

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
 No. 07-md-01819 CW, 2010 U.S. Dist. LEXIS 146403 (N.D. Cal. Dec. 16,
 2010) .........................................................................................................................................4

*In re TFT-LCD (Flat-Panel) Antitrust Litig.*,
 No. 3:07-md-01827-SI, Transcript of Proceedings (N.D. Cal. Aug. 2, 2013),
 ECF No. 8394 ...........................................................................................................................5

*Leegin Creative Leather Prods. v. PSKS, Inc.*,
 551 U.S. 877 (2007) ..........................................................................................................1, 2, 4

*MLB Props., Inc. v. Salvino, Inc.*,
 542 F.3d 290 (2d Cir. 2008) .................................................................................................1, 2

*Reilly v. NatWest Mkts. Grp. Inc.*,
 181 F.3d 253 (2d Cir. 1999) ......................................................................................................8

*Telewizja Polska USA, Inc. v. Echostar Satellite Corp.*,
   No. 02 C 3293, 2004 U.S. Dist. LEXIS 20845 (N.D. Ill. Oct. 14, 2004) .................................. 8

*Union Carbide Corp. v. Montell N.V.*,
   28 F. Supp. 2d 833 (S.D.N.Y. 1998) ....................................................................................... 2

*United States v. Al-Moayad*,
   545 F.3d 139 (2d Cir. 2008) .................................................................................................... 2

*United States v. Certified Envtl. Servs., Inc.*,
   753 F.3d 72 (2d Cir. 2014) ...................................................................................................... 2

*United States v. Quattrone*,
   441 F.3d 153 (2d Cir. 2006) .................................................................................................... 2

## MISCELLANEOUS

Fed. R. Evid. 401 ............................................................................................................................ 2

DPPs seek a blanket ruling excluding all evidence of any party's size or financial condition. But such evidence is relevant and admissible at this rule of reason trial. The Supreme Court held in *Actavis* that the rule of reason governs reverse payment agreements. *FTC v. Actavis, Inc.*, 570 U.S. 136, 158-59 (2013) (declining to "proceed via a 'quick look' approach" and instead "applying [the] 'rule of reason'"). The Supreme Court has also made clear that under the rule of reason the "factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Leegin Creative Leather Prods. v. PSKS, Inc.*, 551 U.S. 877, 885-86 (2007) (quoting *Continental T.V. v. GTE Sylvania Inc.*, 433 U.S. 36, 49 (1977)); *see also MLB Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 316-17 (2d Cir. 2008).

First, evidence of DPPs' size and financial condition is relevant to show that DPPs, as well as other members of their class, were powerful buyers that could resist alleged overcharges or mitigate them through other negotiated non-price terms of sale. Excluding this relevant evidence would deprive Forest of the ability to pursue critical defenses against DPPs' damages claims at trial. Moreover, DPPs' motion is silent regarding how such evidence would be unfairly prejudicial. Second, the size and financial condition of Forest and Allergan are relevant to whether Forest's payment to Mylan was "large" under *Actavis*. Finally, DPPs' motion should be denied because it is overly broad and premature. DPPs do not articulate why this evidence is improper, let alone explain why a ruling now, before the Court has the opportunity to assess this evidence, is warranted.

## ARGUMENT

### I.   The Size and Financial Condition of the Parties is Relevant

DPPs' motion must be denied because the size and financial condition of the Plaintiffs, other drug wholesalers in the class, and Forest, among others, is relevant. Evidence is relevant if

"(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "[T]he definition of relevance under Fed. R. Evid. 401 is very broad," *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 90 (2d Cir. 2014), and as a result, the standard for relevance is "very low." *See United States v. Al-Moayad*, 545 F.3d 139, 176 (2d Cir. 2008). "[S]o long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry." *United States v. Quattrone*, 441 F.3d 153, 188 (2d Cir. 2006).

As a threshold issue, the size and financial condition all of the entities in this case is relevant to understanding whether the challenged conduct here imposed an unreasonable restraint on trade. *See, e.g.*, *Leegin*, 551 U.S. at 885-86 ("Under [the rule of reason], the factfinder weighs *all of the circumstances* of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition.") (emphasis added); *MLB Props.*, 542 F.3d at 316-17 ("the rule of reason requires the factfinder to decide whether under all the circumstances of the case the restrictive practice imposes an unreasonable restraint on competition") (quotation marks and citation omitted).

But, as outlined in further detail below, the size and financial condition of DPPs, and other members of the class, is also relevant to their buying power and alleged damages (Section I.A), as is the size and financial condition of Forest to assessing whether the alleged "reverse payment" that DPPs claim is at issue here was "large" under *Actavis* (Section I.B).

