**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE NAMENDA DIRECT PURCHASER ANTITRUST LITIGATION | Case No. 1:15-cv-07488-CM (RWL) |

**FOREST'S OPPOSITION TO
PLAINTIFFS' MOTION *IN LIMINE* NO. 1:
TO PRECLUDE FOREST FROM ASSERTING ITS SUBJECTIVE
BELIEFS CONCERNING THE '703 PATENT THAT IT BLOCKED
<u>DURING DISCOVERY ON PRIVILEGE AND WORK-PRODUCT GROUNDS</u>**

**WHITE & CASE LLP**

*Counsel for Defendants Actavis plc, Forest Laboratories, LLC, Forest Laboratories, Inc., and Forest Laboratories Holdings Ltd.*

# **TABLE OF CONTENTS**

BACKGROUND ........................................................................................................................ 2

    I.    Magistrate Judge Francis Ordered that Forest Make A Preliminary Disclosure Regarding the Subjective Beliefs on which it Intended to Rely ................................. 2

    II.    Consistent with Magistrate Judge Francis's Order, Forest Made Its Preliminary Disclosure ........................................................................................................................ 3

    III.    Magistrate Judge Francis Ordered the Production of Several Privileged Documents ....................................................................................................................... 5

    IV.    There Was a Separate Post-Waiver Discovery Phase Devoted to the Privileged Documents ....................................................................................................................... 7

ARGUMENT ............................................................................................................................. 10

CONCLUSION .......................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*FTC v. Actavis, Inc.*,
  570 U.S. 136 (2013) ........................................................................................................... 10

*In re Androgel Antitrust Litig. (No. II)*,
  No. 1:09-CV-955-TWT, 2018 U.S. Dist. LEXIS 99716 (N.D. Ga. June 14,
  2018) ................................................................................................................................... 11

*In re Lidoderm Antitrust Litig.*,
  No. 14-md-02521-WHO, 2016 U.S. Dist. LEXIS 105619 (N.D. Cal. Aug. 9,
  2016) ................................................................................................................................... 12

*In re Lipitor Antitrust Litig.*,
  868 F.3d 231 (3d Cir. 2017) ............................................................................................... 10

*In re Loestrin 24 Fe Antitrust Litig.*,
  261 F. Supp. 307 (D.R.I. 2017) .......................................................................................... 11

## **STATUTES AND RULES**

Fed. R. Evid. 401 ........................................................................................................................ 1

Fed. R. Evid. 403 ........................................................................................................................ 1

Based on its continued evaluation of the case, and in light of the Court's guidance at the June 4, 2019 status conference regarding subjective belief disclosure, Forest no longer intends to rely at trial on evidence of its subjective beliefs regarding the strength of the '703 patent. The strength of that patent will be demonstrated through objective evidence.

As a result, there is no basis for continuing to allow DPPs to rely on the five documents that allegedly reflect Forest's subjective beliefs about any linkage between the Mylan Settlement Agreement and the Lexapro Amendment. In depositions of company witnesses that DPPs requested regarding these documents, Forest's witnesses made clear that the documents cannot be understood without reference to Forest's subjective beliefs about patent strength. As those witnesses explained, there was no need to use the Lexapro Amendment in this manner because Forest had determined the patent was strong and would have withstood Mylan's challenge. *See, e.g.*, ECF No. 699-2, Defs.' Contentions ("Forest's Cont.") at 3-4, 7-9.

To prevent Forest from being put in the fundamentally unfair position of having its own documents introduced at trial without its witnesses being able to provide the jury with a full picture, Forest asks that the Court exclude these documents from trial. *See* Fed. R. Evid. 401, 403. Under those circumstances, Forest would withdraw any intention to rely on its subjective belief that there is no connection between the Mylan Settlement Agreement and the Lexapro Amendment.

