**GARWIN GERSTEIN & FISHER LLP**
COUNSELORS AT LAW
WALL STREET PLAZA
88 PINE STREET, 10TH FLOOR
NEW YORK, N.Y. 10005
TEL: (212) 398-0055
FAX: (212) 764-6620

BRUCE E. GERSTEIN
SCOTT W. FISHER
JOSEPH OPPER
NOAH H. SILVERMAN
KIMBERLY M. HENNINGS
ELENA K. CHAN
JONATHAN M. GERSTEIN
DAN LITVIN

SIDNEY L. GARWIN
(1908-1980)
--
ANNA TYDNIOUK
AAKRUTI VAKHARIA

October 2, 2019

*Via ECF*

The Honorable Colleen McMahon
United States District Court
Southern District of New York
500 Pearl Street, Room 2550
New York, New York 10007

**Re:** *In re Namenda Direct Purchaser Antitrust Litig.*, **15-cv-7488 (CM)**

Dear Judge McMahon:

Plaintiffs write in response to Forest's October 2, 2019 letter (ECF No. 878).

### 1. Trial Exhibits

Plaintiffs object to Forest's additional and untimely objections to certain exhibits pertaining to proofs about the "hard switch." Plaintiffs agree that Forest is precluded from arguing that the "hard switch" was not "coercive and anticompetitive," and that it had any "non-pretextual procompetitive justification for its illegal conduct." *See, e.g.*, *In re Namenda Direct Purchaser Antitrust Litig.*, 15-cv-7488, 2017 WL 4358244, at *16 (S.D.N.Y. May 23, 2017). However, because the exhibits in question also go to impact and damages we disagree that they are "irrelevant and unduly prejudicial." ECF No. 878 at 2. Many of the documents to which Forest now objects were relied upon by the Court in its opinion denying Forest's Summary Judgment and *Daubert* motions. *See, e.g., In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 178 (S.D.N.Y. 2018) (quoting May 2013 speech by Mark Devlin, which is PX 884, to which Forest now objects); *id.* at 177-78, 180-82, 217-19. These are not "intent" documents. Instead, some are forecasts that, as the Court reviewed in the course of its opinion, Dr. Lamb and Dr. Berndt relied upon in calculating damages; some are documents underlying those forecasts; and some are documents reflecting that during the Fall and Winter of 2013, based on its monitoring of market share, Forest reasonably expected (and in fact was on track to reach) a peak of 20-30% XR share using only "soft switch" tactics. These exhibits are thus admissible independently from any "intent" issues. *See* Scheduling Order, ECF No. 688 at 1 ("any and all documents that were cited in the Decision and Order Denying, inter alia, Defendants' Motion for Summary Judgment" are "perfectly admissible").

Finally, Forest is incorrect that it has "removed objections that have been resolved by the Court's motion *in limine* rulings, except for one set of exhibits." ECF No. 878 at 2. For example, Forest is maintaining objections based on Fed. R. Evid. 402, 403 and 802 to PX Nos. 395, 396, 1065 and 1090, which relate to evidence Forest unsuccessfully sought to preclude in their motion *in limine* nos. 2 and 14.

2. **Trial Issues**

   a. <u>Length of Trial</u>: Plaintiffs' position is that Phase I of this trial can reasonably be completed in approximately 15 trial days (the equivalent of 3 full weeks) and that Phase II can reasonably be completed in approximately 5 trial days (the equivalent of 1 full week).

   b. <u>Length of Opening Statements</u>:  Plaintiffs request that each side be allowed up to 1 hour for opening statements for the Phase 1 trial and the same amount of time for the Phase 2 trial.

   c. <u>Use of Exhibits and Demonstratives During Opening Statements</u>:  Plaintiffs seek the Court's guidance regarding the use of exhibits and demonstratives (electronic and/or hard copy) during opening statements.

   d. <u>Use of Exhibits with Witnesses and the Jury</u>: Plaintiffs seek the Court's guidance regarding its preferred procedure for displaying exhibits to fact/expert witnesses and members of the jury.

   e. <u>Extent of "Fact of Injury" for Phase 1</u>: Plaintiffs seek the Court's guidance regarding the extent of "fact of injury" evidence the Court expects during Phase 1. Specifically, does the Court expect only evidence of fact and date of earlier generic entry, or also expect evidence that the Class suffered some overcharge due to generic delay?

   f. <u>Plaintiffs' Rebuttal Case</u>: Plaintiffs seek the Court's guidance as to its preferred practice for allowance of rebuttal evidence by the Plaintiffs.

   g. <u>Exchange of Demonstratives to be Used During Closing Statements</u>: The Parties disagree as to whether closing statement demonstratives should be exchanged prior to commencement of the closing statements.  Plaintiffs believe they should be exchanged while Forest disagrees.

3. **NYAG Namenda Decisions**

Plaintiffs do not agree with the proposed statement Forest provided in its October 2, 2019 letter (ECF No. 878 at 2-3).  Forest's proposal is intended to erroneously predispose the jury to conclude that the injunction, in fact, undid the effects of its illegal "hard switch."  But Plaintiffs contend that the injunction did not cure the anticompetitive effects of the illegal hard switch and

Forest's extensive multi-media campaign to communicate and publicize its unlawful withdrawal of Namenda IR.  Judge Sweet found, for example, that the hard switch had *already* caused higher conversion from IR to XR than Forest had forecast it could obtain with only legal, soft switch tactics.  *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 216 (S.D.N.Y. 2018).  And this Court ruled admissible Dr. Lamb's opinion that the injunction was unlikely to have eliminated the anticompetitive effects of the hard switch because, *inter alia*: (1) "when Forest informed customers of the injunction, it indicated it was 'appealing' the order and intended to 'convince the higher court that, in fact, the lower court's decision was in error'"; and (2) "Dr. Lamb reviewed evidence indicating the difficulty of transitioning patients back to Namenda IR once they had switched to Namenda XR." *Id.* at 219.

Forest's proposed statement also waters down the Court's opinion on collateral estoppel to such a degree that it will prevent a jury from even understanding the misconduct for which it will be determining causation and damages.  Any statement read to the jury should be consistent with what this Court determined "will be presented to the jury as already decided": "(1) whether [Forest] possessed monopoly power over the U.S. memantine market up until the entry of generic competition; (2) whether its February 2014 announcement of the upcoming discontinuation of Namenda IR was coercive and anticompetitive; and (3) whether Forest had any non-pretextual procompetitive justification for its illegal conduct." *In re Namenda Direct Purchaser Antitrust Litig.*, 2017 WL 4358244, at *16.

Plaintiffs will submit a proposed alternative statement to the Court ahead of the Final Pre-Trial Conference, where they will also be prepared to discuss these and other matters.

                                              Respectfully submitted,

                                              */s/ Bruce E. Gerstein*
                                              Bruce E. Gerstein