

2001 M STREET NW
10th Floor
WASHINGTON, DC 20036

WWW.WILKINSONWALSH.COM
___
A LIMITED LIABILITY PARTNERSHIP

WASHINGTON, D.C. | LOS ANGELES | NEW YORK

October 23, 2019

**VIA ECF**

The Honorable Colleen McMahon
United States District Court
Southern District of New York
500 Pearl Street, Room 2550
New York, New York 10007

    Re:    *In re Namenda Direct Purchaser Antitrust Litig.*, **15-cv-7488 (CM)**

Dear Judge McMahon:

The Parties have made considerable progress on stipulations and summary charts to streamline the trial. There are three areas, however, where the Parties have reached an impasse. Forest respectfully requests the Court's intervention.

**(1) References to Orchid's Side Deal**

The Court admitted PX-1534 subject to a redaction proposed by Forest and agreed to by Plaintiffs. Tr. 113:9-24 (Oct. 10, 2019).

Plaintiffs are now seeking an additional redaction that they did not propose at the pre-trial conference. In this 2014 email, Forest's IP attorney refers to Mylan's "side deal in the Namenda patent case." Ex. A. There is no dispute that this sentence should remain unredacted. Plaintiffs now seek to redact another sentence: "Do you have the *Orchid* term sheet that was a *side deal* in the Namenda patent case?" Ex. A (emphases added).

There is no basis for this redaction. Plaintiffs place great emphasis on the use of the words "side deal" in internal Forest documents and Forest is entitled to defend itself by putting those words into context. Plaintiffs argue that the use of "side deal" in this document to refer to the amendment of the Lexapro contract between Forest and Mylan is evidence that this amendment is in fact an unlawful reverse payment to settle the Namenda litigation. But that same document also uses the precise same words – "side deal" – to refer to Forest's agreements with another generic, Orchid, that was similarly challenging the Namenda patent. Critically, Plaintiffs do not allege that the Orchid "side deal" is an unlawful reverse payment. As a result, Forest is entitled to respond to

Plaintiffs' reliance on the words "side deal" by demonstrating that the same words are used in the same document to refer to an agreement that is not challenged as a reverse payment.

### (2) Claim Construction Summary Chart

At the final pretrial conference, the Court suggested that the parties stipulate that "[t]here was a dispute over what the meaning of certain terms was in the patent, the parties litigated that in Delaware, Forest won that part of the litigation, and then things began to settle." Tr. 31:11-16 (Oct. 10, 2019). Consistent with this guidance, Forest proposed a summary chart of relevant facts from the claim construction rulings in the underlying patent litigation. The chart sets out (1) the terms at issue, (2) Forest's proposed constructions, (3) the generics' proposed constructions, (4) which side's proposal prevailed, (5) the parties, if any, that appealed Judge Stark's ruling, and (6) whether District Judge Sleet adopted Judge Stark's construction. Ex. B, Forest's Proposed 1006 Claim Construction Chart. Forest's proposed chart is straightforward and will help the jury understand the objective facts as to the claim construction rulings.

Plaintiffs refused to stipulate to this chart and proposed an alternative chart that differs in two material respects. *See* Ex. C, DPPs' Proposed 1006 Claim Construction Chart. *First*, Plaintiffs argue that any summary chart must contain the actual language from the underlying court orders. This approach is foreclosed by the Court's ruling – at Plaintiffs' request – that "not a word of the [claim construction] opinion is going to come in." Tr. 33:23-24 (Oct. 10, 2019); *see also* MIL Order, ECF No. 859 at 11 ("I do not permit decisions to be entered into evidence."). It is also confusing to the jury. The precise language that Judges Stark or Sleet used in their opinions is not material for purposes of what the jury must decide. Instead, the critical fact is whether those judges adopted Forest or the generics' arguments, which is conveyed by Forest's proposed summary chart. In contrast, by providing only the court's actual language, Plaintiffs' proposed chart makes it difficult for a lay jury to determine easily which side won each issue in the claim construction ruling.

*Second*, Plaintiffs seek to strip from the chart the appeal of Judge Stark's report and recommendation to Judge Sleet. Instead, Plaintiffs propose to provide only the final construction adopted by Judge Sleet. Plaintiffs' approach would deprive the jury of critical information. Forest is entitled to defend itself by demonstrating the relationship between the two claim construction rulings and the generics' decisions to settle. In other words, Forest should be able to demonstrate to the jury that (1) it prevailed before Judge Stark, (2) certain generics settled thereafter, (3) other generics chose to appeal to Judge Sleet, (4) and the remaining generics settled after Judge Sleet adopted Judge Stark's rulings. To make this showing, the chart needs to include the objective facts regarding the appeal.

### (3) Redactions/Stipulation on Disclosures to FTC and DOJ

As discussed at the pre-trial conference, Forest disclosed both the Namenda Settlement and the Lexapro Amendment to the Department of Justice ("DOJ") and the Federal Trade Commission ("FTC").

In Forest's view, that Forest disclosed both documents to the government is evidence that undermines any suggestion that Forest made an improper, hidden payment to Mylan through the Lexapro amendment. Plaintiffs themselves initially designated deposition testimony that discusses both disclosures, *see* Ex. D, DPPs' Proposed Designations (Agovino Dep. Tr. 158:20-159:4), although they withdrew those designations this morning. And at the pre-trial conference, the Court agreed that Forest would be permitted to examine witnesses about the disclosures. *See* Tr. 71:19 (Oct. 10, 2019) ("You can do that through your witnesses.")

Nevertheless, since the pretrial hearing, Plaintiffs have taken two steps to try to hide the fact of these disclosures from the jury. *First*, each generic settlement in the Namenda patent case expressly contemplates that the settlement agreement would be disclosed to the government. Although these settlements (JX-006 to JX-017) were all admitted into evidence by joint agreement, Plaintiffs now contend that any references to these disclosures should be redacted. Ex. E, Oct. 22, 2019 Email Correspondence. Plaintiffs have also proposed to redact similar language in two draft settlement agreements with Mylan. Ex. F, Oct. 23, 2019 Email Correspondence. There is no valid basis for these redactions. Plaintiffs cannot use redactions to rewrite the facts. Plaintiffs are free to argue that the disclosures should not mean anything, but the jury is entitled to know that the disclosures took place.

*Second*, Plaintiffs refuse to consider any stipulation regarding the facts of these disclosures. Although the Court declined to admit the disclosures themselves into evidence, it invited a stipulation: "I assume that the plaintiff will stipulate to the fact that the deals were, when done, copies of them were sent to the Justice Department and the F.T.C. and that no action was taken and that means nothing." Tr. 69:12-17 (Oct. 10, 2019).

Consistent with the Court's statement, Forest has proposed the following stipulation:

On July 26, 2010, Forest sent a letter to the Federal Trade Commission ("FTC") and Department of Justice ("DOJ"). Forest provided a copy of the Namenda patent settlement and the Lexapro Amendment to the FTC and DOJ.

Neither the FTC nor DOJ took any action after receiving the patent settlement agreement and the Lexapro amendment. The lack of action by the government cannot be interpreted as approval.

Plaintiffs have refused to agree to this stipulation and declined to propose any alternative language for Forest's consideration. The disclosures are a matter of public record and properly the subject of judicial notice. As a result, in lieu of a stipulation, Forest requests that the Court provide this information to the jury as an instruction at the appropriate time.

Respectfully submitted,

*Beth Wilkinson*

Beth Wilkinson