## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE NAMENDA DIRECT PURCHASER ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>All Direct Purchaser Actions | Case No. 1:15-cv-07488-CM-RWL |

**DIRECT PURCHASER CLASS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, APPROVAL OF THE FORM AND MANNER OF NOTICE TO THE CLASS AND PROPOSED SCHEDULE FOR A FAIRNESS HEARING**

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ........................................................................................................ 1

II.   BACKGROUND ......................................................................................................... 3

    A.    Plaintiffs' Claims and Procedural Background........................................................ 3

    B.    Settlement Negotiations and the Proposed Settlement ........................................... 6

III.  THE PROPOSED SETTLEMENT MEETS THE STANDARD FOR
    PRELIMINARY APPROVAL ................................................................................... 7

    A.    The Proposed Settlement Was the Result of Serious and Informed
        Negotiations by Experienced Counsel .................................................................. 8

    B.    Negotiations Were at Arm's-Length and Continued Until the Eve of
        Trial...................................................................................................................... 9

    C.    Class Counsel Are Highly Experienced in Antitrust Litigation Alleging
        Delayed Generic Drug Competition ...................................................................... 9

    D.    The Proposed Settlement Is Within the Range of Possible Approval ................. 10

    E.    The Plan of Distribution Is Fair, Reasonable, and Adequate............................... 12

    F.    The Proposed Form and Manner of Notice Are Appropriate ............................... 13

        1.    Form of Notice ........................................................................................... 13

        2.    Manner of Notice ....................................................................................... 15

        3.    An Additional Opt-Out Period Is Unnecessary ......................................... 15

    G.    Rust Is an Appropriate Settlement Administrator................................................. 17

    H.    First State Trust Company Is an Appropriate Escrow Agent ............................... 17

    I.    The Proposed Schedule Is Fair and Should Be Approved.................................... 17

IV.   CONCLUSION.......................................................................................................... 18

## TABLE OF AUTHORITIES

Cases

*Bourlas v. Davis Law Assocs.*,
   237 F.R.D. 345 (E.D.N.Y. 2006) ...................................................................................... 10

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006)........................................................................................... 16

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)................................................................................... 7, 10, 11

*Elkind v. Revlon Consumer Prods. Corp.*,
   2017 U.S. Dist. LEXIS 24512, at *45-46 (E.D.N.Y. Feb. 17, 2017) ......................................... 7

*FTC v. Actavis, Inc.*,
   570 U.S. 136 (2013).......................................................................................................... 4

*Hart v. RCI Hosp. Holdings*,
   2015 U.S. Dist. LEXIS 126934, at *21 (S.D.N.Y. Sep. 22, 2015)................................... 11, 12

*In re Global Crossing Securities and ERISA Litigation*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................................... 15

*In re Initial Pub. Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007) ......................................................................................... 8

*In re Namenda Direct Purchaser Antitrust Litig.*,
   2017 WL 4358244 (S.D.N.Y. May 23, 2017) ...................................................................... 5

*In re Namenda Direct Purchaser Antitrust Litigation*,
   331 F. Supp. 3d 152 (S.D.N.Y. 2018)............................................................................. 4, 5

*In re Penthouse Exec. Club Comp. Litig.*,
   2013 U.S. Dist. LEXIS 63065, at *8 (S.D.N.Y. Apr. 29, 2013)................................................ 8

*In re Platinum & Palladium Commodities Litig., No. 10-cv-3617*,
   2014 U.S. Dist. LEXIS 96457, at *35-36 (S.D.N.Y. July 15, 2014) ........................................ 8

*In re Take Two Interactive Sec. Litig.*,
   2010 U.S. Dist. LEXIS 143837, at *42-43 (S.D.N.Y. June 29, 2010) .................................... 15

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)............................................................................ 7, 8

*In re Traffic Exec. Ass'n E.R.Rs.*,,
   627 F.2d 631 (2d Cir. 1980)........................................................................ 7

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
   718 F. Supp. 1099 (S.D.N.Y. 1989)........................................................... 8

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)...................................................... 12

*Reidel v. Acqua Ancient Bath N.Y. LLC,*
   2016 U.S. Dist. LEXIS 6847 (S.D.N.Y. May 19, 2016)......…………………………………17

*Seijas v. Republic of Argentina*,
   No. 04-CV-1085 (TPG), 2017 WL 1511352 (S.D.N.Y. Apr. 27, 2017) ................. 16

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, PLC*,
   No. 15-cv-6549 (CM), 2016 WL 4992690 (S.D.N.Y. Sep. 13, 2016)...................... 4

*Tiro v. Public House Invs., LLC,*
   2013 U.S. Dist. LEXIS 72826, at *6 (S.D.N.Y. May 22, 2013)...................... 10, 15

*Torres v. Gristede's Operating Corp., No. 04-CV-3316 (PAC)*,
   2010 U.S. Dist. LEXIS 75362, at *10-11 (S.D.N.Y. June 1, 2010) ...................... 11

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)............................................................... 8, 11, 16

