# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE NAMENDA DIRECT PURCHASER
ANTITRUST LITIGATION

Case No. 15-CV-7488-CM-RWL

### SETTLEMENT AGREEMENT

This Settlement Agreement is made and entered into on December 20, 2019, by and

between Forest Laboratories, LLC; Forest Laboratories, Inc.;[1] Forest Laboratories Holdings,

Ltd.; and Actavis plc (collectively, "Forest" or "Defendants"), by and through their counsel

Wilkinson Walsh + Eskovitz LLP and White & Case LLP, and J M Smith Corporation (d/b/a

Smith Drug Company) ("Smith Drug") and Rochester Drug Co-Operative, Inc. ("RDC")

(collectively, "Plaintiffs"), individually and on behalf of the direct purchaser class (as defined in

Paragraph 1 below, the "Direct Purchaser Class" or "Class"), by and through Garwin Gerstein &

Fisher LLP and Berger Montague PC, in their capacity as co-lead counsel for the Direct

Purchaser Class ("Plaintiffs' Counsel") in the above-captioned litigation.  This Settlement

Agreement is intended to, and upon occurrence of the Effective Date will, fully, finally, and

forever resolve, compromise, discharge, and settle the claims of the Direct Purchaser Class in the

above-captioned litigation, subject to the terms and conditions set forth herein.

WHEREAS, Plaintiffs each filed lawsuits alleging that Defendants entered into one or

more agreements in restraint of trade in violation of the Sherman Act, 15 U.S.C. § 1, with respect

---

[1] On July 1, 2014, in a series of transactions, Forest Laboratories, Inc. became a limited
liability company named Forest Laboratories, LLC.  Subsequently, on January 1, 2018, Forest
Laboratories, LLC was merged with and into Allergan Sales, LLC, a Delaware limited liability
company.  As a result of these corporate consolidations, Forest Laboratories, Inc. and Forest
Laboratories, LLC are predecessors in interest to Allergan Sales, LLC.

to memantine hydrochloride, a drug approved by the FDA for the treatment of Alzheimer's

Disease; and maintained and enhanced their monopoly power with respect to memantine

hydrochloride through an unlawful "hard switch product hop," in violation of the Sherman Act,

15 U.S.C. § 2;

WHEREAS, Plaintiffs' claims were consolidated under the caption *In re Namenda Direct*

*Purchaser Antitrust Litigation*, No. 15-cv-7488-CM-RWL, before the United States District

Court for the Southern District of New York (the "Court") as a putative class action on behalf of

the Direct Purchaser Class, as defined in Paragraph 1 below (the "Direct Purchaser Class Action"

or the "Action");

WHEREAS, the Court denied Defendants' motions to dismiss including denying the

motion to dismiss based on statute of limitations, denied Defendants' motion for summary

judgment, certified a class for purposes of litigation, and set the case for trial beginning October

28, 2019;

WHEREAS, Defendants deny each and every one of Plaintiffs' allegations, have not

conceded or admitted any liability or that Plaintiffs' claims timely were filed within the

applicable statutes of limitations, have not conceded or admitted the propriety of certification of

any class in this Action for any purposes other than settlement, have not conceded or admitted

the validity of any assignments under which any Plaintiffs pursue claims in the Action or the

propriety or pursuing claims based on partial assignments, have not conceded or admitted that

any conduct challenged by Plaintiffs caused any damage whatsoever, and have asserted a number

of defenses to Plaintiffs' claims;

WHEREAS, Plaintiffs and Defendants agree that this Settlement Agreement shall not be

deemed or construed to be an admission or evidence of any violation of any statute or law or of

any liability or wrongdoing by any Defendant, or of the truth of any of the claims or allegations alleged in the Direct Purchaser Class Action or a waiver of any defenses thereto;

WHEREAS, Plaintiffs' Counsel have concluded, after extensive discovery and investigation of the facts and after fully preparing for trial, and after carefully considering the circumstances of the Direct Purchaser Class Action, including the claims asserted in this action, and the possible and asserted legal and factual defenses thereto, that it would be in the best interests of the Direct Purchaser Class to enter into this Settlement Agreement in order to avoid the uncertainties of litigation, particularly complex litigation such as this, and to assure a benefit to the Direct Purchaser Class and further, that Plaintiffs' Counsel consider the Settlement set forth in this Settlement Agreement to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23 and in the best interests of the Direct Purchaser Class;

WHEREAS, Defendants have concluded, despite their belief that they are not liable for the claims asserted and that they have good defenses thereto, that it would be in their respective best interests to enter into this Settlement Agreement to avoid the uncertainties and additional costs of further litigation and to finally put to rest all claims relating to the Action;

WHEREAS, Plaintiffs' Counsel, on behalf of themselves and the proposed Direct Purchaser Class, on the one hand, and counsel for Defendants on the other, have engaged in arm's-length settlement negotiations, including with the assistance of several different mediators, and have reached this Settlement Agreement, subject to Court approval, which embodies all of the terms and conditions of the settlement between Plaintiffs, both individually and on behalf of the Direct Purchaser Class, and Defendants; and

NOW THEREFORE, it is agreed by the undersigned, on behalf of Plaintiffs and the Direct Purchaser Class, on the one hand, and Defendants, on the other, that the Direct Purchaser

Class Action and all claims of Plaintiffs and the Direct Purchaser Class be settled, compromised and dismissed with prejudice as to Defendants (and, except as hereinafter provided, without costs as to Plaintiffs, the Direct Purchaser Class, or Defendants), subject to Court approval, on the following terms and conditions:

**1.    Direct Purchaser Class.**   The Court has previously certified the following class ("Direct Purchaser Class" or "Class"), which Defendants shall support for purposes of this settlement only:

> All persons or entities in the United States and its territories who purchased branded Namenda IR 5 or 10 mg tablets, and/or generic Namenda IR 5 or 10 mg tablets (including an authorized generic), and/or branded Namenda XR capsules, directly from Forest or its successors in interest, Actavis and Allergan, and/or from any generic manufacturer at any time during the period from June 2012 until September 30, 2015.  Excluded from the Class are Defendants and their officers, directors, management, employees, subsidiaries, or affiliates, and all federal governmental entities.

**2.    Reasonable Best Efforts to Effectuate This Settlement.**   Counsel for the Plaintiffs and Defendants agree to recommend approval of this Settlement Agreement to the Court and to undertake their reasonable best efforts, including undertaking all actions contemplated by and steps necessary to effectuate this Settlement Agreement, to carry out the terms of this Settlement Agreement and to secure the prompt, complete, and final dismissal with prejudice of all claims in the Direct Purchaser Class Action.  This includes Defendants serving notice on those entities required to receive notice pursuant to 28 U.S.C. § 1715.

**3.    Motion for Preliminary Approval of the Settlement.**   Plaintiffs shall submit to the Court—and Defendants shall support—a motion (the "Motion") requesting entry of an order preliminarily approving the settlement, and authorizing dissemination of notice to the Direct Purchaser Class (the "Preliminary Approval Order") substantially in the form of Exhibit A hereto.  The Motion shall:

4

a.      request preliminary approval of the Settlement set forth in this Settlement

Agreement as fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23, and in the

best interests of the Direct Purchaser Class;

b.      request a stay of all proceedings against Defendants in the Direct Purchaser Class

Action, except those proceedings provided for or required by this Settlement Agreement;

c.      seek approval for notice to the Class by means of direct first-class United States

mail notice in the form substantially in the form attached hereto as Exhibit B; and

d.      include a proposed form of order, which includes such provisions as are typical in

such orders, including a finding that the proposed plan of notice complies with Rule 23 and the

requirements of due process, and a provision that if final approval of the settlement is not

obtained, the settlement is null and void and the parties will revert to their positions *ex ante*

without prejudice to their rights, claims, or defenses.

4.      **Motion for Final Approval and Entry of Final Judgment.**  If the Court

preliminarily approves this Settlement Agreement, Plaintiffs shall submit—and Defendants shall

support—a motion for final approval by the Court of this Settlement Agreement ("Final

Approval Motion") after notice has been disseminated to the Class pursuant to the Preliminary

Approval Order.  The Final Approval Motion shall be submitted to the Court within twenty-one

(21) days after the Court-ordered deadline by which members of the Class may object to the

Settlement, and shall seek entry of an order and final judgment ("Final Approval Order")

substantially in the form attached hereto as Exhibit C:

a.      finding this Settlement Agreement and its terms to be a fair, reasonable, and

adequate settlement as to Plaintiffs and the Direct Purchaser Class within the meaning of Rule 23

of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms;

b.      finding that all members of the Class ("Class Members") shall be bound by this Settlement Agreement, including the release provisions and covenant not to sue set forth in this Settlement Agreement;

c.      finding that notice given constitutes due, adequate, and sufficient notice and meets the requirements of due process and the Federal Rules of Civil Procedure;

d.      incorporating the release set forth in Paragraphs 11 and 12 of this Settlement Agreement, and forever barring the Releasors from asserting any Released Claims against any of the Releasees as defined below;

e.      providing for the payment of reasonable attorneys' fees and reimbursement of expenses solely from the Settlement Fund;

f.      providing for payment solely from the Settlement Fund of service awards in the amount of $150,000 each to the named plaintiffs Smith Drug and RDC, in addition to whatever monies each may receive from the Settlement Fund pursuant to a Court-approved plan of allocation;

g.      directing that the Direct Purchaser Class Action be dismissed with prejudice as to Defendants and, except as provided for herein, without costs or attorney's fees recoverable under 15 U.S.C. § 15(a);

h.      retaining exclusive jurisdiction over the Settlement and the Settlement Agreement, including the administration and consummation of the Settlement; and

i.      directing that the judgment of dismissal with prejudice of all Direct Purchaser Class claims against Defendants shall be final and appealable pursuant to Fed. R. Civ. P. 54(b), there being no just reason for delay.

5.     **Finality of Settlement.**  This Settlement Agreement shall become final upon the occurrence of all of the following (the "Effective Date"):

a.     The Settlement is not terminated pursuant to Paragraph 14 below;

b.     The Settlement and this Settlement Agreement are approved by the Court as required by Rule 23(e) of the Federal Rules of Civil Procedure;

c.     The Court enters the Final Approval Order, entering a final judgment of dismissal with prejudice against Plaintiffs and the Class Members; and

d.     The time for appeal from the Court's signing of the Final Approval Order has expired or, if the Final Approval Order is appealed, it has been resolved by agreement and withdrawn by the appealing party, or it has been affirmed by the court of last resort to which an appeal of such Final Approval Order may be taken.

6.     **Settlement Payment.**  Within fifteen (15) days after the latter of the entry of the Preliminary Approval Order or receipt of wire transfer instructions from Plaintiffs' Counsel, Defendant shall pay seven hundred and fifty million dollars ($750,000,000.00) (the "Settlement Amount") to the designated account (the "Settlement Fund"), which shall be held in escrow (the "Escrow Account") subject to the terms and conditions of the escrow agreement attached hereto as Exhibit D (the "Escrow Agreement"), and in accordance with the provisions of Paragraphs 7, 15, and 18 below.  Defendants shall not pay any additional amount at any time, whether for wire transfer fees or bank fees of any kind associated with the wire transfer of funds, interest, notice, administration, costs, attorneys' fees, or otherwise, into the Escrow Account.  The total consideration that Defendants will pay for this Settlement shall be the Settlement Amount only.

7.     **The Settlement Fund.**

a.     Before the Court issues the Final Approval Order, disbursements for expenses associated with providing notice of the Settlement to the Class, expenses associated with

administering the Settlement, and any payments and expenses incurred in connection with taxation matters relating to the Settlement and this Settlement Agreement (collectively, "Administration Expenses") may be made from the Settlement Fund.  In the event the Agreement is disapproved, terminated, or otherwise fails to become effective, all Administration Expenses shall be borne by Plaintiffs' Counsel and Administration Expenses made by the Settlement Fund shall be refunded to Defendants.  Court approval shall not be required for disbursements or distributions of Administration Expenses for amounts (in the aggregate) of less than $25,000.  Otherwise, no disbursement from or distribution of the Settlement Fund shall be made without prior approval of the Court.

b.      At all times prior to the Effective Date, the Settlement Fund shall be invested as set forth in Paragraph 3(b) of the Escrow Agreement, in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Money Market Fund or a bank account insured by the Federal Deposit Insurance Corporation ("FDIC") up to the guaranteed FDIC limit.  After the Effective Date, the Settlement Fund shall be invested pursuant to Paragraph 3(b) of the Escrow Agreement as directed in writing by Plaintiffs' Counsel.  All interest and dividends earned on the Settlement Fund shall become and remain part of the Settlement Fund.  Any losses on the Settlement Fund shall be borne by the Settlement Fund and shall not be recoverable from Defendants.  Defendants shall have no liability, obligation, or responsibility of any kind in connection with the investment, disbursement, or other oversight of the Settlement Fund.

c.      After the Effective Date, the Settlement Fund shall be distributed in accordance with the Court-approved plan for such distribution. After making the payment described in Paragraph 6 above, Defendants shall have no responsibility whatsoever for the allocation or

distribution of the Settlement Fund and shall not be responsible for any disputes relating to the amount, allocation, or distribution of any fees, costs or awards.  Further, after making the payment described in Paragraph 6 above, Defendants shall not be liable for any additional payments to the Direct Purchaser Class or Plaintiffs' Counsel pursuant to this Settlement Agreement.

      d.      Plaintiffs and counsel for the Class shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses.  Defendants shall not be liable for any costs, attorneys' fees, other fees, or expenses of any of Plaintiffs' or the Direct Purchaser Class's respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Fund.

      e.      To the extent that there is any ambiguity or inconsistency concerning disbursements when this Settlement Agreement and the Escrow Agreement are read together, the terms of this Settlement Agreement shall control.

