# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE NAMENDA DIRECT PURCHASER ANTITRUST LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br>All Direct Purchaser Actions | **Case No. 1:15-cv-07488-CM-RWL** |

**DIRECT PURCHASER CLASS PLAINTIFFS' [PROPOSED] PLAN OF ALLOCATION FOR THE DIRECT PURCHASER CLASS**

Direct Purchaser Plaintiffs J M Smith Corp. (d/b/a Smith Drug Co.) and Rochester Drug Co-Operative, Inc. (collectively, "Plaintiffs"), on behalf of the previously certified Class,[1] hereby submit this proposed Plan of Allocation to allocate the $750 million received in the settlement with Forest Laboratories, LLC, Actavis plc, Forest Laboratories, Inc., and Forest Laboratories Holdings Ltd. (collectively, "Defendants"), plus interest, and net of Court-approved attorneys' fees, Court-approved named plaintiff service awards, and Court-approved expenses, including settlement-related costs and expenses (the "Net Settlement Fund").

The proposed Plan of Allocation ("Allocation Plan") allocates the Net Settlement Fund based on each Class member's *pro rata* weighted share of combined brand and generic Namenda

---

[1] The Court previously certified the following Class:

> All persons or entities in the United States and its territories who purchased branded Namenda IR 5 or 10 mg tablets, and/or generic Namenda IR 5 or 10 mg tablets (including an authorized generic), and/or branded Namenda XR capsules, directly from Forest or its successors in interest, Actavis and Allergan, and/or from any generic manufacturer at any time during the period from June 2012 until September 30, 2015 (the "Class").

> Excluded from the Class are the Defendants and their officers, directors, management, employees, subsidiaries, or affiliates, and all federal governmental entities.

*In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 205 (S.D.N.Y. 2018) (filed at ECF No. 570).

1

IR (immediate-release memantine hydrochloride) and brand Namenda XR (extended-release memantine hydrochloride) unit purchases made directly from the Defendants and from any pharmaceutical manufacturer that sold generic Namenda IR.[2]  This proposal is similar to allocation plans that have been approved in similar class actions brought by direct purchasers to recover overcharges arising from impaired generic competition.[3]

Plaintiffs' expert, economist Dr. Russell L. Lamb, can calculate each Class member's (and eventually, each Claimant's[4]) percentage share of the Net Settlement Fund using sales data

---

[2] As explained below, the relevant manufacturers of generic Namenda IR are Actavis, Amneal, Dr. Reddy's, Lupin, Mylan, and Sun.  *See* Declaration of Russell L. Lamb, Ph.D. Related to Proposed Allocation Plan, dated December 17, 2019 ("Lamb Declaration") (filed herewith) at ¶ 5 n.10, ¶ 6.

[3] *See, e.g.*, *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 1:14-md-02503-DJC, ECF Nos. 1163, 1179 (D. Mass.) (*pro rata* shares of settlement fund computed on basis of claimants' brand and generic purchases); *In re Lidoderm Antitrust Litig.*, 3:14-md-02521-WHO, ECF Nos. 1004-5, 1004-6, 1054 (N.D. Cal.) (*pro rata* shares of settlement fund computed on basis of claimants' brand and generic purchases); *In re Aggrenox Antitrust Litig.*, No. 14-md-02516, ECF Nos. 733-1, 739 (D. Conn.) (*pro rata* shares of settlement fund computed on basis of purchases); *King Drug of Florence, Inc. v. Cephalon, Inc.*, No. 06-1797, ECF Nos. 864-17, 870 (E.D. Pa.) (same); *In re Doryx Antitrust Litig. (Mylan Pharms., Inc. v. Warner Chilcott Public Ltd.)*, No. 12-cv-3824, ECF Nos. 452-3, 665 (E.D. Pa.); *In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-340, ECF Nos. 536-1, 543 (D. Del.) (*pro rata* shares of settlement fund computed on basis of claimants' unit purchases in a product hop case).

