# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE NAMENDA DIRECT PURCHASER ANTITRUST LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br>**All Direct Purchaser Actions** | **Case No. 1:15-cv-07488-CM-RWL** |

**DIRECT PURCHASER CLASS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT**

**Table of Contents**

I.      Introduction ............................................................................................................ 1

II.     Relevant Procedural History ................................................................................ 3

        A.      The Settlement Resulted from More Than Four-And-A-Half Years of
                Hard-Fought Litigation and Negotiation ................................................. 3

III.    Argument ............................................................................................................... 7

        A.      Settlements of Class Actions Are Encouraged ...................................... 7

        B.      The Proposed Settlement is Fair, Reasonable, and Adequate under Rule 23
                and the *Grinnell* Factors .......................................................................... 8

                1.      The Settlement is Procedurally Fair ............................................ 9

                2.      The Settlement is Substantively Fair ........................................ 10

                        a)      The First *Grinnell* Factor – the Complexity, Expense and
                                Likely Duration of the Litigation – Favors Final Approval
                                of the Settlement ........................................................... 10

                        b)      The Second *Grinnell* Factor – the Reaction of the Class to
                                the Settlement – Favors Approval of the Settlement. .......... 12

                        c)      The Third *Grinnell* Factor – the Stage of the Proceedings
                                and the Amount of Discovery Completed – Favors
                                Approval of the Settlement ............................................. 12

                        d)      The Fourth *Grinnell* Factor – The Risk of Establishing
                                Liability – Favors Approval of the Settlement ................... 13

                        e)      The Fifth *Grinnell* Factor – The Risk of Establishing
                                Damages – Favors Approval of the Settlement ................... 14

                        f)      The Sixth *Grinnell* Factor – The Risks of Maintaining the
                                Class Action Through Trial – Is Neutral ........................... 15

                        g)      The Seventh *Grinnell* Factor – the Ability of the Defendant
                                to Withstand a Greater Judgment – Is Neutral ................... 16

                        h)      The Eighth and Ninth *Grinnell* Factors – the Range
                                of  Reasonableness of the Settlement in Light of the Best
                                Possible Recovery and in Light of all the Attendant Risks
                                of Litigation – Favor Approval of the Settlement ................ 16

                        i)      Class counsel's Costs and Expenses Are Reasonable and
                                Were Necessary to the Result .......................................... 18

                        j)      Incentive Awards for the Class Representatives Are
                                Appropriate and Reasonable ........................................... 18

k)   The Proposed Award of Attorneys' Fees Is Fair and
     Reasonable (Rule 23(e)(2)(C)(iii)) ................................................ 18

l)   Identification of Agreements in Connection with the
     Settlement (Rule 23(e)(2)(C)(iv) and Rule 23(e)(3)).................... 19

m)   The Settlement Treats Class Members Equitably Relative
     to Each Other (Rule 23(e)(2)(D)) .................................................. 19

C.   The Court Should Approve the Plan of Allocation................................................ 19

IV.   CONCLUSION................................................................................................................ 21

## Table of Authorities

Cases

*Christine Asia Co. v. Jack Yun Ma*,
   2019 U.S. Dist. LEXIS 179836 (S.D.N.Y. Oct. 16, 2019) ......................................................... 9

*City of Detroit v.  Grinnell Corp.*,
   495 F. 2d 448 (2d Cir. 1974).................................................................................... 2, 8, 16

*Eisen v. Carlisle & Jacquelin*,
   479 F.2d 1005 (2d Cir. 1973).................................................................................... 15

*Fleisher v. Phoenix Life Ins. Co.*,
   2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sep. 9, 2015) ...................................... 11, 12, 14, 16

*Guevoura Fund Ltd. v. Sillerman,* No. 1:15-cv-07192-CM,
   2019 U.S. Dist. LEXIS 218116 (S.D.N.Y. Dec. 18, 2019)................................................. 9, 16

*Guippone v. BH S&B Holdings LLC*,
   2016 U.S. Dist. LEXIS 134899 (S.D.N.Y. Sep. 23, 2016) ................................................. 15, 16

*Hart v. RCI Hosp. Holdings*,
   2015 U.S. Dist. LEXIS 126934 (S.D.N.Y. Sep. 22, 2015) ..................................................... 19

*Henry v. Little Mint, Inc.*,
   2014 U.S. Dist. LEXIS 72574 (S.D.N.Y. May 23, 2014)........................................................ 16

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ........................................................................................ 7

*In re Gilat Satellite Networks, Ltd.*,
   2007 U.S. Dist. LEXIS 68964 (E.D.N.Y. Sep. 18, 2007) ...................................................... 17

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   2007 U.S. Dist. LEXIS 9450 (S.D.N.Y. Jan. 31, 2007)........................................................... 17

*In re Omnivision Techs., Inc., Sec. Litig.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................................... 17

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ........................................................................................ 9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*,
   2019 U.S. Dist. LEXIS 217583 (E.D.N.Y. Dec. 16, 2019)..................................................... 16

*In re Veeco Instruments Sec. Litig.*,
    2007 U.S. Dist. LEXIS 85629 (S.D.N.Y. Nov. 7, 2007) ................................................ 12, 14

*Jermyn v. Best Buy Stores, L.P.*,
    2012 U.S. Dist. LEXIS 90289 (S.D.N.Y. June 27, 2012)......................................................... 10

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...................................................................................... 19

*Matheson v. T-Bone Rest. LLC*,
    2011 U.S. Dist. LEXIS 143773 (S.D.N.Y. Dec. 13, 2011)....................................................... 13

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*,
    708 F.2d 1081 (7th Cir. 1983)................................................................................................. 15