    **A.**    **Evidence of DPPs' Size and Financial Condition is Relevant to Buying Power and Claimed Damages**

To prevail on their antitrust claims, DPPs must prove at trial that they have sustained antitrust damages. Evidence of financial status is relevant to that issue. *See, e.g.*, *Union Carbide*

*Corp. v. Montell N.V.*, 28 F. Supp. 2d 833, 840-41 (S.D.N.Y. 1998) (evidence of antitrust plaintiff's financial status "is admissible to prove causation and to mitigate damages."). At trial, DPPs will seek to prove that they suffered damages in the form of overcharges "as a result of having to pay higher prices for brand Namenda than for generic Namenda," due to the alleged reverse payment settlement and product hop. ECF No. 699-1, Revised Pls.' Contentions ("DPPs' Cont.") at ¶ 215. DPPs propose that the jury calculate the amount of overcharge damages "owed to the Class . . . [by] determin[ing] the difference between the prices the Class of direct purchasers actually paid for Namenda XR, Namenda IR, and/or generic Namenda IR and the prices they would have paid had Defendants not engaged in their unlawful conduct." ECF No. 701, Pls.' Revised Proposed Jury Instructions at 102.

But what prices DPPs and other class members paid, would have paid, or could have paid very much depends on their buying power. That is, the larger the buyer and the greater its financial strength, the lower the price it may have paid, which is relevant to how much, if at all, wholesalers were allegedly "overcharged" for their Namenda purchases. *See, e.g.*, *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. 82, 88-89 (D. Conn. 2009) ("[I]t is possible for a plaintiff to suffer antitrust injury-in-fact and yet have no damages because it has taken steps to mitigate the actual price paid through rebates, discounts, and other non-price factors such as lowered shipping costs, technical services, or any other type of purchase incentive.").

DPPs are wrong that "[t]he comparative size of any class member is irrelevant." ECF No. 750, Mem. in Supp. of Pls.' Mot. *In Limine* No. 12: Exclude Evidence of Any Party's Size or Financial Condition ("DPPs' MIL 12") at 1. Forest should be allowed to introduce evidence at trial about the wholesalers' size and financial condition to determine whether they had buying power sufficient to push back on Forest and negotiate lower prices for its Namenda IR and

Namenda XR, rather than "having" to pay allegedly supracompetitive prices. Indeed, courts have found that evidence of parties' size or financial condition in antitrust cases is admissible, like here, when it is relevant to the parties' relative bargaining power. *See, e.g.*, *Dial Corp. v. News Corp.*, No. 13cv6802, 2016 U.S. Dist. LEXIS 20427, at *10 (S.D.N.Y. Feb. 17, 2016) (denying to motion to exclude "evidence of the size, financial condition, or profitability of class members" as "[t]his evidence may be relevant to the parties' relative bargaining power"); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-01819 CW, 2010 U.S. Dist. LEXIS 146403, at *56 (N.D. Cal. Dec. 16, 2010) (allowing evidence of class representative's financial condition in an antitrust case "to the extent that it is relevant to their bargaining power"); *see also Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, No. 14-CV-6544(KAM)(GRB), 2019 U.S. Dist. LEXIS 91965, at *15-16 (E.D.N.Y. May 31, 2019) (finding admissible financial and production capacity evidence "necessary to support a determination of damages").

Moreover, DPPs should not be allowed to hide from the jury the fact that there is a considerable size difference between the DPPs that may testify at trial and other large members of the very same class that will not. The size of each purchaser impacts its buying patterns, for example, which is particularly important when it comes to purchases allegedly made as the result of Forest's February 2014 Announcement. The jury's ability to understand how DPPs and other larger wholesalers fit into the larger distribution chain, or play different roles, is critical to understanding the overall allegations in the case and to the jury's role in a rule of reason case of "weigh[ing] all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Leegin*, 551 U.S. at 885-86. With DPPs seeking to use a common damages model across all purchasers, in fairness, Forest

should be allowed to explore on cross-examination whether the damages model is unsuitable for certain purchasers.