In short, both sides would be precluded from putting on evidence of Forest's subjective beliefs regarding the linkage between the Mylan Settlement Agreement and the Lexapro Amendment. While Forest would continue to rely on its subjective beliefs to explain its business justifications for entering into the Lexapro Amendment—*e.g.*, that it would receive significant Medicaid savings from the new arrangements with Mylan—it would not provide "subjective belief" testimony that the Lexapro Amendment and Mylan Settlement Agreement were

independent. That approach avoids the unfairness of DPPs' proposal and appropriately streamlines the issues for trial.

## BACKGROUND

DPPs have now submitted three separate filings seeking to preclude Forest from offering certain "subjective belief" testimony. *See* ECF No. 685, Pls.' Mot. to Enforce Forest's Election Against Relying on Its Subjective Beliefs; ECF No. 713, Pls.' Opp'n. to Forest's Mot. for Leave to Supp. Expert Reps. of Roderick McKelvie and Dr. Lona Fowdur; ECF No. 739, Mem. in Supp. of Pls.' Mot. *In Limine* No. 1: Preclude Forest from Asserting Subjective Beliefs Concerning the '703 Patent That It Blocked During Discovery on Privilege and Work-Product Grounds ("DPPs' MIL 1"). None of those submissions, however, have presented a full picture of the privilege issues in this case.

### I. Magistrate Judge Francis Ordered that Forest Make A Preliminary Disclosure Regarding the Subjective Beliefs on which it Intended to Rely

From the outset of this case, DPPs have sought to limit Forest's ability to assert certain key defenses by threatening Forest with a broad "at issue" privilege waiver. As early as April 6, 2017, for example, DPPs sent Forest a letter claiming that Forest's mere assertion of affirmative defenses in its Answer had triggered a wholesale "at issue" privilege waiver. *See* Ex. 1, Letter from N. Silverman to K. Adam dated April 6, 2017. At that time, Forest had yet to even complete its document production, let alone serve DPPs with a privilege log. Nevertheless, just days later DPPs filed a motion to compel the production of all of Forest's privileged documents related to "internal legal analysis of *the patent merits* and discussions regarding the settlement negotiations." *See* ECF No. 202, Mem. in Supp. of Pls.' Mot. to Compel Prod. Of Docs. at 2-3, 19-24 (April 18, 2017) (emphasis added).

DPPs argued that Forest was required as a matter of law to make an all-or-nothing choice, before document production was complete and even a single deposition had been taken: either abandon certain defenses or produce to DPPs all Forest's privileged documents. *Id.* at 20-22, 24. Forest opposed DPPs' motion, arguing, among other things, that DPPs' motion was premature, that Forest had not yet put "at issue" any subjective beliefs necessitating a wholesale waiver of privilege, and that all of Forest's assertions to date were supported by objective evidence. *See* ECF No. 232, Forest's Opp'n. to Pls. First Mot. to Compel at 7-19 (May 3, 2017).

On May 19, 2017, Magistrate Judge Francis denied DPPs' motion to compel, but noted that he could not conclude, at the outset of discovery, whether Forest would trigger waiver by asserting certain defenses or raising certain "subjective beliefs" in the future. *See* ECF No. 249, Mem. & Order ("First Mot. to Compel Order") at 13-14. Given the constraints of the expedited schedule in this case, Magistrate Judge Francis ordered Forest to disclose to him and DPPs "any subjective beliefs it will rely on in its defense of this action" for him to assess whether those "subjective beliefs" would trigger a waiver. *See* First Mot. to Compel Order at 14.

## II. Consistent with Magistrate Judge Francis's Order, Forest Made Its Preliminary Disclosure

On June 2, 2017, Forest submitted its "Disclosure," which outlined the subjective beliefs Forest expected to rely on at trial. *See generally* ECF No. 281-1, Forest's Disclosure Pursuant to the May 19, 2017 Mem. & Order ("Disclosure"). Because discovery was in its infancy and Magistrate Judge Francis would evaluate whether Forest's intended reliance on the subjective beliefs listed in the Disclosure would itself trigger a waiver, Forest made clear that it "reserves the right to reconsider its introduction or reliance upon that 'subjective belief' and amend this disclosure, as necessary," " [t]o the extent the Court finds that introduction or reliance upon any of the 'subjective beliefs' described below would constitute a waiver or otherwise require

production of privileged materials." *Id.* at 3 (citing *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2016 U.S. Dist. LEXIS 105619, at *39 (N.D. Cal. Aug. 9, 2016) (permitting defendants to choose whether to rely on their subjective beliefs informed by attorney advice and waive privilege or rely on objective evidence and protect privileged communications)).  Forest also reserved the right to respond fully to questioning by DPPs that implicated "subjective beliefs":