Statutes

28 U.S.C. § 1715............................................................................... 18

Rules

Fed. R. Civ. P. 23(c)(2)(B) ................................................................. 13

Rule 23(e)(4) .................................................................................. 13, 15

Direct Purchaser Class Plaintiffs J M Smith Corp. (d/b/a Smith Drug Co.) and Rochester Drug Co-Operative, Inc. ("RDC") (collectively "Direct Purchaser Plaintiffs" or "Plaintiffs"), have reached an agreement with Forest Laboratories, LLC, Actavis plc, Forest Laboratories, Inc., and Forest Laboratories Holdings Ltd. (collectively, "Defendants") to settle this litigation (the "Settlement").[1]  Plaintiffs respectfully submit this Memorandum of Law in Support of their Motion for Preliminary Approval of Proposed Settlement, Approval of the Form and Manner of Notice to the Class and Proposed Schedule for a Fairness Hearing.

## I.    INTRODUCTION

The $750,000,000 proposed settlement in this case, if approved, would be the largest amount ever paid by a single defendant in any direct purchaser class Hatch-Waxman antitrust case in history.  In simplest terms, it is unprecedented.  Under the terms of the settlement agreement dated December 20, 2019 (the "Settlement Agreement"), Plaintiffs will dismiss this case with prejudice and provide certain releases.  *See* Settlement Agreement, Exhibit 1 to the Declaration of Bruce E. Gerstein ("Gerstein Decl.").

Plaintiffs achieved this result even though this case was unusually complex even for a Hatch-Waxman antitrust case.  Trial in this matter would have required a jury to distill and resolve a thicket of conflicting facts in dense legal frameworks at the intersection of antitrust law, Hatch-Waxman drug approval laws and regulations, the Medicaid Drug Rebate Program laws and regulations as modified through the Deficit Reduction Act of 2007, drug manufacturing, contract interpretation, patent law, and principles of economics.  The jury would

---

[1] On July 1, 2014, in a series of transactions, Forest Laboratories, Inc. became a limited liability company named Forest Laboratories, LLC.  Subsequently, on January 1, 2018, Forest Laboratories, LLC was merged with and into Allergan Sales, LLC, a Delaware limited liability company. As a result of these corporate consolidations, Forest Laboratories, Inc. and Forest Laboratories, LLC are predecessors in interest to Allergan Sales, LLC.

have had to work through competing expert opinions in several of these substantive areas, and more.  For example, the jury would have had to consider fact evidence and expert testimony to determine what likely would have occurred in the absence of the challenged reverse payment settlement, whether the generic competitor Mylan would have won its patent challenge and if so, when, or, alternatively whether rational pharmaceutical companies in the position of Forest and Mylan would still have settled, but without a large reverse payment and with an earlier generic entry date. The trial risk was substantial, to say nothing of the appellate risks.  Plaintiffs were prepared to go to trial but concluded that the proposed all-cash settlement for $750 million is in the best interests of the Class and easily satisfies the requirements that it be fair, reasonable and adequate.

The parties entered into the Settlement on the eve of trial, after motion to dismiss proceedings, extensive fact and expert discovery, class certification briefing and decision, three motions for summary judgment (two by Plaintiffs and one by Defendants), submission of a Pre-Trial Order in January 2018 and an updated Pre-Trial Order in April 2019, disposition of 32 motions *in limine* (16 by each side), and the completion of preparation for a trial that would start in just hours had the parties not reached an agreement in principle to settle.  The Settlement also occurred after several mediations.  A multi-stage mediation process was conducted with nationally recognized mediator Jonathan Marks.  Another mediation process was conducted much closer to trial before Judge Faith S. Hochberg, formerly of the United States District Court for the District of New Jersey.  Judge Hochberg has extensive experience in antitrust cases, including Hatch-Waxman direct purchaser antitrust cases, as well as Hatch-Waxman patent cases between brand and generic pharmaceutical companies, and was particularly helpful in advising the parties about how a jury could react to the evidence and complicated legal issues had the case

2

been tried to verdict.  Counsel for both sides thus had full appreciation for the risks of trial and

entered into the Settlement after carefully considering those risks.  Late stage negotiations were

assisted by the Court's deputy clerk who worked closely with the parties from Friday through

Sunday evening before the scheduled commencement of trial on Monday, October 28, 2019.

The Settlement avoids an uncertain two-phase trial outcome and the certainty of lengthy

appeals and assures that all Class members will receive a substantial cash settlement payment.

Accordingly, Plaintiffs respectfully request that the Court enter a proposed order (in the

form of Exhibit A to the Settlement Agreement) which provides for the following:

1.   Preliminary approval of the proposed Settlement Agreement and the documents
     necessary to effectuate the Settlement, including a proposed form of notice to the
     Class (in the form of Exhibit B to the Settlement Agreement) and a proposed plan
     of distribution for settlement funds as described in the proposed form of notice;

2.   Appointment of Rust Consulting ("Rust") as settlement administrator;

3.   Appointment of First State Trust Company as escrow agent for the settlement
     funds as set forth in Exhibit D to the Settlement Agreement; and

4.   A proposed settlement schedule, including the scheduling of a Fairness Hearing
     during which the Court will consider: (a) Plaintiffs' request for final approval of
     the Settlement and entry of a proposed order and final judgment (Exhibit C to the
     Settlement Agreement); (b) Class Counsel's application for an award of attorneys'
     fees and reimbursement of expenses, payment of administrative costs, and
     incentive awards to the named class plaintiffs; and (c) Plaintiffs' request for
     dismissal of this action against Defendants with prejudice.