      **8.**      **No Injunctive Relief.**  This Settlement Agreement does not include any provisions for injunctive relief.

      **9.**      **Full Satisfaction; Limitation of Interest and Liability.**  Class Members shall look solely to the Settlement Fund for settlement and satisfaction against Defendants of all claims that are released hereunder.  Except as provided by order of the Court, no Class Member shall have any interest in the Settlement Fund or any portion thereof.

      **10.**      **Attorneys' Fees, Expenses and Costs.**

      a.      Plaintiffs' Counsel intend to seek, solely from the Settlement Fund, attorneys' fees of up to one-third of the Settlement Fund (including any interest accrued thereon but net of any reasonable costs and expenses incurred that are reimbursed and net of any service awards to the named Plaintiffs), the reimbursement of reasonable costs and expenses incurred in the

prosecution of the Action, and service awards to the named Plaintiffs ("Fee and Expense Award"). Plaintiffs' Counsel shall file a motion for approval of the Fee and Expense Award ("Motion for Fee and Expense Award") after the Court has granted preliminary approval to the Settlement but sufficiently before the Court's final fairness hearing on the Settlement, and Defendants agree to take no position with respect to the Motion for Fee and Expense Award, or on any other application by Plaintiffs' Counsel for fees and/or expenses to be paid only from the Settlement Fund as may be necessary to effectuate this Settlement Agreement. Defendants also agree not to oppose any request by Plaintiffs' Counsel that the Court order that any Fee and Expense Award be disbursed only to the Court-appointed co-lead counsel for the Class for allocation among the various counsel to the Class that have participated in this litigation. The various counsel for the Class, including Plaintiffs' Counsel, shall be reimbursed and paid solely out of the Settlement Fund for all such fees and expenses. In no event shall any Fee and Expense Award be paid before the Effective Date. Plaintiffs, Class Members, and their respective counsel, shall not seek payment of any attorneys' fees, expenses, costs, or service awards from Defendants in this action, or in any other action related to the released claims set forth in Paragraphs 11 and 12 hereof, from any source other than the Settlement Fund.

      b.      The procedures for and the allowance or disallowance by the Court of the application by Plaintiffs' Counsel for attorneys' fees, costs and expenses to be paid out of the Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement. Notwithstanding any right of termination in Paragraph 14, any order or proceeding relating to the fee and expense application, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, provide a basis to terminate or cancel this Agreement, affect or delay the

finality of the judgment approving settlement, or affect or delay the payment of the Fee and Expense Award as provided in Paragraph 10(a).

c.       If the Court's award of such fees and expenses is vacated, reversed, or reduced subsequent to the disbursement of any Fee and Expense Award, Plaintiffs' Counsel shall within ten (10) business days after receiving written notice from the Court or from Defendants of such vacatur, reversal, or reduction, make a refund to the Escrow Account in the amount of such vacatur, reversal, or reduction with interest, and further provided that if the Settlement Agreement is terminated pursuant to Paragraph 14 below, Plaintiffs' Counsel shall within ten (10) business days after giving notice to or receiving notice from Defendants of such termination, make a refund to the Escrow Account in the amount of any such Fee and Expense Award with interest.  The interest rate applicable to any refund made to the Escrow Account pursuant to this Paragraph shall be the same interest rate earned by the Settlement Fund during the period between the disbursement of any Fee and Expense Award and any refund required by this Paragraph.

11.       **Releases and Covenants**.  Upon the occurrence of the Effective Date and in consideration of payment of the Settlement Amount specified in Paragraph 6 above, Plaintiffs and all Class Members, whether or not they object to the Settlement and whether or not they make a claim upon or participate in the Settlement Fund, on behalf of themselves and their respective past, present, and future parents, subsidiaries, associates, affiliates, officers, directors, employees, insurers, general or limited partners, divisions, agents, attorneys, servants, trustees, joint ventures, heirs, executors, administrators, representatives (and the parents' subsidiaries' and affiliates' past and present officers, directors, employees, agents, attorneys, servants, and representatives), and their predecessors, successors, heirs, executors, administrators, and

representatives (collectively, the "Releasors"), hereby release and forever discharge, and covenant not to sue, Defendants and their past, present, and future parents, subsidiaries, divisions, affiliates, joint ventures, stockholders, officers, directors, management, supervisory boards, insurers, general or limited partners, employees, agents, attorneys, servants, representatives (and the parents', subsidiaries', and affiliates' past, present, and future officers, directors, employees, agents, attorneys, servants, and representatives), and the predecessors, successors, heirs, executors, administrators and representatives of each of the foregoing (collectively, the "Releasees") from all manner of claims, debts, obligations, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, under federal or state laws, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or non-contingent, in law or equity, that arise out of or relate, in whole or in part in any manner, to:

> (a) the subject matter of or acts, omissions, or other conduct alleged in the complaint in the Direct Purchaser Class Action, or any prior complaints or subsequent amended complaints filed in the Direct Purchaser Class Action; (b) the subject matter of pre-trial proceedings in the Direct Purchaser Class Action; and/or (c) all claims concerning alleged delay or impairment in the marketing, sale, manufacture, pricing, or purchase of, or the enforcement of intellectual property related to, Namenda IR, Namenda XR, or their generic equivalents that could have been asserted in the Direct Purchaser Class Action, including but not limited to claims of reverse payments, product hop, and unlawful patent term extension of U.S. Patent No. 5,061,703, sham patent listings, and sham patent litigations prior to the date hereof (collectively, this entire paragraph the "Released Claims").

This Settlement Agreement is not intended to release anyone other than the Releasees, is not on behalf of anyone other than the Releasors, and does not affect the claims of the proposed end-payor class, nor is it intended to release any actual or potential claims described in Paragraph 13.

12.     **Additional Release.**  In addition, with respect to the claims that are the subject

matter of Paragraph 11, each Releasor hereby expressly waives and releases, upon the Settlement

Agreement becoming final, any and all provisions, rights, and/or benefits conferred by § 1542 of

the California Civil Code, which reads:

> Section 1542.  General Release; extent.  A general release does not
> extend to claims which the creditor does not know or suspect to
> exist in his or her favor at the time of executing the release, which
> if known by him or her must have materially affected his or her
> settlement with the debtor;

or by any law of any state or territory of the United States, or principle of common law, which is

similar, comparable, or equivalent to § 1542 of the California Civil Code.  Each Releasor may

hereafter discover facts other than or different from those which he, she, or it knows or believes

to be true with respect to the claims that are the subject matter of Paragraph 11.  Nonetheless,

upon the Effective Date each Releasor hereby expressly waives and fully, finally, and forever

settles and releases any known or unknown, foreseen or unforeseen, suspected or unsuspected,

asserted or unasserted, contingent or non-contingent claim that is the subject matter of Paragraph

11, whether or not concealed or hidden, without regard to the subsequent discovery or existence

of such different or additional facts.  Each Plaintiff and member of the Direct Purchaser Class

also hereby expressly waives and fully, finally and forever settles, releases and discharges any

and all claims that are the subject matter of Paragraph 11 that it may have against any Releasees

under § 17200, et seq., of the California Business and Professions Code or any similar

comparable or equivalent provision of the law of any other state or territory of the United States

or other jurisdiction.

13.     **Reservation of Claims.**  The intent of this Settlement is to effect a complete and

total resolution of this Action to the extent of the claims of the Direct Purchaser Plaintiff Class

that were or could have been asserted relating to the allegations in this Action, but is not intended

to release any claims (1) arising in the ordinary course of business between Releasors and the

Releasees arising under Article 2 of the Uniform Commercial Code (pertaining to sales), the

laws of negligence or product liability or implied warranty, breach of contract, breach of express

warranty, or personal injury; or (2) other claims unrelated to Namenda IR, Namenda XR, or their

generic equivalents.

### 14.   <u>Termination.</u>

a.      Defendants and Plaintiffs shall have the option to terminate the Settlement and

have their Settlement Payment refunded if the Court declines to grant final approval to the Direct

Purchaser Class Settlement.  If for any reason the Settlement does not become final in

accordance with the terms of Paragraph 5 of this Settlement Agreement, then (i) this Settlement

Agreement shall be of no force or effect; (ii) all funds paid by Defendants into the Settlement

Fund, plus interest (net of any taxes paid on such interest) shall be returned to Defendants as set

forth in Paragraph 15 and  Paragraph 7; (iii) any release pursuant to Paragraphs 11 and 12 above

shall be of no force or effect; and (iv) the parties agree, subject to the Court's approval, that

litigation of the Direct Purchaser Class Action by Plaintiffs and the Direct Purchaser Class will

resume, in a reasonable manner and on a reasonable timetable to be approved by the Court.

b.      For the avoidance of doubt, any order of the Court that (i) narrows or does not

approve the scope of the release and covenant not to sue contemplated by this settlement,

(ii) purports to impose additional material obligations on Defendants, or (iii) declines to enter a

final judgment that meets the minimum requirements set forth in Paragraph 4 of this Agreement,

or any order on review or appeal that would have the foregoing effects, except as otherwise

agreed to in writing by Defendants and Plaintiffs, constitutes a failure to grant final approval of

this Agreement and confers on Defendants and Plaintiffs the right to terminate provided by this

Paragraph.

      c.     A modification or reversal on appeal of any amount of the Fee and Expense

Award shall not be deemed a modification of all or a part of the terms of this Settlement

Agreement or such Final Approval Order and shall not give rise to any right of termination.

      **15.**     **Reimbursement of the Settlement Fund Upon Termination.**  If this Settlement

Agreement is terminated pursuant to the provisions of Paragraph 14 above, the Escrow Agent

shall return the Settlement Fund—including any Fee and Expense Award paid to Plaintiffs'

Counsel (the "Net Settlement Fund")—to Defendants.  Subject only to expiration of any time

deposit investment(s) not to exceed ninety (90) days, the Escrow Agent shall disburse the Net

Settlement Fund to Defendants in accordance with this Paragraph within fifteen (15) business

days after receipt of either (i) written notice signed by Defendants' counsel stating that this

Settlement Fund has been terminated, or (ii) any order of the Court so directing.  Any remaining

portion of the Net Settlement Fund invested in time deposits not to exceed ninety (90) days shall

be disbursed within ten (10) days after the expiration of such investments.  If the Settlement

Agreement is terminated pursuant to Paragraph 14 above, any obligations pursuant to this

Settlement Agreement (other than disbursement of the Net Settlement Fund to Defendants as set

forth above) shall cease immediately and the releases set forth in Paragraphs 11 and 12 shall be

null and void.

      **16.**     **Additional Reimbursement Provision.**  Two entities (Cochran Wholesale

Pharmacy and QK Healthcare) with very small claims, fit within the Class definition but were

inadvertently omitted from the prior list of Class members.  They will be sent notice and be

permitted to submit a claim.  In the event either seeks and is permitted by the Court to opt out of

the Class, the Settlement Amount shall be reduced by an amount equal to their individual (or combined) allocation percentage as calculated by Dr. Russell Lamb under the Plan of Allocation, multiplied by the Settlement Amount, plus a proportionate share of interest, with the amount of such reduction being refunded to Defendants within 15 business days of such Court-approved opt out(s) being received by the Claims Administrator.

17.     **Preservation of Rights.**  The parties hereto agree that this Settlement Agreement, whether it becomes final or not, and any and all negotiations, documents and discussions associated with it shall be without prejudice to the rights of any party (except to the extent provided herein), shall not be deemed or construed to be an admission or evidence of any violation of any statute or law (or lack thereof), of any liability or wrongdoing by Defendants (or lack thereof), or of the truth (or lack thereof) of any of the claims or allegations contained in the Complaint or any other pleading or document, and evidence thereof shall not be discoverable or used directly or indirectly, in any way (other than to effectuate or enforce the terms of this Settlement Agreement).  The parties expressly reserve all of their rights if the Settlement does not become final in accordance with the terms of this Settlement Agreement.