[4] A "Claimant" is any entity that timely submits a completed claim form.  A Claimant's percentage share will be zero if that Claimant timely submits a claim form but that Claimant's claim is rejected because, for example, the Claimant did not purchase brand or generic Namenda IR and brand Namenda XR directly from a pharmaceutical manufacturer that sold brand and/or generic Namenda IR and brand Namenda XR during the Class period and does not have any valid assignment covering any such direct purchases.  Allocations to Claimants whose right to settlement allocation arises by virtue of assignments from Class members would be determined in this same fashion.  In these cases, the volumes of brand and generic purchases used to determine the allocation would be the volumes assigned to the Claimant by an otherwise eligible Class member (and the assignor Class member's brand and generic purchase volumes would be reduced by the same amount).  Lamb Declaration at ¶ 5 & n.11.  As the Claim Form will make clear, data submitted by a Claimant who files a Claim Form based on an assignment may be shared with the Claimant's assignor Class member during the claims administration process.

for brand and generic Namenda IR and brand Namenda XR produced by Defendants and manufacturers of generic Namenda IR during discovery.[5] Claimants will also have the option of submitting their own records or data showing their net unit purchases of brand Namenda IR and XR and generic Namenda IR (net of returns) during the relevant periods described below. Dr. Lamb will review any such submissions and confer with the Claims Administrator regarding the final calculations, which may include making any necessary and appropriate adjustments. *See* Lamb Declaration at ¶ 6.

Throughout this Allocation Plan, "purchases" refers to unit purchases of brand or generic Namenda IR and brand Namenda XR made directly from Defendants or directly from any manufacturer of generic Namenda IR during the relevant time periods, or purchases that are covered by a Claimant's assignment from a direct purchaser of such purchases, during the relevant time periods. The unit of purchase is a pill (capsule or tablet). "Purchases" throughout refers to net unit purchases, *i.e.*, gross purchases net of any returns and net of any purchases for which the Claimant or Class member has assigned away its rights to recovery in this litigation. *Id.* ¶ 5 & n.11.

As explained more fully below, Claimants' *pro rata* shares will be based only on purchases made directly from Defendants or a manufacturer of generic Namenda IR (or covered

---

[5] *See* Lamb Declaration at ¶¶ 6-7. Dr. Lamb previously submitted two reports in this matter which addressed, among other issues, damages and class certification, and which the Court previously found supported class certification and were admissible and reliable under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See* Dr. Russell L. Lamb's Amended Expert Report, dated Sept. 20, 2017 (filed at ECF No. 677-2) ("Lamb Report") (damages calculations set forth in Section VI); Dr. Russell L. Lamb's Amended Expert Reply Report, dated Nov. 9, 2017 (filed at ECF No. 677-3) ("Lamb Reply Report") (damages discussed in Section IV); *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d at 174-82, 216-20 (denying the Defendants' motion to exclude Dr. Lamb's testimony and certifying the Class).

by an assignment from a direct purchaser) during the relevant time periods. *See id.* ¶ 5 & n.11.

The proposed Allocation Plan is practical and efficient, using computerized sales data already obtained from Defendants and the generic Namenda IR manufacturers during discovery.[6] It also is a reasonable way to allocate the Net Settlement Fund, and is fair to all members of the Class, including those Class members that bought brand Namenda IR, brand Namenda XR and/or those that bought generic Namenda IR.[7]

## THE ALLOCATION PLAN

The Allocation Plan works as follows:

    1.1    At the appropriate time and after receiving Court approval, the Claims Administrator, working with Dr. Lamb's firm Monument Economics Group, will provide a separate, individualized claim form (the "Claim Form") for each Class member. The Claim Form will expressly set forth the Class member's (a) total net brand Namenda IR unit purchases from June 1, 2012 through June 30, 2017, (b) total net brand Namenda XR unit purchases from when brand Namenda XR launched on June 4, 2013 through June 30, 2017, and (c) total net generic Namenda IR unit purchases made from when generic Namenda IR launched on July 11, 2015 through September 30, 2015. Dr. Lamb can calculate these figures using the sales data produced during discovery by Defendants and the manufacturers of generic Namenda IR.[8] The Claim Form will request that the Class member verify the accuracy of the information contained in the Claim Form and will provide instructions for challenging any of the figures or

---

[6] *See id.* ¶¶ 6-7.

[7] *See id.* ¶ 7.