*Tiro v. Pub. House Invs., LLC*,
    2013 U.S. Dist. LEXIS 129258 (S.D.N.Y. Sep. 10, 2013) ...................................................... 13

*United States Football League v. Nat'l Football League*,
    644 F. Supp. 1040 (S.D.N.Y. 1986) ........................................................................................ 14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)................................................................................................. 7, 13

Rules

Federal Rule of Civil Procedure 23 .......................................................................... passim

Other Authorities

H.R. Rep. No. 102-850 .............................................................................................. 15

## I.    Introduction

Class counsel representing Direct Purchaser Class Plaintiffs J M Smith Corp. (d/b/a Smith Drug Co.) ("Smith Drug"), Rochester Drug Co-Operative, Inc. ("RDC"), and the direct purchaser class (collectively, "Plaintiffs") respectfully submit this memorandum in support of their Motion for Final Approval of Proposed Settlement.

As the Court knows, the evening prior to jury selection, Class counsel reached an agreement in principle with Forest to settle this matter for $750 million, the largest ever settlement of an antitrust case alleging suppressed generic competition against a single defendant under Section 4 of the Clayton Act.  The parties submitted the signed settlement agreement to the Court on December 24, 2019, *see* ECF No. 919-1 ("Settlement Agreement" or "Settlement"), and the Court granted preliminary approval on January 6, 2020.  ECF No. 920 ("Preliminary Approval Order").  Pursuant to the Preliminary Approval Order, notice of the Settlement was sent to all Class members by First Class mail on February 12, 2020.  *See* Affidavit of Claims Administrator Concerning Provision of Settlement Notice to Class Members filed herewith ("Administrator Decl."), at ¶ 3.

No objections to the Settlement were filed by the March 30, 2020 deadline set by the Court, and none has been received since.  *See* Administrator Decl. at ¶ 7.  Eight Class members have submitted letters affirmatively supporting the settlement (and supporting the requested incentive awards of $150,000 for each named plaintiff, and the fees and expenses requested by Class counsel).  *See* Supplemental Declaration of Bruce E. Gerstein in Support of Class Counsel's Motion for Attorneys' Fees, Reimbursement of Expenses and Incentive Awards for the Named Plaintiffs ("Gerstein Fairness Decl.") (being submitted in connection with Class Counsel's Notice of National Wholesalers' Fee Objection Withdrawal and Brief in Further

Support of Class Counsel's Fee Request, being filed concurrently), Exs. G-N.  One Class member, Humana Inc., sought clarification that the release in the Settlement Agreement did not cover its claims related to indirect purchases of brand or generic Namenda IR and Namenda XR. ECF No. 930.  That issue was resolved pursuant to a Court-ordered stipulation.  *See* ECF No. 938.

Class members Cardinal Health, Inc., AmerisourceBergen Drug Corporation and McKesson Corporation (collectively, the "National Wholesalers") filed an objection to Class counsel's requested fee.  *See* ECF No. 932 ("Objection").  The National Wholesalers, however, did not object to the Settlement itself, nor to Class counsel's request for incentive awards or reimbursement of expenses. *See* ECF No. 932 at 1, 2 n.1, ¶ 5.  Moreover, the National Wholesalers have agreed to withdraw their Objection and support Class counsel's lowered fee request of 21% of the gross Settlement (plus a proportionate share of interest).  *See* Class Counsel's Notice of National Wholesalers' Fee Objection Withdrawal and Brief in Further Support of Class Counsel's Fee Request.

The $750 million settlement is plainly fair, adequate and reasonable, and therefore merits final approval under Rule 23(e)(2) and under the "*Grinnell* factors," derived from *City of Detroit v.  Grinnell Corp.*, 495 F. 2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F. 3d 43 (2d Cir. 2000), which courts in the Second Circuit use in tandem with Rule 23 to determine whether a class settlement warrants final approval.

As set forth in our prior brief, the requested incentive awards are also fair, considering that the named plaintiffs paved the way for all Class members to benefit from this historic settlement, but only they bore the burden of producing documents, sitting for depositions, and

preparing for trial.  *See* ECF No 926 at 24-25.  Finally, there is no objection to Class counsel's request for reimbursement of expenses of just over $5.8 million.  *Id.* at 24.

Class counsel, on behalf of the Class, therefore respectfully request that the Court enter the accompanying proposed Order Granting Final Judgment and Order of Dismissal Approving Direct Purchaser Class Settlement and Dismissing Direct Purchaser Class Claims which, *inter alia*: (a) grants final approval to the Settlement pursuant to Federal Rule of Civil Procedure 23(e); (b) approves the Plan of Allocation (ECF No. 919-2), which provides a fair and reasonable method of determining each Class member's allocated share of the Settlement based upon each Class member's actual purchases of brand and/or generic Namenda IR and brand Namenda XR; (c) dismisses all claims against Forest; and (d) grants incentive awards of $150,000 each for Class representatives Smith Drug and RDC, reimburses Class counsel for $5,823,928.91 in expenses, and awards attorneys' fees in the amount of $157,500,000, *i.e.,* 21% of the gross settlement amount (plus an equal percentage of any interest accrued since the settlement amount was escrowed).  The proposed order submitted herewith is based on the proposed order attached as Exhibit B to the Settlement Agreement, revised to reflect the resolution of the Humana submission, the amount of fees and costs being sought, and the selection of Rust Consulting, Inc., as the settlement administrator.  *See* ECF No. 919-1.