Nor would evidence about the size and financial condition of DPPs or other class members be prejudicial to DPPs.  Indeed, the only concern DPPs even raise is that Forest has "pejoratively" described certain class members as the "Big Three."  DPPs' MIL 12 at 1-2.  But DPPs' own witnesses use that term to describe their competitors, as do many other industry participants.  *See, e.g.*, Ex. 1, Dep. of Lawrence Doud ("Doud Dep.") 49:20-25 ("They're owned by -- well, H.D. Smith is owned by the Smith family.  But *the big three* are owned by Wall Street, the shareholders that invest in them and -- on Wall Street.") (emphasis added); Ex. 2, Dep. of Jim Benton ("Benton Dep.") 229:6-16 ("It's just a market that all of us live in.  All drug wholesalers.  If you listen to *any of the big three's* quarterly reports, their driver is generics.") (emphasis added).  DPPs have cited to no authority that supports that such a term is prejudicial.  In fact, other courts have specifically found that evidence regarding size and financial condition of a plaintiff *is not* prejudicial.  *See e.g.*, *In re TFT-LCD (Flat-Panel) Antitrust Litig.*, No. 3:07-md-01827-SI, Transcript of Proceedings at 1137:3-9 (N.D. Cal. Aug. 2, 2013), ECF No. 8394 (regarding evidence of plaintiff Best Buy's large profits, "I find that it's relevant to a modest extent to probably the market power and some of the other arguments that the defendants will make.  And I do not find that it's prejudicial to Best Buy that it made a lot of money.  That's what we do in this country.  So I just don't see that as unduly prejudicial.").

Where the size and financial condition of DPPs and members of their class is relevant, and DPPs fail to articulate any legitimate prejudice, DPPs' motion should be denied.

### B. Evidence of Forest's Size and Financial Condition is Relevant to Whether The Reverse Payment Was "Large"

Evidence regarding the size of Forest (and Mylan) is also relevant to the question of whether the alleged "payment" here is "large." *See Actavis*, 570 U.S. at 158 (2013) ("the likelihood of a reverse payment bringing about anticompetitive effects depends upon its size, its scale in relation to the payor's anticipated future litigation costs, its independence from other services for which it might represent payment, and the lack of any other convincing justification."). DPPs argue that Forest made a large, unexplained payment to Mylan to get Mylan to settle the patent case. DPPs' Cont. at ¶ 218. But, under the applicable law, DPPs must prove at trial that the unexplained portion of the payment (if any) is large enough to suggest that the brand made the payment because it had significant concerns about the validity of its patent. *See Actavis*, 570 U.S. at 156-159; *see also In re Nexium (Esomeprazole) Antitrust Litig.*, 42 F. Supp. 3d 231, 262 (D. Mass. 2014); Forest's Opp'n to Pls.' Mot. *In Limine* No. 7: Preclude Improper Justifications for the Lexapro Amendment; Forest's Opp'n to Pls.' Mot. *In Limine* No. 8: Preclude Forest from Asserting Improper Arguments Concerning the Size of its Reverse Payment and Purported Saved Litigation Costs ("Forest Opp. MIL 8").

The jury, however, cannot be asked to answer the question of "largeness" in this rule of reason case without any context about the parties to the agreement and the products at issue. *See, e.g.*, ECF No. 704-2, Forest's Proposed Jury Charge at 53-54 ("Finally, for a payment to be large, it must be large from the perspective of both parties, not just one of the parties. Even if you find that the payment was large from the perspective of Forest, you must also determine whether the payment was large from the perspective of Mylan. For a payment to be large from the perspective of Mylan, it must be large enough to induce Mylan to agree to the alleged delay in generic entry."); *see also* Forest Opp. MIL 8. Indeed, the size of the companies, the types of products they sell,

6

how many products they sell, what their margins are, and other general business information about the companies are facts relevant to DPPs' claims here because those financial metrics factor into whether the financial downside of potentially losing the patent case would incentivize Forest to want to settle with Mylan, as well as whether an alleged payment of a certain size would supposedly incentive Mylan to want to settle with Forest. Without knowing the size and financial strength of the parties to the agreement, there is no way for the jury to assess "largeness" *from the perspective of the parties to the agreement*, as opposed to from the perspective of an individual juror.

Nor does DPPs' motion raise a single concern about how evidence regarding the size and financial condition of Forest is in any way unfairly prejudicial to DPPs. Indeed, the jury is more likely to be confused without this evidence than with it. Precluding Forest from offering evidence about its size and financial condition (as well as the size and financial condition of Mylan) would block Forest's ability to present relevant evidence, with no offsetting benefit for the truth-finding function of the trial. Thus, DPPs' motion should be denied.