> In addition, to the extent that Plaintiffs elicit or present evidence of Forest's "subjective beliefs" on the topics below—for example, by questioning Forest witnesses about their subjective beliefs at depositions or on cross examination at trial, among other things—Forest believes that, in the interest of fairness, Forest must be permitted to respond without waiving privilege.

*Id.*  DPPs never objected to these reservations of rights.

With those caveats, Forest disclosed that it expected at that time to offer subjective evidence on (1) "Business Justifications for the Mylan and Orchid Business Agreements," (2) "General Experience with ANDAs, Generic Manufacturers, and Patent Litigations," and (3) "Terms of the Agreed Upon Namenda IR Patent Litigation Settlements." *Id.* at 3-4.  The first category includes, in part, the evidence that is the subject of this motion, regarding the "independence" of the Lexapro Amendment from "the then-pending patent litigation[] and . . . settlement agreement[]." *Id.* at 4.  Given Magistrate Judge Francis's reliance on *Lidoderm*, Forest reasonably understood that Magistrate Judge Francis would evaluate Forest's Disclosure and then make a ruling, one way or the other, on whether Forest's anticipated "subjective beliefs" would require waiver.

There is little doubt that, at the time Forest made its Disclosure in June 2017, Forest was attempting to safeguard its attorney-client and work-product privilege.  Indeed, Forest expressly said so in its Disclosure, reserving the right to amend that document and making clear that it did "not intend to waive any attorney-client privilege or attorney work product protections (or any

other privileges), or to put any privileged communications at issue, by introducing or relying upon any of the 'subjective beliefs' listed below in its defense of this action." Disclosure at 2.

### III. Magistrate Judge Francis Ordered the Production of Several Privileged Documents

On June 15, 2017, while the parties awaited Magistrate Judge Francis's ruling on Forest's Disclosure, DPPs filed a second motion to compel privileged documents. *See* ECF No. 272, Mem. in Supp. of Pls.' Mot. to Compel at 3 (publicly available at ECF No. 281). On August 2, 2017, Magistrate Judge Francis denied DPPs' second motion to compel but raised specific concerns that the subjective beliefs Forest had outlined in its Disclosure may have resulted in a waiver of privilege. *See* ECF No. 348, Mem. & Order ("Second Mot. to Compel Order") at 9 ("And yet Forest has failed to explain, with evidence or argument . . . why protection over the specific documents identified by the plaintiffs has not been waived.").

Contrary to DPPs' contentions that "it was clear to the parties that Forest's [Disclosure] was going to be binding and that the parties could rely on it in conducting discovery," Magistrate Judge Francis explained, consistent with Forest's understanding, that he had *not* yet ruled on whether the subjective beliefs that Forest expected to offer in support of its defense could trigger a potential privilege waiver. Second Mot. to Compel Order at 4 ("In light of Forest's representation that it would produce a privilege log on or before June 30, 2017, and would make significant production of documents in the surrounding weeks (Def. Initial Memo. at 7), I deferred resolution of the plaintiffs' motion."). In denying DPPs' second motion, Magistrate Judge Francis once again deferred his ruling on privilege waiver, this time until after briefing was complete on DPPs' planned "omnibus motion." *Id.* at 11-12.