## II.    BACKGROUND

### A.    Plaintiffs' Claims and Procedural Background

On May 29, 2015, Burlington Drug Company, Inc., through the undersigned, filed the

first (direct or indirect purchaser) antitrust lawsuit challenging Defendants' conduct regarding

Namenda.  *See Burlington Drug Co. v. Actavis*, *et al.*, 15-cv-4152 (S.D.N.Y. May 29, 2015)

(ECF No. 1).  That case was voluntarily dismissed on June 12, 2015.  *Id*. at ECF No. 4.  J M

Smith Corporation thereafter filed a substantially similar complaint on September 22, 2015, also

3

through the undersigned. *J M Smith Corp. v. Actavis, et al.*, 15-cv-07488 (S.D.N.Y. Sept. 22, 2015) (ECF No. 1). The complaint alleged that Defendants unlawfully impeded competition for generic versions of Namenda IR by (a) engaging in a reverse payment agreement with generic company Mylan to delay its launch of a less-expensive generic version of Namenda IR; and then (b) engaging in a market "hard switch" product hop from Namenda IR to Namenda XR ahead of generic entry; and thereby (c) unlawfully delaying and impeding the market entry of less-expensive generic versions of Namenda IR. *See In re Namenda Direct Purchaser Antitrust Litigation,* 331 F. Supp. 3d 152 (S.D.N.Y. 2018); *FTC v. Actavis, Inc.*, 570 U.S. 136 (2013). Defendants moved to dismiss the complaint, and after extensive briefing, Plaintiffs successfully defeated Defendants' motion. *Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, PLC*, No. 15-cv-6549 (CM), 2016 WL 4992690 (S.D.N.Y. Sep. 13, 2016).

The case thereafter proceeded through an intense litigation schedule. The bulk of Defendants' document production concerning the alleged reverse payment came in July 2017 and later and included millions of pages of documents. Between May 2017 and the September 15, 2017 close of fact discovery, Plaintiffs prevailed on several discovery-related disputes, reviewed Defendants' and third-parties' document productions, took twenty fact depositions, and defended two. On September 15, 2017, Plaintiffs submitted their Motion for Class Certification and then submitted their class reply on October 25, 2017, and a letter responding to the Court's questions on July 5, 2018. Between September 2017 and November 2017, Plaintiffs reached agreement with Defendants to take an additional four fact depositions including depositions regarding documents that had been improperly withheld from production, defended eleven expert depositions and took eight depositions of Defendants' experts. In all, between fact and expert discovery, Plaintiffs took or defended forty-one depositions.

On November 17, 2017, Defendants filed a Motion for Summary Judgment and five

*Daubert* motions.  Plaintiffs opposed each of those motions on December 11, 2017, and

proceeded to work with Defendants to submit a Joint Proposed Final Pretrial Order on January

12, 2018, which included Plaintiffs' contentions, deposition designations and objections to

Defendants' deposition designations, Plaintiffs' exhibit list, and jury instructions, among other

things. The Court denied Defendants' summary judgment motion and all but one of Defendants'

*Daubert* motions on August 2, 2018.  *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F.

Supp. 3d 152 (S.D.N.Y. 2018).

On February 16, 2017, Plaintiffs moved for offensive, non-mutual collateral estoppel as

to the "hard switch," which the Court granted on May 23, 2017.  *See In re Namenda Direct*

*Purchaser Antitrust Litig.*, 2017 WL 4358244 (S.D.N.Y. May 23, 2017).

In the lead-up to trial, the parties prepared and submitted a Revised Joint Proposed Final

Pretrial Order on April 30, 2019.  ECF No. 699.  On May 24, 2019, Plaintiffs filed sixteen

Motions *in Limine* and on June 14, 2019 filed oppositions to Defendants' sixteen Motions *in*

*Limine*.  The parties proceeded to ready this case for trial.  As part of that extensive effort,

among other things, Plaintiffs' counsel greatly narrowed their exhibits for Phase 1 and Phase 2 of

the trial, narrowed the video deposition designations that would be shown to the jury, issued

numerous trial subpoenas, prepared to present expert and fact witnesses, prepared to examine

multiple hostile witnesses in Plaintiffs' affirmative case, created demonstratives and other

graphics for the opening statement and use with witnesses, formulated an order of proof, engaged

a jury consultant and prepared for jury selection.  On October 10, 2019, the parties participated

in a lengthy final pre-trial conference and received rulings on the admissibility of proposed Phase

1 trial exhibits from the Court, then submitted a brief on the meaning of "large" under *Actavis*

pursuant to the Court's direction.  ECF No. 895.  Plaintiffs' counsel refined their trial strategies and were prepared to commence trial.  Ultimately, the parties reached an agreement-in-principle on October 27, 2019, the night before trial was set to begin.