18.     **Taxes.**

a.     The parties intend that any taxes due as a result of income earned by the Settlement Fund will be paid from the Settlement Fund.  Plaintiffs' Counsel shall be solely responsible for directing the Escrow Agent to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Settlement Fund. Further, Plaintiffs' Counsel shall be solely responsible for directing the Escrow Agent to make any tax payments, including interest and penalties due, on income earned by the Settlement Fund.  Plaintiffs' Counsel shall be entitled to direct the Escrow Agent to pay from the Escrow

Account customary and reasonable tax expenses, including professional fees and expenses incurred in connection with carrying out the Escrow Agent's or tax preparer's responsibilities as set forth in this Paragraph. Defendants shall have no responsibility to make any tax filings related to the Settlement, this Settlement Agreement, or the Settlement Fund, and shall have no responsibility to pay taxes on any income earned by the Settlement Fund, or to pay taxes with respect thereto unless the settlement is not consummated and the Settlement Fund or the Net Settlement Fund is returned to Defendants. Other than as specifically set forth herein, Defendants shall have no responsibility for the payment of taxes or tax-related expenses. If, for any reason, for any period of time, Defendants are required to pay taxes on income earned by the Settlement Fund, the Escrow Agent shall, upon written instructions from Defendants with notice to Plaintiffs' Counsel, timely pay to Defendants sufficient monies from the Settlement Fund to enable it to pay all taxes (state, federal, or other) on income earned by the Settlement Fund.

b.      For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Escrow Account shall be the Claims Administrator, who shall timely and properly file or cause to be filed on a timely basis, all tax returns necessary or advisable with respect to the Escrow Account (including without limitation all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B-2(1)).

c.      The parties to this Settlement Agreement and their counsel shall treat, and shall cause the Escrow Agent to treat, the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. The parties, their counsel, and the Escrow Agent agree that they will not ask the Court to take any action inconsistent with the treatment of the Escrow Accounts in this manner. In addition, the Escrow Agent and, as required, the parties

17

shall timely make such elections as necessary or advisable to carry out the provisions of this

Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-l(j)) back

to the earliest permitted date.  Such elections shall be made in compliance with the procedures

and requirements contained in such regulations.  It shall be the responsibility of the Escrow

Agent to timely and properly prepare and deliver the necessary documentation for signature by

all necessary parties and thereafter to cause the appropriate filing to occur.  All provisions of this

Settlement Agreement shall be interpreted in a manner that is consistent with the Escrow

Accounts being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.

19.     **Binding Effect.**  This Settlement Agreement shall be binding upon, and inure to

the benefit of, the parties hereto and to the Releasees.  Without limiting the generality of the

foregoing, each and every covenant and agreement herein by the Plaintiffs and their counsel shall

be binding upon all Class Members.

20.     **Integrated Agreement.**  This Settlement Agreement, together with the schedules

and exhibits hereto and the documents incorporated herein by reference, contains an entire,

complete, and integrated statement of each and every term and provision agreed to by and among

the parties hereto with respect to the transactions contemplated by this Agreement, and

supersedes all prior agreements or understandings, whether written or oral, between or among

any of the parties hereto with respect to the subject matter hereof.  This Settlement Agreement

shall not be modified in any respect except by a writing executed by all of the parties hereto.

21.     **Independent Settlement.**  This Settlement of the Direct Purchaser Class Action

is not conditioned on approval by any other direct purchaser or settlement of any other case.  This

Settlement of the Direct Purchaser Class Action is not conditioned on the disposition of the

claims of the end-payor class.

18

22.    **Headings.**  The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

23.    **No Party is the Drafter.**  None of the parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

24.    **Choice of Law.**  All terms of this Settlement Agreement shall be governed by federal common law.

25.    **Consent to Jurisdiction.**  Defendants and each Class Member hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the District of Southern District of New York for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein.  Nothing in this paragraph shall prohibit (a) the assertion in any forum in which a claim is brought that any release herein is a defense, in whole or in part, to such claim or (b) in the event that such a defense is asserted in such forum, the determination of its merits in that forum.

26.    **Representations and Warranties.**  Each party hereto represents and warrants to each other party hereto that it has the requisite authority (or in the case of natural persons, the legal capacity) to execute, deliver, and perform this Settlement Agreement and to consummate the transactions contemplated hereby.

27.    **No Admission.**  Nothing in this Settlement Agreement, nor in any document related to this Settlement Agreement, nor anything contained herein or therein or contemplated hereby or thereby, nor any proceedings undertaken in accordance with the terms set forth in the Settlement Agreement or herein, shall be construed as an admission or concession in any action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body, or any other body or authority, present or future, by Defendants, including, without limitation, that Defendants have engaged in any conduct or practices that violate any antitrust statute or other law.

28.    **Notice.**  Notice to Defendants pursuant to this Settlement Agreement shall be sent by United States mail and electronic mail to:

> Beth A. Wilkinson
> WILKINSON WALSH + ESKOVITZ LLP
> 2001 M Street, NW, 10th Floor
> Washington, DC 20036
> Tel: (202) 847-4000
> bwilkinson@wilkinsonwalsh.com
>
> J. Mark Gidley
> WHITE & CASE LLP
> 701 Thirteenth Street NW
> Washington, DC 20005
> Tel: (202) 626-3600
> mgidley@whitecase.com

Notice to the Plaintiffs pursuant to this Settlement Agreement shall be sent by United States mail and electronic mail to Plaintiffs' Counsel:

> Bruce E. Gerstein
> GARWIN GERSTEIN & FISHER LLP
> 88 Pine Street, 10th Floor
> New York, NY 10005
> Tel: (212) 398-0055
> bgerstein@garwingerstein.com
>
> David F. Sorensen
> BERGER MONTAGUE PC

1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
dsorensen@bm.net

Any of the parties may, from time to time, change the address to which such notices,

requests, consents, directives, or communications are to be delivered, by giving the other parties

prior written notice of the changed address, in the manner hereinabove provided, ten (10)

calendar days before the change is effective.

    **29.**   **Execution in Counterparts.**  This Settlement Agreement may be executed in

counterparts, and a facsimile or .pdf signature shall be deemed an original signature for purposes

of executing this Settlement Agreement.

IN WITNESS WHEREOF, the parties hereto through their fully authorized

representatives have agreed to this Settlement Agreement as of the date first herein above

written.

By: _____

Beth A. Wilkinson
WILKINSON WALSH + ESKOVITZ LLP
2001 M Street, NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000
bwilkinson@wilkinsonwalsh.com

By: _____

Bruce E. Gerstein
GARWIN GERSTEIN & FISHER LLP
88 Pine Street, 10th Floor
New York, NY 10005
Tel: (212) 398-0055
bgerstein@garwingerstein.com

By: _____

J. Mark Gidley
WHITE & CASE LLP
701 Thirteenth Street NW
Washington, DC 20005
Tel: (202) 626-3600
mgidley@whitecase.com

*Counsel for Defendants*

By: _____

David F. Sorensen
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
dsorensen@bm.net

*Co-Lead Counsel for Plaintiffs and the Class*

IN WITNESS WHEREOF, the parties hereto through their fully authorized

representatives have agreed to this Settlement Agreement as of the date first herein above

written.

By: _____
Beth A. Wilkinson
WILKINSON WALSH + ESKOVITZ LLP
2001 M Street, NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000
bwilkinson@wilkinsonwalsh.com

By: _____
Bruce E. Gerstein
GARWIN GERSTEIN & FISHER LLP
88 Pine Street, 10th Floor
New York, NY 10005
Tel: (212) 398-0055
bgerstein@garwingerstein.com

By: _____
J. Mark Gidley
WHITE & CASE LLP
701 Thirteenth Street NW
Washington, DC 20005
Tel: (202) 626-3600
mgidley@whitecase.com

By: _____
David F. Sorensen
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
dsorensen@bm.net

*Counsel for Defendants*

*Co-Lead Counsel for Plaintiffs and the Class*

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE NAMENDA DIRECT PURCHASER ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>All Direct Purchaser Actions | Case No. 1:15-cv-07488-CM-RWL |

### [PROPOSED] ORDER GRANTING DIRECT PURCHASER CLASS PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, APPROVAL OF THE FORM AND MANNER OF NOTICE TO THE CLASS AND PROPOSED SCHEDULE FOR A FAIRNESS HEARING

Upon review and consideration of Direct Purchaser Plaintiffs' Motion for Preliminary Approval of Proposed Settlement, Approval of the Form and Manner of Notice to the Class, and Proposed Schedule for a Fairness Hearing, the exhibits thereto, and any hearing thereon, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that said motion is GRANTED as follows:

#### Jurisdiction

1.      This Court has jurisdiction over each of the named plaintiffs, J M Smith Corp. (d/b/a Smith Drug Co.) ("Smith Drug"), and Rochester Drug Co-Operative, Inc. ("RDC") (collectively, "Plaintiffs"), individually and on behalf of the certified class in this action (defined below); and Forest Laboratories, LLC; Forest Laboratories, Inc.;[1] Forest Laboratories Holdings Ltd.; and Actavis plc (collectively, "Defendants"), and jurisdiction over the litigation to which Plaintiffs and Defendants are parties.

---

[1] On July 1, 2014, in a series of transactions, Forest Laboratories, Inc. became a limited liability company named Forest Laboratories, LLC.  Subsequently, on January 1, 2018, Forest Laboratories, LLC was merged with and into Allergan Sales, LLC, a Delaware limited liability company.  As a result of these corporate consolidations, Forest Laboratories, Inc. and Forest Laboratories, LLC are predecessors in interest to Allergan Sales, LLC.

2.      This Order hereby incorporates by reference the definitions in the Settlement

Agreement among Defendants, Plaintiffs, and the Class, and all capitalized terms used and not

otherwise defined herein shall have the meanings set forth in the Settlement Agreement.

3.      On August 2, 2018, this Court certified the following class (the "Class"):

> All persons or entities in the United States and its territories who
> purchased branded Namenda IR 5 or 10 mg tablets, and/or generic
> Namenda IR 5 or 10 mg tablets (including an authorized generic),
> and/or branded Namenda XR capsules, directly from Forest or its
> successors in interest, Actavis and Allergan, and/or from any
> generic manufacturer at any time during the period from June 2012
> until September 30, 2015 (the "Class").  Excluded from the Class
> are the Defendants and their officers, directors, management,
> employees, subsidiaries, or affiliates, and all federal governmental
> entities.

4.      The Court has appointed Smith Drug and RDC as representatives of the Class (the

"Class Representatives"). The Court has also appointed Berger Montague PC and Garwin

Gerstein & Fisher LLP as counsel for class ("Class Counsel") pursuant to Fed. R. Civ. P. 23(g).

### Preliminary Approval of the Proposed Settlement

5.      A court may finally approve a class action settlement if it is "fair, adequate, and

reasonable, and not a product of collusion." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d

96, 116 (2d Cir. 2005) (internal quotation marks omitted).   "Preliminary approval," however,

"requires only an initial evaluation of the fairness of the proposed settlement on the basis of

written submissions and an informal presentation by the settling parties." *Tiro v. Pub. House*

*Investments, LLC*, No. 11 CIV. 7679 CM, 2013 WL 2254551, at *1 (S.D.N.Y. May 22, 2013)

(McMahon, J.) (internal quotation marks omitted).  A "'presumption of fairness, adequacy, and

reasonableness may attach to a class settlement reached in arm's-length negotiations between

experienced, capable counsel after meaningful discovery.'" *Wal-Mart*, 396 F.3d at 116 (quoting

Manual for Complex Litigation, Third, § 30.42 (1995)). The proposed settlement satisfies this standard.

6.  The Court finds that the proposed settlement, which includes a cash payment of $750,000,000 (Seven-Hundred and Fifty Million dollars) by Defendants into an escrow account for the benefit of the Class (the "Settlement Fund") in exchange for, *inter alia,* dismissal of the litigation between Plaintiffs and Defendants with prejudice and releases of claims filed or that could have been filed against Defendants by Plaintiffs, as set forth in the Settlement Agreement, was arrived at by arm's-length negotiations by highly experienced counsel after three mediations, four years of litigation, and on the eve of trial, falls within the range of possibly approvable settlements. The proposed settlement is therefore hereby preliminarily approved, subject to further consideration at the Fairness Hearing provided for below.

### Approval of the Plan of Notice to the Class

7.  Members of the Class have previously been given notice of the pendency of the litigation and the opportunity to exclude themselves from the Class. *See* ECF No. 679.  No Class Member availed itself of that opportunity. *Id.*  The proposed form of notice, which informs Class Members of the proposed Settlement thereof (annexed as Exhibit B to the Settlement Agreement (the "Notice")) satisfies the requirements of Rule 23(e) and due process, is otherwise fair and reasonable, and therefore is approved.  Class Counsel shall cause the Notice substantially in the form attached to the Settlement Agreement to be disseminated within 15 days of this Order via first-class mail to the last known address of each member of the Class.

8.  The Court finds that because the prior notice of class certification, disseminated by first class mail to all members of the Class on or about December 14, 2018, satisfied the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process, and because the prior notice of class

certification provided an opt-out period that closed on February 20, 2019, there is no need for an additional opt-out period pursuant to Fed. R. Civ. P. 23(e)(4). *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270-71 (2d Cir. 2006) (courts are under "no obligation" to afford class members second opportunity for exclusion); *Wal-Mart*, 396 F.3d at 114-15 (rejecting argument that class members should have been granted "the opportunity to opt out after the settlement notice was issued" because the member "was required to opt out at the class notice stage if it did not wish to be bound by the Settlement."); *Seijas v. Republic of Argentina*, No. 04-CV-1085 (TPG), 2017 WL 1511352, at *7 (S.D.N.Y. Apr. 27, 2017) (no second exclusion period warranted where "the opt-out notice for each class was well-designed, thoroughly circulated, and adequate. The content of the notices was sufficiently detailed to inform class members that their rights were at issue and to provide them an opportunity to learn the full extent of this litigation.").