[8] *See id.* ¶ 6 (explaining that these totals can be calculated from the sales data produced in this case, and that he has already performed preliminary calculations of each Class member's net purchases); *see also id.* ¶ 7.

computations contained in the Claim Form.  If a Class member agrees that the information in the Claim Form is accurate, it will be asked to sign and return the Claim Form to the Claims Administrator.[9]  If a Class member believes that the information contained in its Claim Form is not accurate, that Class member may submit its own purchase data pursuant to the procedures described below.

      1.2     The Claim Form will request the Claimant's full name and mailing address for correspondence regarding the distribution of the Net Settlement Fund, and the identity and contact information for the person responsible for overseeing the claims process for the Claimant.  In addition, the Claim Form will include the release language contained in the settlement agreement with Defendants.  Each Claimant will be required to execute the Claim Form in exchange for receiving any distribution from the Net Settlement Fund.

      1.3     *Timeliness*.  The submission of the Claim Form to the Claims Administrator (with any necessary supporting documentation if the Claimant disagrees with the information contained in its Claim Form) will be deemed timely if it is received or postmarked within 30 days of the date the Claim Forms were mailed.  At Class Counsel's discretion, this deadline may be extended by up to 45 days without additional approval of the Court.  Class Counsel may also seek further extensions of the deadline by order of the Court after any such initial extension.

---

[9] In order to help the Claimant verify that the purchase totals contained in the Claim Form are accurate, the brand and generic Namenda IR and brand Namenda XR National Drug Codes ("NDCs") will be listed on the Claim Form.  The NDCs are standard codes maintained by the FDA and used in the pharmaceutical industry to identify specific pharmaceutical products and allow Claimants to understand precisely what purchases are being considered for purposes of allocation.

2. <u>Calculation of Weighted *Pro Rata* Shares of the Net Settlement Fund.</u>

2.1 Each Claimant's allocated share of the Net Settlement Fund will be set in proportion to each Claimant's weighted combined total of (a) its net unit purchases of brand Namenda IR for the period June 1, 2012 through June 30, 2017[10] made directly from Defendants; (b) its net unit purchases of brand Namenda XR for the period from when brand Namenda XR launched on June 4, 2013 through June 30, 2017[11] made directly from Defendants; and (c) its net unit purchases of generic Namenda IR for the period from when generic Namenda IR launched on July 11, 2015 through September 30, 2015[12] made directly from a generic Namenda IR manufacturer.[13] The manufacturers that sold generic Namenda IR during this time period, July 11, 2015 through September 30, 2015, were Actavis, Amneal, Dr. Reddy's, Lupin, Mylan, and Sun.[14] The Allocation Plan utilizes the weighted totals of each Claimant's purchases of brand

---

[10] June 1, 2012 is the beginning of the Class period and the beginning of the damages period Dr. Lamb used in his prior reports for purposes of calculating the Class's aggregate damages based on brand Namenda purchases. *Id.* ¶ 4. June 30, 2017 is the end of the damages period Dr. Lamb used in his prior reports for purposes of calculating the Class's aggregate damages on brand Namenda IR purchases. *Id.* ¶¶ 4, 5 n.9; Lamb Report, at, *inter alia*, ¶¶ 125, 139, 146, 147 (damages on brand purchases calculated through June 2017).

[11] As noted above, June 4, 2013 was the first day on which brand Namenda XR was sold. June 30, 2017 is the end of the damages period Dr. Lamb used in his prior reports for purposes of calculating the Class's aggregate damages on brand Namenda XR purchases. Lamb Declaration at ¶ 4, ¶ 5 n.9; Lamb Report at, *inter alia*, ¶¶ 125, 139, 146, 147, 152 (brand Namenda XR launched in June 2013 and damages on brand purchases calculated through June 2017).

[12] July 11, 2015 is the first day on which generic Namenda IR was sold. Lamb Declaration at ¶ 4, ¶ 5 n.10; Lamb Report at ¶ 157 (actual generic Namenda IR entry was on July 11, 2015). September 30, 2015 is the end of the Class period and the end of the period for which Dr. Lamb has complete transaction data showing all direct purchases of generic Namenda IR. Lamb Declaration at ¶ 5 n.10.