## II.    Relevant Procedural History

### A.    The Settlement Resulted from More Than Four-And-A-Half Years of Hard-Fought Litigation and Negotiation

Since the first class-action complaint was filed in May 2015, Class counsel aggressively litigated this case to the brink of trial.  Class counsel also engaged in mediation and settlement negotiations over a two-and-a-half year period.  The full procedural history of this case is detailed in the Declaration of Bruce E. Gerstein in Support of Class counsel's Motion for

Attorney Fees, Reimbursement of Expenses and Incentive Awards for the Named Plaintiffs (ECF No. 927), which is incorporated herein ("First Gerstein Decl.").

To summarize, Class counsel expended more than 52,000 hours in prosecuting this case from investigation in June of 2014 and filing in 2015 through the present. *See* Gerstein Fairness Decl. at ¶ 3; ECF No. 927 at ¶ 2. Class counsel: (a) successfully defeated Forest's motion to dismiss (ECF No. 927 at ¶¶ 9-11); (b) reviewed and analyzed millions of pages of documents and lines of transaction data from Forest and third parties (*id.* at ¶ 16); (c) took or defended 46 fact and expert depositions (*id.* at ¶¶ 17, 33, 35, 80); (d) consulted with and retained nine experts in wide-ranging disciplines (*id.* at ¶ 32); (e) engaged in substantial discovery motion practice, including on the issue of privilege (*id.* at ¶¶ 15, 18-28); (f) successfully obtained class certification and defeated Forest's Rule 23(f) petition to the Second Circuit (*id.* at ¶ 36); (g) defeated Forest's comprehensive motion for summary judgment and all but one of Forest's *Daubert* motions (*id.* at ¶ 41); (h) briefed 32 motions *in limine* filed by both sides (*id.* at ¶ 45); (i) prepared for and participated in multiple mediations (*id.* at ¶¶ 48-52); and (j) prepared for a two-phase trial that would have begun on October 28, 2019, the day after the parties reached the Settlement (*id.* at ¶¶ 42-44).

This was the most complex Hatch-Waxman antitrust case Class counsel have encountered in over two decades of prosecuting them. Class counsel had to (a) master various complexities of patent law to show that Mylan would have prevailed in showing that the '703 patent was not infringed, and that Forest's patent claims as well as the patent term extension were invalid, and to rebut Forest's arguments to the contrary; (b) master the biopharmaceutical aspects of NMDA receptor antagonism; (c) master several challenging areas of FDA and CMS drug regulation, including: (i) FDA regulations regarding approval of transfers of manufacturing

4

technology (for Lexapro) from one site to another; and (ii) CMS regulations governing the Medicaid rebate liability consequences of selling an authorized generic (Lexapro) in various ways; and then (d) apply those areas of FDA and CMS drug regulation (and the cost savings they imply) to a forensic examination of Forest's deal valuation spreadsheets; (e) develop a defensible multi-input economic model to determine the earlier entry date a reverse-payment-free settlement between Forest and Mylan would have borne; (f) analyze and determine the most likely market entry dates from ANDA approval and manufacturing capacity points of view for a host of generic companies and Forest's "authorized generic" "but for" the reverse payment deal between Forest and Mylan; and (g) develop economic modeling of the complicated interaction between the delay of generic Namenda IR entry from the reverse payment (on the one hand) and the hard switch product conversion enabled by that delay (on the other hand), which were interdependent sources of overcharges for direct purchasers. *See id.* at ¶ 32. Class counsel also had to determine the quantum of damages based on various assumptions (*see id.* at ¶ 67), and combine all this evidence into a trial presentation that would be comprehensible to a jury (*id.* at ¶¶ 42-47).

On December 24, 2019, Class counsel filed a fully executed version of the Settlement Agreement with the Court.  ECF No. 919-1.  On the same date, Class counsel filed a Motion for Preliminary Approval (ECF No. 917) requesting that the Court preliminarily approve the Settlement, approve the form and manner of notice to the Class, and set a schedule leading up to and including a Fairness Hearing.  On January 6, 2020, the Court concluded that the Settlement between the Class and Forest was arrived at by arm's-length negotiations by highly experienced counsel after years of litigation and fell within the range of possibly approvable settlements, and preliminarily approved it.  ECF No. 920, at ¶ 6.  Concurrently, the Court appointed an escrow

agent and claims administrator, approved the form and manner of notice to the Class, and set a schedule. *Id.* at ¶¶ 7-18. Thereafter, Forest deposited the settlement fund into an escrow account that is earning interest for the benefit of the Class. ECF No. 927 at ¶ 56.

Notice of Settlement was sent to all Class members via direct mailing on February 12, 2020. The notice detailed, *inter alia*: (a) the terms of the Settlement and proposed plan of allocation; (b) that Class counsel intended to seek attorneys' fees of up to 33⅓% of the Settlement fund, reimbursement of expenses, and incentive awards of $150,000 for each representative plaintiff and would file their motion for fees, expenses and incentive awards by March 13, 2020; (c) the procedures and deadline for objecting to the settlement and/or Class counsel's motion for attorneys' fees, expenses and incentive awards; and (d) the location, date and time of the Court's final fairness hearing on May 27, 2020. The notice also explained that copies of the Settlement, the motion for fees (when filed), and other important documents would be posted publicly on the websites of Class counsel. *See* Administrator Decl. & Ex. 1 (copy of mailed notice).

Class counsel timely filed their motion for fees, expenses and incentive awards on March 13, 2020. ECF Nos. 925-28. Class counsel sought 27.5% of the common fund, reimbursement of expenses of $5,823,928.91 and incentive awards of $150,000 for each representative plaintiff. Pursuant to the Preliminary Approval Order, Class members had until March 30, 2020 to object to the Settlement and/or Class counsel's fee request. ECF No. 920 at ¶¶ 14, 15. On March 17, 2020, Forest filed a response to the fee request, stating it took no position on the motion, but reemphasizing its position that Plaintiffs had not "succeeded in proving that Forest was liable for the alleged conduct or that Forest's actions were actually found to be unlawful and anti-competitive." ECF No. 929, at 1.