## II.     DPPs' Motion is Overbroad and Premature

DPPs ask this Court to exclude any "evidence or argument at trial of its, or any plaintiff's, size or financial condition." DPPs' MIL 12 at 1. DPPs do not, however, point to any specific documents or testimony that Forest has indicated it intends to offer. Rather, DPPs seek a blanket ruling; courts routinely deny motions *in limine* requesting exclusion of evidence of financial condition that "lack[] the necessary specificity with respect to the evidence to be excluded" and are "too sweeping in scope to be decided in limine." *See Baxter Diagnostics, Inc. v. Novatek Med., Inc.*, No. 94 Civ. 5220 (AJP), 1998 U.S. Dist. LEXIS 15093, at *10-11 (S.D.N.Y. Sept. 25, 1998) (denying motion *in limine* seeking to exclude "all evidence of . . . financial condition") (internal quotations omitted) (citing *Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276,

287 (S.D.N.Y. 1996)); *Ferreira v. City of Binghamton*, No. 3:13-CV-107, 2016 U.S. Dist. LEXIS 126011, at *42 (N.D.N.Y. Sept. 16, 2016) (reserving ruling on motion *in limine* seeking to exclude financial status until raised at trial); *Griffith v. Goodyear Dunlop Tires N. Am., Ltd.*, No. 11-cv-761S, 2018 U.S. Dist. LEXIS 167976, at *23-24 (W.D.N.Y. Sept. 28, 2018) (denying motion *in limine* and refusing to issue blanket ruling excluding all evidence of corporate ownership, size, or financial status).

There is no dispute that DPPs' class representatives are small compared to other larger wholesalers in the class. *See, e.g.*, Ex. 1, Doud Dep. 39:4-13 ("But the point is, is that we never get the deal. We never get the deal for our guys. McK- -- do you think McKesson, Cardinal – you're asking the question. I'm saying McKesson, Cardinal, and Amerisource, these are anywhere from 200 billion down to 140 billion or so. They're getting deals because they -- they can drive it. Because if they say to Forest or Pfizer or anybody, listen, we're not going to distribute your products the way you -- this just isn't going to happen."). If DPPs expect to call one class representative from a co-op of small independent pharmacies in order to levy favor from the jury in a David versus Goliath story, Forest should be allowed to introduce evidence of Plaintiffs' financial condition for the purpose of providing context to the jury. *See Telewizja Polska USA, Inc. v. Echostar Satellite Corp.*, No. 02 C 3293, 2004 U.S. Dist. LEXIS 20845, at *24 (N.D. Ill. Oct. 14, 2004) (denying motions *in limine* to exclude evidence of "size, power, net worth, assets, or wealth" where movant had placed those topics at issue). DPPs' cases also illustrate this point. *See, e.g., Reilly v. NatWest Mkts. Grp. Inc.*, 181 F.3d 253, 266 (2d Cir. 1999) (allowing evidence of financial condition, etc. "to impeach the testimony of a witness who 'opens the door' to the subject.")

Without identifying specific evidence to exclude, DPPs' motion *in limine* seeking to exclude any evidence of financial condition or size is overbroad and premature.

## **CONCLUSION**

Accordingly, Forest respectfully requests this Court deny Plaintiffs' Motion *In Limine* No. 12.

Dated: June 14, 2019                                                                Respectfully submitted,

**WHITE & CASE**LLP

By: */s/ Heather M. Burke*

| | |
|---|---|
| Beth Wilkinson | Martin M. Toto |
| Rakesh Kilaru | Heather K. McDevitt |
| Kieran Gostin | John H. Chung |
| WILKINSON WALSH + ESKOVITZ | Michael E. Hamburger |
| 2001 M Street NW, 10th Floor | William H. Bave, III |
| Washington, D.C. 20036 | Kristen O'Shaughnessy |
| Telephone: (202) 847-4000 | Kevin C. Adam |
| | WHITE & CASE LLP |
| **Counsel for Defendants Actavis plc, Forest Laboratories, LLC, Forest Laboratories, Inc., and Forest Laboratories Holdings Ltd.** | 1221 Avenue of the Americas |
| | New York, New York 10020 |
| | Telephone: (212) 819-8200 |
| | |
| | J. Mark Gidley |
| | Christopher M. Curran |
| | Eric Grannon |
| | WHITE & CASE LLP |
| | 701 Thirteenth Street, NW |
| | Washington, DC 20005 |
| | Telephone: (202) 626-3600 |
| | |
| | Heather M. Burke |
| | Eric E. Lancaster |
| | WHITE & CASE LLP |
| | 3000 El Camino Real |
| | 2 Palo Alto Square, Ste. 900 |
| | Palo Alto, CA 94306 |
| | Telephone: (650) 213-0300 |
| | |
| | **Counsel for Defendants Actavis plc, Forest Laboratories, LLC, Forest** |

                    **Laboratories, Inc., and Forest Laboratories Holdings Ltd.**