On August 29, 2017, DPPs filed their "omnibus" motion to compel Forest's privileged documents. ECF No. 360, Mem. in Supp. of Pls.' Mot. to Compel Prod. of Docs. Withheld on the

Basis of Privilege (publicly available at ECF No. 366).  In that motion, DPPs argued that a broad waiver had already been triggered regarding "*all* of [Forest's] reasons for [the] settlements and side-deals" because Forest had placed its state of mind "at issue" by means of the Disclosure, certain discovery responses from Forest, and questioning of third-party witness.  *Id.* at 1, 4-10 (emphasis in original).  Briefing on this motion was completed on September 15, 2017, which was the last day of fact discovery under the operative case management order at the time.  ECF No. 376, Defs.' Opp'n to Pls.' Suppl. Mem. in Supp. of Pls.' Mot. to Compel. Production of Docs. Withheld on Basis of Privilege.

On September 20, 2017, Magistrate Judge Francis directed Forest to submit for his *in camera* review the 127 non-duplicative privileged documents DPPs alleged should be produced.  *See* ECF No. 387.  On September 25, 2017, Judge Magistrate Francis issued his decision on privilege waiver:

> Upon reviewing those documents, I conclude that, with the exceptions noted below, the documents are subject to the attorney-client privilege and/or work product protection, neither of which has been waived as to those documents.
> …
> The exception relates to five documents, some of which appear to be duplicates of one another. They are the documents identified at lines 76, 140, 160, 162, and 164 of Exhibit A to the Declaration of Dan Litvin dated August 29, 2017. Contrary to the defendants' position (Defendants' Opposition to Direct Purchaser Plaintiffs' August 29, 2017 Motion to Compel Production of Documents Withheld on the Basis of Privilege at 8-9), *these documents appear to link the Namenda settlements with the side agreements with Mylan and Orchid*. Accordingly, by September 29, 2017, the defendants shall produce these documents to the plaintiffs.

ECF No. 394, Mem. & Order ("Privilege Waiver Order") at 1 (emphasis added).

Despite DPPs' efforts in their current motion to characterize why Magistrate Judge Francis ruled that the privilege for these certain documents was waived (DPPs' MIL 1 at 13), or what he meant by "link," there is no such explanation in Magistrate Judge Francis's Privilege Waiver Order.  *See* Privilege Waiver Order at 1.  The citations in DPPs' motion supporting DPPs'

characterization of the Privilege Waiver Order are to Forest's Disclosure, not to any order from Magistrate Judge Francis. *See* DPPs' MIL 1 at 13. The Privilege Waiver Order was issued ten days after the close of fact discovery (ECF No. 394). *See* DPPs' MIL 1 at 13.

**IV.      There Was a Separate Post-Waiver Discovery Phase Devoted to the Privileged Documents**

Following the Privilege Waiver Order, the parties agreed to *a second phase of discovery devoted specifically to Forest's privilege waiver*, including the production of additional documents by Forest and two additional depositions of key Forest witnesses focused specifically on the privileged documents Forest had produced. For example, DPPs filed yet another motion with Magistrate Judge Francis on October 2, 2017, requesting additional discovery that they believed also "link[s] the Namenda settlements with the side agreement[] with Mylan." *See* ECF No. 403, Letter from D. Litvin to Magistrate J. Francis. Magistrate Judge Francis granted DPPs' request, and Forest made another production. *See* ECF No. 405, Mem. Endorsement (compelling production of Ex. 2, FRX-AT-03882414 (PX-130). The parties met and conferred about additional privileged documents that DPPs believed they were entitled to in light of the Privilege Waiver Order, and again Forest produced to DPPs additional privileged documents. Ex. 3, FRX-AT-04617751 (privileged email between Forest and Davis Polk discussing the generic Lexapro analysis); Ex. 4, FRX-AT-04617762 (privileged email between Forest and Davis Polk addressing the generic Lexapro amendment and the Medicaid best price analysis); Ex. 5, FRX-AT-04617769 (PX-1451) (privileged email between Forest and Davis Polk discussing Medicaid liability); Ex. 6, FRX-AT-04617778 (PX-1453) (privileged email between Forest and Davis Polk addressing various revisions to the generic Lexapro analysis).