### B.    Settlement Negotiations and the Proposed Settlement

The parties attempted to resolve the case at least three times during the course of the litigation starting in March 2017 via direct communications.  In the Fall of 2018, the parties engaged Jonathan Marks, one of the preeminent mediators in the nation.  That mediation, which lasted until March 2019, included the exchange of voluminous mediation statements and multiple individual sessions, as well as one joint session with Mr. Marks.  The final mediation session lasted a full day, but the parties failed to reach a resolution.  Starting in September 2019, the parties engaged in additional mediation efforts before Judge Hochberg, including additional written submissions and an in-person session.  Judge Hochberg brought with her a wealth of experience assessing the risks of trial as a U.S. Attorney before assuming a role on the federal bench.  As a district court judge, Judge Hochberg had significant experience overseeing patent and antitrust cases, including direct purchaser Hatch-Waxman antitrust cases such as *In re Remeron Antitrust Litigation* and *In re Neurontin Antitrust Litigation*, the latter which involved plaintiffs and defendants which were represented by the same counsel as in this case.  The mediation before Judge Hochberg included another full day session and laid the groundwork for the parties' ultimate settlement, reached the night before a jury was to be selected.  Prior to agreeing on settlement, Class Counsel assessed the risk of trial in light of the challenges posed by, *inter alia*, the complexity of the case in general, Defendants' defenses, and the current state of the law under *Actavis*.

Under the proposed Settlement, Defendants will pay $750,000,000 (seven-hundred and fifty million dollars) in cash for the benefit of all Class members in exchange for dismissal of the

litigation between Plaintiffs and Defendants and certain releases.  The settlement sum will be the largest-ever in a private, single-defendant Hatch-Waxman antitrust case alleging impaired generic competition.

Plaintiffs have proposed the form and manner of providing notice of the proposed Settlement Agreement to the Class, and the procedures by which: (a) Class members may receive their share of settlement funds; (b) Class members may object to the proposed Settlement Agreement; and (c) Class members may object to Class Counsel's application for attorney's fees of up to one-third of the settlement amount, reimbursement of reasonable expenses incurred in prosecuting this action and service awards to J M Smith Corp. and Rochester Drug Co-Operative, Inc., for their efforts on behalf of the Class.

## III.   THE PROPOSED SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL

Preliminary approval does not require a court to reach any ultimate conclusions on the merits of the litigation.  *See City of Detroit v. Grinnell Corp*., 495 F.2d 448, 456 (2d Cir. 1974). Rather, the court "need only determine that there is probable cause to submit the agreement to the proposed class members and to hold a fairness hearing, at which time the court will have the opportunity to closely examine the intricacies of the settlement terms and to assess their fairness."  *Elkind v. Revlon Consumer Prods. Corp.,* 2017 U.S. Dist. LEXIS 24512, at *45-46 (E.D.N.Y. Feb. 17, 2017), citing *In re Traffic Exec. Ass'n E.R.Rs*., 627 F.2d 631, 634 (2d Cir. 1980).

In evaluating a proposed settlement, a court typically gives significant weight to "the judgment . . . of the parties who negotiated the settlement."  *In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d 570, 575-76 (S.D.N.Y. 2008) (McMahon, J.).  Moreover, in conducting a preliminary approval inquiry, a court considers both the "negotiating process leading up to the settlement,

*i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness." *In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617, 2014 U.S. Dist. LEXIS 96457, at *35-36 (S.D.N.Y. July 15, 2014) (internal quotation marks omitted). "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) (citation omitted); *see also Platinum & Palladium*, 2014 U.S. Dist. LEXIS 96457, at *35-36. As demonstrated below, the proposed Settlement merits preliminary approval because it is both procedurally and substantively fair.

### A. The Proposed Settlement Was the Result of Serious and Informed Negotiations by Experienced Counsel

If a court finds that a settlement is the result of good faith, serious, "arm's-length negotiations between experienced, capable counsel after meaningful discovery" the settlement is entitled to a presumption of fairness. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116-17 (2d Cir. 2005). *See also In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d at 575, citing *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig*., 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) ("a class action settlement enjoys a "presumption of correctness" where it is the product of arm's-length negotiations conducted by experienced, capable counsel."). Participation by a neutral third party supports a finding that the agreement is non-collusive. *See In re Penthouse Exec. Club Comp. Litig.*, 2013 U.S. Dist. LEXIS 63065, at *8 (S.D.N.Y. Apr. 29, 2013) ("A settlement like this one, reached with the help of third-party neutrals enjoys a presumption that the settlement achieved meets the requirements of due process.") (Internal quotation marks omitted).