9.      Plaintiffs report that two very small purchasers of generic Namenda IR (Cochran Wholesale Pharmacy and QK Healthcare) who fit within the Class definition, were inadvertently omitted from the list of class members.  Plaintiffs are directed to send notices of the proposed settlement to these entities.  Plaintiffs also report that DMS Pharmaceutical Group ("DMS") was included as a class member, but upon further review of data, Plaintiffs advise that DMS does not qualify as a class member.  Plaintiffs are directed to send separate notice to DMS advising it of Class Counsel's determination that DMS does not qualify as a class member, the basis for such determination, and advising that DMS may contest such determination by making a submission to the Court on or before _____ , the same date that objections to the Settlement are due.

10.     Pursuant to the Class Action Fairness Act of 2005 ("CAFA") Defendants shall serve notices as required under 28 U.S.C. § 1715 no later than 10 (ten) days from the date

Plaintiffs file the Settlement Agreement and Motion for Preliminary Approval with the Court. Defendants shall contemporaneously provide Class Counsel with copies of any such notices.

11.     Members of the Class may object to the Settlement no later than _____ (45 days from the dissemination of the Notice).  Class Counsel or their designee shall monitor and record any and all objections that are received.

12.     The Court appoints Rust Consulting to serve as claims administrator and to assist Class Counsel in disseminating the Notice. All expenses incurred by the claims administrator must be reasonable, are subject to Court approval other than as provided for in the Settlement Agreement, and shall be payable solely from the Settlement Fund.

13.     The Court appoints First State Trust Company for the purpose of administering the escrow account holding the Settlement Fund.  All expenses incurred by the Escrow Agent must be reasonable, are subject to Court approval other than as provided for in the Settlement Agreement, and shall be payable solely from the Settlement Fund. A copy of the Escrow Agreement executed by First State Trust Company and counsel is annexed as Exhibit D to the Settlement Agreement.

### Final Fairness Hearing

14.     A hearing on final approval (the "Fairness Hearing") shall be held before this Court at 10:00 AM on _____ **[insert date certain 90 days from service of CAFA notice]**, at Courtroom 24A of the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York 10007. At the Fairness Hearing, the Court will consider, *inter alia:* (a) the fairness, reasonableness and adequacy of the Settlement and whether the Settlement should be finally approved; (b) whether the Court should approve the proposed plan of distribution of the Settlement Fund among Class members; (c) whether the Court should

approve awards of attorneys' fees and reimbursement of expenses to Class Counsel; (d) whether

incentive awards should be awarded to the Named Plaintiffs; and (e) whether entry of a Final

Judgment and Order terminating the litigation between Plaintiffs and Defendants should be

entered. The Fairness Hearing may be rescheduled or continued; in this event, the Court will

furnish all counsel with appropriate notice. Class Counsel shall be responsible for

communicating any such notice promptly to the Class by posting a conspicuous notice on the

following website of Class Counsel: www.garwingerstein.com; and www.bergermontague.com.

15.     Class members who wish to: (a) object with respect to the proposed Settlement;

and/or (b) wish to appear in person at the Fairness Hearing, must first send an Objection and, if

intending to appear, a Notice of Intention to Appear, along with a Summary Statement outlining

the position(s) to be asserted and the grounds therefore together with copies of any supporting

papers or briefs, via first class mail, postage prepaid, to the Clerk of the United States District

Court for the Southern District of New York, 500 Pearl Street, New York, New York 10007,

with copies to the following counsel:

***On Behalf of Plaintiffs and the Class***:

| | |
|---|---|
| Bruce E. Gerstein, Esq. | David F. Sorensen |
| GARWIN GERSTEIN & FISHER, LLP | BERGER MONTAGUE PC |
| 88 Pine Street, 10th Floor | 1818 Market Street – Suite 3600 |
| New York, NY 10005 | Philadelphia, PA 19103 |
| Tel.: (212) 398-0055 | Tel.: (215) 875-3000 |
| Fax: (212) 764-6620 | Fax: (215) 875-4604 |

*Co-Lead Counsel for Plaintiffs and the Class*

***On Behalf of Defendants***:

| | |
|---|---|
| Beth A. Wilkinson, Esq. | J. Mark Gidley |
| WILKINSON, WALSH + ESKOVITZ LLP | WHITE & CASE LLP |
| 2001 M Street N.W., 10th Floor | 701 Thirteenth Street NW |
| Washington, DC 20036 | Washington, DC 20005 |
| Tel: (202) 847-4000 | Tel: (202) 626-3600 |

Fax: (202) 847-4005                    Fax: (202) 639-9355

*Counsel for Defendants*

  To be valid, any such Objection and/or Notice of Intention to Appear and Summary statement must be postmarked no later than _____ (45 days from the date of mailing of the Notice).  Except as herein provided, no person or entity shall be entitled to contest the terms of the proposed Settlement.  All persons and entities who fail to file an Objection and/or Notice of Intention to Appear as well as a Summary Statement as provided above shall be deemed to have waived any such objections by appeal, collateral attack or otherwise and will not be heard at the Fairness Hearing.

  16. All briefs and materials in support of the application for an award of attorneys' fees and reimbursement of expenses, and incentive awards for the Named Plaintiffs, shall be filed with the Court by _____ (14 days prior to the expiration of the deadline for Class members to object to the Settlement and/or attorney's fees, expenses and incentive awards).

  17. All briefs and materials in support of the final approval of the settlement and the entry of Final Judgment proposed by the parties to the Settlement Agreement shall be filed with the Court by _____ (21 days after the expiration of the deadline for Class members to object to the Settlement and/or attorney's fees, expenses and incentive awards).

  18. All proceedings in the action between Plaintiffs and Defendants are hereby stayed until such time as the Court renders a final decision regarding the approval of the Settlement and, if the Court approves the Settlement, enters Final Judgment and dismisses such actions with prejudice.

19.     Neither this Order, nor the Settlement Agreement, nor any other Settlement-related document, nor anything contained herein or therein or contemplated hereby or thereby, nor any proceedings undertaken in accordance with the terms set forth in the Settlement Agreement or herein or in any other Settlement-related document, shall constitute, be construed as or be deemed to be evidence of or an admission or concession in any action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body or any other body or authority, present or future, by Defendants including, without limitation, that Defendants have engaged in any conduct or practices that violate any antitrust statute or other law.

SO ORDERED this _____ day of _____, 20__

_____
The Honorable Colleen McMahon
Chief United States District Judge

# EXHIBIT B

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

# If you bought branded Namenda IR, branded Namenda XR, or generic Namenda IR directly from a manufacturer you could get a payment from a class action settlement.

*A federal court authorized this notice. It is not a solicitation from a lawyer.*

- The purpose of this notice is to alert you about a proposed settlement relating to a Class Action Lawsuit (the "Lawsuit") brought by Direct Purchasers of branded Namenda IR (immediate release memantine hydrochloride), branded Namenda XR (extended release memantine hydrochloride), and/or generic Namenda IR (generic immediate release memantine hydrochloride) ("Direct Purchaser Class Plaintiffs"). The lawsuit asserts that Forest Laboratories, LLC, Forest Laboratories, Inc., Forest Laboratories Holdings Ltd., and Actavis plc ("Forest" or "Defendants") violated antitrust laws relating to the sale of these prescription pharmaceuticals. Defendants have denied any wrongdoing.

- The Court previously determined that the Lawsuit between Direct Purchaser Class Plaintiffs and Defendants can be a class action because it meets the requirements of Federal Rule of Civil Procedure 23, which governs class actions in federal courts. The class (hereinafter, the "Direct Purchaser Class" or the "Class") is defined as follows:

  > All persons or entities in the United States and its territories who purchased branded Namenda IR 5 or 10 mg tablets, and/or generic Namenda IR 5 or 10 mg tablets (including an authorized generic), and/or branded Namenda XR capsules, directly from Forest or its successors in interest, Actavis and Allergan, and/or from any generic manufacturer at any time during the period from June 2012 until September 30, 2015. Excluded from the Class are Defendants and their officers, directors, management, employees, subsidiaries, or affiliates, and all federal governmental entities.

- The Court has preliminarily approved the proposed settlement between the Direct Purchaser Class and Defendants. The proposed settlement will provide for the payment of $750,000,000.00 (seven hundred and fifty million dollars and no/100) in cash into an escrow account (the "Settlement Fund") for allocation to the members of the Class after payment of Direct Purchaser Class Counsel's attorneys' fees, costs, and incentive awards to the Class Representatives out of the Settlement Fund, as approved by the Court. The full text of the proposed settlement ("Settlement Agreement"), which is dated December __, 2019, is available for your review at www.bergermontague.com and www.garwingerstein.com.

- The Court has scheduled a hearing on Final Approval of the proposed settlement, the plan for allocating the Settlement Fund to members of the Class (summarized in Question 8 below), and Class Counsel's request for reimbursement of costs and payment of attorneys' fees out of the Settlement Fund. That hearing is scheduled for _____, 20__, at __:__ _.m., before Chief Judge Colleen McMahon of the U.S. District Court for the Southern District of New York,

1

in Courtroom 24A of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007-1312.

- Your legal rights are affected whether you act or do not act, so please read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **WHEN YOU RECEIVE A CLAIM FORM, PROMPTLY COMPLETE AND RETURN IT** | You do not need to do anything now to retain your right to seek a share of the proposed settlement. If the Court decides to give the proposed settlement Final Approval and you are a Class Member, then you will need to complete, sign and return a Claim Form (which will be mailed to you) to obtain a share of the proposed settlement. |
| **OBJECT TO THE SETTLEMENT** | If you object to all or any part of the proposed settlement, write to the Court about why you object to the proposed settlement. |
| **GETTING MORE INFORMATION** | If you would like to obtain more information about the proposed settlement, you can send questions to the lawyers identified in this notice and/or ask to attend the hearing at which the Court will evaluate the proposed settlement. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case still has to decide whether to give Final Approval to the proposed settlement with Defendants.

**BASIC INFORMATION**...................................................................**PAGE** _
    1. Why did I get this notice?
    2. What is this lawsuit about?
    3. Why is this lawsuit a class action?
    4. Has the Court identified Class Claims, Issues, or Defenses?
    5. Why is there a settlement with Defendants?

**WHO IS IN THE CLASS AND SETTLEMENT**.................................................**PAGE** _
    6. Am I part of the Class and the settlement with Defendants?

**THE SETTLEMENT BENEFITS - WHAT YOU GET** ......................................**PAGE** _
    7. What does the settlement with Defendants provide?
    8. How much will my payment be?
    9. How can I get a payment?
    10. When would I get my payment?

**THE LAWYERS REPRESENTING YOU** ...................................................**PAGE** _
    11. Do I have a lawyer in this case?

12. Should I get my own lawyer?
13. How will the lawyers be paid?

OBJECTING TO THE SETTLEMENT .................................................... PAGE _
14. How do I tell the Court that I do not like the settlement with Defendants?

THE COURT'S FAIRNESS HEARING ................................................... PAGE _
15. When and where will the Court decide whether to approve the settlement with Defendants?
16. Do I have to come to the hearing?
17. May I speak at the hearing?

IF YOU DO NOTHING ..................................................................... PAGE _
18. What happens if I do nothing at all?

GETTING MORE INFORMATION ........................................................ PAGE _
19. How do I get more information?

## BASIC INFORMATION

**1.   Why did I get this notice?**

You received this notice because according to sales records obtained by Direct Purchaser Class Plaintiffs, you may have purchased Namenda IR, Namenda XR, and/or generic Namenda IR directly from Forest or its successors in interest, Actavis or Allergan, and/or from any generic manufacturer at some point between June 2012 until September 30, 2015. A prior notice about the Lawsuit and the Court's decision to certify a class was mailed on or about December 14, 2018. This second notice is being sent to you because a settlement has been reached in the Lawsuit.

**2.   What is this lawsuit about?**

The Direct Purchaser Class Plaintiffs allege that Defendants violated federal antitrust laws by engaging in an unlawful scheme to delay and impede the market entry of less expensive, generic versions of Namenda IR. Specifically, the Direct Purchaser Class Plaintiffs allege that Defendants entered into unlawful, non-competition agreements, or horizontal market allocation agreements, with a prospective generic competitor, whereby Defendants agreed to pay the generic competitor, in exchange for the generic competitor agreeing to delay selling its generic version of Namenda IR. The Direct Purchaser Plaintiffs further allege that Defendants then engaged in a "hard switch product hop" to compel purchasers to switch to Defendants' extended release version of Namenda, called Namenda XR, before less expensive generic versions of Namenda IR became available. Direct Purchaser Class Plaintiffs allege that they and other members of the Class were injured by being overcharged because of Defendants' conduct and overpaid on their purchases of Namenda IR, Namenda XR, and generic Namenda IR. A copy of the Direct Purchaser Class Plaintiffs' First Amended Class Action Complaint filed October 14, 2015 (the "Complaint") is available at www.bergermontague.com and www.garwingerstein.com.