[13] Lamb Declaration at ¶¶ 5-6. Again, note that "unit purchases" is the number of pills (tablets or capsules purchased), net of returns, purchased directly from Defendants or a generic Namenda IR manufacturer.

[14] *Id.* ¶ 3, ¶ 5 n.10. Dr. Lamb used generic Namenda IR sales data produced by Actavis, Amneal, Dr. Reddy's, Lupin, and Mylan in his damages calculations, but did not use data

Namenda IR, brand Namenda XR, and generic Namenda IR.[15]

      2.2     The allocation computation will be based on the following information (whether from the data already produced in discovery or from submissions by Claimants): (a) each Claimant's net unit purchases of brand Namenda IR for the period from June 1, 2012 through June 30, 2017; (b) each Claimant's net unit purchases of brand Namenda XR for the period from June 4, 2013 through June 30, 2017; (c) each Claimant's net unit purchases of generic Namenda IR for the period from July 11, 2015 through September 30, 2015; (d) the combined total of net unit purchases of brand Namenda IR for the period from June 1, 2012 through June 30, 2017 made by all Claimants with valid, accepted Claim Forms; (e) the combined total of net unit purchases of brand Namenda XR for the period from June 4, 2013 through June 30, 2017 made by all Claimants with valid, accepted Claim Forms; and (f) the combined total of net unit purchases of generic Namenda IR for the period from July 11, 2015 through September 30, 2015 made by all Claimants with valid, accepted Claim Forms.

      2.3     According to Dr. Lamb's prior damages calculations, 1.13% of the Class's aggregate damages were attributable to overcharges on the Class's purchases of generic Namenda IR; while 98.87% of the Class's aggregate damages were attributable to overcharges on the Class's purchases of brand Namenda IR and/or brand Namenda XR.[16] Accordingly, the

---

produced by Sun in his damages calculations as the data produced by Sun did not include reliable pricing information. Lamb Declaration at ¶ 3 n.8; Lamb Report at ¶ 123 & n.239. However, as Dr. Lamb explains in the accompanying Lamb Declaration, he can use the produced Sun sales data to calculate the net units purchased by each Class member. Lamb Declaration at ¶ 3 n.8.

[15] Lamb Declaration at ¶ 5.

[16] *Id*. ¶ 3. As discussed below, Dr. Lamb's prior damages calculations were performed during litigation, and the Court held that Dr. Lamb's damages calculations supported class certification. *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d at 216-20. According to Dr. Lamb's prior damages calculations, in the "No Reverse Payment Scenario" where, absent Defendants' alleged misconduct, generic Namenda IR would have launched June

7

Allocation Plan allocates 1.13% of the Net Settlement Fund to the Class's purchases of generic Namenda IR, and allocates 98.87% of the Net Settlement Fund to the Class's purchases of brand Namenda IR and/or brand Namenda XR.[17]  The different percentages reflect the fact that damages on brand purchases were calculated as the difference between the high brand price and the much lower generic price; while damages on generic purchases were calculated as the difference between the (already low) generic price and the even lower generic price that would have prevailed with earlier generic competition.[18]

        2.4      To calculate the *pro rata* share for each Claimant of the Net Settlement Fund, the Claims Administrator, working with Dr. Lamb, will:

        (a)      Allocate 1.13% of the Net Settlement Fund to the Class's generic Namenda IR purchases, by dividing up this 1.13% *pro rata*, based on Claimant's unit purchases of generic Namenda IR.  So, for example, if Claimant "X" purchased 100 units of generic Namenda IR and there were 1,000 total generic Namenda IR units purchased by all Claimants who submitted valid Claim Forms, then, based on its generic Namenda IR purchases, Claimant X would receive an allocation of 10% (100/1,000) of the 1.13% of the Net Settlement Fund allocated to generic Namenda IR purchases, or 0.113% (10%*1.13%) of the Net Settlement

---

1, 2012 (the beginning of the Class period), Class damages totaled $6,930,602,447:  $78,353,141 of the Class damages were incurred on generic purchases ("Generic-Generic" damages) and $6,852,249,306 of the Class damages were incurred on brand purchases ("Brand-Generic" damages).  This means that 1.13% of total Class damages were incurred on generic purchases ($78,353,141 / $6,930,602,447 = .0113, or 1.13%), and 98.87% of total Class damages were incurred on brand purchases ($6,852,249,306 / $6,930,602,447 = .9887, or 98.87%).  *See* Lamb Declaration at ¶ 3.  *See also* Lamb Report at p. 83, Table 2 (listing the Class's "Brand-Generic", "Generic-Generic", and "Total" damages under the June 2012 entry date scenario, based on calculations using transaction-level data).