On March 30, 2020, the National Wholesalers filed an objection to Class counsel's requested fee, sought more time to take discovery on Class counsel's lodestar and submit an expert report and an additional brief on fees, and requested that the issue of attorneys' fees be bifurcated from the issue of final review and approval of the Settlement.  ECF Nos. 932-33. The National Wholesalers did not object to the Settlement nor dispute the requested expense reimbursement or incentive awards to the named Class representatives.  *See* ECF No. 932 at 1, 2 n.1, ¶ 5.

On April 1, 2020, the Court denied the National Wholesalers' bifurcation request and stated that it was not inclined to permit expert testimony on the proposed fee or postpone the final fairness hearing scheduled for May 27, 2020.  ECF No. 935.  Thereafter, Class counsel and the National Wholesalers resolved the Objection.

The Humana filing sought clarification that the release in the Settlement did not cover its claims related to indirect purchases of brand or generic Namenda IR and Namenda XR.  ECF No. 930.  Shortly after, Class counsel and Forest submitted a Stipulation Amending Paragraph 11 of the Settlement Agreement that resolved the Humana filing.  ECF No. 937.  The Court "so ordered" and entered that Stipulation on April 6, 2020.  ECF No. 938.

## III.   Argument

### A.   Settlements of Class Actions Are Encouraged

"The compromise of complex litigation is encouraged by the courts and favored by public policy."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 116-17 (2d Cir. 2005); *see also In re Advanced Battery Techs., Inc. Sec. Litig*., 298 F.R.D. 171, 174 (S.D.N.Y. 2014) (McMahon, J.) ("The law favors settlement, particularly in class actions and other complex cases.").

B.      **The Proposed Settlement is Fair, Reasonable, and Adequate under Rule 23 and the *Grinnell* Factors**

Federal Rule of Civil Procedure 23(e)(2) provides that a court may approve a class action settlement if "it is fair, reasonable, and adequate."  Rule 23, as amended December 2018, enumerates four factors for the Court to consider as part of this inquiry.  The Court should consider whether:

(A)     the class representatives and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

(i)   the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Courts within the Second Circuit also analyze the *Grinnell* factors listed below to determine whether a settlement is substantively fair and thus warrants final approval:

(1)     the complexity, expense and likely duration of the litigation;

(2)     the reaction of the class to the settlement;

(3)     the stage of the proceedings and the amount of discovery completed;

(4)     the risks of establishing liability;

(5)     the risks of establishing damages;

(6)     the risks of maintaining the class action through the trial;

8

(7)     the ability of the defendants to withstand a greater judgment;

(8)     the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9)     the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell,* 495 F. 2d at 463.

"The factors set forth in Rule 23(e)(2) have been applied in tandem with the Second Circuit's *Grinnell* factors and 'focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *Christine Asia Co. v. Jack Yun Ma*, 2019 U.S. Dist. LEXIS 179836, at *37 (S.D.N.Y. Oct. 16, 2019) (McMahon, J.) (quoting Advisory Committee Notes to 2018 Amendments, 324 F.R.D. 904, 918 (Apr. 26, 2018)).

### 1.     The Settlement is Procedurally Fair

Rules 23(e)(2)(A)-(B) "'constitute the procedural analysis' of the fairness inquiry." *Id.* at *38 (quoting *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., 330 F.R.D. 11, 29 (E.D.N.Y. 2019)). "A strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to counsel's recommendation." *Guevoura Fund Ltd. v. Sillerman*, 2019 U.S. Dist. LEXIS 218116, at *16 (S.D.N.Y. Dec. 18, 2019) (McMahon, J.) (citations omitted). The presumption of fairness and adequacy applies here.

For over four-and-a-half years, Class counsel aggressively prosecuted this uniquely complicated antitrust case against a determined defendant. Class counsel collectively have more experience with generic-delay cases than any other firm or group of firms, having pioneered such cases in the late 1990s. Class counsel applied their well-honed litigation and trial preparation

skills, along with their over twenty-one years of experience handling these types of cases, to this matter.

Class counsel negotiated a settlement of the claims as vigorously as they litigated them. The parties reached an agreement in principle on October 27, 2019, the night before the first official trial day and after the completion of trial preparations and participation in the day long Final Pre-Trial Conference on October 10, 2019.  ECF No. 927 at ¶ 47.  The parties first attempted to resolve the case in March 2017, via direct communications.  *Id.* at ¶ 48.  In the Fall of 2018, the parties engaged Jonathan Marks, one of the preeminent mediators in the nation. That mediation, which continued into March of 2019, included the exchange of lengthy mediation statements and multiple individual sessions, as well as one joint session with Mr. Marks.  *Id.* at ¶¶ 49-50.  Starting in September 2019, the parties engaged in additional mediation efforts before retired United States District Judge Faith Hochberg, including additional written submissions and an in-person session.  *Id.* at ¶ 51.  The mediation before Judge Hochberg included another full day session and laid the groundwork for settlement.  *Id.* at ¶ 52. Ultimately, the parties reached a settlement in principle with the able assistance of the Court's staff.  *Id.*

Accordingly, the requirements of Rules 23(e)(2) (A)-(B) are met.