Most notably, DPPs requested to take second depositions of Forest witnesses Charles Ryan and David Solomon to question them specifically about the privileged documents that were subject

to the waiver.  *See* Ex. 7, Nov. 7, 2017 Dep. of Charles Ryan ("Ryan (Nov. 7) Dep.") 334:23-23; Ex. 8, Nov. 15, 2017 Dep. of David Solomon ("Solomon (Nov. 15) Dep.") 379:25-380:3.

On November 7, 2017, Charles Ryan sat for his post-waiver discovery deposition. Concerned that DPPs would attempt to use the deposition to engineer a broader waiver than what Forest had agreed to when it produced the privileged documents, counsel for Forest started the deposition by making clear that Forest did not intend to trigger any additional privilege waiver, but that Mr. Ryan was entitled to answer DPPs' questions about the privileged documents fully:

> As Forest has stated throughout this litigation, and in particular in our May 19th, 2017 disclosures, Forest does not intend to waive the attorney-client privilege in this matter.  That said, and in accordance with that disclosure, the witness is here to answer the questions on those two documents, which, as you know, have been -- we have been compelled to produce by the Special Master.  We have produced them.  You have requested a deposition on those documents. We believe that in the interest of fairness and in accordance with the rule of completeness, the witness shall be permitted -- should be permitted to testify freely about those documents and completely, including any background that's necessary to answer your questions.  So it is our intention, we have brought this witness here to answer your questions, we don't intend to waive, but we do intend to allow the witness freedom to answer your questions.  If those rules of the road are not acceptable to you, then you are obviously welcome to withdraw the notice as we sit here.

*See* Ex. 7, Ryan (Nov. 7) Dep. 334:4-335:14.  DPPs chose to proceed with the deposition anyway. *Id.* 335:15-336:9.

DPPs asked Mr. Ryan about the relationship between the Lexapro Amendment and the Namenda settlement agreement with Mylan; Mr. Ryan answered regarding the lack of a connection between the Lexapro Amendment and Forest's view of the patent case (*i.e.*, whether the two agreements were improperly "linked").  *See* Ex. 7, Ryan (Nov. 7) Dep. 367:1-17. ("Q. But you are testifying here today that modifying the Lexapro authorized generic deal was not a component of the current settlement offer Forest was proposing to Mylan as of February 11, 2010? . . . A. So we were in [sic] -- so maybe I should back up.  So we had a very strong case.  We were prepared to

go to trial. We weren't going to give more than three months to anyone, including Mylan."). Far from an "ambush," Mr. Ryan's testimony constituted a reasonable explanation that provided necessary background to DPPs' question about the "Forest-Mylan Meeting" PowerPoint. Ex. 2, FRX-AT-03882414 (PX-130). In other words, Mr. Ryan testified, contrary to DPPs' arguments regarding the privileged documents, that there was no improper "linkage" between the Lexapro Amendment and Mylan settlement because Forest did not need to pay Mylan to settle Forest's strong patent case.

A similar situation arose at the post-waiver deposition of David Solomon on November 15, 2017. Once again, Forest's counsel explained at the outset of the deposition that in fairness "and under the rule of completeness," the witness "has a right to [answer your questions] fully, truthfully, and without omitting anything." Ex. 8, Solomon (Nov. 15) Dep. 379:16-380:3 (Toto). After repeated questions from DPPs about the settlement offer noted in the "Forest-Mylan Meeting" PowerPoint (*e.g.*, *Id.* 411:20-420:1), Mr. Solomon testified on redirect that the entry date offered to Mylan was non-negotiable because Forest believed it had a strong patent case—that is, any alleged value to Mylan for the Lexapro Amendment was not to shore up a weak patent case. *Id.* 421:12-422:5.