8

B.      **Negotiations Were at Arm's-Length and Continued Until the Eve of Trial**

The settlement here was achieved after more than four years of hard-fought litigation, and

with the assistance of private and court-appointed mediators. The voluminous record, including

the Court's opinion dispensing with the parties' Motions *in Limine* (ECF No. 859) and rulings on

the admissibility of evidence (*see* ECF Nos. 889, 890; Transcript, Oct. 10. 2019) permitted the

parties to further scrutinize the strengths and weaknesses of their respective claims and defenses

as they prepared for trial.  Equipped with this knowledge, the parties engaged in intensive

settlement discussions through multiple full days of mediation, including one day each with Mr.

Marks and Judge Hochberg.  As noted above, the negotiations were detailed, time-consuming,

and hard-fought.

C.      **Class Counsel Are Highly Experienced in Antitrust Litigation Alleging
Delayed Generic Drug Competition**

Courts often defer to the judgment of experienced counsel who have engaged in arm's-

length negotiations, understanding that vigorous, skilled negotiation protects against collusion

and advances the fairness interests of Rule 23(e).

Here, Class Counsel believe that the settlement with Defendants is fair and in the best

interests of the Class.  Class Counsel collectively have more experience with generic-delay

cases than any other firm or group of firms, having pioneered such cases in the late 1990s.[2]

---

[2] The following is a partial list of generic-delay and impeded generic market access cases that
some or all of Class Counsel have previously handled and successfully resolved on behalf of
similar classes of direct purchasers: *In re Provigil Antitrust Litig.*, No. 06-1797 (E.D. Pa.); *In re
Tricor Direct Purchaser Antitrust Litig.*, No. 05-340 (D. Del.); *In re Buspirone Antitrust Litig.*,
No. 01-7951 (S.D.N.Y.); *In re Neurontin Antitrust Litig.*, No. 02-1830 (D.N.J.); *In re Relafen
Antitrust Litig.*, No. 01-12239 (D. Mass.); *In re Lidoderm Antitrust Litig.*, No. 14-02521 (N.D.
Cal.); *In re Aggrenox Antitrust Litig.*, No.14-2516 (D. Conn.); *In re Cardizem Antitrust Litig.*,
No. 99-1278 (E.D. Mich.); *In re Prograf Antitrust Litig.*, No. 11-2242 (D. Mass.); *In re Remeron
Antitrust Litig.*, No. 02-02007 (D.N.J.); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-
1317 (S.D. Fla.); *In re K-Dur Antitrust Litig.*, No. 01-1652 (D.N.J.); *Meijer, Inc. v. Abbott Labs.*,
No. 07-5985 (N.D. Cal.); *Rochester Drug Co-Operative, Inc. v. Braintree Labs., Inc.*, No. 07-

Significantly, the proposed Class includes many of the same wholesalers and retail entities that composed the classes in those prior cases, and no member of the proposed Class has objected to any of the prior settlements.  Class Counsel applied their well-honed litigation and trial preparation skills, along with their twenty-one years of experience handling these types of cases, to this matter.

### D.      The Proposed Settlement Is Within the Range of Possible Approval

The proposed cash payout to Class members here easily falls "within the range of" settlements that could "possibl[y]" be worthy of final approval as fair, reasonable, and adequate. In fact, it is the largest amount ever paid by a single defendant in a Hatch-Waxman antitrust lawsuit alleging impaired generic competition.  Whether a settlement is ultimately granted *final* approval is determined at the final fairness stage in accordance with *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir.1974), which enumerates nine factors for the Court to consider in assessing the fairness of a settlement under Rule 23(e).  At the *preliminary* approval stage, by contrast, courts simply determine if the settlement could possibly be approved using the *Grinnell* factors.  *See, e.g.*, *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 n.7 (E.D.N.Y. 2006) ("Little is gained . . . in applying *Grinnell* at such an early stage since the proposed settlement has yet to be tested in a fairness hearing . . . Furthermore, it is apparent that several of the *Grinnell* factors themselves were designed for application at a later stage in the class settlement approval process."); *Tiro v. Public House Invs., LLC*, 2013 U.S. Dist. LEXIS 72826, at *6 (S.D.N.Y. May 22, 2013) (McMahon, J.) ("Preliminary approval of a settlement agreement requires only an initial evaluation of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties.") (Internal quotation

---

0142 (D. Del.); *In re OxyContin Antitrust Litig.*, MDL No. 04-1603 (S.D.N.Y); and *In re Asacol Antitrust Litig.*, No. 15 –12730 (D. Mass.).

marks omitted); *Torres v. Gristede's Operating Corp.*, No. 04-CV-3316 (PAC), 2010 U.S. Dist. LEXIS 75362, at *10-11 (S.D.N.Y. June 1, 2010) (same).

The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 117 (2d Cir. 2005) (citing *Grinnell*, 495 F.2d at 463).