Defendants deny all these allegations, including that any Class member is entitled to damages or other relief. Defendants also respond that none of their conduct violated any

applicable law or regulation. The settlement between Direct Purchaser Class Plaintiffs and Defendants is not an admission of wrongdoing by any Defendant. A trial was scheduled to being on October 28, 2019, but the parties reached a settlement and no trial has occurred.

Following full investigation of relevant facts, and preparation for trial, and following extensive negotiations utilizing more than one independent mediator including former United States District Court Judge Faith S. Hochberg, the class representatives of the Direct Purchaser Class, on behalf of the Class, entered into the Settlement Agreement with Defendants.

THIS NOTICE IS NOT AN EXPRESSION OF ANY OPINION BY THE COURT AS TO THE MERITS OF DIRECT PURCHASER CLASS PLAINTIFFS' CLAIMS AGAINST ANY DEFENDANT OR THE DEFENSES ASSERTED BY ANY DEFENDANT.

The class action is known as *In re Namenda Direct Purchaser Antitrust Litigation*, Civil Action No. 1:15-cv-07488-CM-RWL (S.D.N.Y.). Chief Judge Colleen McMahon of the United States District Court for the Southern District of New York is overseeing this class action.

## 3. Why is this lawsuit a class action?

In a class action, one or more entities called "Class Representatives" sue on behalf of other entities with similar claims. In this case, the Class Representatives are J M Smith Corporation d/b/a Smith Drug Company and Rochester Drug Co-Operative, Inc. ("RDC"). The Class Representatives and the entities on whose behalf they have sued together constitute the "Class" or "Class Members." They are also called the "Direct Purchaser Class Plaintiffs" or "Plaintiffs." Their attorneys are called "Plaintiffs' Counsel" or "Class Counsel."

The companies that have been sued are called the "Defendants." In this case, the Defendants are Forest Laboratories, LLC, Forest Laboratories, Inc., Forest Laboratories Holdings Ltd., and Actavis plc.

In a class action lawsuit, one court resolves the issues for everyone in the class, except for those class members who exclude themselves (i.e., "opt out") from the class. The Court, by order dated August 2, 2018, determined that the Lawsuit between Direct Purchaser Class Plaintiffs and Defendants can proceed as a class action. A copy of the Court's order may be found at www.bergermontague.com and www.garwingerstein.com.

Specifically, the Court found that:

- The number of Class members is so numerous that joining them all into one suit is impractical.
- Members of the Class share common legal or factual issues relating to the claims in this case.
- The claims of the Class Representatives are typical of the claims of the rest of the Class.
- The Class Representatives and the lawyers representing the Class will fairly and adequately protect the Class's interests.

4

- The common legal questions and facts predominate over questions affecting only individual members of the Class, and this class action will be more efficient than individual lawsuits.
- A class action is the superior method to resolve these claims.

## 4. Has the Court identified Class Claims, Issues, or Defenses?

The Court has identified the following classwide issues:

(a) Whether the conduct challenged by the Class as anticompetitive in the Complaint constituted monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2;

(b) Whether the conduct challenged by the Class as anticompetitive in the Complaint constituted an agreement in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

(c) Whether the challenged conduct caused antitrust injury-in-fact to the Class, in the form of overcharges; and

(d) The amount of overcharge damages, if any, owed to the Class in the aggregate under Section 4 of the Clayton Act, 15 U.S.C. § 4.

## 5. Why is there a settlement with Defendants?

The Direct Purchaser Class Plaintiffs and Defendants were preparing to go to trial beginning October 28, 2019, but they have now agreed to a proposed settlement. By settling, both the Direct Purchaser Class Plaintiffs and Defendants avoid the risks and uncertainties of trial and any subsequent appeal. The Class Representatives and Class Counsel believe that the proposed settlement is fair, adequate, and reasonable and in the best interests of the Class.

## WHO IS IN THE CLASS AND SETTLEMENT

To see if you are in the Class, and if so, how you will be able to share in the Settlement Fund, you first have to decide if you are a Class Member.

## 6. Am I part of the Class and the settlement with Defendants?

You are in the Class if you are a person or entity in the United States and its territories and possessions including the Commonwealth of Puerto Rico who directly purchased Namenda IR or Namenda XR or generic Namenda IR directly from Forest or its successors in interest, Actavis and Allergan, and/or from any generic manufacturer at any time during the period from June 2012 until September 30, 2015.

Excluded from the Class are Defendants and their officers, directors, management, employees, subsidiaries, and affiliates, and all federal governmental entities.

5

If you are not sure whether you are included, you may call or write to the lawyers in this case at the telephone numbers or addresses listed in Question 11 below.

## THE SETTLEMENT BENEFITS—WHAT YOU GET

**7.   What does the settlement with Defendants provide?**

Defendants have agreed to pay $750,000,000.00 in cash into the Settlement Fund (which will include any interest that accrues). Direct Purchaser Class Plaintiffs' Counsel will apply to the Court for reimbursement of costs and expenses, incentive awards to the Class Representatives of $150,000 each for Smith Drug and RDC for their services to the Class, and an award of attorneys' fees of up to one-third of the Settlement Fund, net of expenses and service awards approved by the Court, and a proportionate share of the interest, and payment for costs of administering the settlement from the fund. The remainder (the "Net Settlement Fund") will be divided among Class Members.

In exchange, the litigation between the Direct Purchaser Plaintiffs and Defendants will be dismissed with prejudice and Defendants will be released by Direct Purchaser Class Plaintiffs from certain claims. The full text of the Settlement Agreement and the release is available at www.bergermontague.com and www.garwingerstein.com.

**8.   How much will my payment be?**

Your share of the Net Settlement Fund will depend on the amount of Namenda IR or Namenda XR you purchased directly from Defendants or their successors in interest, Actavis and Allergan, during the period from June 1, 2012 until June 30, 2017, and/or the amount of generic Namenda IR you purchased directly from any generic manufacturer at any time during the period from July 11, 2015 (when generic Namenda IR launched) until September 30, 2015. Generally, those who purchased more will get a higher recovery, and those who purchased branded Namenda IR and/or XR will get more than those who purchased only generic Namenda IR.

Your share of the Net Settlement Fund will also depend on the number of valid claim forms that Class Members submit. If less than 100% of the Class sends in a claim form, you could get a larger *pro rata* share. More detail is available in the Proposed Plan of Allocation, which is available at www.bergermontague.com and www.garwingerstein.com.

**9.   How can I get a payment?**

If the Court gives Final Approval to the settlement, then you will receive a Claim Form in the mail by which you can request your *pro rata* share of the Settlement Fund. (See Question 8 above.) You may be asked to verify the accuracy of the information in the Claim Form, and to sign and return the form according to the directions on the form. For instance, you may be requested to confirm that the Claim Form accurately reports the amount of your qualifying purchases of Namenda IR, Namenda XR, and/or generic Namenda IR, and, if you believe it does not, to supply data you believe to be correct.

**10.   When would I get my payment?**

When you get your payment depends on several matters, including whether the Court decides to give Final Approval to the settlement.

When you get a payment depends on the timing of Final Approval and any appeal of that Final Approval. The Net Settlement Fund will be allocated to Class Members as soon as possible after Final Approval has been obtained for the proposed settlement. You will not be responsible for calculating the amount you may be entitled to receive. The Plan of Allocation is generally as follows: the allocation will be on a *pro rata* basis in proportion to how much qualifying branded Namenda IR, Namenda XR, and/or generic Namenda IR you purchased. Those who purchased only generic Namenda IR will receive comparatively less than those who purchased branded Namenda IR and/or XR, as alleged overcharge damages on units of generic Namenda IR alone were substantially lower than alleged overcharges on purchases of branded Namenda IR and XR. If the proposed settlement is given Final Approval, but there is an appeal of the Final Approval, the appeal could take several years to resolve. Any accrued interest on the Settlement Fund will be included, *pro rata*, in the amount paid to the Class Members. The Proposed Plan of Allocation is available at www.bergermontague.com and www.garwingerstein.com.

## THE LAWYERS REPRESENTING YOU

### 11.   Do I have a lawyer in this case?

The attorneys and law firms listed below have been appointed by the Court as Lead Class Counsel. Lead Class Counsel is experienced in handling similar cases against other companies. Lead Class Counsel are:

Bruce E. Gerstein, Esq.
GARWIN GERSTEIN & FISHER LLP
88 Pine Street, 10th Floor
New York, NY 10005
Tel.: 212-398-0055
Fax: 212-764-6620

David F. Sorensen
BERGER MONTAGUE PC
1818 Market Street – Suite 3600
Tel.: 215-875-3000
Fax: 215-875-4604

### 12.   Should I get my own lawyer?

You do not need to hire your own lawyer because Lead Class Counsel are working on your behalf. However, if you wish to do so, you may retain your own lawyer at your own expense.

### 13.   How will the lawyers be paid?

If the Court gives Final Approval to the settlement, then the Court will be asked to approve reimbursement to the lawyers for the costs and expenses they have paid, incentive awards to the Class Representatives for their services to the Class of $150,000 each to Smith Drug

and to RDC, and a fee to the lawyers of up to one-third of the Settlement Fund (including accrued interest but net of expenses and service awards the Court approves). You will not have to pay these fees, costs and expenses, and service awards out of your own pocket. If the Court grants Class Counsel's requests, these amounts would be deducted from the Settlement Fund.

Any application by Class Counsel for an award of attorneys' fees, reimbursement of expenses and incentive awards to the Class Representatives will be filed with the Court and made available for download and/or viewing on or before _____, 20__ on www.bergermontague.com and www.garwingerstein.com, as well as at the office of the Clerk of Court for the United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007-1312, during normal business hours.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with all or any part of the proposed settlement, and/or the application for attorneys' fees, costs, and expenses, and/or incentive awards to the Class Representatives.

| 14. How do I tell the Court that I do not like the settlement with Defendants ? |
| --- |

If you are a Class Member, you can object to all or any part of the proposed settlement if you do not like all or any part of it. You can give reasons why you think the Court should not approve it. You can also object to Class Counsel's application for attorneys' fees, costs and expenses and/or incentive awards to the Class Representatives, which will be filed with the Court and available for public viewing no later than _____, 20__. The Court will consider your views. To object, you must send a letter via first class U.S. mail saying that you object to the settlement in the Direct Purchaser Class Action in *In re Namenda Direct Purchaser Antitrust Litigation*, Civil Action No. 1:15-cv-07488-CM-RWL (S.D.N.Y.). Be sure to include your name, address, telephone number, your signature, and the reasons you object to the settlement. Mail the objection to the Clerk of the United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007-1312, with copies to all of the following:

Bruce E. Gerstein, Esq.
GARWIN GERSTEIN & FISHER LLP
88 Pine Street, 10th Floor
New York, NY 10005
Tel.: 212-398-0055
Fax: 212-764-6620

David F. Sorensen
BERGER MONTAGUE PC
1818 Market Street – Suite 3600
Tel.: 215-875-3000
Fax: 215-875-4604

Beth A. Wilkinson
WILKINSON WALSH + ESKOVITZ LLP
2001 M Street, NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000
Fax: (202) 847-4005

J. Mark Gidley
WHITE & CASE LLP
701 Thirteenth Street NW
Washington, DC 20005
Tel: (202) 626-3600
Fax: (202) 639-9355

Your objection **must be postmarked no later than** _____.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to give Final Approval to the settlement. You may attend and you may ask to speak, but you do not have to.

**15.   When and where will the Court decide whether to approve the settlement with Defendants?**

The Court will hold a Fairness Hearing at ___ on _____, 20__, in Courtroom 24A in the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007-1312. At this hearing, the Court will consider whether the settlement is fair, reasonable and adequate. If there are objections, the Court will consider them. After the hearing, the Court will decide whether to give Final Approval to the settlement. We do not know how long the decision will take.

**16.   Do I have to come to the hearing?**

No. Class Counsel will answer questions that the Court may have. But, you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. So long as you mail your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary. Moreover, attendance is not necessary to receive a *pro rata* share of the Net Settlement Fund.

**17.   May I speak at the hearing?**

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter via first class U.S. mail saying that it is your "Notice of Intention to Appear in *In re Namenda Direct Purchaser Antitrust Litigation,* Civil Action No. 1:15-cv-07488-CM-RWL (S.D.N.Y.)." Be sure to include your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be postmarked no later than _____, 20__, and must be sent to the Clerk of the Court, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007-1312; and to Class Counsel and Defendants' counsel, at the addresses set forth in the response to Question 14. You cannot speak at the hearing if you do not send a notice of intention to appear.

## IF YOU DO NOTHING

**18.   What happens if I do nothing at all?**

If you are a Class Member and you do nothing, you will remain in the Class and be eligible to participate in the settlement as described in this notice, if the settlement is approved. However, you will need to complete, sign and return the Claim Form (once it is sent to you) in order to obtain a payment.