[17] Lamb Declaration at ¶ 5.

[18] *Id*. ¶ 3.

8

Fund.[19]

    (b)  Allocate 98.87% of the Net Settlement Fund to the Class's purchases of brand Namenda IR and brand Namenda XR.[20]  The damages calculations Dr. Lamb performed in his prior reports[21] — which were held by the Court to satisfy *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and which were found to support class certification[22] — reflect the fact that a single brand Namenda XR capsule constituted a single day of therapy (or "DOT"), and two Namenda IR tablets constituted a DOT (because brand Namenda IR and generic Namenda IR were typically taken twice a day).  Thus, a Claimant's purchases of brand Namenda XR and brand Namenda IR will be converted into DOT for purposes of allocating the 98.87% of the Net Settlement Fund that will be allocated based on brand purchases, just as brand Namenda IR and brand Namenda XR purchases were converted into DOT in Dr. Lamb's prior damages calculations.[23]  In effect, as a result of this conversion into DOT, in the allocation, a purchase of brand Namenda XR will be given double the weight of a Namenda IR purchase (and conversely, a brand Namenda IR purchase will be given half the

---

[19] *Id.* ¶ 5(a).

[20] *Id.* ¶ 5(b).

[21] *See* Lamb Report (damages calculations set forth in Section VI); Lamb Reply Report (damages discussed in Section IV).

[22] *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d at 174-82, 216-20.

[23] Lamb Declaration at ¶ 5(b).  In Dr. Lamb's prior damages calculations, conducted during the litigation, generic Namenda IR purchases were also converted into DOT.  However, such a conversion of generic Namenda IR into DOT is unnecessary for purposes of allocating the 1.13% of the Net Settlement that will be distributed based on generic purchases because every Claimant's *pro rata* share of the 1.13% of the Net Settlement Fund allocated based on generic Namenda IR purchases would be exactly the same irrespective of whether the generic Namenda IR purchases are multiplied by .5 to convert into DOT, and so this conversion need not be done for the Claimant's generic Namenda IR purchases.  *Id.* ¶ 5(b) n.12.

9

weight of a brand Namenda XR purchase).[24] So, for example, if Claimant "Z" purchased 200 units of brand Namenda IR and 100 units of brand Namenda XR, then Claimant Z purchased 200 DOT of Namenda (.5*200 units of Namenda IR plus 100 units of brand Namenda XR). If there were 1,000 total DOT of brand Namenda IR and XR purchased by all Claimants who submitted valid Claim Forms, then Claimant Z would get 20% (200/1,000) of the 98.87% of the Net Settlement Fund allocated to brand Namenda IR and brand Namenda XR purchases, or 19.77% (20%*98.87%) of the Net Settlement Fund.

        (c)     Each Claimant's total *pro rata* share of the Net Settlement Fund will be the total of (i) any share it received as a result of its generic Namenda IR purchases (described in Section 2.4(a) above), and (ii) any share it received as a result of its brand Namenda IR and brand Namenda XR purchases (described in Section 2.4(b) above).[25] Using data produced in discovery, Dr. Lamb has already performed a preliminary computation of net brand and generic Namenda IR and brand Namenda XR purchases for each Class member, and can use these figures to calculate the percentage shares of the Net Settlement Fund due to each Class member.[26] Should any Class member fail to submit a claim or should any Claimant document and submit an alternative amount of purchases that is approved by the Claims Administrator (in consultation with Dr. Lamb and Class Counsel), the Claimant's shares will be recalculated accordingly.[27]

        2.5     The final calculations of each Claimant's *pro rata* share will then be applied to the Net Settlement Fund to determine each Claimant's allocated share.