## 2.    The Settlement is Substantively Fair

### a)    The First *Grinnell* Factor – the Complexity, Expense and Likely Duration of the Litigation – Favors Final Approval of the Settlement

The first *Grinnell* factor evaluates whether the continuation of the litigation would be complex, expensive, and lengthy.  This case, had it not settled, would have been all three.  *See*, *e.g.*, *Jermyn v. Best Buy Stores, L.P.*, 2012 U.S. Dist. LEXIS 90289, at *13-14 (S.D.N.Y. June

27, 2012) (McMahon, J.) (recognizing the complexity of a potential trial with 25 fact witnesses, additional expert witness, and hundreds of exhibits).  In general, antitrust trials require the expenditure of significant time and resources by both the parties and the court, and this case would have been no exception.  This case was scheduled to be tried in two phases, with Phase 1 covering Sherman Act Section 1 "pay-for-delay" liability and causation issues, and Phase 2 covering Section 2 "hard-switch" causation, and quantum of damages issues for both Section 1 and 2.  For Phase 1 alone, the parties projected calling 23 fact and expert witnesses, some of whom would be on the witness stand for lengthy amounts of time.  Forest raised numerous defenses that Plaintiffs would have needed to overcome in order to prevail in Phases 1 and 2 of this jury trial.

Moreover, whichever side lost at trial surely would have appealed (most likely after filing extensive post-trial motions).  Given the size and complexity of the case, this process would likely would have included a petition for *certiorari* as well.  Such continued litigation would have required further time and resources with no certainty of a favorable outcome. *Fleisher v. Phoenix Life Ins. Co.*, 2015 U.S. Dist. LEXIS 121574, at *22 (S.D.N.Y. Sep. 9, 2015) (McMahon, J.) ("Even if the Class could recover a judgment at trial and survive any decertification challenges, post-verdict and appellate litigation would likely have lasted for years.") (citations omitted).  By contrast, the Settlement provides the Class with immediate, substantial and definite relief without the delay, risk, and uncertainty of trial and continued litigation.

Accordingly, analysis of the first *Grinnell* factor strongly supports approval of the Settlement.

**b)   The Second *Grinnell* Factor – the Reaction of the Class to the Settlement – Favors Approval of the Settlement.**

As set forth above, no Class member has objected to final approval of the Settlement, and eight Class members submitted letters affirmatively supporting it.  *See* Gerstein Fairness Decl. Exs. G-N.  Humana merely sought clarification that the release in the Settlement did not cover its claims related to indirect purchases of brand or generic Namenda IR and Namenda XR.  ECF No. 930.  That issue was resolved pursuant to a Court-ordered stipulation.  *See* ECF No. 938. The National Wholesalers did not object to the $750 million settlement, only to the attorneys' fee sought by Class counsel (and the Objection has been resolved upon Class counsel's agreement to reduce their fee request to 21% of the gross Settlement, as noted).

Accordingly, analysis of the second *Grinnell* factor strongly supports approval of the Settlement.

**c)   The Third *Grinnell* Factor – the Stage of the Proceedings and the Amount of Discovery Completed – Favors Approval of the Settlement**

The third *Grinnell* factor considers the amount of discovery completed, with a "focus[] on whether the plaintiffs obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal."  *Fleisher*, 2015 U.S. Dist. LEXIS 121574, at *26 (internal quotation omitted).  Here all fact and expert discovery was completed, and this case was on the eve of trial.  Thus, the parties' "knowledge of the strength and weakness of their claims was more than the norm" in class action litigation.  *In re Veeco Instruments Sec. Litig.*, 2007 U.S. Dist. LEXIS 85629, at *23 (S.D.N.Y. Nov. 7, 2007) (McMahon, J.).  In negotiating the Settlement, Class counsel was intimately familiar with the strengths and weaknesses of Plaintiffs' claims and Forest's defenses.

Accordingly, analysis of the third *Grinnell* factor strongly supports approval of the Settlement.

### d) The Fourth *Grinnell* Factor – The Risk of Establishing Liability – Favors Approval of the Settlement

In assessing the risks of liability, a court need not decide the merits of the case, resolve unsettled legal questions, or attempt to predict the outcome.  *See Fleisher*, 2015 U.S. Dist. LEXIS 121574, at *29.  Rather, a court "need only assess the risks of litigation against the certainty of recovery under the proposed settlement."  *Id.* (internal quotation omitted). Regardless of the perceived strength of a plaintiff's case, liability is "no sure thing," and "[l]itigation inherently involves risks." *Wal–Mart Stores,* 396 F.3d at 118.  "Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits." *Tiro v. Pub. House Invs., LLC*, 2013 U.S. Dist. LEXIS 129258, at *25 (S.D.N.Y. Sep. 10, 2013) (quoting *Matheson v. T-Bone Rest. LLC*, 2011 U.S. Dist. LEXIS 143773, at *14 (S.D.N.Y. Dec. 13, 2011)).

Forest still denies that Plaintiffs "succeeded in proving Forest was liable for the alleged conduct[.]"  *See* ECF No. 929, at 1.  Plaintiffs faced a serious risk of proving liability, causation and damages on the reverse payment claim and proving classwide injury and damages on the product switch claim.  Forest could have persuaded the jury, for example, that it made no reverse payment to Mylan because its Lexapro forecasts were reasonable and Forest would have made more money under the Lexapro Amendment than under its prior deal with Mylan.  Forest could have persuaded the jury that it made no reverse payment to Mylan because Forest's forecasted Medicaid rebate savings would offset its payments to Mylan.  Forest could have persuaded the jury that even if it did make a reverse payment to Mylan, the payment was not sufficiently large, or sufficiently in excess of saved litigation costs, to cause substantial delay.  Forest could have persuaded the jury that the '703 patent was not weak, or that the entry date in the Forest-Mylan

13

settlement fairly represented the strength of the '703 patent.  Forest could have persuaded the

jury that no generic could have entered the market earlier regardless of the reverse payment deal

with Mylan.  Plaintiffs thus faced myriad risks in prevailing on the reverse payment claim.