At both of those depositions, counsel for DPPs argued that Forest's witnesses had testified beyond the scope of Magistrate Judge Francis's Privilege Waiver Order, thereby triggering an even broader waiver of privileged documents. *See* Ex. 7, Ryan (Nov. 7) Dep. 370:20-371:15 ("Mr. Opper: I'm going to tell you right now, Mr. Toto, unless you agree to have that stricken from the record, there is a waiver of attorney-client with respect to this issue *and we're going to pursue this*. I have limited time today, but we are going to pursue this subsequently."); Ex. 8, Solomon (Nov. 15) Dep. 438:10-439:4 ("Mr. Opper: . . . And I see that you have used this deposition as an

opportunity to have the witness give entirely self-serving statements that had nothing to do with the subject of this 30(b)(6) notice. *And we will be providing the appropriate motion*.") (emphasis added). DPP counsel also informed Forest, on the record, in both depositions that DPPs were going to file another motion to compel privileged documents based on the testimony of Charles Ryan and David Solomon about the privileged documents. Despite these threats, DPPs never filed any such motion, and stayed silent on the issue for nearly a year and half now.

## ARGUMENT

In light of this Court's guidance at the June 4, 2019 hearing, Forest withdraws its intention to rely at trial on evidence of its subjective beliefs regarding the '703 patent's strength. *See* Ex. 9, June 4, 2019 Hr'g Tr. at 10 ("JUDGE McMAHON: Because if subjective belief has been stipulated out, it's not coming in through experts either."). That addresses the bulk of DPPs' motion. The issue that remains is that DPPs want to introduce other evidence that can only be explained by reference to those subjective beliefs, and prevent Forest from providing that explanation. More specifically, DPPs seek to introduce documents that Magistrate Judge Francis ordered to be produced based on a privilege waiver, argue that they show linkage between the Lexapro Amendment and the Mylan Settlement Agreement, and preclude Forest's witnesses from explaining the actual meaning of these documents. That approach should be rejected as fundamentally unfair.

The documents cannot be divorced from the explanations Forest seeks to provide. Whether an alleged payment is "linked" to a patent settlement necessarily implicates the patent holder's perceived strength of the patent at issue. *See, e.g.*, *FTC v. Actavis, Inc.*, 570 U.S. 136, 158 (2013) ("A large, unexplained reverse payment can provide a workable surrogate for a patent's weakness."); *In re Lipitor Antitrust Litig.*, 868 F.3d 231, 250-51 (3d Cir. 2017) ("a large reverse payment may signify that the payment seeks to avoid invalidation of the disputed underlying

patent"); *In re Loestrin 24 Fe Antitrust Litig.*, 261 F. Supp. 307, 357 (D.R.I. 2017) (same); *In re Androgel Antitrust Litig. (No. II)*, No. 1:09-CV-955-TWT, 2018 U.S. Dist. LEXIS 99716, at *4 (N.D. Ga. June 14, 2018) ("The size of the payment is merely the Supreme Court's proxy for reaching the ultimate question: whether the agreement was entered into for the purpose of avoiding the risk of competition.'")). And there is little doubt that DPPs would like to use the documents produced pursuant to Magistrate Judge Francis's order to argue that the Lexapro Amendment was a disguised payment to Mylan to settle the Namenda patent case because Forest thought its patent would be at considerable risk if Mylan continued to litigate.

But subsequent depositions of current and former Forest employees—which DPPs sought—have shown that a full and fair understanding of these documents requires allowing Forest's witnesses to provide their assessment of the '703 patent's strength. Specifically, Forest company witnesses have explained that there was no need for the company to use the Lexapro Amendment to give an additional payout to Mylan in the patent litigation because Forest believed that it would win that patent litigation if it could not be resolved based on the fair terms that Forest was offering—*i.e.*, $2 million and 3-months early entry. *See, e.g.*, Ex. 7, Ryan (Nov. 7) Dep. 367:1-17. ("Q. But you are testifying here today that modifying the Lexapro authorized generic deal was not a component of the current settlement offer Forest was proposing to Mylan as of February 11, 2010? . . . A. So we were in -- so maybe I should back up. So we had a very strong case. We were prepared to go to trial. We weren't going to give more than three months to anyone, including Mylan."); Ex. 8, Solomon (Nov. 15) Dep. 411:20-420:1. DPPs' motion seeks to prevent Forest from presenting the full and fair understanding of those documents. *See, e.g.*, DPPs' MIL 1, 23. But the jury should not receive only part of the picture, and be left with a misimpression about the full context of Forest's internal documents.