Here, the proposed Settlement is in the best interest of the Class. The proposed Settlement, if finally approved, will result in an immediate cash settlement fund of $750,000,000. Compared to litigating to an uncertain final resolution, which would be subject to potentially years of appeals even if successful, the certain and timely receipt of the substantial proceeds of the Settlement establishes an initial presumption that the settlement is fair, adequate, and reasonable.  *See Hart v. RCI Hosp. Holdings*, 2015 U.S. Dist. LEXIS 126934, at *21 (S.D.N.Y. Sep. 22, 2015) ("[C]ounsel on both sides were unusually well-positioned to assess the potential outcomes of the case and to weigh the various risks and rewards presented to each side. Thus, there is no basis to rebut the presumption of procedural fairness, and the Court finds the settlement procedurally fair.").

As to the *Grinnell* factors: (1) this case was quite complex, with numerous legal, evidentiary and economic issues, and the two-phase trial was likely to last more than a month; (2) the reaction of the class will be determined after distribution of notice; (3) the case was

literally on the eve of trial after all discovery had been completed; (4) Plaintiffs faced a serious risk of proving liability on the reverse payment claim, and proving injury on the product switch claim; (5) proof of damages (assuming liability) would not be overly complex, although damages for the product switch claim alone presented serious issues in light of Defendants' argument that the prior injunction issued by Judge Sweet had cured any harm from the announced withdrawal of Namenda IR; (6) Plaintiffs do not believe there was any risk of maintaining the class action through trial, though Defendant no doubt would have appealed class certification, among other issues, had Plaintiffs won at trial; (7) there was not an ability to pay issue; and (8-9) as discussed above, the $750 million settlement figure is unprecedented in a single-defendant, generic suppression antitrust case.  The *Grinnell* factors support preliminary approval here.

> ### E.     The Plan of Distribution Is Fair, Reasonable, and Adequate

Approval of a plan of distribution for a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole, *i.e.,* the distribution plan must be fair, reasonable and adequate. *Hart*, 2015 U.S. Dist. LEXIS 126934, at *33-34 (S.D.N.Y. Sep. 22, 2015). "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id.* at *34, quoting *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002).

The proposed plan of distribution meets this standard.  As described in the proposed notice to Class members, and as set forth in the attached Direct Purchaser Class Plaintiffs' [Proposed] Plan of Allocation for the Direct Purchaser Class and accompanying Declaration Related to Proposed Settlement Allocation Plan by Dr. Russell L. Lamb (*see* Gerstein Decl. at Exhs. 2-3), the proceeds of the proposed Settlement in this case, net of Court-approved attorneys' fees, incentive awards for named plaintiffs, and costs of litigation ("Net Settlement Fund"), will be paid to Class members who submit timely and valid claims based on each Class

member's *pro rata* share of the Class' total purchases of brand and/or generic Namenda IR and brand Namenda XR, with brand purchases weighted more than generic purchases because claimed overcharges on brand units were substantially higher than claimed overcharges on generic units.  This plan is similar to plans that have previously been approved by courts in analogous cases and implemented with a high degree of success and efficiency and should be approved here as well.  *See, e.g., In re OxyContin Antitrust Litig.*, No.04 md 1603 (S.D.N.Y.) (Stein, J.) (Jan. 25, 2011); *In re DDAVP Direct Purchaser Antitrust Litig.*, No. 05 Civ. 2237 (S.D.N.Y.) (Seibel, J.) (Nov. 28, 2011); *In re Buspirone Antitrust Litig.*, MDL Docket No. 1413 (S.D.N.Y.) (Koeltl, J.) (April 7, 2003); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 1:14-md-02503-DJC, ECF Nos. 1163, 1179 (D. Mass.) (*pro rata* shares of settlement fund computed on basis of claimants' brand and generic purchases); and *In re Lidoderm Antitrust Litig.*, 3:14-md-02521-WHO, ECF Nos. 1004-5, 1004-6, 1054 (N.D. Cal.) (*pro rata* shares of settlement fund computed on basis of claimants' brand and generic purchases).

## F.     The Proposed Form and Manner of Notice Are Appropriate

### 1.     Form of Notice

Under Rule 23(e), class members are entitled to reasonable notice of a proposed settlement before it is finally approved by the Court, and to notice of the final Fairness Hearing. *See* MANUAL FOR COMPLEX LITIGATION, § §§ 21.312, 21.633 (4th ed. 2005) ("MANUAL").  For 23(b)(3) classes, the court must "direct to class members the best notice that is practical under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  There are two components of notice: (1) the form of the notice; and (2) the manner in which notice is sent to Class members.

The proposed form of notice is based on notices approved by courts in similar cases.  *See, e.g.*, *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 1:14-md-02503-DJC, ECF