## GETTING MORE INFORMATION

**19.   How do I get more information?**

If you have questions about this case or want to get additional information, you may call or write to the lawyers listed in answer to Question 11 or visit the website www.bergermontague.com or www.garwingerstein.com. This notice is only a summary of the proposed settlement and is qualified in its entirety by the terms of the actual Settlement Agreement. A copy of the Settlement Agreement is on public file with the United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007-1312 during normal business hours and is also available for download and/or viewing at www.bergermontague.com and www.garwingerstein.com.

## PLEASE DO NOT WRITE OR CALL THE COURT OR THE CLERK'S OFFICE FOR INFORMATION.

DATE: _____, 20__

BY THE COURT

Honorable Colleen McMahon
Chief Judge, United States District Court
for the Southern District of New York

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE NAMENDA DIRECT PURCHASER ANTITRUST LITIGATION | Case No. 1:15-cv-07488-CM-RWL |
| THIS DOCUMENT RELATES TO: All Direct Purchaser Actions | |

### [PROPOSED] ORDER GRANTING FINAL JUDGMENT AND ORDER OF DISMISSAL APPROVING DIRECT PURCHASER CLASS SETTLEMENT AND DISMISSING DIRECT PURCHASER CLASS CLAIMS

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, and in accordance with the terms of the Settlement Agreement dated December 20, 2019, between plaintiffs J M Smith Corp. d/b/a Smith Drug Co. ("Smith Drug") and Rochester Drug Co-Operative, Inc. ("RDC") (collectively, the "Class Representatives"), and on behalf of the Class defined below (together with the Class Representatives, the "Plaintiffs"), and defendants Forest Laboratories, LLC; Forest Laboratories, Inc.;[1] Forest Laboratories Holdings Ltd.; and Actavis plc (collectively, "Defendants"), it is hereby ORDERED, ADJUDGED AND DECREED as follows:

1.    This Final Judgment and Order of Dismissal hereby incorporates by reference the definitions in the Settlement Agreement among Plaintiffs and Defendants, all capitalized terms used and not otherwise defined herein shall have the meanings set forth in the Settlement Agreement.

---

[1] On July 1, 2014, in a series of transactions, Forest Laboratories, Inc. became a limited liability company named Forest Laboratories, LLC.  Subsequently, on January 1, 2018, Forest Laboratories, LLC was merged with and into Allergan Sales, LLC, a Delaware limited liability company.  As a result of these corporate consolidations, Forest Laboratories, Inc. and Forest Laboratories, LLC are predecessors in interest to Allergan Sales, LLC.

2.      On August 2, 2018, this Court certified the following class (the "Class"):

> All persons or entities in the United States and its territories who purchased branded Namenda IR 5 or 10 mg tablets, and/or generic Namenda IR 5 or 10 mg tablets (including an authorized generic), and/or branded Namenda XR capsules, directly from Forest or its successors in interest, Actavis and Allergan, and/or from any generic manufacturer at any time during the period from June 2012 until September 30, 2015.  Excluded from the Class are the Defendants and their officers, directors, management, employees, subsidiaries, or affiliates, and all federal governmental entities.

3.      The Court previously appointed the Class Representatives. The Court previously appointed Bruce E. Gerstein of Garwin Gerstein & Fisher, LLP and David F. Sorensen of Berger Montague PC as Co-Lead Counsel for the Class ("Class Counsel").  The Class Representatives and Class Counsel have fairly and adequately represented the interests of the Class and satisfied the requirements of Fed. R. Civ. P. 23(g).

4.      The Court has jurisdiction over these actions, each of the parties, and all members of the Class for all manifestations of this case, including this Settlement.

5.      The notice of settlement (substantially in the form presented to this Court as Exhibit B to the Settlement Agreement) (the "Notice") directed to the members of the Class via First Class Mail, constituted the best notice practicable under the circumstances. In making this determination, the Court finds that the Notice provided for individual notice to all members of the Class who were identified through reasonable efforts. Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, the Court hereby finds that the Notice provided Class members due and adequate notice of the Settlement, the Settlement Agreement, these proceedings, and the rights of Class members to object to the Settlement.

6.      Due and adequate notice of the proceedings having been given to the Class and a full opportunity having been offered to the Class to participate in the _____, 2020

2

Fairness Hearing, it is hereby determined that all Class members are bound by this Order and Final Judgment.

7.     The Settlement of this Class Action was not the product of collusion between the Class Representatives and Defendants or their respective counsel, but rather was the result of *bona fide* and extensive arm's-length negotiations conducted in good faith between Class Counsel and counsel for Defendants, with the assistance of multiple mediators, including former United States District Court Judge Faith S. Hochberg.

8.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby approves the Settlement, and finds that the Settlement is, in all respects, fair, reasonable and adequate to Class members and in their best interests. Accordingly, the Settlement shall be consummated in accordance with the terms and provisions of the Settlement Agreement.

9.     The Court hereby approves the Plan of Allocation of the Settlement Fund as proposed by Class Counsel (the "Plan of Allocation"), which was summarized in the Notice of Proposed Settlement and is attached to Plaintiffs' Motion for Final Approval of Settlement, and directs [Settlement Administrator], the firm retained by Class Counsel as the Claims Administrator, to distribute the net Settlement Fund as provided in the Plan of Allocation.

10.     All claims against Defendants in *In re Namenda Direct Purchaser Antitrust Litigation*, Civil Action No. 1:15-cv-07488-CM-RWL (S.D.N.Y.) (the "Class Action") are hereby dismissed with prejudice, and without costs (other than as provided herein).

11.     Upon the Settlement Agreement becoming final in accordance with paragraph 5 of the Settlement Agreement, Defendants and their past, present, and future parents, subsidiaries, divisions, affiliates, joint ventures, stockholders, officers, directors, management, supervisory boards, insurers, general or limited partners, employees, agents, attorneys, servants,

3

representatives (and the parents', subsidiaries', and affiliates' past, present, and future officers,

directors, employees, agents, attorneys, servants, and representatives), and the predecessors,

successors, heirs, executors, administrators and representatives of each of the foregoing

(collectively, the "Releasees") are and shall be unconditionally, fully, and finally released and

forever discharged from all manner of claims, debts, obligations, demands, actions, suits, causes

of action, damages whenever incurred, liabilities of any nature whatsoever, including costs,

expenses, penalties and attorneys' fees, under federal or state laws, whether known or unknown,

foreseen or unforeseen, suspected or unsuspected, contingent or non-contingent, in law or equity,

that Plaintiffs and all Class members, whether or not they make a claim upon or participate in the

Settlement Fund, on behalf of themselves and their respective past, present, and future parents,

subsidiaries, associates, affiliates, officers, directors, employees, insurers, general or limited

partners, divisions, agents, attorneys, servants, trustees, joint ventures, heirs, executors,

administrators, representatives (and the parents' subsidiaries' and affiliates' past and present

officers, directors, employees, agents, attorneys, servants, and representatives), and their

predecessors, successors, heirs, executors, administrators, and representatives (collectively, the

"Releasors"), ever had, now has, or hereafter can, shall or may have, directly, representatively,

derivatively or in any other capacity, arising out of or relating in any way to:

> (a) the subject matter of or acts, omissions, or other conduct alleged in the complaint in the Direct Purchaser Class Action, or any prior complaints or subsequent amended complaints filed in the Direct Purchaser Class Action; (b) the subject matter of pre-trial proceedings in the Direct Purchaser Class Action; and/or (c) all claims concerning alleged delay or impairment in the marketing, sale, manufacture, pricing, or purchase of, or the enforcement of intellectual property related to, Namenda IR, Namenda XR, or their generic equivalents that could have been asserted in the Direct Purchaser Class Action, including but not limited to claims of reverse payments, product hop, and unlawful patent term extension of U.S. Patent No. 5,061,703, sham patent

4

listings, and sham patent litigations prior to the date of the
Settlement Agreement (collectively, this entire paragraph the
"Released Claims").

12.      In addition, Plaintiffs and each Class member, on behalf of themselves and all

other Releasors, hereby expressly waive, release and forever discharge, upon the Settlement

becoming final, any and all provisions, rights and/or benefits conferred by § 1542 of the

California Civil Code, which reads:

> Section 1542.  General Release; extent.  A general release does not extend to
> claims which the creditor does not know or suspect to exist in his or her favor at
> the time of executing the release, which if known by him or her must have
> materially affected his or her settlement with the debtor;

or by any law of any state or territory of the United States, or principle of common law, which is

similar, comparable or equivalent to § 1542 of the California Civil Code.  Each Releasor may

hereafter discover facts other than or different from those which he, she or it knows or believes to

be true with respect to the claims which are the subject matter of  paragraph 11 of the Settlement

Agreement, but each Releasor hereby expressly waives and fully, finally and forever settles,

releases, and discharges, upon this Settlement becoming final, any known or unknown, foreseen

or unforeseen, suspected or unsuspected, asserted or unasserted, contingent or non-contingent

claim that would otherwise fall within the definition of Released Claims, whether or not concealed

or hidden, without regard to the subsequent discovery or existence of such different or additional

facts.  Each Plaintiff and member of the Class also hereby expressly waives and fully, finally and

forever settles, releases, and discharges any and all claims that are the subject matter of Paragraph

11 of  the Settlement Agreement that it may have against any Releasees under § 17200, et seq., of

the California Business and Professions Code or any similar comparable or equivalent provision

of the law of any other state or territory of the United States or other jurisdiction.

13.    As set forth in Paragraph 13 of the Settlement Agreement (with subheading "Reservation of Claims"), the releases set forth in Paragraphs 11 and 12 of the Settlement Agreement (and in Paragraphs 11 and 12 of this Order) shall not release any claims between Plaintiffs, members of the Class, the Releasors, and the Defendants and the Releasees (a) arising in the ordinary course of business between Releasors and Releasees under Article 2 of the Uniform Commercial Code (pertaining to Sales), the laws of negligence or product liability or implied warranty, breach of contract, breach of express warranty, or personal injury; or (b) other claims unrelated to Namenda IR, Namenda XR, or their generic equivalents.

14.    Class Counsel have moved for an award of attorneys' fees, reimbursement of expenses and incentive awards for the Class Representatives. Class Counsel request an award of attorneys' fees of _____% of the Settlement amount (including the interest accrued thereon), reimbursement of the reasonable costs and expenses incurred in the prosecution of this action in the amount of $ _____, and incentive awards totaling $300,000 collectively for the two Class Representatives, and such motion has been on the docket and otherwise publicly available since _____, 20__.

15.    Upon consideration of Class Counsel's petition for fees, costs and expenses, Class Counsel are hereby awarded attorneys' fees totaling _____ (representing _____% of the Settlement Fund) and costs and expenses totaling _____, together with a proportionate share of the interest thereon from the date the funds are deposited in the Settlement Escrow Account until payment of such attorneys' fees, costs and expenses, at the rate earned by the Settlement Fund, to be paid solely from the Settlement Fund and only if and after the Settlement becomes final in accordance with paragraph 5 of the Settlement Agreement.

16.     Upon consideration of Class Counsel's petition for incentive payments for Class

Representatives, Smith Drug and RDC are each hereby awarded $150,000, to be paid solely from

the Settlement Fund and only if and after the Settlement becomes final in accordance with

paragraph 5 of the Settlement Agreement. Class Counsel David F. Sorensen and Bruce E. Gerstein

shall allocate and distribute such attorneys' fees, costs and expenses among the various Class

Counsel which have participated in this litigation.  The Releasees shall have no responsibility for,

and no liability whatsoever with respect to, any payment or disbursement of attorneys' fees,

expenses, costs or incentive awards among Class Counsel and/or Class Representatives, nor with

respect to any allocation of attorneys' fees, expenses, costs or incentive awards to any other

person or entity who may assert any claim thereto. The attorneys' fees, costs and expenses, and

incentive awards authorized and approved by this Final Judgment and Order shall be paid to

Berger Montague PC and Garwin Gerstein & Fisher LLP within five (5) business days after this

Settlement becomes final pursuant to paragraph 5 of the Settlement Agreement or as soon

thereafter as is practical and in accordance with the terms of the Settlement Agreement and the

Escrow Agreement. The attorneys' fees, costs and expenses, and incentive award authorized and

approved by this Final Judgment and Order shall constitute full and final satisfaction of any and

all claims that Plaintiffs and any Class member, and their respective counsel, may have or assert

for reimbursement of fees, costs, and expenses, and incentive awards, and Plaintiffs and members

of the Class, and their respective counsel, shall not seek or demand payment of any fees and/or

costs and/or expenses and/or incentive awards from Defendants other than from the Settlement

Fund.

7

17.    The Court retains exclusive jurisdiction over the Settlement and the Settlement Agreement as described therein, including the administration and consummation of the Settlement, and over this Final Judgment and Order.

18.    The Court finds that this Final Judgment and Order adjudicates all of the claims, rights and liabilities of the parties to the Settlement Agreement (including the members of the Class), and is final and shall be immediately appealable. Neither this Order nor the Settlement Agreement nor any other Settlement-related document shall constitute any evidence, admission, or concession by Defendants or any other Releasee, in this or any other matter or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body, or any other body or authority, present or future, nor shall either the Settlement Agreement, this Order, or any other Settlement-related document be offered in evidence or used for any other purpose in this or any other matter or proceeding except as may be necessary to consummate or enforce the Settlement Agreement, the terms of this Order, or if offered by any Releasee in responding to any action purporting to assert Released Claims, or if offered by any Releasor in asserting that a claim is not a Released Claim, including because such claim is covered by Paragraph 13 of the Settlement Agreement ("Reservation of Claims").