---

[24] *Id.* ¶ 5(b).

[25] *Id.* ¶ 5(c); *see also id.* ¶ 5(a)-(b).

[26] *See id.* ¶ 6.

[27] *See id.*

3. <u>Processing of Claims.</u>

3.1 All Claims will be reviewed and processed by the Claims Administrator, with assistance from Dr. Lamb and his staff at Monument Economics Group as required and appropriate.

3.2 *Acceptance and Rejection*. The Claims Administrator shall first determine whether a Claim Form received is timely, properly completed, and signed. If a Claim Form is incomplete, the Claims Administrator shall communicate with the Claimant via First Class Mail, email, or telephone regarding the deficiency. Claimants will then have 21 days from the date they are contacted by the Claims Administrator regarding the deficiency to cure any such deficiency. If any Claimant fails to correct the deficiency within this time, the claim may be rejected, and the Claimant shall be notified by letter stating the reason for rejection. The Claims Administrator will then review the Claim Form to determine whether the Claim Form will be accepted or rejected and, if the Claim Form is rejected, the Claimant shall be notified by letter stating the reason for rejection. Any Claimant whose Claim Form is rejected may seek review by the Court via the appeals process described in Section 7.2 below.

3.3 All late Claims Forms that are otherwise complete will be processed by the Claims Administrator but marked as "Late Approved Claims." If Class Counsel conclude that, in their judgment, any such "Late Approved Claims" should ultimately not be accepted,[28] the Claimant will be so notified, and then may seek review by the Court via the appeals process described in Section 7.2 below.

3.4 *The Pro Rata Distribution Calculation*. The Claims Administrator, in

---

[28] *Cf. Kuehbeck v. Genesis Microchip Inc.*, No. C02-05344 JSW, 2007 WL 2382030, at *1 (N.D. Cal. Aug. 17, 2007) (authorizing distribution to timely filed claims and valid claims that were submitted late).

11

conjunction with Dr. Lamb, will be responsible for determining the total amount each Claimant will receive from the Net Settlement Fund. Once the Claims Administrator has determined which Claimants' claims are approved, the Claims Administrator will work with Dr. Lamb to calculate each Claimant's *pro rata* share of the Net Settlement Fund as determined by the calculation described above in Section 2.[29]

    4.    <u>Processing Challenged Claims.</u>

    4.1    The Claims Administrator, in conjunction with Dr. Lamb and Class Counsel, shall review any and all written challenges by Claimants to the determinations of the Claims Administrator. If upon review of a challenge and supporting documentation, the Claims Administrator decides to amend or modify its determination of the Claimants' net unit purchases, distribution amount, and or *pro rata* share of the Net Settlement Fund, it shall advise the Claimant who made the challenge. These determinations shall be final, subject to the appeals process described in Section 7.2 below.

    4.2    Where the Claims Administrator determines that a challenge requires additional information or documentation, it will so advise the Claimant and provide that Claimant an opportunity to cure the deficiency within 25 days. If that Claimant fails to cure the deficiency within that time, the challenge may be rejected and the Claimant will be notified of the rejection of its challenge by mail, which notification shall be deemed final subject to any appeal and decision by the Court.

    4.3    If the Claims Administrator concludes that it has enough information to properly evaluate a challenge and maintains that its initial determinations were correct, it will so inform the Claimant in writing, which notification shall be deemed final subject to any appeal

---

[29] *See* Lamb Declaration at ¶ 6; *see also id.* ¶ 5.

and decision by the Court.

     5.    <u>Report to Court Regarding Distribution of Net Settlement Fund.</u>

     5.1    After the Claims Administrator reviews all submitted claims and works with Dr. Lamb to determine the amount each Claimant is entitled to receive from the Net Settlement Fund, the Claims Administrator will prepare a final report for the Court's review and approval. The report will explain the tasks and methodologies employed by the Claims Administrator in processing the claims and administering the Allocation Plan. It will also contain (a) a list of Class members or other Claimants (if any) who filed Claim Forms that were rejected and the reasons, (b) a list of any challenges to the estimated distribution amounts that were rejected and the reasons, and (c) the date any such Claimant whose challenge was rejected was informed by the Claims Administrator, for purposes of calculating the timeliness of any appeal using the procedures set forth below. Finally, the final report shall contain an accounting of the expenses associated with the Allocation Plan, including bills from Monument Economics Group and the Claims Administrator, any taxes that are due and owing, and any other fees or expenses associated with the settlement allocation process.