On the hard switch product hop, Forest could have persuaded the jury that the conversion

from Namenda IR to XR would have been no different absent the hard switch conduct — that

patients and doctors liked Namenda XR, and freely switched between XR and IR and back again

— which would have led to a defense verdict on the product hop claim.

Accordingly, analysis of the fourth *Grinnell* factor strongly supports approval of the

Settlement.

e)      **The Fifth *Grinnell* Factor – The Risk of Establishing Damages**
        **– Favors Approval of the Settlement**

Akin to the fourth *Grinnell* factor, this factor focuses on the risks of establishing

damages.  Even assuming that Plaintiffs prevailed on liability, the existence and amount of

damages would have been hotly contested at trial.  *See*, *e.g. Fleisher*, 2015 U.S. Dist. LEXIS

121574, at *31 ("Even if Plaintiffs won the liability phase, Plaintiffs also faced risks in

establishing damages during the separate damages phase of trial.").

As concerns the Section 1 "pay-for-delay" case, Forest disputed the ability of generics to

enter the market earlier from regulatory and manufacturing points of view.  Similarly, damages

for the Section 2 product switch claim presented serious issues in light of Forest's argument that

the prior injunction issued by Judge Sweet had cured any harm from the announced withdrawal

of Namenda IR.

At trial, Plaintiffs intended to rely on Russell Lamb, Ph.D., for an analysis of damages,

and Forest planned to challenge Dr. Lamb's opinions with the testimony of their expert

economists, Lona Fowdur, Ph.D., and Pierre-Yves Cremieux, Ph.D.  The jury's reaction to this

14

testimony was uncertain.  *See*, *e.g.*, *Veeco*, 2007 U.S. Dist. LEXIS 85629, at \*30 ("It is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable [conduct.]") (quotation omitted).  There are numerous examples of antitrust plaintiffs receiving little or no damages (or having damages sharply reduced) despite extensive litigation and despite prevailing on liability. *See*, *e.g*., *United States Football League v. Nat'l Football League*, 644 F. Supp. 1040, 1042 (S.D.N.Y. 1986) ("the jury chose to award plaintiffs only nominal damages, concluding that the USFL had suffered only \$1.00 in damages"), *aff'd*., 842 F.2d 1335 (2d Cir. 1988); *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co*., 708 F.2d 1081, 1166-67 (7th Cir. 1983) (antitrust judgment for \$1.8 billion was remanded for new trial on damages, which were reduced to \$111 million (*See* H.R. Rep. No. 102-850 at 42 n. 234)); *Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005 (2d Cir. 1973), *vacated*, 417 U.S. 156 (1974)  (after two trips to the Second Circuit and one to the Supreme Court, plaintiff and the putative class recovered nothing).

Accordingly, analysis of the fifth *Grinnell* factor strongly supports approval of the Settlement.

### f)      The Sixth *Grinnell* Factor – The Risks of Maintaining the Class Action Through Trial – Is Neutral

Plaintiffs do not believe there was any material risk of maintaining the class action through trial, but Plaintiffs understand that "the risk of maintaining a class through trial is present in any class action."  *Guippone v. BH S&B Holdings LLC*, 2016 U.S. Dist. LEXIS 134899, at \*19 (S.D.N.Y. Sep. 23, 2016).  Forest no doubt would have appealed class certification, among other issues, had Plaintiffs won at trial.  Plaintiffs are confident that the Court's class certification decision is correct, but an appeal presents risk.

On balance, the sixth *Grinnell* factor is neutral.

g)  **The Seventh *Grinnell* Factor – the Ability of the Defendant to Withstand a Greater Judgment – Is Neutral**

The seventh *Grinnell* factor inquires whether the defendant is able to withstand a greater judgment. This factor is typically relevant only when a settlement is less than what it might otherwise be but for the fact that the defendant's financial circumstances do not permit a greater settlement. When that situation is not present, courts generally do not give much consideration to this factor, and "this factor, standing alone, does not suggest that the settlement is unfair." *Fleisher*, 2015 U.S. Dist. LEXIS 121574, at *33 (internal quotation omitted). Here, Plaintiffs do not contend that Forest could not withstand a greater judgment, and therefore Plaintiffs do not believe this factor is relevant.

h)  **The Eighth and Ninth *Grinnell* Factors – the Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and in Light of all the Attendant Risks of Litigation – Favor Approval of the Settlement**

Typically, courts evaluate the final two *Grinnell* factors together. *Guevoura*, 2019 U.S. Dist. LEXIS 218116, at *28 n.1. Determining "whether a settlement amount is reasonable does not involve the use of a mathematical equation yielding a particularized sum." *Fleisher*, 2015 U.S. Dist. LEXIS 121574 at *34 (internal quotation omitted). Settlement should be in a "'range of reasonableness … recogniz[ing] the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Guippone*, 2016 U.S. Dist. LEXIS 134899, at *20-21 (quoting *Henry v. Little Mint, Inc.*, 2014 U.S. Dist. LEXIS 72574, at *25 (S.D.N.Y. May 23, 2014)). As the Second Circuit held in *Grinnell*, "'[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*,