The remedy here is simple: Neither side should be permitted to address Forest's subjective beliefs regarding the connection between the Lexapro Amendment and the Mylan Settlement Agreement. Under this approach, Forest would not introduce testimony or other evidence establishing that it subjectively believed that there was no connection between the two agreements. But DPPs would be precluded from introducing documents produced based on the "linkage" waiver, or otherwise address Forest's subjective beliefs regarding linkage. This remedy is contemplated by *Lidoderm*, as DPPs themselves agree. *See Lidoderm*, 2016 U.S. Dist. LEXIS 105619, at *42 n. 4 (noting that "the holder [of the privilege] may preserve the confidentiality of the privileged communications by choosing to abandon the claim that gives rise to the waiver"); ECF No. 238, Reply Mem. in Supp. of Pls.' First Mot. to Compel ("[I]f the Court rules that Forest's assertions addressed herein would trigger a waiver, Plaintiffs would be amenable to the *Lidoderm* approach, which would enable Forest to abandon its defenses if it wanted . . . .").

This approach would have the added benefit of streamlining the issues for trial—rather than being distracted by Forest's subjective beliefs, the jury could turn its focus to issues that matter under *Actavis*: the benefits that Mylan and Forest expected to receive under the Lexapro Amendment, an objective assessment of the likely outcome of the patent litigation, and whether Forest and Mylan received fair value from the Lexapro Amendment as an independent business arrangement.

In short, there cannot be a trial where DPPs are permitted to use Forest's documents but Forest is not permitted to respond completely to the content of those documents. Precluding either side from addressing Forest's subjective beliefs regarding linkage would prevent that from occurring.

**CONCLUSION**

DPPs' motion should be denied as moot. In addition, to ensure a fair trial, both sides should be precluded from addressing Forest's "subjective beliefs" as to "linkage," including reliance on any of the documents that Magistrate Judge Francis ordered to be produced under a privilege waiver.

Dated: June 14, 2019                                    Respectfully submitted,

                                                        **WHITE & CASE LLP**

                                                        By:
                                                        Martin M. Toto
                                                        Heather K. McDevitt
Beth Wilkinson                                          John H. Chung
Rakesh Kilaru                                           Michael E. Hamburger
Kieran Gostin                                           William H. Bave, III
WILKINSON WALSH + ESKOVITZ                              Kristen O'Shaughnessy
2001 M Street NW, 10th Floor                            Kevin C. Adam
Washington, D.C. 20036                                  WHITE & CASE LLP
Telephone: (202) 847-4000                               1221 Avenue of the Americas
                                                        New York, New York 10020
**Counsel for Defendants Actavis plc,**                 Telephone: (212) 819-8200
**Forest Laboratories, LLC, Forest**
**Laboratories, Inc., and Forest**                      J. Mark Gidley
**Laboratories Holdings Ltd.**                          Christopher M. Curran
                                                        Eric Grannon
                                                        WHITE & CASE LLP
                                                        701 Thirteenth Street, NW
                                                        Washington, DC 20005
                                                        Telephone: (202) 626-3600

                                                        Heather M. Burke
                                                        Eric E. Lancaster
                                                        WHITE & CASE LLP
                                                        3000 El Camino Real
                                                        2 Palo Alto Square, Ste. 900
                                                        Palo Alto, CA 94306
                                                        Telephone: (650) 213-0300

                                                        **Counsel for Defendants Actavis plc,**
                                                        **Forest Laboratories, LLC, Forest**
                                                        **Laboratories, Inc., and Forest**
                                                        **Laboratories Holdings Ltd.**