No. 1094-1, at Ex. B (D. Mass.) (notice); *id.* at ECF No. 1095, ¶¶ 6-9 (approving the form and manner of notice); *In re Lidoderm Antitrust Litig.*, 3:14-md-02521-WHO, ECF No. 1004-7 (N.D. Cal.) (notice); *id.* at ECF No. 1018, ¶¶ 6-9 (approving the form and manner of notice); *In re K-Dur Antitrust Litig.*, No. 01-cv-1652(SRC)(CLW), ECF No. 1044-5, at Ex. B (D.N.J.) (notice); *id.* at ECF No. 1045, ¶ 5 (approving form and manner of notice).  The proposed notice is designed to alert Class members to the proposed Settlement by using a bold headline, and the plain language text provides important information regarding the terms of the proposed Settlement, including the nature of the action; the definition of the Class certified; the identity of the Defendants; the significant terms of the proposed Settlement including the total amount Defendants have agreed to pay to the Class; that a Class member may object to all or any part of the proposed Settlement and the process and deadline for doing so, including entering an appearance through an attorney if the Class member desires; the process for obtaining a portion of the settlement proceeds; the final approval process for the proposed Settlement and Class Counsel's request for attorneys' fees of up to one third of the Settlement (net of Court-approved reimbursed costs and expenses and service awards), reimbursement of all litigation expenses, and incentive awards to the named plaintiffs; the schedule for completing the settlement approval process, including the submission of the motion for final approval of the settlement, and the submission of the motion for attorneys' fees, expenses, and incentive awards to the named plaintiffs; and the binding effect of a final judgment on members of the Class.  *See generally* Exhibit B to the Settlement Agreement. In addition, the proposed notice prominently features Class Counsel's contact information and directions to the firm websites for Class Counsel where the Settlement documents, proposed Plan of Allocation, and supplemental information will be provided, as well as contact information for the settlement administrator.  *Tiro v. Public House*

14

*Invs., LLC*, 2013 U.S. Dist. LEXIS 72826, at *16 (approving notice that "describes the terms of the settlement, informs the class about the allocation of attorneys' fees and costs, and provides specific information regarding the date, time, and place of the final approval hearing").

### 2.     Manner of Notice

Plaintiffs propose to send notice by first-class United States mail to each Class member, all of which are business entities. The list of Class members was drawn from Defendants' electronic transactional sales data and/or are otherwise known to Class Counsel.  In circumstances in which all class members can be identified, the best method of notice is individual notice.  *See* MANUAL, § 21.311 at 488 ("Rule 23(c)(2)(B) requires that individual notice in 23(b)(3) actions be given to class members who can be identified through reasonable effort.").  Individual notice by first class mail has been recognized by the courts as appropriate. *See, e.g. In re Take Two Interactive Sec. Litig.*, 2010 U.S. Dist. LEXIS 143837, at *42-43 (S.D.N.Y. June 29, 2010), citing *In re Global Crossing Securities and ERISA Litigation*, 225 F.R.D. 436, 448 (S.D.N.Y. 2004).  As discussed above, courts have approved similar notice plans in similar generic suppression cases brought by direct purchasers.  *See* Section III.F.1, *supra* (citing *Solodyn*, *Lidoderm*, and *K-Dur* orders approving similar notice plans).

### 3.     An Additional Opt-Out Period Is Unnecessary

While the Court has discretion to give members of a previously-certified class a second chance to opt out, *see* Rule 23(e)(4), there is no requirement that it do so, as numerous courts have recognized. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270-71 (2d Cir. 2006) (courts are under "no obligation" to afford class members second opportunity for exclusion); *Wal-Mart*, 396 F.3d at 114-15 (rejecting argument that class members should have been granted "the opportunity to opt out after the settlement notice was issued" because the member "was required to opt out at the class notice stage if it did not wish to be bound by the Settlement."); *Seijas v.*

*Republic of Argentina*, No. 04-CV-1085 (TPG), 2017 WL 1511352, at *7 (S.D.N.Y. Apr. 27,
2017) (no second exclusion period warranted where "the opt-out notice for each class was well-
designed, thoroughly circulated, and adequate. The content of the notices was sufficiently
detailed to inform class members that their rights were at issue and to provide them an
opportunity to learn the full extent of this litigation.").  Because Class members (sophisticated
business entities) were informed about the litigation nearly a year ago pursuant to Court-
approved mailed individual notice, and were given the opportunity to opt out of the certified
Class, and the Settlement still allows them to object to the terms of the Settlement and/or Class
Counsel's request for attorneys' fees, expenses and service award to the class representative,
Plaintiffs respectfully submit that no second opt-out period is necessary here.

        Plaintiffs note that two entities with extremely small claims (Cochran Wholesale
Pharmacy and QK Healthcare) were inadvertently omitted from the prior list of Class members.
*See* Lamb Declaration at ¶ 3 n.8 (attached as Exh. 3 to Gerstein Decl.).  With the Court's
permission, Plaintiffs will direct that notice be sent to both and that they be permitted to submit
claims.  In the (unlikely) event that either seeks to opt out and receives Court permission to do
so, Defendants would be refunded their allocated share of the Settlement.  Also, DMS
Pharmaceutical Group ("DMS") was previously included as a Class member, but further review
of transaction data (undertaken to develop the proposed Plan of Allocation) indicates that it does
not qualify as a Class member because its first direct purchase of Namenda IR, XR or generic
Namenda IR, occurred after the end of the Class period of September 30, 2015.  *Id*.  Plaintiffs
propose to inform DMS of this and inform them of the opportunity to seek this Court's review.