SO ORDERED this ____ day of ____, 2020

_____
The Honorable Colleen McMahon
Chief United States District Judge

8

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| IN RE NAMENDA DIRECT PURCHASER ANTITRUST LITIGATION | Case No. 1:15-cv-07488-CM-RWL |
|---|---|
| THIS DOCUMENT RELATES TO: All Direct Purchaser Actions | |

### ESCROW AGREEMENT

1.     This escrow agreement (the "Escrow Agreement") by and among (a) Beth A. Wilkinson and J. Mark Gidley, acting on behalf Forest Laboratories, LLC; Forest Laboratories, Inc.;[1] Forest Laboratories Holdings Ltd.; and Actavis plc (Forest Laboratories, LLC; Forest Laboratories, Inc.;[2] Forest Laboratories Holdings Ltd.; and Actavis plc, collectively, "Defendants"); (b) David F. Sorensen and Bruce E. Gerstein, Direct Purchaser Class Plaintiffs' Co-Lead Counsel, on behalf of Plaintiffs JM Smith Drug Co. ("Smith Drug") and Rochester Drug Co-Operative, Inc. ("RDC"), and all members of the direct purchaser class of Namenda IR, Namenda XR, and generic immediate release memantine hydrochloride (collectively "Direct Purchaser Class Plaintiffs"), in *In re Namenda Direct Purchaser Antitrust Litig.*, 15-cv-07488 (S.D.N.Y) (the "Direct Purchaser Class Action"); and (c) First State Trust Company, as directed escrow agent (the "Directed Escrow Agent") is entered into on December 20, 2019, in

---

[1] On July 1, 2014, in a series of transactions, Forest Laboratories, Inc. became a limited liability company named Forest Laboratories, LLC. Subsequently, on January 1, 2018, Forest Laboratories, LLC was merged with and into Allergan Sales, LLC, a Delaware limited liability company. As a result of these corporate consolidations, Forest Laboratories, Inc. and Forest Laboratories, LLC are predecessors in interest to Allergan Sales, LLC.

[2] On July 1, 2014, in a series of transactions, Forest Laboratories, Inc. became a limited liability company named Forest Laboratories, LLC. Subsequently, on January 1, 2018, Forest Laboratories, LLC was merged with and into Allergan Sales, LLC, a Delaware limited liability company. As a result of these corporate consolidations, Forest Laboratories, Inc. and Forest Laboratories, LLC are predecessors in interest to Allergan Sales, LLC.

connection with Settlement Agreement dated December 20, 2019 (the "Settlement Agreement").

Capitalized terms not defined herein shall have the meanings specified in the Settlement

Agreement.  Co-Lead Counsel (on behalf of Plaintiffs and the Direct Purchaser Class) and

Defendants, by and through their respective counsel, have entered into their respective

Settlement Agreement wherein they agreed, subject to the final approval of the Court in the

Direct Purchaser Class Action (the "Court"), that the Direct Purchaser Class Action be dismissed

with prejudice as to Defendants in exchange for payments by Defendants of the Settlement Fund,

consisting of a total of $750,000,000.00 (seven hundred fifty million dollars and no/100) in cash.

     2.     The Directed Escrow Agent was selected by Direct Purchaser Class Plaintiffs'

Co-Lead Counsel, to which selection Defendants consented.  The parties hereto are entering

into this Escrow Agreement in order to effectuate certain of the terms of the Settlement

Agreement.  Beth A. Wilkinson of Wilkinson Walsh + Eskovitz LLP and J. Mark Gidley of

White & Case  ("Defendants' Counsel") are signing on behalf of Defendants, and David F.

Sorensen of Berger Montague PC and Bruce E. Gerstein of Garwin Gerstein & Fisher LLP,

Direct Purchaser Class Plaintiffs' Co-Lead Counsel, are signing on behalf of the Direct

Purchaser Class Plaintiffs.

     3.     NOW, THEREFORE, in consideration of the foregoing and the mutual covenants

and considerations herein, the parties agree as follows:

     (a)     Pursuant to and in accordance with the Settlement Agreement, Defendants

shall deposit with the Directed Escrow Agent the Settlement Fund Amount of $750,000,000.00

(seven hundred fifty million dollars and no/100) in cash.

     (b)     The Directed Escrow Agent shall be directed to invest and reinvest the

Settlement Fund in instruments backed by the full faith and credit of the United States

2

Government or fully insured by the United States Government or an agency thereof, including a

U.S. Treasury Money Market Fund or a bank account insured by the Federal Deposit Insurance

Corporation ("FDIC") up to the guaranteed FDIC limit, until the Settlement becomes final

pursuant to paragraph 5 of the Settlement Agreement. Subsequent to the Settlement becoming

final, the Settlement Fund shall be invested as directed in writing by Co-Lead Counsel for the

Direct Purchaser Class Plaintiffs, David F. Sorensen, Esq. of Berger Montague PC, 1818 Market

Street, Suite 3600, Philadelphia, PA 19103 and Bruce E. Gerstein, Esq., Garwin Gerstein &

Fisher LLP, 88 Pine Street, 10th Floor, New York, NY 10005 ("Authorized Plaintiffs'

Counsel"). The term of any such investment directed by Authorized Plaintiffs' Counsel shall not

exceed ninety (90) days. All interest and dividends earned on the Settlement Fund shall become

part of the Settlement Fund. Any losses on the Settlement Fund shall be borne by the Settlement

Fund and shall not be recoverable from Defendants. Defendants shall have no liability,

obligation, or responsibility of any kind in connection with the investment, disbursement, or

other oversight of the Settlement Fund.

(c)     Upon written authorization as described below in this paragraph, the

Directed Escrow Agent may withdraw from the Settlement Fund disbursements sufficient for

the Claims Administrator to pay costs associated with notice to the Direct Purchaser Class and

taxes or estimated taxes payable by the Claims Administrator on behalf of the Settlement Fund

and related expenses in accordance with paragraph 3(d)(4) herein, except that such withdrawals

for notice to the Direct Purchaser Class and administration of the Settlement, before the

Settlement becomes final, may not exceed twenty-five thousand dollars ($25,000.00). Before the

Settlement becomes final, the written authorization required by this paragraph shall be granted

by Authorized Plaintiffs' Counsel consistent with paragraph 7(a) of the Settlement Agreement,

3

with copies to Defendants' Counsel. After the Settlement becomes final, the written

authorization required by this paragraph shall be granted by Authorized Plaintiffs' Counsel

alone. Authorized Plaintiffs' Counsel is authorized, after obtaining approval of Defendants'

Counsel, to appoint an administrator (and any successors) for the Settlement Fund within the

meaning of Treasury Regulation § 1.468B-2(k)(3) (the "Claims Administrator"). Authorized

Plaintiffs' Counsel shall be responsible for assuring that the Claims Administrator qualifies as

an "administrator" of the Settlement Fund within the meaning of Treasury Regulation Section

1.468B-2(k)(3) and is performing its duties hereunder. Defendants shall have no responsibility

for any fees or the performance of the Claims Administrator.

        (d)      Provided the Court preliminarily approves the Settlement, the Claims

Administrator shall, within thirty (30) days after the date thereof, take all steps necessary for

qualifying the Settlement Fund as a "Qualified Settlement Fund" within the meaning of Section

1.468B-1 of the Treasury Regulations. These obligations include, without limitation, the

following:

        (1)      The Claims Administrator will prepare a "Regulation Section

1.468B-3 Statement" pursuant to Treasury Regulation Section 1.468B-3(e) on behalf of

Defendants and provide copies to Defendants' Counsel for review and approval.

        (2)      The Claims Administrator will prepare and attach to the Settlement

Fund's first income tax return a "Regulation Section 1.468B-1 Relation Back Election"

pursuant to Treasury Regulation Section 1.468B-1(j) for execution by Defendants and the

Claims Administrator. The Claims Administrator will promptly forward a copy of the

"Regulation Section 1.468B-1 Relation Back Election" to Defendants' Counsel within thirty

(30) days after the date hereof.

4

(3)     The Claims Administrator will timely prepare and file on behalf of

the Settlement Fund (i) federal tax returns in accordance with Section 1.468B-2 of the

Treasury Regulations and the other provisions of the Internal Revenue Code of 1986, as

amended (the "Code"), and (ii) all necessary state, local and foreign tax returns.

(4)     Notwithstanding any effort, or failure, of the Claims Administrator

and the parties hereto to treat the Settlement Fund as a "Qualified Settlement Fund" within the

meaning of Section 1.468B-1 of the Treasury Regulations effective as of the date hereof, any

additional tax liability or penalties incurred by Defendants resulting from income earned by

the Settlement Fund (or the receipt of any payment under this paragraph 3(d)(4)) shall be

reimbursed from the Settlement Fund in the amount of such additional tax liability or penalties

upon written request from Defendants to the Directed Escrow Agent. The Directed Escrow

Agent shall withdraw from the Settlement Fund (i) at the request of the Claims Administrator,

monies to pay all applicable federal, state, local and foreign taxes which the Settlement Fund

owes or is estimated to owe, as well as related expenses, and (ii) monies to pay any

reimbursements to Defendants as described in this subparagraph (4).

(e)     The Directed Escrow Agent shall be paid the fees described in Exhibit A.

The Annual Escrow Fees described in Exhibit A shall be paid for by UBS Financial Services Inc.

and its affiliates ("UBS").  In addition, the Directed Escrow Agent shall be reimbursed for

reasonable, out-of-pocket expenses, including attorneys' fees arising from the Directed Escrow

Agent's management of the fund, telephone and facsimile transmission costs, postage (including

express mail and overnight delivery charges), copying charges and the like. All such fees and

expenses shall constitute a direct charge against the Settlement Fund.

The Directed Escrow Agent is authorized to, and may, disburse to itself, from the Settlement Fund, from time to time, the amount of reimbursement of out-of-pocket expenses due and payable hereunder. Prior to the Settlement becoming final, the Directed Escrow Agent shall notify, and obtain approval from, Authorized Plaintiffs' Counsel and Defendants' Counsel of any disbursement from the Settlement Fund to itself and provide copies of all related invoices and other statements. After the Settlement becomes final, such notification need be provided to, and approval obtained from, only Authorized Plaintiffs' Counsel. If there is any dispute as to entitlement to out-of-pocket expenses or attorneys' fees as described above, it will be submitted to the Court, which shall maintain continuing jurisdiction over the operation and effectuation of this Escrow Agreement and the escrowed funds.

      (f)     Upon authorization as described below in this paragraph, the Directed Escrow Agent may sell or present for redemption any investment described in paragraph 3(b) above, whenever it shall be necessary in order to provide funds to meet any payment required pursuant to this Escrow Agreement or the Settlement Agreement. Before the Settlement Agreement becomes final, the authorization required by this paragraph shall be granted by Authorized Plaintiffs' Counsel and Defendants' Counsel acting jointly. After the Settlement becomes final, the authorization required by this paragraph shall be granted by Authorized Plaintiffs' Counsel alone.

      (g)     Only upon the Settlement becoming final, may distributions (other than those contemplated herein to pay taxes and costs of notice and administration) be made as authorized by Court order. Upon the Settlement becoming final, Authorized Plaintiffs' Counsel shall have the authority to appoint a Successor Escrow Agent and direct that all funds be transferred to the Successor Escrow Agent, which Successor Escrow Agent shall not be one of

the Defendants or an affiliate of one of the Defendants. Upon the Settlement becoming final, the interest of Defendants in the Settlement Fund shall cease in its entirety. Upon final approval of the Settlement, Defendants shall be relieved of any responsibility for directing investments of the funds or disbursements from it, and shall have no liability whatsoever with respect to any investments, expenditures of the fund, taxes and/or tax filings, administrative costs or fees, all of which shall be the responsibility of Direct Purchaser Class Plaintiffs' Co-Lead Counsel.

      (h)    In the event the Directed Escrow Agent receives a notice from Defendants or Plaintiffs pursuant to paragraph 14 of the Settlement Agreement or a court order directing termination of the Settlement Fund, the Directed Escrow Agent shall, subject only to the expiration of any time deposit investment(s) not to exceed ninety (90) days, return the remaining Settlement Fund including all interest and dividends thereon to Defendants as soon as practicable after the Directed Escrow Agent receives notice from Defendants' Counsel or Plaintiffs' Counsel or the applicable court order but in no event later than fifteen (15) business days after receipt of such notice or court order. In the event of such termination, any amounts deducted from the Settlement Fund reflecting expenses referred to in ¶¶ 3(c), 3(d)(4), and 3(e) and Administration Expenses as set forth in Paragraph 7 of the Settlement Agreement shall be the responsibility of Direct Purchaser Class Plaintiffs' Co-Lead Counsel and shall be refunded to Defendants. The expiration of any time deposit investment(s) shall not delay the return of the balance of the Settlement Fund within the fifteen (15) business day period set forth herein and any portion of the Settlement Fund invested in time deposits not to exceed ninety (90) days shall be disbursed within ten (10) days after the expiration of such investments.