     6.    <u>Payment to the Claimants.</u>

     6.1    Upon Court approval of the final report and declaration of the Claims Administrator, the Claims Administrator shall issue a check or wire payable to each Claimant who has submitted a complete and valid Claim Form.

     6.2    It is anticipated that the entire Net Settlement Fund will be distributed in a single distribution. However, subject to further order of the Court, any monies from the Net Settlement Fund that remain unclaimed after the first distribution shall, if feasible, be distributed to Claimants in an additional distribution or distributions on the basis of the same calculations of

the Claimants' *pro rata* weighted combined total of brand and generic Namenda IR and brand Namenda XR purchases described above.

        6.3    Insofar as the Net Settlement Fund includes residual funds after distribution or distributions as set forth in the preceding sections that cannot be economically distributed to the Claimants (because of the costs of distribution as compared to the amount remaining), Class Counsel shall make an application to the Court for such sums to be used to make *cy pres* payments for the benefit of members of the Class.

    7.    <u>Resolution of Disputes.</u>

        7.1    In the event of any disputes between Claimants and the Claims Administrator on any subject (*e.g.*, timeliness, required completeness or documentation of a claim, or the calculation of the Claimant's unit purchases, share of the net settlement fund, and/or amount payable), the decision of the Claims Administrator shall be final, subject to the Claimant's right to seek review by the Court. In notifying a Claimant of the final rejection of a Claim or a challenge thereto, the Claims Administrator shall notify the Claimant of its right to seek such review.

        7.2    Any such appeal by a Claimant must be submitted in writing to the Court, with copies to the Claims Administrator and Class Counsel, within 21 days of the Claims Administrator's final rejection notification to the Claimant.

Dated: December 24, 2019                    Respectfully Submitted:

|  |  |
|---|---|
|  | /s/ Bruce E. Gerstein |
| David F. Sorensen | Bruce E. Gerstein |
| Daniel C. Simons | Joseph Opper |
| Ellen T. Noteware | Kimberly M. Hennings |
| Nicholas Urban | Dan Litvin |
| BERGER MONTAGUE PC | GARWIN GERSTEIN & FISHER LLP |

1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
dsorensen@bm.net
dsimons@bm.net
enoteware@bm.net
nurban@bm.net

Peter Kohn
Joseph T. Lukens
FARUQI & FARUQI, LLP
1617 John F Kennedy Blvd., Suite 1550
Philadelphia, PA 19103
Tel: (215) 277-5770
Fax: (215) 277-5771
pkohn@faruqilaw.com
jlukens@faruqilaw.com

88 Pine Street, 10th Floor
New York, NY 10005
Tel: (212) 398-0055
Fax: (212) 764-6620
bgerstein@garwingerstein.com
jopper@garwingerstein.com
khennings@garwingerstein.com
dlitvin@garwingerstein.com

Susan Segura
David C. Raphael, Jr.
Erin R. Leger
SMITH SEGURA RAPHAEL & LEGER, LLP
221 Ansley Blvd.
Alexandria, LA 71303
Tel: (318) 445-4480
Fax: (318) 487-1741
ssegura@ssrllp.com
draphael@ssrllp.com
eleger@ssrllp.com

Stuart E. Des Roches
Andrew W. Kelly
ODOM & DES ROCHES, LLC
650 Poydras Street, Suite 2020
New Orleans, LA 70130
Tel: (504) 522-0077
Fax: (504) 522-0078
stuart@odrlaw.com
akelly@odrlaw.com

Russ Chorush
HEIM PAYNE & CHORUSH, LLP
1111 Bagby, Suite 2100
Houston, TX 77002
Tel: (713) 221-2000
Fax: (713) 221-2021
rchorush@hpcllp.com

*Counsel for the Direct Purchaser Class Plaintiffs*