16

2019 U.S. Dist. LEXIS 217583, at *230 (E.D.N.Y. Dec. 16, 2019) (quoting *Grinnell*, 495 F. 2d at 455).

The payout here is the largest amount ever paid by a single defendant in a Hatch-Waxman antitrust lawsuit alleging impaired generic competition.  Dr. Lamb calculated total damages suffered by proposed Class members as approximately (1) between $5.73 billion and $6.93 billion assuming the jury found Forest liable for damages for the alleged reverse payment and accounting for the effects of the hard switch product hop; (2) between $3.52 billion and $4.16 billion if the jury found Forest liable for damages only from the alleged reverse payment; and (3) between $659 million and $814 million if the jury found Forest liable for damages only for the hard switch product hop.  The range of potential damages was wide – from $659 million to $6.93 billion – and depended on precisely what the jury would find.  Given the complexity and risk, the $750 million cash settlement represents an outstanding recovery.  *See* Jeff Overley, *Allergan's $750M Deal Among Pharma's Top Antitrust Payouts*, Law360 (Oct. 29, 2019) ("among the most eye-popping sums ever shelled out by a drugmaker for allegedly thwarting generic competition"); *see also In re Merrill Lynch & Co. Research Reports Sec. Litig*., 2007 U.S. Dist. LEXIS 9450, at *33 (S.D.N.Y. Jan. 31, 2007) (approving $40.3 million settlement with a recovery of approximately 6.25% of estimated damages ); *In re Gilat Satellite Networks, Ltd*., 2007 U.S. Dist. LEXIS 68964, at *36 (E.D.N.Y. Sep. 18, 2007); (approving $20 million settlement representing 10.6% of maximum damages); *In re Omnivision Techs., Inc. Sec. Litig.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) ($13.75 million settlement yielding 6% of potential damages after deducting fees and costs).

Accordingly, analysis of the eighth and ninth *Grinnell* factors strongly supports approval of the Settlement.

> **i)   Class counsel's Costs and Expenses Are Reasonable and Were Necessary to the Result**

There has been no objection to Class counsel's request for reimbursement of costs and expenses of $5,823,928.91. These expenses have been itemized by category for the Court's convenience. *See* ECF Nos. 926 at 24; 927 at ¶¶ 71-72. Accordingly, Class counsel respectfully request that the Court approve reimbursement of Class counsel's expenses in full.

> **j)   Incentive Awards for the Class Representatives Are Appropriate and Reasonable**

There has been no objection to the incentive awards of $150,000 for each of the two representative plaintiffs, which are in line with awards in similar cases and appropriate in light of the services performed for the benefit of the entire Class. *See* ECF Nos. 926 at 24-25; 927 at ¶¶ 75-81.

> **k)   The Proposed Award of Attorneys' Fees Is Fair and Reasonable (Rule 23(e)(2)(C)(iii))**

Class counsel's request for an award of attorneys' fees in the amount of $157,500,000 (plus proportionate accrued interest), *i.e.*, 21% of the gross settlement amount is fair and reasonable. *See* ECF Nos. 925-28; Class Counsel's Notice of National Wholesalers' Fee Objection Withdrawal and Brief in Further Support of Class Counsel's Fee Request. As noted, the National Wholesalers have agreed to withdraw their Objection and support Class counsel's requested fee of 21% of the gross Settlement amount. Seven other Class members affirmatively supported the original request of 27.5%, and an eighth agrees the proposed fee award is appropriate. *See* Gerstein Fairness Decl. Exs. G-M.

18

As explained previously and in Class Counsel's Notice of National Wholesalers' Fee Objection Withdrawal and Brief in Further Support of Class Counsel's Fee Request, Class counsel respectfully suggest that the request of 21% is reasonable.

  **l)**   **Identification of Agreements in Connection with the Settlement (Rule 23(e)(2)(C)(iv) and Rule 23(e)(3))**

No "side agreements" involving Class counsel or class representatives were made in connection with the Settlement.

  **m)**   **The Settlement Treats Class Members Equitably Relative to Each Other (Rule 23(e)(2)(D))**

As detailed in Part III.C. below, the Plan of Allocation and Distribution (ECF No. 919-2) allocates funds among Class members on a *pro rata* basis, which courts uniformly approve as equitable. The Settlement therefore meets the requirements of Rule 23(e)(2)(D).

**C.**   **The Court Should Approve the Plan of Allocation**

The Court should approve the proposed Plan of Allocation, which, like many similar plans in analogous cases, would allocate the net settlement fund to Class members who submit claims on a *pro rata* basis efficiently and fairly.  Approval of a plan of distribution for a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole, *i.e.,* the distribution plan must be fair, reasonable and adequate.  *Hart v. RCI Hosp. Holdings*, 2015 U.S. Dist. LEXIS 126934, at *33-34 (S.D.N.Y. Sep. 22, 2015).  "'[A]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent Class counsel.'"  *Id*. at *34 (quoting *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002)).

Here, the proposed Plan of Allocation meets this standard.  As set forth in the Direct Purchaser Class Plaintiffs' [Proposed] Plan of Allocation for the Direct Purchaser Class and

accompanying Declaration Related to Proposed Settlement Allocation Plan by Dr. Russell L.