### G.     Rust Is an Appropriate Settlement Administrator

Plaintiffs request that Rust, which already served as the class certification notice administrator, be appointed as the settlement administrator as well.  Rust will oversee the administration of the Settlement, including disseminating notice to the Class, calculating each Class member's *pro rata* share of the Net Settlement Fund in conjunction with Dr. Lamb, and distributing settlement proceeds.  Rust has been appointed claims administrator several times in this district.  *See, e.g.*, *Riedel v. Acqua Ancien Bath N.Y. LLC*, 2016 U.S. Dist. LEXIS 68747, at *25-26 (S.D.N.Y. May 19, 2016) (collecting cases).

### H.     First State Trust Company Is an Appropriate Escrow Agent

Plaintiffs request that First State Trust Company serve as escrow agent, as it has done in prior class actions.  Defendants have approved this selection.  *See* Exhibit D to the Settlement Agreement (Escrow Agreement).

### I.     The Proposed Schedule Is Fair and Should Be Approved

As set forth in the proposed order appended hereto as Exhibit A (which is the form of preliminary approval order attached to the Settlement Agreement but with dates filled in, per the Court's request), Plaintiffs propose the following schedule for completing the Settlement approval process (assuming preliminary approval is granted by January 28, 2020, and after consulting with the Court's clerk regarding the Court's schedule regarding a hearing date):

- Within ten days of filing of the Settlement Agreement, Defendants shall serve notices pursuant to the Class Action Fairness Act of 2005;

- By February 12, 2020, notice is mailed to each member of the Class;

- By March 13, 2020, all briefs and materials in support of the application for an award of attorneys' fees and reimbursement of expenses, and incentive awards for the Named Plaintiffs, shall be filed with the Court;

- By March 30, 2020, Class members may object to the Settlement and/or the requested attorneys' fees, expenses and incentive awards;

- By April 21, 2020, all briefs and materials in support of the final approval of the settlement and the entry of Final Judgment proposed by the parties to the Settlement Agreement shall be filed with the Court; and

- On Wednesday, May 27, 2020, at 10 a.m., the Court will hold a final Fairness Hearing.

This schedule is fair to Class members since it provides ample time for consideration of the Settlement and Class Counsel's request for fees, expenses and incentive awards before the deadline for submitting objections. Specifically, Class members will have the notice for more than 45 days before the deadline to object to the Settlement, and will have Class Counsel's request for fees, expenses and incentive awards for more than two weeks before the deadline to object to Class Counsel's request for fees, expenses and incentive awards. In addition, the schedule allows the full statutory period for Defendants to serve their Class Action Fairness Act notices pursuant to 28 U.S.C. § 1715, and for regulators to review the proposed settlement and, if they choose, advise the Court of their view.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Order.

Dated: December 24, 2019                                Respectfully Submitted:

                                                        /s/ Bruce E. Gerstein
David F. Sorensen                                       Bruce E. Gerstein
Daniel C. Simons                                        Joseph Opper
Ellen T. Noteware                                       Kimberly M. Hennings
Nicholas Urban                                          Dan Litvin
BERGER MONTAGUE PC                                      GARWIN GERSTEIN & FISHER LLP
1818 Market Street, Suite 3600                          88 Pine Street, 10th Floor
Philadelphia, PA 19103                                  New York, NY 10005
Tel: (215) 875-3000                                     Tel: (212) 398-0055

18

Fax: (215) 875-4604
dsorensen@bm.net
dsimons@bm.net
enoteware@bm.net
nurban@bm.net

Peter Kohn
Joseph T. Lukens
FARUQI & FARUQI, LLP
1617 John F Kennedy Blvd., Suite 1550
Philadelphia, PA 19103
Tel: (215) 277-5770
Fax: (215) 277-5771
pkohn@faruqilaw.com
jlukens@faruqilaw.com

Fax: (212) 764-6620
bgerstein@garwingerstein.com
jopper@garwingerstein.com
khennings@garwingerstein.com
dlitvin@garwingerstein.com

Susan Segura
David C. Raphael, Jr.
Erin R. Leger
SMITH SEGURA RAPHAEL & LEGER, LLP
221 Ansley Blvd.
Alexandria, LA 71303
Tel: (318) 445-4480
Fax: (318) 487-1741
ssegura@ssrllp.com
draphael@ssrllp.com
eleger@ssrllp.com

Stuart E. Des Roches
Andrew W. Kelly
ODOM & DES ROCHES, LLC
650 Poydras Street, Suite 2020
New Orleans, LA 70130
Tel: (504) 522-0077
Fax: (504) 522-0078
stuart@odrlaw.com
akelly@odrlaw.com

Russ Chorush
HEIM PAYNE & CHORUSH, LLP
1111 Bagby, Suite 2100
Houston, TX 77002
Tel: (713) 221-2000
Fax: (713) 221-2021
rchorush@hpcllp.com

*Counsel for the Direct Purchaser Class Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on December 24, 2019, I electronically filed the above by CM/ECF system.

Respectfully submitted,

/s/ *Bruce E. Gerstein*
Bruce E. Gerstein