      (i)    The Directed Escrow Agent may rely upon any notice, certificate, instrument, request, paper or other documents reasonably believed by it to be genuine and to

have been made, sent or signed by counsel for the respective party or parties in accordance with this Escrow Agreement, and shall not be liable for any action taken or omitted by it, consistent with the terms hereof, in connection with the performance by it of its duties pursuant to the provisions of this Escrow Agreement, except for its own default, negligence or breach of the terms of this Escrow Agreement.

(j)    The Directed Escrow Agent's acceptance and administration of the Settlement Fund shall constitute the submission of the Directed Escrow Agent to the jurisdiction of the Court in the above-described litigation for the purpose of carrying out this Escrow Agreement pursuant to the Settlement Agreement.

(k)    The Directed Escrow Agent has been appointed in compliance with the Settlement Agreement and is subject to the orders of the Court.

(l)    This Escrow Agreement shall be governed by and interpreted according to the substantive laws of the State of New York, without reference to choice-of-law principles.

(m)    The Directed Escrow Agent is and shall be independent, provided that as parties hereto, Plaintiffs and Defendants shall be entitled to institute actions to compel or require performance by the Directed Escrow Agent of its obligations hereunder. The Directed Escrow Agent hereby agrees to submit to the jurisdiction and venue of the Court with respect to issues relating to the Settlement Fund for purposes of enforcement, clarification, or amendment of the provisions of this Escrow Agreement, and to comply with all directions given by that Court.

(n)    The following authorizations, directions and acknowledgements are made by Plaintiffs through its authorized counsel.

1.    Plaintiffs wish to engage UBS as the broker for this relationship and authorize Directed Escrow Agent to open an account with UBS to effectuate the

8

trading and investments for the Settlement Fund, to which engagement Defendants through their authorized counsel consent; and

2.      Plaintiffs direct and authorize Directed Escrow Agent to enter into a UBS Client Relationship Agreement as agent for the Settlement Fund, to which Defendants through their authorized counsel consent; and

3.      Plaintiffs and Defendants acknowledge that Directed Escrow Agent will be appointing UBS as sub-custodian with respect to the assets for the Settlement Fund; and

4.      Plaintiffs and Defendants acknowledge that UBS will be directed to invest the settlement proceeds per the requirements of ¶ 3(b) as the brokerage agent; and any commissions and/or brokerage expenses will be disclosed on a per trade basis and will be within UBS firm guidelines and in accordance with account opening documentation.

(o)      Upon sixty (60) days prior written notice to Authorized Plaintiffs' Counsel and, only if such prior written notice is sent prior to the Settlement becoming final, Defendants' Counsel, the Directed Escrow Agent may resign and be discharged from its duties and responsibilities under this Agreement for any reason, and shall promptly deposit the Escrow Amount (Redemption Value) with a successor escrow agent pursuant to and in accordance with written instructions from Authorized Plaintiffs' Counsel and, only if prior to the Settlement becoming final, Defendants' Counsel. If the Directed Escrow Agent is compelled to resign to comply with action by the government or self-regulating organizations (such as FINRA), the notice requirement set forth in this paragraph may be a reasonable time shorter than 60 days. If no successor escrow agent shall have been appointed by the effective date of the Directed

Escrow Agent's resignation, the Directed Escrow Agent's sole responsibility shall thereafter be to hold the Escrow Amount (Redemption Value), invested until receipt of designation of a successor escrow agent or the disbursement of the Escrow Amount (Redemption Value) in accordance with written instructions from Authorized Plaintiffs' Counsel and, only if prior to the Settlement becoming final, Defendants' Counsel; provided, however, that the Directed Escrow Agent may petition the Court to name a successor, or may deposit the Escrow Amount (Redemption Value) in the registry of the Court having general jurisdiction.

(p)     The Directed Escrow Agent may be removed from this Escrow Agreement at any time and thereby become discharged from the obligations hereby created subsequent to the date of discharge, by notice in writing given to the Directed Escrow Agent not less than thirty (30) days before such removal is to take effect. Prior to the Settlement becoming final, such notice must be given by Authorized Plaintiffs' Counsel and Defendants' Counsel acting jointly; after the Settlement becomes final, such notice may be given by Authorized Plaintiffs' Counsel alone. Upon approval of the Court, and subject to arrangements being made for a replacement Escrow Agent as specified in the next sentence, the Directed Escrow Agent may terminate this Escrow Agreement, by notice in writing given to the undersigned counsel not less than thirty (30) days before such termination is to take effect, and thereby become discharged from the obligations hereby created subsequent to the date of termination. In the event that the Directed Escrow Agent is removed or terminates this Escrow Agreement, arrangements shall be made for a replacement Escrow Agent, who shall assume the Directed Escrow Agent's duties hereunder as of the date and time that the replacement is to take effect. Prior to the Settlement becoming Final, such arrangements must be made by Authorized Plaintiffs' Counsel and

10

Defendants' Counsel acting jointly; after the Settlement becomes final, such arrangements may be made by Authorized Plaintiffs' Counsel alone.

(q)     Copies of all notices and correspondence sent pursuant to this Escrow Agreement shall be served by mail upon Authorized Plaintiffs' Counsel, Defendants' Counsel, and the Directed Escrow Agent. After the Settlement becomes final, such notices and correspondence need only be provided to Authorized Plaintiffs' Counsel.

(r)     The Directed Escrow Agent shall, upon request as described below in this paragraph, advise counsel for the parties of any maturities, conversion privileges, and other matters of a like manner concerning the investments held in accordance with this Escrow Agreement. Before the Settlement becomes final, the request required by this paragraph shall be made by Authorized Plaintiffs' Counsel and Defendants' Counsel acting jointly. After the Settlement becomes final, the request required by this paragraph shall be made by Authorized Plaintiffs' Counsel alone.

(s)     The Directed Escrow Agent shall, upon request as described below in this paragraph, furnish to undersigned counsel the monthly Escrow Account statements or confirmations of transactions. Before the Settlement becomes final, the request required by this paragraph shall be made by Authorized Plaintiffs' Counsel and Defendants' Counsel acting jointly. After the Settlement becomes final, the request required by this paragraph shall be made by Authorized Plaintiffs' Counsel alone.

(t)     The parties reserve the right to modify this Escrow Agreement upon written agreement of all parties, subject to approval of the Court.

(u)     The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

(v)     The Directed Escrow Agent shall treat the fact of the Settlement and the Settlement Agreement referred to herein, as well as all facts or other information pertaining to the Settlement and the Settlement Agreement, as confidential and shall not disclose or use such information in any way other than as necessary to fulfill its role as Directed Escrow Agent and/or comply with any laws or regulations, including those of self-governing organizations, such as FINRA.

(w)     This Escrow Agreement may be signed by all parties on separate copies, including by facsimile or other electronic means, and shall have full force and effect when all parties have signed one of the copies.

IN WITNESS WHEREOF, the undersigned have executed and delivered this Escrow

Agreement as of the date first written above.

By: _____ VP  12/20/19

First State Trust Company
1 Righter Pkwy #120
Wilmington, DE 19803

*Directed Escrow Agent*

By: _____

Beth A. Wilkinson
WILKINSON WALSH + ESKOVITZ LLP
2001 M Street, NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000
bwilkinson@wilkinsonwalsh.com

By: _____

Bruce E. Gerstein
GARWIN GERSTEIN & FISHER LLP
88 Pine Street, 10th Floor
New York, NY 10005
Tel: (212) 398-0055
bgerstein@garwingerstein.com

By: _____

J. Mark Gidley
WHITE & CASE LLP
701 Thirteenth Street NW
Washington, DC 20005
Tel: (202) 626-3600

mgidley@whitecase.com

By: _____

David F. Sorensen
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
dsorensen@bm.net

*Counsel for Defendants*

*Co-Lead Counsel for Plaintiffs and the Class*

13

IN WITNESS WHEREOF, the undersigned have executed and delivered this Escrow

Agreement as of the date first written above.

By: _____ VP 12/20/19

First State Trust Company
1 Righter Pkwy #120
Wilmington, DE 19803

*Directed Escrow Agent*

By: _____
Beth A. Wilkinson
WILKINSON WALSH + ESKOVITZ LLP
2001 M Street, NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000
bwilkinson@wilkinsonwalsh.com

By: _____
J. Mark Gidley
WHITE & CASE LLP
701 Thirteenth Street NW
Washington, DC 20005
Tel: (202) 626-3600

mgidley@whitecase.com

*Counsel for Defendants*

By: _____
Bruce E. Gerstein
GARWIN GERSTEIN & FISHER LLP
88 Pine Street, 10th Floor
New York, NY 10005
Tel: (212) 398-0055
bgerstein@garwingerstein.com

By: _____
David F. Sorensen
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
dsorensen@bm.net

*Co-Lead Counsel for Plaintiffs and the Class*

13

**EXHIBIT A**
**TO**
**ESCROW AGREEMENT dated December 18, 2019**

| *Escrow Agent Fees* [1] | *Rate* |
|---|---|
| Annual Escrow Fee (charged and due quarterly) | [TBD per schedule below] |

| Escrow Value | Annual Fee |
|---|---|
| Up to $100,000,000 | $20,000 |
| $100,000,001 - $250,000,000 | $30,000 |
| $250,000,001 - $500,000,000 | $40,000 |
| $500,000,001 - $1,000,000,000 | $50,000 |
| Over $1,000,000,000 | $55,000 |

[1] The annual escrow fee is charged and due quarterly upon acceptance of the escrow account.

| *Activity Fees* | *Per Item Charge* |
|---|---|
| Disbursement Request | $25 |
| Per Outgoing US Wire (in addition to above) | $15 |
| Stop Payment Request | $20 |

*Other Services & Fees*
- First State Trust Company ("FSTC") reserves the right to refer any or all escrow documents for legal review before execution. Legal fees (billed on an hourly basis) and expenses for this service will be billed to, and paid by, the customer. If appropriate and upon request by the customer, FSTC will provide advance estimates of these legal fees.
- Other extraordinary services, including tax preparation and filing, will be quoted separately based on the scope of the activity
- Out-of-Pocket expenses will pass through to the accounts, including, but not limited to, overnight mail, replacement tax forms, external legal or professional costs, and other extraordinary services for which compensation is not expressly stated.

**Standard Disclosures**

**Fee Disclosure**
The Department of Labor (DOL) issued new rules that require certain types of ERISA retirement plan service providers to disclose new fee information directly to plans. First State Trust Company (FSTC) has incorporated a new disclosure to provide details related to direct revenue paid to FSTC. FSTC maintains standard fee schedules for each service/product offered to clients which is executed at account opening. FSTC mails fee disclosure information annually to clients pertaining to indirect revenue which FSTC may collect based upon the investments of the trust account(s).

First State Trust Company provides a daily "sweep" process for the investment of cash assets in FSTC Accounts. Cash can be either invested in an Institutional Money Market fund managed by Northern Trust (NT) such as the NT Institutional US Government Select Portfolio or an Insured Deposit Program (IDP) provided by Total Bank Solutions (TBS) or both. FSTC will receive 0.06% on assets invested in the NT US Government Select Portfolio or 0.10% on assets invested in the IDP as part of a service fee and daily processing.

FSTC fees are either invoiced or directly charged to the accounts. The primary method is direct charge. If you have any questions regarding FSTC fees (direct or indirect), please contact your Trust Officer at 800.554.1364.

**Disclosure Regarding Retention of Float**
The Department of Labor field bulletin 2002-3 requires that service providers to plan clients, such as banks, broker dealers and record keepers, provide their clients with adequate information regarding float. Our policy of requiring the use of a sweep vehicle minimizes or eliminates the amount of float earned on un-invested cash contributed to the plan. Where FSTC provides

14

you with distribution services, an FSTC agent earns float on money set aside for payment of outstanding but uncashed benefit distribution checks, generally from the date on the face of the checks to participants until the date that either the recipient cashes the check or the check is cancelled and the underlying funds are returned to the trust.  FSTC or its agent generally mails checks in advance of the date on the face of the checks, with the intention that the payees receive the checks by such date.  The float rate of return is currently based upon and generally approximates the then applicable federal funds rate (a publicly available average rate of all federal funds transactions entered into by traders in the federal funds market on a given date).  The federal funds rate is published in the business press. If, in the future, a different rate is more appropriate, FSTC will notify you of any changes. Additional information is available to you upon request. If you have any questions about the float, please contact your FSTC Trust Officer.

### Mutual Fund Disclosure

Mutual funds are sold by prospectus. You may obtain a prospectus from your Financial Advisor or the fund company. Please read the prospectus and all other fund materials carefully before investing. Be advised that depending upon the share class, FSTC may collect a portion of the annual distribution (12b-1) and or service and service related fees from the fund company.  All ETF trades placed through FSTC are subject to a transaction fee (presently $.01 per share) that is paid to our ETF trading vendor and the fees are assessed directly against the respective trades.