Lamb (ECF Nos. 919-2, 919-3), the proceeds of the proposed Settlement in this case, net of

Court-approved attorneys' fees, incentive awards for named Plaintiffs, and costs and expenses

("Net Settlement Fund"), will be paid to Class members who submit timely and valid claims

based on each Class member's *pro rata* share of the Class' total purchases of brand and/or

generic Namenda IR and brand Namenda XR.  Brand purchases will be weighted more than

generic purchases because claimed overcharges on brand units were substantially higher than

claimed overcharges on generic units.  *See* ECF No. 919-3 at ¶¶ 5-7.  This plan is similar to plans

that have previously been approved by courts in analogous cases and implemented with a high

degree of success and efficiency and should be approved here as well.  *E.g., In re OxyContin*

*Antitrust Litig.*, No.04 md 1603 (S.D.N.Y.) (Stein, J.) (Jan. 25, 2011); *In re DDAVP Direct*

*Purchaser Antitrust Litig.*, No. 05 Civ. 2237 (S.D.N.Y.) (Seibel, J.) (Nov. 28, 2011); *In re*

*Buspirone Antitrust Litig.*, MDL Docket No. 1413 (S.D.N.Y.) (Koeltl, J.) (April 7, 2003); *In re*

*Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 1:14-md-02503-DJC, ECF Nos. 1163,

1179 (D. Mass.) (*pro rata* shares of settlement fund computed on basis of claimants' brand and

generic purchases); *In re Lidoderm Antitrust Litig.*, 3:14-md-02521-WHO, ECF Nos. 1004-5,

1004-6, 1054 (N.D. Cal.) (*pro rata* shares of settlement fund computed on basis of claimants'

brand and generic purchases).

      The allocation will reflect the amount of relative damage sustained by each Class

member.  The Plan of Allocation will allocate the Net Settlement Fund to Class members

efficiently and fairly by relying upon the electronic data that has been produced in this litigation.

Class members will be provided claim forms that set forth each Class member's qualifying

purchases based on transaction data produced during discovery.  Under the proposed plan, the

claims administrator, working with Dr. Lamb and his staff at Monument Economics Group, will prepare and send these individualized claim forms to each member of the Class. *See* Plan of Allocation at ¶ 1.1.

The Plan of Allocation provides a fair and reasonable method of determining each Class member's proportionate share of the Net Settlement Fund in proportion to the share of overcharges each suffered. It does so based on each Class member's purchases of brand and/or generic Namenda IR and brand Namenda XR during the time period at issue. *See* Plan of Allocation at ¶¶ 2.1-2.5. Among other things, the Plan of Allocation describes: (1) the method of calculating each Class member's *pro rata* share of the Net Settlement Fund; (2) the contents and method of disseminating a claim form; (3) the manner in which claims will be initially reviewed and processed; (4) the method of notifying Class members of the amount that each Class member will receive from the Net Settlement Fund; and (5) the process for handling and resolving challenged claims, if any. The Plan of Allocation also provides timetables for completing various tasks related to calculating and distributing each Class member's *pro rata* share of the Net Settlement Fund. Moreover, the Plan of Allocation proposes that Dr. Lamb be retained to assist in making allocation computations under the Plan. *See* Plan of Allocation at ¶ 3.1.

Accordingly, the proposed Plan of Allocation is fair and reasonable, and should be approved by the Court.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Order Granting Final Judgment and Order of Dismissal Approving Direct Purchaser Class Settlement and Dismissing Direct Purchaser Class Claims which, *inter alia*, provides for: final approval of the Settlement Agreement; approval of the Plan of Allocation of the Settlement

Fund; dismissal of all claims against Defendants; and approves an award of attorneys' fees, reimbursement of expenses and incentive awards for the Class Representatives.

Dated: April 21, 2020                                     Respectfully Submitted:

                                                                          */s/ Bruce E. Gerstein*

David F. Sorensen                                        Bruce E. Gerstein
Ellen T. Noteware                                         Joseph Opper
Daniel C. Simons                                          Kimberly M. Hennings
Nicholas Urban                                             Dan Litvin
Berger Montague PC                                    Garwin Gerstein & Fisher LLP
1818 Market Street, Suite 3600                  88 Pine Street, 10th Floor
Philadelphia, PA 19103                             New York, NY 10005
Tel: (215) 875-3000                                     Tel: (212) 398-0055
Fax: (215) 875-4604                                    Fax: (212) 764-6620
dsorensen@bm.net                                     bgerstein@garwingerstein.com
enoteware@bm.net                                     jopper@garwingerstein.com
dsimons@bm.net                                        khennings@garwingerstein.com
nurban@bm.net                                          dlitvin@garwingerstein.com

Peter Kohn                                                   Susan Segura
Joseph T. Lukens                                         David C. Raphael, Jr.
Faruqi & Faruqi, LLP                                  Erin R. Leger
1617 John F Kennedy Blvd., Suite            Smith Segura Raphael & leger, LLP
1550                                                             221 Ansley Blvd.
Philadelphia, PA 19103                             Alexandria, LA 71303
Tel: (215) 277-5770                                     Tel: (318) 445-4480
Fax: (215) 277-5771                                    Fax: (318) 487-1741
pkohn@faruqilaw.com                               ssegura@ssrllp.com
jlukens@faruqilaw.com                             draphael@ssrllp.com
                                                                  eleger@ssrllp.com

                                                                  Stuart E. Des Roches
                                                                  Andrew W. Kelly
                                                                  Odom & Des Roches, LLC
                                                                  650 Poydras Street, Suite 2020
                                                                  New Orleans, LA 70130
                                                                  Tel: (504) 522-0077
                                                                  Fax: (504) 522-0078
                                                                  stuart@odrlaw.com
                                                                  akelly@odrlaw.com

                                                                  Russ Chorush
                                                                  Heim Payne & Chorush, LLP

1111 Bagby, Suite 2100
Houston, TX 77002
Tel: (713) 221-2000
Fax: (713) 221-2021
rchorush@hpcllp.com

***Counsel for the Direct Purchaser Class Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 21, 2020, I electronically filed the above by CM/ECF system.

Respectfully submitted,

/s/ *Bruce E. Gerstein*

Bruce E. Gerstein